$400   MMB

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

LONTEX CORPORATION,                )        Civil Action No.
                    Plaintiff,          )
                                        )        **FILED**    18-5623
        vs.                             )
                                        )
NIKE, INC.,                             )
                    Defendant.          )   DEC 3 1 2018
                                             KATE ...RMAN, Clerk
                                             ___ Dep. Clerk

## COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

COMES NOW the Plaintiff, Lontex Corporation ("Lontex"), by counsel, and as for its

Complaint against the Defendant NIKE, Inc. ("NIKE"), Lontex alleges as follows:

### PRELIMINARY STATEMENT

1.      For decades, Lontex has manufactured and sold athletic apparel, including to the

general public, professional sports franchises, and collegiate athletic programs. Lontex

developed a strong reputation in the medical and sports fields because its products utilize high

percentages of lycra fiber in the west and the warp directions, which compress effectively and

are comfortable for consumers. At least as early as June 18, 2007, Lontex launched its

successful COOL COMPRESSION line of clothing, including compression shirts, shorts, tights,

and socks. Lontex's COOL COMPRESSION brand assures purchasers that the quality and

performance of the technology is consistent across the product line.

2.      Despite Lontex's success and well-known COOL COMPRESSION athletic

apparel and the immense goodwill Lontex has generated in its COOL COMPRESSION mark,

Lontex discovered NIKE was selling apparel under the COOL COMPRESSION trademark since

as early as October 2015 under the Nike brand. NIKE's line of "Cool Compression" athletic





apparel products are confusingly similar to the incontestable trademarks registered and used by Lontex, and NIKE's use is therefore in violation of Lontex's rights.

3.    Lontex now brings this action to stop NIKE's nationwide infringements of Lontex's rights, for damages arising from NIKE's unlawful conduct, and for injunctive relief to prevent NIKE from causing future harm.

## PARTIES

4.    Plaintiff Lontex is a Pennsylvania corporation with its principal place of business in Norristown, Pennsylvania.  Lontex owns and controls all rights in the COOL COMPRESSION family of trademarks.

5.    Defendant NIKE is an Oregon corporation with its principal place of business in Beaverton, Oregon.

## JURISDICTION

6.    This action arises under Federal law, the provisions of the Trademark laws of the United States (the Lanham Act), as amended, 15 U.S.C. §§ 1051 *et seq.*, and under, *inter alia*, the statutes and common laws of the States of Pennsylvania, California, Florida, Texas, New York, New Jersey, Ohio, North Carolina, Maryland, Massachusetts, Illinois, Georgia, Colorado, Indiana, Minnesota, Washington, and the District of Columbia.

7.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (trademark) because this action arises under the trademark laws of the United States.  In addition, this Court has original subject matter jurisdiction over the state unfair competition claims under 28 U.S.C. 1338(b) as they are joined with a substantial and related claim under the federal trademark laws, and supplemental jurisdiction over the state-law claims is present because they arise from the same nucleus of operative facts under 28 U.S.C.

§ 1367 as to be part of the same case or controversy under Article III of the United States Constitution.

8.      This Court has personal jurisdiction over NIKE because NIKE has extensive minimum contacts with the State of Pennsylvania.  NIKE has purposefully availed itself of the privileges and laws of Pennsylvania, operates a number of NIKE retail stores in their state, distributes large amounts of products to consumers and retailers in this state, has continuous and systematic contacts with this state, has knowingly directed intentional trademark infringement at Lontex as a Pennsylvania corporation with its headquarters, brunt of harm, and trademark home situs being in Pennsylvania.

9.      Venue is proper in this judicial district under 28 U.S.C § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this district, and NIKE resides in this district by virtue of being subject to personal jurisdiction in this judicial district by, among others, their repeated availment and direction of their activities toward this district, their operating of NIKE-branded retail store in this district (in which, on information and belief, NIKE sold the infringing products), and the actions alleged herein.

## GENERAL ALLEGATIONS

10.      Lontex has been providing professional teams and collegiate teams with athletic apparel products since 1989.  By 2006, Lontex was well-regarded, including amongst the NFL teams, collegiate sports teams (including a large percentage of the Division One schools) and with doctors of sports medicine. Lontex's COOL COMPRESSION line of products are very popular, with customers throughout the nation.  This includes the best athletes and professional sports teams from across the country, including at least 25 teams from the NFL, 15 teams from the MLB, as well as various NHL, AHL, and NBA professional sports teams.

11.     To capture additional market share, broaden its appeal, and provide a unique identifier to be associated with its special compression technology, in 2006, Lontex applied for and obtained two federal trademark registrations for COOL COMPRESSION for a variety of clothing in Class 25, including one word mark (U.S. Reg. No. 3,416,053) and one design mark (U.S. Reg. No. 3,416,236):



12.     The listed goods in Class 25 for both COOL COMPRESSION marks are: "Men's, women's and children's clothing, namely, socks, underwear including boxer shorts, briefs, bikini underpants, and long johns, tshirts, polo shirts, swimwear, compression shirts, compression shorts, compression tights, sweatpants, sweatshirts, body armor carrier compression shirts for military and law enforcement personnel, sports bras, halter tops, singlets, caps, hats, headbands, bandanas, balaclavas, sneakers and shoes."

13.     In 2008, to protect its valuable trademark rights, Lontex also applied for and obtained U.S. Trademark Registration No. 3,611,406 for the COOL COMPRESSION word mark in Class 010 for: "Compression supports, namely, compression sleeves for use as ankle supporters, arm supporters, elbow supporters, wrist supporters, knee supporters, compression tights and compression leggings, all for medical use and abdominal compression shorts, back support shorts, thigh groin hip support shorts, compression socks, compression body suits, compression vests, compression briefs and compression shirts, all for medical use."

14.     True and correct copies of the registrations for U.S. Trademark Registration Nos. 3,416,053, 3,416,236, and 3,611,406 (collectively, the "COOL COMPRESSION Mark") are attached hereto as Exhibit A. Collectively the goods identified in these registrations are referred to as the "COOL COMPRESSION Goods").

15.     Lontex has continuously and consistently used the COOL COMPRESSION Mark since starting its use, developing substantial goodwill as the source of COOL COMPRESSION Goods across the entire United States.

16.     The federal registrations for the COOL COMPRESSION Mark are all incontestable.

17.     The COOL COMPRESSION Mark is inherently distinctive and generates consistent commercial success, establishing strong secondary meaning throughout the United States:

   a.   Lontex has sold millions of dollars in COOL COMPRESSION apparel and compression support, representing over 40,000 COOL COMPRESSION Goods.

   b.   These COOL COMPRESSION sales span every state in the United States, and are strengthened by consistent consumer recognition , a network of doctors (including family doctors, sports doctors and team doctors), and sports teams (including athletic trainers, both head and all assistant athletic trainers).

   c.   The COOL COMPRESSION Goods have been promoted and offered through a variety of distribution channels, including retail sales such as direct-to-consumer sites coolcompression.com and sweatitout.com, doctor and medical

referrals, sports organization, (both professional, collegiate, school, and other

sports organizations), and speaking engagements by Lontex staff.

d.   Media and news exposure.

e.   Referrals and word of mouth.

**NIKE's Wrongful Conduct Involving the COOL COMPRESSION Mark**

18.     NIKE has developed its Nike brand for shoes and athletic apparel.  The brands are

sold internationally through authorized distributors, resellers, and retailers, including in this

judicial district.

19.     In approximately January 2016, Lontex discovered that Nike was selling apparel

under the COOL COMPRESSION trademark.  The sales began at least as early as October 2015,

the date on which NIKE's catalogues indicate the items were available for delivery.

20.     For example, in a sample division / catalogue of NIKE, there were 6 item

numbers for Cool Compression products:

728044 NIKE PRO COOL COMPRESSION SLEEVELESS TOP

728048 NIKE PRO COOL COMPRESSION SHORT-SLEEVE TOP

719903 NIKE PRO COOL COMPRESSION 1/2 SLEEVE TOP

828642 NIKE PRO COOL COMPRESSION 3/4 TIGHT

728047 NIKE PRO COOL COMPRESSION LONG-SLEEVE TOP

728049 NIKE PRO COOL 6" COMPRESSION SHORT

21.     The infringing "Cool Compression" products were sold from the last quarter of

2015 until the present.  The Cool Compression items were placed in NIKE catalogues, including

its baseball, basketball, football, and training catalogues, beginning at least by the fourth quarter

of 2015.

22.     NIKE pervasively and intentionally launched infringing "Cool Compression" products across a broad array of its sale structure, including in the following divisions: NIKE Basketball, Football (Soccer), Men's Training, Women's Training, Sportswear (including American Football, Yoga, Rugby, Spinning, Boxing, Dance), and others (including Lifestyle).

23.     In addition to direct-to-consumer sales, NIKE sold and distributed this infringing athletic apparel to its authorized distributors, resellers, and retailers ("Prohibited Intermediaries") and monitored promotional advertising with respect to its improper use of COOL COMPRESSION. NIKE at no time directed its Prohibited Intermediaries to cease use of the name COOL COMPRESSION in its products. NIKE knew that the failure to do so, after telling their Prohibited Intermediaries that they trademark for their products was "COOL COMPRESSION", would result on the infringing products continuing to be offered for sale and sold under the infringing "COOL COMPRESSION" mark. Accordingly, the Prohibited Intermediaries continue through the present to sell the infringing products under the COOL COMPRESSION trademark. In taking the actions alleged herein and/or ratifying the actions alleged herein, NIKE acted within the scope of this authority for its own financial and individual advantage.

24.     NIKE's Prohibited Intermediaries include, but are not limited to, the following: REI, Target, Macy's, Zappos, Dick's Sporting Goods, East Bay, Foot Locker, and Amazon.

25.     At all relevant times, NIKE knew that the COOL COMPRESSION Mark belonged to Lontex, and was aware of the COOL COMPRESSION Mark Registrations specifically protecting the mark with respect to the sale of athletic apparel.

26.     Yet NIKE has used the COOL COMPRESSION Mark without authorization or approval in connection with the sale of its infringing "Cool Compression" line of products, and

the accused goods are in the same class and overlap with the types of apparel identified in Lontex's registrations.

27.     By its illegitimate and unauthorized use of COOL COMPRESSION, NIKE acted despite knowing of the likelihood of confusion with Lontex's valid, incontestable trademark registrations. At the least, NIKE was reckless and careless in its evaluation of the likelihood of confusion resulting from its infringing use of "Cool Compression" line of products and did not attempt to contact Lontex whatsoever for authorization before using the COOL COMPRESSION Mark.

28.     NIKE's use of its house mark "Nike" and "Nike "Pro" in connection with its unauthorized use of COOL COMPRESSION aggravates consumer confusion in the market for athletic apparel, including because it indicated that NIKE is affiliated with Lontex and has obtained access to Lontex's highly-regarded trademark COOL COMPRESSION technology.

29.     Further, NIKE instructed and controlled its Nike brand through Prohibited Intermediaries who used the COOL COMPRESSION Mark in connection with the sale of its infringing "Cool Compression" line of products regarding the marketing parameters of the product line, and monitored these Prohibited Intermediaries' compliance with NIKE's instructions and directions.

30.     Lontex has received reports by its professional sports team clients that the Nike's compression products are substantially inferior in performance than Lontex's products.

31.     Neither NIKE nor any of its Prohibited Intermediaries have acquired the rights to use the COOL COMPRESSION Mark from Lontex.

32.     As a result of the infringing use of the COOL COMPRESSION trademark, NIKE has made well over $40 million in estimated profits on its infringing "COOL COMPRESSION" line of products, and its Prohibited Intermediaries have made additional profits on the products.

## FIRST COUNT
## TRADEMARK INFRINGEMENT
## UNDER THE LANHAM ACT IN VIOLATION OF 15 U.S.C. § 1114

33.     Lontex repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

34.     Lontex is the owner of the COOL COMPRESSION Mark, which is a federally registered, incontestable, valid, inherently distinctive, and protectable trademark. Lontex has priority of use of the distinctive COOL COMPRESSION Mark as to NIKE.

35.     NIKE has used, authorized and/or directed the use of the COOL COMPRESSION Mark or a confusingly similar variation of the mark in connection with the sale, offering for sale, distribution or advertising of goods and/or services. The marks are identical and used in the sale and advertisement of similar athletic apparel, are targeted at the same audience (purchasers of athletic apparel/equipment), and NIKE's adoption of "Cool Compression" for its line of products was willful and with reckless disregard as to the likelihood of confusion.

36.     NIKE directed the use of the COOL COMPRESSION Mark or a confusingly similar variation of the mark despite knowing that Lontex owns the rights to the COOL COMPRESSION Mark.

37.     NIKE's use of the COOL COMPRESSION Mark has caused confusion in the marketplace, is likely to cause both confusion and mistake, and is likely to deceive consumers or result in the belief that NIKE is legitimately connected with, sponsored by, affiliated with, or licensed or approved by, Lontex; the marks used by NIKE are identical or substantially similar in sound, appearance and meaning to Lontex's trademark. Further, the marks use both the words

comprising the composite mark COOL COMPRESSION, for similar goods and services, use similar marketing channels (including third-party retailers), promote to overlapping distribution channels and consumers, and use the mark with the intent to confuse consumers.

38.     Such use was done willfully and with knowledge that such use would and was likely to cause confusion and deceive the relevant audience.

39.     As a direct and proximate result of NIKE's trademark infringement, Lontex has been damaged within the meaning of 15 U.S.C. § 1114 *et seq.* Lontex has been damaged by both forward and reverse confusion.

40.     NIKE's use constitutes a counterfeit, which was willfully used, and thus Lontex is entitled to statutory damages of up to $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, under 15 U.S.C. § 1117. Each item listed on the register may be treated as a separate good for purposes of their calculation.

41.     Lontex has suffered damages in an amount to be established after proof at trial or in the statutory amount.

42.     Lontex is further entitled to disgorge NIKE's profits for its willful sales and unjust enrichment. NIKE causes all infringing sales of the Prohibited Intermediaries, and is also liable to disgorge all profits of their Prohibited Intermediaries.

43.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that NIKE's acts were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling Lontex to its attorney's fees and an enhancement of damages, including a trebling of its damages and/or disgorged profits. NIKE adopted and continued use of the infringing mark despite knowing Lontex had incontestable, federal trademark registrations covering the same class and types of goods that NIKE used. Even after a demand letter identifying the

infringement of the registered COOL COMPRESSION mark was sent, and NIKE indicated it would cease use, at least Nike's catalogues and sales through Prohibited Intermediaries continued to make the same infringing use of the COOL COMPRESSION mark as before the notice.

44.     As a direct result of NIKE's willful and unlawful actions, Lontex has suffered and continues to suffer irreparable harm and damages, including damage to and diminution in value of the COOL COMPRESSION Mark, necessary corrective advertising, lost sales, tarnishment, and loss of brand control. Lontex's remedy at law is not adequate to compensate for injuries inflicted by NIKE. Thus, Lontex is entitled to temporary, preliminary and permanent injunctive relief.

**SECOND COUNT**
**TRADEMARK INFRINGEMENT**
**UNDER THE LANHAM ACT IN VIOLATION OF 15 U.S.C. § 1125(a)**

45.     Lontex repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

46.     Lontex is the owner and licensor of the COOL COMPRESSION Mark.

47.     NIKE's use of the COOL COMPRESSION Mark has caused confusion in the marketplace, is likely to cause both confusion and mistake, and is likely to deceive consumers or result in the belief that NIKE is legitimately connected with, sponsored by, or licensed or approved by, Lontex; the marks used by NIKE are identical or substantially similar in sound, appearance and meaning to Lontex's trademark. Further, the marks use both the words comprising the composite mark COOL COMPRESSION, for similar goods and services, use similar marketing channels (including third-party retailers), promote to overlapping consumers, and use the mark with the intent to confuse consumers.

48.     Such use was done willfully and with knowledge that such use would and was likely to cause confusion and deceive the relevant audience.

49.     As a direct and proximate result of NIKE's trademark infringement and false designation of origin, Lontex has been damaged within the meaning of 15 U.S.C. § 1125(a).

50.     Lontex has suffered damages in an amount to be established after proof at trial.

51.     Lontex is further entitled to disgorge NIKE's profits for its willful sales and unjust enrichment, as well as disgorging from NIKE the profits of its Prohibited Intermediaries.

52.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that NIKE's acts were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling Lontex to its attorney's fees and an enhancement of damages, including a trebling of its damages and/or disgorged profits.

53.     As a direct result of NIKE's willful and unlawful actions, Lontex has suffered and continues to suffer irreparable harm, including damage to and diminution in value of the COOL COMPRESSION Mark. Lontex's remedy at law is not adequate to compensate for injuries inflicted by NIKE. Thus, Lontex is entitled to temporary, preliminary and permanent injunctive relief.

**THIRD COUNT**
**CONTRIBUTORY TRADEMARK INFRINGEMENT**
**UNDER THE LANHAM ACT IN VIOLATION OF 15 U.S.C. §§ 1114, 1125(a)**

54.     Lontex repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

55.     Lontex is the owner and licensor of the COOL COMPRESSION Mark, which is federally registered, incontestable, valid, and identifies Lontex as the source of COOL COMPRESSION Goods.

56.    NIKE had knowledge of its Prohibited Intermediaries' Lanham Act violations, including trademark infringement, false designation of origin, unfair competition, and counterfeiting.

57.    NIKE intentionally induced others, including its Prohibited Intermediaries, to infringe and use the COOL COMPRESSION Mark.

58.    NIKE is able to exercise direct control and practical control over its Prohibited Intermediaries' Lanham Act violations above.

59.    NIKE monitors its Prohibited Intermediaries' actions that lead to sales of NIKE's competing athletic apparel products, including the Prohibited Intermediaries' Lanham Act violations alleged above.

60.    NIKE could take simple measures to prevent their Prohibited Intermediaries' Lanham Act violations alleged above, but chose not to do so.

61.    NIKE did not prevent their Prohibited Intermediaries' Lanham Act violations, but instead encouraged those actions by refusing to take simple take-down and recall measures to prevent the trademark infringement, false designation of origin, unfair competition, and counterfeiting actions with respect to the COOL COMPRESSION Mark.

62.    NIKE's conduct has damaged and continues to damage Lontex's business, reputation, and goodwill.

63.    NIKE's conduct has been willful and intentional, and NIKE engaged in the actions alleged herein with the purpose of confusing consumers and trading on the goodwill associated with the COOL COMPRESSION Mark.

64.     As a direct and proximate result of NIKE and its Affiliates' trademark infringement, false designation of origin, and unfair competition Lontex has been damaged within the meaning of 15 U.S.C. §§ 1114 and 1125(a).

65.     Lontex has suffered damages in an amount to be established after proof at trial or in the statutory amount.

66.     Lontex is further entitled to disgorge NIKE's profits for its willful sales and unjust enrichment, and also disgorge from NIKE the profits of its Prohibited Intermediaries.

67.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that NIKE's acts were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling Lontex to its attorney's fees and enhanced damages, including a trebling of its damages and/or disgorged profits.

68.     As a direct result of NIKE's willful and unlawful actions, Lontex has suffered and continues to suffer irreparable harm, including damage to and diminution in value of the COOL COMPRESSION Mark. Lontex's remedy at law is not adequate to compensate for injuries inflicted by NIKE. Thus, Lontex is entitled to temporary, preliminary and permanent injunctive relief.

### FOURTH COUNT
### STATUTORY AND COMMON LAW UNFAIR COMPETITION/PASSING OFF

69.     Lontex repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

70.     Lontex has federal and common law trademark rights throughout the entire United States to the COOL COMPRESSION Mark, including but not limited to under the statutes and common laws, *inter alia*, of the States of Pennsylvania, California, Florida, Texas,

New York, New Jersey, Ohio, North Carolina, Maryland, Massachusetts, Illinois, Georgia, Colorado, Indiana, Minnesota, Washington, and the District of Columbia.

71.     NIKE has committed acts of unfair competition and passing off, including trademark infringement, unlawful business practices and related misconduct referred to in this Complaint.  These actions constitute unlawful, unfair or fraudulent business acts or practices, and/or unfair, deceptive, untrue or misleading business practices.  The actions cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services and were done in connection with sales or advertising.  These actions were intentional and knowing acts of infringement and passing of through use of the COOL COMPRESSION Mark.

72.     As a direct and proximate result of NIKE's wrongful acts, Lontex has suffered and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.  As such, Lontex's remedy at law is not adequate to compensate for injuries inflicted by NIKE.  Accordingly, Lontex is entitled to temporary, preliminary and permanent injunctive relief.

73.     By reason of such wrongful acts, Lontex is, was, and will be in the future, deprived of, among other damages, the profits and benefits of business relationships, agreements, and transactions with various third parties and/or prospective business relationships. Defendant's profits are awardable, at least under the laws of Florida, Texas, New York, D.C., New Jersey, Pennsylvania, Ohio, Markland, Massachusetts, Illinois, Georgia, Colorado, Indiana, Minnesota, and Washington.  NIKE has wrongfully obtained profit and benefits instead of Lontex.  Lontex is entitled to compensatory damages and disgorgement of NIKE's said profits, in an amount to be proven at trial, including the profits of its Prohibited Intermediaries.  The damages and/or profits awarded should be enhanced or trebled, under at least the laws of

California, Texas, New York, D.C., New Jersey, Ohio, North Carolina, Massachusetts, Colorado, Indiana, and Washington.

74.     Such acts, as alleged above, were done with malice, oppression and/or fraud, thus entitling Lontex to exemplary and punitive damages for common law unfair competition and trademark infringement, under at least the laws of at least Florida, California, Texas, New York, D.C., Pennsylvania, Ohio, Maryland, Illinois, Georgia and Minnesota.

75.     Lontex is entitled to its reasonable attorneys' fees under state law, including Florida, California, Texas, New York, D.C., New Jersey, Ohio, North Carolina, Massachusetts, Illinois, Georgia, Colorado, Minnesota, and Washington.

## **PRAYER FOR RELIEF**

WHEREFORE, Lontex demands the following relief for each cause of action unless otherwise noted:

1.     A judgment in favor of Lontex and against NIKE on all counts;

2.     A preliminary and permanent injunction from trademark infringement and unfair business practices by NIKE;

3.     Damages in an amount to be determined at trial;

4.     NIKE's unjust enrichment and/or disgorgement of NIKE's profits, and the unjust enrichment and/or profits of NIKE's Prohibited Intermediaries, all enhanced including trebling;

5.     Trebling of damages for willful infringement, unfair competition, and dilution;

6.     Exemplary and punitive damages;

7.     Pre-judgment interest at the legally allowable rate on all amounts owed;

8.     Statutory damages of up to $2 million under 15 U.S.C. § 1117(c) for infringement of a registered mark per type of goods or services;

9.      Costs and expenses;

10      Attorney's fees and other fees under, among others, 15 U.S.C. § 1117(a) and (b)

*et seq*. as an exceptional case, and under state law and use of a willful counterfeit Mark;

11.     Restitution; and

12.     Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Lontex hereby demands a trial by jury on all issues triable pursuant to Rule 38(b) of the

Federal Rules of Civil Procedure.

DATED: December 31, 2018

SEMANOFF ORMSBY
GREENBERG & TORCHIA, LLC

BY: 

MICHAEL B. DUBIN, ESQ. (PA SBN 70681)
2617 Huntingdon Pike
Huntingdon Valley, PA  19006

MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO PC
Andrew D. Skale (CA SBN 211096)
adskale@mintz.com
Ben L. Wagner (CA SBN 243594)
blwagner@mintz.com
*Of Counsel, Pro Hac Vice Forthcoming*
3580 Carmel Mountain Road, Suite 300n
Diego, CA 92130
Telephone:   (858) 314-1500
Facsimile:    (858) 314-1501

Counsel for Plaintiff LONTEX

**EXHIBIT A**

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**United States Patent and Trademark Office**

Reg. No. 3,416,053

Registered Apr. 22, 2008

## TRADEMARK
### PRINCIPAL REGISTER

# COOL COMPRESSION

LONTEX CORPORATION (PENNSYLVANIA CORPORATION)
4TH FLOOR
8 DEKALB STREET
NORRISTOWN, PA 19401

FOR: MEN'S, WOMEN'S AND CHILDREN'S CLOTHING, NAMELY, SOCKS, UNDERWEAR INCLUDING BOXER SHORTS, BRIEFS, BIKINI UNDERPANTS, AND LONG JOHNS, TSHIRTS, POLO SHIRTS, SWIMWEAR, COMPRESSION SHIRTS, COMPRESSION SHORTS, COMPRESSION TIGHTS, SWEATPANTS, SWEATSHIRTS, BODY ARMOR CARRIER COMPRESSION SHIRTS FOR MILITARY AND LAW ENFORCEMENT PERSONNEL, SPORTS BRAS, HALTER TOPS, SINGLETS, CAPS, HATS, HEADBANDS, BANDANAS, BALACLAVAS, SNEA-

KERS AND SHOES, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 6-18-2007; IN COMMERCE 6-18-2007.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPRESSION", APART FROM THE MARK AS SHOWN.

SN 78-864,885, FILED 4-19-2006.

SANDRA MANIOS, EXAMINING ATTORNEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

## United States Patent and Trademark Office

Reg. No. 3,416,236

Registered Apr. 22, 2008

## TRADEMARK
### PRINCIPAL REGISTER



LONTEX CORPORATION (PENNSYLVANIA CORPORATION)
4TH FLOOR
8 DEKALB STREET
NORRISTOWN, PA 19401

FOR: MEN'S, WOMEN'S AND CHILDREN'S CLOTHING, NAMELY, SOCKS, UNDERWEAR INCLUDING BOXER SHORTS, BRIEFS, BIKINI UNDERPANTS, AND LONG JOHNS, TSHIRTS, POLO SHIRTS, SWIMWEAR, COMPRESSION SHIRTS, COMPRESSION SHORTS, COMPRESSION TIGHTS, SWEATPANTS, SWEATSHIRTS, BODY ARMOR CARRIER COMPRESSION SHIRTS FOR MILITARY AND LAW ENFORCEMENT PERSONNEL, SPORTS BRAS, HALTER TOPS, SINGLETS, CAPS, HATS, HEADBANDS, BANDANAS, BALACLAVAS, SNEA-

KERS AND SHOES, IN CLASS 25 (U.S CLS. 22 AND 39)

FIRST USE 6-18-2007; IN COMMERCE 6-18-2007.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPRESSION", APART FROM THE MARK AS SHOWN

THE MARK CONSISTS OF THE WORDS "COOL COMPRESSION" NEXT TO THE STYLIZED CONFIGURATION OF A MAN.

SN 78-963,029, FILED 8-29-2006

SANDRA MANIOS, EXAMINING ATTORNEY

Int. Cl.: 10

Prior U.S. Cls.: 26, 39 and 44

**United States Patent and Trademark Office**

Reg. No. 3,611,406

Registered Apr. 28, 2009

## TRADEMARK
### PRINCIPAL REGISTER

# COOL COMPRESSION

LONTEX CORPORATION (PENNSYLVANIA
  CORPORATION)
4TH FLOOR
8 DEKALB STREET
NORRISTOWN, PA 19401

FOR: COMPRESSION SUPPORTS, NAMELY, COMPRESSION SLEEVES FOR USE AS ANKLE SUPPORTERS, ARM SUPPORTERS, ELBOW SUP-PORTERS, WRIST SUPPORTERS, KNEE SUPPOR-TERS, COMPRESSION TIGHTS AND COMPRESSION LEGGINGS, ALL FOR MEDICAL USE AND ABDOMINAL COMPRESSION SHORTS, BACK SUPPORT SHORTS, THIGH GROIN HIP SUPPORT SHORTS, COMPRESSION SOCKS, COM-PRESSION BODY SUITS, COMPRESSION VESTS, COMPRESSION BRIEFS AND COMPRESSION SHIRTS, ALL FOR MEDICAL USE, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 6-18-2007; IN COMMERCE 6-18-2007

THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U S REG NOS. 3,114,701, 3,416,053, AND 3,416,236

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPRESSION", APART FROM THE MARK AS SHOWN

SER. NO. 77-476,891, FILED 5-16-2008.

PAULA MAHONEY, EXAMINING ATTORNEY