IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION, <br>                       Plaintiff, <br><br> v. <br><br> NIKE, INC., <br>                       Defendant. | Civil Action No.: 18-cv-5623 <br><br> (Hon. Michael M. Baylson) |

**DEFENDANT NIKE, INC.'S REPLY BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF LONTEX CORPORATION'S CLAIMS FOR TRADEMARK COUNTERFEITING**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................3

    I.    Lontex's Counterfeiting Claims Are Subject to Dismissal under Rule 12(b)(6).....3

    II.    Lontex's Counterfeiting Claims Fail as a Matter of Law ........................................6

    III.    Lontex's Request for Leave to Amend Should Be Denied and Its Trademark Counterfeiting Claims Should Be Dismissed with Prejudice. ...............................12

CONCLUSION.....................................................................................................................14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adams v. Grand Slam Club/Ovis*,
  No. 12 Civ. 2938, 2013 WL 1444335 (D. Colo. Apr. 9, 2013) .................................................9

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*,
  940 F. Supp. 2d 850 (C.D. Ill. 2013) .......................................................................................5

*Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*,
  No. 12 CIV. 5423 LAP, 2015 WL 150756 (S.D.N.Y. Jan. 12, 2015) ...................................1, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................6, 9

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ...................................................................................................12

*Chanel, Inc. v. Matos*,
  133 F. Supp. 3d 678 (D.N.J. 2015) ............................................................................................5

*Colgate–Palmolive Co. v. J.M.D. All-Star Imports & Exports Inc.*,
  486 F. Supp. 2d 286 (S.D.N.Y. 2007) ......................................................................................10

*Coty Inc. v. Excell Brands, LLC*,
  277 F. Supp. 3d 42 (S.D.N.Y. 2017) ........................................................................................10

*Country Floors, Inc. v. Gepner*,
  930 F.2d 1056 (3d Cir. 1991) .....................................................................................................5

*Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*,
  No. 12 Civ. 1416 GBD RLE, 2015 WL 4468083 (S.D.N.Y. July 8, 2015) ..........................6, 7

*Figueroa Ruiz v. Alegria*,
  896 F.2d 645 (1st Cir. 1990) ....................................................................................................14

*Fischer v. Forrest*,
  2017 WL 128705 (S.D.N.Y. Jan. 13, 2017) .........................................................................5, 6

*Fujifilm N. Am. Corp. v. PLR IP Holdings, LLC*,
  No. 17 CIV. 8796 (NRB), 2019 WL 274967 (S.D.N.Y. Jan. 7, 2019) .............................4, 5, 7

*Gucci Am., Inc. v. Guess?*,
  868 F. Supp. 2d 207 (S.D.N.Y. 2012) .....................................................................................6, 7

*Harp v. Rahme*,
    984 F. Supp. 2d 398 (E.D. Pa. 2013) ............................................................................................2

*Johnson v. Connolly*,
    No. C 06-6414 VRW, 2007 WL 1151004 (N.D. Cal. Apr. 18, 2007) ...................................4, 6

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013) ......................................................................................................10

*Midwest Grinding Co. v. Spitz*,
    976 F.2d 1016 (7th Cir. 1992) ..................................................................................................14

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
    12 F. Supp. 3d 1341 (W.D. Wash. 2014) ...................................................................................9

*Pennzoil–Quaker State Co. v. Smith*,
    No. 05–1505, 2008 WL 4107159 (W.D. Pa. Sept. 2, 2008) ...................................................2, 5

*Phelan Holdings, Inc. v. Wendy's Int'l, Inc.*,
    2012 WL 3000263 (M.D. Fla. July 3, 2012) .............................................................................4

*Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc.*,
    No. CIV. A. 96-CV-6961, 1998 WL 288423 (E.D. Pa. June 3, 1998) ............................. passim

*Playvision Labs, Inc. v. Nintendo of Am., Inc.*,
    No. C14-05365 CRB, 2015 WL 12941892 (N.D. Cal. May 18, 2015) ..................................2, 4

*Rosta AG v. Lovejoy, Inc*
    No. 1:16-CV-199, 2017 WL 3473841 (W.D. Mich. Aug. 14, 2017) .........................................5

*Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*,
    No. 3:17-CV-0054-B, 2018 WL 1806500 (N.D. Tex. Apr. 17, 2018) ...................................4, 9

*State Distributors, Inc. v. Glenmore Distilleries*,
    738 F.2d 405 (10th Cir. 1984) ..................................................................................................13

*Tiffany & Co. v. Costco Wholesale Corp.*,
    127 F. Supp. 3d 241 (S.D.N.Y. 2015) ........................................................................................8

*Tovey v. Nike, Inc.*,
    2013 WL 486341, at *4 (N.D. Ohio Feb. 6, 2013) ....................................................................4

*Waiter.com, Inc. v. Waitr, Inc.*,
    2016 WL 7443656 (W.D. La. Dec. 22, 2016) ...........................................................................4

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*,
    106 F.3d 894 (9th Cir. 1997) .....................................................................................................5

**Statutes**

15 U.S.C. § 1114(1)(a) ............................................................................................................ *passim*

15 U.S.C. § 1117(c) ......................................................................................................................4

15 U.S.C. § 1127 ..........................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................................6

Fed. R. Civ. P. 10 .......................................................................................................................12

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... *passim*

Fed. R. Civ. P. 15(a)(2) ..............................................................................................................13

2-5 GILSON ON TRADEMARKS § 5.19 ...........................................................................................4

4 MCCARTHY ON TRADEMARKS § 25:15 ................................................................................9, 14

Defendant NIKE, Inc. ("NIKE") respectfully submits this Reply in further support of its partial Motion to Dismiss Counts One and Three of Plaintiff Lontex Corporation's ("Lontex") First Amended Complaint's ("FAC") for failure to state a claim (the "Motion").

## **INTRODUCTION**

While Lontex's opposition brief is filled with rhetoric about NIKE's alleged "blatant" and "malicious" "scheme," its FAC remains bereft of any plausible counterfeiting allegation. Lontex Op. Br. at 2, ECF No. 24 ("Op. Br."). The standard for establishing trademark counterfeiting is higher than the standard for establishing trademark infringement, and if Lontex cannot plead facts that meet this standard, the counterfeiting claims should be disposed of now to streamline this case. Lontex has had two opportunities to plead its claims, after what is now more than three years of sitting by and observing this purportedly "malicious" conduct of NIKE. If Lontex had credible facts to allege, it would have pled them by now. Instead, in its FAC, Lontex serves up a handful of NIKE product descriptions which incorporate, among other words, common terminology for athletic apparel like "cool" and "compression." Lontex's added rhetoric about "counterfeiting" and a supposed "malicious" scheme does not make up for the conspicuous absence of *any* well-pled allegations that NIKE intentionally created a calculated reproduction of Lontex's mark and attempted to deceive consumers by passing off its accused products as genuine Lontex products. Such allegations, according to courts and commentators alike, are the "essence" of counterfeiting, and they are totally absent here. *See, e.g.*, *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, No. 12 Civ. 5423 LAP, 2015 WL 150756, at *2 (S.D.N.Y. Jan. 12, 2015). If anything, Lontex's allegations lead to quite the opposite inference: NIKE did nothing to suggest that its products were anything but NIKE products.

NIKE's Motion, like any Fed. R. Civ. P. 12(b)(6) motion, sets forth a pleading standard for the claim(s) asserted—here, the Lanham Act's statutory cause of action for use of a "counterfeit" mark, as defined in the Act—and explains why Lontex's threadbare legal conclusions, alleged without sufficiently pleaded supporting facts, are insufficient to state a claim for relief. In opposition, Lontex raises a bevy of unsupported legal arguments to distract from its pleading deficiencies.

Lontex contends that counterfeiting claims under the Lanham Act are *per se* immune from dismissal at the pleading stage because, according to Lontex, "counterfeiting is a form of relief and not a claim." Op. Br. at 5-8.[1] Lontex's false distinction is belied by the Lanham Act's plain language setting forth a cause of action for use of a counterfeit mark under 15 U.S.C. § 1114(1)(a). Indeed, courts routinely dismiss pleadings asserting boilerplate, conclusory counterfeiting allegations that are bootstrapped to otherwise ordinary allegations of trademark infringement. *See, e.g.*, *Playvision Labs, Inc. v. Nintendo of Am., Inc.*, No. C14-05365 CRB, 2015 WL 12941892, at *1 (N.D. Cal. May 18, 2015). This Court should do exactly the same here and dismiss the counterfeiting "claims" from Counts One and Three of Lontex's FAC.

Lontex then contends that, even if counterfeiting claims are subject to dismissal at the pleading stage, its pleading is sufficient because NIKE's pleading standard is "invented." Op. Br. at 9-12. But NIKE's pleading standard for counterfeiting is well-grounded in jurisprudence

---

[1] Lontex further suggests that its counterfeiting claims under the Lanham Act are also immune from dismissal on summary judgment. Op. Br. at 1. This is absurd. Courts routinely dismiss counterfeiting claims on summary judgment where a plaintiff fails to establish the elements as a matter of law. *See e.g., Harp v. Rahme*, 984 F. Supp. 2d 398, 420 & n.16 (E.D. Pa. 2013); *see also Pennzoil–Quaker State Co. v. Smith*, No. 05–1505, 2008 WL 4107159, at *33 (W.D. Pa. Sept. 2, 2008) (concluding that because "Plaintiff has failed to establish a claim for federal trademark counterfeiting, statutory damages are not available"). In any event, NIKE's Motion attacks the sufficiency of Lontex's pleading, and so this contention concerning summary judgment is simply irrelevant.

uniformly recognizing that counterfeiting, the "hard core" or "first degree" of trademark infringement, requires more than merely pleading, and ultimately proving, the elements of basic trademark infringement.  NIKE's Motion does not suggest a precise litmus tests for counterfeiting, like whether the accused infringer uses its house mark, whether the accused counterfeit mark is used in a particular way on the product, or whether the accused infringer is a big or a small company.  Rather, NIKE contends that when the sum total of Lontex's factual allegations (excluding the legal conclusions) are considered, Lontex has not stated a plausible claim for counterfeiting.

At most, Lontex's allegations sound in basic trademark infringement (*i.e.*, false association between the parties), not counterfeiting.  For example, Lontex alleges that it "has received reports by its professional sports team clients that the Nike's compression products are substantially inferior in performance than Lontex's products."  FAC ¶ 30.  If true, which NIKE disputes, the only plausible inference to be drawn therefrom is that those consumers bought the accused product, ***knowing that it was a NIKE product*** (likely because NIKE uses its well-known marks on, and in connection with, all of its products), and advised Lontex that NIKE's products were allegedly of lesser quality.  Notably, Lontex does not allege that NIKE ***used a counterfeit mark to deceive*** those consumers into buying a product that ***they believed to be genuine Lontex product*** (whatever that may look like, because Lontex fails to allege those facts too).  Accordingly, Lontex's counterfeiting claims fail as a matter of law and must be dismissed with prejudice.

## ARGUMENT

### I. Lontex's Counterfeiting Claims Are Subject to Dismissal under Rule 12(b)(6).

Section 32(a) of the Lanham Act expressly states that one who uses a "counterfeit . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use," where "such use is likely to cause

3

confusion, or to cause mistake, or to deceive," shall be liable in a civil action. 15 U.S.C. § 1114(1)(a). The Lanham Act establishes a claim for counterfeiting, which is distinct from a claim for trademark infringement, and which carries remedies that are distinct from the remedies for trademark infringement. *See* 15 U.S.C. §§ 1114(1)(a), 1117(c); *see also Johnson v. Connolly*, No. C 06-6414 VRW, 2007 WL 1151004, at *2 (N.D. Cal. Apr. 18, 2007) ("[t]he Lanham Act does not provide statutory damages to all victims of infringement, only those whose goods have been counterfeited."); 2-5 GILSON ON TRADEMARKS § 5.19 ("[c]ounterfeiting is a subset of trademark infringement. All counterfeits infringe, but not all infringements are counterfeit.").

Despite this plain language, Lontex contends that counterfeiting is merely a "remedy" and "not a separate claim," and is therefore not subject to Fed. R. Civ. P. 12(b)(6) dismissal for failure to state a claim. Lontex is wrong. By mischaracterizing counterfeiting as only a remedy, Lontex invites error by asking this Court to announce a bright-line rule that all allegations of counterfeiting are *per se* immune from dismissal under Fed. R. Civ. P. 12(b)(6). Op. Br. at 2, ECF No. 24. This is not the law. A claim for counterfeiting, like any other claim, is subject to dismissal where a plaintiff fails to plausibly allege the elements of the claim. *See e.g.*, *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, No. 3:17-CV-0054-B, 2018 WL 1806500, at *3 (N.D. Tex. Apr. 17, 2018); *see*, *infra*, note 2. And failing to plausibly allege the necessary elements of a claim for counterfeiting is exactly what Lontex has done here, twice, and accordingly its claims must be dismissed with prejudice.

Indeed, courts routinely dismiss assertions of trademark counterfeiting at the pleading stage, even where a plaintiff has adequately pleaded a claim for trademark infringement.[2] And

---

[2] *See, e.g.*, *Fujifilm N. Am. Corp. v. PLR IP Holdings, LLC*, No. 17 Civ. 8796 (NRB), 2019 WL 274967 (S.D.N.Y. Jan. 7, 2019); *Springboards to Educ., Inc.*, 2018 WL 1806500, at *1; *Tovey v. Nike, Inc.*, 12-cv-448, 2013 WL 486341, at *4 (N.D. Ohio Feb. 6, 2013); *Phelan Holdings, Inc. v.*

other courts, including this Court, have acknowledged that trademark counterfeiting is a claim or cause of action, not a mere prayer for relief. *See, e.g.*, *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 899 (9th Cir. 1997) (treating counterfeiting as a distinct "cause of action" and "claim"); *Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc.,* No. . 96 Civ.6961, 1998 WL 288423, at *2 (E.D. Pa. June 3, 1998) (setting out the elements to state a "counterfeiting claim"); *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 685–86 (D.N.J. 2015) (same); *Pennzoil-Quaker State Co.*, 2008 WL 4107159, at *22 ("the Court finds, as a matter of law, that Plaintiff has failed to establish an essential element of its trademark counterfeiting claim, and therefore recommends that Plaintiff's motion for summary judgment on this claim be denied.").[3] These cases correctly apply the law, contrary to Lontex's suggestion otherwise.[4]

---

*Wendy's Int'l, Inc.*, 2:11-cv-392-FTM, 2012 WL 3000263, at *6 (M.D. Fla. July 3, 2012); *Playvision Labs, Inc..,* 2015 WL 12941892, at *1–2 ; *Waiter.com, Inc. v. Waitr, Inc.*, 2:16-cv-01041, 2016 WL 7443656, at *4 (W.D. La. Dec. 22, 2016); *Fischer v. Forrest*, 14 Civ. 1304 PAEAJP, 2017 WL 128705, at *13 (S.D.N.Y. Jan. 13, 2017).

[3] Lontex criticizes NIKE for citing "so little Third Circuit" law, Op. Br. at 1, but does not itself cite any Third Circuit law on counterfeiting. In fact, Lontex cites just one Third Circuit trademark case in its entire brief, which it claims supports its faulty proposition that counterfeiting claims are not even susceptible to summary judgment. *Id.* (citing *Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1063 (3d Cir. 1991)). *Gepner* is irrelevant. In *Gepner*, a case that did not address counterfeiting, the Third Circuit merely held that the district court erred by considering credibility determinations it made at a prior preliminary injunction hearing when assessing a later-filed summary judgment motion. In so holding, the Court noted that generally, but not always, likelihood of confusion in a trademark infringement action is a question of fact. *Id.* For ***counterfeiting*** purposes, however, Lontex must plead that NIKE was "***passing off***" its allegedly infringing goods as Lontex's, "rather than merely presented in a manner likely to confuse some consumers as to the origin or sponsorship of the infringer's product." *Fujifilm N. Am. Corp.*, 2019 WL 274967, at *3 (emphasis in original).

[4] Lontex urges this Court to ignore all of these authorities based on two inapplicable decisions from out-of-Circuit district courts. Op. Br. at 7-8. Lontex's out-of-Circuit cases have no bearing here, and, in fact, show that Lontex must plead facts plausibly establishing it is entitled to counterfeiting remedies. In *Rosta AG v. Lovejoy, Inc* No. 1:16-CV-199, 2017 WL 3473841, at *2 (W.D. Mich. Aug. 14, 2017), while the court noted that trademark infringement and counterfeiting claims do not need to be pleaded separately, it nevertheless held that plaintiff had "alleged sufficient facts to state a claim for counterfeiting." *Id.* Likewise, in *All Star Championship Racing,*

5

The federal pleading standards confirm this conclusion. Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) unless Lontex establishes its entitlement to "*relief* that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); Fed. R. Civ. P. 8(a)(2). That is, as a matter of law, Lontex could only be entitled to counterfeiting *relief*—*i.e.*, enhanced statutory damages—if it plausibly pleads and later establishes counterfeit use by NIKE under the Lanham Act. *Johnson*, 2007 WL 1151004, at *2; *see Forrest*, 2017 WL 128705, at *13 (S.D.N.Y. Jan. 13, 2017) ("[W]hatever other liability defendants may face for alleged improper use of the Bee-Quick mark, Fischer cannot establish a counterfeiting claim."). Lontex has not and cannot plausibly plead counterfeit use by NIKE under the Lanham Act, and thus its "claims" must be dismissed with prejudice.

## II.     Lontex's Counterfeiting Claims Fail as a Matter of Law.

Lontex ignores the different definitions of counterfeiting and infringement in an attempt to obscure the fatal deficiencies in its pleading. The Lanham Act defines a "counterfeit" mark as "a spurious[5] mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Thus, the standard for establishing trademark counterfeiting is higher than the standard for establishing trademark infringement, which merely requires use of a mark that is a "colorable imitation" of a registered mark. 15 U.S.C. § 1114(1)(a); *see also Gucci Am., Inc. v. Guess?*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) (counterfeiting "is the 'hard core' or 'first degree' of trademark infringement."). Not only has Lontex failed to plead a claim that meets this

---

*Inc. v. O'Reilly Auto. Stores, Inc*., 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013), the court set forth three "elements of a counterfeit mark" that a plaintiff must plead and ultimately prove.

[5] "Although 'spurious' is not a statutorily defined term under the Lanham Act," courts have defined it as "deceptively suggesting an erroneous origin; fake." *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, No. 12 Civ. 1416 GBD RLE, 2015 WL 4468083, at *3 (S.D.N.Y. July 8, 2015) (collecting cases).

6

heightened standard, Lontex also mischaracterizes NIKE's argument about why Lontex fails to meet it.

To state a claim for counterfeiting, Lontex must allege plausibly that NIKE used a "spurious mark" that "is identical with, or substantially indistinguishable from," Lontex's registered COOL COMPRESSION mark. 15 U.S.C. § 1127. Lontex must also allege plausibly that NIKE used the counterfeit mark on the same goods identified in Lontex's registration and that NIKE was "passing off" its allegedly infringing goods as genuine Lontex goods, "rather than merely present[ing them] in a manner likely to confuse some consumers as to the origin or sponsorship of the infringer's product." *Fujifilm N. Am. Corp.*, 2019 WL 274967, at *3.

NIKE has not "invented" these elements, as Lontex argues. Op. Br. at 10-12. Indeed these requirements are well-grounded in the law. As this Court has held, counterfeiting requires making "counterfeit uses of a mark ***on the same goods*** or services as are covered by the plaintiff's registration of that mark." *Playboy Enterprises, Inc.*,, 1998 WL 288423, at *4 (emphasis added); *see also Excelled Sheepskin & Leather Coat Corp.*, 2015 WL 4468083, at *3 (explaining that "the alleged counterfeit mark must be compared with the registered mark as it appears on actual merchandise to an average purchaser"). Courts have also held that the alleged counterfeit mark must be used to "pass off" the accused infringer's product as genuine originals. *Audemars Piguet Holding S.A.*, 2015 WL 150756, at *2 (emphasis added). In other words, "[t]he essence of counterfeiting is that the use of the infringing mark 'seeks to trick the consumer into believing he or she is getting the genuine article, rather than a colorable imitation.'" *Id*. (quoting *Gucci Am.*, 868 F. Supp. 2d at 242).

Rather than explain how its conclusory allegations meet this heightened standard, Lontex contends that NIKE's "invented" standard would render counterfeiting inapplicable to situations

7

"where a product's display or packaging utilized a counterfeit mark while the merchandise itself lacked any emblem, mark, or designation." Op. Br. at 10 (citing *Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241 (S.D.N.Y. 2015)). But Lontex's hypothetical situation is antithetical to its own factual allegations, and *Tiffany* is inapposite.

Other than the scant allegation that NIKE used a counterfeit mark by including the words "cool" and "compression" in a product catalog to describe its NIKE athletic wear, Lontex does not allege that NIKE's accused products *themselves* lacked any emblem, mark, or designation. In fact, Lontex's FAC is bereft of any allegations describing how NIKE's accused product actually appeared in the marketplace—Lontex provides no image of NIKE's accused product, nor does it attach as an exhibit the "malicious" product catalogue.

In *Tiffany*, the court found that Costco had engaged in counterfeiting by selling rings that were essentially copies of Tiffany & Co.'s famous designs, even though generic, non-Tiffany trademarks were inscribed on the rings' inner surfaces. 127 F. Supp. 3d at 255. A key fact, crucial to the court's conclusion, was that Costco placed the accused product in display cases with the word "Tiffany" positioned on the "display case signs," "where the brand manufacturer's name would generally be." *Id*. Thus, the prominent placement of the "Tiffany" word mark made it "appear to consumers in the marketplace" that the rings were *genuine* Tiffany rings, even if the Tiffany trademark was not on the ring itself. Lontex alleges no such comparable facts here.

Lontex contends, contrary to the weight of this authority, that its allegations that NIKE used the words "cool compression," either unadorned or in direct proximity to NIKE's house mark, in connection with the sale of athletic clothing is "enough under the plausibility standard." Op. Br. at 10. That conclusory allegation is not nearly enough to "nudge[] [its] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and it is not sufficient to state a claim

8

for counterfeiting. *See Adams v. Grand Slam Club/Ovis*, No. 12 Civ. 2938, 2013 WL 1444335, at *7 (D. Colo. Apr. 9, 2013) (dismissing counterfeiting claim based on conclusory allegations that the accused use was "nearly identical and confusingly similar" to plaintiff's registered mark); *see also Playboy Enterprises, Inc.*, 1998 WL 288423, at *4; *Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1351-52 (W.D. Wash. 2014) (dismissing plaintiffs' counterfeiting allegations because they failed to present any plausible facts to support the claim "beyond bare recitation of the [claim] element[s]"); *Springboards to Edu., Inc.*, 2018 WL 1806500, at *3 (dismissing count for counterfeiting because the complaint showed that the accused marks were clearly not "identical to or substantially indistinguishable from" the plaintiff's marks); 4 MCCARTHY ON TRADEMARKS § 25:15.50 (5th ed. 2019) (explaining that "to properly plead a case of civil counterfeiting it is not sufficient for plaintiff to make a conclusory allegation that the accused use is 'nearly identical' and a 'counterfeit'"). Lontex's counterfeiting claims should be dismissed with prejudice.

Not only does Lontex fail to plead a plausible counterfeiting claim, the allegations pleaded actually undermine the plausibility of its counterfeiting assertions. Lontex's pleading sounds in basic trademark infringement, not counterfeiting. For example, Lontex alleges that NIKE's alleged use of COOL COMPRESSION as a "product mark" alongside its NIKE house mark "leads consumers to falsely believe that NIKE has obtained permission to use Plaintiff's COOL COMPRESSION branded technology," FAC ¶ 21, or that NIKE "has acquired the rights to bring Plaintiff's COOL COMPRESSION products in-house and is now itself selling compression products with Plaintiff's COOL COMPRESSION technology." FAC ¶ 22. Even if taken as true, which NIKE disputes, the ***only*** plausible inference to be drawn from these allegations is that the consumers bought the accused product, ***knowing*** that it was a ***NIKE product***, not a genuine Lontex product, and wrongly concluded that NIKE and Lontex were somehow associated or affiliated or

9

that Lontex sponsors NIKE's products. Although Lontex contends that NIKE's alleged use of a counterfeit mark alongside the NIKE house mark is an issue to be decided on summary judgment, Op. Br. at 17-21, these allegations, ***at best***, state a plausible claim for ordinary trademark infringement under § 1114(1)(a) or false designation of origin under § 1125(a), not counterfeiting, thereby foreclosing any counterfeiting claim as a matter of law. *See, e.g.*, *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314–315 (2d Cir. 2013); *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 435, 468-69 (S.D.N.Y. 2017); *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. 14-CV-609 (DDP) (SSX), 2016 WL 7479317, at *7 (C.D. Cal. Dec. 29, 2016); *Colgate–Palmolive Co. v. J.M.D. All-Star Imports & Exports Inc.*, 486 F. Supp. 2d 286, 291 (S.D.N.Y. 2007). As another example, Lontex alleges that it "has received reports by its professional sports team clients that the Nike's compression products are substantially inferior in performance than Lontex's products." FAC ¶ 33. Again, even if true, and NIKE disputes that it is, the ***only*** plausible inference to be drawn from this allegation is that the consumers bought the accused product, ***knowing*** that it was a ***NIKE product***, not a genuine Lontex product, concluded that NIKE's products were of lesser quality, and complained to Lontex about it. This allegation does not even give rise to an inference of consumer confusion (*i.e.*, these consumers knew exactly who was the source of the accused product), and it certainly does not give rise to a plausible claim for counterfeiting. Lontex's counterfeiting claims fail as a matter of law and must be dismissed with prejudice.

Finally, in a last-ditch attempt to save its counterfeiting claims, Lontex contends that a single allegation sufficiently states a plausible counterfeiting claim. Op. Br. at 12-17. Lontex alleges: "In addition, the infringing products have also been advertised, promoted and sold using the product mark COOL COMPRESSION without NIKE PRO or any other Nike house mark next to or near it." FAC ¶ 23. This allegation about unspecified "use" is the zenith of conclusory. *See*

10

15 U.S.C. § 1114(1)(a) (requiring as a statutory element counterfeit "use"); *Playboy Enterprises, Inc.*, 1998 WL 288423, at *4 (explaining that a plaintiff must plead "counterfeit uses of a mark on the same goods or services as are covered by the plaintiff's registration of that mark"). Lontex does not allege *which* infringing products were allegedly advertised, promoted, or sold using the COOL COMPRESSION mark without NIKE PRO or any other NIKE house mark. Lontex does not allege *where*, or in *what media*, these infringing products were allegedly advertised, promoted, or sold using the COOL COMPRESSION mark without NIKE PRO or any other NIKE house mark. Lontex does not allege *who* allegedly, advertised, promoted, or sold the infringing products using the COOL COMPRESSION mark without NIKE PRO or any other NIKE house mark. And Lontex does not allege *how* the infringing products were allegedly advertised, promoted, or sold using the COOL COMPRESSION mark without NIKE PRO or any other NIKE house mark.

Lontex concedes in its FAC that it discovered NIKE's alleged infringement in January 2016, FAC ¶ 19, yet Lontex fails to include any further factual allegations that could support its conclusory allegation that an unidentified party allegedly "advertised, promoted and sold using the product mark COOL COMPRESSION without NIKE PRO or any other Nike house mark next to or near it." FAC ¶ 23. Lontex is equally cautious and intentionally vague in its Opposition, arguing passively, and without citation, that "[u]se without Nike's house mark is alleged." Op. Br. at 17. Lontex asserts, also without citation, that "Nike and its retailers advertised promoted and sold goods using the exact COOL COMPRESSION mark without a NIKE house mark." Op. Br. at 14. But Lontex never actually pleaded these facts in the FAC and it cannot simply add them now via an opposition to a motion to dismiss. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997).

In sum, Lontex's counterfeiting claims fail as a matter of law and must be dismissed with prejudice.

**III. Lontex's Request for Leave to Amend Should Be Denied and Its Trademark Counterfeiting Claims Should Be Dismissed with Prejudice.**

This Court should dismiss Lontex's implausible counterfeiting claims with prejudice and deny Lontex's request for leave to again amend its complaint. Three years have passed between when Lontex first allegedly learned of NIKE's supposed "blatant" and "malicious" counterfeiting "scheme," and when it brought this action. Op. Br. at 2. Another three months passed between when Lontex filed this action and when it amended its complaint. *See* Compl., ECF No. 1 (filed Dec. 31, 2018); FAC (filed March 12, 2019). Lontex has had ample opportunity to come forward with any facts supporting its counterfeiting allegations. Its failure to allege those facts alone warrants dismissal with prejudice.

Lontex tellingly fails to articulate any new facts it could allege—consistent with its obligations under Fed. R. Civ. P. 10—that would cure the defects identified in NIKE's Motion. Lontex does not state that it could allege that NIKE sold products emblazoned with the COOL COMPRESSION mark, because Lontex cannot. Instead, Lontex rests its assertion of counterfeiting on NIKE's use of the product description "NIKE PRO Cool Compression" in a NIKE catalog without ever identifying how the accused counterfeit products appeared in the market. Lontex does not state that it could allege facts about how NIKE purportedly engaged in "counterfeit use" of the mark, because NIKE has never sold "stitch-for-stitch" copies of Lontex product or intended to deceive any consumers by passing off any NIKE product as a genuine Lontex product. Lontex does not state that it could make similar allegations about NIKE's intermediaries, because those intermediaries do business with NIKE for the very purpose of selling

12

***NIKE*** products, not Lontex products.  In sum, Lontex's counterfeiting claim should be dismissed with prejudice because it defies common sense.

This is not about the facts at all.  Lontex admits that, despite years to develop the facts and learn the law, it requires the Court to articulate its view of counterfeiting law so Lontex can, again, amend its pleading "to include facts tied to the Courts articulation of the law." Op. Br. at 21.  If Lontex possessed facts to support its counterfeiting claim, it should have alleged them when it amended its complaint in response to NIKE's Fed. R. Civ. P. 12(b)(6) motion to dismiss the original complaint.  Litigants are not entitled to be coached through the pleading process by the Court until they can just barely state a plausible claim—especially not sophisticated litigants, represented by trademark practitioners, that have had more than three years to develop a coherent theory of counterfeiting.  Permitting another amendment would prejudice NIKE and reward Lontex's decision to omit unspecified "facts" from its complaint and would further delay this action, which should have been pleaded as a straightforward infringement action from the outset. *See, e.g.*, *State Distributors, Inc. v. Glenmore Distilleries*, 738 F.2d 405, 416 (10th Cir. 1984) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.").

Finally, "justice" does not require that Lontex be given leave to amend in these circumstances.  Fed. R. Civ. P. 15(a)(2).  Quite to the contrary, Lontex asserts without any basis that NIKE engaged in quasi-criminal conduct so it can hope to obtain millions of dollars in enhanced damages.  In similar contexts, such as civil claims for RICO violations, courts have lamented the widespread abuse of the civil action and have not hesitated to dismiss meritless claims with prejudice at the earliest stage of the pleadings:

13

> A civil RICO suit is in effect quasi-criminal in nature. . . . The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants. In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.

*Figueroa Ruiz v. Alegria*, 896 F.2d 645 (1st Cir. 1990); *see also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025-26 (7th Cir. 1992) (observing the "widespread abuse of civil RICO" which stems from . . . the fact that RICO offers a far more generous compensation scheme than typically available in state court."). That reasoning applies with equal force here. When it created the counterfeiting regime, Congress intended "to discourage 'boilerplate' charges of counterfeiting in ordinary trademark infringement suits and encouraged the assessment of attorney fees for frivolous counterfeiting allegations." 4 MCCARTHY ON TRADEMARKS § 25:15 (citing Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12083 (Oct. 10, 1984).

## CONCLUSION

For these reasons and the reasons set forth in NIKE's motion to dismiss, this Court should dismiss Lontex's counterfeiting claims with prejudice.

Dated: April 15, 2019

Respectfully submitted,

By: /s/ *Gina L. Durham*

DLA PIPER LLP (US)

Gina L. Durham (admitted *pro hac vice*)
555 Mission Street, Suite 2400
San Francisco, CA 94105

Frank W. Ryan (admitted *pro hac vice*)
Marc E. Miller (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 100201

Darius C. Gambino
Ben C. Fabens-Lassen
1650 Mark Street, Suite 5000
Philadelphia, PA 19103
*Attorneys for Defendant NIKE, Inc.*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of April, 2019, I caused Defendant NIKE, Inc.'s Reply Brief in Support of its Partial Motion to Dismiss Plaintiff's Counterfeiting Claims to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania using the ECF system, it is available for viewing and downloading from the ECF system, and a true and correct copy was served via ECF to all counsel of record registered with the ECF system.


BY: /s/ Ben C. Fabens-Lassen