**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LONTEX CORPORATION,**<br><br>v.<br><br>**NIKE, INC.** | **CIVIL ACTION**<br><br>**NO. 18-5623** |

## MEMORANDUM RE: PARTIAL MOTION TO DISMISS

Baylson, J.                                                                                    June 10, 2019

### I.    Introduction

In this case, Plaintiff Lontex Corporation ("Lontex") alleges that Defendant Nike, Inc. ("Nike") committed trademark infringement in violation of the Lanham Act and state law by selling athletic apparel with Lontex's registered "COOL COMPRESSION" mark without authorization. The First Amended Complaint (ECF 20, "FAC") alleges five Counts:

1. **Count I**: Trademark infringement under the Lanham Act, 15 U.S.C. § 1114;

2. **Count II**: Trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a);

3. **Count III**: Contributory trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a);

4. **Count IV**: Trademark infringement under the common laws of California, Florida, Texas, New York, New Jersey, North Carolina, Maryland, Massachusetts, Illinois, Georgia, Colorado, Minnesota, Washington, and the District of Columbia; and

5. **Count V**: Statutory trademark infringement and unfair competition under the laws of Florida, California, New York, New Jersey, North Carolina, Massachusetts, Illinois, Georgia, Colorado, Minnesota, and Washington.

Presently before this Court is Nike's Partial Motion to Dismiss the counterfeiting claims in Counts I and III of the FAC under Federal Rule of Civil Procedure 12(b)(6). (ECF 23, "MTD.") Lontex's request to amend the FAC, to which Nike has objected, is also pending. In the Response in opposition to the Motion, Lontex argues that the Court should permit Lontex to amend the FAC.

(ECF 24, "Resp." at 21–22.) At oral argument on the Motion, the Court raised the possibility of amending the FAC to remove allegations of counterfeiting in Counts I and III and add a separate claim for counterfeiting as Count VI. (ECF 32, 33.)[1] Following oral argument, the parties filed a Joint Submission in which Lontex agreed to the Court's proposal, Nike objected, and Lontex attached a proposed counterfeiting claim as Exhibit 1 ("Proposed Claim"). (ECF 34; id. Ex. 1.)

For the reasons discussed below, the Court reaches the following conclusions:

1. The Partial Motion to Dismiss is GRANTED, with prejudice; and

2. Lontex's request to amend the FAC is DENIED.

## II.     Factual Background

Taking Lontex's allegations as true, the factual background is as follows. Lontex, a Pennsylvania corporation, has been providing professional and collegiate sports teams with athletic apparel since 1989. (FAC ¶¶ 4, 10.) By 2006, Lontex was well-regarded, including amongst the National Football League, collegiate sports teams, and sports medicine doctors. (Id. ¶ 10.) As early as June 18, 2007, Lontex launched its COOL COMPRESSION line of clothing, including compression shirts, shorts, tights, and socks. (Id. ¶ 1.)

On April 22, 2008, Lontex's "COOL COMPRESSION" trademark was registered by the United States Patent and Trademark Office ("USPTO") for a variety of men's, women's, and children's clothing. (Id. Ex. A.)[2] The trademark consisted of "standard characters without claim to any particular font, style, size, or color." (Id.)

---

[1] The transcript of the oral argument is available at ECF 35 ("Oral Arg. Tr.").
[2] The full list of goods covered by the trademark is provided in the FAC. (FAC ¶ 12.)

On the same day, the USPTO registered Lontex's design mark, below, for the same category of clothing.  (Id.)



The following year, on April 28, 2009, the USPTO registered Lontex's COOL COMPRESSION trademark for compression supports for medical use, including compression sleeves, tights, and leggings.  (Id.)[3]  None of the trademarks gave Lontex the exclusive right to use "Compression" apart from "COOL COMPRESSION."  (Id.)

Lontex has since sold millions of dollars of COOL COMPRESSION apparel and compression supports across the United States, representing over 40,000 COOL COMPRESSION goods covered by the trademarks.  (Id. ¶ 17.)  Lontex's COOL COMPRESSION line is popular throughout the country among customers, including professional sports teams.  (Id. ¶ 10.)  COOL COMPRESSION goods have been promoted through a variety of distribution channels, including direct-to-consumer websites, doctor and medical referrals, sports organizations, and speaking engagements by Lontex staff.  (Id.)

Nike is an Oregon corporation with its principal place of business in Beaverton, Oregon.  (Id. ¶ 5.)  On or about January 2016, Lontex discovered that Nike had been selling apparel under the COOL COMPRESSION trademark since at least October 2015.  (Id. ¶ 19.)[4]  Nike has been using COOL COMPRESSION as its product mark next to its separate house mark "NIKE PRO."  (Id. ¶ 20.)  For example, a sample Nike catalogue listed six COOL COMPRESSION clothing

---

[3] The full list of goods covered by the trademark is provided in the FAC.  (FAC ¶ 13.)
[4] The Proposed Claim alleges that "NIKE adopted by the beginning of 2016 the COOL COMPRESSION product mark for an entire line of apparel to give the appearance that Plaintiff's product had been brought in-house by Nike[.]"  (Proposed Claim ¶ 99.)

items, including "728044 NIKE PRO COOL COMPRESSION SLEEVELESS TOP." (Id.) Nike's products have also been advertised, promoted, and sold using the COOL COMPRESSION product mark without "NIKE PRO" or any other Nike house mark near or next to it. (Id. ¶ 23.)

Nike's COOL COMPRESSION items were placed in Nike catalogues, including baseball, basketball, football, and training catalogues. (Id. ¶ 24.) In addition to selling COOL COMPRESSION products direct-to-consumers, Nike has sold and distributed this allegedly infringing athletic apparel to its authorized distributors, resellers, and retailers, including REI, Target, Macy's Zappos, Dick's Sporting Goods, East Bay, Foot Locker, and Amazon (hereinafter, "Prohibited Intermediaries"). (Id. ¶¶ 26–27.) Nike has also monitored promotional advertising with respect to its use of COOL COMPRESSION. (Id. ¶ 26.) Neither Nike nor these Prohibited Intermediaries have authorization or approval to sell COOL COMPRESSION products. (Id. ¶¶ 28–29, 34.) Though Nike "indicated" that it would cease use of the COOL COMPRESSION mark after a "demand letter identifying the infringement of the registered COOL COMPRESSION mark was sent," Nike's catalogues and sales through the Prohibited Intermediaries continued to make use of the COOL COMPRESSION mark. (Id. ¶¶ 26, 47.)[5] Nike has made over $40 million in estimated profits on its COOL COMPRESSION line of products. (Id. ¶ 35.)

Nike's use of the COOL COMPRESSION mark has created confusion amongst consumers by indicating that Nike is affiliated with Lontex and obtained access to Lontex's COOL

---

[5] In the Proposed Claim, Lontex alleges that the "cease and desist correspondence" took place in mid-2016. (Proposed Claim ¶ 100.) Lontex further alleges that Nike's infringement was willful because in 2009, Lontex was not permitted to participate in the University of Pennsylvania's Penn Relays event because of Nike's relationship with the University of Pennsylvania. (Id. ¶ 97.) Lontex alleges that this attempt to squelch Lontex's brand was not an isolated incident. (Id. ¶¶ 97–98.) Lontex alleges that its logos were "prominently displayed in televised games for many years for teams with contracts with NIKE," but over time, "the clothing labels themselves were removed or concealed" even though the players were wearing Lontex's products. (Id. ¶ 98.) However, Lontex alleges that Nike's willful conduct began in 1997, before Lontex registered its COOL COMPRESSION mark. (Id. ¶ 97.)

COMPRESSION technology. (<u>Id.</u> ¶ 31.)[6] Lontex has received reports from its professional sports team clients that Nike's compression products are substantially inferior in performance to Lontex's products. (<u>Id.</u> ¶ 33.)

## III.    Procedural History

The original Complaint was filed in this Court on December 31, 2018, setting forth four Counts: (1) direct trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (2) direct trademark infringement under § 1125(a); (3) contributory trademark infringement under §§ 1114 and 1125(a); and (4) unfair competition under state statutory and common law (ECF 1). On February 19, 2019 Nike filed a Partial Motion to Dismiss Count I to the extent it asserted a claim for federal trademark counterfeiting and Count IV in its entirety (ECF 18).

The FAC was filed on March 12, 2019 (ECF 20), rendering Nike's Partial Motion to Dismiss moot (ECF 22). On March 26, 2019, Nike filed a Partial Motion to Dismiss Counts I and III of the FAC to the extent that they assert claims for trademark counterfeiting (ECF 23). Nike does not move to dismiss Lontex's claims for trademark infringement in Counts I or III. There is also no Motion to Dismiss Counts II, IV, or V.[7] Lontex filed a Response in opposition on April 8, 2019 (ECF 24), and Nike filed a Reply on April 15, 2019 (ECF 25, "Rep.").

On April 30, 2019, following a Rule 16 pretrial conference on that date, the Court issued a scheduling order for discovery, dispositive motions, and additional pretrial and trial procedures (ECF 28, 29). On May 23, 2019, the Court held oral argument on the Partial Motion to Dismiss and discovery issues (ECF 32, 33). Following oral argument, and pursuant to the Court's orders,

---

[6] The Proposed Claim alleges that store visits in 2016 revealed that when a consumer asked an employee of Dick's Sporting Goods where to locate COOL COMPRESSION products, the employee directed the consumer to Nike compression products. (Proposed Claim ¶ 96.) Lontex neither identifies who conducted the store visits nor alleges that Lontex was also sold at Dick's Sporting Goods.
[7] Nike contends that Counts IV and V seek relief under fourteen "inapplicable bodies of state law," and that Nike will respond to these Counts "in due course." (MTD at 5 n.3.)

the parties submitted a Joint Submission regarding the Partial Motion to Dismiss (ECF 34). Attached to the submission was Lontex's Proposed Claim of counterfeiting, as well as exhibits depicting Lontex and Nike's compression products (ECF 34 Ex. 1).

**IV.    Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## V. Discussion

### A. Parties' Contentions

Nike contends that Counts I and III must be dismissed to the extent that Lontex is claiming counterfeiting. (MTD at 2.) Nike argues that Lontex's conclusory allegations that Lontex's COOL COMPRESSION mark is "identical with, or substantially indistinguishable from" Nike's allegedly infringing COOL COMPRESSION mark is not sufficient to withstand dismissal. (Id. at 9.) Similarly, Nike contends that Lontex's allegations that Nike used the mark COOL COMPRESSION by itself as well as in direct proximity to "NIKE PRO" are conclusory. (Rep. at 8.) According to Nike, Lontex must allege that Nike placed the COOL COMPRESSION mark on products covered by Lontex's trademarks, and Lontex has failed to do so. (MTD at 4.) In other words, Nike argues that the counterfeiting allegations must be dismissed because Lontex has failed to allege that it would appear to consumers in the marketplace that Nike's COOL COMPRESSION athletic apparel was Lontex's COOL COMPRESSION apparel, as required to state a counterfeiting claim. (Rep. at 8.)

In the Response, Lontex argues that the counterfeiting claims in Counts I and III should not be dismissed because counterfeiting is a finding in a trademark infringement claim that allows for enhanced remedies, not a separate claim subject to dismissal. (Resp. at 5, 8.) Alternatively, Lontex contends that Counts I and III state plausible counterfeiting claims because the COOL COMPRESSION mark does not need to appear on Nike's compression products, nor must Nike's products be identical to Lontex's products, to establish trademark counterfeiting. (Id. at 9–12.)

### B. Analysis

Count I of the FAC–direct trademark infringement under 15 U.S.C. § 1114–alleges that Nike's use of the COOL COMPRESSION mark constitutes counterfeiting, and therefore, Lontex

is entitled to statutory damages of up to $2 million per counterfeit mark per type of goods sold, offered for sale, or distributed under § 1117(c). (FAC ¶¶ 40, 43.) Count III–the contributory trademark infringement claim under §§ 1114 and 1125(a)–alleges that Nike had knowledge of and encouraged distributors', resellers', and retailers' counterfeiting. (Id. ¶¶ 60, 65); (see also Prayer for Relief ¶ 10) (alleging that Nike used a willful counterfeit of Lontex's mark).) Neither Count in the FAC expressly alleges counterfeiting as a separate claim.

As noted above, Nike contends that Lontex's trademark counterfeiting "claims" in Counts I and III of the FAC must be dismissed because Lontex fails to plausibly allege that Nike's COOL COMPRESSION mark is a counterfeit of Lontex's COOL COMPRESSION mark. (MTD at 10–11.) Nike does not distinguish between the allegations in Counts I and III. Nike further contends in the Joint Submission that Lontex should not be permitted to amend the FAC to remove the word "counterfeiting" from Counts I and III and add the Proposed Claim as Count VI because Lontex cannot allege any facts to sustain a plausible counterfeiting claim. (Joint Submission at 4–6.)[8]

### i. Counterfeiting as a Distinct Claim

As an initial matter, Lontex argues that counterfeiting is not a distinct cause of action subject to dismissal because "the case law expressly taking up this issue squarely hold counterfeiting is not a separate cause of action, but rather a finding in connection with a trademark infringement claim . . . that provides for specific and additional kinds of relief." (Resp. at 7.)[9] Lontex does not cite any cases within the Third Circuit in support of this proposition. Nor is the Court aware of any precedential judicial authority addressing whether counterfeiting is a separate

---

[8] In the Joint Submission, Lontex argues that the Court must disregard Nike's submission because it is an improper sur-reply. (Joint Submission at 2–3.) The Court considers Nike's submission in ruling on the instant Motion to the extent that it bolsters arguments previously presented to the Court in Nike's briefs.

[9] Lontex states in the Joint Submission that it is "agreeable to the Court's proposal of potentially breaking out counterfeiting into a sixth count, should the Court be so inclined." (Joint Submission at 2.)

claim from trademark infringement.

Undermining Lontex's position, however, district judges in this Circuit have recognized a distinct claim for trademark counterfeiting. See, e.g., Chanel, Inc. v. Matos, 133 F. Supp. 3d 678, 685–86 (D.N.J. 2015) (listing the elements of a trademark counterfeiting claim); Harp. v. Rahme, 984 F. Supp. 2d 398, 420 (E.D. Pa. 2013) (Robreno, J.) (same); Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536–37 (D.N.J. 2008) (same); Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc., No. CIV.A. 96-CV-6961, 1998 WL 767440, at *7 (E.D. Pa. Nov. 3, 1998) (McGlynn, Jr., J.) (same); see also Am. Bridal & Prom Indus. Ass'n, Inc. v. 2016dressforprom.com, No. 16-0872, 2017 WL 4154934, at *3 (D.N.J. Sept. 19, 2017) (granting the plaintiffs' motion for default judgment in part because the plaintiffs alleged sufficient facts to establish trademark counterfeiting); but see Amerigas Propane, L.P. v. Opinion Corp., No. 12-713, 2012 WL 2327788, at *4 (E.D. Pa. June 19, 2012) (Buckwalter, J.) (stating that the elements of a trademark counterfeiting claim are identical to the elements of a trademark infringement claim).[10]

Lontex further contends that because the FAC pleads counterfeiting as a form of relief within Counts I and III, it is not an appropriate subject for dismissal under Rule 12(b)(6). (Resp. at 6.) Again, Lontex fails to cite, nor is this Court aware of, any precedential judicial decisions supporting Lontex's position. Rather, Lontex cites Jones v. Francis, No. 13-04562(SRC), 2013

---

[10] The Court notes that there is disagreement amongst courts outside of this Circuit about whether counterfeiting is a distinct cause of action, as the parties' briefs recognize. Compare All Star Championship Racing, Inc. v. O'Reilly Automotive Stores, Inc., 940 F. Supp. 2d 850, 866 (C.D. Ill. 2013) (cited by Lontex) ("[T]he use of a counterfeit mark in the context of the Lanham Act is not, in and of itself, a cause of action. Rather, in a civil action arising under § 1114, a finding that a counterfeit mark was used permits certain additional remedies . . . ."), and Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 n.2 (S.D.N.Y. 2015) (cited by Lontex) ("[T]he Lanham Act does not provide for a separate cause of action for counterfeiting; rather, it provides for specific kinds of relief for trademark infringement claims based on the sale of counterfeit goods."), with Fischer v. Forrest, Nos. 14 Civ. 1304 (PAE) (AJP), 14 Civ. 1307 (PAE) (AJP), 2017 WL 1063464, at *5 (S.D.N.Y. Mar. 21, 2017) (cited by both parties) (dismissing the plaintiff's trademark counterfeiting claims, but concluding that the plaintiff stated a claim for trademark infringement), and Adams v. Grand Slam Club/Ovis, No. 12-cv-2983-WJM-BNB, 2013 WL 1444335, at *6–7 (D.Colo. Apr. 9, 2013) (cited by both parties) (granting motion to dismiss counterfeiting claim and noting that "[t]he element of identicality distinguishes a counterfeiting claim from other classes of trademark infringement").

WL 5603848 (D.N.J. Oct. 11, 2013), a personal injury action where Judge Chesler denied the defendants' motion to dismiss the plaintiffs' punitive damages demand in the complaint. Id. at *1. The defendants did not contend that the complaint failed to state a claim for which relief could be granted. Id. As a result, the court concluded that the issue of whether the plaintiffs could prove their entitlement to punitive damages was an evidentiary matter to be addressed on summary judgment, not on a motion to dismiss. Id. at *2–3.[11]

Weakening Lontex's argument, however, judges within this District, including this Court, have indicated that a request for relief may be addressed at the pleading stage. See, e.g., Am. Diabetes Ass'n v. Friskney Family Trust, LLC, No. 13-2720, 2014 WL 12607758, at *3 (E.D. Pa. Sept. 30, 2014) (Goldberg, J.) (granting motion to dismiss requests for punitive and exemplary damages); Sweeney v. Louisville Ladder, Inc., No. 13-6806, 2014 WL 502356, at *1 (E.D. Pa. Feb. 6, 2014) (Baylson, J.) (denying motion to dismiss punitive damages claims because the complaint contained sufficient factual allegations to support a punitive damages award).

Further, at least one judge outside of the Third Circuit has dismissed a claim "to the extent that it assert[ed] a claim for trademark counterfeiting" even though the complaint was "devoid of any explicit allegations of counterfeiting" because the plaintiff sought damages under 15 U.S.C. § 1117(b), (c), which are only triggered by counterfeiting. Playvision Labs, Inc. v. Nintendo of Am., Inc., No. C14-05365 CRB, 2015 WL 12941892, at *1 n.1, *2 (N.D. Cal. May 18, 2015). Here,

---

[11] In the Joint Submission, Lontex cites Midnight Rider, Inc. v. Forever 21, Inc., No. CV-1609298 SJOJ(EMX), 2017 WL 5664998 (C.D. Cal. Apr. 3, 2017), for the proposition that the determination of whether a mark is a counterfeit is an issue for summary judgment. See id. at *3 (noting that "the fact-intensive inquiry regarding whether two marks are 'substantially indistinguishable' is one that may be made 'on summary judgment after a comparison of the designs at issue[,]'" and denying the defendants' motion for partial judgment on the pleadings with respect to the plaintiff's counterfeiting claims) (citation omitted). This out-of-circuit case is not binding on this Court. It is also factually distinct because unlike in this case, which involves a word mark, Midnight Rider involved a design mark, which required the court to review the graphics of the disputed marks on the parties' garments after discovery. As noted above, other districts have disagreed with this approach and addressed the viability of counterfeiting claims at the pleadings stage. See, e.g., Fischer, 2017 WL 1063464, at *3–5.

not only does Lontex seek damages under § 1117 in Counts I and III, but Lontex also explicitly alleges that Nike's use of the COOL COMPRESSION mark constitutes counterfeiting. As a result, even though the FAC does not plead counterfeiting as a separate claim, the Court proceeds to determine whether Counts I and III allege sufficient facts showing Lontex's entitlement to relief for counterfeiting.

### ii. Trademark Counterfeiting in Counts I and III

Counts I and III allege trademark infringement under two theories–Count I alleges direct trademark infringement under 15 U.S.C. § 1114, and Count III alleges contributory trademark infringement under §§ 1114 and 1125(a). As discussed above, both Counts include allegations of counterfeiting. The Proposed Claim alleges counterfeiting as a separate claim: Count VI.

### 1. Definitions of "Counterfeit" and "Counterfeiting"

Counterfeiting is defined as "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 581 (E.D. Pa. 2002) (Reed, Jr., J.) (quoting Playboy Enters., Inc., 1998 WL 767440, at *7); see also 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 25:15.10 (5th ed. 2019) (providing the same definition). To establish trademark counterfeiting, a plaintiff must plausibly plead that: (1) "the defendant 'infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that i[t] was a counterfeit or was willfully blind to such use.'" Pennzoil-Quaker State Co. v. Smith, No. 2:05-cv-1505, 2008 WL 4107159, at *20 (W.D. Pa. Sept. 2, 2008) (alteration in original) (quoting Veit, 211 F. Supp. 2d at 580–81). For purposes of a trademark counterfeiting claim, a "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. §

1127; id. § 1116(d)(1)(B)(ii).  As the Lanham Act does not define "spurious," at least one judge in this Circuit has defined "spurious" as "[d]eceptively suggesting an erroneous origin[,] fake." G6 Hosp. Franchising LLC v. Hi Hotel Grp., LLC, 171 F. Supp. 3d 340, 346 (M.D. Pa. 2016) (alteration in original) (quoting Spurious, BLACK'S LAW DICTIONARY (10th ed. 2014)), vacated and remanded on other grounds, 670 F. App'x 759 (3d Cir. 2016).

Here, Nike does not seek to dismiss Lontex's claims of trademark infringement under §§ 1114(1)(a) or 1125(c) in Counts I and III of the FAC.  Rather, Nike contends that Lontex's allegations of trademark counterfeiting must be dismissed.  (See Rep. at 9) ("Lontex's pleading sounds in basic trademark infringement, not counterfeiting.")  Accordingly, for purposes of this Motion, the Court need not address whether Nike committed trademark infringement under § 1114(1)(a)–the first element of a trademark counterfeiting claim.  The Court limits its analysis to the issue of whether Nike's mark is a counterfeit, which is "an essential element" of a trademark counterfeiting claim.  Pennzoil-Quaker State Co., 2008 WL 4107159, at *21–22 (recommending that summary judgment be entered in favor of the defendant on the plaintiff's counterfeiting claim where the plaintiff failed to establish that the marks used by the defendant were counterfeits).

## 2.  Heightened Standard for Similarity

Nike contends that counterfeiting is subject to a heightened standard for similarity than ordinary trademark infringement.  In other words, Nike argues that it is not sufficient for a plaintiff to allege "likelihood of confusion," the standard to determine similarity between marks in a trademark infringement claim, to state a counterfeiting claim.  See AFL Phila. LLC v. Krause, 639 F. Supp. 2d 512, 528–29 (E.D. Pa. 2009) (Baylson, J.) (providing the standard to plead likelihood of confusion).  Rather, Nike argues that Lontex must plausibly plead that Nike's mark is "identical with, or substantially indistinguishable from" Lontex's mark, and because Lontex has failed to do

so, the counterfeiting claims in the FAC must be dismissed. (See MTD at 9–10) (citing Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 499 (S.D.N.Y. 2015) ("To be substantially indistinguishable, two marks must be 'nearly identical . . . with only minor differences which would be apparent to the unwary observer.'")).) Lontex, on the other hand, contends that the FAC states a counterfeiting claim by plausibly alleging Nike's "use of the identical registered mark for the exact same goods." (Resp. at 17.)

Neither party cites, nor is this Court aware of, any precedential judicial authority articulating the standard to determine whether a mark is a "counterfeit" in violation of the Lanham Act. To the Court's knowledge, only one judge in this Circuit has specifically addressed this issue. In Astrazeneca AB v. Dr. Reddy's Labs., Inc., 209 F. Supp. 3d 744 (D. Del. 2016), Judge Robinson denied the defendant's motion for partial judgment on the pleadings as to the plaintiff's counterfeiting claim because the court could not conclude, as a matter of law, that a purchaser would distinguish between the defendant's two-tone purple pills and the plaintiff's single-tone purple pills. Id. at 755.[12] In conducting its analysis, the court noted that "[c]ounterfeiting has a higher standard for similarity so the 'likelihood to cause confusion' standard used for infringement violations is insufficient." Id. The court recognized that "[t]he marks do not need to be identical and may have minor differences that would not be apparent to the typical consumer and, thus, legally insignificant." Id. For example, the fact that the defendant's pill bottle displayed the manufacturer and generic names did not undermine the court's conclusion, as the consumer would typically receive the pills in a pharmacy's prescription bottle, not the manufacturer's bottle. Id.

---

[12] Though Astrazeneca involved a Motion for Partial Judgment on the Pleadings under Rule 12(c), the Third Circuit has stated that the same standard applies to Motions to Dismiss under Rule 12(b)(6). See Caprio v. Healthcare Revenue Recovery Grp., LLC, 709 F.3d 142, 146–47 (3d Cir. 2013) ("[A] [12(c)] motion for judgment on the pleadings based on the theory that the plaintiff failed to state a claim is reviewed under the same standards that apply to a motion to dismiss under Federal Rule of Procedure 12(b)(6).").

In its analysis, the court cited to the Second Circuit, which has consistently recognized that a mark must be "identical with, or substantially indistinguishable from" a registered mark to be a counterfeit. See id. (citing Montres Rolex, S.A. v. Snyder, 718 F.2d 524, 528 (2d Cir. 1983) (distinguishing between "marks which are merely infringements" and "marks which not only infringe but in addition are such close copies that they amount to counterfeits")[13]; Consol. Cigar Corp. v. Monte Cristi de Tabacos, 58 F. Supp. 2d 188, 196 (S.D.N.Y. 1999) (granting summary judgment in favor of the plaintiffs for trade dress counterfeiting where the mark used on the defendants' cigars and cigar packaging was "nearly identical" to the plaintiff's marks))).

Other circuits have also applied a heightened standard to determine whether marks are sufficiently similar to establish counterfeiting. See, e.g., Sakar Int'l, Inc. v. United States, 516 F.3d 1340, 1346 n.5 (Fed. Cir. 2008) ("Merchandise bearing a 'counterfeit mark' is thus a subset of merchandise that merely 'copies or simulates' a registered mark."); United States v. Petrosian, 126 F.3d 1232, 1234 (9th Cir. 1997) (per curiam) (addressing whether a "spurious mark" was "likely to cause confusion" separately from whether it was "identical with or substantially indistinguishable from" the registered mark under a parallel criminal statute); see also Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 269 (4th Cir. 2007) (affirming summary judgment on the plaintiff's counterfeiting claims because "Chewy Vuiton" and the "CV" monograph design were not "substantially indistinguishable" from the "LOUIS VUITTON" and "LV" mark, and the defendant was "not selling knock-off LOUIS VUITTON handbags with a counterfeit LV mark").[14]

---

[13] Astrazeneca cites Montres Rolex only for the proposition that the defendant's pill could meet the counterfeit standard based on a comparison made by an average purchaser, rather than an expert. Astrazeneca, 209 F. Supp. 3d at 755 (quoting Montres Rolex, 718 F.2d at 533).

[14] The Court notes that district courts outside of this Circuit have applied a heightened similarity standard to determine whether a mark is a counterfeit at the pleading stage. See, e.g., Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc., No. 3:17-CV-0054-B, 2018 WL 1806500, at *3 (N.D. Tex. Apr. 17, 2018) (cited by Nike) (dismissing counterfeiting claim where "MILLION WORDS CLUB" and "MILLION WORDS READER" were not

In assessing the validity of counterfeiting claims, courts consider whether a mark is "identical with, or substantially indistinguishable from" a registered mark based on "the comparison . . . made from the perspective of an average purchaser." Astrazeneca, 209 F. Supp. 3d at 755; Schneider Saddlery Co., 2009 WL 864072, at *4 ("[C]ourts generally consider whether consumers would find the infringing mark 'identical with, or substantially indistinguishable from' a registered mark as it appears in the marketplace, rather than how two marks appear in the abstract. . . ."); Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp., 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007) ("[A]n allegedly counterfeit mark must be compared with the registered mark as it appears on actual merchandise to an average purchaser."); see also Tovey, 2013 WL 486341, at *4 (dismissing the plaintiff's counterfeiting claim where a routine customer inspection of the parties' apparel would have revealed the differences between the plaintiff's use of "BOOM YO!" (where "YO" was written on the back of apparel) and Nike's use of "BOOM," even though the word "BOOM" by itself appeared on the front of both parties' apparel). The Court finds these decisions to be instructive. Accordingly, the Court considers whether Nike's mark is "identical with, or substantially indistinguishable from" Lontex's mark from the perspective of an average purchaser to determine whether Lontex's counterfeiting allegations withstand dismissal.

---

"identical with, or substantially indistinguishable from" "MILLIONAIRE READER," "MILLION DOLLAR READER," "MILLIONAIRE'S READING CLUB," or "READ A MILLION WORDS"); Santana-Cuesta v. Maldonado-Vargas, No. 14-1456 (CCC/BJM), 2016 WL 9459759, at *6 (D.P.R. Jan. 29, 2016) (not cited by either party) (concluding that the complaint failed to allege that "ANTHONY LAMAKINA" was "identical with, or substantially indistinguishable from" "La Makina"); Playvision Labs, Inc., 2015 WL 12941892, at *1 (dismissing count to the extent it asserted a claim for counterfeiting where the plaintiff could not plausibly allege that "Wii Play Motion" was "identical with, or substantially indistinguishable from" "playmotion!"); see also Adams, 2013 WL 1444335, at *7 ("[I]f alleging that an infringing mark is 'nearly identical' and 'confusingly similar' suffices to state a claim for counterfeiting, virtually all trademark infringement claims would also be counterfeiting claims."); Tovey v. Nike, Inc., No. 1:12-CV-448, 2013 WL 486341, at *3 (N.D. Ohio Feb. 6, 2013) (cited by Lontex) ("[T]he standard for trademark counterfeiting is significantly higher than that for trademark infringement and 'slight differences, so long as they are apparent to the typical consumer upon minimal inspection, will defeat the allegation that a mark is a counterfeit.'" (quoting Schneider Saddlery Co. v. Best Shot Pet Prods. Int'l, LLC, No. 1:06-CV-02602, 2009 WL 864072, at *4 (N.D. Ohio Mar. 21, 2009)).

### 3. Application

#### a. The FAC Does Not State a Viable Counterfeiting Claim.

Here, Lontex first alleges that Nike's use of "NIKE PRO COOL COMPRESSION" and "PRO COOL COMPRESSION" in connection with the sale of products covered by Lontex's trademark registrations are counterfeits of Lontex's registered COOL COMPRESSION mark. (FAC ¶ 20.) However, courts have concluded that a mark that differs from a registered mark by a few letters, let alone one or two words, is not a counterfeit. See Colgate-Palmolive, 486 F. Supp. 2d at 291 (concluding that "Colddate" was not a counterfeit of "Colgate" because "[i]n general, . . . marks that are similar to the registered mark, but differ by two or more letters, are not likely to be considered counterfeit"); GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 471–72 (S.D.N.Y. 2011) (granting summary judgment as to the plaintiff's counterfeiting claim because "Charlotte" was not identical with or substantially indistinguishable from "Charlotte Solnicki"); see also Tovey, 2013 WL 486341, at *4 (citing Colgate-Palmolive, 486 F. Supp. 2d at 291) (concluding that "BOOM" was not a counterfeit of "BOOM YO!" in part because the marks "not only differ[ed] by two letters, but also . . . in that ["BOOM"] [was] a single word, whereas ["BOOM YO!"] [was] multiple words"). The addition of "NIKE PRO" or "PRO" are not a "minor differences" that the average consumer would disregard when comparing marks that are otherwise "identical" or "substantially indistinguishable." See Astrazeneca, 209 F. Supp. 3d at 755.

Second, Lontex alleges that "the infringing products have also been advertised, promoted and sold using the product mark COOL COMPRESSION without NIKE PRO or any other Nike house mark next to or near it." (FAC ¶ 23.) The FAC does not allege how Lontex's use of its mark appears to consumers. However, Lontex argues that the Lanham Act only requires that a word mark itself, not the product using the mark, be a counterfeit. (Resp. at 10–12.) According

to Lontex, Nike's COOL COMPRESSION mark is a counterfeit of Lontex's mark because Nike used the mark in connection with sale of the same type of apparel covered by Lontex's trademark registrations. (Id.)

The cases that Lontex cites in its Response and Joint Submission, however, do not support the proposition that the context in which word marks are used is irrelevant to a court's determination of whether a mark is a counterfeit.[15] The fact that a defendant uses a mark in connection with the sale of the same goods covered by a plaintiff's registration does not establish that a mark is a counterfeit; rather, it is a baseline requirement of a trademark counterfeiting claim. See Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc., No. CIV.A. 96-CV-6961, 1998 WL 288423, at *4 (E.D. Pa. June 3, 1998) (McGlynn, Jr., J.) (cited by Lontex) (concluding that the plaintiff failed to state a counterfeiting claim because the plaintiff did not allege that the defendants used its marks on the same goods or services covered by the marks' registrations).

Lontex seeks to distinguish between design marks and the COOL COMPRESSION word mark. Lontex argues that because its word mark registrations consist of "standard characters

---

[15] See, e.g., Idaho Potato Comm'n v. G&T Terminal Packaging, Inc., 425 F.3d 708, 721–22 (9th Cir. 2005) (holding that the defendant's unlicensed use of the plaintiff's certification mark on bags of genuine Idaho potatoes was counterfeiting); Entm't One UK Ltd. v. 2012shiliang, No. 18 C 4461, 2019 WL 1953096, at *3 (N.D. Ill. May 2, 2019) (concluding that the defendants' "Peppa Pig Head Cookie Cutter" was a counterfeit even though the plaintiff's PEPPA PIG word mark was not imprinted on the product because the defendants used the plaintiff's exact mark in the product's name to capitalize on demand for the plaintiff's products); Arcona v. Farmacy Beauty, LLC, No. 2:17-cv-07058-ODW-JPR, 2018 WL 1441155, at *11 (C.D. Cal. Mar. 22, 2018) (concluding that the plaintiff stated a counterfeiting claim where the defendant's claim where the defendants used its EYE DEW mark on eye cream); Gibson Brands Inc. v. John Hornby Skewes & Co., No. CV 14-00609 (SSx), 2016 WL 7542437, at *2 (C.D. Cal. Dec. 29, 2016) (denying motion to certify for interlocutory appeal the court's order granting summary judgment on the plaintiff's counterfeiting claim where the defendant's guitar body shapes and headstocks were not counterfeits of the plaintiff's trademarks because of the "visual distinctions" between the body shapes and headstocks and "the distinct source identifiers" on the defendant's body shapes and headstocks); Sunny Merch. Corp., 97 F. Supp. 3d at 499 (concluding that the fact that Louis Vuitton's sunglasses were of higher quality than the defendant's sunglasses did not undermine Louis Vuitton's counterfeiting claims because "[i]f an observer s[aw] a mark that he believe[d] to be Louis Vuitton's on a pair of sunglasses, it [was] likely that the observer would [have] identif[ied] the [sunglasses] with [Louis Vuitton], and [Louis Vuitton's] reputation would [have] suffer[ed] the damage if the [sunglasses] appeared to be of poor quality") (citation and internal quotation marks omitted); Schneider Saddlery Co., 2009 WL 864072, at *15 (granting partial summary judgment on the issue of trademark counterfeiting where the defendant's marks "include[d] an entire word" that the plaintiff's marks did not, and the marks were "visually distinguishable as they appear[ed] to consumers in the marketplace").

without claim to any particular font, style, size, or color," they are "are not limited to any particular presentation." (FAC Ex. A; Resp. at 14) (quoting <u>HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.</u>, 872 F. Supp. 2d 1154, 1175 (D. Colo. 2012) (denying the defendant's summary judgment on the plaintiffs' trademark infringement claim)).) However, "[t]o establish counterfeiting in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to . . . context." <u>GMA Accessories, Inc.</u>, 765 F. Supp. 2d at 472. Further, Lontex cites cases addressing counterfeiting in the context of design marks in support of its position, weakening Lontex's argument. (<u>See, e.g.</u>, Resp. at 17) (citing <u>Astrazeneca</u>, 209 F. Supp. 3d at 755).

Even taking the factual allegations in the FAC as true, as the Court must at this stage, the Court cannot reasonably conclude that Nike's mark is "identical with, or substantially indistinguishable from" Lontex's mark from the perspective of an average customer. In fact, Lontex alleges that it "has received reports by its professional sports team clients that the [sic] Nike's compression products are substantially inferior in performance than Lontex's products." (FAC ¶ 33.) The reasonable inference is that customers distinguished between Nike and Lontex's uses of the COOL COMPRESSION mark on compression products. (<u>See</u> Rep. at 9–10.)[16] In other words, Lontex has failed to allege that an observer seeing Nike's COOL COMPRESSION mark would believe it to be Lontex's mark. <u>Cf.</u> <u>Sunny Merch. Corp.</u>, 97 F. Supp. 3d at 500. As a result, to the extent that Lontex alleges trademark counterfeiting in Counts I and III, these claims are dismissed. The Court does not reach any conclusions regarding Lontex's trademark infringement

---

[16] At oral argument, Lontex argued that the Court misread this allegation because Lontex is only alleging that its customers have said that Nike's "compression products in general" are inferior to Lontex's products, not that Nike "COOL COMPRESSION" products are inferior. (Oral Arg. Tr. at 24:10–19.) The Court is not persuaded by this distinction.

claims in Counts I and III.[17]

**b. Amendment of the FAC to Add the Proposed Claim Would be Futile.**

As Lontex has failed to state a valid counterfeiting claim, the Court must determine whether to dismiss Lontex's counterfeiting allegations in Counts I and III with prejudice. As discussed at oral argument, the Court's determination turns on whether leave to amend would be futile. (See Oral Arg. Tr. at 16:22–19:9 (discussing how Lontex would amend the FAC if it were granted leave to amend)); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (stating that a court may dismiss a claim with prejudice when leave to amend would be futile). A finding that leave to amend would be futile is proper when "the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Egalet Corp. Sec. Litig., 340 F. Supp. 3d 479, 514 (E.D. Pa. 2018) (Baylson, J.) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Egalet, 340 F. Supp. 3d at 514.

The Proposed Claim adds allegations that Nike intentionally co-opted Lontex's mark, leaving the consuming public to believe that Lontex's COOL COMPRESSION products were produced by Nike. For example, Lontex alleges that an employee of Dick's Sporting Goods directed a customer to Nike's compression products when the customer asked where to locate "COOL COMPRESSION" products. (Proposed Claim ¶ 96.) However, Lontex does not cite, nor is this Court aware of, any precedential judicial decisions suggesting that an allegation that one

---

[17] Because the Court concludes that Nike's COOL COMPRESSION mark is not a counterfeit, the Court need not address whether Nike intentionally used, or was willfully blind to the use of, a counterfeit mark: the second element of a counterfeiting claim. See Tovey, 2013 WL 486341, at *4 ("Because Defendants' use of 'BOOM' is not a counterfeit, the requirements of element two [of a trademark counterfeiting claim] cannot be met despite any willful infringement alleged by Plaintiff.").

individual associated a company's registered mark with another company establishes counterfeiting. Rather, the relevant inquiry is whether an "<u>average</u> purchaser" would view a mark to be "identical with, or substantially indistinguishable from" a registered mark "as it appears on actual merchandise." <u>Colgate-Palmolive</u>, 486 F. Supp. 2d at 289 (emphasis added). This allegation does not undermine the allegation in the FAC that Lontex's customers were able to differentiate between Lontex and Nike's compression products. (<u>See</u> FAC ¶ 33.)

The Proposed Claim also alleges that Nike COOL COMPRESSION products appear to be "stich-for-stitch" copies of Lontex's COOL COMPRESSION products, particularly where the parties' compression garments in the same style and color are placed side-by-side. (Proposed Claim ¶ 101; <u>id.</u> Ex. E.) This allegation does not affect the Court's analysis. At issue is whether Lontex has plausibly alleged that an average purchaser would view Nike's mark to be "identical with, or substantially indistinguishable from" Lontex's mark on the same products, not whether two compression garments in the same color and style appear similar. As Lontex concedes, "because of the nature of compression garments, the products themselves appear visually homogenous[.]" (Proposed Claim ¶ 101.)

In support of Lontex's allegations that it is "impossible" for consumers to "perceive differences" between Lontex and Nike's COOL COMPRESSION products, Lontex attaches several Exhibits depicting Lontex and Nike's COOL COMPRESSION products and product descriptions. Exhibit A includes a brochure of Lontex's "SWEAT IT OUT" "COOL COMPRESSION" products as well as tags of Lontex's products bearing the "COOL COMPRESSION" mark. (<u>Id.</u> Ex. A.) Lontex provides three examples of Nike COOL COMPRESSION product descriptions that do not include images of Nike house marks: (1) an excerpt from a French Nike catalogue dated July 1, 2015 through March 19, 2017, bearing the

words "Nike Pro" on the left hand side, and providing pictures of the "COOL COMPRESSION LONG SLEEVE TOP" in several available colors; (2) an incomplete screenshot of Macy's online store featuring a Men's "Cool Compression Shirt" without a photograph of the product or product description; and (3) an invoice dated March 3, 2016 for a purchase by Lontex from Nike.com that includes a product description of "COOL COMP[]SS." (Id. Ex. C.) These exhibits fail to support Lontex's allegations that consumers viewing Nike and Lontex's merchandise would perceive Nike's COOL COMPRESSION products to be Lontex's COOL COMPRESSION products.

Nike also includes photographs of Lontex and Nike's men's long-sleeved and sleeveless compression shirts in black, which bear the companies' respective logos. (Id. Ex. E.) As noted above, these photographs do not affect the Court's analysis of whether Nike's alleged use of Lontex's word mark amounts to counterfeiting. To conclude otherwise would permit Lontex to plausibly claim that any men's compression shirt, or any other compression product covered by Lontex's trademark registrations, is a counterfeit of Lontex's products.

In sum, neither the additional allegations included in the Proposed Claim, nor the attached Exhibits, substantiate Lontex's claim that an average consumer in the marketplace would view Nike's COOL COMPRESSION products to be "identical with, or substantially indistinguishable from" Lontex's COOL COMPRESSION products. As the Proposed Claim fails to state a plausible counterfeiting claim, the Court concludes that leave to amend the FAC to include the Proposed Claim would be futile and grants the Partial Motion to Dismiss with prejudice.

## VI.  Conclusion

For the foregoing reasons, Defendant's Partial Motion to Dismiss is granted.

An appropriate Order follows.

O:\CIVIL 18\18-5623 Lontex Corp v Nike\18cv5623 Memo re Partial MTD.docx