**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LONTEX CORPORATION, | Civil Action No.:  18-cv-5623 |
| Plaintiff, | |
| | (Hon. Michael M. Baylson) |
| v. | (Master Sandra Jeskie, Esq.) |
| | |
| NIKE, INC., | |
| Defendant. | |

**DEFENDANT NIKE, INC.'S MOTION TO COMPEL PLAINTIFF LONTEX
CORPORATION TO AMEND PRIVILEGE LOG AND PRODUCE
<u>NON-PRIVILEGED DOCUMENTS</u>**

Pursuant to Federal Rule of Civil Procedure 37, Defendant NIKE, Inc. ("NIKE") moves to compel Plaintiff Lontex Corporation ("Lontex") to amend its privilege log to comply with Fed. R. Civ. P. 26(b)(5) and the Stipulated Order Regarding Electronically Stored Information Discovery entered in this case (ECF 43), and to remove entries for any non-privileged documents from the log and produce those documents to NIKE.  NIKE further seeks an order sanctioning Lontex for refusing to timely amend its deficient privilege log, including awarding NIKE its attorneys' fees for this motion.

In accordance with Local Rule 26.1(f) and Federal Rule of Civil Procedure Rule 37(a)(5), the undersigned has conferred with opposing counsel multiple times in a good-faith effort to resolve the issues presented by this motion, and the parties' inability to resolve the issue has necessitated the filing of this motion.

November 13, 2019                    Respectfully submitted,

                                     By:  __/s/ Gina L. Durham___

                                     DLA PIPER LLP (US)

                                     Gina L. Durham
                                     555 Mission Street, Suite 2400
                                     San Francisco, CA 94105

                                     Frank W. Ryan
                                     Andrew J. Peck
                                     Marc E. Miller
                                     1251 Avenue of the Americas
                                     New York, NY 100201

                                     Darius C. Gambino
                                     Ben C. Fabens-Lassen
                                     1650 Mark Street, Suite 5000
                                     Philadelphia, PA  19103

                                     *Attorneys for Defendant NIKE, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|                                  |
| -------------------------------- |
| LONTEX CORPORATION,              |
|                     Plaintiff,   |
|                                  |
|          v.                      |
|                                  |
| NIKE, INC.,                      |
|                     Defendant.   |
|                                  |

Civil Action No.:  18-cv-5623

(Hon. Michael M. Baylson)
(Master Sandra Jeskie, Esq.)

**DEFENDANT NIKE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO COMPEL PLAINTIFF LONTEX CORPORATION TO AMEND**
**PRIVILEGE LOG AND PRODUCE NON-PRIVILEGED DOCUMENTS**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 1

ARGUMENT .............................................................................................................................. 4

   I.    Lontex Should Be Required to Immediately Amend its Deficient Privilege Log and
       Produce the Non-Privileged Documents. ........................................................................ 4

      A. TradeMark Express ................................................................................................. 5

      B. Litigation Funding ................................................................................................. 7

II.    Sanctions Are Warranted for Lontex's Deliberate Refusal to Comply with the Federal
       Rules and the ESI Order. ............................................................................................... 12

CONCLUSION ......................................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
No. 16-cv-453-RGA, 2018 WL 798731 (D. Del. Feb. 9, 2018) ................................................9

*AstraZeneca LP v. Breath Ltd.*,
No. 08-cv-1512, 2011 WL 1421800 (D.N.J. Mar. 31, 2011) ....................................................7

*Benitez v. Lopez*,
No. 17 Civ. 3827-SJ-SJB, 2019 WL 1578167 (E.D.N.Y. Mar. 14, 2019) .............................12

*Clientron Corp. v. Devon IT, Inc.*,
310 F.R.D. 262 (E.D. Pa. 2015) ..............................................................................................13

*Cohen v. Cohen*,
No. 09 Civ. 10230 LAP, 2015 WL 745712 (S.D.N.Y. Jan. 30, 2015) .....................................9

*CytoSport, Inc. v. Nature's Best, Inc.*,
No. Civ. 061799 DFL EFB, 2007 WL 1040993 (E.D. Cal. Apr. 4, 2007) ...............................6

*ePlus, Inc. v. Lawson Software, Inc.*,
280 F.R.D. 247 (E.D. Va. 2012) ...............................................................................................4

*Fair Wind Sailing v. Dempster*,
764 F.3d 303 (3d Cir. 2014) ...................................................................................................10

*Fogerty v. Fantasy, Inc.*,
114 S. Ct. 1023 (1994) ............................................................................................................10

*Foster v. Berwind Corp.*,
No. 90-cv-0857, 1990 WL 209288 (E.D. Pa. Dec. 10, 1990) ..................................................8

*Gelman v. W2 Ltd.*,
No. 14-cv-6548, 2016 WL 8716248 (E.D. Pa. Feb. 5, 2016) ..................................................9

*Grider v. Keystone Health Plan Cent., Inc.*,
No. Civ. A. 05-MC-40, 2005 WL 2030456 (M.D. Pa. July 28, 2005) .....................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
No. 12 Civ. 9350 (VM) (KNF), 2015 WL 5730101 (S.D.N.Y. Sept. 10, 2015) ...................12

*LegalForce RAPC Worldwide P.C. v. Demassa*,
No. 18-CV-00043-MMC-TSH (N.D. Cal. Dec. 21, 2018) ......................................................3

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) ............................................................................................................10

*Pham v. Hartford Fire Ins. Co.*,
    193 F.R.D. 659 (D. Colo. 2000) ...........................................................................8

*SmithKline Beecham Corp. v. Apotex Corp.*,
    232 F.R.D. 467 (E.D. Pa. 2005) ..........................................................................4

*Space Data Corp. v. Google LLC*,
    No. 16-cv-03260 BLF (NC), 2018 WL 3054797 (N.D. Cal. June 11, 2018) .........................12

*TC Tech. LLC v. Sprint Corp.*,
    No. 16-cv-153-RGA, 2018 WL 6584122 (D. Del. Dec. 13, 2018) ...........................................9

*Thompson, Jr. v. Glenmede Tr. Co.*,
    No. Civ. A. 92-5233, 1995 WL 752443 (E.D. Pa. Dec. 19, 1995) ...........................................8

*United States v. Cedeno*,
    496 F. Supp. 2d 562 (E.D. Pa. 2007) ....................................................................8

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*,
    No. 19-cv-2875 (RBK/JS), 2019 WL 4485702 (D.N.J. Sept. 18, 2019) ....................10, 11, 12

*Weems v. Hodnett*,
    No. 10-cv-1452, 2011 WL 3100554 (W.D. La. July 25, 2011) ...............................................13

**Statutes**

15 U.S.C. § 1117(a) ..........................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(b)(5)............................................................................................ *passim*

Fed. R. Civ. P. 37(a)(5)...........................................................................................12, 13

3 McCarthy on Trademarks and Unfair Competition § 20:112 (5th ed. 2019) ...................6

iii

Defendant NIKE, Inc. ("NIKE") respectfully submits this memorandum of law in support of its motion for an order: (i) compelling Plaintiff Lontex Corporation ("Lontex") to amend its November 8, 2019 privilege log (the "Privilege Log"); (ii) compelling Lontex to remove entries from the Privilege Log for any non-privileged documents and produce those documents to NIKE; and (iii) sanctioning Lontex for refusing to timely amend its Privilege Log, including awarding NIKE its attorneys' fees for this motion.

## INTRODUCTION

Lontex's November 8, 2019 Privilege Log contains only ten entries, yet fails to provide the basic level of detail required by Fed. R. Civ. P. 26(b)(5) and also violates the Stipulated Order Regarding Electronically Stored Information ("ESI") Discovery that has been entered in this case (ECF 43) (the "ESI Order").  Despite NIKE's best efforts to meet-and-confer, Lontex has refused to amend its Privilege Log to rectify these deficiencies.  NIKE respectfully requests that this Court compel Lontex to amend its Privilege Log, produce non-privileged documents, and sanction Lontex for its improper discovery conduct.

## BACKGROUND

Lontex served its original privilege log on October 18, 2019.  (Declaration of Marc E. Miller ("Miller Decl."), Ex. 1.)  In a letter dated October 21, 2019, NIKE requested that Lontex amend its original privilege log by October 23, 2019 to provide the basic level of detail required by Rule 26(b)(5) and the ESI Order in advance of the depositions of Lontex witnesses Efraim Nathan and his daughter on October 24 and 25.  (Miller Decl., Ex. 2.)  Lontex did not comply with

this request, depriving NIKE of the opportunity to explore the non-privileged information with Lontex's only two witnesses.[1]

NIKE sent an email on October 28 requesting that Lontex serve an amended privilege log that day and, if Lontex did not intend to do so, requesting availability to meet-and-confer on October 29.  (Miller Decl., Ex. 3.)  Lontex responded on October 29 that it was preparing a written response to NIKE's October 21 letter.  (*Id.*)  Having not received any further written response from Lontex, NIKE sent an email on November 5 seeking availability to meet-and-confer on November 6.  (*Id.*)  Lontex finally responded by letter dated November 6 (Miller Decl., Ex. 4), and the parties met and conferred on November 7.  Lontex served an updated Privilege Log on November 8, 2019 (Miller Decl., Ex. 5), which did not adequately cure the deficiencies in the original privilege log.

In Lontex's November 8, 2019 Privilege Log, the first seven entries are simply described as "communication [with TradeMark Express] relating to legal advice," but do not identify any attorney providing any legal advice.[2]  (Miller Decl., Ex. 5.)  The "author/from" column for the seven entries lists "Chris DeMassa (staff@tmexpress.com)" or simply "Trademark Express (staff@tmexpress.com)."  (*Id.*)  No lawyer is identified in the author/from column.  (*Id.*)  TradeMark Express has explicitly stated on its website that it does <u>not</u> provide legal advice,[3] and

---

[1] Lontex's counsel further instructed Mr. Nathan at his deposition not to answer questions regarding the identity of "other attorneys" that he has spoken with about this lawsuit, when the <u>identity</u> of any such attorney is a non-privileged fact.  Lontex's counsel would not provide any authority for his instruction to Mr. Nathan not to answer.

[2] Specifically, five of those documents are described as a "[c]ommunication relating to legal advice," and two of those documents are described as an "[a]ttachment to correspondence relating to legal advice."

[3] *See* https://web.archive.org/web/20150102080606/http://www.tmexpress.com/index.php ("Disclaimer: The information provided in this site is not legal advice, but general information on legal issues commonly encountered. TradeMark Express is not a law firm and is not a substitute for an attorney or law firm. Communications between you and TradeMark Express are protected by our Privacy Policy, but are not protected by the attorney-client privilege or work product doctrine. TradeMark Express cannot provide legal advice and can only provide self-help services at your specific direction.") (captured on January 2, 2015 and accessed through WayBack Machine on November 8, 2019). This language still remains on the website.  *See* https://www.tmexpress.com/ ("TradeMark Express and Urgent Trademark are not law firms and are not a substitute for an attorney or law firm.") (accessed on November 8, 2019).

repeated that in at least one prior litigation.[4]  For each of the TradeMark Express entries, the recipient's email address, "sales@sweatitout.com," does not belong to any lawyer, but rather is the email address at Lontex shared by Efraim Nathan, President of Lontex, and his daughter.  (*Id.*)  As for the subject matter of the TradeMark Express communications purportedly "relating to legal advice," all of the entries facially pertain to non-privileged material.  The first two entries simply state, "General Information for Efraim – NEW TRADEMARK."  (*Id.*)  The third and fourth entries appear to relate to purchasing, described as "Quote for Trademarks owned by Lontex Corp – Efraim" and "Customer Receipt/Purchase Confirmation."  (*Id.*)  None of these four entries reference anything about legal advice, and mere mention of a "trademark" does not *per se* make a communication legal advice.  Finally, the last three TradeMark Express entries appear to be trademark search reports – attachments of "US National & US Common-Law Research for Cool Compression" – which are not privileged.  *See* sources cited *infra* p. 6.

The final three entries on the Privilege Log pertain to litigation funding and contain <u>redacted</u> date and category information for what are generically described as "[r]ecords and communications concerning litigation funding in anticipation of litigation."  (Miller Decl., Ex. 5.)  In the column labeled "Doc Type" for each of these entries, there are three different types of documents specified, "MSG/MS Word/PDF."  (*Id.*)  And under "Privilege," there are three different identifiers for privilege asserted, "ACP/WP/CI."  (*Id.*)  The description of "[r]ecords and communications" suggests that there are multiple documents in this "litigation funding" category, yet these documents are not separately listed on the log.  (*Id.*)  In addition, the Privilege Log fails to identify the funder

---

[4] "Plaintiff fails to cite a single person who believed we are a law firm. Not 1. We have <u>never</u> had this complaint in 26 years. Our clients understand the way we operate and why our way saves them $. . . . In fact, our major benefit we stress over and over is that we are not a law firm. Small businesses save money up to $1000 per trademark because an attorney is <u>not</u> doing all the 8-10 hours of work. This is our selling point. . . . I, nor my staff[,] offer legal help. We continually refer clients to one of the 5 trademark attornies. [sic] We never give legal advice. The trademark attorneys we provide access to do, for our clients." *LegalForce RAPC Worldwide P.C. v. Demassa*, No. 18-CV-00043-MMC-TSH (N.D. Cal. Dec. 21, 2018), ECF 65 at 3-4 (emphasis in original).

in the author/from and recipient columns, vaguely referring to the communicating party or parties as "Litigation Funder" without providing any name.  (*Id.*)

## ARGUMENT

**I.      Lontex Should Be Required to Immediately Amend its Deficient Privilege Log and Produce the Non-Privileged Documents.**

This Court should compel Lontex to immediately fix the clear deficiencies in its privilege log to comply with the requirements of the Federal Rules and the ESI Order.  Rule 26(b)(5) provides that a party withholding information on the basis of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Likewise, pursuant to Section III.2. of the ESI Order, Lontex's log must provide the date, author, custodian, recipient, file type, and subject of each withheld document "to the extent it is reasonably available and to the extent is does not reveal protected content."  Lontex must further provide an itemized log containing separate entries for each document, with the exception of multiple messages in the same email string, which may be logged inclusively provided that all senders and recipients of all emails in the string are identified.  *Id.*

Furthermore, "'typically the logs will identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. . . . [I]f the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.'"  *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005) (citing *Bowne of N.Y. City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 474 (S.D.N.Y. 1993)); *ePlus, Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 252 (E.D. Va. 2012) ("Parties seeking to challenge a claim of privilege have sparse information at their

disposal.  Because they do not actually have access to the privileged documents, they must rely on

the opposing party's description of them in the privilege log.  Accordingly, the descriptions in the

log must satisfy the claiming party's burden.").

    **A.**    **TradeMark Express**

    Lontex has asserted privilege for seven documents from TradeMark Express.  TradeMark

Express, however, has explicitly stated that it does not provide legal advice.  (*See supra* n.3 & n.4.)

Lontex's only response to this is that the prior TradeMark Express lawsuit purportedly shows that

people believe TradeMark Express engages in the practice of law.  (Miller Decl., Ex. 4 at 2.)  The

fact that a competitor of TradeMark Express has alleged in a lawsuit that people may believe

TradeMark Express is a lawyer does not make it so, and does not automatically establish a lawyer-

client relationship with Lontex.  When a non-attorney is consulted in the genuine but mistaken

belief that he is a qualified attorney, the attorney-client privilege only applies where the mistake

was reasonable and the would-be client used a "respectable degree of precaution" in engaging the

"attorney."  1 Greenwald et al., Testimonial Privileges § 1:33 (3d ed.) (citing *United States v.

Boffa*, 513 F. Supp. 517, 523 (D. Del. 1981)).  Here, TradeMark Express' website explicitly states

that it is not a law firm, making any belief that it is a lawyer unreasonable.  (*See supra* n.3.)  Lontex

also argues that "TradeMark Express communications with Lontex expressly refer to attorney

assistance and research" (Miller Decl., Ex. 4 at 2)—but a non-lawyer's suggestion that Lontex

should get legal assistance is not itself privileged legal advice absent a reasonable mistake.  Lontex

has not identified any attorneys or the subject matter of any legal advice provided by TradeMark

Express, nor can it argue that any mistake in believing TradeMark Express was an attorney or

provided legal advice was reasonable.

    On the point of the subject matter of the TradeMark Express documents, Lontex amended

its original privilege log to add the following descriptions under file name/subject: "General

Information for Efraim – NEW TRADEMARK;" "Quote for Trademarks owned by Lontex Corp – Efraim;" and "Customer Receipt/Purchase Confirmation."  (Miller Decl., Ex. 5.)  None of these descriptions suggest that the content of these communications was privileged.  "General information" would not seem to constitute legal advice.  Likewise, any quote, receipt, or purchase confirmation provided by TradeMark Express would not fall under the purview of the attorney-client privilege, despite Lontex's contrary characterization for purposes of this lawsuit.

In addition, to the extent the TradeMark Express entries, two of which are email attachments described as "US National & US Common-Law Research for Cool Compression," refer to trademark searches, they are not privileged and should be produced to NIKE.  It is a well-established maxim in trademark cases that such results are comprised of facts, which are not privileged.  *See* 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 20:112 (5th ed. 2019) (the U.S. Patent and Trademark Office Trademark Trial and Appeal Board has taken the position that "the contents of a search report are not privileged from discovery") (citing *Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty Co.*, 183 U.S.P.Q. 344 (S.D.N.Y. 1974) (holding that trademark searches by date with the name of the trademark service were discoverable and were not protected by work product)); *CytoSport, Inc. v. Nature's Best, Inc.*, No. Civ. 061799 DFL EFB, 2007 WL 1040993, at *6 (E.D. Cal. Apr. 4, 2007) ("trademark watch service reports are not entitled to work product protection or attorney-client privilege").

Further, NIKE believes that the facts in the TradeMark Express documents likely relate directly to NIKE's delay-based defenses in this case which include allegations that Lontex waited *over three years* to file this lawsuit to inflate its damages claims against NIKE, while Lontex was never concerned with any likelihood of consumer confusion.  (*See* NIKE's Answer, Affirmative Defenses, and Amended Counterclaims to Lontex's First Amended Complaint ("NIKE's

Answer"), ECF 45 at 16.)  Trademark searches made available to Lontex in February 2015 would include precisely the type of information that is of critical importance to the merits of this case – including potential uses of "Cool Compression" or lack thereof.  Lontex's counsel is well familiar with the typically observed privilege dichotomy surrounding searches in trademark infringement cases – legal opinions are privileged, trademark searches are not.  For Lontex to stonewall on production of such searches apparently done in 2015 when Lontex's conduct in 2015 is an inquiry of prime importance smacks of gamesmanship.

Because these searches are not privileged and communications about them by non-lawyers are not privileged, Lontex should be required to remove the seven TradeMark Express entries from the privilege log and immediately produce each of the non-privileged TradeMark Express documents to NIKE.

### B.    Litigation Funding

Rule 26(b)(5) and the case law thereunder only requires a party to log <u>relevant</u> privileged documents.  *See AstraZeneca LP v. Breath Ltd.*, No. 08-cv-1512 (RMB/AMD), 2011 WL 1421800, at *13 (D.N.J. Mar. 31, 2011) ("the Court agrees that AstraZeneca's inclusion of these documents on its privilege log constitutes an acknowledgment of the fact that these documents are relevant to this action") (citing *Pem–America, Inc. v. Sunham Home Fashions, LLC*, No. 03 Civ. 1377, 2008 WL 394787, at *3 (S.D.N.Y. Feb. 13, 2008) ("As a starting point, a privilege log must be prepared for documents determined to be relevant to the litigation.")).  By including the litigation funding documents on its Privilege Log, Lontex thus has conceded that the documents are indeed relevant.

Lontex has failed to provide any of the basic information required by the Federal Rules and ESI Order for the withheld litigation funding documents.  *See Thompson, Jr. v. Glenmede Tr. Co.*, No. Civ. A. 92-5233, 1995 WL 752443, at *4 (E.D. Pa. Dec. 19, 1995) ("Nevertheless, the

plaintiffs' list is defective because it merely lists categories of documents that are allegedly protected and does not provide information with respect to individual documents."); *see also United States v. Cedeno*, 496 F. Supp. 2d 562, 567-68 (E.D. Pa. 2007) (explaining that the identity of a person paying for a legal defense is not privileged).   The failure to specify the nature of purportedly privileged documents in accordance with Rule 26(b)(5) has resulted in waiver of the claimed privilege. *See Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 662 (D. Colo. 2000).

Further, in clear violation of the ESI Order, there are no separate entries for each document in the purported litigation funding category, and therefore it is impossible to know the nature of each document in this category.   Lontex's log lacks "proper claim[s] of privilege [because such claims] require[ ] a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." *Foster v. Berwind Corp.*, No. 90-cv-0857, 1990 WL 209288, at *2 (E.D. Pa. Dec. 10, 1990).

While the ESI Order states, "[t]he parties agree to discuss in good faith the option to use categorical privilege logging for some or all withheld documents," Lontex never raised the option to categorically log and NIKE never agreed to the use of such categorical logging.   Lontex's three broad categorical entries for withheld litigation funding documents is thus improper and violates the ESI Order.

To the extent Lontex has taken the position that there is a common legal interest between Lontex and any of its litigation funders, that is irrelevant to the proper disclosure of relevant documents in a privilege log.   To make any determination on a common interest privilege at this stage would be premature without having sufficient details on the basis for Lontex's privilege claims for these documents.   Lontex would only be able to assert the common interest privilege if Lontex and its litigation funders possessed identical legal interests or were otherwise "allied in a

common legal cause" when communications were exchanged.  *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-cv-453-RGA, 2018 WL 798731 (D. Del. Feb. 9, 2018) (internal citation omitted) (finding that the plaintiff had not carried its burden of establishing a common legal interest with its litigation funder and as a result, the privilege did not apply).[5]  While it is likely that Lontex's litigation funding documents are <u>not</u> protected under the common interest privilege given the narrow circumstances under which the privilege applies, at this stage, NIKE has simply requested that Lontex provide in its Privilege Log the basic level of detail required under Rule 26(b)(5) and the ESI Order.  We note that the issue of a litigation funder common interest privilege has not been determined in this District, and cases from other courts go both ways.  *See, e.g.*, *Cohen*, WL 745712 (finding communications between plaintiff and potential litigation funder were not protected by common interest privilege).

Lontex's pre-motion meet and confer communications seek to excuse Lontex's insufficient logging by claiming that NIKE would not be entitled to litigation funding documents in any event. This is improper.  While a complete and meaningful analysis of whether these documents should be produced to NIKE cannot be completed until Lontex provides a proper log, it is also improper for Lontex to make blanket claims about NIKE's lack of entitlement to such documents.  The litigation funding documents referenced in Lontex's Privilege Log are important to NIKE's defenses in this case, specifically its delay-based defenses.  Where NIKE suspects and alleges that Lontex has engaged in untoward behavior in allowing a non-party to make decisions that have

---

[5] The interests must be identical, not similar, and they must be legal, not solely commercial.  *TC Tech. LLC v. Sprint Corp.*, No. 16-cv-153-RGA, 2018 WL 6584122, at *2 (D. Del. Dec. 13, 2018); *Grider v. Keystone Health Plan Cent., Inc.*, No. Civ. A. 05-MC-40, 2005 WL 2030456, at *6 (M.D. Pa. July 28, 2005); *Gelman v. W2 Ltd.*, No. 14-cv-6548, 2016 WL 8716248, at *3 (E.D. Pa. Feb. 5, 2016) (the common interest exception to the waiver of the attorney-client privilege "requires the parties to have a common legal interest, and not merely a common commercial interest"); *see also Cohen v. Cohen*, No. 09 Civ. 10230 LAP, 2015 WL 745712, at *1 (S.D.N.Y. Jan. 30, 2015) (finding that the plaintiff and its litigation funder, though possibly having a common financial interest in the outcome of the litigation, did not have a relationship that fell into "the narrow category primarily reserved for co-litigants pursuing a shared legal strategy").

slow-boated this litigation, good cause exists to show that litigation funding discovery is relevant to NIKE's defenses. *Cf. In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, No. 19-cv-2875 (RBK/JS), 2019 WL 4485702, at *3 (D.N.J. Sept. 18, 2019) ("*In re Valsartan*") (denying defendants' request for carte blanche discovery of plaintiffs' litigation funding because there did not exist good cause to show discovery was relevant to the claims and defenses in the case). Moreover, a prevailing defendant in an "exceptional case" brought under the Lanham Act, for example where the plaintiff's claims are motivated by an opportunity to monetize its trademark registrations and not by preventing or remedying consumer confusion, is likely entitled to attorneys' fees. *See* 15 U.S.C. § 1117(a) (permitting award of reasonable attorney fees to the prevailing party in exceptional cases). The standard for an "exceptional case" determination for prevailing parties takes into consideration the totality of the circumstances surrounding pursuit of the case. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756, 1756 n.6 (2014) ("district courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence'") (quoting *Fogerty v. Fantasy, Inc.*, 114 S. Ct. 1023, 1033 n.19 (1994)). The Third Circuit Court of Appeals has applied the *Octane Fitness* standard to the interpretation of § 1117(a) of the Lanham Act. *Fair Wind Sailing v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014).

Importantly, on the merits, NIKE has asserted a laches defense based on Lontex's delay in bringing this litigation. (*See* NIKE's Answer, ECF 45 at 16.) NIKE is entitled to learn when Lontex made arrangements with its litigation funder where Lontex first sent a cease-and-desist letter to NIKE in 2016 and then waited almost three years without explanation to bring this case.

What Lontex told its litigation funder about the merits or lack thereof of its claims, if not covered by a common interest privilege, is a discoverable party admission.

NIKE is further entitled to know the identity of the litigation funder to determine whether any of the third parties that Lontex has identified in its Initial Disclosures as individuals who will support its case is involved in a funding arrangement with Lontex.  NIKE has attempted to communicate with each of those individuals and some of them have avoided NIKE's attempts. There is no reason why Lontex should withhold identifying information about the funder or funders, unless it is doing so to put NIKE at a disadvantage for NIKE's defense of this action.

Lontex's attempt to rely on *In re Valsartan* for the proposition that "[c]ourts repeatedly hold that private financial information is irrelevant to claims and defenses and not proportional to the needs of a case" is inapposite.  (Miller Decl., Ex. 4 at 1.)  In that class action, defendants *did not know* whether plaintiffs were backed by litigation funders, and yet sought carte blanche discovery into plaintiffs' litigation funding, including details and communications regarding the financing.  *In re Valsartan*, 2019 WL 4485702 at *1.  The court noted that it would order discovery into litigation funding "only if good cause exists to show the discovery is relevant to the claims and defenses in the case," for example, "where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or are not being protected, or conflicts of interest exist."  *Id.* at *3.  The court cited many reasons to deny defendants' requests for this discovery, including that defendants had raised no nonspeculative basis for their requests.  *Id.* at *4.  While the court denied defendants' overbroad request for litigation funding discovery, the court held that it would review *in camera* plaintiffs' litigation funding documents and determine the scope of discovery, if any.  *Id.* at *7 ("To be sure, however, the Court is not ruling that plaintiffs' litigation funding can never be discovered.  If good

cause exists to order the discovery in an appropriate instance, it will be done.").[6]  Certainly, then, there are circumstances such as those present here under which litigation funding is discoverable, and there is no question that Lontex has litigation funding in this case.[7]

In short, Lontex's Privilege Log is plainly deficient.  Despite being on notice of these deficiencies for weeks, Lontex has been intransigent in its refusal to provide the log specificity sought in this motion.  This Court should compel Lontex to amend its Privilege Log immediately. NIKE stresses that the Court need not decide now whether Lontex's litigation funding documents are or are not privileged; Lontex should be ordered to log those documents individually, as required by Rule 26(b)(5) and the ESI Order, so that NIKE (and if necessary the Court) will have the information needed to make that determination.

## II.     Sanctions Are Warranted for Lontex's Deliberate Refusal to Comply with the Federal Rules and the ESI Order.

In addition, pursuant to Fed. R. Civ. P. 37(a)(5), this Court should sanction Lontex for failing to timely cure the deficiencies in its Privilege Log by requiring it to pay NIKE's attorneys' fees associated with this motion.  NIKE first raised the deficiencies with the original log on October 21, 2019, but Lontex has merely delayed by serving an "updated" privilege log that did not cure those deficiencies.  In doing so, Lontex has needlessly "waste[d] time for opposing counsel and the court."  *Weems v. Hodnett*, No. 10-cv-1452, 2011 WL 3100554, at *1 (W.D. La.

---

[6] In two other distinguishable cases cited by Lontex, litigation funding discovery was also not found to be relevant to the claims and defenses in the case.  (Miller Decl., Ex. 4 at 1-2 (citing *Benitez v. Lopez*, No. 17 Civ. 3827-SJ-SJB, 2019 WL 1578167 (E.D.N.Y. Mar. 14, 2019) (finding defendants had not explained or alleged how litigation funding had impacted plaintiff's credibility or could be used to impeach his trial testimony); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350 (VM) (KNF), 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) (denying discovery of litigation funding agreement after finding defendants had provided no nonspeculative basis for concerns over fitness of counsel to represent plaintiff class)).

[7] Lontex also cites *Space Data Corp. v. Google LLC*, No. 16-cv-03260 BLF (NC), 2018 WL 3054797 (N.D. Cal. June 11, 2018) (*see* Miller Decl., Ex. 4 at 2), where the plaintiff proffered that it *did not have* any third-party litigation financing, leading the court to state that "*potential* litigation funding is a side issue at best" and to deny defendants' request to compel discovery.  (Emphasis in original.)  Here, Lontex has included documents related to litigation funding on its privilege log and does not dispute that it has received litigation funding.

July 25, 2011).  As this Court has recognized, sanctions are warranted when a party engages in "a serious breach of discovery obligations" and has no "adequate explanation" for its conduct. *Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 268 (E.D. Pa. 2015).  In any event, as the prevailing party on a motion to compel, NIKE is entitled to its attorneys' fees for this motion under Fed. R. Civ. P. 37(a)(5).

## CONCLUSION

NIKE, Inc. respectfully requests that this Court grant its motion to compel and issue an order: (i) compelling Lontex to amend its Privilege Log to comply with Fed. R. Civ. P. 26(b)(5) and the ESI Order; (ii) compelling Lontex to remove entries for any non-privileged documents from the Privilege Log and promptly produce those documents to NIKE; and (iii) sanctioning Lontex for refusing to timely amend its deficient privilege log, including awarding NIKE its attorneys' fees for this motion.

November 13, 2019

Respectfully submitted,

By:   */s/ Gina L. Durham*

DLA PIPER LLP (US)

Gina L. Durham
555 Mission Street, Suite 2400
San Francisco, CA 94105

Frank W. Ryan
Andrew J. Peck
Marc E. Miller
1251 Avenue of the Americas
New York, NY 100201

Darius C. Gambino
Ben C. Fabens-Lassen
1650 Mark Street, Suite 5000
Philadelphia, PA  19103

*Attorneys for Defendant NIKE, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of November, 2019, I caused Defendant NIKE, Inc.'s Motion to Compel Plaintiff Lontex Corporation to Amend Privilege Log and Produce Non-Privileged Documents to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania using the ECF system, it is available for viewing and downloading from the ECF system, and a true and correct copy was served via ECF to all counsel of record registered with the ECF system.


*/s/ Ben C. Fabens-Lassen*

## **RULE 37 CERTIFICATION**

I hereby certify that I have conferred in good faith with opposing counsel in an attempt to resolve this discovery dispute without the need for judicial intervention.  As explained in the attached memorandum of law, once it became clear that the parties were at an impasse, the parties conferred about potential solutions for resolving the discovery dispute.  After the conference, the Plaintiff has still refused to remedy its discovery deficiencies, thereby confirming that the parties are at an impasse on the issues in this motion and that there is no alternative way to resolve this dispute.  As a result, after conferring about the subject of this motion, the parties are unable to agree on a resolution and judicial intervention is required.


*/s/     Ben C. Fabens-Lassen*

16