**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LONTEX CORPORATION<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NIKE, INC.,<br><br>　　　　　Defendant. | Civil Action No. 2:18-cv-05623-MMB |

**PLAINTIFF LONTEX CORPORATION'S OPPOSITION TO DEFENDANT
NIKE INC.'S MOTION TO COMPEL AMENDMENT OF PRIVILEGE LOG AND
<u>PRODUCTION OF NON-PRIVILEGED DOCUMENTS (DKT. 86)</u>**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1
II. FACTUAL BACKGROUND ........................................................................................... 3
III. LEGAL ARGUMENT ...................................................................................................... 5
    A. Lontex's Privilege Log Complies with the FRCP and the ESI Order ................... 5
    B. Lontex's Relevance Objection Is Preserved ........................................................... 6
    C. Documents Pertaining to Litigation Funding are Irrelevant ................................... 8
    D. Documents Pertaining to Litigation Funding are Privileged ................................ 12
    E. Nike's Request for Fees Should Be Denied .......................................................... 13
IV. CONCLUSION ............................................................................................................... 14

## TABLE OF AUTHORITIES

**Page**

**Cases**

*AstraZeneca LP v. Breath Ltd.*,
   No. CIV. 08-1512, 2011 WL 1421800 (D.N.J. Mar. 31, 2011)..................................................7

*Benitez v. Lopez*,
   No. 17-CV-3827-SJ-SJB, 2019 WL 1578167 (E.D.N.Y. Mar. 14, 2019).............................8, 9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   No. 12-CV-9350 VM KNF, 2015 WL 5730101 (S.D.N.Y. Sept. 10, 2015) ........................8, 9

*Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*,
   No. CV 16-538, 2018 WL 466045 (W.D. Pa. Jan. 18, 2018)...................................................12

*Miller UK Ltd. v. Caterpillar Inc.*,
   17 F. Supp. 3d 711 (N.D. Ill. 2014) ........................................................................................11

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
   No. 2:07-CV-565-TJW-CE, 2011 WL 1714304 (E.D. Tex. May 4, 2011) .............................13

*Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*
   No. 315CV01735HRBB, 2016 wl 7665898 (S.D. Cal. Sept. 20, 2016)............................12, 13

*Pham v. Hartford Fire Ins. Co.*,
   193 F.R.D. 659 (D. Colo. 2000) ................................................................................................6

*Space Data Corp. v. Google LLC*,
   No. 16-CV-03260 BLF (NC), 2018 WL 3054797 (N.D. Cal. June 11, 2018) ......................8, 9

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab.
   Litig.*,
   No. CV 19-2875 (RBK/JS), 2019 WL 4485702 (D.N.J. Sept. 18, 2019).............................8, 9

*VHT, Inc. v. Zillow Grp., Inc*,
   No. C15-1096JLR, 2016 WL 7077235 (W.D. Wash. Sept. 8, 2016) .......................................12

*Viamedia, Inc. v. Comcast Corp.*,
   No. 16-cv-5486, 2017 U.S. Dist. LEXIS 101852 (N.D. Ill. June 30, 2017).............................13

**Other Authorities**

Fed. R. Civ. P. 26...........................................................................................................2, 3, 5

Fed. R. Civ. P. 37...............................................................................................................13

Plaintiff Lontex Corporation ("Lontex") hereby submits the following Opposition to Defendant Nike, Inc.'s ("Nike") Motion to Compel Amendment of Privilege Log and Production of Non-Privileged Documents (Dkt. 86).

## I.
## INTRODUCTION

By way of its motion to compel, Nike continues a scorched earth approach to this litigation now seeking unnecessary amendment of Lontex's privilege log to include information pertaining to litigation funding communications that have no relevance to this trademark infringement case, and that in any event are privileged from disclosure. Nike's end-game is to oppress and harass Lontex with this meritless motion seeking access to information that Nike knows is irrelevant and privileged, including classic information protected as counsel's work product and other privileges.

Nike also seeks production of documents pertaining to TradeMark Express. However, although Lontex maintains that it was justified in logging and withholding documents pertaining to TradeMark Express because those disputed communications with Lontex expressly refer to work performed by an attorney, Lontex will nonetheless remove those entries from its privilege log and will produce the related TradeMark Express documents. These documents will be produced as part of Lontex's supplemental production taking place on December 4, 2019; consequently, Nike's misplaced arguments regarding TradeMark Express are in any event moot. Nike's motion to compel is now limited to its arguments concerning Lontex's privilege log entries pertaining to litigation funding, which are more appropriately framed by Nike's Fifth Requests for Production (Nos. 111-118) and Lontex's objections and responses to those requests.

The Court should deny Nike's motion to compel for several independent reasons. First, Lontex has provided sufficient information for Nike to assess Lontex's privilege claims without

conceding the relevance of any document pertaining to litigation funding. Nike's motion shows that it has manufactured an artificially high bar for the description requirements under Fed. R. Civ. P. 26(b)(5)(A)(ii) and the Stipulated Order Regarding Electronically Stored Information ("ESI") Discovery ("ESI Order"). Lontex's privilege log entries comply with the letter of both Fed. R. Civ. P. 26(b)(5)(A)(ii) and the ESI Order, Section III.2, respectively. Moreover, Lontex's privilege log entries explain that the withheld documents consist of "[r]ecords and communications concerning litigation funding in anticipation of litigation," which is sufficient for Nike to evaluate relevance and privilege.

Second, the motion should be denied because Nike fails to proffer of any credible basis for the relevance of litigation funding. Nike relies on rank speculation in a feeble effort to show why discovery of litigation funding is "relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Throughout its motion, Nike makes unfounded allegations lacking any foundation and entirely devoid of support for any claim of relevance. And contrary to Nike's belligerent refusal to acknowledge Lontex's relevance objection, Lontex previously declined Nike's invitation to waive all objections aside from privilege. Instead, Lontex agreed to include information on its privilege log concerning litigation funding records expressly pursuant to its reserved objections, including as stated in its objections and responses to Nike's Fifth Requests for Production.

Finally, even if the documents were relevant (which they are not), litigation funding documents are privileged and protected from disclosure because the documents were prepared in anticipation of litigation and pursuant to communications with attorneys. Lontex is not required to provide any additional information in its amended privilege log because doing so would "reveal[] information itself privileged or protected" or "reveal protected content" pursuant to

Fed. R. Civ. P. 26(b)(5)(A)(ii) and ESI Order, Section III.2.  Lontex has also reserved its privilege objections in its responses to Nike's Fifth Requests for Production.  Simply, Nike has not expressed a legitimate need for litigation funding information, because there is none.  No additional information concerning the entries in Lontex's amended privilege log is needed to know that the privilege applies to litigation funding documents.

## II.
## FACTUAL BACKGROUND

While the parties were meeting and conferring regarding separate motions to compel, on October 9, 2019, Nike propounded its Fifth Requests for Production.  (*See* Declaration of Ben L. Wagner ("Wagner Dec."), Ex. 1.)  Those Requests are directed to litigation funding and similar categories of documents.  (*Id*.)  Since at least August 2019, Lontex has maintained that Nike's discovery requests directed to documents and communications about this action are improper and such documents are not discoverable.  (Wagner Dec., Ex. 2 at pp. 5-6.)

On October 18, 2019, Lontex served its original privilege log with eight entries.  (Dkt. 86-2.)  For litigation funding documents, the privilege log entry provided "objective metadata . . . to the extent it [did] not reveal protected content . . . ."  (Dkt. 43 at § III.2.)  Specifically, the privilege log entry pertaining to litigation funding documents provided the file name/subject, the document type, and the privilege asserted, but redacted the date, author(s), recipient(s), and category.  (*Id*.)  The privileged bases for withholding these documents was explained by the identifiers "ACP" (attorney-client privilege), "WP" (work product), and "CI" (common interest).  (Dkt. 86-2.)  Lontex asserted these privileges because all documents created or exchanged with a litigation funder were prepared in anticipation of litigation, pursuant to communications with Lontex's attorneys, and subject to non-disclosure and common interest provisions.  (Wagner Dec., ¶ 3.)

Nike requested Lontex to waive all objections other than privilege regarding the litigation funding documents. (Wagner Dec., Ex. 3 at p. 2.) Lontex declined and confirmed that it "never stated . . . that it would withdraw all objections other than privilege." (*Id.* at p. 1.) Lontex further explained, "[g]iven the parties will have a dispute over both relevance and privilege of litigation-funding related materials," that the parties "agree to have the special master take up the issues through [Nike's] Fifth Set [of Requests], with no intention to lose time on the issue." (*Id.*)

On October 21, 2019, without previously meeting and conferring, Nike sent Lontex a letter demanding amendment of Lontex's original privilege log within two days. (Dkt. 86-3.) After taking Nike's demands under consideration, on November 6, 2019, Lontex provided Nike with a substantive response and included an invitation to meet and confer. (Dkt. 86-4, 5.) After meeting and conferring on November 7, 2019, and in an effort to compromise, Lontex promptly provided an amended privilege log on November 8, 2019. (Dkt. 86-6.) Lontex amended the litigation funding entries to include three entries, which provided more information than the original privilege log. (Dkt. 86-2, 6.) Namely, Lontex included descriptions of the author(s), recipient(s), file name/subject, the document type, and privilege asserted for litigation funding documents "to the extent it [did] not reveal protected content . . . ." (*See* Dkt. 43 at § III.2; Dkt. 86-6.)

In the November 8th cover email attaching the privilege log, Lontex reminded Nike that it had failed to cite any authority supporting its position regarding privilege, but that Lontex remained open to considering any such authority.[1] (Wagner Dec., Ex. 4.) The same November 8th email also attached Lontex's objections and responses to Nike's Fifth Requests for Production. (Wagner Dec., Ex. 5.) In its objections and responses, Lontex withheld responsive

---

[1] Nike never responded to that email and invitation to continue good faith meet and confer efforts, and instead Nike proceeded to file its motion prematurely.

documents to the Requests on the basis of relevance and privilege (among other objections). (*Id.*) To date, the parties have not fully met and conferred regarding Lontex's objections and responses to Nike's Fifth Requests for Production.

## III.
## LEGAL ARGUMENT

A party may only obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Lontex's privilege log provides the requisite information to Nike, and in any event private financial information, including any potential for litigation funding for this case, is irrelevant to the claims and defenses, and privileged.

### A.   Lontex's Privilege Log Complies with the FRCP and the ESI Order

Lontex's privilege log provides sufficient information for Nike to assess Lontex's privilege claims. Tellingly, Nike fails to articulate anywhere in thirteen pages of briefing how any supposed additional information—such as a date or specific name of a litigation funder—is specifically necessary for Nike to assess whether litigation funding documents are privileged. That argument is glaringly absent because Nike already has all the necessary information. Specifically, Lontex's privilege log entries are proper because they "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed . . . without revealing information itself privileged or protected" or without "reveal[ing] protected content" in compliance with Fed. R. Civ. P. 26(b)(5)(A)(ii) and the ESI Order, Section III.2.

Nike would have the Court believe that Lontex waived its privilege objections by failing to comply with Nike's restrictive interpretation of both Fed. R. Civ. P. 26(b)(5)(A)(ii) and Section III.2 of the ESI Order. However, Nike disingenuously cites an inapplicable case to support its argument.

In *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 662 (D. Colo. 2000), the defendant waived its right to assert any objections, including the attorney-client privilege, to plaintiffs' interrogatories and requests for production because defendant did not assert objections within the 30 days permitted by the Federal Rules of Civil Procedure. There is no discussion regarding privilege log deficiencies in the *Pham* case.

Nike's waiver argument also conveniently ignores that Lontex preserved all of its objections to production of litigation funding documents in its objections and responses to Nike's Fifth Requests for Production. (Wagner Dec., Ex. 5.) Lontex's privilege log entries explain that the withheld documents consist of "[r]ecords and communications concerning litigation funding in anticipation of litigation," which is compliant with the ESI Order only requiring the parties to provide a privilege log providing information "to the extent it does not reveal protected content." (Dkt. 43 at § III.2.)

Providing a further amended privilege log as Nike demands would be the equivalent of producing the disputed litigation funding communications that have no relevance and would provide Nike with information it has no right to know about, including: (1) who Lontex communicated with; (2) the frequency of communications; and (3) the timing of those communications. These are not details that Nike is entitled to learn in discovery for a trademark infringement case, and an attempt to extract such irrelevant discovery under the guise of a privilege log is improper.

B.     **Lontex's Relevance Objection Is Preserved**

Nike incorrectly asserts that "[b]y including the litigation funding documents on its Privilege Log, Lontex thus has conceded that the documents are indeed relevant." (Dkt. 86 at 7.) This argument is directly contradicted by the fact that Nike requested Lontex waive all objections other than privilege. (Wagner Dec. Ex. 3 at p. 2.) Nike has always been aware that

Lontex agreed to include information on its privilege log concerning litigation funding records expressly subject to its written objections including relevance. (*Id.* at p. 1.) And of course Nike would not have had to ask Lontex to waive objections if mere inclusion on a privilege log had that effect as it now incredibly asserts.

The only authority that Nike could find to support its untenable argument is one inapplicable case. According to Nike, *AstraZeneca LP v. Breath Ltd.*, No. CIV. 08-1512 (RMB/AMD), 2011 WL 1421800, at *13 (D.N.J. Mar. 31, 2011), supports its argument that logging documents in a privilege log constitutes an admission that the logged documents are relevant. (Dkt. 86 at 7.) Yet, an actual read of *AstraZeneca* reveals that Nike relies on an inapplicable soundbite from this case. Unlike the litigation documents here, the court in *AstraZeneca* independently found that the "evidence sought is directly relevant to the claims in the litigation." 2011 WL 1421800 at *13. Moreover, unlike Lontex, the plaintiff in *AstraZeneca* failed to "assert[] that the[] documents are not relevant in this litigation . . . ." *Id.*

*AstraZeneca* is inapt because the court does not analyze waiver of a relevance objection, but instead the court analyzes the production of documents under the Restatement (Third) of Foreign Relations Law § 442(1)(c). Specifically, *AstraZeneca* analyzes whether a party's communications with in-house counsel in Sweden relating to prosecution of non-U.S. patent applications and communications with any other in-house counsel in Sweden that do not relate to U.S. activities are subject to disclosure in U.S. District Court litigation. 2011 WL 1421800 at *13. The lone sentence cited by Nike is part of the analysis of one of multiple factors Courts have to balance in determining whether to compel production of documents that would otherwise be protected from disclosure by foreign law. *Id.*

Nike's argument that logging a document constitutes a concession of relevance is without merit and inconsistent with Nike's conduct in asking Lontex to waive objections including relevance.

## C. Documents Pertaining to Litigation Funding are Irrelevant

Nike concedes that there must be "good cause" supporting an argument that litigation funding documents are relevant. *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, No. CV 19-2875 (RBK/JS), 2019 WL 4485702, at *3 (D.N.J. Sept. 18, 2019). The starting point for the analysis that Nike has the burden to overcome, however, is that discovery concerning litigation funding is irrelevant. *In re Valsartan*, 2019 WL 4485702, at *3 ("The Court agrees with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant.") (citing cases); *Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *1 (E.D.N.Y. Mar. 14, 2019) ("As to the litigation funding documents, Defendants fail to establish that such discovery is 'relevant to any party's claims or defense.'"); *Space Data Corp. v. Google LLC*, No. 16-CV-03260 BLF (NC), 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) ("Even if litigation funding were relevant (which is contestable), *potential* litigation funding is a side issue at best."); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-CV-9350 VM KNF, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) (denying motion to compel disclosure of litigation funding documents as not relevant to any party's claim or defense).

In its motion, Nike has limited the potential relevance of litigation funding documents to four unfounded scenarios: (1) to assess its baseless suspicion that a third-party is surreptitiously controlling Lontex's decision-making in this case; (2) to maybe use evidence of hypothetical litigation funding malfeasance to support a post-trial, post-judgment hypothetical fee motion

under the "exceptional case" standard;[2] (3) to support its conjecture that Lontex might have delayed bringing this case for some nefarious purpose;[3] and (4) to dispel its own unfounded suspicion that witnesses identified by Lontex might be part of a litigation funding conspiracy with Lontex. (Dkt. 86 at 9-11).

Unsurprisingly, aside from attorney argument, Nike has not cited any legal authority to support this bizarre witch hunt. Despite Nike's attempt to sidestep on-point authority, the Court in *In re Valsartan* made clear that a "sufficient showing" that "something untoward occurred" was required before it would consider ordering discovery related to litigation funding. *In re Valsartan*, 2019 WL 4485702, at *3. As an example, the *In re Valsartan* court explained that it would order discovery of litigation funding where there was a "sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs . . . ." *Id*.

Importantly, the court also made clear that "rais[ing] a parade of horribles that could or may arise from litigation funding agreements" was not a sufficient showing. *Id*. at *4. Similarly here, in addition to zero legal authority supporting its position, Nike also provides no evidence supporting its own "parade of horribles" despite the clear direction provided by *In re Valsartan*.[4]

Not only does Nike fail to make a sufficient showing, but it fails to provide any concrete indicia of fact to support its "parade of horribles" and comes nowhere near satisfying the requisite proffer that would warrant litigation funding discovery. Quite the opposite, Nike wants a fishing expedition on litigation funding to see whether its groundless suspicions can be

---

[2] Not only would such discovery be incredibly premature, but how this hypothetical situation would have any bearing on a fee motion is unexplained in Nike's motion.

[3] It is indisputable that Lontex brought its claims well within the six year limitations period applicable to Lanham Act claims brought in Pennsylvania courts, and therefore this line of argument completely misses the mark.

[4] Nike's attempts to distinguish additional authority similarly falls flat. *See* Dkt. 86 at 12 n.6 and n.7, citing *Benitez v. Lopez*, *Kaplan v. S.A.C. Capital Advisors*, and *Space Data Corp. v. Google*.

corroborated. Denial of Nike's motion is proper on relevance grounds as it has failed to raise a non-speculative basis for litigation funding documents.

A review of Nike's Fifth Requests for Production further highlights how litigation funding documents are not relevant and not proportional to the needs of the case. In Nike's Fifth Requests for Production, Nike made eight Requests (Nos. 111-118)[5]:

**REQUEST FOR PRODUCTION NO. 111:**

Documents sufficient to identify any person or entity, aside from Lontex, with a financial interest in the outcome of this Action.

**REQUEST FOR PRODUCTION NO. 112:**

All Documents and Communications relating to funding or financing of this Action by any third-party.

**REQUEST FOR PRODUCTION NO. 113:**

All contracts or agreements between Lontex and a third-party relating to the funding or financing of this Action.

**REQUEST FOR PRODUCTION NO. 114[6]:**

All Communications between Lontex and a third-party concerning the claims or allegations that Lontex asserted against NIKE in its April 8, 2016 letter to NIKE.

**REQUEST FOR PRODUCTION NO. 117:**

All Documents and Communications between Lontex and a third-party concerning any claims, allegations, or lawsuits that Lontex considered asserting against NIKE in 2018.

---

[5] Request Nos. 115-116 are not listed because they are not at issue as "There are no additional non-privileged, responsive documents from [the year requested] to produce that are not already covered by production agreed to response to RFP No. 73." (Wagner Dec., Ex. 5.)

[6] Lontex has already produced all non-privileged documents that would be responsive to Request No. 114, aside from litigation funding documents. Thus, any dispute regarding this Request is moot except to the extent that it concerns litigation funding.

**REQUEST FOR PRODUCTION NO. 118:**

All Documents and Communications between Lontex and a third-party discouraging, encouraging, or seeking to discourage or encourage Lontex from filing this Action. (Wagner Dec., Ex. 1.)

Motions seeking to compel production of discovery similar to these Requests have been consistently rejected by other Courts. For example, in *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, the Defendant sought similar discovery regarding "'persons and entities that have a financial interest in this litigation,' including an identification of any third party that is funding this litigation." No. 14-CV-03657-SI, 2019 WL 118595, at *1 (N.D. Cal. Jan. 7, 2019). The defendant's proffered reason for seeking this discovery was "'to uncover possible bias issues.'" *Id*. However, the Court concluded that the defendant was not entitled to the discovery because it was not relevant and its assertions of bias were merely "speculative." *Id*.

As another example, in *Miller UK Ltd. v. Caterpillar Inc.*, the defendants sought an order compelling the production of communications and agreements relating to litigation funders. 17 F. Supp. 3d 711, 719 (N.D. Ill. 2014). The defendants argued that discovery into litigation funding might reveal a potential violation of Illinois laws. *Id*. at 721-24. Ultimately, after *in camera* review, the Court concluded "deal documents" were generally not relevant. *Id*.

The Requests at issue similarly seek discovery regarding litigation funders, the identification of litigation funder(s), litigation funding agreement(s), communications with litigation funders regarding the allegations made in Lontex's April 8, 2016 cease and desist letter to Nike, documents and communications with litigation funder(s) regarding claims Lontex has considered raising against Nike, and communications between Lontex and litigation funder(s) who encouraged or discouraged Lontex from filing this Action. These Requests are overbroad

and seek discovery into litigation funding that has been rejected by other courts. Discovery of information pertaining to litigation funding has nothing to do with pursuing Nike's claims and defenses, but rather Nike's hope to find the financial machinery of Lontex's litigation strategy in hopes of finding some way to exploit such information to gain an unfair advantage over the financial underdog in this case (*e.g.*, the party without billions of dollars of resources on hand to crush the other litigant in litigation costs, just as Nike's outside counsel threatened Mr. Nathan would happen if he ever dared to sue Nike). Nike's discovery serves no legitimate purpose other than to harass Lontex.

### D. <u>Documents Pertaining to Litigation Funding are Privileged</u>

Absent some objective evidence that any of Nike's theories of relevance apply in this case, discovery into litigation funding is "negligently relevant, minimally important in resolving the issues [in this case], and unduly burdensome." *See VHT, Inc. v. Zillow Grp., Inc*, No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016). Even if any of the litigation funding documents were somehow potentially marginally relevant to this trademark infringement dispute, the case law is clear that litigation funding discovery is privileged. For example, in *Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, the Court held that materials exchanged with litigation funders fell within the scope of the work-product doctrine because they were communications with the plaintiff's agents and in anticipation of litigation. No. CV 16-538, 2018 WL 466045, at *5–6 (W.D. Pa. Jan. 18, 2018).

As a further example, in *Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd.*, the Court held that any litigation funding agreement would undisputedly be protected by the work-product doctrine as they were prepared in anticipation of litigation and for the purpose of pursuing the litigation. No. 315CV01735HRBB, 2016 WL 7665898, at *5 (S.D. Cal. Sept. 20, 2016). The Court also explained that it was of no consequence that litigation funding documents were

created prior to commencement of the litigation since the documents were ultimately created because litigation was expected. *Id.*

As yet another example, in *Mondis Tech., Ltd. v. LG Elecs., Inc.*, the Court found that certain documents and PowerPoint presentations created for potential investors were protected by the work-product doctrine because they contained information and work-product that were prepared in assistance with the plaintiff's counsel for the purpose of anticipated litigation. No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011); *see also Viamedia, Inc. v. Comcast Corp.*, No. 16-cv-5486, 2017 U.S. Dist. LEXIS 101852, at *2-3 (N.D. Ill. June 30, 2017).

Similarly, any documents created and exchanged between Lontex and a litigation funder were certainly for the purpose of anticipated litigation. Moreover, as is evidenced by Lontex's privilege log, Lontex's counsel participated in all communications and exchanges of information. Thus, those communications are also subject to the attorney-client privilege. The documents and communications were for no purpose other than to pursue this litigation against Nike.

Accordingly, the documents regarding litigation funding are irrelevant and privileged, and Nike's motion should be denied.

E.     **Nike's Request for Fees Should Be Denied**

There is no basis for Nike to be awarded fees related to its motion. As explained above, Lontex complied with its obligations pursuant to the FRCP and the ESI Order in its entries to the privilege log. Moreover, Lontex's objections to disclosure of litigation funding documents and communications are justified as Lontex has shown that discovery into those matters is not only irrelevant and not proportional to the needs of the case but also privileged from disclosure. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

40731152

## IV.
## CONCLUSION

Based on the foregoing, Lontex requests the Court deny Nike's motion in its entirety.

Dated: December 4, 2019  TROUTMAN SANDERS LLP

By: */s/ Ben L. Wagner*
Ben L. Wagner (CA SBN 243594)
ben.wagner@troutman.com
*Admitted Pro Hac Vice*
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092
Telephone: 858-509-6000
Facsimile: 858 509 6040

Michael B. Dubin, Esq.
(PA SBN 70681)
SEMANOFF ORMSBY GREENBERG &
TORCHIA, LLC
2617 Huntingdon Pike
Huntingdon Valley, PA 19006

Attorneys for Plaintiff
LONTEX CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Ben L. Wagner*
Ben L. Wagner

40731152