# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION,<br>      Plaintiff,<br><br>  v.<br><br>NIKE, INC.,<br>      Defendant. | Civil Action No.: 18-cv-5623<br><br>(Hon. Michael M. Baylson)<br>(Master Sandra Jeskie, Esq.)<br><br>**REDACTED PUBLIC VERSION** |

# DEFENDANT NIKE, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF LONTEX CORPORATION TO AMEND PRIVILEGE LOG AND <u>PRODUCE NON-PRIVILEGED DOCUMENTS</u>

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................ 1

II. ARGUMENT .............................................................................................................................. 2

   A. Lontex's Privilege Log Remains Deficient .......................................................................... 2

   B. Documents Pertaining to Lontex's Litigation Funding are Relevant ................................. 5

III. CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
    237 F.3d 198 (3d Cir. 2000) ..................................................................................................9

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    No. 16-cv-453-RGA, 2018 WL 798731 (D. Del. Feb. 9, 2018) ...........................................4

*Aetna Inc. v. Mednax, Inc.*,
    No. 18-cv-02217-WB, 2019 WL 6250850 (E.D. Pa. Nov. 22, 2019) .....................................3

*AstraZeneca LP v. Breath Ltd.*,
    No. Civ. 08-1512, 2011 WL 1421800 (D.N.J. Mar. 31, 2011) ...............................................5

*Benitez v. Lopez*,
    No. 17-cv-3827-SJ-SJB, 2019 WL 1578167 (E.D.N.Y. Mar. 14, 2019) ...............................10

*Cohen v. Cohen*,
    No. 09 Civ. 10230 (LAP), 2015 WL 745712 (S.D.N.Y. Jan. 30, 2015) .................................4

*Gaitan v. SEPTA*,
    No. Civ. 16-6193, 2017 WL 5901098 (E.D. Pa. Nov. 30, 2017) ..........................................10

*Interpace Corp. v. Lapp, Inc.*,
    721 F.2d 460 (3d Cir. 1983) ..................................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    No. 12 Civ. 9350 (VM), 2015 WL 5730101 (S.D.N.Y. Sept. 10, 2015) ..............................10

*Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*,
    No. Civ. 16-538, 2018 WL 466045 (W.D. Pa. Jan. 18, 2018) ...............................................4

*Miller UK Ltd. v. Caterpillar Inc.*,
    17 F. Supp. 3d 711 (N.D. Ill. 2014) .....................................................................................11

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
    No. 14-cv-03657-SI, 2019 WL 118595 (N.D. Cal. Jan. 7, 2019) .........................................11

*In re Niaspan Antitrust Litig.*,
    No. 13-MD-2460, 2017 WL 3668907 (E.D. Pa. Aug. 24, 2017) ...........................................3

*Nozinich v. Johnson & Johnson, Inc.*,
    No. 09-2105-V, 2011 WL 13124088 (W.D. Tenn. Feb. 22, 2011) .........................................5

*Pem–America, Inc. v. Sunham Home Fashions, LLC*,
   No. 03 Civ. 1377, 2008 WL 394787 (S.D.N.Y. Feb. 13, 2008) .................................................5

*Space Data Corp. v. Google LLC*,
   No. 16-cv-03260 BLF (NC), 2018 WL 3054797 (N.D. Cal. June 11, 2018) ..........................10

*SR Int'l Bus. Ins. Co. v. World Trade Center*,
   No. 01 Civ. 9291(JSM), 2002 WL 1455346 (S.D.N.Y. July 3, 2002) .....................................5

*Thompson, Jr. v. Glenmede Tr. Co.*,
   No. Civ. A. 92–5233, 1995 WL 752443 (E.D. Pa. Dec. 19, 1995) ...........................................2

*United States v. Cedeno*,
   496 F. Supp. 2d 562 (E.D. Pa. 2007) .......................................................................................3

*United States v. Gray*,
   No. C 05-3791PJH, 2007 WL 1848030 (N.D. Cal. June 27, 2007) .........................................5

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*,
   No. 19-cv-2875 (RBK/JS), 2019 WL 4485702 (D.N.J. Sept. 18, 2019) .............................4, 10

*Versa Products Co. v. Bifold Co.*,
   50 F.3d 189 (3d Cir. 1995) .......................................................................................................8

**Statutes**

15 U.S.C. § 1117(a) .........................................................................................................................7

Lanham Act ....................................................................................................................................9

**Other Authorities**

Fed. R. Evid. 801(d)(2) ................................................................................................................10

1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 2:2 (5th ed. 2019) ..........................6

1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:1 (5th ed. 2019).........................6

4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:18 (5th ed. 2019) ......................8

Defendant NIKE, Inc. ("NIKE") respectfully submits this Reply in further support of its motion for an order compelling Plaintiff Lontex Corporation ("Lontex") to: (i) amend its November 8, 2019 privilege log (the "Privilege Log") as to the litigation funding entries; and (ii) remove from the Privilege Log any non-privileged litigation funding documents and produce those documents to NIKE (the "Motion").

**I.      INTRODUCTION**

Lontex's opposition does not provide any basis in law for withholding from its Privilege Log (ECF No. 56-1, Miller Decl. Ex. 5) the identity of Lontex's current litigation funder, the identities of all parties to communications with that funder, and the dates of those communications. NIKE's Motion succeeded (following much undue expense to NIKE) in causing Lontex to produce all Trademark Express documents that Lontex improperly logged and withheld, but Lontex still refuses to amend the log to provide all of the required information for its litigation funding documents on a document-by-document basis.  Lontex's opposition brief fails to rebut the specific grounds articulated by NIKE for seeking litigation funding discovery.  Further, the document and deposition discovery to date support NIKE's allegations that Lontex delayed bringing this lawsuit and likely manufactured trademark use evidence during this delay.  By Lontex's own admission, the role of litigation funding is inextricably intertwined with the delay, so Lontex's contention that litigation funding is not relevant to any issue in this case is disingenuous.  Moreover, although Lontex has repeatedly obstructed discovery on this issue, Lontex's documents demonstrate a sustained period of non-use of the asserted marks, followed by the manufacture of use evidence only *after* Lontex became motivated to sue NIKE and sell a portion of potential damages recovery from such a suit.[1]

---

[1] According to Lontex it decided to sue NIKE purportedly after seeing "Cool Compression" on NIKE's website in December 2015.  NIKE does not dispute that in certain written materials released in or around Summer 2015, the

The logging of funding communications—and potential production of non-privileged communications—will likely provide further relevant facts about Lontex's sustained period of non-use of the asserted marks, its manufacture of use evidence in order to bring this lawsuit with the assistance of litigation funding, which relates directly to NIKE's counterclaims and affirmative defenses, including abandonment, fraud on the USPTO, unclean hands, trademark misuse, and other equitable defenses. Accordingly, NIKE respectfully requests that this Court compel Lontex to amend its Privilege Log as to the litigation funding documents and produce any non-privileged litigation funding documents.

## II. ARGUMENT

### A. Lontex's Privilege Log Remains Deficient

Even a cursory look at Lontex's current Privilege Log (ECF No. 56-1, Miller Decl. Ex. 5) shows that it omits key non-privileged information such as the dates of communications and the sender/recipient of each communication. Lontex seeks to avoid complying with the Federal Rules of Civil Procedure and ESI Order by claiming that NIKE has not articulated why it needs all of the required information missing from Lontex's Privilege Log. Not only is this not NIKE's burden, but NIKE has explicitly set forth how this information is relevant to its defenses, as discussed *infra*. Lontex cannot distract from the fact that its Privilege Log is not compliant with the Federal Rules or the ESI Order. Indeed, in its opposition, Lontex does not even address its failure to separately log each document, as required under the ESI Order absent an agreement by the parties to categorically log documents. *See Thompson, Jr. v. Glenmede Tr. Co.*, No. Civ. A. 92-5233, 1995 WL 752443, at *4 (E.D. Pa. Dec. 19, 1995) (finding privilege log defective where it merely

---

words "cool" and "compression" appeared adjacent to each other within a longer string of words describing some NIKE products ("cool" for cooling attributes and "compression" for compression fit). NIKE does dispute Lontex's claim that this use of common English words to describe a product's attributes somehow constitutes trademark infringement and forms the basis for its exorbitant damages claims, when NIKE never used "Cool Compression" as a trademark and "Cool Compression" never appeared as a trademark on any NIKE product.

listed categories of documents as opposed to information with respect to individual documents). Lontex also does not—and cannot—rebut NIKE's case for the proposition that the identity of a person paying for a legal defense is not privileged. *See United States v. Cedeno*, 496 F. Supp. 2d 562, 567-68 (E.D. Pa. 2007).

Lontex cannot claim privilege—and neither NIKE nor the Court can assess Lontex's claim—without establishing the basis for its claim through disclosure of the non-privileged, foundational facts. These non-privileged foundational facts include, at minimum, the dates of communications and the names of attorneys and other persons involved. If the documents logged by Lontex were disclosed to third parties, there was likely a waiver of attorney-client privilege or attorney work product protection, absent a common interest privilege. *See Aetna Inc. v. Mednax, Inc.*, No. 18-cv-02217-WB, 2019 WL 6250850, at *5 (E.D. Pa. Nov. 22, 2019) (stating that a disclosure to a third party waives the attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance; also stating that waiver of the protection of the work-product doctrine depends on whether the disclosure will enable an adversary to gain access to the information). Lontex bears the burden of establishing that any privilege applies. *See In re Niaspan Antitrust Litig.*, No. 13-MD-2460, 2017 WL 3668907, at *2 (E.D. Pa. Aug. 24, 2017) (the party claiming work-product privilege had the burden of establishing that the privilege applied).

Lontex has not sufficiently established that the attorney-client or work-product privilege should apply to its litigation funding documents. While Lontex relies on its Privilege Log's assertion that "Lontex's counsel participated in all communications and exchanges of information," by not identifying each person included on those communications, Lontex has not shown that the communications were not disclosed to third parties, meaning it could have waived

3

any attorney-client or work-product privilege that may have existed. Moreover, communications by Mr. Nathan seeking funds from an outside party would be a business, not a legal, communication, even if Lontex's counsel were copied on it.[2]

Finally, even with waiver of the attorney-client and work-product privileges, in some cases a common interest privilege might apply. As noted in NIKE's opening brief, the issue of a litigation funder common interest privilege has not been determined in this District, and cases from other courts go both ways, with some finding that litigation funding communications are not protected under the common interest privilege. *See, e.g.*, *Cohen v. Cohen*, No. 09 Civ. 10230 (LAP), 2015 WL 745712, at *1 (S.D.N.Y. Jan. 30, 2015) (finding communications between plaintiff and potential litigation funder were not protected by common interest privilege). It is within the Court's purview to decide this open question. In order to establish a common interest privilege, Lontex would have to show that Lontex and its litigation funders possessed identical legal interests or were otherwise "allied in a common legal cause" when communications were exchanged. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-cv-453-RGA, 2018 WL 798731 (D. Del. Feb. 9, 2018). Lontex has made no argument on this point in its opposition brief. Indeed, it appears that Lontex cannot meet its burden to show that it shares a legally cognizable common interest with its litigation funder.

---

[2] The cases cited by Lontex on work-product protection for certain litigation funding documents are inapplicable. Although some courts have found that litigation funding communications, including agreements, can fall within work-product immunity because they are communications with a plaintiff's agents and in anticipation of litigation (*see Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, No. Civ. 16-538, 2018 WL 466045, at *5–6 (W.D. Pa. Jan. 18, 2018)), courts also have stated that litigation funding information can be discoverable where it is found to be relevant to a party's claim or defense (*see, e.g.*, *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, No. 19-cv-2875 (RBK/JS), 2019 WL 4485702, at *7 (D.N.J. Sept. 18, 2019). ("*In re Valsartan*"). At a minimum, Lontex must disclose the date and identity information required under the Federal Rules and ESI Order for each of the litigation funding documents covered by the Privilege Log so that NIKE and the Court can determine if work-product protection applies.

4

**B.       Documents Pertaining to Lontex's Litigation Funding are Relevant**

Contrary to Lontex's assertions, by putting the litigation funding documents on its Privilege Log, Lontex conceded their relevance, regardless of any preservation of its relevance objection prior to logging those entries. NIKE cited *AstraZeneca LP v. Breath Ltd.*, No. Civ. 08-1512 (RMB/AMD), 2011 WL 1421800, at *13 (D.N.J. Mar. 31, 2011) for the proposition that logging constitutes an acknowledgment of relevance because Rule 26(b)(5) requires logging of only relevant documents. Lontex tries to explain away *AstraZeneca*'s holding by arguing that the court "independently" found that the evidence sought was directly relevant to the claims in the litigation. (Opp. Br. at 7.) However, after finding the evidence was relevant, the court separately stated, "[f]urthermore, the Court agrees that AstraZeneca's inclusion of these documents on its privilege log constitutes an acknowledgement of the fact that these documents are relevant to this action." *Id.* The court cited in support *Pem–America, Inc. v. Sunham Home Fashions, LLC* for the proposition that "a privilege log must be prepared *for documents determined to be relevant to the litigation*." No. 03 Civ. 1377, 2008 WL 394787, at *3 (S.D.N.Y. Feb. 13, 2008) (emphasis added). *Pem–America* cited four additional cases on point, including one noting that, "*[t]o the extent that relevant documents represent privileged communications*, a privilege log should be prepared." *SR Int'l Bus. Ins. Co. v. World Trade Center*, No. 01 Civ. 9291(JSM), 2002 WL 1455346, *11 (S.D.N.Y. July 3, 2002) (emphasis added); *see also Nozinich v. Johnson & Johnson, Inc.*, No. 09-2105-V, 2011 WL 13124088, at *2 (W.D. Tenn. Feb. 22, 2011) ("By including the document on the privilege log, the defendants by implication concede the relevance."); *United States v. Gray*, No. C 05-3791PJH, 2007 WL 1848030, at *4 (N.D. Cal. June 27, 2007) ("By including all of the 93 withheld documents on his privilege log, Cohan has already conceded that all of these documents are relevant to the IRS's investigation."). Lontex's contention distinguishing between *waiver* of a relevance objection and a *concession* that documents are relevant falls flat; Lontex

5

waived its relevance objection by including the litigation funding documents on its Privilege Log, thereby conceding their relevance. Tellingly, Lontex cites no law to the contrary.

In addition to Lontex's concession of relevance, NIKE has demonstrated the relevance of the litigation funding documents and communications. After delaying for more than three years, Lontex asserted infringement in this action based on trademarks that it has abandoned and trademark registrations that were fraudulently obtained and maintained, as NIKE will prove through its affirmative defenses and counterclaims. Lontex is backed by litigation funding, strongly suggesting that Lontex's claims are motivated by an opportunity to monetize its trademark registrations, and not brought to prevent or remedy consumer confusion, as is traditionally the Lanham Act's aim. Under Rule 26(b)(1)'s broad definition of "relevance," documents and communications relating to Lontex's litigation funding are relevant to NIKE's affirmative defenses and counterclaims.

"Trademark law serves to protect consumers from deception and confusion over trademarks as well as to protect the plaintiff's infringed trademark as property." 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 2:2 (5th ed. 2019). The Lanham Act's "usual and normal remedy" in cases of trademark infringement is a permanent injunction enjoining the infringing use to prevent consumer confusion. *See* MCCARTHY § 30:1. Lontex, apparently unconcerned that any likelihood of confusion would accrue from NIKE's purported infringement, did not seek to enjoin NIKE's use when it learned of it in 2015. Instead, Lontex delayed filing suit for years. And, but for the involvement of litigation funding, Lontex's delay makes no sense.

This lawsuit apparently has more to do with maximizing a damages claim against NIKE than it does to do with preventing consumer confusion. Years after the purported infringement began, Lontex still fails to proffer any evidence of actual consumer confusion, but does not hesitate

to detail exorbitant monetary damages demands, untethered to the Lanham Act's equitable considerations. *See* 15 U.S.C. § 1117(a) (any monetary recovery is "subject to the principles of equity.") In order to obtain additional access to monetary relief, Lontex's initial and first amended complaints even labeled NIKE a "counterfeiter" for selling its own NIKE-branded products—the Court correctly dismissed such claims with prejudice. (ECF Nos. 37-38.)

Lontex's own testimony confirms that initiation of this action was premised on finding a litigation funder that would offer Lontex the right terms. (*See* Miller Reply Decl., Ex. 6, Lontex Depo. 11/14/19 at 685:1-686:4.) In response to questioning about Lontex's motivations for contacting NIKE in 2016, Mr. Nathan testified as follows:



*Id.* Mr. Nathan later testified about exploring options for litigation funding and ultimately finding a "source" to provide such funding:



One must question how Lontex found a litigation funder to bankroll its lawsuit in 2018, after years of non-use of its asserted marks and without evidence of actual consumer confusion, which makes its case progressively weaker on the merits.[3] In fact, given the serious prejudice caused by Lontex's delay in filing suit and the importance of NIKE's equitable defenses, NIKE is entitled to question the actual dates on which Lontex engaged in discussions with any litigation funders. Lontex's privilege log deprives NIKE of that opportunity, redacting the names of any funders and the dates of any communications. There is no justification for withholding these routine, non-privileged details and Lontex cannot hide information that is relevant to NIKE's defenses under the guise of calling it "irrelevant" litigation funding information. Once Lontex

---

[3] *See Versa Products Co. v. Bifold Co.*, 50 F.3d 189, 205 (3d Cir. 1995) (the longer the challenged product has been in concurrent use without actual confusion, the stronger the inference that confusion is not likely); *see also* 4 MCCARTHY § 23:18 (collecting cases).

properly logs such entries, NIKE suspects an outcome similar to that experienced with the Trademark Express documents wherein Lontex produced non-privileged and improperly withheld documents through this motion practice.

Moreover, NIKE has good reason to believe that non-privileged communications with the litigation funders directly relate to NIKE's other defenses and counterclaims of abandonment, fraud on the USPTO, unclean hands, and trademark misuse. The facts discovered to date suggest that Lontex had ulterior motives for filing the lawsuit and filing it when it did. Those motives likely relate to increasing the damages pool through passage of time and/or buying time to manufacture use evidence to try to cover up that Lontex had already abandoned the asserted COOL COMPRESSION marks during a sustained eight-year period of non-use.[4] Indeed, Lontex admittedly did not use the asserted COOL COMPRESSION marks on any written materials until *after* it discovered NIKE's alleged infringing use at the end of 2015. (*See* Miller Reply Decl., Ex. 7, Efraim Nathan Depo. 10/25/19 at 240:12-241:8.) It is inconceivable that there are no communications between Lontex and funders about the facts related to Lontex's alleged continuous use issues. Such facts are discoverable and highly relevant because they are at the crux of the use issues that create a basis for NIKE's counterclaims for invalidation of Lontex's trademark registrations and any claimed common law rights.

In addition, directly relevant to NIKE's defense would be anything Mr. Nathan may have said to Lontex's litigation funder (and vice versa) about Lontex's alleged trademark and bringing a case against NIKE. If not privileged, such communications would be admissible as potential

---

[4] Unlike a patent claim that can be monetized by a non-practicing entity, trademarks require prior continuous use for a plaintiff to sustain a claim, otherwise the plaintiff cannot make out its prima facie case, *see A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("To prove either form of Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion."), and there is no use to assess for the key "likelihood of consumer confusion" determinations under the applicable *Lapp* factors. *See Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983).

party admissions. *See* Fed. R. Evid. 801(d)(2); *see also Gaitan v. SEPTA*, No. Civ. 16-6193, 2017 WL 5901098, at *8 (E.D. Pa. Nov. 30, 2017) (finding admission by a party-opponent admissible into evidence as a statement offered against an opposing party and made by the party's agent or employee on a matter within the scope of that relationship while it existed). But NIKE cannot know if these communications are privileged without knowing the identities of the parties to the communications.

The inquiry on whether litigation funding documents are relevant is highly fact-specific, and all of the cases Lontex cites (which NIKE had already addressed in its opening brief) are readily distinguishable. *Cf. In re Valsartan*, 2019 WL 4485702 at *3 (denying defendants' request for carte blanche discovery of plaintiffs' litigation funding because there did not exist good cause to show discovery was relevant to the claims and defenses in the case); *Benitez v. Lopez*, No. 17-cv-3827-SJ-SJB, 2019 WL 1578167, at *1 (E.D.N.Y. Mar. 14, 2019) (considering whether the financial backing of a litigation funder is relevant to *credibility* and finding that the fact that a person has received litigation funding does not assist the factfinder in determining whether or not the witness is telling the truth); *Space Data Corp. v. Google LLC*, No. 16-cv-03260 BLF (NC), 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) (stating that *potential* litigation funding was "a side issue at best" where the plaintiff had already proffered that it *did not have* any third-party litigation financing); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350 (VM) (KNF), 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) (denying discovery of litigation funding agreement after finding defendants had provided no non-speculative basis for concerns over fitness of counsel to represent plaintiff class). Indeed, unlike the facts in those cases but under the very standard followed by those courts, NIKE has adequately alleged and shown that litigation funding discovery is relevant to its asserted defenses.

10

The circumstances in *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 118595, at *1 (N.D. Cal. Jan. 7, 2019), cited in Lontex's opposition (Opp. Br. at 11), are distinguishable from those presented here. In that case, the defendant was seeking litigation funding discovery to understand the existence of conflicts of interest to identify and exclude jury members who may be biased. *Id.* The defendant stated that it sought to explore credibility and bias issues concerning the plaintiff's witnesses. *Id.* However, the court found that the defendant's assertions of potential bias and conflicts of interest were speculative. *Id.* at *2. The court also noted that the plaintiff already had identified all persons and entities having a financial interest in the controversy, and had further confirmed that none of the non-party witnesses were funding the litigation. *Id.*

The facts in *Miller UK Ltd. v. Caterpillar Inc.*, 17 F. Supp. 3d 711, 724 (N.D. Ill. 2014), cited in Lontex's opposition (Opp. Br. at 11) also are distinguishable in that the defendant claimed that the litigation funding agreement itself was unlawful and that this provided a defense to the plaintiff's claims, which the court called an "utterly unsupported and unexplained conclusion." Here, NIKE has specifically articulated its reasons for seeking litigation funding discovery from Lontex and directed the Court to the relevant document and deposition discovery to date. For its part, unlike in *MLC Intellection Prop. v. Micron Tech.*, Lontex has refused to provide the identity of its litigation funder.

### III. CONCLUSION

NIKE respectfully requests that this Court grant its motion to compel and issue an order compelling Lontex to: (i) amend its Privilege Log as to the litigation funding entries to comply with Fed. R. Civ. P. 26(b)(5) and the ESI Order; and (ii) remove litigation funding entries for any non-privileged documents from the Privilege Log and promptly produce those documents to NIKE.

December 11, 2019

Respectfully submitted,

By: *Gina Durham*

DLA PIPER LLP (US)

Gina L. Durham (admitted *pro hac vice*)
555 Mission Street, Suite 2400
San Francisco, CA 94105

Frank W. Ryan (admitted *pro hac vice*)
Andrew J. Peck (admitted *pro hac vice*)
Marc E. Miller (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 100201

Darius C. Gambino
Ben C. Fabens-Lassen
1650 Mark Street, Suite 5000
Philadelphia, PA  19103

*Attorneys for Defendant NIKE, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of December, 2019, I caused Defendant NIKE, Inc.'s Reply Brief in Support of Motion to Compel Plaintiff Lontex Corporation to Amend Privilege Log and Produce Non-Privileged Documents to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania using the ECF system, it is available for viewing and downloading from the ECF system, and a true and correct copy was served via ECF to all counsel of record registered with the ECF system.

*/s/ Ben C. Fabens-Lassen*