**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| |
|---|
| LONTEX CORPORATION, |
| Plaintiff, |
| v. |
| NIKE, INC., |
| Defendant. |

Civil Action No.:  18-cv-5623

(Hon. Michael M. Baylson)

**DEFENDANT NIKE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF LONTEX CORPORATION'S MOTION TO AMEND FIRST AMENDED
COMPLAINT AND PARTIALLY DISMISS NIKE'S AMENDED COUNTERCLAIMS
AS TO U.S. TRADEMARK REGISTRATION NO. 3,416,236**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   BACKGROUND .................................................................................3

    A.    Lontex's Asserted Trademarks, Trademark Registrations, And Claims ................3

        1.    The Design Plus Word Mark and The '236 Reg...........................................4

    B.    Discovery To Date Shows That Lontex Did Not Continuously Use The Marks .....................................................................................5

    C.    Discovery To Date Shows That Lontex Submitted Numerous False Statements To The USPTO........................................................7

    D.    NIKE Never Used The Marks Or Any Colorable Imitations Thereof....................7

    E.    Lontex's Unannounced Motion and Proposed Covenant Not to Sue ....................8

III.   ARGUMENT ...................................................................................9

    A.    Legal Standard ...........................................................................9

    B.    If The Court Grants Lontex's Motion, It Should Condition Any Amendment Upon Specific Terms.......................................................10

        1.    The Court should require that the '236 Reg. remains subject to cancellation as a result of Lontex's abandonment of the Marks...............11

        2.    The Court should require that there be no dismissal with prejudice of NIKE's second counterclaim relating to the '236 Reg. (in the event the Court decides to remove the '236 Reg. from the cancellation remedies sought in this action). ...............................14

        3.    The Court should allow the evidence relating to invalidity and non-infringement of the '236 Reg. and the Design Plus Word Mark to go before the jury and the Court. .........................................15

        4.    The Court should require that the fifth, seventh, eight, and ninth "Recitals" be stricken from the Proposed Covenant.................................17

IV.   CONCLUSION.................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aycock Eng'g, Inc. v. Airflite, Inc.*,
    560 F.3d 1350 (Fed. Cir. 2009) ................................................................ 13

*In re Bose Corp.*,
    580 F.3d 1240 (Fed. Cir. 2009) ................................................................ 11

*Bricklayers & Allied Craftworkers v. ARB Constr., Inc.*,
    No. 13-3883, 2016 WL 4943254 (E.D. Pa. Sept. 15, 2016) .................... 16

*Carroll v. E One Inc*,
    893 F.3d 139 (3d Cir. 2018) ....................................................................... 9

*Carter v. Inc. Vill. of Ocean Beach*,
    759 F.3d 159 (2d Cir. 2014) ..................................................................... 17

*Cent. Mfg., Inc. v. Brett*,
    492 F.3d 876 (7th Cir. 2007) .................................................................... 14

*Foman v. Davis*,
    371 U.S. 178 (1962) .................................................................................... 9

*Hipple v. SCIX, LLC*,
    778 F. App'x 119 (3d Cir. 2019) .............................................................. 14

*Jackson v. Dow Chem. Co.*,
    518 F. App'x 99 (3d Cir. 2013) ................................................................ 17

*Morehouse Mfg. Corp. v. J. Strickland & Co.*,
    407 F.2d 881 (C.C.P.A. 1969) .................................................................. 11

*Mullin v. Balicki*,
    875 F.3d 140 (3d Cir. 2017) ................................................................. 9, 10

*Neifeld v. Steinberg*,
    438 F.2d 423 (3d Cir. 1971) ..................................................................... 14

*Nike, Inc. v. Already, LLC*,
    No. 09 CIV. 6366 RJS, 2011 WL 310321 (S.D.N.Y. Jan. 20, 2011), *aff'd*, 663
    F.3d 89 (2d Cir. 2011), *aff'd*, 568 U.S. 85, 133 S. Ct. 721, 184 L. Ed. 2d 553
    (2013) ................................................................................... 2, 12, 14, 15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) .................................................................................. 17

*In re: Orthopedic Bone Screw Prods. Liab. Litig.*,
    No. MDL 1014, 1998 WL 633680 (E.D. Pa. Aug. 14, 1998)...........................................10, 14

*Raab v. City of Ocean City, N.J.*,
    833 F.3d 286 (3d Cir. 2016)...........................................................................................9

*Smith, Kline and French Laboratories v. A.H. Robins Co.*,
    61 F.R.D. 24 (E.D. Pa. 1973).........................................................................................10

**Statutes**

15 U.S.C. § 1125(a) ...........................................................................................................3

15 U.S.C. § 1053 ..............................................................................................................13

15 U.S.C. § 1114............................................................................................................3, 11, 14

15 U.S.C. §1119............................................................................................................1, 14

28 U.S.C. § 2201 ..............................................................................................................14

Lanham Act. 15 U.S.C. 1117(a) ......................................................................................13, 14, 16

**Other Authorities**

Fed. R. Civ. P. 15..............................................................................................................9

Fed. R. Civ. P. 41(a)(2).....................................................................................................9

Defendant NIKE, Inc. ("NIKE") respectfully submits this brief in opposition to Plaintiff Lontex Corporation's ("Lontex") Motion to Amend the First Amended Complaint (the "FAC") and Partially Dismiss NIKE's Amended Counterclaims as to U.S. Trademark Registration No. 3,416,236 (the "'236 Reg.") (the "Motion"). (ECF No. 109)

## I.  **INTRODUCTION**

Every issue in this case revolves around the words "cool" and "compression." Lontex claims that it used those words as a "COOL COMPRESSION trademark" to brand its products. Lontex also claims that NIKE used those words as a trademark for a line of clothing. But discovery has shown that neither claim is true. Lontex never used COOL COMPRESSION in a fashion that would earn it any trademark rights. And Nike's only use of the words "cool" and "compression" has been for their commonly understood English language meanings in strings of text in written materials to *describe* product attributes of the NIKE-branded products.

By this Motion, Lontex attempts to take some of the sting of these misrepresentations out of the case. Hoping to wipe away the fact that it asserted a claim it *knew from the start of this case* was not true and to shield the jury from harmful facts about its false statements to the USPTO, Lontex now "offers" to instead drop the tainted '236 Reg. from this case altogether. But Lontex's proferred partial covenant not to sue, partial motion to amend its amended complaint, and partial motion to dismiss NIKE's counterclaims (all announced for the first time with this Motion and served without *any* attempt to meet and confer) have nothing to do with traditional reasons for seeking this relief, such as preserving judicial economy or the discovery of new information, as Lontex would have this Court believe. Nor is it the case that Lontex's proposed amendment somehow now "deprives the Court of subject matter jurisdiction under 15 U.S.C. §1119 concerning [NIKE's] request to cancel the Design Mark Registration." Quite the contrary, every mark asserted by Lontex in this case, including the '236 Reg. includes the words "Cool Compression." If Lontex

did not use the contested marks (as NIKE will prove), there is no basis upon which Lontex could maintain *any* registration for the COOL COMPRESSION mark, regardless of whether the registration covers the words alone or incorporates a graphical design element, and regardless of whether that registration continues to be asserted against NIKE. Because of the partial nature of Lontex's proposed covenant, the Court will still be left to decide whether Lontex used and, therefore, developed rights in the COOL COMPRESSION mark. Lontex cannot immunize the '236 Reg. from cancellation simply by trying to extract it from the case.

Lontex's Motion also inaccurately claims that it has provided NIKE a covenant not to sue that mirrors the language of a full covenant not to sue that NIKE provided to the defendant in the *NIKE v. Already* case to moot the entire controversy. But Lontex's proposed covenant does not dismiss the claims at issue, in fact, it does not even moot the entire controversy over the COOL COMPRESSION design mark. Lontex's covenant omits reference to common law rights in this mark, thereby reserving Lontex the right to sue on those. *NIKE v. Already* does not apply.

NIKE recognizes that the Court and parties should not be forced to expend resources on meritless claims, particularly when a party offers to dismiss them voluntarily and with prejudice. And NIKE is not opposed to the Court dismissing Lontex's asserted '236 Reg. and accompanying allegations and claims with prejudice, in general. But, for a few straightforward reasons discussed in more detail below, NIKE nevertheless opposes granting Lontex the relief sought in its Motion. Instead, NIKE seeks a conditional dismissal, which preserves NIKE's validity challenge and provides for certain evidence, which is inextricably intertwined with Lontex's overall use of COOL COMPRESSION, to be available for use throughout the case, including during any jury trial.

## II.  BACKGROUND

### A.  Lontex's Asserted Trademarks, Trademark Registrations, And Claims

In this action, Lontex alleges that NIKE has infringed Lontex's COOL COMPRESSION trademarks (the "Marks").  Lontex asserts federal and common law trademark rights, including three federal trademark registrations for the Marks: two word marks for "cool compression," which are the subject of U.S. Reg. Nos. 3,416,053 and 3,611,406 (the "Word Marks"); and the design plus word mark, which is comprised of the graphical "man" element plus the words "cool compression" (the "Design Plus Word Mark") and is the subject of the '236 Reg. and this Motion:



(FAC ¶¶ 3, 19, 20.)  Lontex alleges that it has continuously and consistently used the Marks in commerce in connection with the goods identified in its trademark registrations since at least as early 2006.  (FAC ¶¶ 10-15, 19.)

In its First Amended Complaint, Lontex asserts five counts: (1) trademark infringement pursuant to 15 U.S.C. § 1114 for infringement of its registered Marks; (2) trademark infringement pursuant to 15 U.S.C. § 1125(a) for infringement of its common law rights in the Marks; (3) contributory trademark infringement under §§ 1114, 1125(a); (4) state common law trademark infringement under the laws of eight states; and (5) state statutory trademark infringement and unfair competition under the laws of eleven states.  (FAC ¶¶ 36-88, ECF No. 20.)

In addition to its affirmative defenses to Lontex's claims, NIKE has asserted counterclaims against Lontex to declare the Marks invalid and cancel Lontex's asserted trademark registrations because Lontex: (i) abandoned the Marks through a sustained period of non-use, and (ii) lied to

the United States Patent and Trademark Office (the "USPTO") about the extent of its use of the Marks in numerous false statements submitted to the USPTO in order to obtain and maintain its trademark registrations. (NIKE's Am. Counterclaims ¶¶ 12-30, ECF No. 45.)

### 1. The Design Plus Word Mark and The '236 Reg.

Lontex filed with the USPTO an intent-to-use application (Serial No. 78963029) on August 29, 2006, claiming that it had "a bona fide intention to use" the Design Plus Word Mark in connection with the followings goods and/or services in International Class 25:

> Men's, women's and children's clothing, namely, socks, underwear including boxer shorts, briefs, bikini underpants, and long johns, tshirts, polo shirts, swimwear, compression shirts, compression shorts, compression tights, sweatpants, sweatshirts, body armor carrier compression shirts for military and law enforcement personnel, sports bras, halter tops, singlets, caps, hats, headbands, bandanas, balaclavas, sneakers and shoes.

(Declaration of Marc E. Miller in Support of NIKE, Inc.'s Opposition to Plaintiff Lontex Corporation's Motion to Amend First Amended Complaint And Partially Dismiss NIKE's Amended Counterclaims ("Miller Decl."), Ex. 1 at NIKE-00044500-506.) On June 18, 2007, Lontex submitted to the USPTO a "Statement of Use" claiming that it was using the Design Plus Word Mark in connection with the same goods and/or services listed in the application. (*Id.* at NIKE-00044487.) In reliance on that statement of use, the USPTO allowed registration of the application on the Principal Register on March 15, 2008 (*id.* at NIKE-00044458), and it registered on April 22, 2008. (Id.)

On April 29, 2013, Lontex submitted to the USPTO a "Section 8 & 15" "Combined Declaration of Use and Incontestability," claiming that the Design Plus Word Mark was "in use on or in connection with all of the goods" claimed in the '236 Reg. (*Id*. at NIKE-00044448.) On April 20, 2018, Lontex submitted to the USPTO a "Section 8 & 9" "Combined Declaration and/or Excusable Nonuse," claiming continued use on all goods, for the renewal of the '236 Reg. (*Id*. at

NIKE-00044449.)  Based on the submission of these statements of continued use of the Design Plus Word Mark, the USPTO has allowed continued registration of the '236 Reg.  (*Id*. at NIKE-00044434.)

**B.     Discovery To Date Shows That Lontex Did Not Continuously Use The Marks**

Lontex alleges that "[b]y 2006, Lontex was well-regarded, including amongst the NFL teams, collegiate sports teams," and that "Lontex has sold millions of dollars in COOL COMPRESSION apparel and compression support."  (FAC ¶¶ 10, 17a.)  But the facts discovered to date paint a very different picture.

In or around February 2006, Lontex's principal, Mr. Efraim Nathan, decided to create a new business focused on selling Lontex's "Sweat it Out"-branded compression garments to the healthcare industry.  (Miller Decl., Ex. 3, at 45:14-46:3.)  Mr. Nathan believed that a different brand was necessary to sell these garments to the healthcare industry because "Sweat it Out" was too "dirty."  (*Id*. at 45:14-46:3.)  Lontex engaged a marketing consultant, Condict & Company, to develop the "Cool Compression" name and the Design Plus Word Mark, product packaging called a "board," other marketing materials, and an e-commerce website.  (*Id.* at 46:4-21.)  Mr. Nathan, along with his daughter Samantha (Lontex's only other employee), also created a separate company called Cool Compression LLC and worked on creating a separate business around this separate line of products, including ordering a box of content/care labels that included the words "Cool Compression."  (*Id.* at 45:17-46:21.)   However, Mr. Nathan never launched the "Cool Compression" business and never used the Marks.  (*Id.* at 49:10-19.)

Lontex did not use the Marks on its invoices, website, product packaging, or any other written marketing materials until *after* it discovered NIKE's alleged infringing use at the end of 2015.  (Miller Decl., Ex. 3, at 88:12-90:5.)  This dooms Lontex's case against NIKE.  In an attempt to salvage its prima facie case, however, Lontex takes the position that the "primary basis" for its

alleged continuous use of the Marks between 2007 and 2016 was the "Cool Compression" content/care label sewn inside its "Sweat it Out"-branded garments, and Mr. Nathan's oral presentations to customers.

There exists no video or written memorialization of Mr. Nathan's alleged oral presentations. As to the content/care labels, Lontex has gone to extraordinary lengths to obfuscate the record and block NIKE from obtaining discovery, which ultimately undermines Lontex's incredible allegation that it always included a "Cool Compression" content/care label inside its "Sweat it Out"-branded garments. Lontex refused to produce information that would corroborate this allegation, or claimed such information did not exist, resulting in the Special Master recommending that NIKE's motion to compel be granted and Lontex ordered to produce additional records. (*See* ECF No. 117.)

Regardless, NIKE's own investigation to date shows that, prior to 2018, Lontex's compression garments did **not** include a "Cool Compression" content/care label sewn inside its "Sweat it Out"-branded garments. (Miller Decl., Ex. 4, Declaration of Vicki Humphreys; Miller Decl., Ex. 5, Declaration of Kate Schrader.) Instead, these compression garments, including one purchased direct from Lontex in August 2016, were branded with Lontex's "Sweat it Out" trademark and included a "Sweat it Out" content/care label sewn inside the product. (*Id*. at Ex. 5.) These facts directly contradict Lontex's allegations and representations to this Court that Lontex has continuously and consistently used the Marks since 2006. And as to the Design Plus Word Mark specifically, Mr. Nathan had to admit at his deposition that Lontex **never** used the Design Plus Word Mark in connection with the sale of any of the goods identified in the '236 Reg. (Miller Decl., Ex. 3 at 180:15-191:12.)

### C. Discovery To Date Shows That Lontex Submitted Numerous False Statements To The USPTO

Lontex's failure to continuously and consistently use the Marks since 2006—and its attempt to hide such failure from the USPTO—is also relevant to NIKE's counterclaims that Lontex committed fraud on the USPTO and to NIKE's affirmative defenses of abandonment, unclean hands, and trademark misuse. (*See* NIKE's Answer & Am. Counterclaims, ECF No. 45.)

Faced with the fact that it has not continuously and consistently used the Marks since 2006—and never used the Design Plus Word Mark—Lontex has admitted that its June 18, 2007 "Statement of Use," April 29, 2013 "Combined Declaration of Use and Incontestability," and April 20, 2018 "Combined Declaration and/or Excusable Nonuse," filed to obtain and maintain the '236 Reg. were all demonstrably false. (Miller Decl., Ex. 2 at 440:5-441:8, 732:24-734:13, 790:19-793:15.) Lontex admitted that it also submitted similar false statements to the USPTO concerning its bona fide use of the Marks to obtain and maintain its two word mark registrations. (*Id*. at 762:7-763:23, 766:4-23.) These facts strongly suggest that Lontex deceived the USPTO in order to obtain and maintain *all* three of the trademark registrations asserted against NIKE in this action. Accordingly, *all* of the evidence relating to Lontex's false statements and misrepresentations to the USPTO will be admissible at trial, including Lontex's admitted false statements to the USPTO concerning its use of the Design Plus Word Mark to obtain and maintain the '236 Reg.

### D. NIKE Never Used The Marks Or Any Colorable Imitations Thereof

Even if Lontex's asserted trademarks were valid, and NIKE intends to show that they are not, Lontex's infringement claims are meritless. There is no NIKE product that is branded with any COOL COMPRESSION trademark, and there is unquestionably no NIKE product that is branded with the Design Plus Word Mark. Rather, the NIKE products that Lontex accuses of infringing the Design Plus Word Mark are emblazoned only with NIKE's own famous NIKE and Swoosh

trademarks.  NIKE never used the Design Plus Word Mark or any colorable imitation thereof in any NIKE marketing material or anywhere else for that matter.  Lontex knows this, and likely knew these facts *years* before filing this lawsuit, as evidenced by its document production and the exhibits attached to the previously-proposed amendments to its sixth count (ECF No. 34-1), which the Court rejected and dismissed with prejudice.  (ECF No. 37.)

Discovery to date shows that Lontex is backed by litigation funding, strongly suggesting that Lontex's claims are motivated by an opportunity to monetize its trademark registrations, and not to prevent or remedy consumer confusion.  Lontex likely asserted the '236 Reg. to increase the statutory damages pool under its now-dismissed-with-prejudice counterfeiting theory.  (ECF No. 37.)  This conduct goes directly to the heart of NIKE's equitable defenses, and an eventual showing that this case is an "exceptional" one, entitling NIKE to recover its attorneys' fees.

### E.     Lontex's Unannounced Motion and Proposed Covenant Not to Sue

As the baseless nature of Lontex's claims became increasingly clear through the progression of discovery, Lontex has resorted to increasingly desperate tactics.  This Motion is one such tactic.

Lontex filed this Motion at approximately 6:00 PM ET on December 23, 2019, nearly a year after Lontex initiated this action, when NIKE was closed for the holidays and most of NIKE's counsel was out of the office for the holidays as well.  Lontex filed this Motion, and the attached Proposed Covenant Not to Sue (the "Proposed Covenant") (ECF 109-2), without *any* prior notice that Lontex intended to voluntarily dismiss a portion of its claims and offer NIKE a covenant not to sue, and without making any good faith effort to meet and confer with NIKE to seek consent to further amend its First Amended Complaint or file this Motion.

The Proposed Covenant concerns *only* the '236 Reg.  (ECF No. 109-2.)  Lontex did not include in the Proposed Covenant its alleged common law rights in the Design Plus Word Mark,

which exist separate and apart from the '236 Reg.  (*Id*.)  The Proposed Covenant also expressly states "for the avoidance of doubt, this does not include U.S. Trademark Registration Nos. 3,416,053 and 3,611,406 or the word mark 'COOL COMPRESSION,' which rights exist separate and apart from U.S. Trademark Registration No. 3,416, 236."  (*Id*.)  NIKE also takes issue with the Proposed Covenant's self-serving "Recitals," which—in typical Lontex fashion—grossly mischaracterize this action's record and the parties' conduct, and are wholly superfluous.  (*Id*.)

## III.  **ARGUMENT**

### A.  **Legal Standard**

Fed. R. Civ. P. 41(a)(2) affords district courts a "broad grant of discretion" to dismiss a case "on terms the court considers proper."  *Carroll v. E One Inc*, 893 F.3d 139, 146 (3d Cir. 2018) (acknowledging "a district court's ability to attach conditions to Rule 41(a)(2) dismissal orders"); *see Raab v. City of Ocean City, N.J.*, 833 F.3d 286, 294 (3d Cir. 2016).

Leave to amend is governed by Fed. R. Civ. P. 15, "which generally conditions amendment on the court's leave or the opposing party's written consent."  *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017).  "In determining whether leave to amend might reasonably be denied, courts are guided by the *Foman* factors."  *Id*. (citing *Foman v. Davis*, 371 U.S. 178 (1962)).[1]  "Relying on the *Foman* factors, courts can choose instead to impose reasonable conditions on the right to amend in lieu of a pure grant or denial.  Specifically, a court 'may use its discretion to impose conditions on the allowance of a proposed amendment as an appropriate means of balancing the interests of

---

[1] "Denial of leave to amend can be based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility.  The *Foman* factors are not exhaustive, allowing a court to ground its decision, within reason, on consideration of additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff.  All factors are not created equal, however, as 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'"  *Mullin*, 875 F.3d at 149–50.

the party seeking the amendment and those of the party objecting to it….” *Id*. at 150.

**B.    If The Court Grants Lontex's Motion, It Should Condition Any Amendment Upon Specific Terms**

Lontex's unannounced Motion and the accompanying Proposed Covenant place NIKE in an awkward position. NIKE, of course, is not interested in causing this Court or the parties to expend more resources unnecessarily litigating claims that Lontex should have never brought in the first place, and is now voluntarily dismissing with prejudice. And NIKE is not opposed to the Court dismissing Lontex's asserted '236 Reg. and accompanying allegations and claims with prejudice, in general. But, for a few straightforward reasons, NIKE nevertheless opposes granting Lontex the relief sought in its Motion. That is, even if the Proposed Covenant moots Lontex's claims in part, the Covenant: (1) does not actually moot the entire controversy between the parties or remove any issues from this action, including the universe of facts that are pertinent to NIKE's counterclaims; (2) does not provide a basis to partially dismiss NIKE's counterclaims *with prejudice* (even if it moots NIKE's registration-focused counterclaims in part); (3) does not erase from the record the facts that will underlie NIKE's eventual motion for sanctions and attorneys' fees related to Lontex's assertion of the invalid '236 Reg. and pursuit of claims relating thereto, that were included to increase the potential statutory damages pool, but should have never been brought in the first instance; and (4) includes "Recitals," which grossly mischaracterize this action's record and the parties' conduct, and are superfluous.

If the Court grants leave to amend, the Court should exercise its discretion and "attach conditions to the amendment as justice requires." *In re: Orthopedic Bone Screw Prods. Liab. Litig.*, No. MDL 1014, 1998 WL 633680, at *2 (E.D. Pa. Aug. 14, 1998) (quoting *Smith, Kline and French Laboratories v. A.H. Robins Co.*, 61 F.R.D. 24, 30 (E.D. Pa. 1973)). NIKE respectfully submits that the Court should only do so conditioned upon the following terms.

**1.     The Court should require that the '236 Reg. remains subject to cancellation as a result of Lontex's abandonment of the Marks.**

First, even if the Proposed Covenant moots Lontex's claims in part, the Proposed Covenant does not moot the entire controversy between the parties or remove any issues from this action. The Proposed Covenant concerns *only* the '236 Reg.; it does not include Lontex's alleged common law rights in the Design Plus Word Mark, which exist separate and apart from the '236 Reg.[2]  As a result, the Proposed Covenant moots only Lontex's § 1114 claims (Count I and part of Count III). Lontex retains the right to continue to pursue its lawsuit against NIKE as to the remainder of its Marks, including the common law rights in the Design Plus Word Mark.[3]  As a result, the Proposed Covenant moots only part of NIKE's second counterclaim for fraud on the USPTO as to the '236 Reg., but NIKE's first counterclaim for a declaration of invalidity due to abandonment and cancellation of the asserted registrations remains.

Moreover, Lontex does not seek to remove unrelated, segregable trademarks and voluntarily dismiss independent claims from the action.  Instead, each of the asserted Marks and their associated registrations are directly related to each other, as they all incorporate the words "Cool Compression."  As Lontex concedes, the '236 Reg. "covers the identical registered goods covered by the word mark for U.S. Reg. No. 3,416,053."  (Br. at 2.)  To borrow Lontex's admission, the '236 Reg. "is essentially duplicative to U.S. Reg. No. 3,416,053's word mark for COOL COMPRESSION except for the design."  (Br. at 4.)  Each asserted trademark is

---

[2] This distinction matters, as "'practically all of the user's substantive trademark rights derive' from continuing use," of the mark, not registration of the mark.  *In re Bose Corp.*, 580 F.3d 1240, 1247 (Fed. Cir. 2009) (quoting *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 888 (C.C.P.A. 1969)).

[3] Even if Lontex amends the Proposed Covenant to include the common law rights in the Design Plus Word Mark and offers to dismiss these rights from the case, NIKE's counterclaims are not mooted because, as explained *infra*, there will still remain indisputably live controversies between the parties concerning the COOL COMPRESSION trademarks.

incorporated into and underlies each of Lontex's five claims. (ECF 20 at ¶ 14.) As such, should the case not resolve on summary judgment, all of the facts developed through discovery and all of the legal issues relating to Lontex's sustained period of non-use of the Marks and its fraud on the USPTO will remain in the case and will go before the jury, including Lontex's admitted false statements to the USPTO concerning its use of the Design Plus Word Mark.

In this regard, *NIKE, Inc. v. Already, LLC* is distinguishable from this case. 568 U.S. 85 (2013). In *Already*, the covenant not to sue offered by plaintiff NIKE rendered the entire case and controversy moot, *i.e.*, NIKE covenanted not to sue on ***all*** of the trademark rights (federal and common law, including a federal registration) asserted in the case, thereby removing the complete controversy between the parties. (Miller Decl., Ex. 6, (the "*Already* Covenant").) That is not the case here. Lontex's Proposed Covenant covers just one of three related and "essentially duplicative" trademark registrations (Br. at 4), and Lontex is still asserting all of its common law rights and other two related trademark registrations in pursuit of the same meritless five claims against NIKE. Thus, there are still claims and counterclaims pending by each party that are indisputably live controversies between the parties.

Nor is this a situation in which plaintiff's covenant and claim amendment leaves the Court with no issue to decide other than NIKE's request for the "remedial" relief of cancellation of plaintiff's trademark registration. (*cf.* Miller Decl., Ex. 6, *Already* Covenant.) The controversies over COOL COMPRESSION are very much live and a future resolution of the parties' controversy over whether Lontex ever made the continuous use of COOL COMPRESSION required to support its claimed trademark rights will read on *all* of the Lontex registrations that include these words.

Had Lontex's '236 Reg. contained only a graphic design element and not the words "COOL COMPRESSION," Lontex's contention that this Motion to delete the '236 Reg. narrows this case

might have some merit, but that is not the case. Because the '236 Reg. includes the words "COOL COMPRESSION," none of the relevant issues regarding Lontex's use (or complete lack thereof) of the COOL COMPRESSION marks are removed from the case by the Proposed Covenant, nor are any issues about NIKE's use of the words "cool' and "compression" to describe some of its NIKE products in certain written materials.

Moreover, the incomplete and partial nature of Lontex's Proposed Covenant results in a perverse outcome. The Court will still adjudicate NIKE's counterclaims and determine the validity of the COOL COMPRESSION marks, including the common law rights in the Design Plus Word Mark. NIKE believes the Court will likely cancel Lontex's two word mark registrations. But, according to Lontex, the Court must stop short of cancelling Lontex's '236 Reg., even though it also includes the words "Cool Compression" and is related and "essentially duplicative" of the word marks. Lontex is wrong. The validity of each of its asserted related and "essentially duplicative" trademarks rise and fall together when the validity challenge is based on Lontex's non-use of the COOL COMPRESSION marks as it is here. Should the Court find that Lontex abandoned the Design Plus Word Mark and the two word marks and/or that Lontex fraudulently obtained and maintained the two word mark registrations, there is no basis upon which Lontex should be entitled to maintain the equally invalid '236 Reg. *See* 15 U.S.C. § 1053 (the Lanham Act requires "use in commerce" to register a trademark). Without "use in commerce" of the Design Plus Word Mark, the registration of that mark is "void ab initio." *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009).

As such, since the Court continues to have subject matter jurisdiction over the "Cool Compression" controversies in this case, the Court can exercise its discretion to invalidate the '236 Reg. when it decides those controversies. *See* 28 U.S.C. § 2201, et seq. In fact, the Lanham Act

empowers the Court to order cancellation of registrations or otherwise rectify the trademark register with the USPTO, and relevant authority indicates that it would be the best course to do so. As the Seventh Circuit explained:

> [15 U.S.C. § 1119] arms courts with the power to effectively put the public on notice of its trademark-related judgments. Because a court's decision may raise doubts about the validity of a trademark registration, § 1119 arms the court with the power to update the federal trademark register to account for a mark's actual legal status (or lack thereof) after it has been adjudicated, thereby reducing the potential for future uncertainty over the rights in a particular mark. Where, as here, a registrant's asserted rights to a mark are shown to be invalid, cancellation is not merely appropriate, it is the best course.

*Cent. Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007); *see also Hipple v. SCIX, LLC*, 778 F. App'x 119, 122 (3d Cir. 2019) ("The Lanham Act gives district courts the power to 'order the cancelation of [trademark] registrations.'") (quoting 15 U.S.C. § 1119)).

**2.** **The Court should require that there be no dismissal with prejudice of NIKE's second counterclaim relating to the '236 Reg. (in the event the Court decides to remove the '236 Reg. from the cancellation remedies sought in this action).**

If the Court determines that, according to *Already*, the Proposed Covenant would render moot Lontex's § 1114 claims (Count I and part of Count III) and part of NIKE's first and second counterclaims as to cancellation of the '236 Reg., then the Court should require that the proposed amendment effects a voluntary dismissal *with prejudice* of Lontex's § 1114 claims relating to '236 Reg.[4] But Lontex's Proposed Covenant provides no basis to partially dismiss NIKE's first and second counterclaims *with prejudice*. At most, the Proposed Covenant renders part of NIKE's first and second counterclaims as to cancellation of the '236 Reg. moot (the Proposed Covenant

---

[4] *See In re: Orthopedic Bone Screw Prods. Liab. Litig.*, 1998 WL 633680, at *2 (citing *Neifeld v. Steinberg*, 438 F.2d 423, 430–31 (3d Cir. 1971)) (requiring that the proposed amendment effects a voluntary dismissal with prejudice of the proposed amended claim).

has no effect on NIKE's abandonment counterclaim); but there is no justification for creating a *res judicata* effect from such a partial dismissal. As such, any partial dismissal of NIKE's first and second counterclaims as to cancellation of the '236 Reg. ordered by the Court should be partial dismissal *without prejudice*, in order to protect NIKE and its customers should Lontex violate the Proposed Covenant in the future. Indeed, such a condition is in accord with *Already*, where the defendant's counterclaims were dismissed *without prejudice*, even though NIKE's affirmative claims were voluntarily dismissed with prejudice. *Nike, Inc. v. Already, LLC*, No. 09 CIV. 6366 RJS, 2011 WL 310321, at *1 (S.D.N.Y. Jan. 20, 2011), *aff'd*, 663 F.3d 89 (2d Cir. 2011), *aff'd*, 568 U.S. 85, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013).

### 3. The Court should allow the evidence relating to invalidity and non-infringement of the '236 Reg. and the Design Plus Word Mark to go before the jury and the Court.

Lontex's infringement claims relating to the Design Plus Work Mark and '236 Reg. are meritless and were specious from the outset of this case. Lontex cannot play games to avoid an adverse finding of invalidity or non-infringement relating to the Design Plus Work Mark and '236 Reg., and/or erase from the record these harmful facts to its prima facie case. The extensive evidence developed in discovery concerning Lontex's meritless infringement claim and Lontex's sustained period of non-use of the Marks and its fraud on the USPTO should remain in the case and go before the jury, if the case is ultimately tried.

There is unquestionably no NIKE product that is branded with the composite form of the Design Plus Work Mark (*e.g.*, the graphical man element and the "COOL COMPRESSION" word component), and Lontex knows it—and likely knew this *years* before filing this lawsuit. Since at least as early as December 2015, Lontex was well aware that the words "cool" and "compression" have appeared only within a limited number of NIKE *product descriptions* within a certain universe of NIKE written materials. Lontex was also well aware that the Design Plus Work Mark, nor any

colorable imitation thereof, has never appeared on any NIKE product or in any NIKE marketing materials. Lontex has been in possession of materials and information that would inform such knowledge since before discovery began, as evidenced by its document production and the exhibits attached to the previously-proposed amendments to its sixth count. (*See* ECF No. 34-1.) Lontex has also been in possession of NIKE's product catalogs since June 2019. (*See* ECF No. 84-0 at 5.)

It is not credible for Lontex to claim that it required discovery to conclude that NIKE never used the graphic man element of '236 Reg. and it therefore has no need to assert the '236 Reg. Based on the evidence that was already in its possession, Lontex should have never asserted the '236 Reg. in the first place, or based on the evidence produced by NIKE early on in discovery, Lontex should have—and could have—voluntarily dismissed such claims months ago. It is not credible for Lontex to claim that it has "diligently pursued its claims and defenses against NIKE's counterclaims." (Br. at 3.) It is also disingenuous for Lontex to claim "that a ***substantial majority*** of NIKE's [alleged] use of the COOL COMPRESSION marks has been as a word mark, without any particular design." (*Id.*) (emphasis added). Lontex knows that NIKE never used the Design Plus Work Mark and the Court should not be misled by Lontex's feigned "sacrifice" of a claim that would have been dismissed as a matter of law and should not have been brought in the first place.

Lontex also cannot prevent NIKE from recovering attorneys' fees for litigation related to the '236 Reg. and/or erase its meritless assertion of the '236 Reg. from the Court's eventual determination whether this is an "exceptional case" under the Lanham Act. 15 U.S.C. 1117(a) ("the court in exceptional cases may award reasonable attorney fees to the prevailing party."). To be sure, Lontex's voluntary dismissal *with prejudice* of the '236 Reg. claims makes NIKE a "prevailing party" for this purpose. *See Bricklayers & Allied Craftworkers v. ARB Constr., Inc.*, No. 13-3883, 2016 WL 4943254, at *6-7 (E.D. Pa. Sept. 15, 2016); *Jackson v. Dow Chem. Co.*,

518 F. App'x 99, 102 (3d Cir. 2013) (Plaintiff's "voluntary dismissal with prejudice of his …

claims also operated as a final judgment on the merits for purposes of claim preclusion"); *Carter

v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 163-65 (2d Cir. 2014) ("to 'prevail[]' for purposes of

attorney's fees, a party … must have gained through the litigation a 'material alteration of the legal

relationship of the parties.'   A voluntary dismissal of an action with prejudice works such

alteration, because it constitutes 'an adjudication on the merits for purposes of *res judicata*,' and

any action so dismissed could not be brought again.") (internal citations omitted).

If and when NIKE prevails on Lontex's remaining claims, this Court will determine

whether this case is "exceptional," by "considering the totality of the circumstances." *Octane

Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  Lontex's pursuit of

meritless infringement claims relating to the Design Plus Work Mark and the '236 Reg., along with

its other meritless claims and litigation conduct, including this Motion, will very much be a part

of the "totality of the circumstances" that make this case "exceptional," and support the award of

attorneys' fees and sanctions that NIKE will ultimately seek at the conclusion of this action.

> **4.  The Court should require that the fifth, seventh, eight, and ninth
> "Recitals" be stricken from the Proposed Covenant.**

Lontex's Proposed Covenant includes self-serving "Recitals," which include inflammatory

language and gross mischaracterizations of the discovery record and the parties' conduct in this

action.  These "Recitals" are superfluous to the Proposed Covenant and serve no purpose other

than to attempt to memorialize an invented pretext should Lontex and Mr. Nathan ever wish to

argue that they were coerced by NIKE into signing the Proposed Covenant.  If the Court accepts

the Proposed Covenant and grants Lontex's Motion, the Court should strike the fifth, seventh,

eight, and ninth "Recitals" and require Lontex to execute an amended covenant not to sue.

## IV. <u>CONCLUSION</u>

If the Court grants leave to amend, NIKE respectfully submits that the Court should only do so conditioned upon the following terms: (1) the Court should require that the '236 Reg. remains subject to cancellation as a result of Lontex's abandonment of the Marks; (2) the Court should require that there be no dismissal with prejudice of NIKE's second counterclaim relating to the '236 Reg. (in the event the Court decides to remove the '236 Reg. from the cancellation remedies sought in this action); (3) the Court should allow the evidence relating to invalidity and non-infringement of the '236 Reg. and the Design Plus Word Mark to go before the jury (if needed) and the Court; and (4) the Court should require that the fifth, seventh, eighth, and ninth "Recitals" be stricken from the Proposed Covenant.

January 17, 2020

Respectfully submitted,

By:  */s/ Gina L. Durham*

DLA PIPER LLP (US)

Gina L. Durham (admitted *pro hac vice*)
555 Mission Street, Suite 2400
San Francisco, CA 94105

Frank W. Ryan (admitted *pro hac vice*)
Andrew J. Peck (admitted *pro hac vice*)
Marc E. Miller (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 100201

Darius C. Gambino
Ben C. Fabens-Lassen
1650 Mark Street, Suite 5000
Philadelphia, PA  19103

*Attorneys for Defendant NIKE, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of January, 2020, I caused Defendant NIKE, Inc.'s Memorandum of Law in Opposition to Plaintiff Lontex Corporation's Motion to Amend the First Amended Complaint and Partially Dismiss NIKE's Amended Counterclaims as to U.S. Trademark Registration No. 3,416,236 to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania using the ECF system, it is available for viewing and downloading from the ECF system, and a true and correct copy was served via ECF to all counsel of record registered with the ECF system.

BY: */s/ Ben C. Fabens-Lassen*