**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: § | |
| § | |
| **SUBPOENA ON ACADEMY, LTD.,** § | |
| **a Non-Party in a Pending Civil Action** § | |
| **Before the United States District Court** § | |
| **for the Eastern District of Pennsylvania,** § | **MISC. NO. _____** |
| **Styled** *Lontex Corporation v. Nike, Inc.*, § | |
| **Case No. 2:18-cv-05623-MMB** § | |
| § | |

---

### ACADEMY, LTD.'S MOTION TO QUASH
### LONTEX CORPORATION'S SUBPOENA TO TESTIFY AT ORAL DEPOSITION

---

Lontex Corporation ("Lontex") is the plaintiff in a trademark infringement lawsuit against Nike, Inc. ("Nike"), styled *Lontex Corporation v. Nike, Inc.*, Case No. 2:18-cv-05623-MMB and pending in the Eastern District of Pennsylvania (the "Underlying Lawsuit"). Lontex alleges that Nike sells products that infringe upon Lontex's registered trademarks for its "cool compression" brand of athletic apparel.[1] In addition to direct-to-consumer sales, Lontex's Complaint lists several of Nike's authorized distributors, resellers, and retailers—defined in the Complaint as Nike's "Prohibited Intermediaries"—through which Nike allegedly sells these "cool compression" products, including: REI, Target, Macy's, Zappos, Dick's Sporting Goods, East Bay, Foot Locker, and Amazon.[2] Notably missing from Lontex's list is Academy—a sporting goods retailer that sells products from Nike, along with hundreds of other brands.[3]

---

[1] For the Court's convenience, a true and correct copy of Lontex's live pleading in the Underlying Lawsuit is attached hereto as Exhibit A. *See* First Amended Complaint, Exhibit A, at ¶¶ 18-35.
[2] Exhibit A, First Amended Complaint, at ¶ 26-27.
[3] *See* Exhibit A, First Amended Complaint, at ¶ 27 (listing eight "Prohibited Intermediaries," none of which are Academy).

Approximately four months ago, Lontex issued a non-party subpoena duces tecum to Academy (the "<u>First Subpoena</u>"), requesting nine categories of documents and communications reflecting Academy's sales data, promotional materials, and business dealings with Nike related to any "ACCUSED PRODUCTS," which Lontex broadly defined to include over fifty-eight enumerated products sold by Nike, as well as any other product bearing "any variation of the term 'cool' within three words of 'compression.'"

Academy served timely responses and objections to Lontex's First Subpoena.[4]  In addition to lodging objections for over breadth, duplicity, undue burden, and relevance, Academy indicated that several of the requests sought documents that either did not exist or were equally available through Nike, the defendant in the Underlying Lawsuit.[5] Subject to its objections and a confidentiality order, Academy tendered responsive documents to Lontex, including advertising materials and a spreadsheet detailing Academy's sales of responsive Nike products specified in the First Subpoena.

Lontex then issued another non-party subpoena to Academy (the "Second Subpoena"), this time commanding Academy to produce a corporate representative for deposition on six topics, all of which mirror the document requests from the First Subpoena—even the requests for which Academy previously stated it had no responsive documents.[6]  After receiving the Second Subpoena, Academy volunteered to execute a business records affidavit to authenticate the documents it produced, but Lontex declined that offer.  Academy seeks this Court's intervention to quash Lontex's Second Subpoena, because it unduly burdens Academy, a non-party to Lontex's pending trademark infringement lawsuit against Nike.

---

[4] A true and correct copy of Academy's Objections and Responses to Lontex's First Subpoena is attached hereto as Exhibit B.

[5] *See* Exhibit B, at pp. 4, 6.

[6] A true and correct copy of Lontex's Second Subpoena is attached hereto as Exhibit C.

## II.    Jurisdiction and Venue

Academy is a Texas limited partnership with its principal office located at 1800 North Mason Road, Katy, Texas 77449-2826.  Academy was subpoenaed as a non-party in connection with litigation pending in the Eastern District of Pennsylvania and styled *Lontex Corporation v. Nike, Inc.*, Case No. 2:18-cv-05623-MMB.  Because that subpoena designates 1225 North Loop West, Suite 327, Houston, Texas 77008 as the place of compliance, Academy's Motion to Quash is properly filed in this Court.  *See* FED. R. CIV. P. 45(d)(3) (authorizing "the court for the district where compliance is required" to quash subpoenas); *see also* 2013 Advisory Comm. Notes to FED. R. CIV. P. 45 ("To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 4(c).").

## III.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), this Court must quash or modify a subpoena that subjects a person to undue burden.  *See* FED. R. CIV. P. 45(d)(3)(A).  The party moving to quash a subpoena bears the burden to prove that compliance with the subpoena would be "unreasonable and oppressive."  *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)).  The Fifth Circuit has directed district courts to consider the following *Wiwa* factors when determining whether a subpoena unduly burdens a non-party:

1.    The relevance of the information requested;

2.    The need of the requesting party;

3.    The breadth of the requests;

4.    The time period covered by the requests;

3

5.      The particularity with which the party describes the requested documents or information;

6.      The burden imposed; and

7.      The expense and inconvenience to the non-party.

*See id.*

Further, "a more demanding variant" of the foregoing proportionality analysis applies when determining whether a subpoena unduly burdens non-parties like Academy.  *See Virginia Dept. of Corr. v. Jordan*, 921 F.3d 180, 189-90 (4th Cir. 2019).  Rather than simply weighing the benefits of discovery to the requesting party against the burdens on the recipient, district courts must afford "special weight" to a recipient's status as a non-party, which triggers an even more "demanding and sensitive" inquiry than the one governing discovery, generally.  *Id.* (quoting *In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005).

## IV.    <u>Legal Argument</u>

Lontex's Second Subpoena commands Academy's corporate representative to testify regarding the following six topics, each of which mirror one or more document requests from Lontex's First Subpoena, as detailed in the corresponding footnotes:

1.      Reference materials, sales guides or sales materials provided to Your stores or store personnel concerning any of the "ACCUSED PRODUCTS," including tech sheets, modules, technical information, and all other Nike reference materials such as were available on sku.nike.net or Nike's Sports Knowledge Underground portal, as well as any training materials for personnel regarding how to discuss the "ACCUSED PRODUCTS" with customers.[7]

---

[7] Topic No. 1 from Lontex's Second Subpoena corresponds with Document Request Nos. 4 and 8 from Lontex's First Subpoena, which sought "Each type of advertisement and promotional material (e.g., print, radio, television, brochures, catalogs, flyers, press releases, website pages, website banners, social media, in-store displays, point-of-sale promotional items) displaying any 'ACCUSED TERM' or 'ACCUSED PRODUCTS,'" and "All reference materials You referenced when You ordered any of the 'ACCUSED PRODUCTS,' for example, Nike product catalogs," respectively.

2.      Hangtag (including any tagging, sticker or marking placed on hangtags), label, package, advertisement, online listing, invoice, point of purchase display, order confirmation, and promotional material for the "ACCUSED PRODUCT," including from online purchases.[8]

3.      Advertisement and promotional material (e.g., print, radio, television, brochures, catalogs, flyers, press releases, website pages, website banners, social media, in-store displays, point-of-sale promotional items) displaying any "ACCUSED TERM" or "ACCUSED PRODUCTS."[9]

4.      Communications with You and Nike that discussed ceasing, altering or modifying usage of the term "Cool Compression."[10]

5.      Materials that You referenced when You ordered any of the "ACCUSED PRODUCTS," for example, Nike product catalogs.[11]

6.      The sales reflected in the document [produced as ACADEMY 0020].[12]

By timely producing documents in response to Lontex's First Subpoena and offering to execute a business records affidavit to authenticate those records, Academy has satisfied its discovery obligations as a non-party to the Underlying Litigation.  Lontex's demand that Academy present a corporate representative for depositions is unduly burdensome.  Accordingly, this Court must quash Lontex's Second Subpoena.  *See* FED. R. CIV. P. 45(d)(3)(A).

---

[8] Topic No. 2 directly recycles Document Request No. 3, which sought "Representative samples of each hangtag (including any tagging, sticker or marking placed on hangtags), label, package, advertisement, online listing, invoice, point of purchase display, order confirmation, and promotional material for the 'ACCUSED PRODUCT,' including from online purchases."

[9] Similarly, Topics No. 3 tracks Document Request No. 4, which sought "Each type of advertisement and promotional material (e.g., print, radio, television, brochures, catalogs, flyers, press releases, website pages, website banners, social media, in-store displays, point-of-sale promotional items) displaying any 'ACCUSED TERM' or 'ACCUSED PRODUCTS.'"

[10] Topic No. 4 corresponds with Document Request Nos. 5 and 6, which requested all communications between Academy and Nike that discussed ceasing, altering, or modifying usage of the terms "Cool Compression" or any 'ACCUSED TERM."

[11] Topic No. 5 is a direct reuse of Document Request No. 8, which sought "All reference materials You referenced when You ordered any of the 'ACCUSED PRODUCTS,' for example, Nike product catalogs."

[12] Finally, Topic No. 6 corresponds with Document Request Nos. 1 and 2, which requested "All sales volumes and dollar amounts for the 'ACCUSED PRODUCTS,' including sales by product number, SKU, product name, year, and state," and "All sales volumes and dollar amounts for the 'ACCUSED PRODUCTS' sold through each sales channel, including Your online store," respectively.

**A.      This Court must quash Lontex's Second Subpoena, because it unduly burdens Academy, a non-party to the Underlying Litigation.**

Lontex's Second Subpoena unduly burdens Academy, most obviously because it is facially overbroad, but also because each of the remaining *Wiwa* factors disfavor its enforcement.

Subpoenas that are facially overbroad can impose an undue burden, particularly when the recipient is a non-party. *See, e.g., Am. Fed'n of Musicians of the U.S. & Canada v. SKODAM Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015) ("Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests seek all documents concerning the parties to [the underlying] action and regardless of date; [t]he requests are not particularized; and [t]he period covered by the requests is unlimited."); *see also Wiwa*, 392 F.3d at 818 (noting that facially overbroad subpoenas can present an undue burden).

The topics identified in Lontex's Second Subpoena are facially overbroad in that they are unlimited in time and seek testimony concerning no less than fifty-eight enumerated Nike products, in addition to any other product that contains "any other variation of the term 'cool' within three words of 'compression.'"[13]  Notably, Lontex's Second Subpoena recycles this broad definition of "ACCUSED PRODUCTS" from its First Subpoena, even though Academy produced a spreadsheet to Lontex that specifies the responsive Nike products that Academy sells.[14] Furthermore, Lontex's Second Subpoena also solicits testimony regarding documents that do not exist—namely the hangtags and Nike reference materials requested by Lontex's First Subpoena, in response to which Academy already informed Lontex that "Academy does not have any documents responsive to [those requests]."[15]

---

[13] *See* Exhibit C, at pp 1-2.
[14] *See* Exhibit C, at pp 1-2.
[15] *See* Exhibit B, at pp. 4, 6.

Lontex's failures to include a time limitation and/or adapt the scope of its testimonial topics to comport with Academy's responses to the First Subpoena render Lontex's Second Subpoena facially overbroad.  As federal courts often emphasize, "a non-party should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it."  *Jordan*, 921 F.3d at 190.  Accordingly, this Court must quash Lontex's Second Subpoena as imposing an undue burden because it is facially overbroad.  *See, e.g., Wiwa*, 392 F.3d at 818; *In re O'Hare*, 2012 WL 1377891, at *2 (S.D. Tex. 2012) (on reconsideration, affirming quashal of subpoena duces tecum and related subpoena ad testificandum as facially overbroad and unreasonable, both of which were unlimited in time and not particularized).

Notwithstanding the Second Subpoena's patent over breadth, lack of particularity, and unlimited time period, the remaining *Wiwa* factors applicable to this Court's the proportionality analysis also command quashal of Lontex's Second Subpoena.  Little, if any, relevant information stands to be gained by deposing Academy's corporate representative regarding topics that largely mirror document requests with which Academy already complied.  Indeed, the documents that Academy produced in response to Lontex's First Subpoena speak for themselves and are more than sufficient to show Nike's advertising practices and support a damages calculation, as appropriate.[16]   And to the extent Lontex solicits testimony from Academy's corporate representative regarding Nike's communications with Academy or information that Nike disseminated to Academy, Lontex should request that information from Nike, directly, rather than a non-party like Academy.  *See, e.g., Lackey v. Dement*, 2019 WL 3238896, at *5 (W.D. Tex.

---

[16] More specifically, those documents reflect all of Academy's sales of certain Nike products, in terms of both dollars received and units sold, and include over a dozen promotional items bearing various "cool" and/or "compression" products.

2019) (third-party subpoena was not proportional to needs of case because "it places a burden on the third party to provide information that only tangentially relates to an issue in the case").

It was incumbent upon Lontex to take reasonable steps to avoid imposing any undue burden or expense on Academy, particularly in light of Academy's status as a non-party. *See Davis S R Aviation, LLC v. Rolls-Royce Deutschland Ltd. & Co. KG*, 2011 WL 5999332, at *5 (W.D. Tex. 2011) (noting that Rule 45 requires a requesting party to undertake reasonable steps to avoid subjecting non-parties to undue burden or expense, and quashing subpoena to non-party for failure to do so). Lontex did not do so here, as is most plainly evident from Lontex's failure to tailor its Second Subpoena based on documents and information that Academy provided in response to its First Subpoena. Lontex's insistence to depose Academy's corporate representative is nothing more than an improper fishing expedition. *See Bagwell v. Rival Consumer Sales Corp.*, 2006 WL 2883137, at *3 (quashing subpoena commanding non-party's deposition where requesting party failed to show that information sought was only available through non-party and was relevant to its claims, such that it amounted to "nothing more than a fishing expedition"). Accordingly, this Court should quash Lontex's Second Subpoena. *See* FED. R. CIV. P. 45(d)(3)(A).

**B.     This Court should award Academy $2,500 for attorneys' fees incurred in connection with this motion.**

Academy has already expended, and will continue to expend, significant internal and external resources in connection with both of Lontex's Subpoenas. To compound matters, after it responded to Lontex's First Subpoena, Academy's counsel—as an officer of the court—represented to Lontex's counsel that Academy did not have certain categories of requested documents, such as the hangtags and reference materials sought by Request Nos. 3 and 8 of the First Subpoena. Despite Academy's counsel's representation, Lontex issued the Second Subpoena, insisting that Academy's corporate representative testify regarding the very same

topics.  Lontex's failure to exclude these categories, in particular, from its Second Subpoena, is not only unreasonable and unduly burdensome—it is abusive.  Accordingly, this Court should exercise its discretion to award Academy $2,500 for a portion of the attorneys' fees that it incurred to engage its outside counsel to draft this motion to quash Lontex's Second Subpoena.  *See* FED. R. CIV. P. 45(d)(1); *In re Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (affirming imposition of sanctions in connection with unduly burdensome non-party subpoena, which was unlimited in breadth and indisputably overbroad).

### III.   Conclusion and Relief Sought

Because of the undue burden that it imposes upon Academy, a non-party to the Underlying Litigation, this Court must quash Lontex's Second Subpoena.  *See* FED. R. CIV. P. 45(d)(1). Academy further requests that this Court award Academy $2,500 for the attorneys' fees it incurred in connection with this motion.

Respectfully submitted,
**LOCKE LORD, LLP**


By:   /s/ *Danielle Charron*
      **Janet E. Miltello**
      Texas Bar No. 14051200
      Southern District No. 2681
      **Danielle Charron**
      Texas Bar No. 24109713
      Southern District No. 3363244
      2800 JPMorgan Chase Tower
      600 Travis Street
      Houston, Texas  77002-3095
      (713) 226-1200 (telephone)
      (713) 223-3717 (fax)

      **ATTORNEYS FOR ACADEMY, LTD.**

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing motion was served on the following counsel of record via on March 20, 2020 as follows:

Craig C. Crockett, Esquire                 Francis W. Ryan
Troutman Sanders LLP                       DLA Piper LLP US
Three Embarcadero Center, Suite 800        1251 Avenue of the Americas, 27th Floor
San Francisco, California 94111            New York, New York 10020-1104
craig.crockett@troutman.com                frank.ryan@dlapiper.com

*Attorneys for Lontex Corporation*         *Attorneys for Nike, Inc.*




                                           /s/ *Danielle Charron*
                                           Danielle Charron

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LONTEX CORPORATION, | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | 2:18-cv-05623-MMB |
| vs. | ) | |
| | ) | |
| NIKE, INC., | ) | |
| Defendant. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

COMES NOW the Plaintiff, Lontex Corporation ("Lontex"), by counsel, and as for its First Amended Complaint against the Defendant NIKE, Inc. ("NIKE"), Lontex alleges as follows:

### PRELIMINARY STATEMENT

1.      For decades, Lontex has manufactured and sold athletic apparel, including to the general public, professional sports franchises, and collegiate athletic programs.  Lontex developed a strong reputation in the medical and sports fields because its products utilize high percentages of lycra fiber in the west and the warp directions, which compress effectively and are comfortable for consumers.  At least as early as June 18, 2007, Lontex launched its successful COOL COMPRESSION line of clothing, including compression shirts, shorts, tights, and socks.  Lontex's COOL COMPRESSION brand assures purchasers that the quality and performance of the technology is consistent across the product line.

2.      Despite Lontex's success and well-known COOL COMPRESSION athletic apparel and the immense goodwill Lontex has generated in its COOL COMPRESSION mark, Lontex discovered NIKE was selling apparel under the COOL COMPRESSION trademark since as early as October 2015 under the Nike brand.  NIKE's line of "Cool Compression" athletic

apparel products are confusingly similar to the incontestable trademarks registered and used by

Lontex, and NIKE's use is therefore in violation of Lontex's rights.

3.     Lontex now brings this action to stop NIKE's nationwide infringements of

Lontex's rights, for damages arising from NIKE's unlawful conduct, and for injunctive relief to

prevent NIKE from causing future harm.

## PARTIES

4.     Plaintiff Lontex is a Pennsylvania corporation with its principal place of business

in Norristown, Pennsylvania.  Lontex owns and controls all rights in the COOL

COMPRESSION family of trademarks.

5.     Defendant NIKE is an Oregon corporation with its principal place of business in

Beaverton, Oregon.

## JURISDICTION

6.     This action arises under Federal law, the provisions of the Trademark laws of the

United States (the Lanham Act), as amended, 15 U.S.C. §§ 1051 *et seq*., and under, *inter alia*,

the statutes and common laws of the States of Pennsylvania, California, Florida, Texas, New

York, New Jersey, Ohio, North Carolina, Maryland, Massachusetts, Illinois, Georgia, Colorado,

Indiana, Minnesota, Washington, and the District of Columbia.

7.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 (federal

question) and 28 U.S.C. § 1338(a) (trademark) because this action arises under the trademark

laws of the United States.  In addition, this Court has original subject matter jurisdiction over the

state unfair competition claims under 28 U.S.C. 1338(b) as they are joined with a substantial and

related claim under the federal trademark laws, and supplemental jurisdiction over the state-law

claims is present because they arise from the same nucleus of operative facts under 28 U.S.C.

§ 1367 as to be part of the same case or controversy under Article III of the United States Constitution.

8.       This Court has personal jurisdiction over NIKE because NIKE has extensive minimum contacts with the State of Pennsylvania.  NIKE has purposefully availed itself of the privileges and laws of Pennsylvania, operates a number of NIKE retail stores in their state, distributes large amounts of products to consumers and retailers in this state, has continuous and systematic contacts with this state, has knowingly directed intentional trademark infringement at Lontex as a Pennsylvania corporation with its headquarters, brunt of harm, and trademark home situs being in Pennsylvania.

9.       Venue is proper in this judicial district under 28 U.S.C § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this district, and NIKE resides in this district by virtue of being subject to personal jurisdiction in this judicial district by, among others, their repeated availment and direction of their activities toward this district, their operating of NIKE-branded retail store in this district (in which, on information and belief, NIKE sold the infringing products), and the actions alleged herein.

## **GENERAL ALLEGATIONS**

10.      Lontex has been providing professional teams and collegiate teams with athletic apparel products since 1989.  By 2006, Lontex was well-regarded, including amongst the NFL teams, collegiate sports teams (including a large percentage of the Division One schools) and with doctors of sports medicine. Lontex's COOL COMPRESSION line of products are very popular, with customers throughout the nation.  This includes the best athletes and professional sports teams from across the country, including at least 25 teams from the NFL, 15 teams from the MLB, as well as various NHL, AHL, and NBA professional sports teams.

11.     To capture additional market share, broaden its appeal, and provide a unique identifier to be associated with its special compression technology, in 2006, Lontex applied for and obtained two federal trademark registrations for COOL COMPRESSION for a variety of clothing in Class 25, including one word mark (U.S. Reg. No. 3,416,053) and one design mark (U.S. Reg. No. 3,416,236):



12.     The listed goods in Class 25 for both COOL COMPRESSION marks are: "Men's, women's and children's clothing, namely, socks, underwear including boxer shorts, briefs, bikini underpants, and long johns, tshirts, polo shirts, swimwear, compression shirts, compression shorts, compression tights, sweatpants, sweatshirts, body armor carrier compression shirts for military and law enforcement personnel, sports bras, halter tops, singlets, caps, hats, headbands, bandanas, balaclavas, sneakers and shoes."

13.     In 2008, to protect its valuable trademark rights, Lontex also applied for and obtained U.S. Trademark Registration No. 3,611,406 for the COOL COMPRESSION word mark in Class 010 for: "Compression supports, namely, compression sleeves for use as ankle supporters, arm supporters, elbow supporters, wrist supporters, knee supporters, compression tights and compression leggings, all for medical use and abdominal compression shorts, back support shorts, thigh groin hip support shorts, compression socks, compression body suits, compression vests, compression briefs and compression shirts, all for medical use."

14. True and correct copies of the registrations for U.S. Trademark Registration Nos. 3,416,053, 3,416,236, and 3,611,406 (collectively, the "COOL COMPRESSION Mark") are attached hereto as <u>Exhibit A</u>. Collectively the goods identified in these registrations are referred to as the "COOL COMPRESSION Goods").

15. Lontex has continuously and consistently used the COOL COMPRESSION Mark since starting its use, developing substantial goodwill as the source of COOL COMPRESSION Goods across the entire United States.

16. The federal registrations for the COOL COMPRESSION Mark are all incontestable.

17. The COOL COMPRESSION Mark is inherently distinctive and generates consistent commercial success, establishing strong secondary meaning throughout the United States:

    a. Lontex has sold millions of dollars in COOL COMPRESSION apparel and compression support, representing over 40,000 COOL COMPRESSION Goods.

    b. These COOL COMPRESSION sales span every state in the United States, and are strengthened by consistent consumer recognition , a network of doctors (including family doctors, sports doctors and team doctors), and sports teams (including athletic trainers, both head and all assistant athletic trainers).

    c. The COOL COMPRESSION Goods have been promoted and offered through a variety of distribution channels, including retail sales such as direct-to-consumer sites coolcompression.com and sweatitout.com, doctor and medical

referrals, sports organization, (both professional, collegiate, school, and other

sports organizations), and speaking engagements by Lontex staff.

    d.   Media and news exposure.

    e.   Referrals and word of mouth.

### NIKE's Wrongful Conduct Involving the COOL COMPRESSION Mark

    18.    NIKE has developed its Nike brand for shoes and athletic apparel.  The brands are

sold internationally through authorized distributors, resellers, and retailers, including in this

judicial district.

    19.    On or after January 2016, Lontex discovered that Nike was selling apparel under

the COOL COMPRESSION trademark.  The sales began at least as early as October 2015, the

date on which NIKE's catalogues indicate the items were available for delivery.

    20.    In one iteration, Nike has used COOL COMPRESSION as its product mark, a

distinct mark placed in close proximity to its separate house mark "NIKE PRO."  In a sample

division / catalogue of NIKE, there were 6 item numbers for Cool Compression products:

        728044 NIKE PRO COOL COMPRESSION SLEEVELESS TOP

        728048 NIKE PRO COOL COMPRESSION SHORT-SLEEVE TOP

        719903 NIKE PRO COOL COMPRESSION 1/2 SLEEVE TOP

        828642 NIKE PRO COOL COMPRESSION 3/4 TIGHT

        728047 NIKE PRO COOL COMPRESSION LONG-SLEEVE TOP

        728049 NIKE PRO COOL 6" COMPRESSION SHORT

    21.    Far from using a house mark to distill confusion, the use of the house mark only

heightens the confusion.  It leads consumers to falsely believe that Nike has obtained permission

to use Plaintiff's COOL COMPRESSION branded technology, tapping into the goodwill

associated with it.  Whereas Nike's compression products lack the reputation among thought

leaders and the relevant consumer base for effective use (one study sponsored by Nike even

showing that they do not materially improve performance,

https://www.cnn.com/2017/06/01/health/compression-tights-running-fitness-study/index.html),

thought leaders over the years have recognized the technology used for Plaintiff's COOL

COMPRESSION brand is indeed effective.

22.     By including the house mark with the product mark, Nike has falsely associated

itself with Plaintiff's brand and conveyed to consumers and the relevant public that it has

acquired the rights to bring Plaintiff's COOL COMPRESSION products in-house and is now

itself selling compression products with Plaintiff's COOL COMPRESSION technology.  This is

consistent with Nike's branding for other product marks.  For example, Nike has registered

HYPERCOOL with the USPTO as a separate product mark for it apparel products (U.S. Reg.

No. 3,844,393), but regularly places its house mark in front of it ("NIKE PRO HYPERCOOL")

in the same fashion as Nike is now placing its house mark in front of "COOL COMPRESSION."

23.     In addition, the infringing products have also been advertised, promoted and sold

using the product mark COOL COMPRESSION without NIKE PRO or any other Nike house

mark next to or near it.

24.     The infringing "Cool Compression" products were sold from the last quarter of

2015 until the present.  The Cool Compression items were placed in NIKE catalogues, including

its baseball, basketball, football, and training catalogues, beginning at least by the fourth quarter

of 2015.

25.     NIKE pervasively and intentionally launched infringing "Cool Compression"

products across a broad array of its sale structure, including in the following divisions: NIKE

Basketball, Football (Soccer), Men's Training, Women's Training, Sportswear (including American Football, Yoga, Rugby, Spinning, Boxing, Dance), and others (including Lifestyle).

26.     In addition to direct-to-consumer sales, NIKE sold and distributed this infringing athletic apparel to its authorized distributors, resellers, and retailers ("Prohibited Intermediaries") and monitored promotional advertising with respect to its improper use of COOL COMPRESSION.  NIKE at no time directed its Prohibited Intermediaries to cease use of the name COOL COMPRESSION in its products.  NIKE knew that the failure to do so, after telling their Prohibited Intermediaries that they trademark for their products was "COOL COMPRESSION", would result on the infringing products continuing to be offered for sale and sold under the infringing "COOL COMPRESSION" mark.  Accordingly, the Prohibited Intermediaries continue through the present to sell the infringing products under the COOL COMPRESSION trademark.  In taking the actions alleged herein and/or ratifying the actions alleged herein, NIKE acted within the scope of this authority for its own financial and individual advantage.

27.     NIKE's Prohibited Intermediaries include, but are not limited to, the following: REI, Target, Macy's, Zappos, Dick's Sporting Goods, East Bay, Foot Locker, and Amazon.

28.     At all relevant times, NIKE knew that the COOL COMPRESSION Mark belonged to Lontex, and was aware of the COOL COMPRESSION Mark Registrations specifically protecting the mark with respect to the sale of athletic apparel.

29.     Yet NIKE has used the COOL COMPRESSION Mark without authorization or approval in connection with the sale of its infringing "Cool Compression" line of products, and the accused goods are in the same class and overlap with the types of apparel identified in Lontex's registrations.

30.     By its illegitimate and unauthorized use of COOL COMPRESSION, NIKE acted despite knowing of the likelihood of confusion with Lontex's valid, incontestable trademark registrations.  At the least, NIKE was reckless and careless in its evaluation of the likelihood of confusion resulting from its infringing use of "Cool Compression" line of products and did not attempt to contact Lontex whatsoever for authorization before using the COOL COMPRESSION Mark.

31.     NIKE's use of its house mark "Nike" and "Nike "Pro" in connection with its unauthorized use of COOL COMPRESSION aggravates consumer confusion in the market for athletic apparel, including because it indicated that NIKE is affiliated with Lontex and has obtained access to Lontex's highly-regarded trademark COOL COMPRESSION technology.

32.     Further, NIKE instructed and controlled its Nike brand through Prohibited Intermediaries who used the COOL COMPRESSION Mark in connection with the sale of its infringing "Cool Compression" line of products regarding the marketing parameters of the product line, and monitored these Prohibited Intermediaries' compliance with NIKE's instructions and directions.

33.     Lontex has received reports by its professional sports team clients that the Nike's compression products are substantially inferior in performance than Lontex's products.

34.     Neither NIKE nor any of its Prohibited Intermediaries have acquired the rights to use the COOL COMPRESSION Mark from Lontex.

35.     As a result of the infringing use of the COOL COMPRESSION trademark, NIKE has made well over $40 million in estimated profits on its infringing "COOL COMPRESSION" line of products, and its Prohibited Intermediaries have made additional profits on the products.

## FIRST COUNT
## TRADEMARK INFRINGEMENT
## UNDER THE LANHAM ACT IN VIOLATION OF 15 U.S.C. § 1114

36.     Lontex repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

37.     Lontex is the owner of the COOL COMPRESSION Mark, which is a federally registered, incontestable, valid, inherently distinctive, and protectable trademark.  Lontex has priority of use of the distinctive COOL COMPRESSION Mark as to NIKE.

38.     NIKE has used, authorized and/or directed the use of the COOL COMPRESSION Mark or a confusingly similar variation of the mark in connection with the sale, offering for sale, distribution or advertising of goods and/or services.  The marks are identical and used in the sale and advertisement of similar athletic apparel, are targeted at the same audience (purchasers of athletic apparel/equipment), and NIKE's adoption of "Cool Compression" for its line of products was willful and with reckless disregard as to the likelihood of confusion.

39.     NIKE directed the use of the COOL COMPRESSION Mark or a confusingly similar variation of the mark despite knowing that Lontex owns the rights to the COOL COMPRESSION Mark.

40.     NIKE's use of the COOL COMPRESSION Mark has caused confusion in the marketplace, is likely to cause both confusion and mistake, and is likely to deceive consumers or result in the belief that NIKE is legitimately connected with, sponsored by, affiliated with, or licensed or approved by, Lontex; the marks used by NIKE are identical or substantially similar in sound, appearance and meaning to Lontex's trademark.  Further, the marks use both the words comprising the composite mark COOL COMPRESSION, for similar goods and services, use similar marketing channels (including third-party retailers), promote to overlapping distribution channels and consumers, and use the mark with the intent to confuse consumers.

41. Such use was done willfully and with knowledge that such use would and was likely to cause confusion and deceive the relevant audience. Nike intentionally used the Lontex's COOL COMPRESSION trademark, knowing it was a counterfeit.

42. As a direct and proximate result of NIKE's trademark infringement, Lontex has been damaged within the meaning of 15 U.S.C. § 1114 *et seq.* Lontex has been damaged by both forward and reverse confusion.

43. The uses alleged above are spurious uses of the COOL COMPRESSION mark as its product mark in connection with the sale, offering for sale, or distribution of clothing, which mark is identical with, or substantially indistinguishable from Plaintiff's incontestable trademarks, such uses being unauthorized reproductions, copies or colorable imitations of Plaintiff's COOL COMPRESSION mark.

44. NIKE's use constitutes a counterfeit, which was willfully used, and thus Lontex is entitled to statutory damages of up to $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, under 15 U.S.C. § 1117. Each item listed on the register may be treated as a separate good for purposes of their calculation.

45. Lontex has suffered damages in an amount to be established after proof at trial or in the statutory amount.

46. Lontex is further entitled to disgorge NIKE's profits for its willful sales and unjust enrichment. NIKE causes all infringing sales of the Prohibited Intermediaries, and is also liable to disgorge all profits of their Prohibited Intermediaries.

47. This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that NIKE's acts were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling Lontex to its attorney's fees and an enhancement of damages, including a trebling

of its damages and/or disgorged profits. NIKE adopted and continued use of the infringing mark despite knowing Lontex had incontestable, federal trademark registrations covering the same class and types of goods that NIKE used. Even after a demand letter identifying the infringement of the registered COOL COMPRESSION mark was sent, and NIKE indicated it would cease use, at least Nike's catalogues and sales through Prohibited Intermediaries continued to make the same infringing use of the COOL COMPRESSION mark as before the notice.

48.     As a direct result of NIKE's willful and unlawful actions, Lontex has suffered and continues to suffer irreparable harm and damages, including damage to and diminution in value of the COOL COMPRESSION Mark, necessary corrective advertising, lost sales, tarnishment, and loss of brand control. Lontex's remedy at law is not adequate to compensate for injuries inflicted by NIKE. Thus, Lontex is entitled to temporary, preliminary and permanent injunctive relief.

**SECOND COUNT**
**TRADEMARK INFRINGEMENT**
**UNDER THE LANHAM ACT IN VIOLATION OF 15 U.S.C. § 1125(a)**

49.     Lontex repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

50.     Lontex is the owner and licensor of the COOL COMPRESSION Mark.

51.     NIKE's use of the COOL COMPRESSION Mark has caused confusion in the marketplace, is likely to cause both confusion and mistake, and is likely to deceive consumers or result in the belief that NIKE is legitimately connected with, sponsored by, or licensed or approved by, Lontex; the marks used by NIKE are identical or substantially similar in sound, appearance and meaning to Lontex's trademark. Further, the marks use both the words comprising the composite mark COOL COMPRESSION, for similar goods and services, use

similar marketing channels (including third-party retailers), promote to overlapping consumers, and use the mark with the intent to confuse consumers.

52.     Such use was done willfully and with knowledge that such use would and was likely to cause confusion and deceive the relevant audience.

53.     As a direct and proximate result of NIKE's trademark infringement and false designation of origin, Lontex has been damaged within the meaning of 15 U.S.C. § 1125(a).

54.     Lontex has suffered damages in an amount to be established after proof at trial.

55.     Lontex is further entitled to disgorge NIKE's profits for its willful sales and unjust enrichment, as well as disgorging from NIKE the profits of its Prohibited Intermediaries.

56.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that NIKE's acts were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling Lontex to its attorney's fees and an enhancement of damages, including a trebling of its damages and/or disgorged profits.

57.     As a direct result of NIKE's willful and unlawful actions, Lontex has suffered and continues to suffer irreparable harm, including damage to and diminution in value of the COOL COMPRESSION Mark.  Lontex's remedy at law is not adequate to compensate for injuries inflicted by NIKE.  Thus, Lontex is entitled to temporary, preliminary and permanent injunctive relief.

**THIRD COUNT**
**CONTRIBUTORY TRADEMARK INFRINGEMENT**
**UNDER THE LANHAM ACT IN VIOLATION OF 15 U.S.C. §§ 1114, 1125(a)**

58.     Lontex repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

59.     Lontex is the owner and licensor of the COOL COMPRESSION Mark, which is federally registered, incontestable, valid, and identifies Lontex as the source of COOL COMPRESSION Goods.

60.     NIKE had knowledge of its Prohibited Intermediaries' Lanham Act violations, including trademark infringement, false designation of origin, unfair competition, and counterfeiting.

61.     NIKE intentionally induced others, including its Prohibited Intermediaries, to infringe and use the COOL COMPRESSION Mark.

62.     NIKE is able to exercise direct control and practical control over its Prohibited Intermediaries' Lanham Act violations above.

63.     NIKE monitors its Prohibited Intermediaries' actions that lead to sales of NIKE's competing athletic apparel products, including the Prohibited Intermediaries' Lanham Act violations alleged above.

64.     NIKE could take simple measures to prevent their Prohibited Intermediaries' Lanham Act violations alleged above, but chose not to do so.

65.     NIKE did not prevent their Prohibited Intermediaries' Lanham Act violations, but instead encouraged those actions by refusing to take simple take-down and recall measures to prevent the trademark infringement, false designation of origin, unfair competition, and counterfeiting actions with respect to the COOL COMPRESSION Mark.

66.     NIKE's conduct has damaged and continues to damage Lontex's business, reputation, and goodwill.

67.     NIKE's conduct has been willful and intentional, and NIKE engaged in the actions alleged herein with the purpose of confusing consumers and trading on the goodwill associated with the COOL COMPRESSION Mark.

68.     As a direct and proximate result of NIKE and its Affiliates' trademark infringement, false designation of origin, and unfair competition Lontex has been damaged within the meaning of 15 U.S.C. §§ 1114 and 1125(a).

69.     Lontex has suffered damages in an amount to be established after proof at trial or in the statutory amount.

70.     Lontex is further entitled to disgorge NIKE's profits for its willful sales and unjust enrichment, and also disgorge from NIKE the profits of its Prohibited Intermediaries.

71.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that NIKE's acts were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling Lontex to its attorney's fees and enhanced damages, including a trebling of its damages and/or disgorged profits.

72.     As a direct result of NIKE's willful and unlawful actions, Lontex has suffered and continues to suffer irreparable harm, including damage to and diminution in value of the COOL COMPRESSION Mark.  Lontex's remedy at law is not adequate to compensate for injuries inflicted by NIKE.  Thus, Lontex is entitled to temporary, preliminary and permanent injunctive relief.

## FOURTH COUNT
## STATE COMMON LAW TRADEMARK INFRINGEMENT

73.     Lontex repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

74.     Lontex has state common law trademark rights based on its extensive use throughout the entire United States to the COOL COMPRESSION Mark, including but not limited to continuous and systematic use in the States of California, Florida, Texas, New York, New Jersey, North Carolina, Maryland, Massachusetts, Illinois, Georgia, Colorado, Minnesota, Washington, and the District of Columbia, giving it market penetration in at least each of those states.

75.     Each of these states' laws prohibit trademark infringement and provide a competitor such as Plaintiff standing to pursue such claim.

76.     The infringing goods have been sold in each of these states and is likely to cause confusion for the consumers in each of these states as to the source, sponsorship, and approval as to the infringing products, as further alleged above.

77.     These actions were intentional and knowing acts of infringement through use of the COOL COMPRESSION Mark.

78.     As a direct and proximate result of NIKE's wrongful acts, Lontex has suffered and continues to suffer substantial pecuniary losses, competitive harm, and irreparable injury to its business reputation and goodwill.  As such, Lontex's remedy at law is not adequate to compensate for injuries inflicted by NIKE.  Accordingly, Lontex is entitled to temporary, preliminary and permanent injunctive relief.

79.     By reason of such wrongful acts, Lontex is, was, and will be in the future, deprived of, among other damages, the profits and benefits of business relationships, agreements, and transactions with various third parties and/or prospective business relationships. Defendant's profits are awardable, at least under the common laws of the States of Florida, Texas, New York, D.C., New Jersey, Maryland, Massachusetts, Georgia, Colorado, Minnesota,

and Washington. NIKE has wrongfully obtained profit and benefits instead of Lontex. Lontex is entitled to compensatory damages and disgorgement of NIKE's said profits, in an amount to be proven at trial, including the profits of its Prohibited Intermediaries.

80. Such acts, as alleged above, were done with malice, oppression and/or fraud, thus entitling Lontex to exemplary and punitive damages for common law trademark infringement, under at least the laws of at least Florida, California, Texas, New York, D.C., Maryland, Georgia, and Minnesota.

81. Lontex is entitled to its reasonable attorneys' fees under state law, including D.C., New Jersey, Ohio, Georgia, and Washington.

## FIFTH COUNT
## STATE STATUTORY TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

82. Lontex repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

83. NIKE's actions alleged herein constitute trademark infringement and thus unfair competition within the meaning of the following Deceptive and Unfair Business Practices Acts: (1) the Florida Deceptive and Unfair Trade Practices Act, Florida Stat. §501.201 *et seq.*, (2) California Business and Professions Code § 17200 *et seq.*, (3) New York General Business Law § 349, (4) New Jersey Stat. § 56:4-1, (5) North Carolina General Statute Sec. 75-1.1 *et seq.*, (6) Mass. Gen. Laws c. 93A, § 11, (7) Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, (8) Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370 through 10-1-375, (9) Colorado Unfair Practices Act, Colo. Rev. Stat. §§6-2-101 through 6-2-117, (10) Minn. Stat. § 8.31, subds. 1 & 3a, & §§ 325D.43-325D.48, and (11) Washington Unfair Business Practices – Consumer Protection, Rev. Code Wash. 19.86.010, *et seq.*

84.     NIKE's actions affect the public interest and cause harm to the public at large by falsely associating itself with Plaintiff's brand and misleading consumers and the relevant public with its unauthorized use of the COOL COMPRESSION mark, as alleged herein.

85.     Because of NIKE's deceptive, unlawful, unfair or fraudulent business act(s) or practice(s) described herein, Lontex – a competitor of Nike – is entitled to actual damages, full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by NIKE as a result of such unfair business acts or practices.

86.     Lontex is entitled to its attorneys' fees and costs in pursuing this action at least under Florida Stat. §501.211, N.Y. Gen. Bus. Law § 349(h), New Jersey Stat. §56:3-13.16, N.C. Gen. Stat. § 75-16.1, Mass. Gen. Laws c. 93A, § 11, 815 ILCS 510/3, O.C.G.A. § 10-1-373(b), Colo. Rev. Stat. 6-1-113(2), Minn. Stat. § 8.31 & § 325D.45, and Rev. Code Wash. § 19.86.090.

87.     Pursuant to the foregoing Deceptive and Unfair Business Practices Acts, the damages and/or profits awarded should be enhanced or trebled, under at least the laws of New York, New Jersey, North Carolina, Massachusetts, Colorado, and Washington.

88.     Lontex's remedies at law are inadequate, entitling Lontex to an injunction enjoining NIKE's further acts of trademark infringement and thus unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Lontex demands the following relief for each cause of action unless otherwise noted:

1.     A judgment in favor of Lontex and against NIKE on all counts;

2.     A preliminary and permanent injunction from trademark infringement and unfair business practices by NIKE;

3.     Damages in an amount to be determined at trial;

4.      NIKE's unjust enrichment and/or disgorgement of NIKE's profits, and the unjust enrichment and/or profits of NIKE's Prohibited Intermediaries, all enhanced including trebling;

5.      Trebling of damages for willful infringement, unfair competition, and dilution;

6.      Exemplary and punitive damages;

7.      Pre-judgment interest at the legally allowable rate on all amounts owed;

8.      Statutory damages of up to $2 million under 15 U.S.C. § 1117(c) for infringement of a registered mark per type of goods or services;

9.      Costs and expenses;

10      Attorney's fees and other fees under, among others, 15 U.S.C. § 1117(a) and (b) *et seq.* as an exceptional case, and under state law and use of a willful counterfeit Mark;

11.     Restitution; and

12.     Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Lontex hereby demands a trial by jury on all issues triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED: March 12, 2019                    SEMANOFF ORMSBY
                                         GREENBERG & TORCHIA, LLC


                              BY:    /s/ Michael B. Dubin
                                     MICHAEL B. DUBIN, ESQ.
                                     (PA SBN 70681)
                                     2617 Huntingdon Pike
                                     Huntingdon Valley, PA 19006

                                     MINTZ LEVIN COHN FERRIS GLOVSKY
                                     AND POPEO PC
                                     Andrew D. Skale (CA SBN 211096)
                                     adskale@mintz.com
                                     Ben L. Wagner (CA SBN 243594)
                                     blwagner@mintz.com
                                     *Admitted Pro Hac Vice*
                                     3580 Carmel Mountain Road, Suite 300n
                                     Diego, CA 92130
                                     Telephone:   (858) 314-1500
                                     Facsimile:    (858) 314-1501

                                     Counsel for Plaintiff LONTEX

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LONTEX CORPORATION, | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | 2:18-cv-05623-MMB |
| vs. | ) | |
| | ) | |
| NIKE, INC., | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below service of a true and correct copy of the attached First Amended Complaint for Trademark Infringement and Unfair Competition was made via e-mail upon the following:

Darius C. Gambino, Esquire
Ben C. Fabens-Lassen, Esquire
DLA PIPER LLP (US)
1650 Mark Street, Suite 5000
Philadelphia, PA 19103

Gina Durham, Esquire
555 Mission Street, Suite 2400
San Francisco, CA 94105

Frank W. Ryan, Esquire
Marc Miller, Esquire
1251 Avenue of the Americas
New York, NY 100201
*Attorneys for Defendant Nike, Inc.*

*/s/ Michael B. Dubin*
MICHAEL B. DUBIN, ESQUIRE
SEMANOFF ORMSBY
GREENBERG & TORCHIA, LLC
2617 Huntingdon Pike
Huntingdon Valley, PA 19006
(215) 887-0200

Dated: March 12, 2019

# EXHIBIT "A"

Int. Cl.: **25**

Prior U.S. Cls.: **22 and 39**

**Reg. No. 3,416,053**

## United States Patent and Trademark Office

Registered Apr. 22, 2008

### TRADEMARK
### PRINCIPAL REGISTER

# COOL COMPRESSION

LONTEX CORPORATION (PENNSYLVANIA CORPORATION)
4TH FLOOR
8 DEKALB STREET
NORRISTOWN, PA 19401

FOR: MEN'S, WOMEN'S AND CHILDREN'S CLOTHING, NAMELY, SOCKS, UNDERWEAR INCLUDING BOXER SHORTS, BRIEFS, BIKINI UNDERPANTS, AND LONG JOHNS, TSHIRTS, POLO SHIRTS, SWIMWEAR, COMPRESSION SHIRTS, COMPRESSION SHORTS, COMPRESSION TIGHTS, SWEATPANTS, SWEATSHIRTS, BODY ARMOR CARRIER COMPRESSION SHIRTS FOR MILITARY AND LAW ENFORCEMENT PERSONNEL, SPORTS BRAS, HALTER TOPS, SINGLETS, CAPS, HATS, HEADBANDS, BANDANAS, BALACLAVAS, SNEA-

KERS AND SHOES, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 6-18-2007; IN COMMERCE 6-18-2007.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPRESSION", APART FROM THE MARK AS SHOWN.

SN 78-864,885, FILED 4-19-2006.

SANDRA MANIOS, EXAMINING ATTORNEY

Int. Cl.: 10

Prior U.S. Cls.: 26, 39 and 44

**United States Patent and Trademark Office**

Reg. No. 3,611,406
Registered Apr. 28, 2009

TRADEMARK
PRINCIPAL REGISTER

# COOL COMPRESSION

LONTEX CORPORATION (PENNSYLVANIA CORPORATION)
4TH FLOOR
8 DEKALB STREET
NORRISTOWN, PA 19401

FOR: COMPRESSION SUPPORTS, NAMELY, COMPRESSION SLEEVES FOR USE AS ANKLE SUPPORTERS, ARM SUPPORTERS, ELBOW SUPPORTERS, WRIST SUPPORTERS, KNEE SUPPORTERS, COMPRESSION TIGHTS AND COMPRESSION LEGGINGS, ALL FOR MEDICAL USE AND ABDOMINAL COMPRESSION SHORTS, BACK SUPPORT SHORTS, THIGH GROIN HIP SUPPORT SHORTS, COMPRESSION SOCKS, COMPRESSION BODY SUITS, COMPRESSION VESTS, COMPRESSION BRIEFS AND COMPRESSION SHIRTS, ALL FOR MEDICAL USE, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 6-18-2007; IN COMMERCE 6-18-2007.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 3,114,701, 3,416,053, AND 3,416,236.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPRESSION", APART FROM THE MARK AS SHOWN.

SER. NO. 77-476,891, FILED 5-16-2008.

PAULA MAHONEY, EXAMINING ATTORNEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**United States Patent and Trademark Office**

Reg. No. 3,416,236

Registered Apr. 22, 2008

## TRADEMARK
### PRINCIPAL REGISTER



LONTEX CORPORATION (PENNSYLVANIA CORPORATION)
4TH FLOOR
8 DEKALB STREET
NORRISTOWN, PA 19401

FOR: MEN'S, WOMEN'S AND CHILDREN'S CLOTHING, NAMELY, SOCKS, UNDERWEAR INCLUDING BOXER SHORTS, BRIEFS, BIKINI UNDERPANTS, AND LONG JOHNS, TSHIRTS, POLO SHIRTS, SWIMWEAR, COMPRESSION SHIRTS, COMPRESSION SHORTS, COMPRESSION TIGHTS, SWEATPANTS, SWEATSHIRTS, BODY ARMOR CARRIER COMPRESSION SHIRTS FOR MILITARY AND LAW ENFORCEMENT PERSONNEL, SPORTS BRAS, HALTER TOPS, SINGLETS, CAPS, HATS, HEADBANDS, BANDANAS, BALACLAVAS, SNEA-

KERS AND SHOES, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 6-18-2007; IN COMMERCE 6-18-2007.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPRESSION", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF THE WORDS "COOL COMPRESSION" NEXT TO THE STYLIZED CONFIGURATION OF A MAN.

SN 78-963,029, FILED 8-29-2006.

SANDRA MANIOS, EXAMINING ATTORNEY

# EXHIBIT B



**Schnader** | *The Higher Calling of the Law*
ATTORNEYS AT LAW

1600 Market Street  Suite 3600
Philadelphia, PA  19103-7286
215.751.2000  Fax 215.751.2205  schnader.com

December 23, 2019

Edward J. Sholinsky
Direct Dial 215-751-2304
E-Mail: esholinsky@schnader.com

*Via E-mail*

Craig C. Crockett, Esquire
Troutman Sanders LLP
Three Embarcadero Center, Suite 800
San Francisco, CA  94111

> **Re:    Third Party Subpoena in Lontex Corporation v. NIKE, Inc., Case No. 18-cv-5623 (E.D. Pa. )**

Dear Mr. Crockett:

Enclosed please find Academy, Ltd.'s Objections and Responses to Plaintiff's Third Party Subpoena To Produce Documents, Information, or Objects and documents bates numbered Academy_0001 through Academy_0019.

Sincerely,

Edward J. Sholinsky
For SCHNADER HARRISON SEGAL & LEWIS LLP

cc: Gina L. Durham, Esquire
Enclosures

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LONTEX CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:18-cv-05263 (MMB) |
| | : | |
| NIKE, INC., | : | |
| | : | |
| | :: | |
| Defendant. | : | |
| | : | |
| | : | |

---

**ACADEMY, LTD.'S OBJECTIONS AND RESPONSES**
**TO PLAINTIFF'S THIRD PARTY SUBPOENA TO PRODUCE DOCUMENTS,**
**INFORMATION, OR OBJECTS**

---

Academy, Ltd. d/b/a Academy Sports + Outdoors ("Academy"), by and through

its counsel, submits the following objections and responses to Lontex Corporation's ("Lontex")

Subpoena to Produce Documents, Information, or Objects directed to Academy (the

"Subpoena") in the above-captioned action.

## <u>GENERAL OBJECTIONS</u>

Rule 45 of the Federal Rules of Civil Procedure requires Lontex to take

reasonable steps to avoid imposing undue burden and expense upon Academy.  Contrary to this

Rule, Lontex has issued a subpoena that requires Academy to expend considerable time and

resources to research and respond to ten overbroad requests covering a vast amount of

information for an unlimited time period, and relating to categories of information in defendant

Nike, Inc.'s ("Nike") custody, possession, or control  Academy responds to this subpoena subject to and without waiving the following General Objections.

## GENERAL OBJECTIONS

1.      Academy objects to the Subpoena as overbroad, unduly burdensome, and not proportional to the needs of the case, because the majority of requests are not limited to documents and communications sufficient to establish a particular issue in the litigation.  Given the nature and breadth of the Requests, the burden of responding is substantially greater than identifying relevant and responsive documents and communications, and, therefore, imposes an undue burden or expense on Academy.

2.      Academy objects to the Subpoena to the extent that it seeks information about Academy, its businesses, its employees, its customers, or others associated with it that is proprietary, confidential, or otherwise commercially sensitive or the subject of privacy interests; that is made confidential by law or by agreement; or that is a trade secret.

3.      Academy objects to the Subpoena to the extent the Requests require a response that exceeds the limits of Rules 26 and 45 of the Rules of Civil Procedure.  Subject to Academy's objections, it will produce relevant, non-privileged documents consistent with its obligations under the Rules of Civil Procedure.

4.      Academy objects to the Subpoena as overbroad and unduly burdensome because it seeks documents that may be obtained from other sources that are more convenient, less burdensome and/or less expensive, including the public domain or parties in this action.

5.     Academy objects to the Subpoena to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, or any other applicable privilege or protection.  Academy will produce only non-privileged information.

6.     Responding to this Subpoena will require significant expense.  Academy's expenses in identifying responsive documents, and collecting and producing such documents, should be borne by the subpoenaing party, and it hereby requests reimbursement of those costs and expenses, including counsel fees incurred in responding to the Subpoena.

7.     Academy objects to this Subpoena because it requires the production of confidential documents.  Academy will not produce confidential documents without first entering into a confidentiality agreement and protective order with the parties or joining the confidentiality agreement and protective order of the parties.

8.     Academy reserves the right to amend these objections and responses.

## OBJECTIONS AND RESPONSES

Subject to and without waiver of the above General Objections, Academy objects and responds to the specific requests stated in the Subpoena as follows:

## REQUEST FOR PRODUCTION NO. 1:

DOCUMENTS sufficient to show all sales volumes and dollar amounts for the ACCUSED PRODUCTS, including sales by product number, SKU, product name, year, and state.

**RESPONSE:**  Academy objects to this Request because it is overbroad.  Academy further objects to this Request because it is unlimited as to time, and, therefore, seeks irrelevant information to the extent that it seeks sales information outside the damages period.  Subject to, and without waiving Academy's general and specific objections, Academy will produce non-privileged, relevant documents—to the extent such documents exist—after entering into a confidentiality agreement and protective order.

**REQUEST FOR PRODUCTION NO. 2:**

DOCUMENTS sufficient to show all sales volumes and dollar amounts for the ACCUSED PRODUCTS sold through each sales channel, including YOUR online store.

**RESPONSE:**  Academy objects to this Request because it is overbroad and duplicative of Request No. 1.  Academy further objects to this Request because it is unlimited as to time, and, therefore, seeks irrelevant information to the extent that it seeks sales information outside the damages period.  Subject to, and without waiving Academy's general and specific objections, Academy incorporates its response to Request No. 1.

**REQUEST FOR PRODUCTION NO. 3:**

Representative samples of each hangtag (including any tagging, sticker or marking placed on hangtags), label, package, advertisement, online listing, invoice, point of purchase display, order confirmation, and promotional material for the ACCUSED PRODUCT, including from online purchases.

**RESPONSE:**  Academy objects to this Request because it is overbroad and unlimited as to time.  Subject to and without waiving Academy's general and specific objections, Academy does not have any documents responsive to this Request.

4

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to show each type of advertisement and promotional material (e.g., print, radio, television, brochures, catalogs, flyers, press releases, website pages, website banners, social media, in-store displays, point-of-sale promotional items) displaying any ACCUSED TERM or ACCUSED PRODUCTS.

**RESPONSE:** Academy objects to this Request because it is overbroad, unduly burdensome, and unlimited as to time. Academy further objects to this Request to the extent it seeks documents in the possession, custody, or control of Nike. Moreover, responding to this Request would require Academy to expend unreasonable amounts of time, money, and effort. Subject to, and without waiving Academy's general and specific objections, Academy has produced Academy_0001-Academy_0019.

**REQUEST FOR PRODUCTION NO. 5:**

All COMMUNICATIONS with YOU and NIKE that discussed ceasing, altering or modifying usage of the term "Cool Compression."

**RESPONSE:** Academy objects to this Request because it is unduly burdensome, overbroad, and unlimited as to time. Academy further objects to this Request because it seeks documents in the custody, possession, or control of Nike.

**REQUEST FOR PRODUCTION NO. 6:**

All COMMUNICATIONS with YOU and NIKE that discussed ceasing, altering or modifying usage of the ACCUSED TERM.

**RESPONSE:** Academy objects to this Request because it is unduly burdensome, overbroad, unlimited as to time, and duplicative of Request No. 5. Academy further objects to this Request because it seeks documents in the custody, possession, or control of Nike.

**REQUEST FOR PRODUCTION NO. 7:**

All COMMUNICATIONS referring to LONTEX.

**RESPONSE:** Academy objects to this Request because it is irrelevant, overbroad, and unlimited as to time. Academy further objects to this Request because responding to this Request would require Academy to expend unreasonable amounts of time, money, and effort.

**REQUEST FOR PRODUCTION NO. 8:**

All reference materials YOU referenced when YOU ordered any of the ACCUSED PRODUCTS, for example, NIKE product catalogs.

**RESPONSE:** Academy objects to this Request because it is unduly burdensome, overbroad, and unlimited as to time. Academy further objects to this Request because it seeks documents in the custody, possession, or control of Nike. Subject to, and without waiving Academy's general and specific objections, Academy does not have documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS sufficient to IDENTIFY all persons who ordered any of the ACCUSED PRODUCTS for YOU, including name and title.

**RESPONSE:**  Academy objects to this Request because it is irrelevant.  Academy further objects to this Request because it seeks documents in the custody, possession, or control of Nike.

**REQUEST FOR PRODUCTION NO. 10:**

All reference materials, sales guides or sales materials provided to YOUR stores or store personnel concerning one or more of the ACCUSED PRODUCTS, including tech sheets, modules, technical information, and all other Nike reference materials such as were available on sku.nike.net or Nike's Sports Knowledge Underground portal, as well as any training materials for personnel regarding how to discuss the ACCUSED PRODUCTS with customers.

**RESPONSE:** Academy objects to this Request because it is overbroad and unlimited as to time. Academy further objects to this Request because responding to this Request would require Academy to expend unreasonable amounts of time, money, and effort. Finally, Academy objects to this Request because it seeks documents in the custody, possession, or control of Nike.

/s/ Edward J. Sholinsky
Edward J. Sholinsky (Pa. I.D. No. 206561)
Osazenoriuwa Ebose (Pa. I.D. No. 326139)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 751-2304
Fax: (215) 751-2205
Email: esholinsky@schnader.com
*Attorneys for Third Party Academy, Ltd. d/b/a*
*Academy Sports + Outdoors*

Dated: December 23, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on that on this 23rd day of December, 2019, I caused a true and correct copy of the foregoing Academy, Ltd.'s Objections and Responses to Plaintiff's Third Party Subpoena To Produce Documents, Information, or Objects to be served via electronic mail on counsel of record listed below:

Craig C. Crockett, Esquire
Troutman Sanders LLP
Three Embarcadero Center, Suite 800
San Francisco, CA  94111
*Attorneys for Plaintiff Lontex Corporation*

Gina L. Durham, Esquire
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA  94105

/s/ Osazenoriuwa Ebose
Osazenoriuwa Ebose

# EXHIBIT C

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

Came To Hand: 3 / 6 / 2021
Delivered: 3 / 6 2020
By: E I

# UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF PENNSYLVANIA

)
LONTEX CORPORATION )
_____ )
*Plaintiff* )     Civil Action No. 2:18-CV-05623-MMB
v. )
)
NIKE, INC. )
_____ )
*Defendant* )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Academy, Ltd. d/b/a Academy Sports & Outdoors, Ltd.
1800 N Mason Rd, Katy, TX, 77449-2897
*(Name of person to whom this subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Attachment A

| Place: 1225 North Loop West, Suite 327, Houston, TX 77008 | Date and Time:<br>March 25, 2020 at 9:30 a.m. |
|---|---|

The deposition will be recorded by this method:  stenographically and by video

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: March 5, 2020

*CLERK OF COURT*

OR

_____          *Craig Crockett*
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*
Craig C. Crockett

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Lontex Corporation
_____ , who issues or requests this subpoena, are:
Craig Crockett, 3 Embarcadero Center, Suite 800, San Francisco, CA 94111; craig.crockett@troutman.com; 415-477-5724

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:18-CV-05623-MMB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                    *Server's signature*

                               _____
                                    *Printed name and title*

                               _____
                                    *Server's address*

Additional information regarding attempted service, etc.:


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).



American LegalNet, Inc.
www.FormsWorkFlow.com

## ATTACHMENT A

### DEFINITIONS AND INSTRUCTIONS

The following terms and phrases are defined and used herein as follows:

1.     The terms "YOU" or "YOUR" refer to Academy, Ltd. d/b/a Academy Sports & Outdoors, Ltd. and its subsidiaries, divisions, departments, affiliates, and any officers, directors, agents, employees, or consultants.

2.     The term "NIKE" refers to Defendant Nike, Inc. and its predecessors, successors, subsidiaries, divisions, departments, affiliates, and any and all past or present officers, directors, agents, employees, consultants, experts, attorneys, parents, subsidiaries, and other persons appearing or purporting to act on its behalf.

3.     The term "LONTEX" refers to Plaintiff Lontex Corporation.

4.     The term "COOL COMPRESSION Mark" refers to LONTEX's marks:

U.S. Reg. No. 3,416,053 (COOL COMPRESSION word mark); and

U.S. Reg. No. 3,611,406 (COOL COMPRESSION word mark);

whether standard character, stylized, or design mark.

5.     The term "ACCUSED TERM," refers to NIKE's use of "Cool Compression" and any similar variation thereof.

6.     The term "ACCUSED PRODUCTS" refers to (1) NIKE's product numbers: 642350, 642351, 642352, 642354, 679444, 683134, 687837, 687839, 687840, 688614, 703084, 703086, 703088, 703090, 703092, 703094, 703096, 703098, 715907, 719903, 724347, 724354, 724782, 724785, 725443, 726460, 726461, 726462, 726464, 726465, 728044, 728047, 728048, 728049, 728192, 728343, 728357, 728358, 728359, 728361, 728363, 729269, 729273, 742959, 742961, 744279, 804337, 804655, 811431, 828642, 833544, 837174, 837181, 844306, 848199,

1

883178, 883179, 883180; (2) any other NIKE product that includes in the product name or description either "Cool Compression," "Cool Comp," "CL COMP," "COOLCOMPRESSION," "cool-comp," "coolcomp," "cool-compression," or any other variation of the term "cool" within three words of "compression") (e.g. "Cool 9" Compression," "Cool ½ Sleeve Compression," "Cool HBR Comp")) (or "comp").

      7.     The terms "PERSON" or "PERSONS" refer to any natural person, agent, licensee, firm, association, organization, partnership, business, trust, corporation, joint venture and all other forms of legal entities.

      8.     The terms "DOCUMENT" or "DOCUMENTS" refer to the full scope of documents and things discoverable under the Federal Rules of Civil Procedure and is used herein in its broadest sense to include, anything in which there is portrayed or contained, or from which can be retrieved, any facts, information, or data, including, without limitation: (i) all writings of every kind, including, but not limited to, letters, telegrams, memoranda, reports, studies, calendar and diary entries, pamphlets, notes, charts, drawings, graphs, tabulations, analyses, statistical or other informational accumulations, advertisements, portfolios, file folders or jackets, folder covers, and any kind of records of meetings and conversations (also including, without limitation, audio recordings), (ii) photographs and film impressions, digital images captured in any media, moving pictures, (iii) all ESI as defined below, (iv) data accessible via the Internet (including, but not limited to, http, html, xml, java, or Adobe Flash web pages and/or web data), or stored on magnetic tapes or on any other data storage media, (v) sound or mechanical reproductions or recordings, and (vi) copies of documents that are not identical to the duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or are attached thereto), whether or not the originals are in YOUR possession, custody, or control. A draft,

alternate version, or non-identical copy, including any copy on which any mark, alteration, writing, attachment, or any other change from the original appears, is a separate document within the meaning of these terms.

9.      The term "ESI" refers to data recorded or stored on or in main frame computers, network file systems, servers (including web servers), workstations, computer databases, personal computers (whether or not connected to a network), laptop computers, telephones (including, but not limited to, cell phones and smart phones), zip™ drives, flash memory media, including, but not limited to, thumb drives, memory sticks, and flash memory cards, external drives, removable drives, diskettes, optical media, including, but not limited to, CDs, DVDs, and magneto-optical discs, personal digital assistants ("PDAs," e.g., Palm™, Blackberry™, and iPhone™ devices, and the like), digital photographs, digital movies, videotapes, audio tapes, and similar media. This includes, by way of example and not limitation, CAD, CAM, and similar drawings, digital photographs and movies, electronic mail (also referred to herein as "e-mail") (and attachments thereto), short message service ("SMS") messages, multimedia messaging service ("MMS") messages (and attachments thereto), metadata, object code, presentations, software, source code, spreadsheets, voice mail, word processor files, Internet webpages, and other electronically stored data compilations. All versions and drafts are to be produced as separate items.

10.      The terms "COMMUNICATION" or "COMMUNICATIONS" refer to any oral, written or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, without limitation, electronic mail, instant messages, correspondence, conversations, telephone calls, dialogues, discussions, interviews, consultations,

3

agreements and any other understandings between or among two or more persons or any document that recorded or reflected any such communication.

11.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12.     The use of the singular form of any word includes the plural and vice versa.

13.     Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as in each case is most appropriate.

## DOCUMENT REQUESTS

**TOPIC NO. 1:**

Reference materials, sales guides or sales materials provided to YOUR stores or store personnel concerning any of the ACCUSED PRODUCTS, including tech sheets, modules, technical information, and all other Nike reference materials such as were available on sku.nike.net or Nike's Sports Knowledge Underground portal, as well as any training materials for personnel regarding how to discuss the ACCUSED PRODUCTS with customers.

**TOPIC NO. 2:**

Hangtag (including any tagging, sticker or marking placed on hangtags), label, package, advertisement, online listing, invoice, point of purchase display, order confirmation, and promotional material for the ACCUSED PRODUCT, including from online purchases.

**TOPIC NO. 3:**

Advertisement and promotional material (e.g., print, radio, television, brochures, catalogs, flyers, press releases, website pages, website banners, social media, in-store displays, point-of-sale promotional items) displaying any ACCUSED TERM or ACCUSED PRODUCTS.

**TOPIC NO. 4:**

COMMUNICATIONS with YOU and NIKE that discussed ceasing, altering or modifying usage of the term "Cool Compression."

**TOPIC NO. 5:**

Materials that YOU referenced when YOU ordered any of the ACCUSED PRODUCTS, for example, NIKE product catalogs.

**TOPIC NO. 6:**

The sales reflected in the document attached as Exhibit 1 and produced by YOU.

# EXHIBIT 1

Nike Product numbers

| Product Number | Description | Year |
|---|---|---|
| 642350 | JORDAN STAY COOL COMP FW SHORT | |
| 642351 | JORDAN STAY COOL 6" SHORT | |
| 642352 | JORDAN STAY COOL COMP FW TANK | |
| 642354 | JORDAN STAY COOL COMP TANK | |
| 679444 | AOP COMP SHORT YOUTH | |
| 683134 | JORDAN STAY COOL COMP VII TANK | |
| 687837 | AJ STAY COOL COMP 3/4 TIGHT | |
| 687839 | AJ STAY COOL COMP GRAPHIC TANK | |
| 687840 | AJ STAY COOL COMP GRAPHIC TIGHT | |
| 688614 | COOL COMP WETLND CAMO TIGHT | HO 15 |
| 703084 | M NP SHORT | 2015/16 |
| 703086 | M NP SHORT LONG | 2015/16 |
| 703088 | M NP COMP LS CREW | |
| 703092 | M NP COMP SL | |
| 703094 | M NP COMP SS | |
| 703096 | M NP TANK COMP | |
| 703098 | M NP TIGHT | 2015/16 |
| 715907 | AJ STAY COOL COMP BC TIGHT | |
| 719903 | CORE 1/2 SLEEVE COMP TOP | |
| 724354 | COOL 1/2 SLEEVE COMP TOP | |
| 724782 | FLT STAY CL COMP SS TOP 2.0 | |
| 724785 | ULT FLT STAY CL COMP TANK 2.0 | |
| 726460 | HBR COMP LS YTH | |
| 726461 | B NP COMP SHORT HBR | |
| 726462 | B NP TOP COMP HBR SS | |
| 726464 | B NP TIGHT COMP HBR | |
| 726465 | B NP TIGHT COMP HBR 3QT | |
| 728044 | NIKE PRO COOL COMP SL | |
| 728047 | NIKE PRO COOL COMP LS | |
| 728048 | NIKE PRO COOL COMP SS | |
| 728049 | NIKE PRO COOL 6" SHORT | |
| 728343 | COOL COMP TANK PROJECT X | |
| 728357 | COOL COMP 3/4 TGT PROJECT X | |

**CONFIDENTIAL ATTORNEYS' EYES ONLY-- SUBJECT TO PROTECTIVE ORDER.**

| Item | Item VPN | Sls TTL R | Sls TTL U | Description | Total Sales $'s per style | Total Sales Units per style |
|---|---|---|---|---|---|---|
| 688614 | 688614-010 | 60,817 | 2,082 | Coll Comp Camo Tight | $164,970 | 5745 |
| 688614 | 688614-100 | 72,209 | 2,409 | | | |
| 688614 | 688614-407 | 31,943 | 1,255 | | | |
| 703084 | 703084-010 | 395,203 | 16,137 | M NP Short | $1,893,613 | 78830 |
| 703084 | 703084-011 | 172,150 | 7,046 | | | |
| 703084 | 703084-013 | 39,727 | 1,688 | | | |
| 703084 | 703084-014 | 189,992 | 7,757 | | | |
| 703084 | 703084-091 | 314,381 | 12,835 | | | |
| 703084 | 703084-100 | 202,720 | 8,243 | | | |
| 703084 | 703084-201 | 22 | 1 | | | |
| 703084 | 703084-325 | 34,475 | 1,818 | | | |
| 703084 | 703084-340 | 20,045 | 956 | | | |
| 703084 | 703084-343 | 30,388 | 1,529 | | | |
| 703084 | 703084-407 | 20,684 | 959 | | | |
| 703084 | 703084-435 | 32,410 | 1,528 | | | |
| 703084 | 703084-451 | 203,125 | 8,263 | | | |
| 703084 | 703084-480 | 94,006 | 3,772 | | | |
| 703084 | 703084-657 | 0 | 0 | | | |
| 703084 | 703084-687 | 126,517 | 5,527 | | | |
| 703084 | 703084-868 | 17,766 | 771 | | | |
| 703086 | 703086-010 | 376,497 | 14,245 | M NP Short Long | $890,681 | 34566 |
| 703086 | 703086-011 | 40,642 | 1,887 | | | |
| 703086 | 703086-014 | -30 | -1 | | | |
| 703086 | 703086-091 | 262,604 | 9,903 | | | |
| 703086 | 703086-100 | 138,099 | 5,413 | | | |
| 703086 | 703086-313 | 31,831 | 1,280 | | | |
| 703086 | 703086-418 | 40,814 | 1,749 | | | |
| 703086 | 703086-480 | 223 | 10 | | | |
| 703098 | 703098-010 | 751,474 | 24,847 | M NP Tight | $1,981,500 | 66095 |
| 703098 | 703098-011 | 113,709 | 3,898 | | | |
| 703098 | 703098-014 | 186,409 | 6,018 | | | |
| 703098 | 703098-091 | 224,163 | 7,366 | | | |
| 703098 | 703098-100 | 592,204 | 19,269 | | | |
| 703098 | 703098-325 | 36,979 | 1,967 | | | |
| 703098 | 703098-451 | 76,526 | 2,729 | | | |
| 703098 | 703098-BADSKU | 35 | 1 | | | |

CONFIDENTIAL ATTORNEYS' EYES ONLY--
SUBJECT TO PROTECTIVE ORDER.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **SUBPOENA ON ACADEMY, LTD.,** | § | |
| **a Non-Party in a Pending Civil Action** | § | |
| **Before the United States District Court** | § | |
| **for the Eastern District of Pennsylvania,** | § | **MISC. NO. _____** |
| **Styled** *Lontex Corporation v. Nike, Inc.*, | § | |
| **Case No. 2:18-cv-05623-MMB** | § | |
| | § | |

---

**ORDER GRANTING ACADEMY, LTD.'S MOTION TO QUASH**

---

On this day, the Court considered Academy, Ltd. ("Academy")'s Motion to Quash Lontex Corporation ("Lontex")'s Subpoena to Testify at Oral Deposition (the "Motion").  Having considered the Motion, and any responses thereto, the Court finds that the Motion should be and is hereby GRANTED.  It is therefore ORDERED that the Lontex's Subpoena is hereby QUASHED.

Dated: _____, 2020.


_____
PRESIDING JUDGE