**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LONTEX CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>NIKE, INC.,<br><br>                    Defendant. | Civil Action No.  2:18-cv-05623-MMB<br><br>(Hon Michael M. Baylson)<br>(Master Sandra Jeskie, Esq.) |

## DECLARATION OF BEN L. WAGNER IN SUPPORT OF PLAINTIFF LONTEX CORPORATION'S OPPOSITION TO DEFENDANT NIKE, INC.'S MOTION FOR SANCTIONS

Ben L. Wagner declares as follows:

1.      I am a member of the State Bar of California in good standing.  I am a partner at the firm of Troutman Pepper Hamilton Sanders LLP, counsel of record in this action for Plaintiff Lontex Corporation ("Lontex").  Each statement made in this declaration is based upon facts within my personal knowledge or which I reasonably believe to be true on the basis of my information and belief.  If called as a witness in this action I could and would testify competently to the same.

2.      I submit this declaration in support of Lontex Corporation's Opposition to Defendant Nike, Inc.'s Motion for Sanctions.

3.      Leading up to the March 13, 2020 hearing, Lontex had attempted to have minimal customer contact about this case, and sought in discovery to have Nike do the same.  As of the hearing, Nike had taken depositions of ten individuals (including 3 days for Mr. Nathan), while Lontex still had depositions remaining in its presumptive ten depositions.

<u>The April and May 2020 Declarations</u>

4.      I spoke with trainer Keith Dugger on March 10, 2020 by phone.  I relayed some of the substance of this call to Nike's counsel on a meet and confer call with Nike's counsel later that same day.  The declaration he ultimately executed on April 8, 2020, Keith Dugger is consistent with our March 10 phone conversation.

5.      Attached as **Exhibit 2** is a true and correct copy of the declaration of Keith Dugger, Head Athletic Trainer of the Colorado Rockies executed April 8, 2020.  Attached hereto as **Exhibit 3** is a true and correct copy of the declaration of Keith Dugger executed June 1, 2020.

6.      Attached as **Exhibit 1** is a true and correct copy of an email exchange between myself and counsel for Nike, dated May 18, 2020.  This includes a May 1, 2020 email in which I responded to Nike's demand that Lontex make a one-sided production of litigation communications with third parties and expressed a willingness to consider a reciprocal exchange.

7.      Also included in this exchange is a May 12, 2020 email from me to Nike's counsel, this time advising them that we had learned of Nike's detailed communications with potential witnesses, and asking whether Nike took the position that Lontex should disclose such communications while Nike "may contact third parties about this litigation without producing those communications."  Nike still has not responded on this reciprocation issue and has produced none of these communications.  However, Nike has had written communications with a number of potential witnesses.  Specifically, Mr. Dugger advised me by phone about a declaration Nike provided to the Colorado Rockies.  I also spoke with Craig Soon shortly after Nike counsel sent a declaration executed by him in December 2019, a customer of Lontex, which Mr. Soon confirmed had been sent to him by Nike.  Nike has also provided declarations by

109184947v3

individuals at School Health and Alert Services, other customers of Lontex.  No communications with any of the 5 individuals have been produced by Nike.

8.     In a span of just more than a week starting May 20, 2020, I received five more declarations executed by trainers.  For each of these potential witnesses, I only sent them a draft declaration after Mr. Nathan confirmed they had the relevant knowledge.  When sending each the proposed draft declaration, I explained that while it was based on our understanding, it was being sent in word format so any changes could be made before signing it.  Over half of these declarants did have revisions to the draft declarations and those revisions were made.  Only then did the declarants sign and return final declarations.  All five declarations were provided voluntarily by the declarants, and no subpoena or other form of compulsory legal process was mentioned or provided to them.

9.     Lontex and Nike made a June 30, 2020 voluntary exchange of all declarations, and Lontex provided all six of these declarations.   For the remaining declarants exchanged on June 30, Lontex provided their known phone numbers on July 2, 2020 (as these 5 trainers had ceased employment with the teams they trained for and that Lontex had addresses for, I explained I was not able to provide a current physical address).  On June 16, I accepted Nike's proposal to exchange declarations and supplement thereafter, agreeing to a June 30 first exchange.  Frankly, I had already intended to provide Nike our declarations in short order regardless.   Upon Lontex's next supplementation, the lack of specificity for timing of supplementation lead me to propose weekly supplements, which Nike's counsel agreed to.

<u>Speaking with Jason Daffner and the Process of the June 25 Letters</u>

10.     After Jason Daffner, Esq., general counsel for PFATS, called Mr. Nathan, CEO of Lontex, I promptly called and spoke with Mr. Daffner on April 15, 2020.  He explained that the

trainers were open to finding a way to coordinate the process of providing information relevant to this lawsuit.  Mr. Daffner reiterated that the trainers were very appreciative of SWEAT IT OUT's longstanding involvement with PFATS and regarded Mr. Nathan highly.  Mr. Daffner voiced his understanding that if Lontex were seeking documentary evidence in the form of garment pictures, this would require involving the teams themselves rather than the individual trainers, since that would require going "into the locker room."  I explained to Mr. Daffner that Lontex was not seeking documentary evidence in the form of garment pictures, and what Lontex was really after was to confirm the details that each trainer had in their own head—their percipient knowledge.

11.     Mr. Daffner and I discussed potential means of minimizing burden on the trainers and I reiterated that the goal with each trainer was to make the process of providing the details of what they knew as easy of a method as possible.  I explained that an MLB trainer (Keith Dugger) had provided a sworn declaration concerning the same details which Lontex was seeking from other trainers and proposed the concept of a customizable form declaration that Mr. Daffner as general counsel for PFATS could circulate to trainers.  We discussed such concept further over the next week following the April 15 call.

12.     But ultimately, over the phone on or around April 28, 2020, Mr. Daffner advised me that he had consulted further with PFATS leadership and that Lontex should obtain testimony from each individual team trainer.  He also explained that any declaration would need to be reviewed by team counsel, so the best way was to be sure to provide a subpoena to the trainer.

13.     On our call, Mr. Daffner again reiterated that the trainers very much liked and appreciated Mr. Nathan, but that a group process was not practical and that each trainer should be contacted and information sought on an individual basis.  He indicated that—even if it was

109184947v3

just percipient knowledge of the individual that was sought—trainers may find the need to run details by their team first, before providing a declaration or other form of testimony.

14.     My understanding after speaking with Mr. Daffner was that the trainers were amenable to providing testimony and simply needed the right mechanism to do so.  As a result of my April 15, 2020 conversation with Mr. Daffner, after discussing Eastern District of Pennsylvania practice with co-counsel Michael Schwartz concerning next steps in light of Mr. Daffner's direction, Mr. Schwartz and I prepared a draft form cover letter and trial subpoena to accompany proposed declarations.

15.     The goal was to minimize burden.   So in identifying additional potential witnesses, Lontex limited itself to teams that repeatedly purchased SWEAT IT OUT garments, which teams were parsed out from the sortable spreadsheet of all Lontex sales which had been produced to Nike on January 23, 2020.  Lontex limited itself to the trainers on those teams who were with those teams for at least some of the years during which those purchases were made, according to the PFATS and PBATS websites.  This parsing was done painstakingly with the aid of researching PFATS and PBATS' publicly-available online directories, available at https://www.pfats.com/directory/ and https://pbats.com/bios/.  These directories list by team each trainer, with biographical information on which years they were with each team, what trainer positions they held, and other details about their training career.

16.     Lontex has produced in discovery numerous lists of PFATS and PBATS trainers.  For PFATS, Lontex produced on July 3, 2019 numerous lists bates-numbered LTX_EDPA_5700, 5777, 5834, 5854, 5939, 6081, and subsequently LTX_EDPA_32433, and for PBATS it produced on July 3, 2019 numerous lists bates-numbered LTX_EDPA_5980, 5994, 6025, 6249.  These lists contain contact information for the trainers as well.

17.     The following is a true and correct quote of relevant excerpts of Plaintiff Lontex

Corporation's Supplemental Response and Objections to First Set of Interrogatories (Nos. 1-19),

dated July 2, 2019 (emphasis added):

RESPONSE TO INTERROGATORY NO. 1:

…Lontex has offered for sale COOL COMPRESSION products directly to
consumers, including through its online websites (coolcompression.com and
sweatitout.com), thought leaders, ***athletic teams*** and organizations (professional,
collegiate, amateur, and youth), coaches, assistant coaches ***and other personnel
associated with athletic teams*** (including athletic directors, assistant athletic
directors, ***athletic trainers***, and equipment managers), industry association events
such as the National Athletic Trainer Association, doctors (including family
doctors, sports doctors, and team doctors), physical therapists, rehabilitation
centers, and sporting events such as marathons, running clubs, ski events, regatta,
marathons, and Broad streets run…

RESPONSE TO INTERROGATORY NO. 4:

…Lontex's advertising, marketing, and promotional activities are on its website,
***direct meetings with categories of persons identified in response to
Interrogatory No. 1***, attending trade shows and sporting events, referrals and
word of mouth, and inclusion in magazines, televised sports coverage, and trade
media…

18.     Attached hereto as **Exhibit 4** are true and correct copies of relevant excerpts from

the deposition of Efraim Nathan taken in this matter on November 14, 2019.

19.     Attached hereto as **Exhibit 5** are true and correct copies of relevant excerpts from

the deposition of Efraim Nathan taken in this matter on October 25, 2019.

20.     Attached hereto as **Exhibit 6** are true and correct copies of relevant excerpts from

the deposition of Efraim Nathan taken in this matter on March 12, 2020.

21.     This list of additional potential witnesses to receive letters numbered 63 trainers.

Draft declarations were included to minimize potential burden on the trainer.  For each trainer, a

customized declaration was prepared using the details from the executed declarations already

received from 4 MLB trainers and 2 NFL trainers, from the detailed trainer biographies on PFATS and PBATS' websites, and Lontex's January 23, 2020 sales spreadsheet.

22.     The 63 letters were sent by email and mail starting June 25, 2020.  Attached hereto as **Exhibit 7** are true and correct copies of an exemplar set of documents including the email, cover letter, proposed declaration and trial subpoena, that were sent to each trainer.  Each letter the proposed draft declaration customized for that trainer (which in the email version semt to each was *in Word format*).

23.     The letters were sent out approximately 4 months before the then-November 2 trial pool date, to provide amble time to avert any sense of crisis and allow for any necessary process to play out.

24.     On June 30, 2020, PFATS' general counsel Mr. Daffner called me.  Mr. Daffner explained that he had been provided a number of these letters.  It appeared to me that another attempt to coordinate trainers might be underway.  He explained that he was having a conference call with the trainers later and asked if I might call him in advance of it.  When we spoke by phone that day, Mr. Daffner stated he wanted to make sure he understood the proposed process. He suggested that the deposition route might actually be the most efficient method since Nike might have questions to ask too.  I suggested that if each trainer settled on a declaration stating the facts as they knew them, then if trial went forward and trial depositions were ultimately necessary, Lontex envisioned them being incredibly efficient and short using a remote Zoom deposition platform in light of COVID-19 for convenience and timing of the witnesses.

25.     The next morning, Mr. Daffner requested the full list of PFATS trainers who were sent letters.  Within the hour, I provided him the full list by trainer and team.  To-date, Nike's counsel has not been so direct, and I received no basic request for a list of letter recipients.

26.     That same day, July 1, 2020, Elliot Jermyn (one of the trainers to receive a June 25 Letter) returned a signed revised declaration to me.  Attached hereto as **Exhibit 8** is a true and correct copy of the declaration of Elliot Jermyn executed July 1, 2020.

27.     Eight team counsel have contacted me or my office in response to the June 25 Letters, without one resulting declaration and only one indicating a potential willingness to accept service of subpoena.  As I explained to a number of these trainers, for any later trial subpoena actually served for trial witnesses to testify at their remote locations, Lontex is more than willing to issue them from the witness's home district.

28.     No deposition subpoena has been issued to any of the 63 potential witnesses who received the letter, nor has Lontex issued any deposition subpoena since before the March 13, 2020 hearing.  And, no trial depositions have been scheduled.  As of this filing, zero trainers have accepted service, and Lontex has received only three signed trainer declarations in response to all of these letters.   Attached hereto as **Exhibit 9** is a true and correct copy of the declaration of Rick Griffin executed July 29, 2020.  Attached hereto as **Exhibit 10** is a true and correct copy of the declaration of Brian Ball returned to my office on July 14, 2020 (with an execution date of June 30, 2020).

29.     On July 31, 2020, I emailed an Excel spreadsheet containing a complete list of trainers who received the June 25 Letters to counsel for Nike.  Attached hereto as **Exhibit 11** is a true and correct copy of a letter I sent to Nike's counsel dated July 31, 2020 transmitting that attachment (omitting the attachment for privacy purposes, as it contains trainer contact information).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 31, 2020.

*/s/ Ben L. Wagner*
Ben L. Wagner

109184947v3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2020, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Ben L. Wagner*
Ben L. Wagner

109184947v3