Troutman Pepper Hamilton Sanders LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092

troutman.com

---

**Ben Lewis Wagner**
D 858.509.6010
ben.wagner@troutman.com

October 14, 2020

Hon. Michael M. Baylson
James A. Byrne U.S. Courthouse, Courtroom 3-A
601 Market Street, Philadelphia, PA 19106

Re:   Nike's Mtn. for Sanctions: Lontex Corp. v. NIKE, Inc., Case No. 18-cv-5623 (E.D. Pa.)

Dear Judge Baylson:

The Court requested letters to "provide citations of any reported cases which either granted or denied sanctions for similar behavior." Dkt. 175. These letters must do so against the backdrop of the Court's finding "the explanation offered by Michael Schwartz, Esquire was credible" concerning the circumstances of Mr. Wagner's sending of letters to trainers with trial subpoenas and draft declarations attached. *Id.* Mr. Schwartz explained the "truthful, non-misleading, non-coercive letter" (with subpoena and draft declaration) was a process where "we were acting in good faith, minimizing the burden to anyone, and being clear that what we were requesting was voluntary acceptance of service and a potential alternative of a declaration in lieu of testimony." Hrg. 15:2-12. Notably, the Peduzzi, Cunningham, Smith, Leo and Kozak declarations were obtained before letters were sent and without subpoenas. Opp. 11-12; Hrg. 13:13 (Court: "[Y]ou were privileged to go about wherever you could find people who are knowledgeable").

Given this background, Lontex refers this Court to 3 of the 9 cases from its Opposition: (1) *Quinn v. Consol. Freightways Corp.*, 283 F.3d 572, 576-579 (3d Cir. 2002); (2) *Harker v. Maryland*, 800 F.2d 437, 440 (4th Cir. 1986); and (3) *U.S. Info. Sys. v. IBEW, Local Union No. 164*, 2011 U.S. Dist. LEXIS 123682 (D.N.J. Oct. 25, 2011). In contrast to the circumstances in this case, the cases on which Nike's briefs rely involve document subpoenas (requiring pre-issuance notice) or impose nominal fee sanctions for subpoenas involving *inter alia* knowing misuse of subpoena power or issuance solely to impose burden as revenge.

For *Quinn*, even if Lontex's subpoenas (which led to 3 witness declarations) were improper, which

Hon. Michael M. Baylson
October 14, 2020
Page 2



---

they were not, the Third Circuit in *Quinn*, 283 F.3d 572, reversed as an abuse of discretion a blanket exclusion of third-party testimony, holding: "The exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Id.* at 576. As in *Quinn*, here, there can be no "specific finding of bad faith or willfulness" to support exclusion of a "key witness" and "critical evidence" to corroborate plaintiff's claim. *Id.* 577, 579.  In *Quinn,* the plaintiff did not timely supplement her own deposition or interrogatories as required, but the court emphasized that excluding "critical" testimony "champions form over substance and denied [plaintiff] her full day in court." *Id.* 577-8. The *Quinn* defendant knew of the subject incidents many months before trial and could "neutralize" any prejudice through effective use of cross-examination.  *Id.*

Lontex did nothing wrong by its June 25 trainer letters, acting honestly and in good faith, making the extreme sanction of exclusion impermissible. Similar to *Quinn*, all parties acknowledge the testimony shown by trainer declarations is critical to many "key issues" – it corroborates plaintiff's testimony and claims.  Opp. 4-5 (Dkt. 169), 23; Reply 1 (Dkt. 170).  Nike received trainer declarations in early summer and months before trial, and can effectively cross-examine at trial.

For <u>Harker</u>, Nike's concerns about prejudice from witness suggestibility or taint are fully resolved by *Harker*, 800 F.2d 437.  There, the defendant was convicted based on testimony identifying him as the perpetrator that had been elicited by hypnosis.  *Id.*  The Fourth Circuit recognized "the potential for suggestibility, confabulation, and hardening of memory, and the attendant danger of misidentification" from hypnotism-induced identification, a taint problem corroborated by "many psychologists," with potential taint from the "intent and intimate" relationship between the hypnotist and subject, the "subconscious" tendency to "give the response" the hypnotists' "tone" "attitude, demeanor, and expectations" suggest, and a result that may be little more than a "description of the event [that] departs from reality in order to confirm to the questioner's expectations." *Id.*  Hypnotism doubles the risk by "memory hardening" that this inaccurate reconstruction will be viewed there forward by the witness as "absolute accuracy." *Id.* at 440-

441.  Nevertheless, the court held, in contrast to the "drastic sanction" of exclusion, that the "solution" to hypnotism-induced identification is the typical effective use of cross-examination.  *Id.* at 442-443.  Nike's concerns as to how testimony was elicited come nowhere near the level of hypnotist-induced testimony, and is addressed by cross-examination at trial.

For *U.S. Info*, in recounting a litany of asserted bad acts of counsel and parties, the court in *U.S. Info. Sys.*, 2011 U.S. Dist. LEXIS 123682, found that the conduct was "neither egregious nor done willfully in bad faith" and was not one of those sparing and limited circumstances "where misconduct is clear" so as to justify fee sanctions.  *Id.* **4, 12.  Lontex acted in good faith and did nothing wrong–certainly nothing that rises to the level of egregiousness or willful bad faith to support the extraordinary sanctions that Nike seeks.

For these reasons and those set out in its Opposition, Lontex respectfully requests denial of the motion.

Sincerely,
/s/ Ben L. Wagner
Ben L. Wagner

cc:     Counsel of Record (via ECF)

110638463