**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LONTEX CORPORATION<br><br>                   Plaintiff,<br><br>    v.<br><br>NIKE, INC.,<br><br>                   Defendant. | Civil Action No.  2:18-cv-05623-MMB |

**<u>PLAINTIFF LONTEX CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANT NIKE
INC.'S FOURTEENTH AND FIFTEENTH AFFIRMATIVE DEFENSES</u>**

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................. 1

III. LEGAL STANDARD ....................................................................................... 3

    A.    Summary Judgment ................................................................................ 3

    B.    Statute of Limitations ............................................................................. 4

    C.    The Laches Doctrine That Only "Rarely" Prevents Claims Brought Within
        the Analogous State-Law Period ........................................................... 5

    D.    The Acquiescence Defense that Requires Substantial *Affirmative* Conduct ......... 7

    E.    The Estoppel Defense That In Fact is Not a Separate Defense at All ................. 8

    F.    The "Intentional Relinquishment" of Waiver ....................................... 8

IV. LEGAL ARGUMENT ....................................................................................... 8

    A.    As Filed Within the Limitations Period, The Fourteenth Affirmative
        Defense for Statute of Limitations Fails As a Matter of Law ............... 8

    B.    The Fifteenth Affirmative Defense's Laches Defense Fails Because Nike
        Cannot Overcome The Strong Presumption Against Laches In This Case .......... 9

        1.    There is no material evidence of unreasonable delay by Lontex .............. 9

        2.    There is no material evidence of prejudice to Nike ................................. 11

    C.    Nike's Nonspecific Acquiescence Defense Cannot Survive Summary
        Judgment ............................................................................................... 15

    D.    No Estoppel ........................................................................................... 16

    E.    This Case Lacks Any Facts Supporting Nike's Waiver Defense ......... 16

    F.    Nike's Affirmative Defenses Fail Equally As to the State Law Claims .............. 16

V. CONCLUSION .................................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992), abrogated by *SCA Hygiene Prod. Aktiebolag
  v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 197 L. Ed. 2d 292 (2017) ...............5, 11, 12

*Adidas Am., Inc. v. Payless Shoesource, Inc.*,
  546 F. Supp. 2d 1029 (D. Or. 2008) ........................................................................8

*Am. Diabetes Ass'n v. Friskney Family Trust, LLC*,
  177 F. Supp. 3d 855 (E.D. Pa. 2016) (Goldberg, J.).............................................5, 9

*Analytic Recruiting, Inc. v. Analytic Res., LLC*,
  156 F. Supp. 2d 499 (E.D. Pa. 2001) (Brody, J.) .............................................4, 5, 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................................................3, 4

*Bristol Co. v. Bosch Rexroth Inc.*,
  758 F. Supp. 2d 1172 (D. Col. 2010)......................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...................................................................................................4

*Champagne Louis Roederer v. J. Garcia Carrion, S.A.*,
  569 F.3d 855 (8th Cir. 2009) ............................................................................10, 14

*Covertech Fabricating, Inc. v. TVM Bldg. Prods.*,
  855 F.3d 163 (3d Cir. 2017)......................................................................................7

*Duncan v. Office Depot*,
  973 F. Supp. 1171 (D. Or. 1997) ..............................................................................8

*Elvis Presley Enters. v. Capece*,
  141 F.3d 188 (5th Cir. 1998) ............................................................................10, 14

*Elvis Presley Enters. v. Elvisly Yours, Inc.*,
  936 F.2d 889 (6th Cir. 1991) .............................................................................5, 12

*FDIC v. Giammettei*,
  34 F.3d 51 (2d Cir. 1994)..........................................................................................4

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
  82 F. Supp. 2d 126 (S.D.N.Y. 1999).......................................................................10

*Groves v. Prickett*,
  420 F.2d 1119 (9th Cir. 1970) ...................................................................................8

*Guardian Life Ins. Co. of America v. American Guardian Life Assurance Co.*,
  943 F. Supp. 509 (E.D. Pa. 1996) ...................................................................5, 8, 16

*Heraeus Electro-Nite Co. v. Midwest Instrument Co.*,
  No. 06-355, 2007 U.S. Dist. LEXIS 51510 (E.D. Pa. July 12, 2007)...............................11, 12

*Herman Miller, Inc. v. A. Studio s.r.l.*,
  2006 WL 1307904 (W.D. Mich. 2006)...................................................................11

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
  821 F.3d 935 (7th Cir. 2016) .......................................................................................7

*Int'l Order of Job's Daughters v. Lindeburg & Co.*,
  633 F.2d 912 (9th Cir. 1980) ...................................................................................16

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) .................................................................................6, 9

*Jenn-Air Corp. v. Penn Ventilator Co.*,
  464 F.2d 48 (3d Cir. 1972)........................................................................................12

*Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*,
  831 F. Supp. 123 (S.D.N.Y. 1993) ...........................................................................11

*Lambda Electronics Corp. v. Lambda Technology, Inc.*,
  515 F. Supp. 915 (S.D.N.Y. 1981) ...........................................................................10

*Maduka v. Tropical Naturals, Ltd.*,
  409 F. Supp. 3d 337 (E.D. Pa. 2019) (Pratter, J.) .......................................5, 10, 13

*Merisant Co. v. McNeil Nutritionals, LLC*,
  515 F. Supp. 2d 509 (E.D. Pa. 2007) (Gene, J.) ...................................................4, 6

*Meyers v. Asics Corp.*,
  974 F.2d 1304 (Fed. Cir. 1992)..........................................................................13, 14

*Monster Energy Company v. BeastUp LLC*,
  395 F. Supp. 3d 1334 (E.D. Cal. 2019)....................................................................10

*Novell, Inc. v. Unicom Sales, Inc.*,
  No. C-03-2785 MMC, 2004 WL 1839117 (N.D. Cal. Aug. 17, 2004) ...................10

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
  143 F.3d 800 (3d Cir. 1998)........................................................................................7

*Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical*
   *Therapy P.C.*,
   314 F.3d 62 (2d Cir. 2002)...............................................................................6, 8

*Santana Prods. v. Bobrick Washroom Equip., Inc.*,
   401 F.3d 123 (3d Cir. 2005)..............................................................................4, 5

*Sara Lee Corp. v. Kayser-Roth Corp.*,
   81 F.3d 455 (4th Cir. 1996) ...............................................................................6

*Saratoga Vichy Spring Co., Inc. v. Lehman*,
   625 F.2d 1037 (2d Cir. 1980)..............................................................................10

*Scalera v. Electrograph Sys.*,
   262 F.R.D. 162 (E.D.N.Y. 2009) .......................................................................14

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
   621 F.3d 981 (9th Cir. 2010) .............................................................................7

*SunAmerica Corp. v. Sun Life Assurance Co. of Can.*,
   77 F.3d 1325 (11th Cir. 1996) ...........................................................................8

*Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*,
   69 F. Supp. 3d 530 (E.D. Pa. 2014) (Baylson, J.)...............................................3, 4

*Symbol Techs., Inc. v. Proxim Inc.*,
   No. 01-801-SLR, 2004 U.S. Dist. LEXIS 14949 (D. Del. July 28, 2004) ............13

*Tandy Corp. v. Malone & Hyde, Inc.*,
   769 F.2d 362 (6th Cir. 1985) .......................................................................5, 6, 12

*Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*,
   465 F.3d 1102 (9th Cir. 2006) ...........................................................................6

*TMT N. Am., Inc. v. Magic Touch GmbH*,
   124 F.3d 876 (7th Cir. 1997) .............................................................................8, 16

*Top Tobacco, L.P. v. Good Times USA, LLC*,
   No. 16-cv-4292, 2017 U.S. Dist. LEXIS 12153 (N.D. Ill. Jan. 30, 2017)...........7, 15

*Tri-Star Pictures, Inc. v. Unger*,
   14 F. Supp. 2d 339 (S.D.N.Y. 1998)..................................................................7, 10

*United States v. Anwest Surety Ins. Co.*,
   54 F.3d 601 (9th Cir. 1995) ...............................................................................8

*United States v. King Features Entm't, Inc.*,
   843 F.2d 394 (9th Cir. 1988) .............................................................................8

*Volkswagen AG v. Dorling Kindersley Pub., Inc.*,
    614 F. Supp. 2d 793 (E.D. Mich. 2009).................................................................................11

**Statutes**

15 U.S.C. § 1114.................................................................................................................3

15 U.S.C. § 1125(a) ...........................................................................................................3

# I.
# INTRODUCTION

Plaintiff Lontex Corporation ("Lontex") respectfully submits this memorandum of law in support of its Motion for Partial Summary Judgment on Defendant Nike, Inc.'s ("Nike") Fourteenth and Fifteenth Affirmative Defenses.  For the reasons set forth below, Lontex moves this Court for partial summary judgment with prejudice of Nike's Fourteenth and Fifteenth Affirmative Defenses.

# II.
# FACTUAL BACKGROUND

Plaintiff Lontex Corporation has manufactured and sold apparel products for decades. (Ex. 28, Transcript of the Deposition of Efraim Nathan ("Nathan Tr.") 27:8-19; Ex. 5, Plaintiff Lontex Corporation's Fourth Supplemental Response and Objections to First Set of Interrogatories (Nos. 1-19) ("Lontex Interrogatory Response") No. 12 at p. 38; First Amended Complaint, Dkt. 20 at ¶¶ 1, 10.). Lontex's SWEAT IT OUT mark has been displayed on professional teams and famous athletes' apparel since the 1990s. (Ex. 5, Lontex Interrogatory Response No. 12, at p. 38; First Amended Complaint, Dkt. 20 at ¶ 10.) Since at least 2007, Lontex has offered compression products utilizing Lontex's proprietary COOL COMPRESSION technology. (See, e.g., Ex. 5, Lontex Interrogatory Response Nos. 3 and 4, at pp. 7, 13.) Lontex is the owner of federally registered trademarks for COOL COMPRESSION, consisting of two word marks, U.S. Registration Nos. 3,416,053 and 3,611,406 (collectively the "COOL COMPRESSION marks"). (SOF ¶¶ 1-4.) Lontex's nationwide ownership of and rights in the COOL COMPRESSION mark has been readily disclosed through a simple search of "COOL COMPRESSION" on the USPTO's free and publicly-available online TESS search engine since at least April 19, 2006. (Ex. 1 (filing date).)

Nike sells athletic apparel and shoes through authorized distributors, resellers, retailers around the world. By Fall 2015, Nike publicly utilized the COOL COMPRESSION marks in connection with certain products. (SOF ¶¶ 5-11.) Sometime in or around January 2016, Mr. Efraim Nathan, CEO of Lontex, discovered that Nike was using Lontex's COOL COMPRESSION Marks. (SOF ¶ 12.) Mr. Nathan conducted an internet search of COOL COMPRESSION and received results with numerous hits to Nike products, including at various outlets such as Amazon and Foot Locker. Ex. 5, Lontex Interrogatory Response No. 6, at p. 23; Ex. 28, Nathan Tr. at 74:2-5. Nike's use of COOL COMPRESSION included use by retailers with online presences at that time. *Id.*

Lontex sent Nike a cease and desist letter on April 8, 2016 detailing its concerns regarding Nike's use of Lontex's COOL COMPRESSION marks. (SOF ¶¶ 13-14.) Lontex's cease and desist letter prompted correspondence between Lontex and Nike. (SOF ¶¶ 15-18.) On July 19, 2016, Nike specifically indicated that they were ceasing use of the adjacent words "COOL COMPRESSION," stating that they were ████████████████████████████ ████████████████████████████████████ (SOF ¶¶ 19-20.) Nike and Lontex continued to negotiate by email and letter correspondence until about September 23, 2016. (SOF ¶¶ 20-24, 26-29.) During this time, Nike made some efforts to remove COOL COMPRESSION from Nike's website, and internally discussed the removal of COOL COMPRESSION from Nike's product names. (SOF ¶ 25.) But as of 2018 there were still infringing uses, and Lontex reached out once again to Nike in January 2018, receiving Nike's response in February 2018. (SOF ¶¶ 30-33.) Finally in June 2018, Nike began contacting its retail customers ████████████████████████ to remove COOL COMPRESSION from the retail customers' websites. (SOF ¶ 35.)

Lontex brought suit against Nike on December 31, 2018 and filed a First Amended Complaint on March 12, 2019. (SOF ¶¶ 38-39; Dkt. 1 and 20.) Lontex's First Amended Complaint alleges five counts: (1) trademark infringement under the Lanham Act in violation of 15 U.S.C. § 1114; (2) trademark infringement under the Lanham Act in violation of 15 U.S.C. § 1125(a); (3) contributory trademark infringement under the Lanham Act in violation of 15 U.S.C. §§ 1114, 1125(a); (4) state common law trademark infringement; and (5) state statutory trademark infringement and unfair competition. (Dkt. 20 at ¶¶ 36-88.) Nike filed its Answer, Affirmative Defenses, and Amended Counterclaims to Lontex's First Amended Complaint on July 30, 2019.   (SOF ¶¶ 40; Dkt. 45). Nike's Fourteenth Affirmative Defense states that "Lontex's claims are barred, in part or in whole, by the applicable statute of limitations." (SOF ¶ 41; Dkt. 45 at p. 16.) Nike's Fifteenth Affirmative Defense states that "Lontex's claims are barred, in part or in whole, by the doctrines of laches, waiver, acquiescence, and estoppel." (SOF ¶ 42; Dkt. 45 at p. 16.)

## III.
## LEGAL STANDARD

### A.    Summary Judgment

A motion for summary judgment should be granted by a district court if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

"A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact." *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 69 F. Supp. 3d 530, 540 (E.D. Pa. 2014) (Baylson, J.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex*, 477 U.S. at 322). Pursuant to Fed. R. Civ. P. 5656, the evidence presented on the motion must be viewed in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

The defendant has the burden of proof as to elements of its affirmative defenses. *Analytic Recruiting, Inc. v. Analytic Res., LLC*, 156 F. Supp. 2d 499, 516 (E.D. Pa. 2001) (Brody, J.). If the non-moving party bears the burden of proof on a particular issue, "the moving party's initial burden can be met simply by pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Sweet St. Desserts, Inc.*, 69 F. Supp. 3d at 540 (quotations omitted). "In cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the defendant's affirmative defense necessarily renders all other facts immaterial." *FDIC v. Giammettei*, 34 F.3d 51, 54-55 (2d Cir. 1994) (quotations omitted).

### B.   Statute of Limitations

The Lanham Act has no statute of limitations. *Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 517 (E.D. Pa. 2007) (Gene, J.). Because the Lanham Act does not have its own statute of limitations, federal courts borrow from the most applicable statute of limitations under the law of the forum state. *Santana Prods. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. 2005). In Pennsylvania, federal courts borrow from the Pennsylvania Unfair

Trade Practices and Consumer Protection Law ("UTPCPL"), which has a six-year statute of limitations. *Id.* at 135 ("all claims brought under Section 43(a) of the Lanham Act" are governed by Pennyslvania's catch-all 6-year limitations period; held in false advertising context); *Am. Diabetes Ass'n v. Friskney Family Trust, LLC*, 177 F. Supp. 3d 855, 879 (E.D. Pa. 2016) (Goldberg, J.) (rule applies to claims for trademark infringement under Lanham Act, including Section 32, whether or not infringed mark is registered or common law); *Maduka v. Tropical Naturals, Ltd.*, 409 F. Supp. 3d 337, 362 (E.D. Pa. 2019) (Pratter, J.).

### C.    The Laches Doctrine That Only "Rarely" Prevents Claims Brought Within the Analogous State-Law Period

Laches is measured against the most analogous state-law period (six years here). "[R]arely should laches bar a case before the analogous statute has run." *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 366 (6th Cir. 1985).  Nike "must articulate compelling reasons in support of his laches claim," going beyond "the ordinary requirement of showing unreasonable delay and prejudice to the defendant" to show "some affirmative conduct in the nature of estoppel or conduct amounting to virtual abandonment."  *Elvis Presley Enters. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991) (quotation and alterations omitted).

Laches is an equitable defense and in order for a defendant to prevail on a laches defense, it must show two elements: (1) plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time plaintiff knew or reasonably should have known of its claim against defendant; and (2) the delay operated to the prejudice or injury of the defendant. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1021 (Fed. Cir. 1992), abrogated by *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 197 L. Ed. 2d 292 (2017); *Analytic Recruiting, Inc. v. Analytic Res., LLC*, 156 F. Supp. 2d 499, 516 (E.D. Pa. 2001) (finding no valid defense and granting preliminary injunction for trade name infringement).

"Laches denotes a merely passive consent." *Id.* (citing *Guardian Life*, 943 F. Supp. at 519). Whether the statute of limitations has run determines which party bears the burden of proof. *Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 517 (E.D. Pa. 2007). "[I]f the analogous statute of limitation has not elapsed, there is a *strong presumption* that plaintiff's delay in bringing the suit for monetary relief is reasonable. Only rarely should laches bar a case before the analogous statute has run." *Tandy Corp.*, 769 F.2d at 366 (emphasis added). Any delay less than this period is presumptively reasonable and non-prejudicial: "If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002); *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006).

The period runs from when the plaintiff knew or should have known of the infringement, and generally excludes periods of good faith negotiations.  *See* McCarthy on Trademarks and Unfair Competition, §31:15 (5th ed.); *see also Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 70 (2d Cir. 2002) ("[A] plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that defendant was using the potentially offending mark, but that plaintiff had a provable infringement claim against defendant"); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996) (holding that the trademark owner need not sue "until the likelihood of confusion looms large") (citation and internal quotation marks omitted). "Once use becomes infringing, the  relevant date for quantifying the 'delay' is when the trademark owner either knew or should have known of the existence of a provable claim of infringement, and an owner's claim does not ripen until the defendant's infringement is sufficiently far-reaching to

create a likelihood of confusion." *Covertech Fabricating, Inc. v. TVM Bldg. Prods.*, 855 F.3d 163, 175-176 (3d Cir. 2017).

And the delay period is measured to an end point of providing defendant with notice of infringement, not the filing of suit, as warning letters are more than enough to "constitute a sufficient taking of action to avert a defense of laches." *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 360 (S.D.N.Y. 1998) (quotation omitted); *see further below* p. 10.

### D.    The Acquiescence Defense that Requires Substantial *Affirmative* Conduct

Acquiescence is an equitable doctrine that permits a court to deny relief in a trademark infringement action if the owner of the mark has, *through his affirmative words or conduct*, conveyed his consent to the defendant's use of the mark. *See Top Tobacco, L.P. v. Good Times USA, LLC*, No. 16-cv-4292, 2017 U.S. Dist. LEXIS 12153, at *9 (N.D. Ill. Jan. 30, 2017); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 804 (3d Cir. 1998); *Analytic Recruiting, Inc. v. Analytic Res., LLC*, 156 F. Supp. 2d 499, 516 (E.D. Pa. 2001). This affirmative defense "prevents the trademark owner from impliedly permitting another's use of his mark and then attempting to enjoy that use after the junior user has invested substantial resources to develop the mark's goodwill." *Top Tobacco, L.P.*, 2017 U.S. Dist. LEXIS 12153, at *9. While laches involves a "negligent, unintentional failure to protect trademark rights, acquiescence involves active consent,", requiring "intentional abandonment through an affirmative word or deed." *Id.* (citations and internal quotation marks omitted). *Id.* Relevant considerations as to acquiescence may include whether "(1) the senior user actively represented that it would not assert a right or a claim; (2) the senior user's delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Covertech Fabricating, Inc.*, 855 F.3d at 175 (citing *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 941 (7th Cir. 2016)); *see also Seller Agency Council, Inc.*

*v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 989 (9th Cir. 2010); *ProFitness Physical Therapy Ctr.*, 314 F.3d at 67; *SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325, 1334 (11th Cir. 1996); *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997).

       **E.**       **The Estoppel Defense That In Fact is Not a Separate Defense at All**

Estoppel is not a separate defense but is referred to by McCarthy as "estoppel by laches" and "estoppel by acquiescence." *Guardian Life Ins. Co. of America v. American Guardian Life Assurance Co.*, 943 F. Supp. 509, 517 n.5 (E.D. Pa. 1996) (citing 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 30.01-30.03 (3d ed. 1996)).

       **F.**       **The "Intentional Relinquishment" of Waiver**

"Waiver is the *intentional relinquishment* of a known right with knowledge of its existence and the intent to relinquish it." *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988). "Although mere silence can be a basis for a claim of estoppel when a legal duty to speak exists, waiver must be manifested in an unequivocal manner." *Duncan v. Office Depot*, 973 F. Supp. 1171, 1177 (D. Or. 1997); *see also United States v. Anwest Surety Ins. Co.*, 54 F.3d 601, 602-03 (9th Cir. 1995) (quoting *Groves v. Prickett*, 420 F.2d 1119, 1125 (9th Cir. 1970) ("An implied waiver of rights will be found where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved."); *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1074 (D. Or. 2008).

**IV.**
**LEGAL ARGUMENT**

       **A.**       **As Filed Within the Limitations Period, The Fourteenth Affirmative Defense for Statute of Limitations Fails As a Matter of Law**

Federal trademark claims under the Lanham Act do not have a statute of limitations applicable to bar such claims. Instead, the equitable defense of laches is used to bar stale claims.

Given that there is no statute of limitations for Lontex's federal trademark claims, Nike's fourteenth affirmative defense as to statute of limitations cannot be maintained.

Although there is no federal statute of limitations, even if the Court were to evaluate the statute of limitations as based on the analogous state statute of limitations, Nike's affirmative defense still objectively fails. In Pennsylvania, the applicable state statute of limitations would be six years. *See Am. Diabetes Ass'n*, 177 F. Supp. 3d at 879. Nike's infringement began in Fall 2015. Lontex discovered the infringement in January 2016, and filed its suit against Lontex in December 2018 – less than three years after Nike's infringing conduct began. Lontex is well within any six-year limitation period, if a limitations defense even exists. Nike's fourteenth affirmative defense that Lontex's claims are barred by the statute of limitations cannot be shown.

### B.     The Fifteenth Affirmative Defense's Laches Defense Fails Because Nike Cannot Overcome The Strong Presumption Against Laches In This Case

The first threshold for a laches defense to a Lanham Act claim is for the infringer to prove delay beyond the most analogous state law claim's limitations period, as delay less than this period is presumptively reasonable and non-prejudicial, there being a *strong presumption* against laches. *See Jarrow Formulas, Inc.*, 304 F.3d at 835. In order for Nike to prevail on its affirmative defense of laches, there must be a substantial showing of *unexpected, unreasonable delays*, as well as prejudice to Nike. There is simply no evidence of either issue. With the strong presumption against laches for this case filed within the statute of limitation, an undisputed factual issue, and no material evidence of prejudice or delay, Nike's affirmative defense fails.

1.     There is no material evidence of unreasonable delay by Lontex

As indicated above, this case was filed within any applicable six-year statute of limitations, therefore there is a strong presumption that laches does not apply. There was no unreasonable delay on the part of Lontex. (SOF ¶ 43.) Lontex discovered Nike's infringement in

January 2016, engaged in discussions with Nike through counsel, and provided multiple demand letters to Nike within just a matter of months placing it on clear notice of the infringing conduct. (SOF ¶¶ 12-16.) Warning letters are more than enough to "constitute a 'sufficient taking of action to avert [a] defense' of laches." *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d at 360 (*quoting Lambda Electronics Corp. v. Lambda Technology, Inc.*, 515 F. Supp. 915, 930 (S.D.N.Y. 1981)). Thus, "'a simple warning letter' suffices to avoid laches." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 134 (S.D.N.Y. 1999) (*quoting Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1041 (2d Cir. 1980)); *see also Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) ("Any acts after receiving a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts."); *Champagne Louis Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 859 (8th Cir. 2009) (same; "forewarning of a plaintiff's objections generally prevents a defendant from making a laches defense"); *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 634 (N.D. Tex. 2009) ("[A]ny time lapse after a trademark plaintiff issues a cease and desist letter to the defendant does not count for the purposes of laches.") (citation omitted).

In any event, Lontex filed suit three years later in December 2018. Lontex first contacted Nike in April 2016, soon after discovering Nike's use of the COOL COMPRESSION mark. (SOF ¶¶ 13-14.)  Nike had full notice of Lontex's right during this time and continued infringing acts despite multiple demands to cease. Even arguendo measuring the time to filing suit, there was no delay by Lontex, and especially not any *unreasonable* delay. *See Maduka*, 409 F. Supp. 3d at 363  (3 years not unreasonable delay); *see Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785 MMC, 2004 WL 1839117, at *7 (N.D. Cal. Aug. 17, 2004) (same); *Monster Energy Company v. BeastUp LLC*, 395 F. Supp. 3d 1334, 1366–1367 (E.D. Cal. 2019) (same when suit

filed three years into four year analogous limitations period; summary judgment against laches defense granted); *Herman Miller, Inc. v. A. Studio s.r.l.*, 2006 WL 1307904 (W.D. Mich. 2006) (no laches as filed within three year limitations period); *Volkswagen AG v. Dorling Kindersley Pub., Inc.*, 614 F. Supp. 2d 793, 812 (E.D. Mich. 2009) (four year delay not unreasonable).

Given that there was no unreasonable delay by Lontex, there can be no estoppel by laches. This is all the more compelled where Lontex promptly made efforts to resolve the issue with Nike in 2016 and continued to reach out to Nike even in early 2018 before filing suit. *See Aukerman*, 960 F.2d at 1033  (negotiations with accused can justify delay); *Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 136 (S.D.N.Y. 1993) (Plaintiff "should not be penalized for any delay arising out of settlement efforts"). The lawsuit was filed in the same year as the last of the letters sent by Lontex's counsel to Nike, 2018.  Taking this modest time to initiate suit against such a large company was especially prudent given that Nike's own outside counsel had indicated to Mr. Nathan that if he sued, Nike would ruin him. (*See* SOF ¶ 34; Nathan Tr. 678:4-679:13 ("                                                                                        

                                                ").)  For Nike to suggest that Lontex should have rushed to Court against such a giant despite a six-year analogous limitations period fails as a matter of law.

Thus, because the relevant time to demand letter was a matter of mere months, and even the time to suit was approximately three years (half of the analogous limitations period), no reasonable trier of fact could find the asserted "delay" was unreasonable or inexcusable.

2.    There is no material evidence of prejudice to Nike

Given the strong presumption of no prejudice, none of the evidence Nike points to demonstrates that a reasonable trier of fact could find for Nike on the essential element of prejudice. (SOF ¶¶ 44-45.) Prejudice may be either economic or evidentiary. *Heraeus Electro-Nite Co. v. Midwest Instrument Co.*, No. 06-355, 2007 U.S. Dist. LEXIS 51510, at *11-12 (E.D.

Pa. July 12, 2007). But because the presumption of no prejudice applies to Nike, the economic and evidentiary prejudice would normally attendant a delay of up to six years (i.e., within that expected to occur during the reasonable time given to file such claim) is not enough – Nike must show that it is somehow set apart from the normal pack of defendants in their shoes. *Tandy Corp.*, 769 F.2d at 366 ("rare" case of laches within limitations period); *Elvis Presley Enters. v. Elvisly Yours, Inc.*, 936 F.2d at 894 ("compelling reasons" must go beyond "ordinary requirement of showing unreasonable delay and prejudice to the defendant").

"Evidentiary prejudice occurs when, by reason of the delay, a defendant is unable to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories." *Heraeus Electro-Nite Co.*, 2007 U.S. Dist. LEXIS 51510, at *12 "Economic prejudice occurs when a defendant suffers the loss of monetary investments or incurs damages which would have been prevented if the [rights holder] brought suit earlier." *Id.* Monetary losses or damages are "not merely those attributable to a finding of liability for infringement," as otherwise economic prejudice would arise in every suit. *Aukerman*, 960 F.2d at 1033 (citing *Jenn-Air Corp. v. Penn Ventilator Co.*, 464 F.2d 48, 49-50 (3d Cir. 1972)). The courts must look for a *change* in the economic position of the alleged infringer during the period of delay. *Aukerman*, 960 F.2d at 1033*; Heraeus Electro-Nite Co.*, 2007 U.S. Dist. LEXIS 51510, at *11-12.

Nike cannot triumph as the rare defendant to rebut the strong presumption that laches is inapplicable. Here, there has been no delay, much less an unreasonable delay, and therefore no undue prejudice can arise from Lontex's filing of its claims within any applicable statute of limitations. Nike stands no different than any other usual defendant sued within the normal six-year period. And the law is not moved by Nike's assertion that the "potential damages pool"

possibly multiplied, or that it has been allegedly prejudiced in its "ability to gather evidence relevant to defending against Lontex's claims of continuous use during the relevant time periods." Ex. 3, Nike's Responses to Lontex's Second Set of Interrogatories ("Nike's Interrogatory Response") No. 29 at p. 5-6. Economic prejudice is more than simply damages attributable to a finding of liability, even more so where Nike was made aware of the fact of infringement promptly by Lontex's multiple 2016 demand letters, and in fact conducted most (███████████████████████████████) of the infringing sales in the same year Lontex discovered the infringement (2016). (SOF ¶¶ 36-37.)   In other words, most of the infringing sales in this case were already completed whether Lontex brought suit within the same year as discovering the infringement and notifying Nike, or instead sued instead in 2018 (as it did).  Nor has Nike – who promised the infringement would stop and internally mandated the infringing uses cease as a result of Lontex's diligent demand – provided any evidence that it "leaned in" to its infringement as a result of any alleged delay, increasing monetary exposures based on any alleged delays, increasing investments made during any alleged period, or any other extraordinary monetary issues. (SOF ¶¶ 19-20, 25, 35.) *See Maduka*, 409 F. Supp. 3d at 363  (no economic prejudice where "no evidence that [alleged infringer] made any financial investments in expanding his use of either the [claimed] marks").

Nike has also not provided any material evidence of evidentiary prejudice. "Of course, conclusory assertions of evidentiary prejudice cannot form the basis of a laches defense." *Symbol Techs., Inc. v. Proxim Inc.*, No. 01-801-SLR, 2004 U.S. Dist. LEXIS 14949, at *16 n.4 (D. Del. July 28, 2004) (citing *Meyers v. Asics Corp.*, 974 F.2d 1304, 1307 (Fed. Cir. 1992)).  On summary judgment, "[t]o establish evidentiary prejudice, the accused infringer must proffer more than conclusory statements as to missing evidence and faded memories." *Bristol Co. v.*

*Bosch Rexroth Inc.*, 758 F. Supp. 2d 1172, 1181 (D. Col. 2010) (granting summary judgment against laches defense) *citing Meyers*, 974 F.2d at 1308.

But that is all Nike can do. Nike was unable to point to anything it would have done differently had Lontex filed its timely claim even earlier. *See* Ex. 27, Transcript of the Deposition of Kimberly Mack Ireland ("Mack Ireland Tr.") 91:18-25. When asked to state any specific facts as to how any alleged delay caused prejudice to Nike, Nike raised conclusory, generic "passage of time" issues (speculations that affect any party to a case brought within the limitations period). Ex. 27, Mack Ireland Tr. 89:1-7. There was no specific information or evidence lost by Nike that resulted from Lontex's timely filing of its action. Ex. 27, Mack Ireland Tr. 106:2-8. Nike does not lack resources – the company did a contemporaneous investigation of Lontex in 2016 and could have continued such investigations. Ex. 27, Mack Ireland Tr. 115:14-21. And litigation was sufficiently certain that Nike had an obligation to preserve evidence it believed was relevant. *See Scalera v. Electrograph Sys.*, 262 F.R.D. 162, 171 (E.D.N.Y. 2009) ("the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.") (quotations and citations omitted). Nike's conclusory notion of evidentiary prejudice comes nowhere near sufficient to prevail on laches.

Finally, and fatal to Nike, any alleged prejudice would be of Nike's own making: "Any acts after receiving a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts." *Elvis Presley Enters. v. Capece*, 141 F.3d at 205 (discussing rule for laches). Any "prejudice" alleged after "forewarning of plaintiff's objections" is a "factor that prevents the defendant from suffering undue prejudice." *Champagne Louis Roederer*, 569 F.3d at 859. Nike knew Lontex had a claim and decided which measures to

take with eyes wide open.  The infringement continued because Nike stated its intention to stop the infringement, but nevertheless continued to infringe. (SOF ¶¶ 19-20.)  This was despite its own externally and internally proclaimed decision to *stop* the infringement in 2016.  It was despite Nike at no time raising any suggestion to Lontex that its registrations or continuous use was in question, despite having a (shoddy) investigation done to make that very assessment. (SOF ¶ 23.).  And it was despite Nike having ███████████████████████████ when it promised Lontex it would stop its use (July 19, 2016), far more than sufficient motivation for Nike to diligently pursue declaratory relief in its own action. (SOF ¶¶ 36-37.)  Because Nike quickly received the demand letter, and in any event had full motivation and ability to address any perceived prejudice with open notice of Lontex's claims since early 2016, it cannot now use its generic claims of prejudice as a shield against its liability.

### C.    Nike's Nonspecific Acquiescence Defense Cannot Survive Summary Judgment

Acquiescence requires affirmative conduct and here there is none. *Top Tobacco, L.P.*, 2017 U.S. Dist. LEXIS 12153, at *9.  The correspondence between Lontex and Nike throughout 2016 and 2018 show Lontex's commitment to enforcing its intellectual property rights. There are no affirmative words or actions by Lontex that could have implied to Nike that Lontex consented to Nike's use of the COOL COMPRESSION marks. As described above regarding laches, there is no prejudice by Nike in this case. As there is no prejudice, nor any affirmative conduct, there can be no prejudice based on Nike's reliance on any sort of affirmative act. Accordingly, Nike cannot maintain their fifteenth affirmative defense that Lontex's claims are barred by acquiescence.

### D.     No Estoppel

As discussed above, beyond laches and acquiescence, there is no separate defense of "estoppel" to trademark claims.  *Guardian Life Ins. Co. of America*, 943 F. Supp. at 517 n.5 (E.D. Pa. 1996).  Thus, any defense of estoppel fails with these two defenses.

### E.     This Case Lacks Any Facts Supporting Nike's Waiver Defense

Nike's assertion that Lontex has somehow waived its rights is simply unsupported. There is no evidence to support that Lontex has unequivocally relinquished its rights. The evidence shows Lontex's continued effort to enforce its rights, including in 2016, in 2018, and by the filing of this suit. The undisputed facts warrant rejection of this defense as a matter of law.  *See p.8 above*.

### F.     Nike's Affirmative Defenses Fail Equally As to the State Law Claims

Lontex has also alleged state law claims in its Fourth and Fifth Counts. D.I. 20.  Absent a showing otherwise, courts will assume congruence between state and federal trademark claims, resulting in them rising and falling together.  *See TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980) (collecting circuit decisions from First, Second, Fifth and Ninth Circuits). As Nike cannot maintain its Fourteenth and Fifteenth affirmative defenses with respect to Lontex's federal claims, the same is the case for Lontex's state law claims.

### V.
### CONCLUSION

Based on the foregoing, Lontex respectfully requests that the Court grant the Motion for Partial Summary Judgment of Nike's Fourteenth and Fifteenth Affirmative Defenses.  In the alternative, to the extent not granted in full, summary adjudication should be entered to narrow any remaining issues for trial.

- 16 -

Dated:      November 4, 2020        TROUTMAN PEPPER HAMILTON
SANDERS LLP

By: /s/ Ben L. Wagner
    Ben L. Wagner (CA SBN 243594)
    ben.wagner@troutman.com
    *Admitted Pro Hac Vice*
    11682 El Camino Real, Suite 400
    San Diego, CA  92130-2092
    Telephone:  858-509-6000
    Facsimile:   858 509 6040

    Michael A. Schwartz (PA 60234)
    TROUTMAN PEPPER HAMILTON
    SANDERS LLP
    3000 Two Logan Square
    Eighteenth & Arch Streets
    Philadelphia, PA 19103-2799

    *Attorneys for Plaintiff*
    *LONTEX CORPORATION*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2020, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Ben L. Wagner*
Ben L. Wagner

- 18 -

110230330v12