**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LONTEX CORPORATION,**<br><br>      **v.**<br><br>**NIKE, INC.** | **CIVIL ACTION**<br><br>**NO.  18-5623** |

<u>**MEMORANDUM RE MOTION FOR SANCTIONS**</u>

**Baylson, J.**                 **November 18, 2020**

**I.  Introduction**

  In this highly contentious case involving alleged trademark violations, Defendant Nike, Inc. ("Nike") has moved for sanctions against counsel for Plaintiff Lontex Corporation ("Lontex"). Nike seeks sanctions based on counsel for Lontex sending letters and trial subpoenas to professional sports team trainers who are not parties to this case.  For the reasons stated below, Nike's Motion will be denied.

**II.  Factual Background**

  The complained of conduct in this Motion for Sanctions is Lontex's seeking out witness testimony from professional sports team trainers.  In May 2020, Lontex obtained five declarations from former MLB and NFL team trainers regarding their knowledge of Lontex's use of the trademarks at issue.  (ECF 169, Lontex Opp'n 4.)  Lontex spoke to each of these individuals about their relevant knowledge and then sent them draft declarations which the declarants edited and signed.  (<u>Id.</u>)  These individuals were not provided with subpoenas.  (<u>Id.</u>)  On June 30, 2020, Lontex and Nike made a voluntary exchange of all declarations and Lontex provided these declarations to Nike. (<u>Id.</u> at 5.)

In June 2020, Lontex sent letters to additional professional sports team trainers seeking their testimony. (ECF 168, Ex. 6, "June 25 Ltrs.")  The salutation of each letter identified the team trainer, but the letters were sent "c/o" team counsel. (Id.)  Each letter was also sent via e-mail to team counsel. (Id.)  The letters explained that this "case [was] scheduled to be in the trial pool before Judge Michael Baylson starting on November 1, 2020" and that a trial subpoena was attached so that the trainers can plan their schedule in advance. (Id.)  The letters asked the trainers to accept service but noted that was not required and stated "[i]f you are unwilling to accept service of this subpoena, we will have the subpoena served on you in accordance with Fed. R. Civ. P. 45(b)(1)." (Id.)

The letters went on to explain that a draft declaration was attached and stated that "[i]f you are willing to sign this declaration (with whatever modifications you would like to make the declaration complete and accurate), there is a chance that you will not be needed as a trial witness." (Id.)  Lastly, the letters noted that "as [the trainers] live and work more than 100 miles from Philadelphia and outside of the Commonwealth of Pennsylvania, if [they] are not willing to or do not want to travel to Philadelphia for trial, [Lontex] can arrange to take a video recorded trial deposition (likely by Zoom) at a location within 100 miles of where [they] live/work." (Id.)

In response to these letters, as of the filing of Lontex's Response, Lontex received three signed declarations. (Lontex Opp'n 10.)  One included most content from the draft declaration, one removed a large section of the draft declaration, and one was mostly crossed-out. (Id.)

### a.  Discovery Deadline

As Nike argues these declarations were gathered after the discovery deadline, some review of the discovery timeline is necessary.  This Court held a hearing on March 13, 2020 to address several outstanding discovery issues.  At this hearing, the Court addressed the issue of customer

interviews and stated "we're still in discovery. I'm not going to prohibit [Nike] from adding witnesses. I'm not going to prohibit either one of you from adding witnesses." (ECF 157, Hr'g Tr. 14:15-14:17.) Counsel for Nike sought to clarify, asking "we can talk to customers and are not restricted by this protocol about having to do it with [counsel for Lontex] involved and all that?" to which the Court responded in the affirmative and confirmed that Lontex was also not restricted. (Id. at 15:5-15:10.)

However, Nike contends that the Court's instructions at this hearing were intended only to allow the parties to complete discovery that was currently outstanding. At the end of the hearing, the Court asked the parties to discuss the extension of the discovery deadlines. Counsel for Nike stated "but we do want it to be clear that there isn't going to be new, you know, discovery, new document requests. This is an extension we have agreed to." (Id. at 70:14-70:17.) Counsel for Lontex agreed that "[o]utstanding discovery is the only discovery." (Id. at 70:19-70:20.) The Court issued a scheduling order indicating that fact discovery would end on June 19, 2020. (ECF 149.) On May 19, the discovery deadline was extended to August 3 (ECF 164), and on July 17 the deadline was extended again to September 15, 2020 (ECF 167).

### b.  Procedural History

Nike filed its Motion for Sanctions on July 17, 2020. (ECF 168, Nike Mot.) Lontex filed a Response (ECF 169, Lontex Opp'n), and Nike filed a Reply (ECF 170, Nike Reply). This Court held a phone conference to discuss this and all other open motions on September 29, 2020, and the following day ordered the parties to provide a brief letter to the Court "with citations of any reported case which either granted or denied sanctions for similar behavior." (ECF 175.) The Court also noted that it found the explanation provided by Lontex's counsel to be credible. (Id.)

The parties submitted letters to the Court on October 14, 2020.  (ECF 184, "Nike Letter" and ECF 185, "Lontex Letter.")

III.    **Nike's Letter**

Nike argues that counsel for Lontex has violated Rules 45, 30, and 26.  This Court will consider its arguments regarding each of these Rules in turn.

        a.  **Fed. R. Civ. P. 45**

Fed. R. Civ. P. 45 (c)(1)(A) provides that "[a] subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."

Fed. R. Civ. P. 45 (d)(1) states:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Nike argues that Lontex violated Fed. R. Civ. P. 45 (c)-(d) by issuing subpoenas to individuals outside the authority of this Court and improperly pressured the recipients of the June 25 letters by issuing

> trial subpoenas primarily to individuals, rather than team counsel, to create the impression that these non-parties were required to appear before this Court (or for a video-taped trial deposition), during the COVID crisis, in the middle of the upcoming NFL and MLB seasons absent signing a declaration that Plaintiff had drafted for them, without having conducted an interview to obtain personal knowledge of the witness.

4

(Nike Letter 1-2.)  Nike points the Court to four cases regarding violations of Rule 45 which it argues support the imposition of sanctions in this case.  However, each of these cases is distinguishable.

In <u>Coleman-Hill v. Governor Mifflin Sch. Dist.</u>, 271 F.R.D. 549, 551 (E.D. Pa. 2010) (Sitarski, Mag. J.), the Court found a "subpoena served was improper and/or deficient, in multiple respects."  First, because the subpoena was directed to an employee of the defendant, seeking production of the defendant's documents.  <u>Id.</u>  Second, because the subpoena sought documents beyond what were originally requested from the defendant.  <u>Id.</u>  Lastly, because the subpoena did not specify a date and time for production of the requested documents.  <u>Id.</u>  The Court also relied on the fact that the attorney in question was engaging in "self-help" because she did not believe the Court would be able to help if she had filed a motion to compel.  <u>Id.</u> at 554.  The plaintiff's attorney also admitted that "she routinely fills out subpoenas incompletely/inappropriately."  <u>Id.</u> at 555.  Finding that the plaintiff's attorney engaged in bad faith, the Court granted the defendant's request for attorney's fees, required plaintiff's attorney to file an affidavit, and admonished her. <u>Id.</u> at 555-56.  The only documents which were precluded were those that were turned over even though they were privileged.  <u>Id.</u>

In <u>Mid–Atlantic Constructors Inc. v. Stone & Webster Constr., Inc.</u>, 231 F.R.D. 465, 466 (E.D. Pa. 2005) (Robreno, J.), the plaintiff filed a motion to sanction defendant for serving a subpoena for production of documents on a non-party without notifying plaintiff.  At the time the subpoena was sent, discovery had ended and defendant's motion for leave to serve the subpoena was pending before the District Court.  <u>Id.</u>  Defendant argued that it has sent a "proposed" subpoena, in order to allow the third-party to begin preparing the documents in the event that the Court granted its motion.  <u>Id.</u>  In finding this conduct improper, the Court noted that "there is no

authority under Rule 45(a) for serving a non-party with a 'proposed' subpoena" and that "Rule 45(b) governs service of subpoenas and clearly requires prior notice to opposing counsel." Id. at 467.

In Mick Haig Prods., e.K. v. Does, No. 10-1900, 2011 WL 5104095, at *1 (N.D. Tex. Sept. 9, 2011), the District Court found that the plaintiff's attorney issued subpoenas in violation of a Court order. The plaintiff had "asked the Court for leave to take discovery prior to the customary Rule 26 conference and to authorize the issuance of Rule 45 subpoenas" to several internet service providers (ISPs) which had information about the identity of the defendants. Id. at *2. The Court declined to rule on the plaintiff's motion and instead ordered the ISPs to preserve the information sought. Id. The plaintiff later dismissed the case with prejudice, and it was discovered that he had issued subpoenas to the ISPs even though the Court had yet to rule on the Discovery Motion. Id.

In In re Air Crash at Charlotte, N.C., 982 F.Supp. 1092, 1095 (D.S.C. 1997) the District Court fined an attorney $1,000 for providing transcripts to a witness in violation of a court order and for bringing a witness before the court based on a subpoena that was sent by facsimile, not served; sent without a mileage or witness fee check; and sought to compel attendance of a witness who was beyond the subpoena power of the court. Id. at 1094-94. In finding that sanctions were warranted, the Court stated that "the subpoena was represented to the witness, expressly or by inference, to be valid" and that "it was given to the witness with the intent that he present the subpoena to his employer as a valid subpoena." Id. at 1101.

Counsel for Lontex's conduct is distinguishable from the conduct in all of these cases. Some of these cases relate to document subpoenas and notice to the opposing party, see Coleman-Hill and Mid-Atlantic, and another concerns issuing a subpoena in direct contravention of a Court order or while a motion was pending to address the exact issue of the subpoena, see Mick Haig

6

and <u>Mid-Atlantic</u>.  In this case, the Motion for Sanctions does not concern document requests and there was no open motion concerning the conduct at issue.  While there is some dispute about what discovery was still pending after the March 13 conference, it is clear that fact discovery was still open at the time and that Lontex did not violate any court orders.  Thus the conduct in the cases cited by Nike is not comparable.

This case is also distinct from <u>In re Air Crash</u>, where the Court cited to several deficiencies with the subpoena at issue not present here.  Nike contends that the subpoenas were issued "primarily to individuals, rather than team counsel, to create the impression that these non-parties were required to appear before this Court."  (Nike Letter 1.)  This is misleading.  The letters were sent via email to team counsel and hard copies mailed "care of" team counsel.  They were not presented directly to team trainers in such a manner that would have been misleading.

### b. Fed. R. Civ. P. 30

Nike argues that Lontex violated Fed. R. Civ. P. 30 by seeking to take depositions in excess of the number provided for in Fed. R. Civ. P. 30(a)(2)(A)(i), failing to provide notice to Nike as required by Fed. R. Civ. P. 30(b), and failing to seek leave of Court.  Nike argues that Lontex has "denie[d] NIKE and this Court the ability to engage in case management necessary for an orderly trial" and that "Courts routinely deny requests to conduct trial depositions after the close of fact discovery as untimely and improper" citing <u>Integra Lifesciences I, Ltd. v. Merck KGaA</u>, 190 F.R.D. 556 (S.D. Cal. 1999) for support.  (Nike Letter 2.)

In <u>Integra</u>, the defendants sought to take a witness deposition after the deadline for discovery had passed because that witness was no longer available to appear at trial.  190 F.R.D. at 557.  At the time of the defendants' motion for leave to take the deposition, dispositive motions

had been heard and determined, a pretrial conference had been held and the pretrial order defining the scope of this case for trial purposes has been filed.  Id.

Integra concerned a motion to take a deposition after discovery had closed.  As it did not address sanctions, it is not applicable and does not support the imposition of sanctions here.

### c.  Fed. R. Civ. P. 26 and 37

Fed. R. Civ. P. 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Nike argues that Lontex failed to disclose the existence of these additional witnesses despite the fact that they are not "new," meaning that Lontex has known about their existence for some time, and that their testimony should be excluded as a result.  (Nike Letter 2.)  Nike points the Court to the following cases for support.

In Muldrow v. Brooks, 34 Fed. Appx. 854, 855 (3d Cir. 2002), the Third Circuit affirmed the District Court's grant of a motion in limine excluding testimony of a witness who was not identified as a potential witness before the close of discovery.  Defendants argued they were "harmed by the failure to disclose [the witness] because his alleged knowledge of an incident was not revealed until after defendants had filed for summary judgment, because defendants did not have the opportunity prior to trial to depose [the witness] or the other [individuals] who he claimed were with him, and because defendants would not have had an opportunity to locate rebuttal witnesses."  Id.

Perez v. Great Wolf Lodge of the Poconos LLC, No. 12-1322, 2017 WL 34697, at *6 (M.D. Pa. Jan. 3, 2017) concerns delayed production of document discovery which was specifically requested via appropriate mechanisms on multiple occasions.  The documents in question were in

the possession of the defendants' investigator and what the Court found "most troubling" was that that "counsel for the Defendants did not even inquire as to whether his investigator . . . possessed documents responsive to Plaintiffs' Requests." Id. at *12. The Court found that these actions were not taken in bad faith, but did "amount[] to more than a mere negligent failure to disclose" and that "Defendants' explanation for their failure to timely supplement . . . [was] not credible." Id. at *8, 9. The Court imposed monetary sanctions and narrowly limited the testimony of the investigator to avoid prejudice to the plaintiffs. Id.

In Shatsky v. Syrian Arab Republic, 312 F.R.D. 219, 221 (D.D.C. 2015) the District Court began its opinion by noting that "[s]ince its inception, this case has been a study in obfuscation and recalcitrance" and specifically "Plaintiffs' conduct . . . has been a major source of this discord." The Court went on to explain the "plaintiffs' consistent failure to honor the mainstay of federal practice" and their "casual, if at times flagrant, disregard for the rules of federal procedure, to say nothing of their apparent indifference to the dictates of common civility." Id. Addressing the merits of the sanctions motion, the Court found that Plaintiffs "produce[d] the bulk of their discovery after the deadline ha[d] lapsed" and that "many of the disputed documents were available well before the . . . discovery deadline and were produced in related actions" years earlier. Id. at 225. The Court found the conduct to be highly prejudicial and that there was a significant need for deterrence of future transgressions. Id. at 223. The Court excluded all documents produced after the discovery deadline. Id. at 229.

The cases which Nike relies on either concern more serious and flagrant violations of the rules, see Perez and Shatsky, in which the Court found the explanations provided by counsel "not credible" or the behavior of the parties to reflect "apparent indifference to the dictates of common civility." Those circumstances are not present here where the Court has already stated that it finds

9

Lontex's explanation to be credible.  Muldrow is also not relevant here as it concerns information that was revealed at a much later stage in the proceedings.  Comparatively there is little to no prejudice against Nike which had a list of all the individuals to whom the June 25 letters were sent, well before the deadline for dispositive motions and could seek to take their depositions as necessary.

## IV.    Lontex's Letter

Counsel for Lontex argues that it was acting in good faith in seeking out additional evidence from team trainers.  It points the Court to three cases to support the proposition that sanctions are inappropriate here.  First, it cites Quinn v. Consol. Freightways Corp., 283 F.3d 572 (3d Cir. 2002) for the proposition that "even if Lontex's subpoenas (which led to 3 witness declarations) were improper, which they were not" the exclusion of evidence is not a proper sanction here.  (Lontex Letter 1-2.)  In Quinn, the Third Circuit found that exclusion of evidence in an employment action regarding sexual harassment was an inappropriate sanction.  283 F.3d at 574.  The plaintiff sought to amend her testimony on the eve of trial to include an additional instance of alleged sexual harassment.  Id. at 576.  The defendant sought to exclude this testimony on the basis that it had not been previously raised during discovery.  Id.  The plaintiff argued that defendant was made aware of this testimony when another witness testified regarding an alleged instance of harassment.  Id.  The District Court excluded the testimony.

The Third Circuit relied on the factors stated in Meyers v. Pennypack Woods Home Ownership Ass'n, regarding when exclusion of evidence is permissible: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the

court; and (4) bad faith or wilfulness in failing to comply with the district court's order." 559 F.2d 894, 904-05 (3d Cir. 1977). The Third Circuit also relied, in part, on the fact that "Plaintiffs face proof problems in employment discrimination cases." Quinn, 283 F.3d at 578. Ultimately, the Court found that the "exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." Id. at 576. (internal quotations omitted). The Third Circuit reversed and remanded. Id. at 579.

Next, Lontex points to Harker v. Maryland, 800 F.2d 437 (4th Cir. 1986), to resolve Nike's "concerns about prejudice from witness suggestibility or taint." (Lontex Letter 2.) In Harker, the Fourth Circuit considered a case in which a defendant was convicted based on testimony from a shooting victim who had been hypnotized. Id. at 438. The Court recognized the dangers of "suggestibility, confabulation, and hardening of memory, and the attendant danger of misidentification" but held that the appropriate solution was "apprising the jury of the uses and dangers of hypnosis, in permitting full exploration of the hypnotic event, and in cross-examining the subject on the opportunity for pre-hypnotic observation." Id. at 440, 442-43.

Lastly, Lontex points to U.S. Info. Sys. v. IBEW, Local Union, No. 8-1125, 2011 WL 5117145 (D.N.J. Oct. 25, 2011) for the proposition that conduct must be more egregious and done in bad faith in order to warrant the more serious sanctions, like fees, sought by Nike. (Lontex Letter 3.) In U.S. Info. Sys., the Court noted that awarding fees "will usually require a finding of bad faith." 2011 WL 5117145, at *1. Further, that "a court should invoke its inherent power sparingly and under limited circumstances where misconduct is clear." Id. at *2. The Court noted "that certain actions by both Defendant and Defendant's counsel were less than exemplary at

times" and that "counsel may have neglected to attain standards of professionalism" but still held that this did "not suffice to warrant the imposition of fees." Id. at *4.

## V.     Conclusion

The Court will deny Nike's Motion for Sanctions in its entirety.  There are two overriding factors that the Court finds warrant this conclusion, in addition to the above distinctions with the cases cited by Nike.  The first is that Nike appears to assume that any investigation by one party or another is "discovery" which is confined by a court's deadlines.  However, investigation by one party in seeking out witnesses without using formal discovery procedures, is not necessarily bound by scheduling deadlines.  This Court did not make any restrictions on a party's use of Rule 45 third-party subpoenas to help ensure attendance of witnesses that Lontex located, by its own investigation, at trial.  Nike does not cite any case supporting the proposition that Lontex's conduct in seeking out fact witnesses has violated any discovery deadlines.  Indeed, this Court finds that any party in litigation is entitled to seek out witness by its own investigation strategies and techniques, as long as they are lawful.  Lontex interviewed various individuals with potential knowledge about the facts of this case, and did not violate any court orders or procedural rules in doing so.  There is nothing to stop Nike from engaging in similar behavior.

The second consideration is the COVID-19 pandemic.  Courts throughout the United States have recognized the difficulties of obtaining discovery and completing investigations in a timely manner, given the difficulties of travel and communications and workplace access.

The Motion for Sanctions is denied and an appropriate Order follows.


O:\CIVIL 18\18-5623 Lontex Corp v Nike\18cv5623 Memorandum re Motion for Sanctions.docx