IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>NIKE, INC.,<br><br>　　　　　　　　Defendant. | Civil Action No.: 18-cv-5623<br><br>(Hon. Michael M. Baylson) |

**DEFENDANT NIKE, INC.'S IDENTIFICATION OF FIVE EXHIBITS
IN FURTHER SUPPORT OF ITS OPPOSITION TO
LONTEX CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF FIVE MOST SIGNIFICANT EXHIBITS WHICH
REQUIRE DENIAL OF LONTEX'S MOTION FOR SUMMARY JUDGMENT[1]**

|  | REFERENCE | CONCISE SUMMARY |
|---|---|---|
| 1. | ECF 193 at Ex. 185 | This printout shows a page from Lontex's www.sweatitout.com website as of May 30, 2013. Lontex used the phrase "True Compression" (not "Cool Compression") to promote the stretch of the fabric used in its SWEAT IT OUT compression garments. The record is replete with similar examples of Lontex using "True Compression" in written promotional materials (communications with customers, brochures, website, social media, blog posts, press releases, etc.) before 2016. Lontex relies on a limited customer group to corroborate Mr. Nathan's claims of continuous use of the COOL COMPRESSION mark since 2007, and most have not been cross-examined because Lontex disclosed them at or after the close of fact discovery. Because Lontex's documents show that it consistently used the term "True Compression" with customers to describe how the fabric stretches before it switched to "Cool Compression" in 2016, it is likely that these customers do not remember when Lontex used "True Compression" or "Cool Compression." The jury must decide what to believe and how to weigh the evidence and credibility of Lontex's witnesses. |
| 2. | ECF 193 at Ex. 207 | This printout shows the text of various tweets that Lontex posted to Twitter on its account (@sweatitout). On the day Lontex launched its Twitter account in 2011, it posted: "True Compression by Sweat It Out - you will feel the difference the second you put it on! sweatitout.com." Lontex did not promote the COOL COMPRESSION marks the day it launched its Twitter account. In fact, prior to discovering NIKE's alleged use at the end of 2015, Lontex never promoted COOL COMPRESSION on its Twitter feed or other social media or anywhere else. This further demonstrates that Lontex's customers—including the limited customer group Lontex relies on here to support its claims of continuous use—were conditioned to see "True Compression," and not "Cool Compression" in Lontex's promotional materials. Lontex claims otherwise and identifies several tweets in 2014 that included COOL COMPRESSION (*see* ECF 206 ¶ 300), but every one of these tweets was promoting Lontex's sale of the COOL COMPRESSION trademark registrations on the US Trademark Exchange, not promoting Lontex's products. (*See* ECF 220 at Ex. 4.) The jury must decide what to believe and how to weigh the evidence and credibility of Lontex's witnesses. |
| 3. | ECF 220-5 | Lontex identified Christopher Williams as a loyal customer that can corroborate Mr. Nathan's claims of continuous use of the COOL COMPRESSION mark since 2007. For example, Lontex relies on Mr. Williams' testimony that Mr. Nathan always used the COOL COMPRESSION mark in dialogue with him since 2007. Unlike most of the loyal customers that Lontex relies on to support its claims (*see e.g.*, ECF at ¶ 296), Mr. Williams was cross-examined about his knowledge of Lontex's compression garments. Mr. Williams admitted that Mr. Nathan did not "regularly use the words Cool Compression" with him and admitted that he could not remember a single detail as to when and where he ever heard Mr. Nathan use the words "Cool Compression." (Tr. 166:12-167:11.) Lontex's loyal customers, |

---

[1] Per the Court's Order (ECF 207), NIKE identifies the five most significant exhibits already produced which support its position that genuine disputes of material fact still exist and require Lontex's motion to be denied. These genuine disputes of fact are ***not*** material to ***NIKE's*** motion for summary judgment on likelihood of confusion and fair use. Rather, these disputes of fact are material to Lontex's delay in filing suit and the resulting prejudice to NIKE, including economic/expectations prejudice (*e.g.*, Lontex lying in wait while NIKE continued to sell its NIKE Pro products) and evidentiary prejudice (*e.g.*, Lontex's delay preventing NIKE from developing evidence to support its defenses and counterclaims for abandonment of the asserted trademarks and fraud on the U.S. Patent and Trademark Office).

| | | |
|---|---|---|
| | | like Mr. Williams, were not able to recall any details about Lontex's alleged use of COOL COMPRESSION, and the jury must decide whether these individuals are credible and how to weigh their testimony in support of Mr. Nathan's incredible claims. |
| 4. | ECF 201 at Ex. 14 | Sometime *after* December 2015, Lontex began sewing a small tag (or "Content Label") into the inside of its garments that included the words "Cool Compression." In the months just before and just after the initiation of this lawsuit, Lontex sold and/or gave away compression garments using these "Cool Compression" Content Labels to a small number of hand-selected customers (and later disclosed these same hand-selected customers on its FED. R. CIV. P. 26(a)(1) Amended Initial Disclosures). Lontex then vigorously objected to producing any customer information to NIKE from the pre 2015 time period claiming that NIKE should not be allowed to contact Lontex's customers but rather should rely only on the testimony of the witnesses that Lontex would identify. When NIKE prevailed on its motion to compel and subpoenaed customers *not* hand selected by Lontex who had made purchases of Lontex's products prior to December 2015, ***every single one of the customers who responded to NIKE's subpoenas*** provided images of compression garments with a Content Label that said "Sweat It Out" – not "Cool Compression." (*See e.g.*, ECF 201 at Exs. 12-16.) Again, the jury must decide whether Lontex's witnesses' testimony on use of these Content Labels is credible and how to weigh this testimony in light of this evidence. |
| 5. | ECF 188 at Ex. 14 | This is NIKE's May 12, 2016 letter responding to Lontex's initial April 8, 2016 letter. Lontex mischaracterizes NIKE's May 12, 2016 letter and its July 19, 2016 letter (ECF 188 at Ex. 16) in its motion, contending that NIKE admitted to using "COOL COMPRESSION" and promised to cease its "infringement." NIKE did neither. In fact, NIKE's letters explained the descriptive nature of NIKE's usage of the common words "cool" and "compression," refuted Lontex's claims of infringement, and declined Lontex's offer to license the mark to NIKE. NIKE also informed Lontex that, notwithstanding NIKE's disagreement with Lontex's claims, NIKE had already begun implementing changes to the way it displayed the wording used to describe features of its products on product pages within the nike.com website. NIKE did not promise Lontex that it would cease using "cool compression" for legal reasons because NIKE had never used "cool compression" as a composite phrase for anything. NIKE also did not promise Lontex that it would align the timing of its business objectives to simplify consumer-facing product descriptions because that business objective had nothing to do with Lontex or its letter. In fact, NIKE even explained to Lontex that NIKE was "in the process of changing the format of all descriptors on its website and that should be completed in the coming months," but that the "process takes time." While NIKE's business objective was in process, "as a gesture of good faith," NIKE "attempted to offset 'cool' and 'compression' even further with the use of a hyphen." Lontex knew that NIKE rejected its claims and was going to continue selling these products. Lontex nevertheless sat back and waited while NIKE continued to sell and amass additional revenues through the end of 2018—all of which it now claims are "infringing" sales subject to its profits disgorgement claim. The jury must decide whether Lontex's delay was reasonable and prejudicial to NIKE. |

2

3

December 21, 2020										Respectfully submitted,

By: _/s/ Gina L. Durham_

DLA PIPER LLP (US)

Gina L. Durham (admitted *pro hac vice*)
555 Mission Street, Suite 2400
San Francisco, CA 94105

Frank W. Ryan (admitted *pro hac vice*)
Andrew J. Peck (admitted *pro hac vice*)
Marc E. Miller (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 100201

Ben C. Fabens-Lassen
1650 Market Street, Suite 5000
Philadelphia, PA  19103

*Attorneys for Defendant NIKE, Inc.*