IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NIKE, INC.,<br><br>　　　　　Defendant. | Civil Action No.  2:18-cv-05623-MMB |

**PLAINTIFF LONTEX CORPORATION'S STATEMENT IDENTIFYING FIVE MOST SIGNIFICANT EXHIBITS AND CASES**

112120145v1

Plaintiff Lontex Corporation d/b/a Sweat It Out provides the following five most significant evidentiary citations and cases which support its position that genuine disputes of material fact readily require denial of Nike's Motion for Summary Judgment:

**I.**
**FIVE EVIDENTIARY CITATIONS MANDATING DICTATING DENIAL OF SUMMARY JUDGMENT**

*Representative sample catalog and retail usage for Nike's Accused Products (Wagner Declaration Exs. 52, 55-58, 86 [Retailers], 48, 84 [Nike])*:  The samples show the "single most important" *Lapp* factor 1 (based on actual marketplace usage) clearly favors Sweat It Out.  Nike and its retailers consistently branded the Accused Products under the Nike Pro Cool Compression product name and slight variations.  The examples show the infringement was not isolated and that buyers, teams and consumers were consistently presented with prominent product names containing "Cool Compression" (with or without Nike's house marks).  Nike's dispute of the extent and content of marketplace usage is but another genuine fact for trial.  *See, e.g.* Facts 311, 312, 317, 331, 353-354.

*Deposition Testimony of Efraim Nathan (Wagner Declaration Exhibit 39 and Nike's cited Exhibits)*:  Demonstrates fact issues as to *Lapp* Factors 1-4, 6, 7-9, 10.  Among other facts, Mr. Nathan testified to the discovery of a unique fabric blend in 1989, the decision to brand it as COOL COMPRESSION stretch technology starting in 2007, the extensive and careful ways the brand was promoted, the bases for customer confusion, the direct harm from Nike's usage, and how Sweat It Out attempted to mitigate upon discovering the infringement by expanding where the COOL COMPRESSION mark was used.  Nike disputes many of these facts with its own citations to evidence and testimony, creating extensive fact issues that go to the core of the case and are for the jury to resolve.  *See, e.g.* Facts 1, 8, 23, 26, 32, 34, 42, 63, 84, 91, 95-98, 109,

185, 186, 209, 275, 276, 278-279, 281-284, 286-287, 291-292, 297-299, 302, 304, 306, 321, 326, 337, 339-343, 346.

*Mike Kozak declaration (ECF 203-54)*: This representative declaration is one of nine declarations by team trainers submitted on summary judgment, and shows genuine issues of fact on *Lapp* factors 2, 3, 4, 6, 7-9, 10 and Nike's Fair Use defense. The declarations are extremely specific testimony that shows Sweat It Out's COOL COMPRESSION branding usage and strength (including its longstanding "read the label" campaign), and corroborate Mr. Nathan's testimony on extensive use of the COOL COMPRESSION mark. They show actual confusion by actual customers from seeing Nike's team sports catalogs and online retail use, stimuli that millions of relevant consumers saw. On Nike's Fair Use defense, they evidence that Nike's use was perceived as actual trademark use and not merely descriptive. *See, e.g.* Facts 3, 62, 84, 91, 94-95, 132, 218, 285, 289, 294, 295, 305, 309, 327, 349-350.

*Sweat It Out Expert Reports (ECF Nos. 190-06, 07, 09, 10, 12, Exhibits 4-5, 7-8, 10)*: While going to many of the *Lapp* factors, the reports go strongly to *Lapp* factors 4 & 6 (actual confusion), 5 (intent), 7-9 (overlap), and modified *Lapp* factor 2 for reverse confusion (comparative strength), and all elements of Nike's Fair Use defense. For example, Mr. Parkhurst calculated that 80 million consumers saw NIKE Cool Compression product names online, (¶¶9, 87-102), with Mr. Drews' Supplemental Report (pp. 15-19) showing examples of even current online usage, the parties disputing these facts. Mr. Drew's Supplements 1 and 2 show Nike and its retailers' continued substantial sales of the Accused Products that took place after notice, after promising to stop, and after Nike's internal statement to stop. Dr. Drews' Schedule 10 shows that as Nike's sales of Accused Products increased (compression shirts, shorts, tights), Sweat It Out's sales of Sweat It Out garments with COOL COMPRESSION technology were

overwhelmed and dropped dramatically. His Schedule 9 shows that NFL teams that had overlapping sales between Nike's and Sweat It Out's relevant products dropped an average of 34% during the infringement period, while those without overlap grew 12%. And his Supplements McDonald's report explains why Nike's surveys are entitled to little or no weight. Nike disputes how these experts came to these conclusions and the competing inferences that may be drawn from conclusions. These are just some of many genuine issues for trial presented by the experts. *See, e.g.* Facts 55, 83, 140, 162, 219-223, 272-273, 308, 314-316, 331, 334, 339-340, 345, 352, 355.

<u>2016 Agreement to Cease Use of "Cool Compression" in Product Name (Wagner Exs. 17 & 19)</u>: In 2016, Nike agreed to stop using "Cool Compression" and internally instructed that it be removed from all product names. But use continued for two years after notice, creating genuine issues for the jury on *Lapp* factor 5 for forward and reverse confusion, and the good faith requirement of Nike's Fair Use defense.

## II.
## FIVE CASES DICTATING DENIAL OF SUMMARY JUDGMENT

### A.     Denial of Nike's Motion Regarding Likelihood of Confusion

<u>Sabinsa Corp. v. Creative Compounds, LLC</u>, 609 F.3d 175, 189-190 (3d Cir. 2010): Despite 6 years of infringement, and 3.5 years co-existence during substantial sales periods, lack of *any* evidence of actual confusion (making Lapp factor 6 favor defendants) and disputed fact issues remaining as to intent (making Lapp factor 5 unresolvable as a matter of law), <u>*plaintiff*</u> was entitled to judgment as a matter of law where other factors favor infringement between plaintiff's "ForsLean" and "Forsthin." Notably, Nike essentially concedes by silence many of these same factors by failing to address them in its Reply. And the Third Circuit here rejected Nike's suggestion that lack of actual confusion evidence or a finding of intent was entitled to any

particular strength, or that these factors meant there was no likelihood of confusion (which is the relevant test for trademark infringement).

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 215, 234 (2000) *on remand at* 167 F. Supp. 2d 770, 782 (E.D. Penn. 2001): Where defendant Victoria's Secret used its house mark with accused product mark, findings on direct confusion between THE MIRACLE BRA and MIRACLE SUIT were not clearly erroneous when they were resolved after bench trial, but a new bench trial was required to determine reverse confusion, upon remand from which likelihood of confusion was found for plaintiff at this second bench trial. Victoria's Secret relied upon survey evidence and attempted to discount its informal promotions that featured the mark, among many other rejected arguments proffered by Nike. But both theories still could only be resolved at a bench trial, reverse confusion requiring a second bench trial which was resolved in plaintiff's favor.

*Country Floors, Inc. v. P'ship of Gepner and Ford*, 930 F.2d 1056 (3d Cir. 1991): Summary judgment is the "exception" on the issue of likelihood of confusion. The Third Circuit found there were genuine issues of fact as to similarity of the mark on COUNTRY FLOORS and COUNTRY TILES, which it held alone rendered summary judgment for defendant erroneous. The presence of competing evidence on other *Lapp* factors simply adds to this conclusion, further mandating denial of summary judgment.

    **B.**    **Denial of Nike's Motion Regarding Its Fair Use Defense**

*Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 935 (9th Cir. 2017): Non-trademark, descriptive and good faith use are all three required for fair use, which is yet another example of the "inherently factual" nature of trademark disputes for which "summary judgment is generally disfavored." Reversing summary judgment for defendant where its inconsistent use of "All-in-One" was made, including promotional materials using "the 2011 Norwood All in ONE

catalogue" and "a Norwood ALL in ONE Basket." Use of the house mark alongside "All In One" put "no obvious distinction" between the two and thus it "could reasonably be understood to indicate source" (e.g. trademark use). Additionally, by not only using "all-in-one" in this way, rather than at the top of a list of products, defendant may have "stripped it of its possible descriptive meaning" and "descriptive purity," creating a genuine fact on descriptiveness as well. And defendant's usage of two different trademarks without permission in a similar time frame was sufficient to create a genuine issue on good faith, with the Ninth Circuit noting that knowledge of plaintiff's mark but disregarding its rights could be enough to show an absence of good faith. Thus, for reasons incredibly similar to here, fact issues on each of these essential elements mandated denial of summary judgment. The Court noted that the likelihood of confusion factors were also relevant to determining fair use, giving the issues are intertwined, rendering yet another reason here for denying Nike's motion as to its fair use defense.

*Byrnes & Keifer Co. v. Flavoripe Co.*, 1 U.S.P.Q.2d (BNA) 1124, 1125, 1128 (W.D. Penn. 1986): Rejecting as "without merit" the fair use defense where defendant's NIPPY BLEND mark was held to infringe plaintiff's BLENDD mark for fruit-flavored beverages. While defendant argued that BLEND "merely describes defendant's products as a mixture of fruit juices and is not actually a part of defendant's product name," the defense failed. Use of the term "blend" with capitalization showed it was "indeed a part of the product name and not merely used in its descriptive sense."

Dated: December 21, 2020

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ *Ben L. Wagner*
Ben L. Wagner (CA SBN 243594)
ben.wagner@troutman.com
*Admitted Pro Hac Vice*
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092
Telephone: 858-509-6000
Facsimile: 858 509 6040

Michael A. Schwartz (PA 60234)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799

*Attorneys for Plaintiff*
*LONTEX CORPORATION*

112120145v1

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2020, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Ben L. Wagner*
Ben L. Wagner

112120145v1