**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LONTEX CORPORATION | Civil Action No.  2:18-cv-05623-MMB |
| Plaintiff, | |
| v. | |
| NIKE, INC., | |
| Defendant. | |

**PLAINTIFF LONTEX CORPORATION'S PRETRIAL MEMORANDUM**

114160541

# TABLE OF CONTENTS

**Page**

I. NATURE OF ACTION AND BASIS FOR COURT'S JURISDICTION ....................... 1

II. STATEMENT OF THE CASE .................................................................................... 1

III. MONETARY DAMAGES CLAIMED AND NATURE OF NON-MONETARY
RELIEF. ...................................................................................................................... 5

IV. WITNESSES LONTEX INTENDS TO CALL AT TRIAL ............................................ 8

    A. Liability Witnesses ................................................................................................. 8

    B. Damages Witnesses ............................................................................................ 13

V. SCHEDULE OF LONTEX TRIAL EXHIBITS ............................................................ 13

VI. AN ESTIMATE OF THE NUMBER OF DAYS REQUIRED FOR TRIAL. ................ 16

VII. SPECIAL COMMENTS REGARDING LEGAL ISSUES, STIPULATIONS,
AMENDMENTS OF PLEADINGS, OR OTHER APPROPRIATE MATTERS .......... 16

    A. Bifurcation (Per Daubert Order n.3) ................................................................. 16

    B. Streamlining of Lontex's State Law Claims and Nike's Defenses ..................... 18

    C. Internet Printouts ................................................................................................ 19

    D. Trial Date and Related Logistics ........................................................................ 19

I.      <u>**NATURE OF ACTION AND BASIS FOR COURT'S JURISDICTION**</u>

This is a trademark infringement action with federal question jurisdiction arising under 28 U.S.C. § 1331 for the federal Lanham Act claims (Counts 1 through 3).  For the state common law trademark claim (Count 4) and the state statutory trademark infringement and unfair competition claim (Count 5), the Court has both original jurisdiction under 28 U.S.C. 1338(b) and supplemental jurisdiction under 28 U.S.C. § 1367.

II.      <u>**STATEMENT OF THE CASE**</u>

Since 1989, Lontex marketed its unique compression garments under the brand name SWEAT IT OUT.   It is a family company begun by its owner and President, Efraim Nathan, after having already devoted many years managing the nationwide sales force of another clothing company, demonstrating both his textile expertise and sales acumen.

Over the years, half of Lontex's customers for compression garments were consistently collegiate and professional athletes and teams.  The target audience also included other consumers who desired the unique benefits that the stretch technology used, and its compression garments are regularly sold to customers in every state.  Because of the unique benefits which included rehabilitation and performance, referral partners spanned the gambit, and included medical professionals such as doctors and physical therapists.

In 2007, looking to expand its sales through medical professionals, Lontex began marketing and offering for sale a duplicate line of compression products under the mark COOL COMPRESSION.  The use of the brand name quickly evolved.  Facing partner delays and hearing from customers that such duplicative branding was not necessary, Efraim Nathan introduced Lontex's unique stretch technology under the brand COOL COMPRESSION.

By 2008, Lontex's target audience began regularly seeing and hearing the "COOL COMPRESSION" stretch technology branding.  Many NFL and MLB team head trainers will

confirm in testimony that the stretch technology has long held a reputation for working, is effective at rehabilitation, exercise and recovery, and was regularly referred and well-known since around 2008 by its "COOL COMPRESSION" brand name, not only on the garments' care labels but also in regular presentations, locker-room visits, and conversations with Efraim Nathan – who is the well-known energetic champion of this stretch technology.

Very few smaller athletic companies can boast brand recognition and accolades amongst the most well-respected professional teams and athletes in the country.  Lontex earned that right through sweat equity year in and year out, with sales spanning every state, most professional teams, and a long litany of die-hard customers.  DuPont (who provided one of the key ingredients) tested Lontex's stretch fabric and not only confirmed its effectiveness at the touted benefits of recovery, propitiation, etc., but found at the top of its peer group.  By comparison, even Nike has paid for university studies of its best stretch technology, which did nothing more than confirm that the tested garments did not deliver any of the desired benefits.  Like a bed and breakfast on acres of beach front property, Lontex's modest pre-infringement sales can hardly capture the true value of such a brand.

Mr. Nathan knew this and was dedicated to smart growth.  In the years just prior to infringement, Mr. Nathan kept his eye open for ways to expand the SWEAT IT OUT compression brand.  In 2014, he put feelers out for a branding partner through an online trademark platform, looking to spark a conversation and find real synergy to bring the brands in-house to the likes of ASICS and others – sharing in the expanded revenues in return.  In 2015, Mr. Nathan advanced conversations with a major garment manufacturer from Europe who was very interested in partnering to allow for a massive increase in expansion.  At the same time, he continued conversations with NovaCare, a physical therapy company with one of the largest

footprints in America.  And, at the beginning of 2016, Mr. Nathan toured at least one vacant box retail site in a prime area to begin a flagship store.

This was all to come to a crashing halt.  Unbeknownst to Lontex, Nike had been internally preparing since 2014 to launch its own set of "Cool Compression" compression garments, a set of product names that ultimately spanned over 50 of its Nike Pro and Jordan shirts, shorts and tights, for both men, women and children, ultimately generating as much as ██████████ in retail sales.

Nike could and should have known better.  As will be relevant to considerations of deterrence for profit disgorgement and punitive damages, that same year of 2014, Nike had been hit with a lawsuit for using "Lights Out" in virtually an identical product name infringement asserted here, a federally registered trademark by an ex-Nike endorsee and pro athlete for the exact same goods covered by the registration.  Nike also had for years prior utilized a third-party trademark management system, ANAQUA, that each product name was to be placed in prior to use.  Yet Nike did not run a trademark search, place the product name in its ANAQUA program, or even type any variation of "Cool Compression" into the public USPTO.gov search engine, which would have revealed Lontex's federally registered trademark for the very goods Nike used it for.

And so in late 2015, the accused products having been added to Nike catalogs under various "Nike Pro Cool Compression" product names, the products began flowing through Nike's massive sales channels, sold through hundreds of third party retailers, Nike.com, team catalogs – basically wherever Nike compression garments are sold.  The internet evidence shows ubiquitous use of the Nike Pro Cool Compression product names online.  Retail staff of Nike and its retailers confirmed the "Cool Compression" name was used in-store, the name taught to staff

by product-specific tech sheets.  This led to as many as 102 million sets of eyes seeing the Nike

Pro Cool Compression product names nationwide.

Lontex's sales began teetering from the infringement even before it discovered Nike was

the cause.  Mr. Nathan discovered the infringement at the start of 2016, carefully investigated,

and promptly began discussions with Nike.  Nike promised in July 2016 to stop in a matter of

months.  Nike's internally instructed teams to update names "as soon as possible" but lacked

follow-through or accountability, resulting in teams for Men's Training, Football, Basketball,

Baseball, Field Sports, and Childrens distributing their 2017 catalogs with the "Cool

Compression" product names.  And even the internal directive skirted the line by suggesting the

naming simply spill over into two lines instead of one.  Despite having flooded retail staff with

materials identifying the Nike Pro Cool Compression naming convention, Nike failed to notify

its retail staff to cease use.  It notified certain retailers only in June 2018.  And to this day its

products and product names compete for top placement alongside Lontex's products in Google

searches.

Nike suggests Lontex (with a six year statute of limitations period) unduly delayed suit

during this period of broken promises.  But firmly "[n]egating [Nike's] contention of undue

delay," (F.R.E. 408(b)), Nike ended the 2016 discussions with a calculated threat to "kill"

Lontex if Mr. Nathan should seek to protect its rights through a lawsuit.  Thus, at the end of

2018, only once Mr. Nathan – who lacked any adequate resources to sue the giant Nike – had

found a law firm willing to pursue Nike through trial.

As a result of Nike's market flooding, even Lontex's most sophisticated customers were

confused into believing Nike's products utilized the same Cool Compression technology as

Lontex.  Pro team trainers will testify to Lontex's brand usage, reputation, and confusing

similarity, consistent to their prior declarations of which this Court is familiar.  Many of these trainers will also elaborate that their actual marketplace confusion occurred at the time of infringement when they saw Nike's products and Nike Pro Cool Compression product names, e.g. in Nike catalogs strewn across their team facilities, through third party retailer Dick's, etc.

Lontex's damages and items of recovery under trademark law for both direct and reverse confusion are set out in the damages Section III below.

III.    **MONETARY DAMAGES CLAIMED AND NATURE OF NON-MONETARY RELIEF.**

Lontex seeks actual damages and restitution from the jury, including:

a.  Lost royalties, currently estimated using a 10% royalty applied to Nike's net wholesale sales for a royalty of ███████ ;

b.  Lost sales/profits, currently estimated to be at least ███████████████ and up to a total of the lost business opportunities identified below;



c.  Past corrective advertising including ██████████ to redesign CoolCompression.com and SweatItOut.com, along with the ongoing SEO charges.

d.  Future corrective advertising, currently estimated at ██████████ or loss to brand value including lost business opportunities, lost goodwill, and monetary value of the brand, currently estimated at of ██████████;

e.  Exemplary and punitive damages under Lontex's state law claims;

f.  Prejudgment interest at the legally-allowable rate.

If the jury finds liability for Lontex, then Lontex also seeks enhancement and disgorgement of profits for infringement, based on deterrence, unjust enrichment or plaintiff's sustained damages, any three of which is sufficient to permit disgorgement of profits under Third Circuit precedent.  *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005).  These are items of recovery generally to be determined by the Court (respecting the jury's related findings).  See *In re Windstream Holdings, Inc.*, 2020 Bankr. LEXIS 708, *16-17, 2020 WL 1304147 (Bank. S.D.N.Y Mar. 17, 2020).

Infringer profits are currently estimated at ██████████,[1] consisting of ██████████ of profits on Defendant's wholesale sales and ██████████ of profits on retailer's sales, including ██████████ of retail profits of Nike-affiliated retailers (*see* Expert Report of David Drews; NIKE-00044255, NIKE-000444256).  Breakdowns of infringing sales[2] generating these profits by specific sources and dates include:

---

[1] NIKE has not provided wholesale and retail sales figures for all relevant product numbers. At the May 14, 2020 recorded telephone call between counsel and the Court, the Court ordered Nike counsel to segregate sales of other disputed Product Numbers for potential disclosure at a later time or trial.  ECF No. 162 ("the Court's ruling regarding sales data shall be followed by counsel").  These are additional infringing sales but for which Nike has not yet disclosed sales figures.
[2] Expert testimony will establish that Nike's profit margin on wholesale sales

114160541



Finally, Sweat It Out seeks permanent injunctive relief in the form of an order prohibiting Nike from using the phraseology COOL COMPRESSION or any similar mark, including abbreviations, inserted matter between the two terms, and where the terms are preceded or followed by other terms, for use in connection with any apparel, athletic apparel or athletic accessories designed to be worn on the body, or other related goods.  *See* 15 U.S.C. 1116(a) (revised at the end of 2020 to impose "a rebuttable presumption of irreparable harm upon a

finding of a violation"). And it would apply without limit to product names, technology names, slogans, and other service mark or trademark use.

Such injunctive prohibition would bar Nike from assisting, encouraging, or allowing any party over whom it has practical control from doing the same. It would also include a mandatory injunction requiring Nike to clearly and conspicuously notify in writing any wholesale purchaser of Nike's compression products in which the term "Cool" is used in Nike's catalog product name or technology name that the term "Cool Compression" or similar use is not permitted in connection with such goods.

Such injunctive relief would be subject to reasonable limitations to prevent impermissible overbreadth, such as not preventing Nike from using "Cool" apart from and without "Compression."

## IV.   WITNESSES LONTEX INTENDS TO CALL AT TRIAL.

Lontex includes below its list showing the names and addresses of all witnesses it intends to call at trial. Liability and damages witnesses are designated separately, which includes overlap for certain witnesses. Finally, Lontex reserves the right to examine all witnesses identified by Nike.

### A.   Liability Witnesses

Below are the witnesses for Plaintiff's case.

Lontex reserves the right to call whoever is designated as a trial witness by Nike. Lontex intends to work with Nike to minimize impact of Nike's witnesses so they will not have to testify twice for both Plaintiff's case and Nike's defense. For those of Nike employee fact witnesses previously deposed, Lontex is prepared to introduce their deposition testimony. However, if Nike intends to call them live, Lontex intends to work with Nike so they appear live in Lontex's case in chief and minimize the duplication of their testimony.

| NAME | ADDRESS | SUBJECT MATTER |
|---|---|---|
| Efraim Nathan, CEO of Lontex | Lontex counsel | Subjects previously disclosed and deposed, including Lontex, its practices, marketing and sales, its branding, its marks, Nike's use, damages |
| Samantha Nathan, Office Manager for Lontex | Lontex counsel | Subjects previously disclosed and deposed |
| Ben Bechtel, VP of Digital Media, 1SEO.com | Lontex counsel | Lontex online marketing and social media |
| Charles Marchesini | Lontex counsel | Authentication of archive.org and website printouts. |
| Nike witnesses previously disclosed | Nike's counsel | Subjects previously disclosed and deposed. |

| NAME | ADDRESS | SUBJECT MATTER |
|---|---|---|
| Sean W. Goodwin | 39 Spencer St. Summerset, NJ 08873 | Experience with Plaintiff's COOL COMPRESSION technology products, including knowledge of Lontex's use of COOL COMPRESSION on garment labels. |
| Rich Sheridan | 7 Fountain Rd. Levittown, PA 19056 | Experience with Plaintiff's COOL COMPRESSION products.  Experience with Nike and its compression products. |
| Brian Cammarota, ATC, PT | 312 Sheffield Drive Plymouth Meeting, PA 19462 | Experience with Plaintiff's COOL COMPRESSION products both as Athletic Training and Rehabilitation Coordinator for Philadelphia Phillies (2006-2011) and subsequently as athletic trainer and physical therapy |
| Howie Knudson, PT, MSPT | 6081 Valley Forge Dr. Coopersburg, PA 18036 | Experience with Plaintiff's COOL COMPRESSION products, including knowledge of Lontex's use of COOL COMPRESSION on garment labels. |

114160541

| Name | Address | Subject Matter |
|---|---|---|
| Christopher Williams, former pro-soccer player | 154 Temple Drive Maple Glen, PA 19002 | Experience with Plaintiff's COOL COMPRESSION products and Efraim Nathan. |
| Marianne Huebner, Director of Center for Statistical Training & Consulting for Michigan State University and World Masters Championships world champion weightlifter | 3546 Apple Valley Rd Okemos, MI 48864 | Experience with Plaintiff's COOL COMPRESSION products, including knowledge of Lontex's use of COOL COMPRESSION on garment labels.  Experience with Nike and its products. |
| Najeeb Hosni Golden Stitch | 717 N. Jerome St. Allentown, PA 18109 | Disclosed in Efraim Nathan deposition; details relating to sewing of Lontex's garments including inclusion of COOL COMPRESSION inside garment labels. |
| Kevin Dugger, Head Trainer for Colorado Rockies | Keith.Dugger@rockies.com 2001 Blake Street Denver, CO 80205 | Knowledge of Lontex's use of COOL COMPRESSION on garment labels for products obtained by Colorado Rockies, in addition to Lontex's use of COOL COMPRESSION in identifying Lontex's compression garment technology in oral presentations and communications, including at annual PBAT conferences, actual confusion based on Lontex and Nike's uses. Experience with Nike and its products. |

| NAME | ADDRESS | SUBJECT MATTER |
|---|---|---|
| Chris Peduzzi, Former Head and Assistant Trainer for Philadelphia Eagles | 3053 Kerper Road Lafayette Hill, PA 19444 | Knowledge of Lontex's use of COOL COMPRESSION on garment labels for products obtained by Colorado Rockies, in addition to Lontex's use of COOL COMPRESSION in identifying Lontex's compression garment technology in oral presentations and communications, including at annual PFAT conferences, actual confusion based on Lontex and Nike's uses. Experience with Nike and its products. |
| Mark Smith, Former VP, Head and Assistant Athletic Trainer for Baltimore Ravens | 4867 Pastel Court Sarasota County FL 34240 | Knowledge of Lontex's use of COOL COMPRESSION on garment labels for products obtained by Colorado Rockies, in addition to Lontex's use of COOL COMPRESSION in identifying Lontex's compression garment technology in oral presentations and communications, including at annual PFAT conferences, actual confusion based on Lontex and Nike's uses. Experience with Nike and its products. |
| Norman Lehrer, Lontex's Trademark Prosecution Attorney | 52 Berlin Rd #1000 Cherry Hill, NJ 08034 | Knowledge of Lontex's appropriate dealings with USPTO |

114160541

| NAME | ADDRESS | SUBJECT MATTER |
|---|---|---|
| Brian Ball, Former Head and Assistant Athletic Trainer for Chicago White Sox | 2545 S. Dearborn St. Chicago, IL 60616 | Knowledge of Lontex's use of COOL COMPRESSION on garment labels for products obtained by Colorado Rockies, in addition to Lontex's use of COOL COMPRESSION in identifying Lontex's compression garment technology in oral presentations and communications, including at annual PFAT conferences, actual confusion based on Lontex and Nike's uses. Experience with Nike and its products. |
| Kenisha Likely, Former Nike Factory Store Employee | 7222 Bellerive Drive Houston, TX 77036 | Sales, promotions,  training and procedures at Nike Factory Store, including with respect to Accused Products. |
| Tyler Cox, Former Nike Factory Store Employee | 7655 Town Square Ln Suite 214b Reno, NV 895 | Sales, promotions,  training and procedures at Nike Factory Store, including with respect to Accused Products. |
| Thomas DeAngelis, Former Dick's and Modell's Store Employee | 310 Bucknell Ave. Blackwood, NJ | Sales, promotions,  training and procedures at Dick's Sporting Goods and Modell's Sporting Goods with respect to Accused Products.  Experience with Nike and its products. |
| Dominique Williams, Former Nike Factory Store Employee | 1830 Route 130 North Burlington, NJ 08016 | Sales, promotions,  training and procedures at Nike Factory Store, including with respect to Accused Products. |
| Dr. Susan McDonald, Survey Expert | 1835 Market Street Philadelphia, PA 19103-2984 | Subjects covered by expert report as supplemented; survey-related expert testimony |

114160541

| NAME | ADDRESS | SUBJECT MATTER |
|---|---|---|
| Jeff Parkhurst, Branding, Brand Valuation and Corrective Advertising Expert | 4 Pequot Trail Westport, CT 06880 | Subjects covered by expert report as supplemented; value of brands, value of Lontex's brand (including goodwill, opportunity value, differentiation and expansion potential), ways brand may lose value, damage to Lontex's brand, corrective advertising |
| David Drews, IP Valuation and Damages Expert | 9320 Chesapeake Drive Suite 110 San Diego, CA  92123 | Subjects covered by expert report as supplemented; Nike and third party retailer sales and profits, reasonable royalty, damage to Lontex from infringement including lost sales / profits, corrective advertising |

### B.      Damages Witnesses

| NAME | ADDRESS | SUBJECT MATTER |
|---|---|---|
| Efraim Nathan | Lontex counsel | See Liability Witnesses above. |
| Dr. Susan McDonald | See Liability Witnesses above. | See Liability Witnesses above. |
| Jeff Parkhurst | See Liability Witnesses above. | See Liability Witnesses above. |
| David Drews | See Liability Witnesses above. | See Liability Witnesses above. |

## V.      SCHEDULE OF LONTEX TRIAL EXHIBITS

Lontex's list of trial exhibits is below.  For any exhibit constituting a grouping of documents, Lontex has provided to Nike's counsel concurrently herewith the more detailed trial exhibit list which identifies each specific document in that exhibit.  Lontex will file this more detailed list of trial exhibits if the Court so directs, and intends to provide at trial such list along

with details for tracking the offering and admission of exhibits.  Lontex reserves the right to use all defense-identified exhibits.

The Court has deferred disclosure of deposition designations.  ECF No. 243. Additionally, pursuant to the Court's instruction that "Counsel need not list as trial exhibits any documents that have already been provided as exhibits to various motions in this case," Lontex's attached trial exhibit list is not to the exclusion of use at trial of documents already provided as exhibits to various motions in this case.

## **Trial Exhibits**

### I.      **Main Overview**

Plaintiff's Ex. 1.    Lontex's COOL COMPRESSION Trademark Registrations and Trademark Office 2020 Status Reports

Plaintiff's Ex. 2.    Box of Cool Compression Care Labels and Sample Sweat It Out Tights with Cool Compression Technology

Plaintiff's Ex. 3.    Nike Infringement for 16 Sample Style Numbers (Including Examples of Downstream Retailer Infringement for First 7 Styles)

Plaintiff's Ex. 4.    Nike's 2015 Apparel Naming Strategy Presentation to Global Product and Merchandising Operations (April 2015)

Plaintiff's Ex. 5.    Letter from Lontex's Counsel to Nike (May 12, 2016)

Plaintiff's Ex. 6.    Letter from Nike's Legal Department to Lontex's Counsel (July 19, 2016)

Plaintiff's Ex. 7.    Nike Internal Email Acknowledging Need to Cease Using "Cool Compression" in Product Names As Soon as Possible (September 15, 2016)

Plaintiff's Ex. 8.    Expert David Drews Charts, Graphs and Figures

Plaintiff's Ex. 9.    Nike's Hyperwarm and Hypercool Trademark Registrations

### II.      **Lontex's Sweat It Out Clothing with Cool Compression Technology**

Plaintiff's Ex. 10.  Study on Lycra Effectiveness by Dr. William Kraemer and Related Summaries

- 14 -

Plaintiff's Ex. 11.  Lontex Correspondence With Customers About Product Effectiveness

Plaintiff's Ex. 12.  Lontex Tax Returns (2006 to 2019)

Plaintiff's Ex. 13.  Lontex Financials (2006 to 2020)

Plaintiff's Ex. 14.  Sample Pro Team Communications

Plaintiff's Ex. 15.  Documentation of Lontex and Nike as competitors

Plaintiff's Ex. 16.  Trademark Office prosecution file for Reg. 3,416,053 (Class 25)

Plaintiff's Ex. 17.  Trademark Office prosecution file for Reg. No. 3,611,406 (Class 10)

Plaintiff's Ex. 18.  2007 Cool Compression Press Release

Plaintiff's Ex. 19.  Correspondence Concerning Lontex's 2007 Adoption of Cool Compression

Plaintiff's Ex. 20.  Efraim Nathan Presentation at 2020 PFATS Conference

Plaintiff's Ex. 21.  Sample Golden Stitch Order Documentation

Plaintiff's Ex. 22.  Documentation of 2008 Inside Garment Tags

Plaintiff's Ex. 23.  Samples Inside Garment Tags of Lontex

Plaintiff's Ex. 24.  Samples of Lontex marketing of Sweat It Out compression products (2007-2020)

Plaintiff's Ex. 25.  Lontex's business expansion discussions (2006-2018)

### III.    Nike's Infringement and Beyond

Plaintiff's Ex. 26.  Nike Internal Discussions of Naming (2014-2018)

Plaintiff's Ex. 27.  2015 Nike SKU Quick Start Guide

Plaintiff's Ex. 28.  2016 Nike Product Test Purchase by Lontex

Plaintiff's Ex. 29.  Lontex/Nike 2016 Correspondence

Plaintiff's Ex. 30.  2017 Sample Twitter Screenshot

Plaintiff's Ex. 31.  2017 Nike Compression Study

Plaintiff's Ex. 32.  Lontex/Nike 2018 Correspondence

114160541

<u>Plaintiff's Ex. 33.</u>  Samples of Lontex's mitigation efforts

<u>Plaintiff's Ex. 34.</u>  Sample Internet Search Results

<u>Plaintiff's Ex. 35.</u>  Nike June 2018 Third-Party Notifications

<u>Plaintiff's Ex. 36.</u>  Samples of Nike's Catalogs

<u>Plaintiff's Ex. 37.</u>  Samples of Nike's Tech Sheets

<u>Plaintiff's Ex. 38.</u>  Samples Third Party Retailer Print Ads

<u>Plaintiff's Ex. 39.</u>  Sample Nike Team Sports Catalogs with Accused Products

<u>Plaintiff's Ex. 40.</u>  Samples of Third Party Retailer Usage (2015-2018)

### IV.  Looking at the Numbers

<u>Plaintiff's Ex. 41.</u>  Facts and Figures Presented by David Drews

<u>Plaintiff's Ex. 42.</u>  State-by-State Sales Presented by David Drews

<u>Plaintiff's Ex. 43.</u>  Facts and Figures Presented by Jeff Parkhurst in Reports and Letter

<u>Plaintiff's Ex. 44.</u>  Sample Third Party Retailer Financials

## VI.  <u>AN ESTIMATE OF THE NUMBER OF DAYS REQUIRED FOR TRIAL.</u>

Ten trial days for Plaintiff's case.

## VII.  <u>SPECIAL COMMENTS REGARDING LEGAL ISSUES, STIPULATIONS, AMENDMENTS OF PLEADINGS, OR OTHER APPROPRIATE MATTERS.</u>

### A.  <u>Bifurcation (Per *Daubert* Order n.3)</u>

Trademark infringement liability and damages are an issue for jury determination.  *See In re Windstream Holdings, Inc*., 2020 Bankr. LEXIS 708, *16-17, 2020 WL 1304147 (Bank. S.D.N.Y Mar. 17, 2020).  It may be that punitive damages, enhancement, disgorgement of infringing profits are tried after the jury determines liability and damages.  However, Lontex's position is liability and damages should not be bifurcated and would not be beneficial here.

"'[S]eparation of issues for trial is not to be routinely ordered,'" and the relevant standard for when bifurcation of trial on liability and damages issues is "'appropriate [is] when

'the evidence pertinent' to the two issues is wholly unrelated' and the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination." *James v. Interstate Credit & Collection, Inc.*, 2005 U.S. Dist. LEXIS 15814, 2005 WL 2989305, at *1 (E.D. Pa. Aug. 2, 2005) *quoting Lis v. Robert Packer Hospital*, 579 F.2d 819, 824 (3d Cir.1978) (first quote) and *Helminski v. Ayerst Labs.*, 766 F.2d 208, 212 (6th Cir.1985).

Here, for both liability and damages, witnesses and other evidence overlap substantially. For example, the experts' testimony goes to both liability and damages. David Drews will testify on the lost sales of Lontex resulting from Nike's volume of sales of the Accused Products, which is relevant to actual damages and, as briefed in summary judgment, is relevant to the *Lapp* factor of actual confusion. ECF No. 203 at 43-44. At the same time, those sales details go to the reasonable royalty item of actual damages. Similarly, Nike offers its surveys (and opposed by Lontex's Dr. McDonald's expert opinion) for both likelihood of confusion and to support Nike's damages and apportionment analysis.

In Lontex's December 21, 2021 Five Exhibits and Cases submission on summary judgment, Lontex further explains with examples how Lontex's three experts' testimony go beyond damages and go strongly to at least *Lapp* likelihood of confusion factors 4 & 6 (actual confusion), 5 (intent), 7-9 (overlap), modified *Lapp* factors 2 for reverse confusion (comparative strength), and all elements of Nike's Fair Use defense. ECF No. 226 at 3-4.[3]

---

[3] For ease of reference that text is below:

> For example, Mr. Parkhurst calculated that 80 million consumers saw NIKE Cool Compression product names online, (¶¶9, 87-102), with Mr. Drews' Supplemental Report (pp. 15-19) showing examples of even current online usage, the parties disputing these facts. Mr. Drew's Supplements 1 and 2 show Nike and its retailers' continued substantial sales of the Accused Products that took place after notice, after promising to stop, and after Nike's internal statement to stop. Dr. Drews' Schedule 10 shows that as Nike's sales of Accused Products increased (compression shirts, shorts, tights), Sweat It Out's sales of Sweat It Out garments with COOL COMPRESSION technology were overwhelmed and dropped dramatically. His Schedule 9 shows that NFL teams that had overlapping sales between Nike's and Sweat It Out's relevant products dropped an average of 34% during the infringement period, while those without overlap grew

114160541

Also, attempting to break out particular parts or areas of inquiry within a particular subject matter would be inefficient and risk breaking the flow, rather than having subjects discussed fully.  If David Drews already is discussing Nike's sales volumes by sales channels, geographies, time periods, retailers, etc. as relevant to the *Lapp* factors, and Lontex's same sales information, it makes most sense for him to testify at that same time as to the sales amounts and profits associated with those sales.

Thus, this is not such a case where bifurcation of liability and damages would be efficient.  The traditional method of submitting liability and damages for verdict at the same time, with interrogatories that direct the flow of decisions by the jury, will amply protect the process.

### B.      Streamlining of Lontex's State Law Claims and Nike's Defenses

Lontex is pursuing all Counts except, for streamlining of issues, it is not pursuing its Fourth Count (State Common Law Trademark Infringement) at trial.  Additionally, for its Fifth Count, of the states included in its First Amended Complaint, Lontex intends at trial to pursue this claim as to infringing sales made into Colorado, Georgia, Illinois, Minnesota, New Jersey, New York, and Washington.  Rather than simply duplicating Lanham Act relief, these states' statutory infringement claims provide additional or complimentary items of relief as it relates to exemplary/punitive and profit disgorgement.  *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1359 (Fed. Cir. 2013) (state unfair competition laws are state-specific rather than extraterritorial, as state "is not permitted, however, to extend its unfair competition law to other states").

---

12%. And his Supplements McDonald's report explains why Nike's surveys are entitled to little or no weight. Nike disputes how these experts came to these conclusions and the competing inferences that may be drawn from conclusions.

114160541

C.      **Internet Printouts**

Lontex will be seeking stipulations as to use of at least archive.org, USPTO.gov

printouts, and internet website printouts.

D.      **Trial Date and Related Logistics**

To allow Lontex to present as many of its witnesses live before the jury (rather than

through prior depositions or trial depositions), Lontex seeks the setting a more certain trial date

as soon as recovery from the COVID-19 health crisis permits, with at least 30 days' notice of

that trial date.  Given the many out of state witnesses and counsel, and the impact of the health

crisis on travel plans, this will permit subpoenas to be issued and trial depositions completed.

For example, Brian Ball wishes to utilize a trial deposition given the quarantine requirements of

the Colorado Rockies if he were to travel to trial during training or in season.

Lontex also intends to seek Nike's cooperation and the Court's guidance with respect to

procedures for remote live video appearances, at least as a fallback in the event a planned

witness is unable to travel at the time of trial.

114160541

Dated:        April 1, 2021                    TROUTMAN PEPPER HAMILTON
                                               SANDERS LLP


                                         By:  s/*Ben L. Wagner*
                                               Ben L. Wagner (CA SBN 243594)
                                               ben.wagner@troutman.com
                                               *Admitted Pro Hac Vice*
                                               11682 El Camino Real, Suite 400
                                               San Diego, CA  92130-2092
                                               Telephone:   858.509.6000
                                               Facsimile:    858.509.6040

                                               Michael A. Schwartz (PA 60234)
                                               TROUTMAN PEPPER HAMILTON
                                               SANDERS LLP
                                               3000 Two Logan Square
                                               Eighteenth & Arch Streets
                                               Philadelphia, PA 19103-2799


                                               *Attorneys for Plaintiff*
                                               LONTEX CORPORATION

114160541

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2021, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*s/ Ben L. Wagner*

Ben L. Wagner

114160541