IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION,<br>      Plaintiff,<br><br> v.<br><br>NIKE, INC.,<br>      Defendant. | Civil Action No.:  18-cv-5623<br><br>(Hon. Michael M. Baylson)<br><br>**FILED WITH REDACTIONS** |

**NIKE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO BIFURCATE TRIAL OF LIABILITY AND DAMAGES**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................1

II. BACKGROUND ..................................................................................................................2

III. NIKE'S BIFURCATION AND SEQUENCING PROPOSAL...........................................3

IV. ARGUMENT .......................................................................................................................4

    A. Legal Standard ..........................................................................................................4

    B. Bifurcation Will Promote Convenience, Efficiency, and Judicial Economy...........5

    C. Bifurcation Will Reduce the Complexity of the Case and Potential Juror Confusion..................................................................................................................7

    D. Bifurcation Will Avoid Prejudice to NIKE and Will Not Prejudice Lontex ...........9

V. CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
    166 F.3d 197 (3d Cir. 1999) ................................................................................................... 3

*Alfwear, Inc. v. Icon Health & Fitness, Inc.*,
    2018 WL 6592728 (D. Utah Dec. 14, 2018) ..................................................................... 6, 7, 9

*In re Asbestos Prod. Liab. Litig. (No. IV)*,
    2010 WL 8033491 (E.D. Pa. Aug. 27, 2010) ....................................................................... 10

*Averbach v. Rival Mfg. Co.*,
    879 F.2d 1196 (3d Cir. 1989) .................................................................................................. 4

*B. Braun Med. Inc. v. Abbott Lab'ys*,
    1994 WL 468155 (E.D. Pa. Aug. 29, 1994) ............................................................................ 8

*Barr Labs., Inc. v. Abbott Labs.*,
    978 F.2d 98 (3d Cir. 1992) .............................................................................................. 5, 8, 9

*Bobrick Washroom Equip., Inc. v. Scranton Prod., Inc.*,
    2020 WL 1700429 (M.D. Pa. Apr. 8, 2020) ........................................................................... 4

*Ciena Corp. v. Corvis Corp.*,
    210 F.R.D. 519 (D. Del. 2002) ................................................................................................ 9

*Ely v. Cabot Oil & Gas Corp.*,
    2016 WL 454817 (M.D. Pa. Feb. 5, 2016) ........................................................................... 10

*Harrington v. Cleburne Cnty. Bd. of Educ.*,
    251 F.3d 935 (11th Cir. 2001) ................................................................................................. 4

*Lis v. Robert Packer Hosp.*,
    579 F.2d 819 (3d Cir. 1978) .................................................................................................... 4

*Matter of M/V Uncle Robert*,
    2020 WL 3576839 (E.D. La. July 1, 2020) ......................................................................... 2, 7

*McCann v. Miller*,
    502 F. App'x 163 (3d Cir. 2012) ........................................................................................... 10

*Of/Stemrich v. Zabiyaka*,
    2014 WL 931069 (M.D. Pa. Mar. 10, 2014) ......................................................................... 10

*In re Paoli R.R. Yard PCB Litig.*,
 113 F.3d 444 (3d Cir. 1997)..................................................................................................8

*Plaza-Bonilla v. Cortazzo*,
 2009 WL 977297 (E.D. Pa. Apr. 9, 2009) ..............................................................................5

*PR Acquisition LLC v. BMW of N. Am., LLC*,
 2004 WL 2496849 (E.D. Pa. Nov. 3, 2004) ...........................................................................5

*Static Control Components, Inc. v. Lexmark Intern., Inc.*,
 2010 WL 4366130 (E.D. Ky. Oct. 28, 2010)..........................................................................8

*Wyeth v. Abbott Lobs*,
 2010 WL 4553545 (D.N.J. 2010) ...........................................................................................9

*Zinno v. Geico Ins. Co.*,
 2016 WL 6901697 (E.D. Pa. Nov. 21, 2016) .........................................................................5

**Other Authorities**

FED. R. CIV. P. 42(b) .................................................................................................................1, 4, 9

FED. R. EVID. 403........................................................................................................................9

WRIGHT & MILLER § 2390 SEPARATE TRIALS—SEPARATION OF LIABILITY FROM
 DAMAGES, 9A FED. PRAC. & PROC. CIV. § 2390 (3d ed.).........................................................10

**I.     INTRODUCTION**

This Court should exercise its discretion to bifrucate issues of liability and damages at the upcoming trial. *See* FED. R. CIV. P. 42(b). Trial should be bifurcated into two sequenced phases, which would be decided by the same jury in immediate succession. During the first phase, the jury would resolve the liability issues underlying Lontex's five claims and NIKE's two counterclaims and various affirmative defenses. If the jury finds liability, the second phase on Lontex's damages theories would begin before the same jury shortly after the verdict is announced.

This sensible proposal likely will reduce the length of trial, promote the clear and orderly adjudication of claims and presentation of evidence, simplify the issues for the jury, and be most convenient for jurors, the Court, the parties, their counsel, and the witnesses. Lontex foreshadows in its Pretrial Memorandum (ECF 246 at 16-17) that it opposes bifurcation on the basis of "evidentiary overlap" in the liability and damages phases, which would create inconvenience or inefficiencies in presentation of evidence if the phases were to be bifurcated. The inconvencies and inefficiencies that Lontex identifies, however, are largely mitigated (if not fully eliminated) by this Court's proposal at the pretrial hearing on April 21, 2021 that the same jury could decide the damages phase, if such a phase becomes necessary after the liability phase. (Hr'g Tr. at 44:10-22, ECF 252.) Responding to Lontex's concerns, NIKE does not dispute that a jury deciding the damages issues would need to have heard certain evidence presented at the liability phase to deliberate over and decide the complex damages theories put forth by Lontex, but there is a whole range of damages testimony and evidence that need not be presented during the liability phase. If *separate* juries were empaneled for each phase, signficant inefficiencies would ensue; but if a *single* jury is empaneled for both phases, the issues to be decided at each phase will be simplied for the jury, with a chance that the second phase of trial will not be necessary at all. Should the jury find that liablity has not been established, several days of trial would be avoided, and, as such,

bifurcation may "limit exposing trial participants to each other unnecessarily as much as possible." *Matter of M/V Uncle Robert*, 2020 WL 3576839, at *2 (E.D. La. July 1, 2020).

This proposal is a particularly prudent course of action in light of the ongoing COVID-19 public health crisis, when court operations and jury trials are severly restricted and future operations remain uncertain. This proposal also protects NIKE from the significant risk of unfair prejudice and juror confusion that will inevitably arise if the trial is not bifurcated. By contrast, bifurcation will not prejudice Lontex in any way. The Court should therefore exercise its discretion and bifurcate trial into liability and damages phases that will be resovled by a single jury.

## II. BACKGROUND

The Court is familiar with the background of this complex action for trademark infringement, unfair competition, and cancellation of trademark registrations. A brief overview of the claims, defenses, and theories provides helpful context on why bifurcation is warranted.

There are many complex liability issues to be resolved by the jury at trial. Lontex asserts that NIKE has infringed its "Cool Compression" trademark by causing a likelihood of marketplace confusion in the 2015-2018 time period. Lontex asserts federal claims for trademark infringement and contributory trademark infringement under the Lanham Act and one omnibus state-law claim for statutory trademark infringement and unfair competition under eleven arbitrarily selected bodies of state law. (ECF 20 ¶¶ 36-88.) NIKE denies liability. NIKE disputes the validity of Lontex's rights in the "Cool Compression" trademark because Lontex: (i) abandoned the mark through a sustained period of non-use, and (ii) submitted false statements to the U.S. Patent and Trademark Office in order to obtain and maintain its registrations. (ECF 45 at Counterclaims ¶¶ 16-30.) Furthermore, even if Lontex has valid trademark rights, Lontex will not be able to carry its burden of establishing a likelihood of confusion occurred in the marketplace from 2015 to 2018. And NIKE raises various affirmative defenses to Lontex's claims, including fair use, unclean

2

hands and trademark misuse, and laches. (ECF 45 at Aff. Def. pp. 14-16.)

The damages issues that the jury may need to resolve are equally—if not more—complex. Lontex seeks recovery under numerous theories, and intends to call two damages experts—David Drews and Jeffrey Parkhurst—to explain these theories to the jury. Among other things, Lontex seeks well more than $⬛ in damages under an assortment of theories, including lost royalties, lost sales/profits, past corrective advertising, future corrective advertising, or "loss to brand value, including lost business opportunities, lost goodwill, and monetary value of the brand," and "[e]xemplary and punitive damages under [its] state law claims." (ECF 246 at 5-6.) Lontex also seeks enhancement and disgorgement of NIKE's profits and NIKE's retailers' profits.[1] (*Id.*)

Lontex currently estimates that its case-in-chief will take ten trial days absent bifurcation. (*Id.* at 16.) In that time, Lontex may introduce hundreds of trial exhibits and present testimony from twenty fact witnesses and three experts—a rebuttal consumer survey expert and two damages experts. NIKE, for its part, currently estimates that it will require five-to-seven days to present its case absent bifurcation. NIKE may likewise introduce hundreds of exhibits and present testimony from twenty fact witnesses and five experts—three consumer survey experts and two rebuttal damages experts. If trial is bifurcated, the entire liability phase likely could be completed within ten trial days. And if the jury finds that Lontex has not established liablity, the parties would not need to present certain types of evidence nor call the damages witnesses and experts during a damages phase. Bifurcation could potentially avoid five-to-seven additional trial days.

## III. NIKE'S BIFURCATION AND SEQUENCING PROPOSAL

Given the complexity of the liability and damages theories underlying these claims, this

---

[1] An accounting for profits is equitable in nature and will be decided by the Court, not the jury. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 209 (3d Cir. 1999) (en banc).

3

Court should bifurcate trial into two phases—a liability phase and, if liability is found, a damages phase—with a single jury empaneled to resolve each phase in sequence.

The Phase 1 trial would focus solely on liability issues, including the merits of Lontex's federal and state law claims, NIKE's affirmative defenses to those claims, and NIKE's counterclaims on validity. At the end of the Phase 1 presentations, the jury would deliberate and deliver its verdict on those liability issues. If the jury finds that Lontex has not established liability or that NIKE has established that the asserted "Cool Compression" trademark is invalid or that a full defense (like the fair use defense) applies, then the trial would be over and the jury could be dismissed. If, on the other hand, the jury finds that Lontex's mark is valid and that liability is established, the Phase 2 trial would begin shortly after the verdict is announced. Since this jury will have already heard much of the evidence during Phase 1, Phase 2 would likely require only several days of presentations by the parties. At the end of the Phase 2 presentations, the jury would deliberate and deliver its verdict on damages issues—at which time the jury could be dismissed.

## IV.   ARGUMENT

### A.   Legal Standard

Rule 42(b) expressly permits bifurcation of any issues in a case. *See Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1198 (3d Cir. 1989). It provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). "[A] district court has 'broad discretion' in determining whether to separate the issues of liability and damages." *Bobrick Washroom Equip., Inc. v. Scranton Prod., Inc.*, 2020 WL 1700429, at *1 (M.D. Pa. Apr. 8, 2020) (citing cases); *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978). The standard for bifurcation is not a high one. *See, e.g.*, *Harrington v. Cleburne Cnty. Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001). When assessing bifurcation requests, courts balance

"several considerations, including the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation." *Zinno v. Geico Ins. Co.*, WL 6901697, at *1 (E.D. Pa. Nov. 21, 2016) (citations omitted); *see also Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 115 (3d Cir. 1992). Each consideration counsels in favor of bifurcation.

### B. Bifurcation Will Promote Convenience, Efficiency, and Judicial Economy

Significant resources could be saved through bifurcation. It likely will reduce the length of trial, promote the clear and orderly adjudication of claims and presentation of evidence, and be most convenient for jurors, potential jurors, and court staff, particularly in this trying time of the COVID-19 public health crisis when court operations and jury trials are severely restricted. Most significantly, if the jury finds in favor of NIKE, at least several days of trial would be avoided.

Bifurcation would reduce the number of exhibits to be introduced during Phase 1. Certain exhibits on the parties' exhibit lists are relevant only to damages. For example, Lontex's Group Exhibits 41-44 are an assortment of graphs, spreadsheets, and charts reflecting financial analyses from Lontex's damages experts and detailed financials from NIKE and its third-party retailers. Detailed NIKE financial information, including evidence of the number of NIKE units sold and the revenues and costs associated with such sales, have no bearing on the jury's liability determination. *See generally PR Acquisition LLC v. BMW of N. Am., LLC*, 2004 WL 2496849, at *5 (E.D. Pa. Nov. 3, 2004) (Baylson, J.) (bifurcating "liability and damages" with proof on the amount of damages reserved until after plaintiff established liability); *Plaza-Bonilla v. Cortazzo*, 2009 WL 977297, at *2 (E.D. Pa. Apr. 9, 2009) (granting bifurcation of damages and liability and explaining that "'[b]ifurcation may ... be appropriate … where litigation of one issue may obviate the need to try another.'"). Damages are not an element of Lontex's liability showing, which instead will primarily turn on: (1) whether Lontex's trademarks are valid; and, if they are, (2) whether NIKE's alleged conduct did, or was likely to, cause consumer confusion under the

applicable *Lapp* factors, or (3) whether NIKE's alleged conduct constitutes a fair use. Indeed, the Court already reviewed *in camera* some of NIKE's financial information in the context of a pretrial motion, and held that NIKE's highly confidential document showing, for a number of products, the quantity sold, cost of goods sold, and discounts is "***not at all relevant on any issues of liability in this case***." (ECF 127 at 5 (emphasis added).)[2]

Bifurcation also would reduce the number of witnesses testifying at trial. Most significantly, days of complex expert testimony could be avoided if trial is bifurcated and the jury finds that liablity has not been established. As this Court recognized in its *Daubert* Memorandum Opinion, the testimony of Lontex's damages experts may be limited depending on the jury's liablity findings. (ECF 241 at 20.) The opinions offered by Mr. Parkhurst and Mr. Drews relate only to pecuniary matters, as each expert witness ***expressly assumed a finding of liability*** in rendering his respective opinions. Neither is providing opinions that establish liability. Mr. Parkhurst offers opinions on what the so-called "opportunity value" of the "Cool Compression" trademark and Lontex's corrective advertising expenses—opinions that are relevant *only* if Lontex establishes liablity. Similarly, Mr. Drews testifies about a range of damages theories, assuming—as damages experts typically do—that liability will be established, so he will not need to testify unless Lontex establishes liabilty. For NIKE's part, its two rebuttal damages experts assume liability will be established, and they too would not need to testify unless liability is established.

Another court recently adopted the approach NIKE proposes here and bifurcated issues of liability and damages before a single jury in a trademark case. *Alfwear, Inc. v. Icon Health &*

---

[2] NIKE's detailed, product-level financial information relating to sales, costs, and profit margins remains highly confidential and competitively sensitive information. Since the Court stated that it will not close the courtroom during trial, bifurcation balances the competitng interests of confidentiality and public access by reserving the presentation of this highly confidential information only if it is necessary during the damages phase.

6

*Fitness, Inc.*, 2018 WL 6592728, at *2 (D. Utah Dec. 14, 2018). That court's analysis and reasoning is directly on point and applicable here:

> Damage calculations in this trademark infringement, unfair competition, and dilution case may involve a number of calculations and expert testimony that may not be necessary if the trier of fact determines either that [Defendant] does not have liability or at least did not act willfully. If the jury in the first [phase] finds in the Defendants' favor, then there would be no trial on damages, and no time whatsoever would be used in presenting evidence, argument and instructions on issues regarding damages. In the end, this would promote economy. The Court finds that damages evidence could distract and confuse the jury in this case. Efficiency will only be gained however by having the same jury try the issues immediately following each other, otherwise witnesses will have to be recalled, foundations laid, etc.

*Id.* (internal citations omitted). These concerns are present here and weigh in favor of bifurcation.

Finally, although Lontex will downplay bifurcation's benefits to judicial economy and juror convenience, all benefits during the public health crisis matter. Short trials enable more cases to be tried and thus enable this District to begin clearing the backlog of jury cases. And sequenced bifurcation before a single jury avoids the need to empanel a second jury at a time when it is challenging to empanel even one. As one court recently noted, bifurcation is particularly appropriate during the pandemic because it "will limit exposing trial participants to each other unnecessarily as much as possible." *M/V Uncle Robert*, 2020 WL 3576839, at *2.

### C. Bifurcation Will Reduce the Complexity of the Case and Potential Juror Confusion

There are many complex damages and liability issues for the jury to decide in this case. Bifurcation will increase juror comprehension and reduce juror confusion by focusing the jury on specific issues and streamlining the relevant proofs and instructions.

Lontex's arguments against bifurcation ignore the complexity of the case. Consider Lontex's list of 1,250 exhibits, 23 witnesses, 4 causes of action, and attempts to recover under 11 different bodies of state law. And consider the liability issues that the jury will need to resolve in the first phase alone, including whether Lontex's trademark is valid under two theories of

7

invalidity—fraud and abandonment—whether NIKE's alleged conduct was likely to cause confusion under the ten *Lapp* factors, and whether a complete affirmative defense applies, such as NIKE's fair use defense. That is a lot for a jury to consider and resolve. As a court explained when bifurcating liability and damages in a patent case, complicated proofs on intellectual property liability and damages issues can make it "likely that the jury will become confused if required to consume this amount of information at one time." *B. Braun Med. Inc. v. Abbott Lab'ys*, 1994 WL 468155, at *1 (E.D. Pa. Aug. 29, 1994). Such confusion benefits no one.

Yet Lontex wants the jury to resolve those sophisticated and nuanced liability issues at the same time it considers dense financial records and assesses an array of damages theories. Given the complexity of these theories, splitting them into separate trials allows jurors to focus on comprehending the issues and applying the complicated jury instructions on trademark validity, abandonment, fraud, likelihood of confusion, contributory infringement, unclean hands, and fair use. The jury's job will be simplified considerably during the liability phase because it would not need to grapple with complex damages issues while also deciding issues of validity, infringement, and fair use. Jury instructions will be shorter, more understandable, and focused for the jury tasked with applying them to the facts.

These considerations plainly weigh in favor of bifurcation. As the Third Circuit has explained, bifurcation is warranted when it "would prove beneficial by enhancing juror comprehension of the complex issues presented, and by excluding the presentation of lengthy evidence, some portion of which would inevitably become irrelevant." *See Barr Labs.*, 978 F.2d at 115 (affirming district court's bifurcation order). The Circuit has further recognized that "[s]everance of the question of liability from other issues can…improve comprehension of the issues and evidence." *See In re Paoli R.R. Yard PCB Litig.,* 113 F.3d 444, 452 n.5 (3d Cir. 1997);

8

*see also Wyeth v. Abbott Lobs*, 2010 WL 4553545 (D.N.J. 2010) (bifurcating liability and damages in patent case); *Static Control Components, Inc. v. Lexmark Intern., Inc.*, 2010 WL 4366130 (E.D. Ky. Oct. 28, 2010) (same); *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (bifurcation "reduces the number of legal principles the jury must consider and apply," thereby allowing trial to be "more efficient and focused"); *Alfwear, Inc.*, 2018 WL 6592728, at *2 (similar). These considerations weigh in favor of bifurcation.

### D. Bifurcation Will Avoid Prejudice to NIKE and Will Not Prejudice Lontex

Bifurcation under this proposal will not prejudice either party. NIKE's proposal to bifurcate and sequence trial before the same jury creates efficiencies and avoids prejudice to both parties. *See Alfwear*, 2018 WL 6592728, at *2. Lontex did not identify any prejudice when it addressed this issue in its pretrial memorandum, even though "avoiding prejudice" is a specific consideration for courts to consider under Rule 42(b). (ECF 246 at 16-18.) Lontex cannot articulate any conceivable prejudice that would result from bifurcation. *See Barr Lab'y*, 978 F.2d at 115 (affirming bifurcation order because party opposing bifurcation "failed to demonstrate any resulting improper prejudice from bifurcation").

By contrast, there is a significant risk of unfair prejudice to NIKE absent bifurcation because "damages evidence could distract and confuse the jury in this case." *Alfwear, Inc.*, 2018 WL 6592728, at *2. Lontex intends to portray NIKE as a bad actor because NIKE is a large company that has successfully sold millions of units of its popular NIKE Pro products. Lontex's narrative is highly prejudicial and not relevant to liability. Indeed, "juries are moved by sympathy when they have heard evidence of the extent of the plaintiff's injuries and that this influences their decision on the liability issue." WRIGHT & MILLER § 2390 SEPARATE TRIALS—SEPARATION OF LIABILITY FROM DAMAGES, 9A FED. PRAC. & PROC. CIV. § 2390 (3d ed.). Evidence regarding the volume of NIKE's sales is likely to distract, confuse, and mislead the jury on the paramount, case-

dispositive issues of validity, likelihood of confusion, and fair use. *See* FED. R. EVID. 403.

The risk of prejudice is particularly acute in light of Lontex's claim for *punitive* damages—which is essentially an inherently prejudicial request for the jury to *punish* NIKE based on financial evidence (like net worth) that has no bearing on liability.[3]  As the Third Circuit recognizes, courts can be "understandably concerned" that a jury's "knowledge of the defendant's net worth might influence its assessment" of the case. *McCann v. Miller*, 502 F. App'x 163, 171 (3d Cir. 2012). When those concerns are present, trial courts are well within their discretion to bifurcate trial and forestall possible confusion or prejudice. *Id.*; *see, e.g.*, *Of/Stemrich v. Zabiyaka*, 2014 WL 931069, at *2 (M.D. Pa. Mar. 10, 2014) (recognizing the risk that "the scope of the injuries Plaintiff suffered and the possibility of punitive damages could create prejudice against a wealthy company, as evidence of Defendants' net worth is relevant when presenting evidence on a claim for punitive damages but would not be relevant when presenting evidence on Plaintiffs' tort claims"); *see In re Asbestos Prod. Liab. Litig. (No. IV)*, 2010 WL 8033491, at *1 (E.D. Pa. Aug. 27, 2010) (bifurcating punitive damages); *Ely v. Cabot Oil & Gas Corp.*, 2016 WL 454817, at *6 (M.D. Pa. Feb. 5, 2016) (same).  Prejudice to NIKE thus would be avoided through bifurcation.

## V. CONCLUSION

For these reasons, NIKE requests that this Court grant its motion to bifurcate trial into two sequenced phases, which would be decided by the same jury in immediate succession.

---

[3] Punitive damages are not recoverable under the Lanham Act.  If Lontex's state law claims are deemed cognizable, NIKE plans to move to strike the claim for punitive damages before trial.  As a matter of law, Lontex cannot establish it is entitled to punitive damages under any state's laws.

May 4, 2021                                        Respectfully submitted,

                                                   By:  */s/ Gina L. Durham*

                                                   DLA PIPER LLP (US)

                                                   Ilana H. Eisenstein
                                                   Ben C. Fabens-Lassen
                                                   1650 Market Street, Suite 5000
                                                   Philadelphia, PA  19103

                                                   Gina L. Durham (*pro hac vice*)
                                                   555 Mission Street, Suite 2400
                                                   San Francisco, CA 94105

                                                   Frank W. Ryan (*pro hac vice*)
                                                   Andrew J. Peck (*pro hac vice*)
                                                   Michael D. Hynes (*pro hac vice*)
                                                   Marc E. Miller (*pro hac vice*)
                                                   1251 Avenue of the Americas
                                                   New York, NY 100201

                                                   *Attorneys for Defendant NIKE, Inc.*