IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NIKE, INC.,<br><br>　　　　　Defendant. | Civil Action No.  2:18-cv-05623-MMB<br><br>Hon. Michael Baylson |

**PLAINTIFF LONTEX CORPORATION'S BRIEF OUTLINING STATE LAW CLAIMS PURSUANT TO PRETRIAL ORDER [ECF NO. 254]**

　　　　Trademark infringement law is the same almost everywhere, with one leading commentator explaining: "While the Lanham Act generally does not preempt state law, state infringement and dilution claims generally add little to analogous federal claims.  Courts treat them as legally identical."  3 Gilson on Trademarks § 12.11.

　　　　However, a jury's ability to award punitive damages is a critical distinction.  Many state trademark infringement and unfair competition claims allow punitive damages, but it is not a remedy for Lanham Act violations.  As punitive damages is the only truly distinct remedy offered by the state law claims over the Lanham Act, Lontex's pursuit of Counts IV and V at trial are only sought to enable the jury to be afforded the opportunity to award such relief.

　　　　Lontex has long-asserted since the First Amended Complaint that the laws of the respective states of purchase govern, a position it has maintained through its pretrial memo.  Dkt. 235 (MSJ Order) p.1 (summarizing Counts IV and V).  If Lontex is correct on the state choice of law issues raised by Nike, Lontex intends to proceed with Count V at trial under Illinois, Georgia and Minnesota law, its state *statutory* claim.  Those states provide for punitive damages and have the same substantive standards for establishing trademark infringement.

However, if <u>Nike</u> is correct on the state choice of law issues it raises, and Pennsylvania substantive law instead governs the state law Counts, then Lontex intends to proceed instead with Count IV, its state claim for *common law* trademark infringement and unfair competition. Such claim is of course limited to infringement occurring from December 31, 2016, pursuant to the Court's prior ruling that it is timely as to "infringement…occurring prior to the two years preceding the filing of this lawsuit." Dkt. 235 (MSJ Order) p.1.

In this way, the state law claims will be pursued at trial in such a way as to accomplish their purpose – to permit consideration of punitive damages.  Against this backdrop, Lontex addresses each of the four items ordered for this brief.

**I.**     **ADDRESSING ANY CHOICE OF LAW ISSUES**

**A.     Count V**

State unfair competition laws are state-specific rather than extraterritorial, as any one state "is not permitted, however, to extend its unfair competition law to other states." *Allergen, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1359 (Fed. Cir. 2013).  For one state's unfair competition laws to apply "outside of the state's borders…would violate the Commerce Clause." *Id.* "This rule applies regardless of whether [a Plaintiff] can demonstrate that the laws of other states do—or even could—conflict with" the state's unfair competition laws.  *Id.*

Thus there is no "choice of law" analysis.  Each state's laws govern the sales into its borders.  *See, e.g. Miche Bag, LLC v. Be You, LLC,* 2011 U.S. Dist. LEXIS 110179, *17, 2011 WL 4449683 **17-18 (N.D. Ill. Sept. 26, 2011) (To raise a claim under the UDTPA, "the circumstances that relate to the disputed transaction [must] occur primarily and substantially in Illinois.").

Even so, since state law is identical for the most part, and this choice of law issue rarely arises as federal courts and litigants simply default to their forum's laws in the absence of an

asserted conflict.  *Riordan v. H.J. Heinz Co.*, 2009 U.S. Dist. LEXIS 70713, *10, 2009 WL 2485958 (W.D. Penn. Aug. 12, 2009) (Stating Pennsylvania rule that, "[i]f their respective laws are the same, there is no conflict at all and the choice of law analysis ends; Pennsylvania law would apply.").  In such instance, applying the forum law is just the same as applying another state's law – the one is simply a surrogate or stand-in for the other.  But a hundred case citations passing over this issue of extraterritoriality could not change that one state is powerless to regulate unfair competition or infringement in another state.  *Athena Cosmetics, Inc.*, 738 F.3d at 1359.

Nevertheless, even under a traditional choice of law analysis here, each of Illinois, Georgia and Minnesota's statutory claims govern sales into their respective borders, not Pennsylvania's UTPCPL.  "[C]hoice-of-law analysis is conducted on a claim-by-claim basis," and here the claims at issue are the states' respective statutory trademark infringement or unfair competition claims (Count V).  *Powell v. Subaru of Am., Inc.*, 2020 U.S. Dist. LEXIS 220096, *27, 2020 WL 6886242 (D.N.J. Nov. 24, 2020).

Nike contends that Lontex as a competitor simply lacks standing to pursue trademark infringement under the UTPCL, and instead consumers are the ones with standing.  Dkt. 249 (Nike pretrial memo) pp. 17-18.  As discussed in Section III(A) below, each of the other three states have acted to provide competitors standing to pursue statutory claims against competitors who cause likely confusion of their residents.  Thus, they have expressed a stronger interest in protecting unfair competition for sales to consumers within their borders, putting competitors in a position to pursue such violations under a statutory claim.  Pennsylvania has no interest in *depriving* competitors of standing to pursue a claim of likely confusion of residents of another

state, particularly where the states in which the purchasers are located look to the competitor for the very purpose of protecting their residents.

Accordingly, this is a situation of a "false conflict" where "one jurisdiction's governmental interests would be impaired if its laws were not applied," a conflict for which "the court must apply the law of the only interested jurisdiction." *Riordan*, 2009 U.S. Dist. LEXIS 70713, *10, 2009 WL 2485958. Consistent with the limitations on extraterritorial application of unfair competition laws, Georgia law should apply to sales into Georgia, Illinois for sales into Illinois, and Minnesota for sales into Minnesota.

### B. Count IV

The parties need not contest which law should be applied for the common law count. As Pennsylvania common law trademark infringement and unfair competition claims need not be brought by competitors, and permit punitive damages, Lontex is not aware of any false or true conflict of law that would necessitate looking outside of Pennsylvania law. (*See* previous subsection). Thus, the jury may simply be instructed on Pennsylvania law for purposes of Count IV.

## II. EACH OF THESE CLAIMS IS TIMELY

### A. Count V

Count V is timely. Lontex's prior summary judgment already successfully defeated Nike's statute of limitations defense as to its state law Count V, with the Court granting summary judgment "with respect to Nike's fourteenth affirmative defense (statute of limitations)." Dkt. 235 p.1.

The Court's ruling came after identifying all 11 states Lontex brought the state law claim under for State Trademark Infringement and Unfair Competition, (Dkt. 234 pp. 1-2), confirming unequivocally "[t]he parties are also in agreement that Pennsylvania law applies to Lontex's state

law claims *for purposes of determining the statute of limitations*," and finding that the relevant Pennsylvania statute was "a six-year statute of limitations" for which "Count V was brought within this period." Dkt. 234 pp. 1, 6-7 (emphasis added).  The parties and Court invested substantial resources on summary judgment getting to that point.

Lontex's concession that Pennsylvania law governed statute of limitations was the result of Nike's assertion that regardless of where the claims accrued, Pennsylvania's "borrowing statute" mandated Pennsylvania's statute of limitations, and Nike's unqualified concession in briefing that "Pennsylvania law applies." Dkt. 201 p. 39 & n.17.  Nike did so, while acknowledging the borrowing statute applies the shorter of the Pennsylvania or foreign limitations periods, 42 PA. Const. Sat. § 5521(b), but never proposing any alternative foreign limitations period in the event the Court elected Pennsylvania's six-year limitations period. *Id.* n.17.

Thus, Nike's statute of limitations defense was rejected on summary judgment and Nike should be prevented from using its pretrial memo to suggest that the parties and Court revive its defense and on this second bit at the apple instead look to other limitations periods instead of Pennsylvania's to govern Count V.  Fed. R. Civ. P. 56, Advisory Committee Notes (purpose of summary judgment is "speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact").

In any event, for the three states for which Lontex will pursue Count V for at trial, it makes no difference:

> ➤ Illinois: Illinois's limitations period for ongoing trademark infringement runs from the *end* of the infringement period, and makes claims as to the entire infringement timely so long as brought within three years of the infringement

ceasing. *Gredell v. Wyeth Labs., Inc.*, 346 Ill. App. 3d 51, 57-59 (2004) applying 815 ILCS 505/10a(e). Nike's opposition to summary judgment on its limitations defense conceded it did not even receive a demand letter until April 8, 2016, (Dkt. 201-01 at Undisputed SOF No. 13), and that its infringement continued through at least September 2016, (Dkt. 201 p.33 citing Dkt. 192 at SOF No. 175). Suit was brought less than three years later in December 2018. Dkt. 1. Hence, the limitations period is immaterial and Nike would not have overcome its dismissal even had it been raised on summary judgment.

- ➢ Georgia: Georgia's applicable Uniform Deceptive Trade Practices Act has a four-year limitations period. *Kason Indus. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1204-1205 (11th Cir. 1997). Thus, as Nike concedes "starting sometime in 2015" its use of "cool compression" began, (Dkt. 191-1 p.11 citing Dkt. No. 192 at SOF 139, 173-174), the earliest its limitations would have run was four years later – "sometime" in 2019. But since suit was brought at the end of 2018, even the Georgia limitations period could not bar this claim.

- ➢ Minnesota: Minnesota's applicable Uniform Deceptive Trade Practices Act has a six-year limitations period, the same as Pennsylvania. *Axcan Scandipharm v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1077 (D. Minn. 2007) applying Minn. Stat. § 541.05(2).

Thus, Count V is timely as to the three states for which Lontex intends to pursue at trial state statutory trademark infringement and unfair competition pursuant to Count V.

**B. Count IV**

As to Count IV, Lontex only intends to pursue this claim to the extent the Court agrees with Nike that Pennsylvania law governs the state law claims. As this Court already held, Count

IV is timely under Pennsylvania law for all "infringement…occurring prior to the two years preceding the filing of this lawsuit." Dkt. 235 (MSJ Order) p.1.

### III.   THE ELEMENTS THAT LONTEX MUST PROVE AND RELIEF AVAILABLE, AND HOW EACH OF THOSE ELEMENTS AND FORMS OF RELIEF ARE OR ARE NOT OVERLAPPING WITH THE LANHAM ACT

#### A.   Count V

All three states have a virtually identical form of the Uniform Deceptive Trade Practice Act, and Illinois also has an Unfair Business Practices Act, with each satisfied by a showing of likely confusion.  Each of these statutes simply requires Lontex show a likelihood of confusion, the same standard as under the Lanham Act, and have no rules against a competitor bringing such claim.  If is for these reasons that such state law claims are typically pursued alongside Lanham Act claims.  *Kason Indus.*, 120 F.3d at 1203 n.6.

The only difference with each is that it applies to only those portions of the nationwide sales of products sold into the respective state.  (*See* previous section).

- Illinois:  Illinois enacted the Uniform Deceptive Trade Practices Act, and incorporated it as a specified violation that satisfies the Illinois Consumer Fraud and Deceptive Practices Act (also known as the "Consumer Fraud Act"). 815 ILCS 510/1 and 815 ILCS 505/2.  To prove a violation for trademark infringement, it applies the same trademark infringement test for violations as the Lanham Act, namely whether defendant's actions created a likelihood of confusion.  *TV Land, L.P. v. Viacom Int'l*, 908 F. Supp. 543, 553 (N.D. Ill. 1995) (both state statutes apply "the same likelihood of confusion among consumers" test as trademark infringement under Lanham Act).  There are no additional rules or restrictions on competitors, as any injured person may pursue a claim, including competitors.  *National Football League Properties, Inc. v. Consumer*

*Enterprises, Inc.*, 26 Ill. App. 3d 814, 819-20 (1975); *Clairol, Inc. v. Andrea Dumon, Inc.*, 14 Ill. App. 3d 641, 650, 303 N.E.2d 177, 184 (1973); *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F. Supp. 1486, 1494 (N.D. Ill. 1987).

- Georgia: The Georgia Uniform Deceptive Trade Practice Act provides a statutory trademark infringement cause of action "when in the course of [one's] business, vocation, or occupation, he…Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services" or "as to affiliation, connection, or association with or certification by another." Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-372. It is "governed by the same standard" as an infringement claim under the Lanham Act. *Kason Indus. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997). Any injured person may bring a claim, they need not be a consumer or show consumer injury. *In re Johnston Indus.*, 300 B.R. 821, 822-23 (Bankr. M.D. Ga. 2003); *cf. Kason Indus. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 n.6 (11th Cir. 1997) (noting common practice of bringing claim for trademark claims for both Lanham Act and under Georgia UDTPA together).

- Minnesota: Minnesota's UDTPA is enacted at M.S.A. 325D.44 and 325D.45. It is the same statutory language as Illinois and Georgia, and any party likely to be damaged may bring a claim. *See also* M.S.A. §8.31, subd. 3a. ("any person injured by a violation" may sue). As with the Lanham Act, a likelihood of confusion finding "is sufficient" to establish liability. *Claybourne v. Imsland*, 414 N.W.2d 449, 451 (1987).

In Opposition, Nike may attempt to point to cases that somehow emphasize or put a gloss on particular aspects of the claims. That would be a mistake. The ultimate issues remain the same, an open-ended consideration of all facts that impact the ultimate question of whether Nike's conduct created a likelihood of confusion.

Thus, the same acts that constitute Lanham Act infringement occurring into or within Illinois, Georgia and Minnesota make Nike liable under those states' laws as well.

### B.  Count IV

For Count IV, "[t]he elements of a cause of action for unfair competition under Pennsylvania common law are identical to those under [federal law], with the exception that the goods need not have traveled in interstate commerce." *Guardian Life Ins. Co. v. American Guardian Life Assur.*, 943 F. Supp. 509, 517 (E.D. Pa. 1996). Thus, a finding under the Lanham Act establishes Count IV as well.

### C.  The Relief of Punitive Damages

#### 1.  Count V

Lontex will be seeking Count V for purposes of punitive damages, not to ask for duplicative relief. It is generally accepted that punitive damages are not an available remedy for the Lanham Act. For these three states, each provides for punitive damages:

- Illinois: "[I]t is undisputed that punitive damages are available for a violation of the Consumer Fraud Act." *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 356 (2009) citing and applying 815 ILCS 505/10a(a).

- Georgia: Georgia's remedies specified in the UDTPA are merely "cumulative" and by its terms it also imports "remedies otherwise available against the same conduct under the common law or other statutes of this state." O.C.G.A. § 10-1-373(c). Thus, punitive damages are available. O.C.G.A. § 51-12-5.1 (punitive

damages available in tort action); *Maki v. Real Estate Expert Advisors, Inc.*, 358 Ga. App. 337, 338 (2021) (lower court awarded punitive damages for Georgia UDTPA violation).

➢ Minnesota: The statutory language for Minnesota is the same as Georgia, importing remedies available "under the common law or other statutes." Minnesota Statute 325D.45(c). Minnesota provides for punitive damages in any "civil actions," including ones involving mere injury to property. *Jensen v. Walsh*, 623 N.W.2d 247, 251 (Minn. 2001); *Molenaar v. United Cattle Co.*, 553 N.W.2d 424, 426-430 (Minn. App. 1996). Thus, punitive damages are available under Minnesota law.

Each of these states requires clear and convincing evidence of sufficiently culpable conduct, those lists are relatively standard, and of the list of culpable conduct Lontex limits itself to the usual suspects for trademark cases. Namely, going by state:

➢ Georgia: Georgia's necessary culpability includes willful misconduct, wantonness, oppression or that entire want of care that would raise the presumption of conscious indifference to consequences, and may go over $250,000 where done with a specific intent to harm. 1 Ga. Jury Instructions - Civil § 66.700; Ga. Code Ann. § 51-12-5.1(b).

➢ Illinois: Illinois's list overlaps (intentional, willful, or wanton disregard), but also includes is satisfied by gross negligence that indicates wanton disregard, and has no cap. Illinois Pattern Jury Instructions-Civil-35.00 Punitive Damages.

➢ Minnesota: Minnesota's standard is simply "deliberate disregard for the rights or safety of others." MINN. STAT. § 549.20(1).

115560945v1

2. **Count IV**

Punitive damages may be awarded for a Pennsylvania common law unfair competition claim. *Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 272 (3d Cir. 1975) citing *Macdonald v. Winfield Corp.*, 191 F.2d 32, 38 (3d Cir. 1951) (affirming punitive damages award under Pennsylvania state unfair competition claim); *Sandoz Inc. v. Lannett Co.*, 2020 U.S. Dist. LEXIS 242558, *18, 2020 WL 7695960 (E.D. Penn. Dec. 28, 2020) (The Pennsylvania "Superior Court [has] upheld an award of punitive damages for tortious interference and unfair competition"); *cf. Hutchison v. Luddy*, 582 Pa. 114, 125-126 (2005) (punitive damages available even on claim of liability for negligence; it is "error of law" to "conflate[] theories of liability with the distinct issue of damages"). The jury may award punitive damages for "willful, wanton or reckless conduct" including "reckless indifference to the rights of others." *Hutchison*, 582 Pa. 121-122.

IV. **A STATEMENT OF HOW LONTEX PLANS TO PRESENT ANY EVIDENCE CONCERNING EACH OF THESE STATE LAWS AT TRIAL AND HOW THE COURT SHOULD INSTRUCT THE JURY ON THIS ISSUE**

1. **Count V**

Lontex's trial presentation plan is straightforward. Its expert David Drews broke down sales by state in his February 2020 expert report, both <u>Lontex's</u> sale of Cool Compression garments and <u>Nike's</u> sales of the Accused Products. Dkt. 192-02 at Ex. 7 (Drews Report) at Schedule 1.

**Lontex Corporation v. Nike, Inc.**
**Cool Compression Product Sales by State**
**Lontex, Nike and Nike Retailer Customers**

| State | Lontex 2006 - 2014 | | Lontex 2015 - 2019 | | Nike Wholesale | | Nike Retail | | Non-Nike Retail | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Units | Revenue | Units | Revenue | Units | Revenue | Units | Estimated Revenue[1] | Units | Estimated Revenue[2] |

Only the sales figures for three states from that list need be presented (Illinois, Georgia and Minnesota), and will be presented through David Drews.  The presentation need not take more than a few minutes at trial.

In reaching a verdict, in addition to the Lanham Act claims, a single additional jury interrogatory would then ask the jury to answer:  <u>Did Nike create a likelihood of confusion in violation of Lontex's trademark rights in the mark COOL COMPRESSION in the states of Illinois, Georgia or Minnesota?</u>

If the jury answers in the affirmative, then they will be asked whether they find any of the three standards of culpability for punitive damages (*see* previous Section III(A)) satisfied.

There need be no additional presentation of evidence in between.  The evidence going to culpability will *already have been presented* in connection with at least <u>Lapp</u> Factor 5.  This inquires into Nike's willfulness and intent in selecting and using the mark.  Dkt. 234 (MSJ Ruling) p.21 ("Willfulness can be inferred by the fact that a defendant continuing infringing behavior after being given notice.") quoting *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567,583 (E.D. Pa. 2002).  Similarly, just as <u>Lapp</u> Factor 5 for reverse confusion will look into all facts going to whether Nike was "*careless*," such facts necessarily relate to whether Nike's actions rose to the level of deliberate indifference or gross negligence for punitive damages purposes.  *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 479-480 (3d Cir. 1994).[1]

Prior to the jury retiring to deliberate, the jury will also have already been presented with the evidence it needs to assess the *amount* of punitive damages.  That is because Nike's sales and profits are relevant to no less than three other liability and damages issues, including as noted in

---

[1] Forward confusion's willfulness inquiry is also satisfied by conduct "the equivalent of recklessness," which is virtually synonymous with the punitive damages inquiry of deliberate indifference.  *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1498 (2020) (Hon. Sotomayor, concurring).

the bifurcation briefing: (1) multiple Lapp factors, (2) profit disgorgement, and (3) reasonable royalty.  *See also* Dkt. 192-02 at Ex. 7 (Drews Report) at *e.g.* pp.13 (evaluating profit margins for determining reasonable royalty), 18 (evaluating sales for purposes of royalty base).

Thus, Lontex does not anticipate any sequencing or additional presentation of evidence necessitated by asking the jury to assess culpability and (if sufficient culpability is found) select an appropriate amount of punitive damages.

## 2. **Count IV**

There is no need to break down sales by state as with Count V for purposes of determining liability, as Pennsylvania substantive law would resolve the state law claim for nationwide sales.  (*See* Section I(B) above.)

Instead, because Count IV is limited to sales from December 31, 2016 onward, David Drews would break out the sales figures from December 31, 2016 forward (similar to his breakout of pre-notice and post-notice sales figures).  *See* Dkt. No. 190-02 at Ex. 8 (David Drews Supplemental Report) at Supplement 1 (graph and chart):

| Nike Sales… | | | | | | | |
|---|---|---|---|---|---|---|---|
| …From Inception through Demand Letter | …From Inception through Promise to Stop | …From Inception through Internal Stop Statement | …From Demand Letter through End of 2018 | …From Promise to Stop through End of 2018 | …From Internal Stop Statement through End of 2018 | …From Demand Letter through Promise to Stop | …From Demand Letter through Internal Stop Statement |
| 1/1/15 - 4/8/16 | 1/1/15 - 7/19/16 | 1/1/15 - 9/15/16 | 4/9/16 - 12/31/18 | 7/20/16 - 12/31/18 | 9/16/16 - 12/31/18 | 4/9/16 - 7/19/16 | 4/9/16 - 9/15/16 |

The same analysis as Claim V applies with respect to the overlap between liability and damages under the Lanham Act and punitive damages under state law.  The information needed to determine whether and how much punitive damages to award will have already been presented.  (*See* Section IV(A) above.)

Dated: May 4, 2021　　　　　　　　　　TROUTMAN PEPPER HAMILTON
　　　　　　　　　　　　　　　　　　　SANDERS LLP


　　　　　　　　　　　　　　　　　　　By: *Ben L. Wagner*
　　　　　　　　　　　　　　　　　　　　　Ben L. Wagner (CA SBN 243594)
　　　　　　　　　　　　　　　　　　　　　ben.wagner@troutman.com
　　　　　　　　　　　　　　　　　　　　　*Admitted Pro Hac Vice*
　　　　　　　　　　　　　　　　　　　　　11682 El Camino Real, Suite 400
　　　　　　　　　　　　　　　　　　　　　San Diego, CA  92130-2092
　　　　　　　　　　　　　　　　　　　　　Telephone:   858.509.6000
　　　　　　　　　　　　　　　　　　　　　Facsimile:    858.509.6040

　　　　　　　　　　　　　　　　　　　　　Michael A. Schwartz (PA 60234)
　　　　　　　　　　　　　　　　　　　　　TROUTMAN PEPPER HAMILTON
　　　　　　　　　　　　　　　　　　　　　SANDERS LLP
　　　　　　　　　　　　　　　　　　　　　3000 Two Logan Square
　　　　　　　　　　　　　　　　　　　　　Eighteenth & Arch Streets
　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103-2799


　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　　　　LONTEX CORPORATION

115560945v1

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2021, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                            s/*Ben L. Wagner*
                                            Ben L. Wagner