**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LONTEX CORPORATION | Civil Action No.  2:18-cv-05623-MMB |
| Plaintiff, | Hon. Michael Baylson |
| v. | |
| NIKE, INC., | |
| Defendant. | |

**PLAINTIFF LONTEX CORPORATION'S REPLY BRIEF RE STATE LAW CLAIMS**
**PURSUANT TO COURT ORDER [ECF NO. 264]**

**[*Portions Filed Under Seal Pursuant to Stipulated Protective Order*]**

116687654

I.      **ISSUES**

1.      *After stating in its pretrial memo that it was abandoning its state law claims in Count IV, Plaintiff appears to be contending in its brief on state law claims that, if this Court were to hold that it could not pursue Count V under the laws of other states, Lontex still intends to pursue Count IV under Pennsylvania law.  Please explain this contradiction.*

**Plaintiff's Response**:

Lontex never intended to and did not indicate an intent to abandon its state law claims altogether, but, given Nike's choice of law arguments, Lontex modified its position so that it would not be prejudiced in pursuing its claims.  Thus, the apparent inconsistency comes from the difference between the choice of law and extraterritoriality position taken in Lontex's Pretrial Memo that presupposed its indication of which state-law claims it intended to pursue at trial and the subsequent choice of law position posited by Nike.  If one were to assume Pennsylvania substantive law governs both Counts IV and V, then Lontex could only pursue Count IV.  Thus, Lontex's present position accounts for both choice of law possibilities.

Lontex's Pretrial Memo presupposed that Lontex had the power to elect under which state laws it would pursue certain claims.  Section 7(B) of its Pretrial Memo (at page 18) stated Lontex's position that under circuit-level authority to address the issue, each state's own laws apply to unfair competition in its own state without extraterritorial effect.  Thus, Lontex surveyed the state unfair competition laws available to it under this supposition for its Counts IV (common law) and Count V (statutory), and indicated its selection of seven states for Count V.  *Id.*

This position concerning Lontex's right to elect which state's laws applied has been advanced since the very first Complaint, in which Lontex clearly articulated to which specific state-law regimes it believed each Count IV and Count V applied.  Complaint (Doc. No. 1), ¶ 70.  Nike recognized this from the outset as well.  Nike Mtn. to Dismiss (Doc. No. 18-1), p. 4

- 1 -

(arguing that Lontex had obligation to spell out claims for "sixteen different states" to satisfy "each jurisdiction's laws").

On summary judgment, the parties agreed Pennsylvania's statute of limitations applied for purposes of Nike's summary judgment motion, but that was because Pennsylvania's borrowing statute for statutes of limitations made it applicable, whether or not the state-law claims arose under Pennsylvania substantive law. Nike's Oppo. to MSJ (Doc. No. 201), p. 39 n.17; 2021-02-02 MSJ Hearing Tr. 6:10-11.

However, Nike's position in its Pretrial Memo was nevertheless that Lontex did not have the power to elect which state's unfair competition laws it seeks redress under its Complaint and that under choice of law analysis, only one state's unfair competition law applies here and that state should be Pennsylvania. Nike's Pretrial Memo (Doc. No. 249), pp. 18-19). According to Nike, this meant Lontex's only choice was to choose to proceed under Pennsylvania substantive unfair competition law, a point reiterated in its Opposition here. *Id.*; Nike's Brief re State Law (Doc. No. 260), p. 1. If this were the case, then Lontex could not pursue a claim under Count V (as it is not a consumer) and its avenue for pursuing state law claims would be through Count IV, as Pennsylvania common law unfair competition has no such limitation. As Lontex's Pretrial Memo makes clear, while intending to streamline state law claims, Lontex has every intention of pursuing a state law claim. Lontex Pretrial Memo (Doc. No. 245), p. 18, section V(B) (titled "Streamlining of Lontex's State Law Claims").

As a result, Lontex's position in its brief accounts for both possibilities on the choice of law issue: (1) if Lontex is correct in its position on the choice of law and extraterritoriality, then Lontex elects the 3 states from the 14 that Lontex expressly listed in its First Amended Complaint (of which Pennsylvania was not one), (2) if Nike is correct in its position that Lontex

does not have the power to elect and must rely upon Pennsylvania substantive law or none at all, then Lontex would still pursue under Pennsylvania common law in such instance, having never expressed a desire to abandon its state law claims altogether.

2.      *In contending it seeks punitive damages under the laws of three states (Illinois, Georgia, and Minnesota) in Count V, Plaintiff shall disclose whether, in the factual record of this case, there is any evidence that Plaintiff competed against Defendant as to the products at issue in this case in these three states.  If so, Plaintiff shall identify this evidence with reference to ECF if filed, or attach exhibits which have been disclosed in discovery.  If this evidence is not in the record, what case or statutory law allows for such a claim in this case?*

**Plaintiff's Response**:

*Anybody* who is damaged by unfair competition or trademark infringement may sue under the laws of Illinois, Georgia, and Minnesota, rather than merely a consumer.  The brief submitted by Lontex was not intended to indicate that there is any "competitor" standing requirement under the laws of these three states, but rather to distinguish these statutory regimes from other states' statutory schemes that courts have held do expressly limit such claim to consumers and thus do not permit competitor claims.  *See* Lontex Brief re State Law (Doc. No. 256), pp. 7 (Illinois: "[A]ny injured person may pursue a claim, including competitors" (citing cases)), 8 (Georgia: "[A]ny injured person may bring a claim, they need not be a consumer" (citing cases)), 8 (Minnesota: "any person injured" may sue (quoting statute)).  Lontex does not understand Nike's response brief to indicate any "competitor" requirement.  Thus, Lontex's state law claims are coextensive for liability with its Lanham Act claims.

That said, the parties did compete in these three specific states as to the products at issue, and the record so indicates.  Docket 190 at Exhibit 7 (sealed) is the David Drews initial Expert

- 3 -

Report ("Drews Report").  Schedule 1 shows Lontex's sales by state for 2015 through 2019 and

Nike's sales by state from 2015 through 2018.  The relevant entries are shown below, and show

that both parties sold these competing products into the same three states.

█████████████████████████████████████████████████████████████████

Additionally, Lontex's team sales to pro teams located in those states also decreased for

the teams to which Nike made supplanting sales of its products at issue.  Nike's sales began Fall

2015 and ██████ 2016/2017.  As shown above, Lontex's sales in Illinois starting in the

infringement period dropped precipitously from pre-infringement levels, and sales also dropped

in Minnesota.[1]  Illinois was the single state in which Lontex had the <u>most</u> pre-infringement unit

sales, selling even ██████ of the at-issue products than in its home state of Pennsylvania and

██████ units than the next state after that—but fell back to fourth place in the infringement

period when Nike flooded the Illinois market with ██████ of the Accused Products.  *See id.*

at Schedule 1.

And, for Georgia's Atlanta Falcons, where Nike supplanted Lontex's sales with sales of

its own Accused Products, sales went down ██████ from 2015 to 2016, with the 2017 and

2018 sales ██████ even the depressed 2016 sales.  Lontex Trial Ex. 13(e)

(LTX_EDPA_00036844) at Sheet 2); Lontex Trial Ex. 44(b) (NIKE-00044256) (Lontex had

attached to this Reply the relevant selection containing the entries for sales invoices to the

Falcons of Accused Product).  Georgia also was ██████████████ flooded by Nike,

---

[1] Even taking into account the difference in time periods for the above graph (9 and 5 years), the average yearly
sales during each period were nearly ██████ after the infringement began in 2015.

receiving ████████ unit sales of any state (and totaling ████████ in retail sales). Drews Report at Schedule 1.

Competitor status in these three states (and in all states if Pennsylvania law is found to govern the state law unfair competition claims regardless of the location) is also shown by the same overall proof submitted on summary judgment, showing that Lontex and Nike are competitors for the products at issue.  After Lontex's showing of competitor status on Lapp Factors 7 through 9 in its summary judgment Opposition as proof that confusion was likely, Nike did not even attempt in its Reply brief to further dispute such competitor status.  *See* Lontex Opp. (Doc. No. 203) at section B(6), pp. 51-57; Nike Reply, p. 3 (urging case is similar to other case involving alleged "directly competing goods"), pp. 5-13 (addressing only Lapp Factors 1-2, 4-6).

This brief is too abbreviated (limited to 7 pages total) to fully catalogue the relevant 7 pages of summary judgment briefing, 11 statements of fact,[2] and 22 exhibits,[3] but in sum the competition between Lontex and Nike is based on: (1) sales to the exact same sports teams handled by the same equipment managers and athletic trainers, (SAF 327, 334, 338), (2) both parties' at issue products are base layer compression shirts, shorts and tights, (3) both advertise to at least two other core demographics beyond pro teams and athletes—serious non-professional athletes and those looking for compressive technology with 4-way stretch for increased range of

---

[2] Lontex  Statement of Facts ISO Oppo. to MSJ (Doc. No. 205) at Statements of Fact Nos. 102 & 113 and Statements of Additional Fact Nos. 316, 327, 334, 338, 339, 352, 353, 354.
[3] **Lontex MSJ Exhibits (Doc. No. 203 et seq.):** Ex. 29 ("Bechtel Tr.) pp. 244:17-245:25, Ex. 39 ("Nathan Tr.") pp. 42:5-43:15, 287:16-289:21, 398:4-13, Ex. 41 (Williams Tr.) 1pp. 59:16-160:16; Ex. 43 p.5 (No. 1) and p.58 (No. 18); Ex. 54 pp. NIKE-00042164, 00042173, 00042177, NIKE-00033634; Ex. 86 (Twitter) p. LTX_EDPA_00024559; Ex. 87 (Google printout) p. LTX_EDPA_00036847
**MSJ Declarations (Doc. No. 208 et seq.):**  Declarations of Ball, Kozak, Smith, Cunningham, Leo, Dugger, Peduzzi, and Griffin at ¶¶ 8-9.
**Nike MSJ Exhibits (Doc. No. 193):** Exhibit 240 at LTX_EPA_00026256
**Lontex Daubert Oppo.:** Exhibit 1 (Doc. No. 202-2) ("Parkhurst Supp. Info.") at 2-3
**Durham Decl. ISO Daubert Exhibits (Doc. No. 190-02 et seq.):** Ex. 4 ("Parkhurst Rep."), ¶¶ 28, 100, 102, 106; Ex. 5 ("Parkhurst Supp. Rep."), ¶¶ 5, 16-44; Ex. 7 ("Drews Report") at Schedules 1 and 9; Ex. 8 ("David Drews Supplemental Report") pp. 15-19, 28; Ex. 10 ("McDonald Report") ¶16.

116687654

motion and proprioception, (SAF 339), (4) the two were competitive enough that Lontex's regular sales presentations and discussions critiqued Nike compression products in promoting Lontex's compression products, (SAF 105, 113), (5) the products were sold in the same states, (SAF 339), (6) Nike was everywhere that Lontex was with at least 80 million online views of the Accused Products and robust direct mailing, marketing, and social media, (SAF 316, 352), (7) people regularly have both Lontex and Nike products, (Lontex MSJ, Ex. 41, pp. 159-160), and (8) Twitter and Google searches show that Nike's Accused Products and Lontex's infringed products are promoted and displayed to viewers side by side, (SAF 353-354).

*    *    *

Thus, Lontex's state law claims asserted since the outset of this case should proceed to trial along with its remaining claims.  Whether that is Count IV under Pennsylvania law as Nike posits is the applicable law, or Count V under Georgia, Illinois and Minnesota law as Lontex posits is the applicable law, either way Lontex should be entitled the opportunity to pursue at trial a state law claim that allows the additional remedy of punitive damages.  There are no special standing requirements and, even if competitor status were a germane threshold inquiry, the evidence is more than ample for the jury to find such status present–including for the states at issue.

116687654

Dated:      June 8, 2021                    TROUTMAN PEPPER HAMILTON
                                            SANDERS LLP


                                    By: *Ben L. Wagner*
                                        Ben L. Wagner (CA SBN 243594)
                                        ben.wagner@troutman.com
                                        *Admitted Pro Hac Vice*
                                        11682 El Camino Real, Suite 400
                                        San Diego, CA  92130-2092
                                        Telephone:   858.509.6000
                                        Facsimile:   858.509.6040

                                        Michael A. Schwartz (PA 60234)
                                        TROUTMAN PEPPER HAMILTON
                                        SANDERS LLP
                                        3000 Two Logan Square
                                        Eighteenth & Arch Streets
                                        Philadelphia, PA 19103-2799


                                        *Attorneys for Plaintiff*
                                        LONTEX CORPORATION


## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2021, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


                                    *s/Ben L. Wagner*
                                    Ben L. Wagner

116687654