## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION | Civil Action No.  2:18-cv-05623-MMB |
| Plaintiff, | Hon. Michael Baylson |
| v. | |
| NIKE, INC., | |
| Defendant. | |

**PLAINTIFF LONTEX CORPORATION'S BRIEF ON EVIDENCE OF COOL AND COMPRESSION PURSUANT TO PRETRIAL ORDER [ECF NO. 254]**

*Portion Filed Under Seal Pursuant to Stipulated Protective Order*

The Court's Pretrial Order provides "any evidence regarding Plaintiff or Nike's clothing or advertisements, etc. will be strictly limited to those items that use the words 'cool compression' unseparated by other words, unless either party can show that any other usage is relevant to an issue in the case in which event briefs on this issue shall be filed by July 9."

Plaintiff Lontex Corporation ("Sweat It Out") hereby submits the following brief respectfully requesting that the Court allow the jury to consider evidence of Nike and its retailers using the mark in a confusingly similar manner with abbreviations or separation between the words Cool and Compression, such as "Cool 6" Compression" or "CL COMP."

*First*, even if these variants were the only accused marks at issue in this case, such product mark usages are still relevant instances of infringement for the jury to determine, given the Third Circuit law on the breadth of marks similar enough to warrant jury determination.

*Second*, these variations were also part and parcel of many of the infringing "Cool Compression" uses, making them further relevant to infringement.  For example, Nike initially sold products to retailers in its catalog using "Cl Comp" abbreviated due to text limits, and the retailers then turned around and (just as expected) sold using the full "Cool Compression" name.

*Third*, details as to the use by Nike of the term "Cool" (as is "Nike Pro Cool") is relevant to provide basic context for both infringement and fair use and should be allowed in moderation.

## I.     TRADEMARK INFRINGEMENT IS A FACT-SENSITIVE INQUIRY OF CONFUSINGLY *SIMILAR* USE, NOT *IDENTICAL* USE

Use of "Cool" in product names without any variation of "Compression" has never been asserted as infringing by Sweat It Out in this case, as confirmed at the March 2020 omnibus hearing.  But product names using abbreviations of "Cool Compression," or keeping the two words in sequence but including content between the two words, have always been asserted and are relevant to the case Lontex is presenting to the jury:

117312380

| Dkt. 203-19 at NIKE-00045072 and NIKE-00045075 | |
|---|---|
| **NIKE PRO COOL COMPRESSION 3/4 TIGHT   828642   $32.00**<br><br>SIZES: S, M, L, XL, 2XL, 3XL, 4XL   FABRIC: 92% polyester/8% spandex.<br>OFFER DATE: 01/01/16   END DATE: 10/01/17<br>Key technology: Dri-FIT fabric, key features: lightweight & breathable, flatlock seams to reduce irritation from chafing. Provides moisture management for gameday, what's new and improved: mesh gusset and inner leg panel for increased zoned thermoregulation. Updated npc waistband, who is this for/type of workout: indoor/outdoor gameday or training, fit and feel: lightweight all over four-way stretch jersey provides mobility and compression fit for locked in feel and increased proprioception. Hip width: 15.5", Inseam length: 18" (size large).<br><br>010  Black/(White)            022  Carbon Heather/(Black)            100  White/(Black)<br><br>DRI-FIT | For the jury |
| **NIKE PRO COOL 6" COMPRESSION SHORT   728049   $28.00**<br><br>SIZES: S, M, L, XL, 2XL, 3XL   FABRIC: 100% polyester.<br>OFFER DATE: 10/15   END DATE: 10/17<br>Key technology: Dri-FIT fabric. Key features: Lightweight & breathable, flatlock seams to reduce irritation from chafing. Provides moisture management for gameday. What's new and improved: mesh gusset and inner leg panel for increased zoned thermoregulation. Updated NPC waistband, who is this for/type of workout: indoor/outdoor gameday or training, fit and feel: Lightweight all over four-way stretch jersey provides mobility and "compression" fit for locked in feel and increased proprioception. Hip width: 12.25", Inseam length: 7.75" (size large).<br><br>010  Black/(Cool Grey)        022  Carbon Heather/(Black)        100  White/(Cool Grey)<br>341  Gorge Green/(Cool Grey)   419  College Navy/(Cool Grey)       493  Game Royal/(Cool Grey)<br>545  Court Purple/(Cool Grey)  610  Team Maroon/(Cool Grey)        658  University Red/(Cool Grey)<br>669  Deep Maroon/(Cool Grey)<br><br>DRI-FIT | For the jury |
| **NIKE PRO COOL FITTED SHORT-SLEEVE TOP**<br>**728066   $30.00**<br><br>SIZES: S, M, L, XL, 2XL, 3XL   FABRIC: 100% polyester.<br>OFFER DATE: 10/01/15   END DATE: 10/01/17<br>Key technology: Dri-FIT fabric, key features: Lightweight & breathable, flatlock seams to reduce irritation from chafing. New zoned ventilation for thermoregulation. Shaped, low-rise collar, what's new and improved: vented side hem with drop tail for enhanced tuck in performance. Zoned thermoregulation with back panel mesh, who is this for/type of workout: indoor/outdoor gameday or training, fit and feel: Lightweight four-way stretch jersey provides mobility. Mesh back panel provides zoned thermoregulation. "fitted" fit for body skimming performance. Body width: 21", Body length: 30" (size large).<br><br>010  Black/(White)          100  White/(Flint Grey)        341  Gorge Green/(White)<br>419  College Navy/(White)   493  Game Royal/(White)        657  University Red/(White)<br><br>DRI-FIT | Not asserted as<br><br>infringing |

Limiting evidence at trial of Nike's infringement to only "cool compression," when unseparated by other words or unabbreviated, would erroneously limit Sweat It Out to evidence of identical trademark usage by Nike. Trademark infringement does not require identicality, even where the senior user's mark is a composite (two-word) mark. "The degree of resemblance necessary to constitute a likelihood of confusion is incapable of exact general definition. One thing is very clear: 'exact similitude is not required' between the allegedly confusing marks." 4 McCarthy on Trademarks and Unfair Competition § 23:20 (5th ed.) (citations omitted). "To find trademark infringement only by exact identity and not where the junior user makes some slight modification would 'be in effect to reward the cunning infringer and punish only the bumbling

one.'" *Id*. (quoting *T & T Mfg. Co. v. A. T. Cross Co.*, 449 F. Supp. 813, 822 (D.R.I.), aff'd, 587 F.2d 533 (1st Cir. 1978)).

The substantive law of the Third Circuit and the procedural rulings similarly provide that "[t]he marks need not be identical, only confusingly similar," and the more similar the goods, the less similarity in the marks is needed to prove likely confusion. *Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1063 (3d Cir. 1994) (issue of fact whether "Country Floors" and "Country Tiles" logos confusingly similar); *see also Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 183-184 (3d Cir. 2010) (clear error not to weigh "ForsLean" and "Forsthin" in the senior user's favor); *John M. Middleton, Inc. v. Swisher Int'l, Inc.*, 2006 U.S. Dist. LEXIS 51484, *9 (E.D. Penn. Jul. 26, 2006) (issue of fact whether BlackStone Mile and Black & Mild were confusingly similar).

That such marks in *Country Floors*, *Sabninsa*, and *John M Middleton* were either required to be put before a jury for determination, or determined in the senior user's favor, means that if Lontex wishes to pursue at trial the variations of "Cool Compression" that either abbreviate or include minimal content in between, such uses are relevant to its infringement case and should be presented to the jury for determination.

The Court will note that Lontex has pursued such variations as relevant to its infringement claim from its very first filing in this case. *See* Dkt. Nos. 1 & 20 at ¶20 (Complaint and FAC listing "Nike Pro Cool 6" Compression Shirt" amongst six specifically-identified infringing products). Nike's goods are highly similar to Sweat It Out's, and while Nike has made identical use of "cool compression" alongside its house mark, it has also made other confusingly similar uses with abbreviations and minor separations of the words cool and compression. Whether this is infringement remains a question of fact for the jury. *See Country Floors, Inc.*,

930 F.2d at 1063 ("a number of key factual questions remain, not least among them the

likelihood of confusion"); *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, 2011 WL 3679155, at \*7

(E.D. Pa. Aug. 23, 2011) (holding "the fact-heavy nature" of the likely confusion inquiry

precluded summary judgment); *see also* Dkt. 234 at 23 ("the likelihood of confusion analysis in a

trademark case is a fact-intensive inquiry").

Accordingly, Sweat It Out should be allowed to present evidence allowing the jury a

complete factual overview, consistent with long-established authority, of Nike's various uses of

the words cool and compression both included in some fashion in the product name, including

abbreviations and separations of those words.  Denying Sweat It Out the opportunity to present

such evidence would constitute an unwarranted encumbrance of its right to have the jury

consider Nike's broad and extensive flooding of the market with various uses of COOL

COMPRESSION and the proper measure of damages for those overwhelming uses.

## II.    THE COURT SHOULD NOT EXCLUDE NIKE'S USAGE OF ABBREVIATIONS FOR "COOL" AND "COMPRESSION"

While the Court order limits evidence to the words "cool compression," there is no

dispute that Nike used abbreviations as shorthand to convey the phrase "cool compression."

Specifically, Nike admits that its "catalogs used abbreviations 'cl' for 'cool' and 'comp' for

'compression'." Dkt. 192, ¶ 165.  Nike provided catalogs and similar materials to retail

associates to educate them about the availability and features of Nike's cool compression

products. *See, e.g.,* Dkt. 203-56, ¶ 5.

The fact that Nike used abbreviations of "cool compression" does not absolve it of

liability for trademark infringement.  Nike's corporate designee admitted that for compression fit

Nike "██████████████████████████████████████████████████████" *See*

Johnson Depo. 101:13-16.[1]  The evidence at trial will show that retailers and retail associates

understood such materials to mean, as Nike admits, "cool compression."  Indeed, this type of

important documentary evidence corroborates witness testimony that Nike "coached" employees

to use "cool compression" to refer to a product line of compression apparel.  *See, e.g.,* Dkt. 203-

56, ¶ 4.  Similarly, retailers understood from Nike's abbreviations and turned around to publicly

advertise these products for sale under the unabbreviated "cool compression" name.  *See, e.g.,*

Dkt. 203-26 at LTX_EDPA_00024577 ("Men's Nike Cool Compression Tops, Tights and

Shorts"); Dkt. 203-27 at LTX_EDPA_00013424.

The jury should not be denied this type of evidence on Nike's usage of abbreviations of

the COOL COMPRESSION mark.  *See, e.g., Coca-Cola Co. v. Busch*, 44 F. Supp. 405, 410

(E.D. Pa. 1942) (holding abbreviated use of registered mark to be infringing).  And even if the

jury decides that Nike's usage of abbreviations such as "cl comp" is not independently

infringing, it is undisputedly a proxy for Nike's usage of "cool compression."  It is therefore

important evidence for the jury to consider in weighing the full scope and manner in which Nike

infringed Sweat It Out's mark, *e.g.* Sweat It Out's Third Count for Contributory Trademark

Infringement based on Nike's contribution to its retailers selling Nike's product using the full

"Cool Compression" product name.

## III.   THE COURT SHOULD NOT EXCLUDE NIKE'S USES OF "COOL" FOLLOWED BY "COMPRESSION" WITH MINOR CONTENT INSERTED IN BETWEEN

As set forth above, trademark infringement requires only confusingly similar usage, and

therefore Nike cannot necessarily avoid infringement by merely adding a word between "cool"

and "compression."  The addition of generic information, such as size 6", does nothing

---

[1] Lontex has not included the transcript as an exhibit in view of the Court's preference not to receive additional exhibits at this time, but is prepared to submit the exhibit upon request.

meaningful to obviate the strong similarity of Nike's use of these terms on the same types of

goods as Sweat It Out. *See Advance Magazine Publishers Inc. v. Vogue Int'l*, 123 F. Supp. 2d

790, 796 (D.N.J. 2000) ("The use of a precisely similar name is not required for a finding of

trademark infringement under Sections 32 and 43(a) of the Lanham Act."); *GFC Fin. Corp. v.*

*GFC Capital Res. Grp., Inc.*, No. 93 CIV. 8001 (PKL), 1994 WL 30432, at *1 (S.D.N.Y. Feb. 2,

1994) ("[T]he addition of descriptive terms to a distinctive mark generally does not significantly

diminish the possibility of confusion.").

For example, a defendant who named their product MIRACLE SUIT was found to

infringe THE MIRACLE BRA. *A&H Sportswear Co. v. Victoria's Secret Stores*, Inc., 167 F.

Supp. 2d 770, 782 (E.D. Penn. 2001).  Thus, the mere usage of one word (MIRACLE) from the

composite trademark (THE MIRACLE BRA) was sufficient to require a trial for the finder of

fact to determine whether there was a likelihood of confusion. *See id*.  Similarly, a court held

that a defendant's SLOAN 1 PINT URINAL SYSTEMS was so close to a plaintiff's THE PINT

that "the similarity of the marks favors a finding of likelihood of confusion." *Zurco, Inc. v.*

*Sloan Valve Co*., 785 F. Supp. 2d 476, 495 (W.D. Penn. 2011).

As these cases demonstrate, it is sufficient to support a finding of infringement that Nike

used any portion of Sweat It Out's COOL COMPRESSION mark.  However, Sweat It Out does

not assert infringement of, for example, Nike's usage of "cool" alone.  Instead, Sweat It Out

asserts infringement only for Nike products referred to with the words "cool" and "compression"

(and in that order) regardless of whether those terms are separated.  *See, e.g.,* Dkt. 203-19 at

NIKE-00045075 ("NIKE PRO COOL 6" COMPRESSION SHORT").  Nike's addition of

generic or minimal wording to separate "cool" from "compression" does nothing to change the

outcome of whether the evidence should be presented to the trier of fact to determine a likelihood

117312380

of confusion.  *See* 4 McCarthy on Trademarks and Unfair Competition § 23:50 (5th ed.) ("If a junior user takes the entire mark of another and adds a generic, descriptive or highly suggestive term, it is generally not sufficient to avoid confusion.").  And if it could possibly do so, it is for a jury to determine whether the commercial impression is so broken as to avoid likely confusion.

Further, Sweat It Out has presented evidence from which a jury may conclude that, "In the marketplace, both companies refer to their products in conversations with customers and advertisements as 'cool compression.' Ms. Likely's declaration demonstrates that at least in some instances, some of Nike's products were referred to simply as 'cool compression.'"  *See* Dkt. 234 at 24.  Thus, even where certain of Nike's internal documents may refer to a product with "cool" separated from "compression," the evidence supports a finding that those products were part of a "cool compression" product line and that marketplace usage viewed any words breaking up the terms as inconsequential.

In sum, the weight of authority strongly favors Sweat It Out's right to present to the jury the full factual circumstances surrounding Nike's usage of the terms "cool" and "compression."

## IV.    BOTH PARTIES AGREE "COOL" IS RELEVANT TO CONTEXT

Nike's briefing and own deposition designations make it clear that it intends to convey to the jury the context of the Accused Products as falling within its "Nike Pro Cool" silo.  Nike designated Parker Mangum's deposition testimony which explains exactly this.  2021-06-15 Nike Counter-designations citing Mangum pp. 48:13-49:22 and 166:9-14.  Nike's summary judgment emphasized this too.  *E.g.*, Dkt. 191-1 at 52.

If Nike is to build its theme off Nike Pro Cool and Nike Pro Warm as silos of products within Nike Pro at a general level, but only exactly "Cool Compression" could be used in Lontex's presentation of the specifics, then the jury would be deprived of an entire portion of the

- 7 -

story that connects Nike Pro Cool to the relevant products.  Context is important here to avoid an incomplete presentation and juror confusion.

Further, as the Ninth Circuit has explained, when asserted infringement spans multiple products and marketing materials, for context it is important to consider all the various ways the junior user has made its use for purposes of considering its fair use defense at trial.  *Marketquest v. BIC*, 862 F.3d 927, 936 (9th Cir. 2017).

## V.    CONCLUSION

Based on the foregoing, Sweat It Out requests that it be allowed to present evidence to the jury of Nike's various uses of "cool" with "compression," including abbreviations and separations of those words.  And evidence of "Cool" should be allowed sufficient to provide context.

Dated:      July 9, 2021

TROUTMAN PEPPER HAMILTON
SANDERS LLP


By: */s/ Ben L. Wagner*
        Ben L. Wagner (CA SBN 243594)
        ben.wagner@troutman.com
        *Admitted Pro Hac Vice*
        11682 El Camino Real, Suite 400
        San Diego, CA  92130-2092
        Telephone:   858.509.6000
        Facsimile:    858.509.6040

        Michael A. Schwartz (PA 60234)
        TROUTMAN PEPPER HAMILTON
        SANDERS LLP
        3000 Two Logan Square
        Eighteenth & Arch Streets
        Philadelphia, PA 19103-2799

        *Attorneys for Plaintiff*
        LONTEX CORPORATION

117312380

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2021, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Ben L. Wagner
Ben L. Wagner

117312380