**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LONTEX CORPORATION,<br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>NIKE, INC.,<br>　　　　　　　　　Defendant. | Civil Action No.:  18-cv-5623<br><br>(Hon. Michael M. Baylson) |

**NIKE, INC.'S BRIEF ON USE OF "COOL COMPRESSION" AT TRIAL**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Legal Standard ................................................................................................................1 | |
| II. | Lontex's Non-Use of "Cool Compression" ....................................................................1 | |
| III. | NIKE's Fair Use of the Words "Cool" and "Compression"...........................................5 | |
| | A. | The Fair Use Defense..........................................................................................5 |
| | B. | NIKE's Non-Trademark Use of "Cool" and "Compression" .............................6 |
| | C. | NIKE Used "Cool" and "Compression" to Describe Its Products......................8 |
| IV. | Conclusion ....................................................................................................................10 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Blancha v. Raymark Indus.*,
  972 F.2d 507 (3d Cir. 1992)..................................................................................................1

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
  125 F.3d 28 (2d. Cir. 1997)...................................................................................................6

*Hurley v. Atl. City Police Dep't*,
  174 F. 3d 95 (3d Cir. 1999)...................................................................................................1

*JBLU, Inc. v. U.S.*,
  813 F.3d 1377 (Fed. Cir. 2016).............................................................................................4

*Kelly-Brown v. Winfrey*,
  95 F. Supp. 3d 350 (S.D.N.Y. 2015).....................................................................................7

*Koninklijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*,
  2017 WL 3719468 (D.N.J. Aug. 29, 2017) ..........................................................................5

*Miller v. Glenn Miller Productions, Inc.*,
  454 F.3d 975 (9th Cir. 2006) ................................................................................................4

*United States Patent & Trademark Office v. Booking.com B. V.*,
  140 S. Ct. 2298 (2020)..........................................................................................................5

*Warren Pub. Co. v. Spurlock*,
  645 F. Supp. 2d 402 (E.D. Pa. 2009) ....................................................................................4

*Winters v. Marina Dist. Dev. Co., LLC*,
  317 F. App'x 286 (3d Cir. 2009)...........................................................................................1

**Statutes**

15 U.S.C. § 1115(b)(4) .................................................................................................................5

**Other Authorities**

FED. R. EVID. 401............................................................................................................................1

3 MCCARTHY ON TRADEMARKS § 17:9 .........................................................................................4

Pursuant to Paragraph 6 of the Court's Pretrial Order (ECF 254), Defendant NIKE, Inc. ("NIKE") hereby submits this brief showing why evidence regarding Lontex's or NIKE's clothing or advertisements, etc. should not be strictly limited to those items that use the words "cool compression" unseparated by other words. Indeed, evidence showing the *absence* of "cool compression" is just as—and perhaps even more—probative on several issues in the case as evidence showing the words "cool compression." For the following reasons, such evidence should be admissible at trial.

## I.   LEGAL STANDARD

"Under the Federal Rules of Evidence, evidence may only be admitted if it is 'relevant.'" *Winters v. Marina Dist. Dev. Co., LLC*, 317 F. App'x 286, 288 (3d Cir. 2009) (citing FED. R. EVID. 402). Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. FED. R. EVID. 401. This is a low threshold. *Hurley v. Atl. City Police Dep't*, 174 F. 3d 95, 109–10 (3d Cir. 1999); *see also Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir. 1992) (explaining that because the Rule makes evidence relevant "if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has *no* tendency to prove the fact") (citation omitted).

## II.   LONTEX'S NON-USE OF "COOL COMPRESSION"

Lontex promoted its SWEAT IT OUT compression garments to its customers—such as athletic trainers employed by professional sports teams—as having a special high-grade compression fabric for prevention and rehabilitation of injury. Lontex intends to tell the jury that, since 2007, it has *always* used the COOL COMPRESSION trademark as the brand name for the "unique stretch technology" of the fabric in its SWEAT IT OUT compression garments. This narrative is demonstrably false, and the record contains overwhelming evidence of Lontex's use of *other* words ("True Compression") and *another company's* trademarks (COOLMAX® and

1

LYCRA®, both owned by Invista) to promote the stretch fabric used in its compression garments. At trial, NIKE intends to prove that Lontex cannot maintain that it has protectable rights in COOL COMPRESSION because it long ago abandoned any trademark rights and committed fraud on the U.S. Patent & Trademark Office to obtain and maintain its registrations.

Lontex started using COOL COMPRESSION on its apparel and in its advertising in 2016 *after* it discovered NIKE using words like "cool" and "compression" in written materials to describe characteristics of its own NIKE Pro apparel. But between 2008 and 2016, the evidence of Lontex's clothing and its advertising where COOL COMPRESSION is conspicuously *absent* is staggering. Lontex marketed its garments under the SWEAT IT OUT brand, making *no mention of COOL COMPRESSION* on or within any brochure, website, social media, blog, press release, other piece of promotional material or in any email communications with customers. For example, Lontex's products were branded with the SWEAT IT OUT mark, and the company's sun logo, not COOL COMPRESSION, as shown below:



Lontex's marketing materials during this period prominently featured the SWEAT IT OUT mark and the Sun Logo, *not COOL COMPRESSION*. And, instead of using COOL COMPRESSION, Lontex repeatedly referenced "*TRUE COMPRESSION*" in its marketing materials, as shown below in an excerpt from Lontex's product brochure from 2014:

2

 

(ECF 193 at Ex. 200 (LYCRA-00000175)).)

Lontex did not use COOL COMPRESSION on its website, social media, blog, press release, other piece of promotional material or in any email communications with customers. Instead, Lontex used Invista's **COOLMAX®** and **LYCRA®** trademarks—*not COOL COMPRESSION*—to promote the stretch and recovery characteristics of the fabric used in its compression garments. For example, in an e-mail titled "Advantages of using SWEAT IT OUT Compression" sent in 2013, Lontex promoted its compression garments with Invista's marks:

> The quality of **SWEAT IT OUT®** Performance Compression is in both the fabric and design. High **LYCRA® fiber** content of 30% - 60% gives the fabric powerful yet flexible compression in a 360 degree rotation, stretching with the body, in all directions, instead of against it.… 70% **Coolmax® fabric** portion of the fabric was designed to allow your perspiration to move out through the fabric to dry faster, eliminating the fabric from becoming saturated which helps keep the body temperature close to its core = 98.6 degrees.

(ECF 193 at Ex. 158 (LTX_EDPA_00030319)). And in March 2016, Lontex issued a press release promoting its compression garments with Invista's marks:

> The stretch and recovery aspects of the fabrics used in **SWEAT IT OUT®** compression apparel are drastically different from other compression athletic attire. Designed with **COOLMAX®, a proven sweat-eliminating fabric, and LYRCA® fiber, a confirmed performance-enhancing garment,** these shirts, shorts, and sleeves will give any athlete an increase in movement, endurance, and power.

3

(ECF 193 at Ex. 208 (LTX_EDPA_00010093).) Lontex maintained a customer e-mail list between 2008 and 2016 and regularly sent e-mails to customers, such as athletic trainers employed by professional sports teams, to market and promote Lontex's compression garments, and ***not a single e-mail uses COOL COMPRESSION*** to promote its so-called stretch technology. (*See e.g.*, ECF 193 at Ex. 126 (LTX_EDPA_00026067-70); id. at Ex. 53 (E. Nathan Depo. Exs. 308 and 309).)

In the United States, trademark rights are acquired through *use* of the mark in commerce, not federal registration. *See e.g., Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 979 (9th Cir. 2006) ("Registration does not create a mark or confer ownership; only use in the marketplace can establish a mark."); *JBLU, Inc. v. U.S.*, 813 F.3d 1377, 1381 (Fed. Cir. 2016) ("[T]rademark rights stem from use, not registration."). It is the "actual usage of a symbol as a 'trademark' in the sale of goods which creates and builds up rights in a mark." 3 MCCARTHY § 17:9. As a result, if a trademark owner abandons the use of its mark, that mark "falls into the public domain and is free for all to use" and cannot be asserted against an alleged infringer. *See Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d 402, 444–45 (E.D. Pa. 2009) (citations omitted).

This evidence of Lontex's non-use of COOL COMPRESSION is central to and highly probative of NIKE's counterclaim that Lontex abandoned the mark, and therefore has no rights to assert it against NIKE. Lontex's non-use of COOL COMPRESSION is also highly probative evidence on NIKE's counterclaim that Lontex filed declarations with the USPTO falsely claiming that it was using COOL COMPRESSION in commerce in order to obtain and maintain the asserted trademark registrations.

Finally, evidence of Lontex's non-use of COOL COMPRESSION is also highly relevant to NIKE's non-infringement defense and the absence of any consumer confusion (or likely confusion) in the marketplace. The jury's understanding of the complete marketplace conditions

under which consumers encountered–*or did not encounter*—a mark is vital to the adjudication of the *Lapp* factors for purposes of determining whether conditions exist that could lead to confusion.

### III. NIKE'S FAIR USE OF THE WORDS "COOL" AND "COMPRESSION"

Throughout this litigation, Lontex has perpetuated the false narrative that NIKE used its COOL COMPRESSION trademark. One of NIKE's defenses is that it did not use a COOL COMPRESSION trademark, but rather that NIKE used words like "cool" and "compression" for their commonly understood meanings to *describe* its own products, as is allowed by § 33(b)(4) of the Lanham Act. Indeed, NIKE intends to prove that it used the common words "cool" to describe cooling aspects of its apparel, and "compression" to describe a tight fit, which is indisputably a fair use, for which the Lanham Act grants a complete affirmative defense. 15 U.S.C. § 1115(b)(4). Accordingly, evidence regarding NIKE's use of the highly descriptive and commonly used words "cool" and "compression" on their own, next to each other, separated by other words, or in abbreviated form is highly probative and a vital part of the record on which the jury will decide NIKE's fair use affirmative defense. The jury must be able to assess NIKE's use of the terms "cool" and "compression" under actual marketplace conditions to adjudicate this issue. *See c.f.*, *Koninklijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*, 2017 WL 3719468, at *34 (D.N.J. Aug. 29, 2017) ("likelihood of confusion must be determined with respect to the actual marketplace conditions…."). It would be error to exclude this evidence and force the jury to evaluate NIKE's use under artificial—and prejudicial—conditions that did not exist in the marketplace.

#### A. The Fair Use Defense

As the Supreme Court noted, "the doctrine known as classic fair use protects from liability anyone who uses a descriptive term, fairly and in good faith and otherwise than as a mark merely to describe her own goods." *United States Patent & Trademark Office v. Booking.com B. V.*, 140 S. Ct. 2298, 2307 (2020) (citing 15 U.S.C. § 1115(b)(4)). To prevail on this complete affirmative

5

defense to Lontex's trademark infringement claims, NIKE must show that: (1) it used "cool" and "compression" in a non-trademark manner; (2) the use is descriptive of its goods or services; and (3) it used "cool" and "compression" in good faith. 15 U.S.C. § 1115(b)(4). The evidence at trial will show that NIKE used the words "cool" and "compression" fairly and in good faith, and not as a trademark, to describe its own NIKE apparel.

### B. NIKE's Non-Trademark Use of "Cool" and "Compression"

The evidence at trial will show that NIKE did not use "cool compression" as a trademark or as a symbol to attract public attention. NIKE did ***not*** put the words "cool compression" on any NIKE products or on any product labels or hangtags. Instead, NIKE's apparel was branded with NIKE's *actual* marks—NIKE, SWOOSH, and DRI-FIT. This fact is one of the most probative pieces of evidence on NIKE's non-trademark use. *See Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30-31 (2d. Cir. 1997) ("The non-trademark use of the challenged phrase [is] evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks.").

As seen below, NIKE prominently displayed its own NIKE and SWOOSH trademarks on its products; the words "cool compression" ***never*** appeared on a NIKE product.



In addition, NIKE's use of the words "cool" and "compression" was inconsistent (as one would expect of descriptors, as opposed to consistent use seen with trademarks). For example, the words "cool" and "compression" sometimes appeared in NIKE's catalog copy directly next to each

6

other alongside other descriptive terms like "6"" and "Men's" and "Shorts" (e.g., "Nike Pro Combat Cool Compression 6" Men's Shorts") (ECF 193 at Ex. 141 (NIKE-00030901 at 30942).) But other times, the words "cool" and "compression" were separated by other descriptors (e.g., "NIKE PRO COOL 6" COMPRESSION SHORT," "NIKE Hypercool High Brand Read Three-Quarter Boy's Compression Tights") or even abbreviated (e.g., "COOL HBR COMP 3/4 TIGHT YTH"). (ECF 193 at Ex. 140 (NIKE-00015659 at 16171).) Sometimes just the word "cool" was used in the description, while the word "compression" was not, such as in this example of a NIKE PRO 6" COOL pair of shorts shown on the nike.com website in September 2015 (Lontex somehow claims that this is an infringement of its purported rights):



(ECF 193 at Exs. 40 and 130.)

NIKE's inconsistent use of the words "cool" and "compression" is proof that it used the terms other than as a trademark and without any intent to use the words as a trademark. *Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 363-64 (S.D.N.Y. 2015) (applying the fair use defense where the allegedly infringing use was inconsistent, which "weigh[ed] against a finding of intent to create a sub-brand mark").

7

### C. NIKE Used "Cool" and "Compression" to Describe Its Products

The evidence at trial will also show that NIKE used the word "cool" to describe the thermoregulation qualities of its baselayer apparel products while "compression" described the tight fit. The probative evidence is not strictly limited to instances of "cool compression."

The products in the NIKE Pro product line provide thermoregulation benefits to the wearer; some keep the wearer "cool," and some keep the wearer "warm." This thermoregulation benefit is described on hang tags that are attached to the outside of the garment and removed after purchase and do ***not*** include the phrase "cool compression":

 **NIKE PRO COOL** fabrics provide a sweat-wicking base layer of support to help you feel locked-in and cool when the action heats up.

 **NIKE PRO WARM** fabrics provide a sweat-wicking base layer of support to help you feel locked-in and warm in cool conditions.

(DX650 (NIKE-00041625 at 41649.)

The products in the NIKE PRO product line were offered in a variety of fit preferences since baselayer products fit close to the skin and can be worn under other layers of clothing. Since at least as early as 2009, NIKE offered a "compression" fit as a tighter fitting alternative to the "fitted" fit. The fit information (e.g., "compression" or "fitted") was applied to a heat transfer label on the inside of garments, next to the size information, and below NIKE's SWOOSH and DRI-FIT marks, which again did ***not*** include the phrase "cool compression":



8

(ECF 193 at Ex. 212 (NIKE-00040455 at 40459).)

NIKE's written copy in its catalogs and website made no repeated, consistent use of "cool compression" either, but rather included detailed descriptions of the NIKE PRO products, including "cool" to describe the lightweight and breathable fabric and "compression" to describe the products' tight, "locked in" fit, often along with other descriptors for consumer group (like "Men's"), silhouette (like "Shorts"), and/or length (like 6"), like in the following excerpt from a NIKE catalog:



(DX609 (NIKE-00035608) also partially available at ECF 203 at Ex. 48.)

The jury must be able to review the NIKE catalogs in full, and not just Lontex's self-serving excerpts where "cool" and "compression" appear next to each other. The jury must be able to see the other products in the NIKE PRO product line, like the "NIKE PRO COOL FITTED SHORT-SLEEVE TOP," where NIKE used the word "cool" to describe the lightweight and breathable fabric and the word "fitted" to describe the "body skimming" fit of apparel that does not fit as tightly to the skin as the "compression" fit products. The below example from the same NIKE catalog shows that the NIKE Pro line included a "cool" short-sleeve top in both a "fitted" and "compression" fit:





(*Id.*)

When viewed in the proper context, this evidence will show that NIKE used words like "cool" to describe its NIKE Pro apparel with sweat-wicking fabric and ventilation that keeps the wearer cool and "compression" to describe apparel that fits tightly to the skin. This evidence will further show that these common words do not act as a source-identifier, telling consumers which company made the garment—that is the NIKE mark's job. And, from this evidence, the jury may conclude that the common words "cool" and "compression" simply tell consumers that the NIKE garment fits tightly and keeps you cool while wearing it, just like the words "short-sleeve top," in the example above, tell consumers that the NIKE Pro garment is a short-sleeve top. Accordingly, excluding this evidence and depriving the jury of the full context of NIKE's use of these words would mislead the jury and present substantial danger of unfair prejudice to NIKE.

## IV. CONCLUSION

For the reasons stated above, the Court must not strictly limit the evidence regarding Lontex's or NIKE's clothing or advertisements, etc. to those items that use the words "cool compression" unseparated by other words. The jury must be able to hear and consider evidence showing the ***absence*** of "cool compression," which is highly relevant and probative to NIKE's defenses and counterclaims.

July 9, 2021                                    Respectfully submitted,

                                                                                     By:  */s/ Gina L. Durham*

                                                                                     DLA PIPER LLP (US)

                                                                                     Gina L. Durham (*pro hac vice*)
                                                                                     555 Mission Street, Suite 2400
                                                                                     San Francisco, CA 94105

                                                                                     Frank W. Ryan (*pro hac vice*)
                                                                                     Andrew J. Peck (*pro hac vice*)
                                                                                     Michael D. Hynes (*pro hac vice*)
                                                                                     Marc E. Miller (*pro hac vice*)
                                                                                      1251 Avenue of the Americas
                                                                                     New York, NY 100201

                                                                                      Ilana H. Eisenstein
                                                                                     Ben C. Fabens-Lassen
                                                                                     1650 Market Street, Suite 5000
                                                                                     Philadelphia, PA  19103

                                                                                     *Attorneys for Defendant NIKE, Inc.*