IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION,<br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NIKE, INC.,<br>　　　　　　　　Defendant. | Civil Action No.: 18-cv-5623<br><br>(Hon. Michael M. Baylson) |

**NIKE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS OMNIBUS MOTION ON DEPOSITION DESIGNATIONS**

# **TABLE OF CONTENTS**

I. Introduction ...........................................................................................................................1

II. **The Court Should Sustain NIKE's Objections to the Admissibility of Lontex's Deposition Designations**...........................................................................................1

    A. Brian Cammarota's Deposition Testimony Is Not Admissible Because He Is Within the Court's Subpoena Power...................................................................1

    B. The Court Should Sustain NIKE's Objections Relating to Its Motions in Limine ...................................................................................................................2

        1. This Court Should Exclude Testimony Lontex Designated Referring To So-Called "Accused Products" .............................................2

        2. This Court Should Exclude Testimony Lontex Designated about NIKE Tech Sheets..........................................................................3

        3. This Court Should Exclude Testimony about NIKE's Removal of the "Compression" Fit Designation from the Product Style Name .............4

        4. This Court Should Exclude Testimony that Is Relevant Only to Damages, Not Liability, During the Liability Phase..................................5

    C. This Court Should Sustain NIKE's Other, Recurring Objections to Lontex's Designations and Counter-Designations...................................................5

        1. Privilege Issues ................................................................................5

        2. Vague Questioning...........................................................................7

        3. Incomplete Hypotheticals, Legal Conclusions, and Mischaracterizations of Evidence ................................................................8

        4. Testimony of Counsel and Argumentative Questions ..............................9

III. Conclusion ..........................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Collins v. Omega Flex, Inc.*,
  2010 WL 2470944 (E.D. Pa. June 15, 2010) ............................................................................. 1

*Jamaica Ash & Rubbish Removal Co. v. Ferguson*,
  85 F. Supp. 2d 174 (E.D.N.Y. 2000) ...................................................................................... 10

*Kirby v. J.C. Penney Corp.*,
  2009 WL 3651199 (W.D. Pa. Oct. 29, 2009) ........................................................................... 2

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
  383 F.3d 1337 (Fed. Cir. 2004) ................................................................................................ 6

*Parker v. Prudential Ins. Co.*,
  900 F.2d 772 (4th Cir. 1990) .................................................................................................... 6

*Sharer v. Tandberg, Inc.*,
  2007 WL 983849, at *2 (E.D. Va. Mar. 27, 2007) ................................................................... 6

*VIIV Healthcare Co. v. Mylan Inc*.,
  2014 WL 2195082 (D. Del. May 23, 2014) ............................................................................. 2

**Other Authorities**

Fed. R. Civ. P. 32(a)(4) ............................................................................................................. 1, 2

Fed. R. Civ. P. 32(a)(6) ................................................................................................................. 1

Fed. R. Civ. P. 43 comm. note (1996) .......................................................................................... 2

Fed. R. Evid. 403 .......................................................................................................................... 6

Fed. R. Evid. 407 .......................................................................................................................... 4

**I.      Introduction**

At trial, Lontex intends to present the jury with hours of videotaped deposition testimony from eight different witnesses. Much of the testimony that Lontex designated is inadmissible, prejudicial, incomplete, and objectionable. As a result, NIKE (i) specifically objected to significant portions of the designated testimony, and (ii) counter-designated additional testimony for the sake of completeness under Federal Rule of Civil Procedure 32(a)(6). This Court should sustain the following objections asserted by NIKE.

**II.     The Court Should Sustain NIKE's Objections to the Admissibility of Lontex's Deposition Designations**

Given the volume of testimony Lontex has designated, this Motion focuses only on the recurring objections and significant issues concerning the designations on which the Court's guidance is most needed. NIKE also has made counter-designations under Rule 32(a)(6) and has asserted additional objections that are not covered by this Motion.

**A.      Brian Cammarota's Deposition Testimony Is Not Admissible Because He Is Within the Court's Subpoena Power**

This Court should not permit Lontex to present at trial the deposition testimony of Brian Cammarota. The testimony of this witness should be excluded outright.

Lontex seeks to present the jury with deposition testimony of Brian Cammarota—a witness that *Lontex* listed on its initial disclosures more than two years ago. Because this witness is not "unavailable" to testify at trial under Federal Rule of Civil Procedure 32(a)(4), his deposition testimony is inadmissible hearsay. This Court should preclude Lontex from using it at trial.

Rule 32(a)(4) permits the deposition testimony of an "unavailable" witness to be used "for any purpose" at trial. "The burden of showing the witness's unavailability ... *rests with the party seeking to introduce the deposition*." *Collins v. Omega Flex, Inc.*, 2010 WL 2470944, at *3 (E.D. Pa. June 15, 2010) (emphasis added). Lontex has not attempted to meet this burden. Nor could it.

A witness is unavailable under the Rule 32(a)(4) only if he is (A) dead; (B) more than 100 miles from the courthouse; (C) ill, infirm, or imprisoned; or (D) unprocurable via subpoena. Dr. Cammarota is none of those things. He lives in Pennsyvlania (apparently, within 100 miles of the courthouse); he currently works as a physical therapist in Radnor, Pennsylvania (less than 20 miles from the courthouse); and, in response to a deposition subpoena, he appeared and testified at DLA Piper's Philadelphia office (one mile from the courthouse).

If Lontex wants to present his testimony at trial, Lontex must call him to testify live, so he can be subjected to cross-examination and the jury can assess his credibility. "The preference for live testimony at trial rather than deposition testimony as a substitute is uniformly stressed in case law." *Kirby v. J.C. Penney Corp.*, 2009 WL 3651199, at *2 (W.D. Pa. Oct. 29, 2009) (citing cases). And "[a]llowing a party to use a deposition over the live in-court testimony of an otherwise available witness would effectively eviscerate the other provisions of Rule 32(a)(4) and would undermine the importance of presenting live testimony." *Id.*; *see* Fed. R. Civ. P. 43 comm. note (1996) ("The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition."); *VIIV Healthcare Co. v. Mylan Inc.*, 2014 WL 2195082, at *2 (D. Del. May 23, 2014) ("Historically, federal courts have preferred live testimony over recorded testimony."). This Court should exclude Dr. Cammarota's deposition testimony.

### B. The Court Should Sustain NIKE's Objections Relating to Its Motions in Limine

NIKE is filing an omnibus Motion in Limine (MIL), which affects the admissibility of the deposition testimony Lontex designated, as explained below.

#### 1. This Court Should Exclude Testimony Lontex Designated Referring To So-Called "Accused Products"

As explained in NIKE's MIL #1, the Court should preclude Lontex from introducing deposition testimony that refers to the NIKE Pro products as "accused products." (NIKE MILs at

1-3.) This vague and prejudicial term assumes facts not in evidence—since it is undisputed that *NIKE did not use "cool compression" on any NIKE products or any product labels or hangtags*—and wrongly suggests to the jury that NIKE's *products* are actually branded with "cool compression." Presenting the jury with those terms via deposition questions that were posed to NIKE witnesses is particularly prejudicial and inappropriate here, since the testifying witnesses *never* used the term in the first instance. Rather, Lontex's counsel used the term "accused products" when questioning witnesses, who at times used the same terminology when answering. Despite NIKE's consistent form-based objections to that vague term during each deposition, Lontex designated for trial testimony using the term "accused products" in the question or answer. This Court should exclude the following testimony Lontex designated using that term.

| Table 1: Testimony Lontex Designated Referring to "Accused Products" ||
|---|---|
| Shannon Hall (Exhibit 1) | **15:12-16** ("Q: And do you know if at any point in the 2015 to 2017 time frame, that cool compression moniker in that field would have been removed from any of the *accused products*? A. I am not aware"). |
| Deborah White (Exhibit 2) | **92:10-16** ("Q: Do you know if any of the *accused products* ever had a rare instance where information was conveyed in this fasion to the NIKE retail athletes?…"); **99:14-19** ("Q: Do you know what names retail athletes used with customers when referring to any of the *accused NIKE products*."); **101:2-15** ("Q: Have you ever spoken to a retail athlete about the names they used to speak about any of the *accused NIKE products*? . . ."). |

**2. This Court Should Exclude Testimony Lontex Designated about NIKE Tech Sheets**

As explained in NIKE's MIL #9, Lontex should be precluded from offering evidence of, reference to, or argument regarding NIKE's *internal and/or non-consumer-facing* use of the word "cool" next to the word "compression" on so-called tech sheets. (NIKE MIL at 19-20.) These internal documents lack probative value and would confuse and mislead the jury. (*Id.*) Lontex nonetheless designated significant amounts of testimony discussing these non-consumer-facing materials. The following testimony should be excluded for the reasons stated in MIL #9:

3

| Table 2: Testimony Lontex Designated About Non-Consumer-Facing "Tech Sheets" | |
|---|---|
| Shannon Hall (Exhibit 1) | 40:18-20;  41:6-9;   42:14-17;  46:20–47:2;  57:15–58:11;   142:4–143:7; 177:19-23 |
| Deborah White (Exhibit 2) | 17:18-19;  18:8-9;  18:21-22; 43:1-9;  58:16-19; 59:19-23;  61:9-18; 66:24–67:3; 104:5-16;  105:9-109:17;   182:25–184:14 |
| Neil Munro (Exhibit 3) | 127:7-10;  128:2-6;  192:16-24 |
| Nicholas Johnson (Exhibit 4) | 65:21–66:2; 185:10-12; 185:22–187:14; 191:20–192:5;  192:12-16;  193:22–195:19;  244:7-12 |
| Parker Mangum (Exhibit 5) | 29:6-9; 33:4-13;  34:6-22;  35:5-11;   45:4-24;  68:11–69:5;  70:19–71:20;   72:18-23;  129:11–130:4 |

### 3. This Court Should Exclude Testimony about NIKE's Removal of the "Compression" Fit Designation from the Product Style Name

As explained in NIKE's MIL #8, under Federal Rule of Evidence 407, Lontex should be precluded from offering evidence or argument about certain remedial measures that NIKE took following the receipt of pre-suit correspondence from Lontex asserting claims of trademark infringement, including voluntary changes to NIKE's consumer-facing style names.[1]  (NIKE MILs at 16-19.)  Such actions constitutes subsequent remedial measures, and evidence of them is inadmissible under Federal Rule of Evidence 407.  Thus, the following deposition testimony that Lontex designated for use at trial should be excluded, for the reasons stated in MIL #8:

| Table 3: Testimony Lontex Designated About NIKE's Subsequent Remedial Measures | |
|---|---|
| Neil Munro (Exhibit 3) | 170:23–171:14;  172:2-13;  177:7–178:2;  179:16–180:4;  182:22–183:5;  183:17-23;  184:6–184:21;   190:9-23;   199:6-14 |
| Nicholas Johnson (Exhibit 4) | 53:22–55:4;  56:24–57:15;  59:8-16;  78:11–79:12;  215:6-13;  217:3-11;  223:16-24;  224:13-21;  230:4-10;  233:5–234:19;  235:6-18;  236:25–237:24;  238:18–239:6;  241:5-6;  242:18–243:6;  243:14–243:20;  244:21-24;  249:15-22;  250:6-15;  257:6-7;  257:22–258:4;  258:20;  280:10-16;  283:8-15 |

---

[1] NIKE undertook these remedial measures in response to Lontex's claims notwithstanding its continued and well-founded belief that any such use of "cool" and "compression" was fair use and non-confusing.

4

### 4. This Court Should Exclude Testimony that Is Relevant Only to Damages, Not Liability, During the Liability Phase

As explained in NIKE's MIL #2, during the liablity phase, Lontex should be precluded from referring to or offering any evidence of detailed NIKE financial information regarding the NIKE products at issue. (NIKE MILs at 3-6.) Even though this Court bifurcated trial into liability and damages phases, Lontex designated several pieces of damages-related testimony from various witnesses, including testimony about NIKE's sales data and sales volumes that is entirely irrelevant to threshold questions of liability. Most notably, Lontex designated certain testimony of Forbes Campbell—a NIKE consultant who compiled NIKE's sales data for a long list of NIKE Pro products for which Lonex requested sales data and subsequently testified as NIKE's 30(b)(6) witness about those data. Mr. Campbell's testimony is not relevant to liability issues whatsoever; his role as a witness and his personal knowledge is limited to discrete information about NIKE's sales data that was produced in discovery. This Court should preclude Lontex from presenting the following testimony at least during the liability stage of trial:

| Table 4: Testimony Lontex Designated That Is Relevant Only to Damages | |
|---|---|
| Forbes Campbell (Exhibit 7) | 33:16-21; 95:13-96:1; 98:20-25; 99:2–100:1 |
| Nicholas Johnson (Exhibit 4) | 108:9-10; 109:2-5; 110:2-13; 116:4:5; 116:7-9; 116:11-15; 116:17-21 (testifying about NIKE retail sales data and sales volumes for NIKE's 100 best-selling baselayer products). |
| Deborah White (Exhibit 2) | 123:15-17; 123:20-21; 123:23-24; 124:1-2 (answering question about NIKE's retail sales). |

### C. This Court Should Sustain NIKE's Other, Recurring Objections to Lontex's Designations and Counter-Designations

NIKE groups its remaining objections to Lontex's designations in the following categories:

#### 1. Privilege Issues

Lontex's counsel asked deposition questions that intruded on the attorney-client privilege, prompting NIKE's counsel defending the deposition to instruct the witness not to answer the

question. Lontex never challenged those instructions as improper, and the time to do so has long passed. Yet Lontex now wants to show the jury deposition footage of three separate instances in which NIKE witnesses were instructed not to answer on privilege grounds. This Court should not permit Lontex to do so. A deposition question followed by an instruction not to answer is not substantive evidence. It is merely a question by deposing *counsel* followed by a statement of defending *counsel*—not witness testimony based on personal knowledge. There is nothing relevant about such statements of counsel.

Even if it were minimally probative, it should still be excluded under Rule 403 because the likelihood of prejudice, confusion of the issues, and misleading the jury is particularly acute in these circumstances. *See, e.g.*, *Sharer v. Tandberg, Inc.*, 2007 WL 983849, at *2 (E.D. Va. Mar. 27, 2007) (excluding references to invocation of attorney-client privilege during deposition because "the danger of unfair prejudice" from adverse inferences "greatly outweighs any probative value under Rule 403"). At trial, the jurors will not understand how the privilege works and will not understand why NIKE instructed the witness not to answer, so they likely will speculate about what the witness would have said and may draw an adverse inference against NIKE merely for preserving its privileged communications. *Id.*; *see, e.g.*, *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (citing various cases for the proposition that "courts have declined to impose adverse inferences on invocation of the attorney-client privilege"); *Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir. 1990) (holding that "a client asserting the privilege should not face a negative inference about the substance of the information sought"). Those concerns significantly outweigh any minimal probative value (if any) of the following testimony Lontex has designated for use at trial:

| Table 5: Lontex's Designation of Questions Where NIKE Asserted Privilege | |
|---|---|
| Shannon Hall (Exhibit 1) 117:3-118:11 (Lontex Counter-designation) | **Q:** And these conversations with athletes and coaches, was counsel present during these conversations?<br>**A:** Yes.<br>**Q:** Who guided these conversations? Was it you or someone else?<br>**MS. DURHAM:** Objection. Calls for attorney-client communications. I instruct the witness not to answer.<br>**Q:** You're going to take your advice of counsel?<br>**A:** Yes.<br>**Q**: And how many of the questions were asked by you rather than your counsel?<br>**MS. DURHAM:** Objection calls for attorney-client communications. Instruct the witness not to answer.<br>**Q:** Are you going to answer?<br>**A:** No.<br>**Q:** And, in fact, when the tech sheets were being shown on the screen share, who was doing that showing on screen share? Was it you or counsel?<br>**MS. DURHAM:** Objection calls for attorney-client communications and work product. Instruct the witness not to answer.<br>**Q:** Are you going to answer?<br>**A:** No. |
| Parker Mangum (Exhibit 5) 113:18-20 & 114:4-10 | **Q:** Is it normal when you're changing some kind of product name to run trademark searches?<br>**MS. DURHAM:** Objection. Calls for attorney-client communications. I instruct the witness not to answer.<br>**Q:** Are you going to refuse to answer, Mr. Mangum?<br>**A:** Yes |
| Kimberly Mack (Exhibit 6) 114:18-19 | **Q:** Ms. Mack, what details do you have regarding the investigation in 2016?<br>[**Note**: NIKE's counsel instructed the witness not to answer. Lontex did *not* designate the instruction, however. It designated only the unanswered question, which is the testimony of counsel, not evidence.] |

**2.     Vague Questioning**

Certain deposition testimony Lontex designated was procured through vague and imprecise deposition questions by Lontex's counsel. NIKE contemporaneously objected to the form of the questions, thereby preserving these objections for this Court's review. To be clear, while vague and imprecise questioning was a recurring problem at depositions taken by Lontex, NIKE has

7

endevored to limit this Motion to seek rulings on NIKE's objections to only the most vague and problematic testimony Lontex designated. NIKE requests that this Court sustain NIKE's objections to the following testimony on vagueness grounds:

| Table 6: Testimony Lontex Designated to Which NIKE Objects on Vagueness Grounds | |
|---|---|
| S. Hall (Exhibit 1) | 54:1-5 (as to "culture that encourages associates to know their products well") |
| Deborah White (Exhibit 2) | 36:9-37:2 (as to "top products per category"); 69:22-70:4 (as to "that time period" and "cross-pollenate"); 82:4-25 (as to "NIKE retailer ecosystem"); 96:23-25 (as to "naming dispute"); 164:14-165:2 (as to "NIKE-owned retal athletes engaging customers"); 171:15-20 (as to "higher-priced products" and "lower-priced products"), 200:14-16 (as to "ascrbied a partiicular importance") |
| Neil Munro (Exhibit 3) | 84:6-10 (as to "mater of months"); 95:4-13 (as to "similar product name"); 103:19-24 (as to "what websites does NIKE have"); 128:2-6 (as to "when it's launched" and "significant change"); 149:2-7 (as to "these four"); 192:16-24 (as to "this information") |
| Nicholas Johnson (Exhibit 4) | 78:11-79:2 (as to "own website"); 79:4-12 (as to "your counterparts"); 116:4-21 (as to "most relevant for purposes of gauging a competitive assessment"); 171:16-172:3 (ast to "impinging on any third-party rights"); 185:22-186:4 (as to "ultimately published"); 205:11-17 (as to "obtain an additional benefit" and "Nike tech platform"); 206:20-207:3 (as to "research … into consumer behavior with respect to the inside labels"); 283:8-15 (as to "anything more" and "actually accomplished in full"). |
| P. Mangum (Exhibit 5) | 19:16-20:1 (as to "market competitive product research and analysis"); 111:12-16 (as to "running any searches in the Anaqua system"); 129:11-19 (as to "important sources of information") |
| K. Mack (Exhibit 6) | 89:1-7 (as to "those instances that you've stated"); 91:18-92:3 (as to "do differently relating to this action") |

### 3. Incomplete Hypotheticals, Legal Conclusions, and Mischaracterizations of Evidence

At times, Lontex's counsel solicited testimony from NIKE witnesses by presenting them with incomplete hypotheticals, asking them to speculate, or to offer legal conclusions, or by mischaracterizing the evidence/assuming facts not in evidnece. These questions routinely prompted contemporaneous, form-based objections from NIKE's counsel. Because these

questions are objectionable, the Court should sustain NIKE's objections and exclude the following:

| Table 7: Testimony Lontex Designated Based on Incomplete Hypotheticals, Mischaracterizations of Evidence, and Calls for Speculation or Legal Conclusions ||
|---|---|
| S. Hall (Exhibit 1) | 14:20-24 (mischaracterizes prior testimony); 15:12-16 (same); 64:1-4 (mischaracterizes evidence); 142:8–143:7 (mischaracterizes testimony & evidence); 165:25–166:5 (same); 188:16-21 (same) |
| D. White (Exhibit 2) | 52:6-10 (calls for speculation); 82:4-25 (mischaracterizes evidence); 104:5-16 (same);  108:9-12 (incomplete hypothetical); 164:14–165:2 (same); 165:15–166:6 (same); 200:20–201:3 (incomplete hypothetical & mischaracterizes testimony); 201:22–202:15 (same) |
| Neil Munro (Exhibit 3) | 35:19-20 (mischaracterizes testimony); 36:15–37:24 (mischaracterizes testimony); 84:6-10 (same); 95:4-13 (incomplete hypotehtical); 97:22–98:7 (same); 128:2-6 (mischaracterizes testimony); 179:16–180:4 (mischaracterizes evidence); 190:9-17 (same); 212:17–213:1 (same) |
| N. Johnson (Exhibit 4) | 56:24–57:9 (mischaracterizes testimony); 171:16-172:3 (mischaracterizes evidence); 184:11-25 (mischaracterizes evidence & calls for speculation & incomplete hypotehtical); 205:11-22 (mischaracterizes testimony); 257:22–258:4 (mischaracterizes evidence & calls for speculation & incomplete hypotehtical); 280:10-16 (mischaracterizes evidence); 283:8-15 (same) |
| P. Mangum (Exhibit 5) | 45:4-13 (mischaracterizes evidence); 129:11-15 (mischaracterizes testimony) |
| K. Mack (Exhibit 6) | 86:12-19 (incomplete hypotehtical & calls for speculation); 87:20-88:6 (same); 91:1-8 (calls for legal conclusion); 91:18–92:3 (incomplete hypothetical & calls for speculation). 94:1-9 (calls for speculation & mischaracterizes testimony); 103:9-22 (mischaracterizes testimony); 104:1-7 (calls for legal conclusion); 115:6-12 (mischaracterizes evidence) |

### 4. Testimony of Counsel and Argumentative Questions

While questioning NIKE witness Deborah White, Lontex's counsel asked a series of argumentitive questions (about inadmissible tech sheets) that were not designed to ellict an answer but rather to allow counsel to "testify" into the record. (Exhibit 2, at 105:9–109:17).  NIKE contemporaneously objected to each quesiton.  Moreover, Ms. White stated that she did not have personal knowledge required to answer many of these objectionable questions.  Accordingly, this entire line of testimony should be excluded on the ground that the questions were argumentative

9

and the witnesses lacked personal knowledge, as required by Rule 602. Moreover, Lontex designated various statements and preambles made by *its counsel* during depositions. But statements and argument by counsel are not admissible evidence at trial. *Jamaica Ash & Rubbish Removal Co. v. Ferguson*, 85 F. Supp. 2d 174, 182 (E.D.N.Y. 2000) (explaining that "an attorney's statement or argument is not evidence"). This Court should sustain NIKE's objections:

| Table 8: Attorney Testimony Lontex Designated and Argumentative Questions | |
|---|---|
| Shannon Hall (Exhibit 1) | 64:1-4 (testimony of counsel); 70:9-13 (preamble); 141:15-24 (preamble) |
| Deborah White (Exhibit 2) | 14:4-11 (preamble); 105:9-109:17 (argumentative/testimony of counsel) |
| Neil Munro (Exhibit 3) | 179:16-19 (preamble); 190:9-10 (preamble) |
| Nicholas Johnson (Exhibit 4) | 197:16-21 (testimony of counsel); 201:3 (testimony of counsel); 258:3-4 and 258:20 (testimony of counsel). |
| Parker Mangum (Exhibit 5) | 45:4-5 (preamble); 124:16-21 (preamble); 129:11-15 (testimony of counsel) |
| Kimberly Mack (Exhibit 6) | 94:1-2 (preamble); 103:9-12 (preamble); 105:25-106:5 (preamble); 115:6-12 (testimony of counsel) |

### III. CONCLUSION

For these reasons, NIKE requests that this Court should grant this Motion and sustain NIKE's objections to the above-discussed deposition testimony that Lontex designated for use at trial. A Proposed Order granting this relief is attached to this Motion.

| | |
|---|---|
| July 15, 2021 | Respectfully submitted,<br><br>By:  */s/ Gina L. Durham*<br><br>DLA PIPER LLP (US)<br><br>Gina L. Durham (*pro hac vice*)<br>555 Mission Street, Suite 2400<br>San Francisco, CA 94105<br><br>Frank W. Ryan (*pro hac vice*)<br>Andrew J. Peck (*pro hac vice*)<br>Michael D. Hynes (*pro hac vice*)<br>Marc E. Miller (*pro hac vice*)<br>1251 Avenue of the Americas<br>New York, NY 100201<br><br>Ilana H. Eisenstein<br>Ben C. Fabens-Lassen<br>1650 Market Street, Suite 5000<br>Philadelphia, PA  19103<br><br>*Attorneys for Defendant NIKE, Inc.* |