**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LONTEX CORPORATION,**<br><br>                    **v.**<br><br>**NIKE, INC.** | **CIVIL ACTION**<br><br>**NO.  18-5623** |

## MEMORANDUM RE CHOICE OF LAW

**Baylson, J.**                                                          **July 27, 2021**

As required by the Court's Order dated April 22, the parties have briefed the issue of which state law the Court should apply to this case.  After reviewing the parties' submissions, the Court finds that it is required to conduct a choice of law analysis, and that Pennsylvania law applies.[1]

### I.      Background

After the issue of the state law claims brought by Lontex was raised in the parties' pretrial memoranda, the Court ordered Lontex to file a brief

> outlining for each of the state laws under which it is bringing a claim:
>
> a. The elements that Plaintiff must prove and relief available, and how each of those elements and forms of relief are or are not overlapping with the Lanham Act;
>
> b. A statement of how each of these claims is timely;
>
> c. A statement of how it plans to present any evidence concerning each of these state laws at trial and how the Court should instruct the jury on this issue; and
>
> d. Addressing any choice of law issues.

---

[1] In prior orders the Court has stated that the factual dispute in this case concerns only the use of the two words "cool compression" used together, but in determining the choice of law issue, the Court's analysis is not limited to products described with this phrase.

ECF 254.  Lontex filed its brief on May 4, 2021 (ECF 256, "Lontex Br.") and Nike responded on

May 18, 2021 (ECF 260, "Opp'n").   After reviewing these briefs, the Court submitted the

following questions to Lontex for it to answer in a reply brief:

> 1. After stating in its pretrial memo that it was abandoning its state
> law claims in Count IV, Plaintiff appears to be contending in its brief
> on state law claims that, if this Court were to hold that it could not
> pursue Count V under the laws of other states, Lontex still intends
> to pursue Count IV under Pennsylvania law. Please explain this
> contradiction.
>
> 2. In contending it seeks punitive damages under the laws of three
> states (Illinois, Georgia, and Minnesota) in Count V, Plaintiff shall
> disclose whether, in the factual record of this case, there is any
> evidence that Plaintiff competed against Defendant as to the
> products at issue in this case in these three states. If so, Plaintiff shall
> identify this evidence with reference to ECF if filed, or attach
> exhibits which have been disclosed in discovery. If this evidence is
> not in the record, what case or statutory law allows for such a claim
> in this case?

ECF 264.  Lontex filed its reply on June 8, 2021 (ECF 266, "Reply"), and Nike filed a response

via letter to the Court on June 9, 2021 (ECF 268).

Lontex's position regarding which state law claims it intends to assert has changed several

times over the course of this case.  Below is a review of its positions:

- Initial Complaint: claims under the laws of Pennsylvania, California, Florida,
  Texas, New York, New Jersey, Ohio, North Carolina, Maryland, Massachusetts,
  Illinois, Georgia, Colorado, Indiana, Minnesota, Washington, D.C. (ECF 1)

- Amended Complaint: claims under the laws of California, Florida, Texas, New
  York, New Jersey, North Carolina, Maryland, Massachusetts, Illinois, Georgia,
  Colorado, Minnesota, Washington, D.C. (removed Pennsylvania, Ohio, and
  Indiana from the initial complaint) (ECF 20)

- Summary Judgment: for purposes of discussing the statute of limitations issues, Lontex assumed arguendo that Pennsylvania law applied (ECF 222)

- Pretrial Memorandum: Lontex stated it was not pursuing its state common law claim, and for its state statutory claim intended to pursue claims under the laws of Colorado, Georgia, Illinois, Minnesota, New Jersey, New York, and Washington (ECF 245)

- Briefing on this Issue: Lontex stated its current position is that it would like to pursue its state statutory claim under the laws of Illinois, Georgia, and Minnesota, if however, the Court will not allow that option, it would pursue its state common law claim under Pennsylvania law

## II.  Choice of Law

### a.  Applying Choice of Law Principles

To begin, regarding whether the Court must conduct a choice of law analysis, Lontex argues that it need not, relying on a Federal Circuit case in which the Court stated that "California courts nor the California legislature are permitted to regulate commerce entirely outside of the state's borders. To do so would violate the Commerce Clause."   Allergan, Inc. v. Athena Cosmetics, Inc., 738 F.3d 1350, 1359 (Fed. Cir. 2013).  The Federal Circuit further explained that "[t]his rule applies regardless of whether . . . the laws of other states do—or even could—conflict with the" California law.  Id.  Nike responds that the Court must apply a choice of law analysis based on the Third Circuit's holding in System Operations, Inc. v. Scientific Games Dev. Corp., 555 F.2d 1131 (3d Cir. 1977), in which the Court reversed a decision by the District of New Jersey for failure to conduct such an analysis.

3

In <u>System Operations</u>, the plaintiffs brought an action in the District of New Jersey seeking a preliminary injunction based on violations of federal antitrust and patent law as well as state law claims of product disparagement and interference with contract. <u>Id.</u> at 1135. They alleged that the defendants disparaged their product in Delaware, Illinois, Michigan, New Jersey, and Nebraska. <u>Id.</u> In discussing choice of law, the district court stated:

> This Court could find no significant legal differences among the states in the area of disparagement. This is truly a developing area of the law and my references are general, guided only in part by New Jersey and Third Circuit authorities.

<u>Id.</u> at 1146 n.3. The Third Circuit characterized this statement as "skirting the choice-of-law problem" given that the district court later noted that New Jersey law was not consistent with the laws of the other states. <u>Id.</u> The Third Circuit then stated that the choice of law rules of the forum state apply regardless of whether the district court is exercising diversity or pendent jurisdiction. <u>Id.</u> at 1136. As the Court was deciding whether to uphold a preliminary injunction, it noted that it was not "decid[ing] what law should be applied to the instant action for damages resulting from disparagement which was allegedly published in the past." <u>Id.</u> at 1146 n.7. However, it "advise[d] the district court and the parties that the choice-of-law problems may not be ignored in the future progress of the action." <u>Id.</u> Therefore, the Court finds that under the Third Circuit's holding in <u>Systems Operations</u>, it is required to conduct a choice of law analysis.

### b. Pennsylvania Choice of Law Rules

In 1964, the Pennsylvania Supreme Court overruled its previous choice of law rule, "in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." <u>Griffith v. United Air Lines, Inc.</u>, 203 A.2d 796, 805 (Pa. 1964). Under this approach, "the first part of the choice of law inquiry is best understood as determining if there is an actual or real conflict between the potentially applicable laws." <u>Hammersmith v. TIG</u>

4

Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007).[2]  "If there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation."  Id.  "If a true conflict exists, the Court must then determine which state has the greater interest in the application of its law."  Id. at 231.  The Third Circuit combines "the approaches of both the Restatement II (contacts establishing significant relationships) and interests analysis (qualitative appraisal of the relevant States' policies with respect to the controversy."  Id.  (quotations omitted).  This analysis examines "which state has the greater interest in the application of its law by studying the contacts of each state to the incident relating to the issue before the court and comparing them on a qualitative scale.  Because of the focus on competing policies, such analysis tends to be fact-sensitive."  Almond v. Janssen Pharms., Inc., 337 F.R.D. 90, 97 (E.D. Pa. 2020) (Beetlestone, J.) (quotation omitted).

The Restatement of Conflicts lays out four factors to be taken into account in a choice of law analysis: "the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered."  Restatement (Second) of Conflict of Laws, § 145 (Am. L. Inst. 1988).  With respect to where the injury occurred, the Restatement notes that this factor is most important in situations where "the injury occurred in a single, clearly ascertainable, state" and less important where "there may be little reason in logic or persuasiveness to say that one state rather than another is the place of injury, or when . . . injury has occurred in two or more states."  Id. at cmt. e.  Regarding where the conduct occurred, the Restatement notes that this analysis "becomes more difficult in situations where the

---

[2] The undersigned authored this opinion when sitting by designation on the Third Circuit.

defendant's conduct and the resulting injury occurred in different states." <u>Id.</u>  With respect to

unfair competition specifically, it notes:

> The effect of the loss, which is pecuniary in its nature, will normally
> be felt most severely at the plaintiff's headquarters or principal place
> of business. But this place may have only a slight relationship to the
> defendant's activities and to the plaintiff's loss of customers or
> trade. The situation is essentially the same when misappropriation
> of the plaintiff's trade values is involved, except that the plaintiff
> may have suffered no pecuniary loss but the defendant rather may
> have obtained an unfair profit. For all these reasons, the place of
> injury does not play so important a role for choice-of-law purposes
> in the case of false advertising and the misappropriation of trade
> values as in the case of other kinds of torts. Instead, the principal
> location of the defendant's conduct is the contact that will usually
> be given the greatest weight in determining the state whose local law
> determines the rights and liabilities that arise from false advertising
> and the misappropriation of trade values.

<u>Id.</u> at cmt. f.

Regarding the third factor, the plaintiff's "principal place of business, is the single most

important contact for determining the state of the applicable law as to most issues in situations

involving the multistate publication of matter that . . . causes him financial injury." <u>Id.</u> at cmt. e.

Lastly, with respect to the fourth factor, where the parties' relationship is centered is most

important "[w]hen there is a relationship between the plaintiff and the defendant and when the

injury was caused by an act done in the course of the relationship." <u>Id.</u>

This is a somewhat unusual situation in that Lontex seeks to apply the laws of several

states, as opposed to the typical choice of law analysis in which the Court must choose between

two states' laws.  However, under the analysis described above the Court will apply the law of the

one state with the most significant interest in this case.

### c.  Count V (State Statutory Unfair Competition)

Nike argues that there is a conflict between the state unfair competition statutes of Pennsylvania and of Georgia, Illinois, and Minnesota, because under the Pennsylvania statute only consumers have standing, while under the Georgia, Illinois, and Minnesota statutes, competitors have standing as well.  See World Wrestling Fedn. Entm't, Inc. v. Big Dog Holdings, Inc., 280 F. Supp. 2d 413, 446 (W.D. Pa. 2003) (a private cause of action under Pennsylvania's unfair competition statute is "available only to consumers who have purchased or leased goods or services for personal, family, or household purposes") (citing Weinberg v. Sun Co., 777 A.2d 442, 445–46 (Pa. 2001)).  Lontex argues that there is no conflict, but also that each state's statutory claim should govern sales into their respective borders because those states "have expressed a stronger interest in protecting unfair competition for sales to consumers within their borders," and that Pennsylvania does not have an interest in depriving competitors of standing.  Lontex Br. 3.

First, the Court finds there is a "true conflict" between the unfair competition statute of Pennsylvania and the statutes of Georgia, Minnesota, and Illinois, for the reasons stated by Nike. Georgia, Minnesota, and Illinois have provided standing under their unfair competition statutes on a different basis than Pennsylvania.  In particular, as applied to this case, under the Georgia, Minnesota, and Illinois statutes, Lontex would have standing.  By comparison, under the Pennsylvania statute, the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), Lontex does not have standing.

Next, based on the discussion above, the Court finds that the most important factor to consider for determining the state with the most significant interest in this case is the plaintiff's principal place of business.  The Restatement essentially lays out two possibilities for determining the state with the most significant interest in an unfair competition case.  First, is a situation in

which there is a financial loss felt at the plaintiff's headquarters but that location does not have a relationship to the defendant's conduct.  In such a case, the location of the defendant's actions is the state with the most significant interest.  Under the second option, which focuses on the plaintiff's financial injury, the location of the plaintiff's business is the state with the most significant relationship to the case.  Lontex has not proposed relying on any specific action taken by Nike in any particular state.  Lontex has, however, repeatedly argued that Nike decimated its business, and seeks significant damages based on those allegations.  Because Lontex is based in Pennsylvania, a financial injury to it is felt in Pennsylvania, and that is the state with the most significant relationship.

In its Reply brief, Lontex states that "Illinois was the single state in which Lontex had the <u>most</u> pre-infringement unit sales . . . but fell back to fourth place in the infringement period when Nike flooded the Illinois market."  Reply 4 (emphasis in original).  Lontex states that "Georgia also was a state disproportionally flooded by Nike" and that "sales also dropped in Minnesota." <u>Id.</u>  Lontex seems to suggest that these states were particularly affected by Nike's conduct. However, this is the type of argument which the Restatement rejects.  In a trademark infringement case such as this, every state in which both parties do business may have some relationship to the issues.  There is evidence in this case that the allegedly infringing products were sold in all 50 states.  Therefore, the fact that Lontex and Nike competed in Georgia, Illinois, and Minnesota does not demonstrate that any of those states has a greater interest than any other in having its laws applied.[3]

---

[3] Lontex makes clear that it has selected these three states because they not only allow competitors to have standing but also allow punitive damages for trademark infringement.

For all the above reasons, the Court will apply Pennsylvania Law to Count V.  Because Lontex brings this case only as a competitor, and not as a consumer, it does not have standing under the UTPCPL, and therefore this Count fails as a matter of law.

### III.   Count IV (State Common Law Trademark Infringement)

Nike also makes several arguments as to why Lontex should not be able to proceed with its common law claim for trademark infringement.  First, it argues that Lontex abandoned its Pennsylvania claims when it amended its complaint to remove its claims under Pennsylvania law and when it stated in its pretrial memoranda that it was not proceeding with its common law claims. Next, Nike also argues that Lontex's common law claim should fail as a matter of law because it has not demonstrated that Nike "passed off" its product as Lontex's.  Lastly, Nike argues that Pennsylvania common law does not allow punitive damages for common law trademark infringement.  However, Lontex does not dispute that Pennsylvania law applies to this claim because "common law trademark infringement and unfair competition claims need not be brought by competitors, and permit punitive damages" so there is no conflict.  Lontex Br. 4.

First, while Nike is correct that Lontex has changed its position on which state law claims it planned to present several times, at this time, the Court is not going to prevent Lontex from proceeding under its Pennsylvania common law claim for any of the reasons put forth by Nike. This case is still in pretrial status and the Court will not preclude Lontex from renewing its common claim because it was pleaded by Lontex and was the subject of pretrial discovery.  Nike is not prejudiced by allowing the claim to proceed with the trial several months in the future.  Further, this Court had not yet conducted a choice of law analysis and ordered that Lontex proceed under one particular law, and therefore it will not hold Lontex to its previous positions.  For all these reasons, this Court will not reject Lontex's change of legal theory.

**IV.     Conclusion**

Finding that under Pennsylvania choice of law rules, Pennsylvania is the state with the most significant relationship to this case, the Court will apply Pennsylvania state law and dismiss Count V.   Lontex may proceed with its Pennsylvania common law claim at this time.   An appropriate Order follows.

O:\CIVIL 18\18-5623 Lontex Corp v Nike\18cv5623 Memorandum re Choice of Law.docx