## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LONTEX CORPORATION,** | **CIVIL ACTION** |
| v. | **NO. 18-5623** |
| **NIKE, INC.** | |

### MEMORANDUM RE EVIDENTIARY MOTIONS

**Baylson, J.**                                                                                                    **September 2, 2021**

### I.  Introduction

In this trademark case brought by one athletic clothing manufacturer against another, the Court has reached the phase of trial preparation in which it considers Motions regarding evidentiary issues.[1] Before the Court are several Motions regarding the admissibility of evidence: (1) the parties' briefing regarding evidence showing the words "cool" and "compression" separated by other words or numbers, or abbreviated, (2) Plaintiff Lontex's Motion in Limine, (3) Defendant Nike's Motion in Limine, (4) Lontex's Motion regarding Deposition Designations, and (5) Nike's Motion regarding Deposition Designations.  The Court held oral argument on select issues related to these Motions on August 19, 2021, see ECF 295, and the parties submitted supplemental briefing on August 27, 2021, ECF 300, 301.  Finding that many of these issues will be more appropriately resolved in context at trial, the Court will issue limited rulings and guidance on some of these issues at this time.[2]

---

[1] This case has raised several complex issues of trademark law, some of which date back to English common law and the original tort of "passing off." See Perry v. Truefitt (1842) 49 Eng. Rep. 749, 752 (Rolls Ct.) ("A man is not to sell his own goods under the pretence that they are the goods of another man.").

[2] The Court finds that rulings on some of these issues will be more appropriately made in context, particularly given the way the Court plans for trial to proceed.  The Court intends to have Lontex proceed initially and exclusively with its case in chief, then, when it rests, allow

1

## II.   "Cool Compression" Evidence

On April 22, 2021, the Court issued an Order laying out a schedule for pretrial briefing of certain issues. This Order stated:

> The Court reminds counsel that any evidence regarding Plaintiff or Nike's clothing or advertisements, etc. will be strictly limited to those items that use the words "cool compression" unseparated by other words or numbers, unless either party can show that any other usage is relevant to an issue in the case.

ECF 254. The Court's reasoning for this Order, as explained to the parties, is not only because Lontex's registered trademark is "cool compression" but also was to limit pretrial discovery to a fair and narrow factual context as both parties were otherwise determined to have discovery proceed without limits. Now, as trial approaches, both parties are seeking some exceptions to this Order and filed briefs on this issue on July 9, 2020, ECF 270, 271, and Lontex filed a response on July 23, 2020, ECF 280. At oral argument, the Court indicated to the parties, as it has before, that it intends to instruct the jury that liability is limited to instances of the use of "cool compression" without other words or numbers in between, but that evidence of other uses is relevant for context and for Nike's defenses. ECF 297, Hr'g Tr. 5:6–15.

### a.   Parties' Arguments

The parties agree that evidence showing that Nike used "cool" and "compression" separated by other words or numbers is relevant. Even Lontex admits that these examples are relevant as context and for Nike's fair use defense. Nike also emphasizes that evidence demonstrating the lack of use of "cool compression" by Lontex is also highly relevant to its abandonment defense.

---

Nike to present its defenses and counterclaims, and lastly Lontex may present its defenses on Nike's counterclaims.

Lontex also argues that Nike may be held liable for uses of the words "cool" and "compression" with other words or numbers in between, or where the words appear abbreviated. It argues that trademark infringement does not require that the marks be identical, but only confusingly similar, and that whether instances of the words being used separately is confusing is an issue for the jury. At oral argument, Nike's position was that not only must Lontex prove Nike's use of "cool compression" unseparated by other words or numbers or abbreviated, but it must demonstrate use of "cool compression" associated with each sale because some products were marketed with "cool compression" at some times, but not others.[3]  Hr'g Tr. 7:22–8:7.

    b. **Discussion**

        i. **Relevance**

Throughout this litigation, Nike has argued that it did not use "cool compression" as a trademark, but rather that it used words like "cool" and "compression" for their commonly understood meanings and that this use falls within the fair use defense in the Lanham Act. 15 U.S.C. § 1115(b)(4). "[T]he doctrine known as classic fair use protects from liability anyone who uses a descriptive term, fairly and in good faith and otherwise than as a mark merely to describe her own goods." United States Patent & Trademark Office v. Booking.com B. V., 140 S. Ct. 2298, 2307 (2020) (citing 15 U.S.C. § 1115(b)(4)). In order to prevail on this defense, Nike must show that: (1) it used "cool compression" in a non-trademark manner; (2) the use is descriptive of its goods or services; and (3) it used "cool compression" in good faith. 15 U.S.C. § 1115(b)(4). Nike argues that the fact that it uses the words "cool" and "compression" separately and separated by

---

[3] The Court notes that it has previously ordered that issues of liability be bifurcated from issues of damages. ECF 262, 263. Nike's arguments regarding the proof necessary for each sale for which Lontex seeks liability are more appropriately reserved for the damages phase of trial. Once a jury has determined whether there is any liability for Nike's various uses of "cool compression," it will be easier for the Court to review for which sales Lontex may seek damages.

other words in the same product descriptions demonstrates that its use of these words is purely descriptive and not as a trademark. Therefore, Nike's use of the words "cool" and "compression" on their own, next to each other, and separated by other words is essential to its ability to demonstrate this defense.

As both parties recognized in their briefs and at oral argument, examples of "cool" and "compression" being used separately or separated by other words may be relevant to limited issues in this case, particularly with respect to the fair use defense, but also as general context for these claims. Evidence of Lontex's use of other trademarks, and failure to use "cool compression" is also relevant to Nike's abandonment defense. Therefore, this evidence is admissible, within limits.

### ii. Liability

Lontex is correct that marks do not need to be identical for a jury to find infringement. The jury only needs to find that there is a likelihood of confusion. See 4 McCarthy on Trademarks and Unfair Competition § 23:20 (5th ed.) ("To find trademark infringement only by exact identity and not where the junior user makes some slight modification would be in effect to reward the cunning infringer and punish only the bumbling one."). Lontex relies on three cases from this Circuit which it argues demonstrates that marks which are noticeably different still must be submitted to a jury for potential liability. See Sabinsa Corp. v. Creative Compounds, LLC, 609 F.3d 175, 183–84 (3d Cir. 2010) (considering the marks "ForsLean" and "Forsthin"); Country Floors, Inc. v. Gepner, 930 F.2d 1056, 1063 (3d Cir. 1994) (considering the marks "Country Floors" and "Country Tiles"); John M. Middleton, Inc. v. Swisher Int'l, Inc., 2006 WL 2129209 (E.D. Pa. Jul. 26, 2006) (considering the marks BlackStone Mile and Black & Mild) (Pollak, J.). For this reason, Lontex argues that Nike may be liable for instances where "cool" and "compression" do not appear next to each other, and where the words are abbreviated (for example, "cl comp").

4

While Lontex is correct that in each of these cases the Court found that it was for a jury to decide whether marks that are not identical could be confusingly similar, none of them discuss the exact situation here, where sometimes the marks are identical, and other times they are not. Lontex has also not provided legal authority discussing a situation in which there are multiple variations on a mark, such as abbreviations or adding other words in certain instances. Therefore, none of this precedent is exactly on point, and the Court finds that the present situation is distinct. Nike may not be held liable for uses of "cool" and "compression" separated by other words or numbers, or abbreviated.

### III.  Motion in Limine by Lontex

Lontex filed its Motion in Limine on June 15, 2021, seeking to exclude two pieces of evidence. ECF 269, Lontex MIL. Nike responded on July 15, 2021. ECF 273, Nike Opp'n.

#### a.  Marksmen Report

During discovery, Nike produced a report by Marksmen, a private investigation company. The report includes a description of a conversation between an investigator, Sandon Berg, and Ephraim Nathan, the President and CEO of Lontex. It also documents a "test purchase" of a Lontex "cool compression" product. The parties agreed that Nike would not introduce Mr. Berg's conversation with Mr. Nathan, but only present the Marksmen witness to put forth the test purchase. In its briefing, Lontex stated that Nike may intend to introduce the conversation between Mr. Berg and Mr. Nathan. However, in its response, Nike clarified that it does not intend to do so and will abide by the parties' agreement. Nike stated that the Marksmen Report is only included in its trial exhibit list because the report is foundational evidence for the testimony concerning the test purchase. Nike has also agreed to work with Lontex to create a redacted version of the exhibit so it does not include Mr. Berg's conversation with Mr. Nathan.

Based on Nike's statements that it does not intend to use the evidence which Lontex objects to, this portion of Lontex's Motion is denied as moot.

### b. Communications Between Lontex and Invista

Lontex also seeks to exclude communications between Lontex and another company, Invista, regarding alleged infringement by Lontex of trademarks owned by Invista. Lontex explains that it used Invista fabrics in its products, and was using Invista's related marks, Coolmax and Lycra, to describe its products containing those fabrics pursuant to a licensing agreement. The exhibits at issue consist of cease and desist correspondence between lawyers for Lontex and Invista based on an alleged breach of the licensing agreement.

Lontex argues that this evidence is improper for two reasons. First that it is a "jus tertii" defense which "arises when [a] defendant raises the right of a third party. In a trademark infringement suit, a claim by [a] defendant that a third party has rights in the mark superior to [the] plaintiff is in effect, a jus tertii defense." J. Joseph McCarthy, Defining Jus Tertii, 6 McCarthy on Trademarks and Unfair Competition § 31:157 (5th ed.). Second, Lontex claims this evidence is unduly prejudicial and inadmissible as evidence of prior bad acts under Federal Rule of Evidence 404. At oral argument and in its supplemental brief, Lontex emphasized that these exhibits only serve to prejudice it, as there is ample evidence in the record demonstrating its use of Invista's marks. The only additional value of these exhibits is to suggest that Lontex acted improperly.

Nike responds that it does not intend to present a jus tertii defense or claim that this evidence demonstrates bad faith or prior improper conduct by Lontex. Nike intends to use this evidence to refute Lontex's statements that it has continuously used the cool compression mark since 2007. Nike argues that in fact, between 2008 and 2016, Lontex did not use cool compression, but instead used the Invista, Coolmax, and Lycra trademarks to promote particular features of its

products. Therefore, Nike argues, this evidence is highly relevant to its counterclaims in which it argues that Lontex filed a false declaration with the United States Patent and Trademark Office and abandoned its trademarks.

In order to prove its counterclaims, Nike will need to demonstrate that Lontex was not actually using the cool compression mark. Therefore, the Court agrees that evidence demonstrating Lontex's use of other trademarks instead of its own mark, in particular Invista's Coolmax and Lycra marks, is relevant to Nike's counterclaims. However, the Court also agrees that exhibits consisting of cease and desist communications from Invista are not relevant to Nike's counterclaims. Any alleged misuse of Invista's marks is not at issue here, and only the fact of Lontex's use of these marks is relevant. Therefore, Nike may introduce evidence of a licensing agreement between Lontex and Invista, and evidence which demonstrates Lontex's use of Invista's marks, but not communications between Lontex and Invista lawyers discussing any alleged misuse of Invista's marks by Lontex.

## IV. Motion in Limine by Nike

Nike filed its Motion in Limine on July 15, 2021, seeking to exclude nine categories of evidence. ECF 274, Nike MIL. Lontex responded on July 30, 2021. ECF 286, Lontex Opp'n.

### a. Accused Products and Representative Samples

Nike seeks to prevent Lontex from referring to examples of alleged infringement as the "accused products." Nike also seeks to prevent Lontex from stating that certain examples of Nike products are representative of how Nike always uses the terms "cool" and "compression." Nike lumps these two issues together because it argues that these are both examples of Lontex assuming facts not in evidence. Regarding the use of the term "accused products," Nike argues that Lontex refers to Nike products this way even though the trademark "cool compression" does not actually

appear on any of the products at issue, only in the descriptions of products. It explains that it is particularly concerned about this point because one of Lontex's experts stated that Nike products were "branded" with "cool compression" and then stated that he was confused on this point. Lontex responds that this is a common way to refer to the relevant products in a trademark infringement suit and does not imply that the products themselves have "cool compression" written on them. Lontex also argues that this term was used throughout discovery including by Nike witnesses and that to prevent its use now would exclude plainly relevant evidence. Lastly, Lontex explains that the fact that the relevant products did not have "cool compression" written on them is irrelevant to whether Nike infringed on Lontex's trademark.

The term "accused products" is not unfair to Nike, nor does it assume facts not in evidence. It does not necessarily imply that "cool compression" appears on the products themselves and is used to reference the products which are at issue in this lawsuit. Therefore, Lontex may use the term "accused products" and Nike is free to explain that "cool compression" does not actually appear on any products.

Regarding Lontex's use of representative samples, Nike argues that Lontex should not be able to suggest that certain examples where the words "cool" and "compression" are used next to each other are representative of the majority of Nike products. Lontex responds that this issue is at the heart of the dispute between the parties and it should be left to a jury to determine which characterization of Nike's use of "cool compression" is correct.

The Court must give Lontex fair latitude to present its proofs in support of its allegations of infringement. Additionally, Nike must have latitude to present its facts, either by cross examination of Lontex witnesses, or presentation of its own or third-party witnesses. Nike is not prejudiced by Lontex organizing or summarizing its exhibits and testimony to show alleged

infringement by Nike. The Court also notes that there was some discussion at oral argument about the use of summaries pursuant to Rule 1006, and the opportunity to brief this issue pretrial. See Hr'g Tr. 31:5–13. The Court will set a deadline of September 28, 2021 to submit any summaries to the Court for review, and the parties will have until October 6 to submit any objections.

### b. Nike's Financial Information

Next, Nike seeks to prevent Lontex from introducing evidence regarding Nike's financial information during the liability phase of the trial, including "earnings, market capitalization, stock price, cash reserves, total revenues and profits (both in the United States and worldwide), its ability to pay the amount Lontex has demanded, and most importantly, the amount of revenue or profit NIKE purportedly earned between 2015 and 2018 from selling the NIKE products at issue." Nike MIL 3. Nike notes that Lontex intends to introduce testimony from its damages experts, Jeffrey Parkhurst and David Drews, both of whom assumed that infringement occurred when rendering their opinions. Nike argues that such information is irrelevant to liability and highly prejudicial.

Lontex clarifies that it does not intend to introduce general financial information about Nike such as its stock price or cash reserves and to the extent Nike seeks to exclude that information, the Motion is moot. However, Lontex also argues that Nike sales volume data is relevant to proving liability because it is relevant to proving several of the Lapp[4] factors: one, degree of similarity; two, strength of the mark; five, intent; six, actual confusion; and seven and eight, overlapping channels. The Court agrees.

Regarding degree of similarity, "the test for determining the similarity of the marks is whether the labels create the same overall impression when viewed separately." Fisons

---

[4] In this Circuit, courts consider the factors laid out in Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983) when determining whether a likelihood of confusion exists.

Horticulture, Inc. v. Vigoro Indus., 30 F.3d 466, 477 (3d Cir. 1994). This is primarily a question of visual comparison. Regarding the remaining factors, the Court finds that sales volume information is relevant. However, each of these rulings, discussed further below, is made with an important caveat. Lontex is limited to presenting sales information that is specific to products named with "cool compression" in Nike's advertising and/or marketing materials. As discussed above, sales of these products are the only sales relevant to liability in this case. Second, the Court finds that evidence of revenue is not relevant in the liability phase of the trial, and this evidence must be presented in the form of sales volume data.

In evaluating the strength of the mark for Lontex's reverse confusion claim, Lontex must show that "any advertising or marketing campaign by [Nike] has resulted in a saturation in the public awareness of [Nike's] mark." Freedom Card, Inc. v. JP Morgan Chase & Co., 432 F.3d 463, 473 (3d Cir. 2005). Nike's sales volumes are relevant to this point. Regarding intent, Nike argues that proof of post-notice sales is not sufficient to prove intent. However, that does not mean that post-notice sales are entirely irrelevant. Lontex may present post-notice sales in order to attempt to argue that Nike's alleged infringement was willful. Regarding, actual confusion, Lontex intends to present charts, included in its supplemental brief, showing "diversion of sales." ECF 300, Lontex Supp. 7. These charts appear to show changes in Lontex's and Nike's sales over time, and it appears that Lontex intends to introduce this evidence of sales volume in the liability phase of trial through experts who were previously designated as damages experts. The Court does not intend to preclude these experts from testifying as to sales volume in the liability phase. However, the experts, when testifying in the liability phase, cannot make any assumptions that Nike is liable, and the testimony will be limited to sales volume. Without further information regarding exactly

how the damages experts intend to testify, the Court declines to make a definitive ruling on this issue at this time.

Sales information may also be relevant to the parties' overlapping channels. It appears that Lontex intends to argue that because Nike's sales are so widespread, they must have overlapped with Lontex's. Nike is not precluded from arguing that its significant sales fail to prove that the parties' marketing channels overlapped, but evidence on this issue may be relevant as to whether the parties had the same customers.

### c. Other Trademark Litigation

Nike seeks to prevent Lontex from referencing prior trademark litigation against Nike, specifically referencing two cases. It argues that references to these other cases are irrelevant, confusing, and prejudicial. Lontex responds that prior infringement claims with similar circumstances are relevant to the issue of Nike's notice of potential infringement and willfulness. Lontex relies on a prior decision by the undersigned, Steinmetz v. Houghton Mifflin Harcourt Publ'g Co., 113 U.S.P.Q.2D (BNA) 1093, 1095–96 (E.D. Pa. 2014). However, this opinion concerned discovery regarding other litigation against the defendant and noted that "[a] possible dispute exists whether this evidence should be admissible." Id. at 1096.

This Court finds that without binding precedent from the Third Circuit on this issue, that other trademark litigation against Nike is not relevant, unless Lontex can make a showing that a prior case is related in some way to this case, or Nike opens the door to the introduction of this evidence. The Court will reserve ruling on this issue until trial, pending such a showing from Lontex which would make these cases relevant.

### d. Foreign Operations

Next, Nike seeks to exclude "evidence or argument regarding NIKE's foreign operations, including the size of NIKE's operations abroad and its corporate tax structure; the location of NIKE's suppliers, manufacturers, or assemblers; and any press concerning the same." Nike MIL 10. It argues that this information is not relevant. Lontex contends that the fact that Nike products are not manufactured in this country is relevant to customer purchasing decisions, but it does not explain how this is relevant to trademark infringement.

In general, information related to the fact that Nike is a global company is not relevant to trademark infringement, including the fact that Nike products are not manufactured in the United States. Unless Lontex can demonstrate how the fact that Nike products are manufactured abroad is relevant to likelihood of confusion, this information is not admissible.

### e. Pre-Suit Communications

Nike seeks to prevent Lontex from introducing a statement by Nike's former outside counsel. Specifically, it seeks to preclude the introduction of a conversation between Mr. Nathan, and Nike's former outside counsel during which Mr. Nathan claims Nike's counsel stated: "they are going to kill you. They are going to ruin you." Nike MIL 10. Nike argues this statement is inadmissible under Rule 408 which bars "evidence of conduct or statements made in compromise negotiations" for certain purposes. Lontex responds that this conversation was not part of settlement negotiations but was instead Mr. Nathan communicating to Nike that it intended to sue. Lontex also argues that even if Rule 408 does apply, this comment is subject to two exceptions: negating Nike's argument of undue delay as well as bad faith.

Rule 408(b) states that evidence of compromise offers and negotiations are admissible for certain purposes including "proving a witness's bias or prejudice" and "negating a contention of undue delay." These statements are relevant to explaining Lontex's delay in filing suit, as Lontex

12

felt it needed additional time to prepare for a lawsuit against Nike based on the statement from Nike's counsel, and are admissible for that purpose. However, as Nike points out, the Court notes that laches is an equitable defense, and may require a separate hearing for the Court to decide this issue. Therefore, the Court will reserve decision on this issue, pending review of the parties' briefing on Kars 4 Kids Inc. v. Am. Can!, No. 20-2813, __F.4th __, 2021 WL 3504040 (3d Cir. Aug. 10, 2021).

### f. "Incontestable" Trademark Registrations

Nike argues that Lontex should not be permitted to refer to its "incontestable" trademark registrations or suggest to the jury that its trademark rights are derived from its registrations. Nike explains that trademark rights are acquired through use of the mark, not registration and to suggest otherwise is a misstatement of law. Nike also argues that the term incontestable is misleading because Lontex's registrations are still subject to legal challenge. Lontex responds that its references to its incontestable registrations are accurate and that registration creates a specific presumption even if it does not establish rights alone. It explains that "incontestable" is a term defined by the Lanham Act and that Lontex uses it correctly.

Under the Lanham Act, a trademark registration may be declared "incontestable" once it has been "in continuous use for five consecutive years subsequent to the date of" registration, subject to certain conditions. 15 U.S.C. § 1065. Id. While Nike is correct that the term "incontestable" does not mean that there can be no legal challenge to a trademark, Lontex is correct that "incontestable" is a legal term of art that it uses appropriately. The Court will not prevent Lontex from accurately using a legal term. Any confusion created by the use of this term will be addressed by jury instructions or other means of explaining the law to the jury.

### g. Compression Garment Studies

13

### i. The Kraemer Study

Nike seeks to exclude two studies regarding the effects of certain fabrics on athletic performance. The first is a 1997 study by William Kraemer which considered whether compression shorts affected vertical jump performance. Nike argues that there is no mention of Lontex products being included in this study and that the study concerns DuPont's Lycra branded fabric and therefore it is not relevant to this case. Nike also argues that Lontex intends to improperly introduce this study through a lay witness. Lontex contends that Lontex products contained at least 20% Lycra fabric and that Mr. Nathan has testified that Lontex garments were provided to the study authors to be included in their testing. It therefore argues that the study is relevant to the quality and effectiveness of Lontex products. At oral argument and in its supplemental brief, Lontex argues that this study falls under the hearsay exception for ancient documents pursuant to Rule 803(16).

Both the issues raised by Nike, relevancy and the introduction of this study by a lay person, are issues that depend on how this study is introduced at trial, and therefore the Court will reserve a ruling until then. While Lontex may be correct that this document falls under Rule 803(16) and is not hearsay, that does not mean it is relevant and that it can be introduced by a lay person. "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). "While expert testimony results from a process of reasoning which can be mastered only by specialists in the field, 701(c) demands that lay testimony be grounded on processes of reasoning familiar in everyday life." Acosta v. Cent. Laundry, Inc., 273 F. Supp. 3d 553, 557 (3d Cir. 2017). The evidence at issue is a scientific study conducted by experts in their field and published in a scientific journal. The study itself involved a variety of measurements of

14

physical movement and complex statistical analysis. The Court finds that this is the type of "scientific, technical, or other specialized knowledge" to which a lay witness may not testify. The Court understands that Lontex intends to have Mr. Nathan testify about this study, and the Court will not prevent him from testifying regarding whatever personal knowledge he may have. However, unless Lontex can qualify a witness as an expert, it may not introduce the technical findings of the study.

### ii. The Chaudhari Study

The second study was conducted by Ajit Chaudhari in 2017 to determine whether compression tights reduce fatigue in runners. Nike argues that Lontex has speculated, without any evidence, that Nike infringed on Lontex's trademark in order to repair its image after this negative study regarding Nike products. Nike argues that there is no evidence to support this narrative, including that there is no evidence that any relevant Nike employee was aware of this study. Nike also argues that it does not make sense that a decision allegedly made in 2014 could have been affected by a study published in 2017. Lontex responds that this study concerns Nike products and demonstrated that Nike's products were ineffective. It argues that this study is relevant as to how Lontex was damaged by association with Nike products and Nike's motive in using "cool compression."

Based on the same reasoning as above, Lontex may not introduce a technical study through a lay person. It also must provide a proper foundation for any testimony regarding this study in order to demonstrate its relevance. At this point, without further context for how this study would be introduced at trial, the Court will delay a final ruling.

### h. Subsequent Remedial Measures

Next, Nike argues that Lontex should not be allowed to introduce evidence regarding actions taken by Nike following pre-suit correspondence from Lontex, specifically evidence that Nike revised its product names despite its belief that its use of "cool compression" was not infringing. Nike argues that this evidence is precluded by Rule 407 which prevents introduction of evidence of "subsequent remedial measures." Lontex argues that this rule applies only to actions taken in furtherance of safety. Lontex also argues this information is admissible for other purposes including proving control over product naming, feasibility of renaming, and the end of the infringement period, as well as delay.

Rule 407 states:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures.

Therefore, evidence regarding measures taken by Nike is precluded by Rule 407 to the extent it is presented to demonstrate culpable conduct. In terms of presenting this evidence for proving control, Rule 407 only allows for the admission of this evidence when those issues are disputed. In this case, the parties agree that Nike has control over naming its products on its own website but dispute the level of control Nike has over third-party retailers. Therefore, evidence pertaining to Nike's relationship with third-party retailers may be admissible for the purpose of demonstrating control. The Court will examine any evidence in context during trial to determine whether the proposed evidence is relevant for this purpose.

Regarding the presentation of this evidence to demonstrate the reason for Lontex's delay in filing suit, the Court finds that this evidence may also be admissible for this purpose. However, as noted above, Nike's laches defense may need to be considered separately because it is equitable in nature.

### i. Nike Tech Sheets

Lastly, Nike argues that Lontex should not be permitted to offer evidence of non-consumer-facing uses of "cool compression" because it is not relevant to the issue of likelihood of confusion among consumers. Specially, Nike seeks to prevent introduction of its "tech sheets." Nike argues that tech sheets are used to educate employees about the technical aspects of new products and not shown to consumers. Lontex argues that the tech sheets are relevant because Nike is liable for infringing sales by third-party retailers and that tech sheets were distributed to retailers. It also argues that the tech sheets are relevant to how Nike retail associates were taught to communicate with consumers regarding the products at issue. At oral argument, Lontex stated that it intends to place this evidence in context with the testimony of Nike store employees who will explain their understanding of the tech sheets and how they were used. With this context, the Court finds that Nike's tech sheets, or other internal uses of "cool compression," may be relevant to demonstrate the knowledge of retail associates for certain products, the titles of which included "cool compression" in marketing materials. However, Lontex also seems to argue that Nike could be subject to liability for instances of "cool compression" appearing in its internal materials. The Court finds that, while this evidence may be relevant, it is not a separate basis for liability.

**V.      Nike's Motion on Deposition Designations**

17

Nike filed its Motion on Deposition Designations on July 15, 2021, seeking to exclude three categories of statements made in depositions. ECF 275, Nike MDD. Lontex responded on July 29, 2021. ECF 284, Lontex Opp'n.

### a. Brian Cammarota

Nike argues that Lontex should not be permitted to introduce the deposition testimony of Brian Cammarota because he is not "unavailable" to testify at trial. Mr. Cammarota lives in Pennsylvania, works in Radnor, PA, and in response to a subpoena appeared at DLA Piper's Philadelphia office. Lontex responds that a ruling on this issue is premature because it cannot control whether Mr. Cammarota is ultimately available for trial and Lontex has preserved its right to use Mr. Cammarota's deposition designations if in fact he is unavailable. Therefore, this issue is moot.

### b. Recurring Objections

Next, Nike groups its objections into several categories: (1) privilege issues, (2) vague questioning, (3) incomplete hypotheticals, legal conclusions, and mischaracterizations of evidence, (4) and testimony of counsel and argumentative questions. Each of these objections is fact-specific to the particular portion of the deposition at issue, and therefore the Court finds these issues are more appropriately resolved at trial.

### c. Motions in Limine

In its Motion on Deposition Designations, Nike also raises several issues raised in its Motion in Limine and discussed above. Specifically, Nike seeks to exclude portions of depositions which reference accused products, tech sheets, subsequent remedial measures, and damages testimony. The issues raised here are the same as above, and the Court's rulings apply equally to deposition testimony.

**VI.  Lontex's Motion on Deposition Designations**

Lontex filed its Motion on Deposition Designations on July 15, 2021, seeking to exclude three categories of statements made in depositions.  ECF 277, Lontex MDD.  Nike responded on July 29, 2021.  ECF 283, Nike Opp'n.

  a.  **Allegations in the Complaint**

First, Lontex argues that the portion of Mr. Nathan's deposition which are questions regarding statements in Lontex's Complaint are not proper because "what an attorney put in an unverified Complaint is not what frames this case for the jury and is not relevant."  Lontex MDD 2.  Nike responds that this issue is moot because it does not intend to use Mr. Nathan's deposition testimony at trial because it prefers to have him testify in front of the jury.  Therefore, this issue is moot.

  b.  **Design Mark**

Lontex also objects to portions of Mr. Nathan's deposition testimony regarding the third trademark registration, the design mark, which was dropped from this lawsuit because any mention of the design mark is irrelevant.  As stated above, because Nike does not intend to use Mr. Nathan's deposition testimony and does not intend to question him on the design mark, this issue is also moot.

  c.  **Rule of Completeness**

Lastly, Lontex argues that Nike's counter-designations are too expansive to be allowed under the rule of completeness and that testimony from Nike's own witnesses is hearsay when offered as a counter-designation.  Lontex accuses Nike of attempting to take over Lontex's case in chief with counter-designations, when Nike could have its own witnesses testify during its defense.  Lontex explains that the counter-designations are "often from ten, twenty or even one hundred

pages earlier or later in the deposition transcript" and "the counter-designations often bury Lontex's own designation in pages of counter-designations." Lontex MDD 5.  Nike responds that Lontex has designated lengthy portions of depositions which are confusing and misleading and that its counter-designations are properly designed to make those portions clear and accurate.  It also argues that Lontex only objected to certain counter-designations so may only seek to exclude those designations to which it originally objected.  Nike also notes that its counter-designations are conditional on certain evidence being introduced and may not all be necessary.

The Court finds that this issue is most appropriately addressed in context at trial, as it is not clear at this point what deposition testimony will be used by the parties.  The resolution of this issue will depend on which witnesses are called, who testifies live and in what order, and circumstances of trial which the Court cannot predict in advance.  Therefore, the Court will reserve this issue for a decision at trial.

## VII.    Conclusion

For the reasons stated above, the pending Motions will be granted in part, and denied in part.  An appropriate Order follows.


O:\CIVIL 18\18-5623 Lontex Corp v Nike\18cv5623 Memorandum Re Evidentiary Issues.docx