## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION,<br>      Plaintiff,<br><br>v.<br><br>NIKE, INC.,<br>      Defendant. | Civil Action No.: 18-cv-5623<br><br>(Hon. Michael M. Baylson) |

**DEFENDANT NIKE, INC.'S MOTION TO STRIKE THE TESTIMONY OF DAVID DREWS AND, TO EXCLUDE THE EXHIBITS INTRODUCED DURING HIS TESTIMONY, AND TO BAR HIM FROM TESTIFYING DURING ANY DAMAGES PHASE OF TRIAL**

Pursuant to Federal Rules of Civil Procedure 26(a)(2), 26(e), and 37(c), Defendant NIKE, Inc. ("NIKE") moves for an order and limiting instruction: (i) striking the testimony of Plaintiff's damages expert David Drews from the trial record, and (ii) excluding from evidence PX20 (including the handwritten notes made on PX20) and any other exhibit that he prepared or that was admitted during his testimony. NIKE further requests that, insofar as this trial proceeds to a damages phase, Mr. Drews be barred from testifying on the issue of damages. His current expert opinion is based on unreliable summaries prepared by Plaintiff's counsel, was not disclosed to Defendants in a timely manner, and still – on the eve of the end of the liability phase of this trial – has not been substantiated by any calculations tied to evidence in the record.

| | |
|---|---|
| October 25, 2021 | Respectfully submitted,<br><br>By:  */s/ Ilana H. Eisenstein*<br><br>DLA PIPER LLP (US)<br><br>Gina L. Durham (admitted *pro hac vice*)<br>555 Mission Street, Suite 2400<br>San Francisco, CA 94105<br><br>Michael D. Hynes (admitted *pro hac vice*)<br>Andrew J. Peck (admitted *pro hac vice*)<br>Marc E. Miller (admitted *pro hac vice*)<br>Lane Earnest McKee (admitted *pro hac vice*)<br>1251 Avenue of the Americas<br>New York, NY 100201<br><br>Ilana H. Eisenstein<br>Ben C. Fabens-Lassen<br>1650 Market Street, Suite 5000<br>Philadelphia, PA  19103<br><br>*Attorneys for Defendant NIKE, Inc.* |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION, <br>        Plaintiff, <br><br> v. <br><br> NIKE, INC., <br>        Defendant. | Civil Action No.: 18-cv-5623 <br><br> (Hon. Michael M. Baylson) |

**<u>DEFENDANT NIKE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE TESTIMONY OF DAVID DREWS AND, TO EXCLUDE THE EXHIBITS INTRODUCED DURING HIS TESTIMONY, AND TO BAR HIM FROM TESTIFYING DURING ANY DAMAGES PHASE OF TRIAL</u>**

Defendant NIKE, Inc. ("NIKE") respectfully submits this memorandum of law in support of its Motion to strike the testimony of David Drews and, to exclude the exhibits introduced during his testimony, and to bar him from testifying during any damages phase of trial.

## I. FACTUAL BACKGROUND

Mr. Drews submitted his original expert report on February 10, 2020, and his supplemental report on April 9, 2020, in accordance with this Court's scheduling order. (ECF No. 113 at ¶ 2). Neither of these reports referenced that Mr. Drews relied on any "summary exhibits" in forming his opinions and performing his calculations of sales volume or revenues. This Court had previously ordered that the case would be bifurcated into separate liability and damages phases. (ECF No. 262 at 4, 263).

On September 2, 2021, this Court made two rulings pertinent to this Motion. First, this Court ruled that Plaintiff could present evidence and testimony during the liability phase regarding "sales volume," but that their experts "cannot make any assumptions that Nike is liable, and the testimony will be limited to sales volume." (ECF No. 303 at 10). Second, this Court narrowed the number of styles at issue, ruling that "Nike may not be held liable for uses of 'cool' and 'compression' separated by other words or numbers, or abbreviated." (ECF No. 303 at 5).

On September 28, 2021, Mr. Drews disclosed seven new versions of certain exhibits from his reports, omitting sales dollars but presenting sales volume purportedly in accordance with this Court's Order. However, these new exhibits did not identify which product style numbers remained at issue in this case. Nor did the majority of these exhibits contain any citation to record evidence or intelligibly describe what they purported to demonstrate. (*See, e.g.*, PX17 attached hereto as Ex. A, which lacks a clear header, units on the Y axis, quantification of the total numbers shown, and reference to any source data.)

Mr. Drews then disclosed *eight more exhibits after trial began*, many of which significantly changed the numbers shown on his prior documents.[1] These eight exhibits included a new copy of PX20 (attached as Ex. B), which identified (for the first time) the NIKE product style numbers that Lontex claims are still at issue, and a copy of that document with handwritten "revised" calculations stated thereon. (*See* below and attached as Ex. C.) Lontex disclosed this handwritten document for the first time when it was published to the jury in trial, over NIKE's objection. (10/21/21 Trial Tr. at 26:25–27:1.) To this day—the day NIKE intends to rest its case—*Lontex has not demonstrated how Mr. Drews calculated these numbers with reference to any source documentation for these handwritten numbers*. NIKE's experts' best efforts to reverse-engineer these handwritten numbers have failed to confirm both of these totals.

**Lontex Corporation v. Nike, Inc.**
**Cool Compression Product Sales by State - Units: 10-21-21 Analysis**
Lontex, Nike and Nike Retailer Customers

| State | Lontex 2006 - 2014 Units | Lontex 2015 - 2019 Units | Nike Wholesale Units | Nike Retail Units | Non-Nike Retail Units |
|---|---|---|---|---|---|
| South Carolina | 42 | 29 | 31,117 | 19,173 | 11,944 |
| South Dakota | 2 | 0 | 12,473 | 0 | 12,473 |
| Tennessee | 1,236 | 47 | 211,658 | 179,949 | 31,709 |
| Texas | 1,719 | 1,003 | 331,135 | 104,005 | 227,130 |
| Utah | 32 | 4 | 46,373 | 27,535 | 18,838 |
| Vermont | 5 | 1 | 1,759 | 0 | 1,759 |
| Virginia | 475 | 62 | 66,647 | 22,426 | 44,221 |
| Washington | 151 | 22 | 59,160 | 34,309 | 24,851 |
| West Virginia | 33 | 5 | 16,768 | 0 | 16,768 |
| Wisconsin | 212 | 52 | 143,596 | 22,248 | 121,348 |
| Wyoming | 11 | 11 | 1,163 | 0 | 1,163 |
| **Totals:** | 20,132 | 5,553 | 6,444,674 | 1,761,544 | 4,683,130 |

Total Nike Wholesale Units Post 4-8-16: 3,493,625

Sources: NIKE-00044256, 45845; LTX_EDPA_00000867, 905, 24506, 24507.
Nike product numbers included in the analysis: 642350, 642351, 642352, 642354, 683134, 687837, 687839, 687840, 703084, 703086, 703088, 703092, 703094, 703096, 703098, 719903, 724782, 724785, 726460, 726461, 726462, 726464, 726465, 728047, 728048, 728049, 729269, 729273, 742959, 742961, 804655, 828642.

Revised Nike retail $35,776,352.50
Revised wholesale $74,641,405.86

---

[1] Mr. Drews disclosed two entirely new charts on October 19, 2021 (the second day of trial), revisions of those two charts the very next day (presenting data changed by over 20%), and four additional charts the next day (one of which had never before been seen by NIKE, and one of which was a handwritten addition that was first seen by NIKE at the same time it was published to the jury).

2

During his in-Court testimony on expert voir dire, Mr. Drews stated that the narrowed list of style numbers at issue ***was provided to him by Plaintiff's counsel***, who in turn conceded that the charts Mr. Drews had previously submitted contained material errors. (*Id.* at 167:17–20, 9:14–24.) Mr. Drews also disclosed for the first time in Court that he relied on a "summary" in analyzing these style numbers. (*Id.* at 167:23–168:4, 134:18–22.) Although it is unclear what summary or summaries Mr. Drews was referring to—since his expert report did *not* state that he had relied on any summaries when preparing his opinions—it appears that he relied on one of the four summary exhibits prepared by Troutman Pepper, which were disclosed to NIKE for the first time on September 28, 2021—nearly a year and a half after Mr. Drews issued his initial report. (*Id.* at 37:7–38:12, 41:1–43:15, 45:15–26:24, 33:9–24.)

## II. ARGUMENT

### A. Mr. Drews' New Opinions and Calculations are Based on Unreliable Summaries, Which Represent an Insufficient Basis for Expert Testimony under Federal Rule of Evidence 703.

For the first time during trial, Mr. Drews stated that he relied on summaries of catalogs, tech sheets, and websites in performing his calculations and reaching his opinions. (Court Tr. 10-21-2021 at 167:23–168:4, 134:18–22). Testimony in Court that same day revealed that those summaries were prepared by Plaintiff's counsel, containing many inaccuracies and misrepresentations. These summaries were not disclosed to NIKE until September 28, 2021, well after Mr. Drews' expert report, supplemental expert report, and deposition occurred. Examples of inaccuracies in these summaries include:

- PX30A includes screenshots of websites showing unauthorized sellers of NIKE products, including third-party resellers like eBay and the assisted living facility "The Plaza at Clover Lake." (*Id.* at 72:12–17, 75:8–14; *see* 10/21/21 Trial Tr. at 137:23–25, 132:11–17.).

3

- PX31 includes listings of both full catalogs and excerpts of those same catalogs, misleadingly presented in the summary as two different catalogs. (10/21/21 Tr. at 90:12–92:5.)

- PX31 refers to PX1474, which is a hybrid catalog created by Plaintiff from six different NIKE catalogs.  Even though PX1474 never existed until it was created by Plaintiff's counsel, Lontex cited identical data contained in that document three separate times in the summary. (*Id.* at 92:16–95:18.)

- PX30A and PX31 contain numerous duplicate entries for purportedly infringing website or catalog that are entirely identical or that differ only as to the color of the same product.

In addition to relying on these inaccurate and misleading summaries prepared by Plaintiff's counsel, Mr. Drews also assumed that liability would be established, that consumer confusion would be established, and that generalized accounting principles applied to NIKE's financials even though no evidence supports that assumption. (Drews Dep. 84:4–16, 98:12–15, 150:6–2,4 309:12–16 (excerpts attached hereto as Ex. D); *see* ECF No. 329, Nike Trial Brief at 12-16.)

While testifying, Mr. Drews also set forth a new, never-before-disclosed standard he purportedly applied to determine which NIKE products to include in his count of NIKE's allegedly infringing sales volumes and revenues.  Mr. Drews testified that he only included as allegedly infringing NIKE products where the use of the words "Cool Compression" was "fairly prominent." (*see* 10/21/21 Trial Tr. at 171:23–172:7).  He then asserted that, in his opinion, a reference to "Cool Compression" in a product description, typed in 8-point font as part of a 745-page catalog, was sufficiently "prominently displayed" as to warrant inclusion in his analysis. (*Id.* at 175:7–19). This new standard had not been previously disclosed, is not objectively applied, and is not the product of any reliable (or even discernable) method.  It is also contrary to the requirement that the sales at issue bear a reasonable nexus to the infringing conduct. (ECF No. 303 at 3-4, 10.)

Mr. Drews's reliance on the misleading summaries and unfounded assumptions represent an improper basis for expert testimony in violation of Fed. R. Evid. 703.  Rule 703 provides that

4

"[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Expert opinion is particularly unreliable when it is based on information prepared by a party that the expert does not verify. *See Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 137–38 (M.D. Pa. 2015) ("blind adherence to data absent any sort of independent investigation stops short of the type of reliability contemplated by *Daubert* and *Paoli II*. Like the expert in *Legendary Art*, Plaintiffs' experts here admittedly relied solely on Defendant's pro forma projections, conducted no independent investigations into the validity of those projections, and had no knowledge of the details surrounding their generation"); *see also In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999) ("If the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded.") (citation omitted). Mr. Drews's testimony and the exhibits entered through him should not be considered by the jury. A limiting instruction striking that testimony and excluding those exhibits is necessary to cure the prejudice to NIKE resulting from their initial admission into evidence. And if this case proceeds past the liability phase, Mr. Drews should not be permitted to testify, since he will not be able to offer any substantiated, reliable testimony in light of his ever-shifting calculations, which lack any record support.

    **B.**    **Rules 26 and 37 Require the Exclusion of Plaintiff's Expert's New Testimony, Calculations, and Charts Disclosed Long After the Applicable Deadlines.**

        1.    Third Circuit Precedent Requires Exclusion of Late-Disclosed Expert Opinions and Analysis

Third Circuit law is clear that new expert opinions or analysis that is disclosed too close to trial must be excluded. If there is ever a case where such an outcome is warranted, this is it: Mr. Drews never disclosed his analysis or his newfound methodology during expert discovery, and he changed his calculations on the day of his testimony, again the day before that, and once more the day before that. A party cannot fairly and reasonably be expected to cross-examine an expert

whose opinions change with the wind and aren't known until after trial has begun. His late-disclosed opinions and "analyses" presented during the liability stage must be excluded.

Federal Rule of Civil Procedure 26(a)(2)(B) requires expert reports to be produced according to the schedule set out by the Court, and Rule 26(e) obligates a party to disclose any additions or other changes to this information "by the time the party's disclosures under Rule 26(a)(3) are due"—*i.e.*, at least thirty (30) days before trial. *See* Fed. R. Civ. P. 26(a)(3) ("Unless otherwise directed by the court, these disclosures must be made at least 30 days before trial."). The Third Circuit has identified five factors in analyzing whether exclusion of evidence is the appropriate sanction for a failure to comply with discovery requirements:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; (4) bad faith or willfulness in failing to comply with a court order or discovery obligation; and (5) the importance of the evidence at issue.

*See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d. Cir. 2012); *Velez v. QVC, Inc.*, 2004 WL 1175726, at *1 (E.D. Pa. May 25, 2004).

Each of these factors weighs in favor of excluding Mr. Drews' new testimony and calculations. First, there can be no greater surprise than the presentation of handwritten calculations of numbers disclosed to NIKE moments before they were published to the jury. NIKE was severely prejudiced by having to analyze the provenance of these numbers live in court before the jury. *See, e.g.*, 10/21/2021 Trial Tr. at 147:12–23 (NIKE's counsel stated that Mr. Drews identifying his source document "would be extremely helpful."). Second, Plaintiff has still, to this day, not provided the calculations underlying the handwritten numbers, or many of the sources from which Mr. Drews' other late-disclosed charts were created. It is therefore impossible for

6

NIKE to effectively prepare to cross-examine Mr. Drews during a damages phase of this trial, or to prepare NIKE's own damages expert to rebut Mr. Drews's ever-changing data. Third, the introduction of Mr. Drews' never-before-seen evidence has already substantially disrupted the orderly and efficient progress of trial. *See, e.g.*, *id.* at 144:23–145:25. Fourth, Plaintiff has offered no justification for why it waited until after trial began to disclose eight new exhibits with modified numbers. And fifth, the evidence offered by Mr. Drews during the liability phase of this trial relates primarily to damages, but should not have been offered during liability in this bifurcated trial (as explained further below).

The Third Circuit has applied these factors to exclude new expert analysis and opinions, even when those opinions were disclosed long before the middle of trial. In *Coalition to Save Our Children v. State Board of Education*, 90 F.3d 752 (3d Cir. 1996), the Third Circuit affirmed the district court's exclusion of an expert report that was disclosed in violation of two pretrial orders. *Id.* at 775. The Court ruled that:

> As of November 30, Appellant knew all of the State Board's experts' topics and methodologies. Appellant could have, but declined to, file a supplemental report for expert witness de Leeuw on December 9, as it did for three of its other experts. . . . Instead, Appellant chose the tactical route of surprise. In light of the foregoing discussion, we conclude that the district court did not abuse its discretion in excluding this surprise testimony.

*Id.* at 776. Mr. Drews' testimony, including his handwritten calculations shown to NIKE for the first time at the same time they were published to the jury, must be barred. *See Steele v. Aramark Corp.*, 535 F. App'x 137, 143 (3d Cir. 2013) (affirming district court's decision to exclude new affidavit of expert witness attached to opposition to summary judgment brief, finding that "[b]earing in mind the advanced stage of the litigation, the extensive expert discovery that had

7

already been completed, and Plaintiff's lack of justification, we see no abuse of discretion in the District Court's choice" to exclude the new affidavit).[2]

        2.        <u>Late-Disclosed Expert Opinions and Calculations Must Be Excluded.</u>

Federal Rule 26 required Plaintiff to disclose long before trial "(i) a complete statement of all opinions the witness will express ***and the basis and reasons for them***; (ii) ***the facts or data considered by the witness in forming them***; [and] (iii) ***any exhibits that will be used to summarize or support them***." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). The purpose behind requiring a "detailed and complete" expert report in Federal Rule of Civil Procedure 26(a)(2) is "the elimination of unfair surprise to the opposing party and the conservation of resources" and to prevent the disclosure of the content of an expert's proposed testimony from being "sketchy and vague." *Billet Promotions, Inc. v. IMI Cornelius, Inc.*, 1998 WL 721081, *7 (E.D. Pa. 1998). Reports must be supplemented or corrected "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). "Supplemental reports must be disclosed by the time a party's pre-trial disclosures are due." *Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Env't, Inc.*, No. 09-CV-0956, 2011 WL 1196922, at *4 (E.D. Pa. Mar. 30, 2011).

---

[2] *See also Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. CV155477MCALDW, 2019 WL 581544, at *5 (D.N.J. Feb. 13, 2019) (striking trademark damages expert supplemental report because: (1) supplemental report included information previously available to expert, but which expert elected not to include in initial report; (2) supplemental report was submitted nearly two months after court's deadline for defendants' expert disclosures; (3) supplemental report was disclosed minutes before expert's deposition without any advance notice; and (4) plaintiffs had expended time and effort investigating information expert previously relied on in initial report and disclaimed in supplemental report); *Haskins v. First Am. Title Ins. Co.*, No. CIV.A. 10-5044 RMB, 2013 WL 5410531, at *2 (D.N.J. Sept. 26, 2013).

### C. This Court's Bifurcation Order Prohibited the Introduction of NIKE's Wholesale and Retail Sales Dollar Values by Mr. Drews.

In bifurcating this trial, this Court ordered that the jury not "hear[] any damages testimony" as part of the liability phase. (ECF No. 262 at 4). The Court did, however, permit Mr. Drews to testify as to total <u>*units*</u> sold on the ground that the units sold could be relevant under the *Lapp* factors. But during trial this Court went further and permitted Mr. Drews to testify to his *handwritten* calculation of the total sales <u>dollars</u> and <u>revenues</u> of NIKE's products, not just the volume of units sold. (Court Tr. 136:17–137:14). That information is not relevant to the liability issues being decided by the jury at trial—including likely confusion under the *Lapp* factors, fair use, or abandonment. And it is highly prejudicial.

This Court cited *Parks, LLC v. Tyson Foods*, 863 F.3d 220 (3rd Cir. 2017), in support of this ruling, admitting those dollar amounts because "raw sales figures need to be put into context to have any meaning." (Court Tr. at 27:19–28:12). *Parks* is inapposite and does not support the admission of NIKE's revenues during the liability phase of a bifurcated trial for the following reasons:

1. NIKE's revenues are not probative on the issue whether there is a likelihood of confusion under the *Lapp* factors; *Parks* does not hold otherwise.

2. The issue in *Parks* was whether plaintiff established that its mark had acquired "secondary meaning." But secondary meaning is not at issue in this case, since Lontex has a registered, incontestable trademark for COOL COMPRESSION, which carries with it an automatic assumption that the mark has acquired secondary meaning. There is no dispute of secondary meaning in this case, which is why that issue does not appear in either party's proposed jury instructions

3. Even if secondary meaning were relevant (and it is not), the factors set out by *Parks* go to whether the *Plaintiff's sales* reflect that its mark has acquired secondary meaning. The *defendant's* sales are not at all relevant to that analysis. In a case where secondary meaning is in dispute, the inquiry would be whether *Lontex's* sales—*not NIKE's*— establish that COOL COMPRESSION has acquired secondary meaning under the *Parks* factors.

    4. Even if NIKE's sales were relevant to this issue of likelihood of confusion here (and, again, they are not), nothing in *Parks* indicates that NIKE's total *revenues* are relevant. To the contrary, NIKE's revenues are relevant only to Lontex's claim for damages. The Court's bifurcation and Motions *in Limine* Orders had previously limited the admission of NIKE's sales data to total <u>units</u> sold; *Parks* does not warrant extending that limitation to total revenues. The Third Circuit's statement that "raw sales data needs to be put into context," which again discusses the *plaintiff's* sales data, does not mean that a jury in a bifurcated case needs to know how much money NIKE made to determine whether confusion was likely.

    5. Finally, *Parks* did not involve a case that had been bifurcated between liability and damages for purposes of trial and thus it sheds no light on whether and to what extent the plaintiff's sales data would be relevant to show secondary meaning during a bifurcated proceeding.

The NIKE and non-NIKE retailer sales dollars testified to by Mr. Drews (without providing any supporting calculations based on record evidence) were not needed to provide context for the sales volume, which is the only element that this Court ruled was pertinent to the *Lapp* factors as part of liability. (ECF No. 303 at 10). This Court should correct this error before the jury deliberates on liability by striking Mr. Drews's testimony, excluding PX20, and providing the jury with a curative instruction.

## III.   CONCLUSION

For the foregoing reasons, NIKE respectfully requests that this Court instruct the jury to disregard the entirety of David Drews' testimony provided during the liability phase of the trial, exclude from evidence the exhibits Plaintiff introduced through Mr. Drews (PX20, PX1621,[3] and the handwritten notes on PX20), and bar Mr. Drews from testifying during any damages phase of trial.

---

[3] It is unclear at this time whether Plaintiff intends to assert that PX1621 was properly admitted into evidence, as it was not authenticated by any witness. NIKE raises PX1621 in this Motion to preserve all rights.

| | |
|---|---|
| October 25, 2021 | Respectfully submitted,<br><br>By:  */s/ Ilana H. Eisenstein*<br><br>DLA PIPER LLP (US)<br><br>Gina L. Durham (admitted *pro hac vice*)<br>555 Mission Street, Suite 2400<br>San Francisco, CA 94105<br><br>Michael D. Hynes (admitted *pro hac vice*)<br>Andrew J. Peck (admitted *pro hac vice*)<br>Marc E. Miller (admitted *pro hac vice*)<br>Lane Earnest McKee (admitted *pro hac vice*)<br>1251 Avenue of the Americas<br>New York, NY 100201<br><br>Ilana H. Eisenstein<br>Ben C. Fabens-Lassen<br>1650 Market Street, Suite 5000<br>Philadelphia, PA  19103<br><br>*Attorneys for Defendant NIKE, Inc.* |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONTEX CORPORATION,<br>      Plaintiff,<br><br>v.<br><br>NIKE, INC.,<br>      Defendant. | Civil Action No.:  18-cv-5623<br><br>(Hon. Michael M. Baylson) |

### [PROPOSED] ORDER

**AND NOW**, this ___ day of _____, 2021, upon consideration of Defendant NIKE, Inc.'s ("NIKE") Motion, it is hereby **ORDERED** that NIKE's Motion is **GRANTED**. The jury will be instructed to disregard David Drews' testimony during the liability phase of this trial, PX20, PX1621, and the copy of PX20 containing Mr. Drews' handwritten notes are excluded from consideration as evidence unless they are submitted through a witness other than David Drews, and David Drews is barred from testifying during any damages phase of trial.

                     **IT IS SO ORDERED.**

                     _____
                     Hon. Michael M. Baylson
                     United States District Judge