```
1                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF PENNSYLVANIA
2

3   LONTEX CORPORATION           )      18-CV-5623
                                 )
4                    Plaintiff   )
          vs.                    )
5                                )
    NIKE, INC.                   )
6                                )      Philadelphia, PA
                                 )      October 26, 2021
7                    Defendant   )      9:21 a.m.

8
                         TRIAL - DAY 7
9           BEFORE THE HONORABLE MICHAEL M. BAYLSON
                   UNITED STATES DISTRICT JUDGE
10                        AND A JURY

11  APPEARANCES:

12  For the Plaintiff:          BEN L. WAGNER, ESQUIRE
                                MICHAEL A. SCHWARTZ, ESQUIRE
13                              TROUTMAN PEPPER HAMILTON SANDERS
                                11682 El Camino Real, Suite 400
14                              San Diego, CA  92130
                                ben.wagner@troutman.com
15

16  For the Defendant:          MICHAEL HYNES, ESQUIRE
                                GINA L. DURHAM, ESQUIRE
17                              ILANA H. EISENSTEIN, ESQUIRE
                                DLA PIPER LLP
18                              1251 Avenue of the Americas
                                New York, NY  10020
19                              michael.hynes@us.dlapiper.com
                                gina.durham@dlapiper.com
20                              ilana.eisenstein@dlapiper.com

21             SHANNAN GAGLIARDI, RDR, CRR
                    OFFICIAL COURT REPORTER
22        U.S. DISTRICT COURT, EASTERN DISTRICT OF PA
                   601 Market Street, Room 2609
23                 Philadelphia, PA  19106
                        (267)299-7254
24

25
```

1          THE DEPUTY CLERK:  All rise.

2                    (Clerk opens court at 9:21 a.m.)

3          THE COURT:  Okay.  Be seated.

4          Counsel, Ms. DiSanti advises me there's a dispute

5   about one exhibit, which I have in front of me, DX-298.  It's a

6   letter dated April 8, 2016 addressed to Hilary Krane, Esquire,

7   at Nike, and signed by Gary Rosen, who is an attorney.

8          I understand the defendant -- it's a defense

9   document, is that right, Ms. Eisenstein?

10          MS. EISENSTEIN:  Yes, Your Honor.  This was a

11   document that was not introduced into evidence.  I think it may

12   have been shown to Mr. Nathan while Ms. Durham was

13   cross-examining him as just a refreshment of his recollection.

14   But there was nowhere in the transcript that this was admitted

15   into evidence, and that was intentional.

16          When I examined Mr. Nathan, I did not introduce it

17   into evidence or even reference it, so we don't believe this is

18   in evidence.  And matter of fact, we would have some objections

19   were it to be in evidence because it has a number of legal

20   conclusions and other self-serving statements that we think

21   would be inappropriate to present to the jury, which is why we

22   did not do so.

23          MR. SCHWARTZ:  Your Honor, this is actually, we

24   believe, should be in evidence.  As Ms. Eisenstein said, it was

25   shown to Mr. Nathan and the jury during the cross-examination

1  of Mr. Nathan.  This was after the Court had said that

2  documents that are being shown to the witnesses will be

3  admitted.  We inadvertently did not formally request it, but it

4  was shown to the jury.  We've heard testimony about the cease

5  and desist.

6          THE COURT:  I recall Mr. Nathan testifying about

7  this, and I can't -- and I believe I have some recollection of

8  a letter from Gary Rosen being shown to the jury.

9          Ms. Eisenstein, do you have a dispute that this was

10  shown to the jury?

11          MS. EISENSTEIN:  Yes, Your Honor.  At least it was

12  not our intent to show it to the jury.  Our intent was to show

13  it, if at all, to Mr. Nathan.

14          THE COURT:  You didn't use it, but Lontex counsel

15  used it in examining Mr. Nathan?

16          MS. EISENSTEIN:  No, Your Honor.

17          MR. SCHWARTZ:  Your Honor, we did not use it in our

18  direct.  It was used by Ms. Durham in cross-examining

19  Mr. Nathan, shown to him on the screen.

20          THE COURT:  That for me is enough to admit the

21  document.  The document will be admitted.  PX-298 is admitted.

22          MR. SCHWARTZ:  Thank you, Your Honor.

23          THE COURT:  Mr. Wagner, how long do you want to

24  reserve for your rebuttal speech?

25          MR. WAGNER:  Twenty minutes is my intention, if the

1  train is on time.

2         THE COURT:  That's why I'm late, because the train.

3  I hope this train will be on time.  You can have 20 minutes

4  rebuttal.

5         Bring the jury in, please.

6         I'll just have a few words to say about closing

7  arguments.  I don't prohibit counsel from objecting during

8  opposing counsel's argument, but I don't like it unless there's

9  some very serious transgression.

10        MR. WAGNER:  I don't like it either, Your Honor.

11 Thank you, Your Honor.

12        THE COURT:  Okay.  Thank you.

13        THE DEPUTY CLERK:  All rise.

14               (The jury enters the courtroom at 9:25

15               a.m.)

16        THE COURT:  Okay.  Be seated, please.

17        Ladies and gentlemen, good morning.  I hope you had a

18 nice evening.

19        We are now about to begin the closing arguments in

20 the case.  Closing arguments are a very important part of every

21 jury trial, including this one.  You've been very attentive,

22 and I ask you to continue your good attention.

23        When counsel argues, both counsel, they are allowed

24 to comment on the evidence and comment on the law, but it is

25 your recollection of the evidence that counts.  So pay close

 1   attention.  If one of the lawyers says something that is not

 2   exactly your recollection, as I'm going to tell you in my final

 3   charge, or even if I were to say something about the evidence

 4   and it's different from yours, it's your recollection of the

 5   evidence that counts in the case.  But they're allowed to

 6   comment on it.  I'm sure they'll do their best to be advocates

 7   for their clients and will do their best to be accurate in what

 8   they say took place from the witness stand and what is in the

 9   documents.

10         And they're also allowed to comment on the law, but

11   the law -- the instructions on the law will come from me after

12   the closing arguments are done, and you are bound to accept the

13   law as I give it to you.

14         You're also welcome to make notes while the lawyers

15   are speaking, if you want to, but I think giving them close

16   attention, because they spent, as you know, many days and weeks

17   preparing for the trial and the trial has moved along quickly,

18   and we're now at the time when they're prepared to sum up and

19   argue their positions to you.

20         Mr. Wagner will first close for the plaintiff.  He's

21   asked to reserve 20 minutes for his rebuttal speech after Nike

22   counsel finishes.  So he'll now speak for 40 minutes.  If

23   nobody needs a bathroom break, we will probably then go

24   directly into the Nike argument and then the rebuttal.  We'll

25   see where we are and whether any member of the jury wants a

1    break.

2              Okay.  Mr. Wagner, please proceed.

3              MR. WAGNER:  Good morning.

4              You'll remember when we first came in front of you, I

5    asked you to think of this as your property, that someone came

6    up, exploited, destroyed, and then refused to leave.  And I ask

7    you to remember, is the law really powerless to protect against

8    such injustice?  The judge is going to instruct you on the law,

9    and I ask you to apply that law justly to find for my client.

10             So, Mr. Nathan, right, we all remember back in 1989,

11   came up with the way to put Lycra into a compression garment.

12   He built that brand, he built that reputation, sold it to

13   professional teams across the country.  Remember, his daughter

14   called him super dad because he worked so hard during the day.

15   He got more done than anyone could imagine.

16             Thousands of people a year from then until now heard

17   his message about his stretch technology, about how it could

18   help your life, about how it could improve your performance.

19   They heard it at churches, they heard it at hospitals, they

20   heard it at schools, colleges, events, runs like the Broad

21   Street Run over here, like so many places, industry events like

22   the athletic trainers associations.  Everywhere he went, he

23   spread the message of his stretch technology.

24             But you remember, he doesn't have a patent on that

25   technology.  What he can do is he can give it a brand, a name

1   that belongs all to Lontex.  And he did just that in 2007, gave

2   it the name Cool Compression.  And he did what we hoped.  He

3   got a registration with the Federal Government.

4          Now, Nike told you they'd show four things at the

5   beginning of this case.  First, they told you they'd show you

6   that Lontex never used the Cool Compression trademark.  Well,

7   the evidence has shown that that is false.  They also said they

8   told you that somehow Lontex, nevertheless, didn't really care

9   about Cool Compression.  It abandoned the trademark.  Well, the

10  evidence has shown that that's false.

11         Next, Nike said, well, don't worry, we'll show you

12  that we didn't really use it as a trademark.  It wasn't really

13  a product name.  Cool Compression was just some thing that

14  describes stuff, and, you know, we did it in good faith and it

15  was just all innocent.  The evidence has shown that was false.

16         And finally, Nike told you that they would show you

17  that, don't worry about it, no harm, no foul, there's been no

18  real confusion going on here.  Even though the judge will

19  instruct you that likelihood of confusion among an appreciable

20  number of people, that's what you're looking for.  And the

21  evidence will show you that claim was also false.

22         First of all, like I just got done saying, we got a

23  registration for Cool Compression.  Five years later, as the

24  judge will instruct you on the law of incontestable trademarks,

25  before Nike ever started infringing, that property became

1    incontestable.  What does that mean?  It's like cementing your

2    name in stone on your property.  All right.  That was his.

3    That was Lontex's property.

4            Now, that means that he wanted to use Cool

5    Compression.  What did he do?  You remember he had those duffel

6    bags that he put the Sweat It Out garments in and the Cool

7    Compression garments in.  We showed you that picture of the

8    heat label on the model from pictures from 2006 that he took

9    around in, the two product lines until the same bag.  He took

10   them around to trainers in 2007, showed it to them, let them

11   see it, talked to them about how he had two identical lines.

12           But guess what.  You remember.  Some people got

13   confused.  They thought, why are you having two identical lines

14   of the same exact thing?  At the same time, his website.  He

15   was frustrated.  It wasn't working out.  The website didn't

16   work.  So, ultimately, he decided why don't I just combine it

17   and have the stretch technology called Cool Compression.  He

18   did that from 2007 onward.  He did not -- Lontex did not fail

19   to use the Cool Compression trademark in the first place.  The

20   first thing Nike said they would show is false.  The evidence

21   shows it.

22           Now, what did they tell you next?  That even though

23   it was adopted as a trademark by Lontex, don't worry.  It

24   wasn't actually important to them.  It was abandoned.  Well, we

25   showed you the order in 2008 where Mr. Nathan ordered 19,000

1  inside labels that would go in the garment.  Remember, Nick

2  Johnson told you that those labels -- that Nike will get up

3  here and suggest I believe to you are really unimportant.

4  Remember, we asked Nick Johnson in his video testimony, why put

5  the technology on the label?  Oh, we're already having problems

6  with the real world.  So the consumer knows what they're

7  buying.  So that's the first sign that even Nike knows that's

8  where you put the technology, on the inside, so it stays with

9  the consumer.

10      So, next, after Najeeb Hosni got up here and

11  explained to you that since 2007, he's been sewing the label

12  into the garments.  I think we already have too many boards up

13  here.  Let's get one down.

14      I told you -- remember I told you how many

15  witnesses -- we could have put up all the people who ever

16  bought these 6.5 million units of Nike's product or the 25,000

17  units of Lontex's product, but I said we'd get you up some

18  examples so you could get a sense of what Cool Compression was

19  and how it was really used, and I think that these witnesses

20  gave you exactly that.

21      You heard from each of these folks.  Sean Cunningham.

22  Remember I asked you that seared in our minds were very

23  specific reasons why they would remember that Cool Compression

24  was the stretch technology name dating back to the late 2000s,

25  that they remember it being on the inside care label, and they

1    remember all the presentations?  In fact, presentations which

2    you remember counsel suggested to Keith Dugger sneeringly were

3    that was boring, because he gave the same speech over and over

4    again.  No.  It was memorable.  Keith Dugger and the other

5    trainers liked it.  But it was that memorable.

6              Sean Cunningham, he remembers Cool Compression from

7    before 2012 when they moved out of that hot Florida sun into

8    the indoor stadium.  And he remembers his players in 2007 and

9    2008 wearing the Sweat It Out garments.  That's when he started

10   using it.

11             Brian Cammarota, 2007 to 2011, that's when he was

12   with the Phillies, and that's when he remembers the Cool

13   Compression name being used as well.  That's when it started,

14   all the way to the present.

15             You have Chris Peduzzi.  Remember, there was a

16   lockout in 2010 of the players, and he explained to you that he

17   wore that double-ply tights in a marathon that he ran that

18   year, because he had plenty of time on his hands, and he

19   remembered Cool Compression being on the label.

20             Go through all of them.  Chris Williams, a

21   professional soccer player, who explained to you he knew about

22   the Cool Compression technology since a couple years after he

23   became a professional athlete in 2005.

24             Don't forget Brian Ball.  When the White Sox won the

25   World Series in 2005, he remembers it was a few years after

1    that, too, that he began hearing Mr. Nathan call the Cool

2    Compression technology by that name.

3            Remember Sean Cunningham?  He writes the names on the

4    label and sees Cool Compression.

5            Chris Peduzzi, he cuts out the label.  So he has to

6    look at it, cut it out, because he doesn't want it on his

7    players.  So he sees the label.

8            All these folks got up here and explained to you that

9    they have seen and heard Cool Compression.  And just like you

10   would hope for a brand, Keith Dugger, Keith Dugger explained to

11   you, when asked, well, who calls it Cool Compression.  He said

12   all the trainers in Major League Baseball call it Cool

13   Compression.  That's the definition of a brand.  Something that

14   people know.  Something that people talk about too.  And that's

15   exactly what Keith Dugger says happens amongst the entire

16   professional athletic trainers.

17           So what's Nike's next suggestion to you?  Nike

18   suggested maybe all of these witnesses are apparently coming in

19   here and lying to you.  Remember at the beginning of opening

20   statement when they suggested that, oh, we want to help out our

21   friends.  That's understandable.  Only problem with that

22   narrative is that Sean Cunningham explained to you, he hadn't

23   talked to Mr. Nathan since 2016 when he retired.  Why?  Because

24   he had no reason to.  They weren't friends.  And one after one,

25   these witnesses all explained to you that they have no

1   friendship relationship with Mr. Nathan.  They just like his

2   product.  They like the Lontex Sweat It Out garments with the

3   Cool Compression technology.  They shared with you why they

4   liked it, whether it wicks it away, whether it's the

5   200 percent stretch in every direction.  All of these witnesses

6   are overwhelming evidence that contrary to what Nike told you,

7   Lontex used the Cool Compression trademark.  It didn't abandon

8   it.

9           So then what does Nike do?  They put up in front of

10  you Vicki Humphreys, an ex-FBI agent, whose task was to go get

11  some examples of Sweat It Out labels instead of Cool

12  Compression labels.  But you remember the problems, I ask you,

13  with her testimony.  As my colleague pointed out, first, even

14  though she's an FBI agent, she didn't take any notes when she

15  called people, okay.

16          Second, when she was actually supposed to buy product

17  that all of you jurors were supposed to consider as being

18  purchased during a particular date frame, did she ask for any

19  documentation from those folks?  No, she didn't.  And on top of

20  that, the one time she couldn't confirm affirmatively that

21  there was a Sweat It Out label before she bought it, she didn't

22  buy it.  $26.  That's all it would have cost.

23          And even imagining that that investigation, as flawed

24  as it was, somehow produced some examples of Sweat It Out

25  labels that were on the back of some garments, Mr. Nathan was

1    very up front with you.  He has the Sweat It Out labels.  He

2    has the Cool Compression labels that go on the inside care

3    labels.  Every once in a while, he wouldn't be surprised if he

4    did grab Sweat It Out labels.  After all, that's his brand too.

5    And those in the marketplace, a couple hundred amongst 25,000

6    garments being sold with the Cool Compression labels, that's

7    not abandonment.

8            Think of it like this.  Imagine you left your house

9    for a week on vacation.  When you came back, someone tried to

10   tell you that you don't own it anymore because you abandoned

11   your property.  It would be crazy.  It's no more unreasonable

12   to suggest it because you found a few labels that said Sweat It

13   Out.

14           So Nike told you that Lontex abandoned the Cool

15   Compression trademark.  The evidence shows that's false.  So

16   what was their next bastion of defense?  That somehow they

17   didn't use Cool Compression as a product name.  You heard it.

18   You heard them over and over try to explain how cool -- they

19   put those names up there and they color-coded it.  They acted

20   like there was commas.  They all called it with an ampersand,

21   cool and compression.  But we all saw it.  That's not how the

22   marketplace saw it.  That's not how it worked in reality.

23           In fact, yesterday, you heard their own survey expert

24   admit to me that out of 400 people they asked about these

25   product names, less than 20 identified a cooling feature of the

1   products after seeing the product name.  What does that mean?

2   It means that whatever Nike's internal imagined desire to

3   communicate, the reality was, the marketplace saw Cool

4   Compression as a product name.

5           Kenisha Likely, she's that ex-Nike Factory employee

6   worker that came to us from Texas.  She used to work at the

7   South Carolina Nike Factory Store.  And she told you that she

8   remembers the Cool Compression products, the Cool Compression

9   name.  That was the name that she saw on the hang signage right

10  in front of the Nike Pro products.  It was the name that she

11  saw on tech sheets, tech sheets that she knows.  Remember, she

12  saw that long sleeve one.  How does she know?  Because her

13  boyfriend at the time worked at the Nike Warehouse nights, and

14  she wanted to get it for him.  So she remembered that specific

15  tech sheet.

16          And she remembered training, training where she was

17  trained and other folks there were trained to consistently hand

18  people off to each department saying, hey, those shoes, Cool

19  Compression shorts would go great with those.  Take them over

20  to the Cool Compression shorts.  Those people say, hey, let me

21  tell you about the Cool Compression shorts.  All the way until

22  it would get to Kenisha Likely up to the cashier, and she says,

23  hey, I see you got the Cool Compression shorts, you're really

24  going to like those.

25          And that makes sense because Nike Pro has a lot of

1   products, right?  They got up there and explained to you that

2   it's a whole big line.  So, of course, it's only natural that

3   if people want the subset of that, they would come up with a

4   for it, and that product name was Cool Compression.

5          So Kenisha Likely, what did Nike suggest to you?

6   They suggested that because she was happy to be over here

7   chucking something off the bucket list that she might have just

8   made up her whole testimony, right?  But we know that's not

9   true because Dominique Williams, a Nike Factory Store worker on

10  the other side of the country, told you the same stuff.

11         Dominique worked out at the outlet, you know, out by

12  Limerick, out by that nuclear power plant.  That's where she

13  worked.  And she told you that after a year, she was promoted

14  to management.  They had to set up a display of Nike Pro Cool.

15  And on that display, she put Cool Compression, she told you

16  Cool Compression garments on the mannequins.  And she

17  remembered tech sheets, again, that said Nike Pro Cool

18  compression across it.  And she remembered customers dialoguing

19  with them, and they would call it Cool Compression.  That was

20  the product's name.  It was not just some merely fluffy sort of

21  language.

22         So Dominique Williams, Kenisha Likely, both

23  consistent testimony from Nike Factory Store to let you know

24  that was the product name that Nike used.

25         So Nike's next suggestion is, you remember the tech

1    sheets?  They started telling you that internal.  Each witness

2    would just drop in there that internal word.  Oh, those are

3    internal documents.  As if that somehow excused the blatant

4    pushing out to the marketplace of that product name.

5              But then we took a step back, and we showed you the

6    tech sheets summary.  And you're going to see that, and you'll

7    see it on the screen.  That you can take back with you to the

8    jury room, and you'll see hundreds of tech sheets that got

9    handed out for these products.  They all said Cool Compression.

10   And those weren't only handed out to Nike Factory Store

11   workers.  They weren't only in the binders behind Kenisha

12   Likely.  They weren't only in the binders that helped organize

13   the store.  They were also pushed out to the retailers so that

14   the retailers knew -- their staff knew what to call the

15   product.

16             You remember -- you may remember Deborah White, the

17   head of education.  She told you on video, because she wasn't

18   able to sit up there, that 25 percent of folks look at that

19   Sports Knowledge Underground.  That's the use rate now.  And

20   she told you it's been as high as -- and that's where the tech

21   sheets live even online.  And you'll remember that 50 percent

22   is the highest number.  And she said it was higher in 2015 to

23   2017.

24             So we know that retailers looked at it.  How do we

25   know?  Let's look at Dick's Sporting Goods.  We put in front of

1  you, and I'll put on the screen hopefully now, one of the

2  circulars of the Nike Pro Cool compression products.  Now,

3  remember, this retailer, you looked on that retailer summary

4  that they gave us yesterday, 1.2 million units, over 20 percent

5  of the products at issue in this case were sold by Dick's.

6        Now, did Dick's call a random product here or there

7  Cool Compression?  No.  When they grouped them together and

8  they put shorts, shirts, and tights up there, they called it

9  the Nike Cool compression shorts, shirts, and tights.  It was a

10 product line.  It was the name of the products to Dick's.  It

11 was the name that they pushed out at market.

12       But it didn't just stop there because online the same

13 thing happened.  When Dick's advertised the products online, it

14 said Nike Pro Cool compression as well.  So having then seen --

15 and don't forget, I have put together for you a diagram of all

16 of the uses by retailers from the very limited -- Jodi Thomas

17 told you there's no way she could grab everything off of

18 Google, but her team grabbed a lot of it, we put it in a

19 summary for you, and it shows so many retailers that all used

20 Nike Pro Cool Compression.  That's the product name they used.

21 And why?  Because Nike's tech sheets, Nike's catalogs, they all

22 said Nike Pro Cool compression.  That's the name they gave the

23 product.  So that name, in the catalog summary we're also

24 giving you, which will be put up on the screen, that catalog

25 summary shows you hundreds of catalogs where Nike consistently

1   called it Cool Compression.

2        So having seen all the retailers take the cue from

3   what, you know, Katie Bromert told you was not the retailers'

4   job with thousands of products with just Nike and many brands

5   to come up with product names.  That was Nike's job.  So they

6   used those names.

7        So what does Nike next try to do?  Distance itself

8   from those retailers.  They got up here and explained to you

9   that some of them might be authorized to sell at one place and

10  not the other.  And they tried to explain to you that there

11  were 200 retailers, when, in fact, Katie Bromert, remember, I

12  asked her, she didn't know -- she didn't know that we had sales

13  records of Nike of all the products.  And I asked her, did you

14  know that we have all the sales records and the jury can see

15  all the sales records of what Nike sold and who they sold to?

16  She said no.

17        She had told me that Amazon -- she told you that

18  Amazon wasn't even an authorized seller.  They must be selling

19  gray goods.  You saw on our Amazon summary that we put up for

20  you yesterday that they had lot of products that they bought,

21  products at issue in this case.  And it wasn't only there.  We

22  also put in front of you a revised version yesterday.  We

23  didn't take any retailers off.  We didn't add any retailers to

24  our by-retailer summary, which shows you, like I just said, a

25  lot of the examples.  All we did is notate for you where Nike's

1  own sales spreadsheet showed that Nike directly sold the

2  product to those retailers.

3         And you heard counsel say yesterday, 1 percent,

4  1 percent of the retailers.  But if you add up the retailers

5  and the units that are included on that list that have that

6  designation of buying direct from Nike and you go back to that

7  summary that we gave you, that giant board, which I'll show you

8  later, that shows the units that Nike Direct sold, comes up to

9  4.6 million units.  Just those retailers that we showed you.

10  4.6 million of the six-plus million units.  That's what we

11  showed you.

12         So don't listen to the 1 percent number.  Listen to

13  that number.  That's what we showed you because we told you

14  we'd show you a spread.  We can't show you everything, but we

15  showed you enough to know that Nike absolutely is responsible

16  for that Cool Compression product name.

17         And think about it.  No matter how many chains down,

18  it doesn't really quite jive.  Let's go back up.  Who cares who

19  sold it at the end, because where did they get the product

20  name?  From Nike.  They didn't come up with that on their own.

21  Cool Compression was a product name that Nike gave to it.  So

22  this next idea that somehow Nike didn't use the trademark as a

23  product name, that's also incorrect.

24         Now, you'll remember Kimberly Mack Ireland.  You may

25  remember that that kind of got uncomfortable.  Some of you saw

how we pulled my colleague -- like I told you before, sometimes
at these depositions, pulling information from Nike was really
hard to do, but we got good information in front of you, and I
appreciate you watching those videos, because sometimes they
were boring.  I know.  And this is my chance to tell you on
behalf of my team and Lontex that we appreciate your
attentiveness.  We know it's hard to pay attention for that
much information.  Sometimes it's like a fire hose being put
down your mouth, but I appreciate you guys grabbing so much
information.  That was tough to do and we appreciate it.  It
means a lot to us and our client.

          So we had gone through a dialogue with Kimberly Mack
Ireland where you got to see exactly what we were talking
about, that somehow Nike can't seem to admit that two plus two
equals four.  First, my colleague showed her, look, the tech
platform on your own MMX marketing and style name architecture.
That says Nike Pro Cool, right?  Yeah.  She confirmed that.
And the model modifier, that says compression, right?  Yeah.
So when it says -- this is the style name guide.  All style
names continue to be submitted to legal via ANAQUA.  So this
should have been submitted to ANAQUA, right, to make sure this
didn't happen in the first place in that 2014 update of names?
She said no.  She made some excuse about how this is just
internal, right.  This is a style name that's internal.  She
avoided the issue.

1          So we put in front of her Nike's own policy.  Apparel

2     product naming.  That's Nike's own internal document.  We asked

3     her, right, consumer-facing name -- this is the two plus two

4     equals four, guys.  It had an equation.  It even equals the

5     product name.  We walked through it with her.  You can find the

6     consumer-facing name as the tech platform Nike Pro Cool, yeah,

7     she confirmed.  Modifier, compression, right.  Yeah, she

8     confirmed.  Equals the consumer-facing product name.  She

9     hemmed and hawed at that point.  So we asked again.  That's the

10    product name right, Nike Pro Cool Compression?  Again, she

11    resisted.

12          Mr. Schwartz asked again.  Finally, her answer was,

13    well, I don't know, I don't know this document, I don't know if

14    that's actually how it works.  Okay.  So we put in front of her

15    Nike's own consumer-facing website, Nike.com.  And I think what

16    you and I hopefully know in a moment is that this is the

17    product name.  That when someone sees this front and center,

18    look at that.  The N alone is bigger than that Swoosh.  Giant,

19    front and center, first thing you see.  That's the product

20    name.  It didn't have that color-coding that Nike put up there.

21    It just says Nike Pro Cool Compression long sleeve.  And that

22    little men's shirt, that's buried in there, right.

23          So we asked her:  This is consumer-facing Nike.com?

24    She said yes.  We asked her:  And this is the product name on

25    that consumer-facing site, right?  She resisted again.  So we

1  asked her:  That's the name of the product on this page?  She

2  resisted again.  And we asked her -- now, at this point, it had

3  been about 15 minutes that we watched this painful dialogue.

4  That's the style name.

5          And at that point, the Court intervened and said if

6  you don't know, just tell us you don't know.  But finally,

7  after all of this, she finally said that's the name of the

8  style for that product.  Remember, she couldn't say style name.

9  She had to flip it still.  But we all know the name of the

10  style.  So then we go back, having established that two plus

11  two equals four, and we asked her -- oops.  It's falling again.

12          That simple language that every Nike employee should

13  know, all style names continue to be submitted to legal via

14  ANAQUA.  Two plus two equals four, right?  We asked her, that

15  style name should have been submitted to ANAQUA.  No.  She

16  still could not admit in front of her employer, in front of the

17  jury, that two plus two equals four.  But we all knew that it

18  did.

19          So after that, what did Nike try to explain?  Nike's

20  own witness, Debbie White, we had her testimony, and we asked

21  her, hey -- you remember she was head of education for Nike.

22  We said in 2015 to 2017, you remember that cool and compression

23  were both used in training.  She said yes, I generally know

24  that we would use cool as an adjective and compression as a

25  noun, but cool compression is not a thing together.  So I asked

 1   her:  So is there any reason that would come across your mind,

 2   when you saw this training material, it would stand out?  You'd

 3   remember if you saw cool adjacent to compression.  And she made

 4   an admission:  I mean, Cool Compression together sounds like

 5   it's a thing.  Like it's almost hyphenated becoming a noun in

 6   and of itself.  That's the definition.  You'll hear it.  The

 7   thing, that's a product name.  That's a trademark.  And she

 8   admitted it.  And she admitted also that it's like Dri-FIT.

 9   Dri-FIT together becomes a thing.

10           Now, Nike then tries to explain to you about how cool

11   and compression have some descriptions, how it means something.

12   I asked her, Nike admitted that Dri-FIT is a registered

13   trademark.  It's their trademarked term.  Dry keeps you dry,

14   fit, products that fit you.  How is that any less descriptive

15   than Cool Compression?  But it gets worse.  Because Hyperwarm

16   and Hypercool were also used on your screen.  Hopefully you'll

17   see that pyramid if my technology works out.

18           Hyperwarm and Hypercool, you remember Parker Mangum

19   on Friday admitted that's Nike's trademarked term as well.  And

20   you may remember from yesterday when you saw Nike Pro Hyperwarm

21   products and Nike Pro Hypercool products.  In other words, the

22   same way you would use Cool Compression, they used Hyperwarm

23   and Hypercool.  And yet they admit that those are trademarked.

24           Hyperwarm, Hypercool, hyperventilating,

25   hyperagitator, hyperexciting.  We all know what that means.

1    Common sense, it means very warm, very cool.  Any less

2    descriptive than Cool Compression?  No.  Yet all three of these

3    are admitted trademarks of Nike.

4            So its position here today is inconsistent with the

5    evidence.  It had used Cool Compression as the product name, it

6    has used it all across the board, and it's used it in a way

7    that has caused confusion.  So of course the last bastion of

8    Nike's defense is that, don't worry, people aren't actually

9    confused.  But you'll remember the faces on this board that

10   were confused.

11           You'll remember Sean Cunningham.  He was walking

12   down, looked at Dick's, he saw the sign sitting on a table in

13   front of Nike Pro products, and it said Cool Compression.  And

14   he thought to himself as he was walking with his son back to

15   get some basketball stuff because he was with his son, he

16   coached basketball at the time.  He just left being a pro

17   athletic trainer at the Florida Marlins.  He remembered

18   thinking, oh, I guess Efraim sold Cool Compression so that Nike

19   can now use Cool Compression.  That was confusion.  That was a

20   false association.  That was a mistake.  And why did he make

21   that mistake?  Because Nike used the Cool Compression

22   registered trademark, incontestable trademark that belonged to

23   our client for the exact same compression shirts and shorts

24   listed on the registration.

25           That wasn't it.  You saw declaration after

declaration that counsel put in front of you that showed that
these folks declared a year ago to seeing product, to seeing
the Nike Pro Cool compression name, and being confused.

Now, counsel suggested that because I sent them the
declaration after I or my client talked to them, that somehow
we manipulated the evidence, we made that happen.  But you'll
remember, both Chris Peduzzi and Mark Smith confirmed for you
that that red-shirted Ohio State man in the catalog with Nike
Pro Cool compression was an image they had seen before getting
those declarations.  It was an image they had seen at the
clubhouse in catalogs.

Now, they talked about catalogs in their clubs.  You
heard from Ryan Heil that, somehow, he doesn't think that there
were catalogs in clubs.  But I ask you, what's the more
reasonable conclusion?  That two men with absolutely no
interest in this case are accurately giving you their memory,
or Nike's witness just doesn't know his sales organization as
well as he thinks he does.

And we heard from Keith Dugger.  Keith Dugger, the
Colorado Rockies head trainer.  Now, remember, these are the
most sophisticated of our customers.  The judge will instruct
you that sophistication is something that you can consider.
And if sophisticated people are confused, well, certainly
everyone else is confused as well.  And remember, it's a
likelihood of an appreciable number of people being confused,

1   not confusion.  Actual confusion, a majority of confusion,

2   those are not the standards that you're asked to apply, unlike

3   the preponderance of the evidence, which, again, the judge will

4   instruct you on.

5          So Keith Dugger, you may remember his testimony.  His

6   son showed him Nike Pro Cool compression on stuff.  He saw it

7   on Dick's materials.  He saw it in the clubhouse.  He saw it in

8   many places.  And he concluded that Nike's products used the

9   Cool Compression stretch technology of Lontex.  That wasn't

10  true.  It was only because they used the Cool Compression name

11  that he thought that.

12         And when Nike actually gave him a declaration, you

13  heard him explain, perhaps you caught it, that there was an

14  inconsistency Nike thought.  He had declared that he did not

15  believe Nike was authorized to use the Cool Compression

16  technology.  But he explained that that was a carefully

17  wordsmith term because he didn't write that declaration.

18  Nike's lawyers did.  He explained to you that he thought there

19  was some sort of affiliation there.  He just didn't know

20  exactly what it was because he wasn't privy to those details.

21  That's confusion just the same.

22         And Brian Ball.  Brian Ball opened that 2-inch

23  catalog, flipped it open, and he saw Nike Pro Cool compression.

24  What did he think?  He thought I'm happy for Mr. Nathan and I'm

25  sad for Mr. Nathan.  The little guy, the hard-working guy that

1    goes around and built up this Cool Compression brand, he's

2    thinking that guy sold out to Nike.  That's not true.  That

3    didn't happen.  But it's what he thought, because the Cool

4    Compression name was on there.  And so he took it to the head

5    athletic trainer because, remember, he wasn't the head athletic

6    trainer then.  He had given a declaration in this case, and

7    then just a couple months later, got let go by his team.  No.

8    This was when he was an assistant athletic trainer for a head

9    athletic trainer, and that head athletic trainer thought the

10   same thing.

11        And so the two of them had their conversation, and

12   Mr. Ball got on the phone with Efraim a couple days later, and

13   he explained, hey, congratulations on selling your brand,

14   congratulations on selling your company.  That didn't happen.

15   There wasn't actually a sale of the company.

16        But when Mr. Nathan found out that Nike was using the

17   Cool Compression brand, he was confused.  He was really quite

18   taken back.  And he contacted, on April 8, 2016, Nike.  Lontex

19   contacted Nike with a letter from a lawyer that clearly said

20   this is our registered trademark, you're using it, you have to

21   stop.  So the idea that Nike didn't cause confusion, that's

22   also false.

23        So then I hope that at this point, having determined,

24   as I hope you have, that Nike did, in fact, use the Cool

25   Compression trademark as a product name, infringing on Lontex's

1    incontestable property rights in that name, that the question

2    before you now is, was that trademark infringement willful?

3    Trademark infringement, the judge will instruct you on what is

4    willful.  But I ask you to consider two clear signs that Nike's

5    infringement was willful.

6            First, I ask you to consider what happened in 2014

7    when they first adopted these product names.  Those product

8    names could have been prevented from infringing.  They should

9    have been put in ANAQUA to stop this from ever happening, but

10   they weren't.  Now, we asked them at deposition and put this in

11   front of you.

12           We said:  Did you use ANAQUA?  And you remember there

13   was some interesting arguments that were made about why they

14   didn't.  But at the end of the day, it's very simple.  The

15   reason they didn't -- this is the assistant product line

16   manager Nick Johnson.  He told you I never used ANAQUA.  Never.

17   Cute explanations don't get into the picture.  He just never

18   used it.  A system designed to stop infringement from happening

19   before it starts, he never used it.

20           So then Parker Mangum got up on Friday and tried to

21   explain to you a whole bunch of reasons why, in fact, you enter

22   it here, you wouldn't enter it here, there's all these sort of

23   rules that apply.  But on cross-examination by my colleague, he

24   was forced to admit that, in fact, in deposition, he truthfully

25   admitted that he didn't know anything about ANAQUA other than

1   the fact that you put names in it to get cleared.  That's all

2   he knew.  So we asked him the obvious question, and he

3   confirmed his deposition testimony was truthful.  During my

4   time as a product line manager, I can't recall having ever used

5   the ANAQUA system.  So a system in place, a formal system to

6   make sure that infringement didn't happen, Nike Pro management

7   stuck its head in the sand like an ostrich and ignored it.

8   That's willful blindness, that's trademark infringement that

9   didn't have to happen.  That's your first sign of willfulness.

10  That's the first basis for willfulness.

11          What's the second basis for willfulness?  The second

12  basis is what Nike did once Lontex asked it to stop.  You

13  remember that letter asked it to stop, and Mr. Nathan testified

14  that he repeatedly -- Lontex contacted Nike and told them to

15  tell retailers to stop the infringement.  So at this point,

16  this was April 2016.  What should have happened, right, Nike

17  announced internally they were going to stop using it.  That's

18  what should have happened, but they didn't.  Okay.  They,

19  instead, waited until Katie Bromert in late June 2018 finally,

20  with Nike's management having built up Cool Compression, the

21  skyscraper, to the top, done selling it in 2018, having been

22  asked repeatedly for years to take your skyscraper and take it

23  elsewhere, finally decided up on their perch on high that it

24  was a good time to let retailers know, 1,500 of which have been

25  given these product names, to stop using them.

1    Now, what I ask you to look at is Katie Bromert when

2    she talked to the subordinate at Nike, someone who wasn't high

3    up and perched up.  They give you a critical piece of

4    information.  On June 28, 2018, Katie Bromert, I put in front

5    of her, you saw those links that said Cool Compression for

6    Dick's Sporting Goods, right?  One of the biggest sellers.

7    Still in 2018 using Cool Compression.  And she said, Can you

8    let them know to stop using Cool Compression?  And that email,

9    the response is telling, the July 3rd response.  What did it

10   say?  The subordinate looked back at Katie Bromert and made

11   excuses.  Oh, I'm sorry, people are on vacation.  And she said,

12   quote, I apologize for the delay.  You heard that.  She

13   apologized for a 5-day delay.  She knew that that's how long it

14   should take to get something off of the internet.  That's what

15   was unreasonable and deserved an apology and excuses.  But

16   Nike's management up on high, two years, didn't even ring a cry

17   to their ear as the small Lontex was trampled.

18   You heard Mr. David Drews explain to you that even

19   accounting for these different time periods of Lontex sales,

20   those sales were half what they would have been if they were

21   the same as the period before.  Half.  If that's not a sign of

22   actual confusion, if that's not a sign of people going to Nike

23   instead of Lontex, if that's not a sign that Nike willfully and

24   continuously trampled over our client's rights for two more

25   years, then I don't know what is.

1          Now, Nike wants to suggest to you that, you know,

2     there was really no reason after that point for people to

3     continue to call it the product name Cool Compression.  Maybe

4     they should have changed or phased it out or whatever.  But

5     Nick Johnson, in his video deposition, told you something else.

6     I asked him:  Okay, would you expect retailers to change their

7     product names in their websites?  Remember, we had told them

8     there's confusion.  We had told them to contact retailers.

9     They knew.  Anyone with a Google search -- you saw the Google

10    searches.  Anyone could know.  It's all over the place.

11         Would you expect them to change their product names

12    on their websites and their retail associate vernacular without

13    being affirmatively told Cool Compression shouldn't be used?

14    Given the hypothetical situation, he calls it, that you just

15    described, I wouldn't expect them to change anything because

16    they wouldn't know there was an issue.  Nike Pro management

17    knew the obvious, that no one's going to change unless you tell

18    them.

19         Did they tell them?  Do you see this back here?  Do

20    you see this overwhelming show of force that Nike tried to show

21    you?  Remember, only the pages in here that have our products,

22    the Nike Pro Cool compression products matter.  Well, 27 of

23    them, if you look through our catalog tech sheets, our catalog

24    summary, which has the dates next to each catalog, that's the

25    whole row, right, because there's 83 of these or so here.  27

1    of them are from 2017.  They still say Nike Pro Cool

2    compression.  They still use the Cool Compression product name

3    a year after.  And what was happening during this time?  Sales

4    were going down, right?

5            THE COURT:  Mr. Wagner, you've got one minute left.

6            MR. WAGNER:  One minute.  Thank you, Your Honor.

7            3.5 million units sold at wholesale with no heads-up

8    that Cool Compression wasn't the product name anymore.

9            You'll see the Nike.com on our retailer exhibit shows

10   also in 2017 baseball, football, lacrosse, men's training, and

11   soccer.  All still pushed out to the United States, all the

12   teams, Nike Pro Cool compression.  They did not stop using Cool

13   Compression for two years.  That's your second sign of

14   willfulness.  That's willful disregard.  That's recklessly

15   walking and trampling over an incontestable registration.

16           So today I'll get up again and address some more

17   points, but I ask you, find trademark infringement for my

18   client, the little guy who got stepped on by a huge company

19   that couldn't see fit to change its ways even when asked, and

20   find that that infringement was willful.

21           THE COURT:  All right.  So defense counsel will have

22   one hour.  If any member of the jury would like a break at this

23   time, please raise your hand.  Otherwise, we'll keep on going.

24           All right.  I don't see anybody, so let's proceed.

25   Thank you.

 1          MR. WAGNER:  Give me a moment to clear my stuff.  I

 2   apologize.

 3          THE COURT:  Okay.  Mr. Hynes.

 4          MR. HYNES:  I'll move quickly, Your Honor.

 5          THE COURT:  That's all right.

 6          MR. HYNES:  Ready to start the clock, Your Honor.

 7          THE COURT:  Whenever you're ready.  Take your time

 8   setting this up.  This clock won't start until Mr. Hynes starts

 9   talking.

10          MR. HYNES:  Thank you, Your Honor.

11          THE COURT:  10:13.  Thank you.

12          MR. HYNES:  I'm just going to say it.  Big company

13   behaving badly.  Little company.  Big dollars scribbled on a

14   piece of paper get it in the jury box.  I'm going to explain to

15   you, as I have since day one, what this company did.  This is

16   not a case of a company behaving badly, it's not a case of a

17   big company behaving badly, but it is a case of a big company.

18   And I'm going to ask you to think about that, and is that

19   enough.

20          Now, when I stood up here at the beginning, I

21   acknowledged four facts right away.  Number 1, Lontex obtained

22   a trademark in 2008, said Cool Compression on it.  Number 2,

23   Nike used the word "cool" to describe its Nike Pro base layer

24   products if they were lightweight, like this one, and they had

25   mesh panels, like this one.  That's cool.  You guys know this.

1  I promise I'm only going to mention it, like, two more times,

2  and then I won't do it again.  Compression, super tight fit.

3          So when you had a Nike Pro garment that had mesh

4  panels, lightweight fabric, and a super tight fit, cool and

5  compression sometimes appeared next to each other in all these

6  catalogs.  That just happened.  These aren't all Nike's

7  catalogs.  These are just the ones that contain Nike Pro

8  products between 2015 and 2017.  And there's one for every

9  season, so every three months, a new catalog rolls out.  That

10  happened.

11          This is what they look like, and sometimes, we've

12  admitted this from the very beginning, you can find cool

13  compression next to each other in these tiny words.

14          What they are suggesting to you is that somebody who

15  was flipping through these catalogs was going to be confused.

16  By the time they got to page 107, they were going to be

17  confused about the source of the documents, they were going to

18  be confused about what cool meant, they were going to be

19  confused about what compression meant.

20          And we keep mentioning confusion because that's

21  really the fundamental purpose of a trademark.  It's to

22  eliminate confusion about what you're buying and who is selling

23  it to you.  It's the source, who makes it.  You can be a big

24  brand or you can be a small brand, but your trademark has to

25  tell you what's the source, who is making it.

1         And even Mr. Wagner acknowledged it in his opening

2    statement.  It's got to be front and center.  Okay.  So they

3    are talking about the product name.  They're saying the product

4    name of this garment is Cool Compression.  This must be the

5    only product in the world that calls itself by the wrong name.

6    It doesn't say Cool Compression on it.  We know what that

7    means.  It's the Swoosh.  It means Nike.  If you go to the

8    back, it says Nike Pro.  If you go to the tag, it says Nike

9    Pro.  Then it says Stay Cool right on that tag because it's

10   lightweight and it's got the mesh panels.  And then underneath

11   that, it says compression right there in that sort of crooked

12   rectangle.  That says compression.  That's the super tight fit.

13   If this was the product name, you would be able to find Cool

14   Compression on the product, and you can't, because it's not a

15   Cool Compression product.

16         Now, I want to address something also right away.

17   Incontestable.  That sounds like the trademark is good forever.

18   Incontestable is a word that's used by bureaucrats in

19   Washington, DC.  It's a technical term they apply to

20   trademarks.  But as you'll be instructed, and as I said at the

21   beginning, if all that Mr. Nathan and Lontex had to do was find

22   Cool Compression in these catalogs, I mean, there would be no

23   case.  You wouldn't have been here for six days.  But that's

24   not what trademark law is all about.

25         Just this past week, you've heard Google and REI and

Nordstrom's, Baltimore Ravens.  You know what those things are.
In this case, you see the Swoosh, you see the Jordan Jumpman,
Nike Pro is written all over the waistbands and the collars.
And the Sweat It Out sun.  It's all over Lontex's own garments,
front and center.  You know when you look at them what they are
and who is delivering it.  You know the source.  And that's
what you're being asked to do today.

        Did Nike try to convince you that Mr. Nathan was the
source of its products?  The answer is obviously not, not even
close.  Mr. Nathan's own customers told you that.  They took
the stand.  They stretched his garment.  They looked at Nike's.
Mr. Ball, we just saw his picture on that great big board.
He's like, oh, yeah, that's the Swoosh, that's Nike.  This is
Lontex.  He stretched it himself.  I would never confuse the
two of them.  That means that the trademark law is working.  It
means that nobody confused one with the other.

        Cool Compression doesn't tell you the source, and it
doesn't tell you who made it.  It's not front and center.  The
Nike products don't say Cool Compression on them, and neither
do the Lontex products on the front.

        But there's something important going on here too.
Mr. Nathan is wrong when he says that Nike stole everything
from him.  But something happened during this trial that I
thought was extraordinary.  You had a physical therapist come
in here and brought in a bunch of old clothes to help

37

Mr. Nathan with his case.  You had a doctor come in and talk
about the improved posture shirt that Mr. Nathan made for his
patients.  Construction worker zoomed in from his worksite to
basically be here to thank Mr. Nathan for making a product that
helped his son.  Professional soccer player came all the way
here really just to support him.  He didn't really provide any
evidence that was relevant to the case, just came to support
him.

        Those kinds of relationships, they don't just happen.
We all know that.  You have to work at that.  And when I heard
him testify that, you know, his whole business was Cool
Compression, I think he's just totally wrong.  Like, he is the
face of Lontex.  He is more than the face of Lontex.  He is
Lontex.  Thirty-one years.  He does everything himself, except
keep the books and use a computer, and we all know somebody
like that, right?

        And his story is inspiring.  70 percent Coolmax,
30 percent Lycra.  Somebody else's material.  He takes it,
finds a new purpose for it, helps people.  Puts Sweat It Out on
the front, walks around with two duffel bags explaining why
it's so much better than Nike and Under Armour and all the
rest.

        And that hard work got him all of these relationships
with all of these professional teams.  And they would call him
on his cell phone, and he would answer, or they would send him

1   faxes.  His website didn't accept payment, so that was the only

2   way they could buy from him.  Every one of his customers,

3   directly to him.

4          It is a mistake and it's wrong to suggest that he is

5   a success because of Cool Compression.  Not even close.  He is

6   a success because of that personal touch, those personal

7   relationships.  But those things that make his business such a

8   success also explain why his trademark case just doesn't work.

9   It's simply impossible for anybody to confuse his products with

10  Nike's.  It's impossible to call Mr. Nathan on his cell phone

11  and think you're talking to Nike, and it's impossible to go

12  into a Nike store or a retail office or go on their website and

13  think you're dealing with Mr. Nathan.

14         And that's what trademark law is about.  It's not

15  about being incontestable.  You have to use it.  Other people

16  can fairly describe their products without infringing on your

17  trademark, and if you don't use it, you lose it.  So

18  incontestable is very misleading.

19         But even though no one's ever been confused between

20  Lontex and Nike, Lontex sued Nike, so we're here.  And I want

21  to ask you three questions.  I want you to consider three

22  questions when you're deliberating.

23         One is, did Nike fairly use the common words "cool"

24  and "compression" to describe that shirt with its lightweight

25  fabric, its mesh panels, and its tight fit?  Did Lontex prove

1    that all of these product descriptions caused any confusion in

2    the marketplace?  And what I mean by that is when somebody was

3    deciding whether to buy something or not.  And three, did

4    Lontex continuously use the Cool Compression trademark between

5    2007 and 2015?

6         Some of this evidence you've heard a lot of, so I'm

7    just going to move through it quickly.  But to suggest that

8    Nike was behaving badly just doesn't work when you really look

9    at the evidence.  Nike wasn't aware of Lontex.  This isn't a

10   case of them reaching out and hurting somebody.  They were just

11   going about their business.

12        In 2015, two new versions of the Nike Pro line came

13   out, cool and warm.  The strategy was simple.  Base layer

14   attire is getting more popular.  Let's make it less expensive.

15   Let's broaden the base.  Let's sell more of it.  So they came

16   up with cool and warm.  Cool for the summertime or going to the

17   gym, and warm for going outside in the wintertime like you saw

18   on the snow day commercial.  And here's how it happened based

19   on the evidence.

20        Rich, can you pull up the visual line plan slide for

21   the jury?

22        This is from August 18, 2014.  This is how it

23   happened.  Warm on one side, cool on the other; more expensive

24   products on the top, less expensive products on the bottom; and

25   you can see in yellow highlight, right on the bottom there,

1    this shirt.  This shirt is right there under that dotted line

2    in the middle.  And the white pair of pants that you've seen a

3    bunch of times, that's right there on the left.  Nothing to do

4    with Lontex.  They're just making clothes.

5           What happened next?  That massive thing.  That's the

6    MMX chart I tried to explain at the beginning with my hands up

7    and down.  Nike Pro Cool -- it's on your screen, too, if it's

8    easier for you to see.  Nike Pro Cool and Nike Pro Warm are all

9    the way down here under technology platforms right here.  This

10   right here informs consumer-facing name.  It stops right here.

11   So you have Nike Pro Cool, Nike Pro Warm, all of this

12   information here on the tech platform, material benefit, the

13   silhouette, is it a hoodie, is it a T-shirt.  Under internal,

14   internal, model modifier recommended, you see length, is it

15   sleeveless, is it 2 inches, three-quarters, closure, full zip,

16   half zip.  And then fit preference.  Everything from classic to

17   regular to fitted, compression, tapered.  All of those

18   different sections.

19           Now, this is it.  Everybody has testified about this.

20   Everybody knows about this.  This is it, and the fit is

21   internal.  It is not a consumer-facing name.  This is the

22   system.  And these words you'll find on the product.  These

23   words, you won't.  Just wasn't a consumer-facing name.  There

24   was no marketing campaign.  Nike knows how to make a splash.

25   Like it or not, they're all over the place.  Billboards, TV

1   commercials, athletic endorsements, sponsorship events.  Not

2   one example of Cool Compression being the subject of any of

3   that, not one.  If there was a product name, you would have

4   heard about Cool Compression before you walked in this

5   courtroom.  But you didn't because they didn't.

6           Tech sheets.  Let's take a look at these tech sheets.

7   We're not shying away from these tech sheets.  They're

8   internal.  They're drafted that way.  Everybody told you.  I'm

9   not saying they stayed inside of Nike's campus.  Sometimes they

10  get out.  They go to the sales associates.  Retailers ask for

11  them.  They get them too.  We've been honest about that from

12  the beginning.

13          But what's their true purpose?  Do you think people

14  walk around Nike and say, oh, how about that Nike Pro Cool

15  compression men's long sleeve shirt?  Do you think people talk

16  about products that way?  Katie Bromert got up here and said we

17  don't even use Pegasus when we're talking to the retailers.  We

18  use Peg.  That's how Nike employees talk about their products.

19  You don't put long sleeve shirt in a product name or a style

20  name.  It's just a description.

21          And if you have any doubt that cool means mesh panels

22  and lightweight shirts and compression means the fit and the

23  product doesn't convince you, you just have to read the words

24  on these descriptions.  They're all right there.  We've

25  highlighted them for you.  Compression fit.  Locked-in feel.

1   You've heard these words by now.

2          Now, counsel didn't reference it to you, reference it

3   in his first part of his argument.  Maybe he's going to get

4   here later.  But you can look at this story.  You can see what

5   Nike did.  You can compare this product, you know, to the

6   Lontex products.  You'll be able to do that right there.  And

7   you'll know whether or not there was any trademark infringement

8   because you're consumers too.  You can use your common sense.

9   You can make up your own mind.  But the law actually requires

10  you to consider a 10-factor test.  And I'm sorry there's ten,

11  but lawyers, right?

12         So we have ten factors.  The first one is look for

13  evidence -- it's called the Lapp test.  That's the name of the

14  case, Lapp.  Look for evidence of actual confusion.  Now,

15  there's plenty of evidence here in this case but none of it's

16  of confusion.  So we have a slide, we'll put some testimony on

17  it.  Mr. Ball, Dr. Cammarota, and Mr. Knudson all testified

18  that they could never confuse these two products.  Now, these

19  are three witnesses that Lontex called.  We did not prepare

20  them.  We did not bring them here.  There's no reason to doubt

21  that testimony.  They testified -- and Mr. Nathan too.  He

22  testified also that there's no way anybody would confuse his

23  product with another.

24         Do you remember the testimony of Susan McDonald?  She

25  was here.  She was Lontex's survey expert who didn't actually

1    conduct a survey.  She just criticized everybody else's

2    surveys.  Well, she criticized Nike's experts, Hal Poret, Carol

3    Scott, Dr. Scott, because they didn't survey sophisticated

4    customers who were familiar with Lontex.  Well, there's three

5    right there, and they weren't confused either.

6         But our experts, Mr. Poret and Dr. Scott, they

7    interviewed everyday consumers.  They found no confusion

8    either.  They even used Lontex's post-2016 brochures that said

9    Cool Compression in them instead of true compression, which is

10   what was used before 2016.  So they gave Lontex the benefit of

11   the doubt in those surveys.

12        Now, Mr. Wagner has argued, okay, there is some

13   evidence of confusion.  He pointed to Mr. Cunningham's walk

14   through Dick's Sporting Goods.  Brian Ball's testimony about a

15   catalog.  A couple of others too.  Okay.  Let's take them at

16   face value, you know.  I'm not so sure, but it doesn't really

17   matter.  Because they could have been confused for 35 seconds.

18   They could have picked up the phone.  They had Mr. Nathan's

19   contact information right in their cell phone.  Brian Ball

20   testified he was confused for two days.  Because then he talked

21   to Mr. Nathan.  And they didn't make any purchase decisions in

22   that time frame.

23        That's not the kind of confusion that trademark law

24   contemplates.  They mean did you go to the store and did you

25   buy something that you thought was Nike and it was Adidas?  Did

1    you go to the store and buy something that you thought was

2    Budweiser and it was White Claw?  I mean, that's what we're

3    really talking about.

4            So there's no evidence of actual confusion.

5            Now, this is a lawyer test.  So there's, like, ten

6    factors, and they get weighed, like, on a scale.  All right.

7    Here's ten catalogs of about the same size.  The first factor

8    of actual confusion, I'm going to give that one to Nike,

9    because all the evidence shows that no one ever confused one

10   product with the other.  So that's one for Nike.

11           The second one is the strength of the Cool

12   Compression mark.  That means how recognizable was it.  How

13   recognizable were the words "cool" and "compression."  Now, we

14   know that the Cool Compression business was never formed.  We

15   know that no product was ever sold with Cool Compression on the

16   outside of it.  We know that the Cool Compression websites

17   weren't launched.  So it's hard to conclude that the Cool

18   Compression mark was strong and well-known.  That's Lapp Factor

19   No. 2.

20           Lapp Factor No. 3, the price of the goods, the

21   sophistication of the buyers, and the care of the consumers

22   when making a purchase.  If the products have a different cost,

23   then you're less likely to be confused.  If something's more

24   expensive than the other, then you're going to be able to tell

25   them apart.  The sophistication of the buyers is do you know a

1    lot about the products, because then you're less likely to be

2    confused when you buy it.  And the care of the customers when

3    they're making a purchase.  This one doesn't really apply here.

4    That's more like when you're buying a house.  You do a lot more

5    research into buying a house than buying a shirt.

6              In this particular case, we know that the prices were

7    different.  Mr. Cunningham observed it.  Two times more,

8    sometimes three times more.  And we know that the buyers

9    themselves are sophisticated.  You heard that from Lontex's own

10   expert, Ms. McDonald.  I mean, she's testified that Lontex's

11   customers are sophisticated and they are.  Physical therapists,

12   athletic trainers, people doing serious jobs and treating

13   people with injuries.  And the retailers, and Ms. Bromert

14   testified that they're some of the most demanding and

15   sophisticated buyers in this country, thousands of products,

16   huge orders.

17             Number 4, the length of time without evidence of

18   actual confusion.  Now, this makes sense.  The longer the

19   products are on the market together, if you don't see evidence

20   of confusion, then that's another factor.  So here, both of

21   these products were on the market for six years, 2015 to right

22   now.  Well, not right now.  2015 to 2018.  That's three years

23   together.  And still you haven't found one witness who could

24   testify that they got confused between the Lontex products and

25   the Nike products.  So the length of time, that's ours too.

1          Five, Nike's intent.  Now, I want to stop here for a

2    minute.  Mr. Wagner suggested that Nike purposely targeted a

3    small company and took advantage of them.  There is absolutely

4    zero evidence of that.  The evidence is that Nike didn't know

5    about Lontex.  It did not pick a fight with Mr. Nathan.  It

6    just went through its MMX process, rolled out these goods.

7    That's what it did.  It had nothing against Mr. Nathan.

8          In fact, you heard Ryan Heil testify that Nike

9    sponsors players, and if those players benefit from Lontex's

10   products, we want them to have it.  We want them to have it.

11   We want those players on the field.  It makes perfect sense.

12   It's not altruistic.  We want the players, the best players

13   possible, to wear Nike jerseys on the field.  And if those

14   athletic trainers feel like Lontex will help them get out

15   there, then go.  That's not our market.  We don't sell medical

16   products to athletic trainers and physical therapists.

17          So I think they know, like, we didn't really know

18   about them, so they had to come up with something else.  So

19   what they complained about is that Nike didn't act fast enough

20   when Mr. Nathan asked Nike to move cool and compression apart.

21   And Nike said, you know what, okay, we will move them, because

22   Cool Compression isn't a thing.  But look at all those

23   catalogs.  They want us to do that in five days, fix all those

24   catalogs in five days, rewrite all those product descriptions

25   in five days.  Mr. Nathan tried to change his brochure, you

1    know, to remove the true compression and put in the Cool

2    Compression.  It took him 18 months for that pamphlet.

3          These things take time.  They just take time.

4    Mr. Wagner paraded this email of Ms. Bromert and one of her

5    team members.  He called her a subordinate.  No one calls them

6    that either.  You know what that was about.  She was

7    apologizing to Ms. Bromert for taking five days to get the

8    Dick's person on the phone.  That's what she was apologizing

9    for.  How in the world would anybody know how long it would

10   take Dick's to change their website?  That's what that apology

11   was for.

12         But Nike did it.  They did move the words apart, and

13   they did it for one reason.  It didn't matter.  It's not on the

14   product.  It's already a part of the product hang tag here.

15   They're just a fit to show it hugs you really tight,

16   lightweight shirt, mesh panels.  We moved them apart.  No

17   problem.  In fact, in some of the product descriptions in some

18   of these tech sheets, they're already apart.  Sometimes

19   6 inches appears in between them.  It's just there are so many

20   words.

21         Think about all the products Nike has.  Somebody has

22   to write a description for every one, and sometimes the fit got

23   next to the fabric type.  That's just what happened.  It wasn't

24   intentional.  We weren't singling out Mr. Nathan.

25         Okay.  The next factor is number 6.  Similarity --

1   I'm sorry.  Length of time we did.  Number 6 is similarity of

2   expected market expansion.

3          I'm sorry.  Number 5's right here.  Nike's intent was

4   in good faith.  It just created this product, but didn't try to

5   steal anything from Mr. Nathan.

6          Number 6 is the similarity of expected market

7   expansion.  You can see from the slide that Cool Compression

8   was intended to market to the medical field.  You know,

9   Mr. Nathan confirmed that in his testimony.  Nike's not in that

10  business.  So the market expansion argument doesn't work for

11  Lontex either.

12         The 7th factor -- because I'm going to use a

13  different chart.  I'm going to move a little more quickly.

14         This is actually 7, 8, and 9, channels of trade and

15  advertising, similarity of targeted consumers, and similarity

16  of -- these are Lapp factors.  I didn't draft them.  They just

17  came from somebody else.

18         Dick's and Foot Locker, Nike is in those stores.

19  Lontex is not.  And by choice.  You heard Mr. Nathan.  He just

20  doesn't have any interest in selling his products to retail

21  stores.  This is just a difference, and it goes to the Lapp

22  factors.  Another difference, does Mr. Nathan sell in brick and

23  mortar?  No.  It's just not his choice.  He chooses not to.

24  Does Nike?  Of course it does.

25         Website.  Nike has a website.  It sells its products

through their website.  Lontex doesn't.  Pro teams.  Well, we
know Nike does provide product to some pro teams, and we also
know that Mr. Nathan does too.  But Mr. Heil testified that
Nike's deal is actually with Major League Baseball, and as part
of that deal, Nike provides products to each one of the teams.
And that goes through the equipment manager, and that's how it
works.

Mr. Nathan markets to the athletic trainer for
specific garments to specific players who need to get back on
the field.  So there is a similarity there, but there are some
differences too.

And the last one is physical trainers, and that's
clearly Lontex and not Nike.  We don't market to physical
therapists.  We don't sell the same kind of things Lontex does.
That's their market, and we've never messed with it.  So that's
theirs.

But in total, all of these factors show how different
Nike and Lontex's business are.  They just don't run in the
same channels, they don't serve the same consumers, and they're
not sold in the same way.  And under Lapp factor number 7, 8,
9, I mean, that weighs in Nike's favor too.

The last one is the similarity of the marks.  All
right.  Now, similarity of marks you have to compare how Nike
was using cool and compression with how Lontex was.  We have a
slide for that, we have this tech sheet, one of the many, and

1    then we have the tag.  That's where Cool Compression appears in

2    these products.  So anybody can see they have the same words on

3    them.  We'll give that one to Lontex.

4            So if you apply the test that the courts have asked

5    you to apply to determine whether or not there's confusion, the

6    most fundamental part of trademark law, it's nine to one Nike

7    because no one ever confused these products.  So that's a

8    complicated test with a lot of facts, but it really just

9    explains to you what you already know.  You can't confuse the

10   two of these.  And if they can't show confusion, then they

11   can't prove trademark infringement regardless of what they call

12   their trademark, incontestable or not.

13           Last argument is about continuous use.  Okay.  I want

14   to talk about that for a minute.  So you can't put your

15   trademark in the closet and then bring it out later when it's

16   time to use it.  You have to use it continuously.  And that

17   makes sense because if you don't use the trademark, no one will

18   associate it with anything.  If McDonald's didn't have the

19   golden arches, you don't know that they sell Big Macs.

20           Even Lontex's own lawyer, Norman Lehrer, you heard

21   from him, he told them.  Everybody knew it.  Everybody agrees,

22   you have to use it.  And they didn't.  They just didn't,

23   because they didn't need to.  They had Sweat It Out and they

24   had Mr. Nathan.  That really didn't add anything.  Everybody

25   who he sold to knew him by name, and they bought products that

1    said Sweat It Out with that big sun right on the front of it.

2           They haven't really showed you very many products,

3    and the reason they're not showing you many products is because

4    they all have that sun.  You don't need two trademarks on a

5    shirt.  They chose Sweat It Out.  They had it all along.  And

6    the medical business didn't take off, so they didn't need the

7    Cool Compression mark.  That's why it's so hard for them to

8    prove use.  That's why they need all this testimony, all these

9    recollections from years ago.  Tags coming from who knows

10   where.  If you were really using your trademark, it shouldn't

11   be that hard to show that you're using it.

12          If we go through the chronology, it makes it

13   absolutely clear.  If he formed Cool Compression in December of

14   2006, he got domain names for Cool Compression and

15   coolcompression.com that same year, and he admitted it never

16   got off the ground.

17          The websites, Mr. Wagner talks about websites all the

18   time, but he doesn't want to talk about Lontex's website

19   because it never launched in 15 years.  That's pretty strong

20   evidence of abandonment.  It's hard to imagine better evidence

21   of abandonment.

22          But there is better evidence of abandonment.  So if

23   you go to the next slide, he put them up for sale in 2014

24   because he wasn't using them.  Totally makes perfect sense.  If

25   you're not using it, sell it.  Couldn't find any interest in it

1   or convince anybody to buy it.  He asked a couple people -- you

2   can flip through the sides here, Rich.  I think everybody

3   knows.

4           And then Vicki Humphreys, you know, she went on

5   Twitter -- you can stop at that slide right here -- and she

6   found that there were 22,002 Tweets.  Actually, she didn't go

7   on Twitter.  She looked at Lontex's business records.  22,000

8   Tweets between June 2011 and August 2015.  18,763 of them said

9   Sweat It Out.  That's the trademark.  1671 said true

10  compression.  That was how he described his products most,

11  mostly used that term until 2016.  1,121 references to Coolmax.

12  Remember, he's Mr. Coolmax.  Only 40 of these Tweets said Cool

13  Compression, and in all 40 of those Tweets, it was an attempt

14  to sell Cool Compression.  All those Tweets, she testified,

15  have been wiped.  They're gone.

16          In the end, no one bought the trademark, and the

17  business just really didn't get off the ground.  But that's

18  okay.  He still had Lontex.  He still had Sweat It Out.  He

19  just didn't need Cool Compression.  But around 2016, he

20  realized Nike was using or had Cool Compression on some

21  websites, and he remembered what his lawyer told him that he

22  had to be using it, and he sprung into action.

23          So if you go to DX-292, Rich, he sends this urgent

24  email to Mr. Bechtel, who you remember is the marketing

25  consultant, and he told him to put Cool Compression on all

these places.  His Facebook page, his website, press releases, brochure.  Just start putting it everywhere.  Then he goes and buys a Nike shirt and sends it to his lawyer, Mr. Rosen.  The very next day, the day after he spoke to his lawyer, he wrote: I do not think Nike is interested in purchasing the Cool Compression trademark.  They are just using it to describe this Pro light compression apparel online.  No big money is likely to be involved.  He knew it from the beginning.

But things changed, and the lawyers crept into his business.  You can see on the next slide, he wrote:  My lawyer gave Nike a time to reply to us by April 29th.  And then he talked about that will help him determine what to do with the trademarks.  So the lawyers are telling him what to do with the trademarks.  He emailed Mr. Bechtel.  This is a legal matter, and he wanted the Cool Compression website to fire up.  Then he wrote:  Don't Tweet any of these until my lawyers tell me it's okay.  Then he sent another email about the website being down. He said, please, ASAP.  This is New Year's Eve.  And he filed his lawsuit on New Year's Eve.

Now, that's as strong evidence of abandonment as the website being down.  Why did you not do that before?  Because the business didn't take off, and he didn't need it.  He just didn't need it.  He had Lontex and he had Sweat It Out.  If abandonment means anything, that's abandonment.  No website, no sales, no products, LLC's inactive.  It just wasn't a business.

1          Now, Lontex has made some very serious allegations in

2     this courtroom.  They have alleged that Nike infringed on

3     Lontex's trademarks, stole everything from Mr. Nathan, ruined

4     his business, thrown out some really big numbers that somebody

5     wrote by hand on a slide.  That's not so subtle.

6          Big company behaving badly, bullying a little

7     company, to gain an unfair advantage.  They're hoping that you

8     follow that script.  Find for the smaller company, punish the

9     larger one.  You should back up those kinds of allegations with

10    some very serious evidence.  We're in Federal Court.  This is a

11    Federal statute.  We have a Federal judge.  You're a Federal

12    jury.

13         You heard from Ms. Jodi Thomas, Mr. Wagner's own

14    legal practice assistant.  She testified that she assembled a

15    large team just for this case, numerous lawyers, paralegals,

16    consultants.  Spent five years looking for evidence.  Five

17    years.  And the evidence that they showed you included the

18    following.  Mr. Wagner's cell phone.  Next, that's eBay.  Nike

19    doesn't sell its products on eBay.  The next one, that's an

20    assisted living facility.  The next one, nobody knows what that

21    is.  The last one, that's a counterfeit website.  And they

22    suggested to you that Nike was selling its goods through all

23    these channels.

24         They didn't just do that, okay.  They sifted through

25    thousands of pages, all of these catalogs, using computer

1    programs to find the word "cool" next to the word

2    "compression."  What consumer would do that?  Their own expert,

3    Ms. McDonald, said that that was -- or she criticized Nike's

4    experts for creating a phony consumer environment, and I think

5    she said it was all ginned up.  I wonder what she would say

6    about what happened with these catalogs.

7            When the evidence wasn't there, and it's not there,

8    Mr. Wagner drafted declarations for a bunch of athletic

9    trainers.

10           We have a slide, I think, on that, Rich, right?

11           They're all pretty much the same.  Some of them --

12   and you can keep going, Rich.

13           Paragraph 10 is all the evidence of confusion that

14   they have, and he wrote it.  Now, Mr. Cunningham and Mr. Ball,

15   after these declarations were signed, suddenly remembered

16   things to supplement it.  Mr. Cunningham remembered the walk

17   through Dick's, where he's heading for the scoreboard, didn't

18   break stride, looked over his left shoulder, said he saw a

19   sign, and said, oh, look, Efraim made a deal.  That was his

20   testimony.  It's not in his declaration.

21           Brian Ball had some conversation with Mr. Nathan.  He

22   said that he had a similar type of experience.  But you know

23   what's interesting, Mr. Nathan didn't testify about that during

24   the trial.  Either way, this evidence of confusion, it says I

25   believe the following images caused me to be confused.  They

1    had never seen those images before.  Mr. Wagner hadn't shared

2    with them before.  He told them what to say about those images

3    before he sent them to him.

4          Mr. Smith, I asked him, your images aren't even on

5    the same page, so weren't you thinking of what Mr. Wagner wrote

6    when you flipped to the page and started looking at those

7    images?  And he said, no, nothing was running through my mind.

8          Keep going, Rich.

9          There's another problem.  Look at the product

10   description on the signature pages.

11         One more, Rich.

12         No one can read those.  Mr. Smith took the stand and

13   couldn't read them, but he signed it anyway.  I mean, you have

14   to take that into account.

15         In the end, Lontex just couldn't deliver the evidence

16   to show trademark infringement.  There's just no confusion.

17   There could never be any confusion.  The only thing they can

18   prove is what I told you the facts suggested all along.  He has

19   a trademark for cool Compression.  Nike used the word "cool" to

20   describe the lightweight fabric and mesh panels.  Compression

21   was used to describe a super tight fit.  And sometimes, in some

22   places, those two words bump up next to each other.  But they

23   weren't on the products, and they didn't confuse anybody.

24   Mr. Nathan still had his Sweat It Out, he still had Lontex, and

25   he still had all of these relationships.

1          So I'm asking you, ladies and gentlemen of the jury,

2    to consider what they're asking you to think.

3          Rich, can you run the next slide?

4          This is the Jordan Stay Cool compression.  They don't

5    want you to see that, they don't you to see that or that or

6    that or that or that.  That's all they want you to see.  But

7    there's so much more to it.

8          So if you can see what's really going on here, I'm

9    going to ask that you find for Nike and conclude three things.

10   One, Nike fairly used cool and compression.  This was fair.  We

11   just described cool so you knew it wasn't warm.  And we used

12   compression so you knew it was tighter than fitted.  And that

13   Lontex has failed to prove confusion, so its claims against

14   Nike just can't succeed.  And lastly, that Lontex abandoned

15   Cool Compression well before 2016 because the business never

16   got off the ground, and they put the trademarks up for sale.

17         I want to say thank you.  I know this was a big

18   sacrifice.  I really do.  I know you missed a lot of school and

19   you missed a lot of family and you have a lot of emails in your

20   inbox when you get back, but thanks for being so attentive and

21   for listening to everything that I've said.

22         Thank you.

23         THE COURT:  Okay.  Ladies and gentlemen, Mr. Wagner

24   has 20 minutes left.  If any member of the jury wants a break

25   at this point, raise your hand.  If not, we'll continue with

1    his 20 minutes, and then we'll take a break before I give you

2    the charge.

3            I don't see any hands raised, so, Mr. Wagner, please

4    proceed with your rebuttal.

5            MR. WAGNER:  I think they're just going to clear out

6    the space.

7            So this is always the fun part where I got a long

8    list of stuff, and I don't have enough time to say everything.

9    And I don't really need to say everything.  So I'm just going

10   to address a couple points, because I made most of my points

11   for you before.

12           I showed you that Nike's defense, as you just heard,

13   amounts to the following.  Everyone that we put before you, all

14   of those folks who aren't friends with Mr. Nathan, Mr. Nathan

15   himself, Najeeb Hosni, who sewed all the garments in, all of

16   them are liars.  They came up here and they perjured themselves

17   before you.  That is the defense of the big company who cut

18   Mr. Nathan's sales in half with their actions.

19           That is the remorse that Nike feels at this exact

20   moment.  They have no problem strutting up and telling you that

21   everyone's a liar.  Anyone who ever vouched for my client isn't

22   telling the truth.  Ask yourself, is that a company that

23   innocently, accidentally, as the victim, defendant, stands up

24   here before you?

25           So one of the things they told you, right, was all

the places where Nike didn't use Cool Compression or all the

places where Lontex didn't use Cool Compression.  What's this

like?  This is like we have two buildings right in front of us.

The first one is Lontex's building built with 25,000 garments

all with Cool Compression on the inside care label.  All those

decades of presentations to thousands of people across the

country from every walk of life, at schools, marathons,

churches, anywhere.  You name it.  Mr. Nathan took the message

of his Cool Compression stretch technology and he built that

building.

A building which, mind you, remember Nick Johnson of

Nike admitted the tech names, the tech names, they go on the

label.  That's where you put them, right?  And suggested

that -- okay, there's that building, right.  Then there's

another building that Nike built.  All the tech sheets,

hundreds of them, all the catalogs, hundreds more.  All the

1,500 retailers that we showed you, 4.6 million units worth of

the retailers.  I think we didn't give you some limited subset.

We didn't scour so we could show you some sort of fake picture.

4.6 million units worth of a picture.  Just like I told you,

we'll give you enough evidence to decide.

I gave you all of that building of how Cool

Compression was used by Nike, how it was used by Lontex.  And

here's what Nike does.  They stand in front of that building

and they start pointing to all the places where it's not, as if

1    to say there's no Cool Compression.  But the reality is,

2    everyone knows it, right.  When you got that person, look

3    behind me, it's right behind me, isn't it?  Yeah.  It's right

4    there.  Two giant buildings.  Nike's Cool Compression and

5    Lontex's Cool Compression.

6         And the fact that Mr. Nathan would fight for his life

7    when he found out about Nike, would put Cool Compression a

8    whole bunch of places that he didn't think to put it before,

9    that proves that the building doesn't exist?  No.  The fact

10   that a person who owns property, a Lontex Cool Compression

11   registration, can use it just like any property.  They can

12   license it just like any property, right?  You can rent your

13   house out.  Does that mean that you've abandoned your house?

14   In fact, you can live in your house and decide you're going to

15   put it up for sale and see if you get any interest.

16        Now, Mr. Nathan explains that he never intended to

17   sell any trademark.  He was just fishing, getting people

18   interested, so he could have a conversation about expanding his

19   business.  That Mr. Liebaert email that you saw where he said,

20   oh, don't worry, it's not a big deal what Nike's doing, he

21   explained to you that was just keeping the temperature down,

22   right.  That was just trying to make sure that a business

23   partner, that he was looking desperately for to finally reach

24   that new level of business, wouldn't run away because they

25   found out about Nike's infringement.

1          All of that sort of suggestion that what they did

2     later somehow means that they didn't have the buildings built

3     before is kind of like if you're on your property, right, just

4     like I said, you go on vacation.  Someone tells you -- you put

5     your property up for sale, right.  You even suggest that you

6     might talk to folks.  That means you no longer own your

7     property.  That's what Nike wants you to think.

8          So the next thing they said, right, was don't worry

9     about it, right.  No one got confused.  Even though they were

10    confused, it doesn't matter.  They want this narrow view of

11    confusion.  They want you to think that unless someone thought

12    that Lontex was Nike and Nike was Lontex, there's no confusion.

13    We all apply common sense.  We know that confusion is broader

14    than that.

15         What is trademark law, if using Cool Compression as

16    the product name, as a prominent feature of the product name

17    for the exact same goods, is not infringement?  What does that

18    say to the big guys who decide to take a trademark that they

19    never searched, even though they should have searched it, Cool

20    Compression, and used the exact mark in their own product

21    names?  That does not at all send a good message to the big

22    guys who need to know that, if you want to use the exact name

23    of someone, you got to get permission.

24         Let's imagine that Dri-FIT, right, because they

25    talked about how two years -- don't use some five-day arbitrary

1    number.  I ask you to apply common sense.  Let's say Reebok

2    decided to put Dri-FIT on their products.  How long do you

3    think Nike would expect it to take them to take Dri-FIT off

4    their website, off their products?  Do you think two years

5    would be enough time?  Let's apply that common sense metric.

6    Whatever metric you apply, what Nike did has to be punished.

7    It has to be held and called out for what it is, trademark

8    infringement.

9            So I liken it, right, to this idea that our trainers

10   got up before you and explained to you that, you know, when

11   they touched the product, they could tell there was a

12   difference in the product.  Use your common sense again.  How

13   many people online are looking at product?  They don't touch

14   the product.  How many people are buying the products?  They

15   never touched the product until it comes in the mail.  By then,

16   it's too late.  They already own the product.

17           What's Nike's excuse?  That we can return it?  The

18   confusion's already there.  The law protects against that

19   confusion.  How about the idea that, oh, well, even the

20   trainers, even though they thought there was an affiliation,

21   right, they knew it wasn't Nike.  Well, you heard their own

22   experts ran a survey, not just to see if there was a confusion

23   as to who actually made it, but as to whether there's an

24   affiliation.  And what's the affiliation here?  People thought

25   that Nike was using Cool Compression technology that Lontex

1    had.  That's the confusion, right?  That's the affiliation.

2          When people then go and have seen Nike and go back to

3    Lontex and learn about their Cool Compression, what are they

4    going to think?  The little guy stepped on the big guy now.

5    Now they've taken its brand and they've used it as their own.

6    Now Mr. Nathan is the infringer.  That's what they're going to

7    think, that he's ripping off the other guy.

8          So what is this like?  This is like Diet Coke, right?

9    We told you, these guys got up there and explained, I was

10    confused, I thought that the two were related.  And they said,

11    well, why don't you take a sip?  Oh, it tastes different.  See,

12    you're not confused.  That's not true.  Everyone knows that

13    Coke and Diet Coke can be affiliated.  It doesn't require you

14    to think that one is the exact same as the other.

15          Now, he also said that Nike knows how to make a

16    splash, right.  But isn't that the point?  That Nike doesn't

17    just know how to make a splash.  They know how to make a

18    cannonball, a cannonball, when they enter anything into that

19    product name area.  And that's why they had a whole ANAQUA

20    system designed, because they knew they made that splash.  They

21    knew they made a big splash, and they knew a product name would

22    make that splash.  So those product names went on tech sheets,

23    they went on catalogs, they went on online advertisers.

24          He asked about this point, front and center.  Well,

25    let's look at Dick's, right.  Dick's, that's front and center.

 1   Is someone at their house looking at that ad feeling the
 2   product?  Are they looking to see -- no.  They are seeing,
 3   front and center, men's Nike Cool Compression tops and shorts.
 4          The tech sheets.  Howard Knudson, maybe you remember,
 5   he was the physical trainer that said before, way back in 2001,
 6   he was a top salesman at Nike.  And at Nike stores, he
 7   remembered the tech sheets and he remembered the product names
 8   across the top.  He remembered using them.  So, obviously,
 9   those names are memorable, even to people 20 years later.  So
10   that is front and center.
11          In fact, I ask you to find anywhere on these tech
12   sheets that have something more front and center.  That is the
13   biggest text across the whole sign.  Now, Nike also put up for
14   you a picture of ten factors.  And I have to admit, I took a
15   picture of it.  We'll put it up on the screen, because even I
16   don't have those memorized, and I've been doing this a long
17   time.  Because those factors, they aren't like some sort of
18   algorithm that you put in.  Those factors are designed to help
19   your common -- your own brains, not some sort of lawyer who
20   came up with some algorithm you have to apply.  They're just to
21   help you think about things that might matter at different
22   degrees.
23          In a case like this, I tell you, you use the exact --
24   the judge will instruct you on the law, but I suggest that you
25   consider this.  It's a trademark case, right?  It's about using

1    trademarks.  This is trademark infringement.  What matters the

2    most?  What should matter the most, what I suggest to you you

3    consider the most weight, is that they used the name Cool

4    Compression.  Can a big company just slap its name on any old

5    trademark it wants, and because it's so big, don't worry,

6    that's not a problem?  No.  That's not what trademark

7    infringement is designed to protect against.

8           Now, maybe they're in different channels.  Is it

9    nuclear scientists and is it computer software engineers at

10   different conferences where channels of trade wouldn't overlap?

11   Absolutely not.  This is Nike.  It's like Subway.  My wife and

12   I always used to say, Subway, it's everywhere you are.  We got

13   the Starbucks one down, too, later, because now I like

14   Starbucks.  We say Starbucks, it's everywhere you are.  Nike,

15   it's everywhere we are.  So there's no such illusion that ships

16   crossing in the night are going to happen.  If you know about

17   Lontex, you know about Nike.  It's just that big.

18          So what else do we got?  We got Nike's intent in

19   using the challenged mark.  They suggested to you that somehow

20   all of these should weigh in Nike's favor, but Nike's intent in

21   using the challenged mark -- I think I wrote down what they

22   said.  They said that it just happened, right.  But isn't that

23   the point?  It didn't have to happen.  If an ostrich sticks its

24   head in the sand when it should be doing something else, that's

25   willful blindness.  They have ANAQUA.  They know how to use it.

1   They didn't use it.  They knew how to find and make sure they

2   weren't stepping on anyone's trademarks.

3          The two years, right.  They said this just happens.

4   It's part of business, right, that we put the two together

5   again.  Do you really think that two years is a reasonable

6   amount of time to stop?  They suggest that it takes time to

7   change things.  Really?  Have you ever gone to something -- I

8   mean, these are online.  Have you ever gone there, find,

9   replace, find, replace, find all, replace all, if you're a

10  little more lazy like me.  It's very easy.  It's not a big

11  deal.  It certainly doesn't take two years.  There's no

12  evidence to suggest that somehow the laborious arms of Nike

13  were working strenuously to move something and it just happened

14  to take that long.

15         Now, they also suggested that somehow we have

16  different audiences, right, and that there's different people

17  that we focus on.  Well, again, that might matter if you had

18  nuclear scientists and computer engineers.  They were in

19  totally different crowds.  But that's not what happened here.

20  The same teams buying from the same people.  The same people

21  that buy marathon clothing from Mr. Nathan and Lontex, they buy

22  Nike products.  In fact, there's no surprise that even the

23  professional athletes are overlapping.

24         What does this Nike Pro product have that Mr. Nathan

25  takes around?  What does it have on there?  It says built to

1    the exact specifications of professional athletes around the

2    world.  Why?  Because they want people to think that you're

3    getting the real deal.  You're not getting some fluff foofy

4    thing.  You're getting something that really works.

5            And they showed you an ad campaign they have, right?

6    They showed you an ad campaign that had people hooked up to all

7    sorts of things, and they told you all about the Nike research

8    lab, right?  They have this guy wearing compression products,

9    all hooked up, getting tested.  Why?  Because they don't sell

10   foofy products that people just wear for fun.  No.  Nike Pro is

11   built to the specifications of professional athletes.  They

12   want to make sure the marketplace knows that.

13           And you know what, I don't have really the time or

14   energy to go through the list of similarities.  I think you

15   know them.  They brag about four-way stretch just like we brag

16   about 360 degrees in all different directions.  They brag about

17   how it ventilates.  We brag about breathability, you'll find in

18   here some words.  We talk about a whole bunch of things, right?

19   They talk about how this will cool you so your performance

20   remains at its peak, right?  They're promising improved

21   performance.

22           So when they start to tell you that somehow these

23   guys focused on different things so no one's going to be

24   confused, there's no disclaimer that comes on these products.

25   There's no one person's buying, you know, Cool Compression for

an air conditioner, another one's buying Cool Compression for
clothing.  Those goods, they are related enough.  They are
overwhelmingly overlapping.  I could go through that whole
list, right, but I didn't want to, because it's so obvious when
you see those factors, I think.  That the ones that really
matter, like market expansion, really, that would apply, again,
when you don't have two people in the exact same demographic of
people.  But here, we absolutely do.

And you heard in this closing argument, they still
don't want to admit that Cool Compression is in the product
name.  Still.  That level of arrogance today before you, they
still won't admit that Cool Compression is the product name.
After their own ex-employees got up here and told you that was
the product name.  They said, oh, it's a mouthful.  Yeah, it
is.  That's right.  That's why the employees used Cool
Compression, not Nike Pro Cool compression 6-inch shorts.
That's why Dick's called it Nike Cool Compression, because the
cool compression is the thing that differentiates it.  It's the
thing, it's the noun that Deborah White talked about.

So, lastly, I just want to come before you and say,
you know, this is not something that we need to be here about.
We didn't need to have four years, three years, and Google
search results from 2020 still showing you that Cool
Compression for Nike is still all over the place.  We shouldn't
have been here, because in 2014, Nike should have never adopted

a product name, a consumer-facing product name, that went on

hundreds of catalogs, hundreds of tech sheets, and was used by

sellers that sold 4.6 million units of Nike Pro Cool

compression, because it should have stopped, it should have

looked, and it should have found out about it.

Because this, this little land, this small guy's

property, was not the place they should have built their

skyscraper.  It was Lontex's property.  And instead of getting

away and taking their stuff for two more years on that

property -- remember, 3.8 million units is what they sold

after.  That's over half the skyscraper that they kept building

on the property.  Did they tell their retailers to go home?

No.  They let them keep building on the property too.

That is not the actions of an innocent person.  That

is not the actions of someone that -- somehow we're selling you

a narrative, a narrative that the big guy versus the little

guy?  No.  The facts sell that themselves.  It's obvious as

day.  This is just a case where the big guy was too big to care

and the little guy was too small to care about.

So I ask you, when you look at those jury

instructions, that you find trademark infringement against

Nike, and that you find that that infringement is not some

innocent thing to be passed aside, but was willful infringement

that could have and should have been avoided.

THE COURT:  All right.  Ladies and gentlemen, that

1    completes the closing arguments.  And so this is one of the

2    last times I'm going to tell you this, but still don't discuss

3    the case, because the charge on the law is coming and it's

4    important.

5           We're going to take a 10-minute break now, and we'll

6    come back and I'll give you the charge, which will take

7    probably somewhere between 35 and 45 minutes.  And I believe

8    your lunch will be there, if it's not there already, and then

9    I'll go over the verdict slip with you as well when I'm done

10   the charge.

11          So the jury is excused.

12                  (The jury exits the courtroom at 11:14

13                  a.m.)

14          THE COURT:  Thank you.  Ten minutes.

15          I thought both counsel did very well.  Thank you for

16   being done by the time limits.

17                  (Recess taken from 11:15 a.m. to 11:30

18                  a.m.)

19          THE COURT:  Okay.  Let's bring in the jury, please.

20                  (The jury enters the courtroom at 11:31

21                  a.m.)

22          THE COURT:  All right.  Be seated everyone.  Okay.

23          Ladies and gentlemen, I'm taking off my mask to make

24   sure you can hear me.  If you miss anything or you can't hear

25   me, please raise your hand.

1          When I'm done with the instructions, I have to, under

2    our procedures, ask counsel to come to sidebar and see if they

3    have any changes or corrections that they want me to make.  And

4    after that, I will then go over the verdict slip with you and

5    hand out the verdict slip.

6          Now, you're going to get a copy of 99 percent of what

7    I'm about to say, so I would prefer that you listen to get the

8    sort of the big picture of what I say.  If you want to take

9    notes, you're welcome to, but you will get a copy of the

10   charge.

11         So the charge is basically three sections.  There's

12   an introduction, and I talk about the burden of proof.  Then I

13   will go over the law about trademarks and infringement and

14   confusion and willfulness, and also the affirmative defenses of

15   fair use and abandonment.  And then the final part, I'll talk

16   about the credibility of witnesses and expert witnesses and

17   some instructions on how you should conduct yourselves in the

18   jury room now that you will start discussing the case fully and

19   completely, which you have been told not to do up to this

20   point.

21         So you have heard the evidence and you've heard the

22   arguments of the attorneys, and it's now my job to instruct you

23   on the law applicable to the case.  On the conclusion of my

24   instruction, you will then retire to consider your verdict.

25   You must determine the facts from all of the testimony that you

have heard and the other evidence which has been received
during this trial.

You are the sole judges of the facts.  No one, not
even myself, may infringe upon this responsibility.  You may
entirely disregard any comments I may make as to my
recollection of the evidence during the trial if your
recollection of the evidence is different than mine.  Nothing I
say in these instructions is to be taken as an indication that
I have any opinion about the facts in the case.

On the other hand, and with equal emphasis, I
instruct you that you must accept the rules of law as I will
give them to you now, and you must apply that law to the facts
that you have found.  You are not to be concerned with the
wisdom of any rule of law, and you are not to single out one
instruction alone as stating the law, but you must consider the
instructions as a whole.

You must perform your duties without bias or
prejudice to any party.  The law does not permit you to be
governed by sympathy, prejudice, or public opinion.  All
parties expect that you will carefully and impartially consider
all of the evidence, follow the law as it is now being given to
you, and reach a just verdict regardless of the consequences.

The evidence from which you should find the facts
consists of the testimony of witnesses, documents and other
things received into the record as exhibits, and any fact that

1   the lawyers agree to or stipulate to that I instruct you to

2   find.

3         We will take efforts to, Ms. DiSanti, to bring into

4   the jury room the exhibits that have been admitted into

5   evidence in this case.

6         The following are not evidence and must not be

7   considered by you.  First, statements, arguments, and questions

8   by lawyers are not evidence.  Second, objections to questions

9   are not evidence.  Lawyers have an obligation to their clients

10  to make objections when they believe evidence that is being

11  offered is improper under the rules of evidence.  You should

12  not be influenced by the objection or by the Court's ruling on

13  it.  If the objection is sustained, you should ignore the

14  question.  If it is overruled, treat the answer like any other.

15        Testimony the Court has excluded or told you to

16  disregard is not evidence and must not be considered.  Anything

17  you may have seen or heard outside the courtroom is not

18  evidence and must be disregarded.  You are to decide the case

19  solely on the evidence presented here in the courtroom.

20        You must decide this case on the facts and my legal

21  instructions only with no guessing or conjecture on your part.

22  You are not permitted to reach a verdict merely on the basis of

23  speculation or conjecture.

24        I'm now going to charge you on the burden of proof.

25  Lontex is the plaintiff and has the burden of proving each of

1    its claims by what is called a preponderance of the evidence.

2    That means for each of its claims, Lontex has to prove to you,

3    in light of all of the evidence, that what it claims is more

4    likely so than not so.

5            To say it differently, if you were to put the

6    evidence favorable to Lontex and the evidence favorable to Nike

7    on opposite sides of a scale, like the scale that you would

8    weigh on both sides, Lontex would have to make the scales tip

9    somewhat on its side for each claim.  If Lontex fails to meet

10   this burden on a claim, the verdict must be for Nike on that

11   claim.  If you find, after considering all the evidence, that a

12   claim or fact is more likely so than not so, then the claim or

13   fact has been proved by a preponderance of the evidence.

14           In determining whether any fact has been proved by a

15   preponderance of the evidence in the case, you may, unless

16   otherwise instructed, consider the testimony of all witnesses,

17   regardless of who may have called them, and all exhibits

18   received in evidence, regardless of who may have produced them.

19           On certain issues called affirmative defenses, Nike

20   has the burden of proving the elements of the affirmative

21   defense.  I will instruct you on the facts that will be

22   necessary for you to find on affirmative defenses.

23           On one of the affirmative defenses, what we call fair

24   use, Nike has the burden of proving the elements of the defense

25   by a preponderance of the evidence.  The affirmative defense of

fair use is proven if you find, after considering all the evidence in the case, that Nike has succeeded in proving that the required facts were more likely so than not so.

However, Nike has raised a second affirmative defense, that of abandonment, to which a different burden applies.  For Nike to succeed on the affirmative defense of abandonment, Nike must prove the elements of the defense by clear and convincing evidence.  Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction without hesitancy of the truth of a precise factual issue.

Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of evidence standard.  You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard of proof than both the preponderance of the evidence and clear and convincing evidence, and it applies only in criminal cases.  It does not apply in civil cases such as this, so you should put it out of your mind.

I will now begin the instructions on trademark.  A trademark is a word or symbol or other type of mark that is used to identify or distinguish a product.  Companies often register trademarks with the Federal Government to help protect their trademark rights.  When a company has trademark rights, that means the trademark is its property, and other companies

1   shouldn't be using that trademark in a way likely to cause

2   confusion about whose products are whose.  If another company

3   does so nonetheless, it may be liable for trademark

4   infringement.

5          An owner of a trademark may obtain a certificate of

6   registration issued by the United States Patent and Trademark

7   Office, which is abbreviated as USPTO, and may submit that

8   certificate as evidence of the certificate holder's ownership

9   of the trademark covered by the certificate.

10         Lontex had presented certificates of registration

11   from the USPTO.  These certificates are submitted as proof of

12   the validity of the Cool Compression mark and that Lontex owns

13   the Cool Compression mark.  Under federal law, these

14   certificates of registration create a presumption that the Cool

15   Compression mark is valid and that Lontex owns and has the

16   exclusive right to use the Cool Compression mark.

17         On Lontex's claim for trademark infringement, Lontex

18   has the burden of proving by a preponderance of the evidence

19   that Nike's use of Cool Compression was likely to cause

20   confusion among ordinary consumers as to the affiliation,

21   connection, or association between Lontex and Nike, or as to

22   the origin, sponsorship, or approval of their goods.

23         A likelihood of confusion need only exist as to an

24   appreciable number of consumers.  It is not enough for Lontex

25   to prove confusion in general.  Rather, Lontex must prove a

 1    likelihood of confusion among ordinary consumers or prospective

 2    consumers of Lontex or Nike products.

 3            If you find that Lontex has failed to prove this

 4    likelihood of confusion by a preponderance of the evidence,

 5    your verdict on this claim should be for Nike.  If you find

 6    that Lontex has proved this likelihood of confusion by a

 7    preponderance of the evidence, your verdict on this claim

 8    should be for Lontex.  Your decision as to whether there was a

 9    likelihood of confusion should be guided by a set of factors

10    that I will now explain.

11            There are two types of confusion we call forward and

12    reverse confusion.  You must consider whether Nike's use of

13    Cool Compression was likely to cause confusion to ordinary

14    consumers.  Forward confusion is when consumers confuse the

15    products of the trademark owner, that is Lontex, with the

16    products of the alleged trademark infringement, that is Nike.

17    The second is reverse confusion.  Reverse confusion is when

18    consumers confuse the products of the alleged trademark

19    infringer with the products of the trademark owner.

20            I'm now going to give you the instructions on the

21    likelihood of confusion under forward confusion.  In deciding

22    whether Nike's use of Cool Compression was likely to forward

23    confusion, your analysis should be guided by the following ten

24    factors.  No single factor is decisive, and a finding of

25    likelihood of confusion does not require a finding in favor of

1   Lontex on a majority of the factors listed.  When considering

2   actual confusion as referenced within these factors, consider

3   evidence of any type of actual or likely confusion, be it

4   forward confusion or reverse confusion.

5          Number one, the similarity between Lontex's Cool

6   Compression mark and Nike's use of Cool Compression.

7   Trademarks are confusingly similar if ordinary consumers would

8   likely conclude that the products at issue share a common

9   source, affiliation, connection, or sponsorship.

10          If the overall impression created by Lontex's Cool

11   Compression mark is similar to that created by Nike's use of

12   Cool Compression in appearance, sound, and meaning, there is a

13   greater chance of likelihood of confusion.  This is always an

14   important factor, and where goods are directly competing, this

15   may be the single most important factor.

16          The strength or weakness of Lontex's Cool Compression

17   mark.  The strength of a trademark is in its tendency to

18   identify the goods sold under the mark as emanating from a

19   particular source.  When the consuming public recognizes

20   Lontex's Cool Compression mark as an indication of the origin

21   of Lontex's goods, the more likely it is that the consumers

22   would be confused about the source of Nike's goods if Nike uses

23   Cool Compression.

24          In evaluating the strength of Lontex's Cool

25   Compression mark, you should consider both, first, the inherent

1   features of the mark contributing to its distinctiveness or

2   conceptual strength and, second, the factual evidence of the

3   mark's acquired distinctiveness or commercial strength.

4        The price of the goods, the sophistication -- the

5   second factor, excuse me.  The price of the goods, the

6   sophistication of potential buyers, and other factors

7   indicative of the care and attention expected of a consumer

8   when making a purchase.  The more care and attention expected

9   of consumers making a purchase will lower the likelihood of

10  confusion.

11       Number three.  Excuse me.  That was three.

12       Number four, the length of time Nike and Cool

13  Compression without confusion arising.  If the challenged Nike

14  products were sold for an appreciable period of time without

15  evidence of actual confusion, this weighs against finding a

16  likelihood of confusion.

17       Five, Nike's intent or willfulness in adopting Cool

18  Compression.  While evidence of the parties' intentional or

19  willful use of another party's mark to cause confusion is not a

20  prerequisite to prove likely confusion, such evidence weighs

21  strongly in favor of finding a likelihood of confusion.  I will

22  instruct you further on the meaning of intent or willfulness as

23  a separate instruction.

24       Six, evidence of actual confusion or lack thereof.

25  Evidence of actual confusion is not required to prove the

1  likelihood of confusion.  Evidence of actual confusion is

2  difficult to find because many instances are unreported.  The

3  rarity of such evidence makes even a few incidents of actual

4  confusion highly probative of a likelihood of confusion.

5          Since evidence of actual confusion is difficult to

6  identify and be present in litigation, likelihood of confusion

7  surveys have become one method of approximating possible levels

8  of confusion in the marketplace.  However, likelihood of

9  confusion surveys do not measure the degree of actual confusion

10 by real consumers.  Rather, surveys are approximations, and it

11 is up to you to determine how much or little weight to give a

12 survey taking all considerations into account, which may

13 include the quality or issues present and survey design,

14 methodology, sampling, and execution.

15         Seven, the similarity of the marking and advertising

16 channels used by Lontex and Nike.  Directly competing goods

17 are, by definition, already in each other's markets.  Even

18 where goods do not compete, this factor may favor likely

19 confusion when the goods are nonetheless marketed through the

20 same channels of trade and advertised through the same media.

21 The greater the similarity in advertising and marketing

22 campaigns, the greater the likelihood of confusion.  Perfect

23 parallel channels will rarely be found, and you should consider

24 the chance that someone will come across both Lontex's and

25 Nike's advertisements or marketing.

1          Eight, the extent to which the target markets are the

2     same.  This factor considers the extent to which the targets of

3     Lontex's and Nike's sales efforts are the same.  The more

4     similar the consumer markets targeted by Lontex and Nike are

5     for product sales, the greater the likelihood of confusion.

6          Nine, the perceived relationship between Lontex's

7     Cool Compression products and the challenged Nike products.

8     This factor focuses on the products themselves and whether

9     consumers may see them as related because of form, function, or

10    other reasons.  The more closely related a consumer would find

11    both parties' products to be, the greater the likelihood of

12    confusion.

13         Ten, other factors suggesting confusion are that the

14    consuming public might expect Lontex to manufacture the

15    challenged Nike products or expect Lontex to manufacture

16    products in Nike's market or expect that Lontex is likely to

17    expand into Nike's market.

18         For directly competing goods, by definition, the

19    producers of these goods are already in each other's market.

20    However, even where goods are not directly competing, confusion

21    may be more likely where other facts suggest that the consuming

22    public might expect a trademark owner to manufacture a product

23    in an alleged trademark infringer's market or expand into an

24    alleged trademark infringer's market.

25         All right.  I'm now going to give you a charge on the

likelihood of confusion under reverse confusion.  For reverse confusion, certain of the factors to evaluate for likely confusion must be analyzed differently than for forward confusion.  To determine the likelihood of reverse confusion, you should examine the same factors as for forward confusion with the following differences.  As with forward confusion, no one factor is decisive.  In considering the commercial strength of Lontex's -- the first factor -- I'm going to give you three factors here.

In considering the commercial strength of Lontex's Cool Compression mark, conceptual strength should be analyzed the same.  However, commercial strength should be analyzed differently.  If you find that Lontex's Cool Compression mark is relatively commercially weak, this does not weigh against your finding a likelihood of reverse confusion.  Rather, if you find that Lontex's Cool Compression mark is relatively commercially weak compared to Nike's use of Cool Compression, this weighs in favor of finding a likelihood of confusion.

In addition, consider whether any advertising or marketing campaign by Nike has resulted in the saturation and the public awareness of Nike's use of Cool Compression.  If you find that an advertising or marketing campaign by Nike has caused this, this weighs in favor of finding a likelihood of confusion.  The evidence regarding Nike sales data that you heard at trial may be considered for this purpose.

1          Second, in considering Nike's intent or willfulness

2     in adopting Cool Compression, a finding that Nike acted

3     intentionally or willfully weighs in favor of finding a

4     likelihood of reverse confusion.

5          Third, you may consider whether the consuming public

6     might expect Nike to manufacture Lontex's Cool Compression

7     products, or expect Nike to manufacture products in Lontex's

8     market, or expect that Nike is likely to expand into Lontex's

9     market.  If you find that the public would expect any of these

10    of Nike, this weighs in favor of finding a likelihood of

11    reverse confusion.

12         I just want to add that you'll see -- you must

13    consider all those factors I just told you.  But you will see,

14    when the verdict sheet comes, you don't have to make any

15    specific findings about confusion, but you do have to find the

16    likelihood of confusion in order to find in favor of Lontex, as

17    I previously told you.

18         I'm now going to give you a charge on intentional or

19    willful infringement.  As previously explained, while an

20    alleged trademark infringer's actions may not be intentional or

21    willful to be infringing, you will need to specifically answer

22    the question here of whether Nike acted intentionally or

23    willfully.  This encompasses a number of culpable mental

24    states, including an intent of promoting confusion and

25    appropriating the prior user's goodwill or reckless

1  infringement.

2  　　　　Intentional or willful infringement can be inferred

3  by the fact that an alleged trademark infringer continued

4  infringing behavior after being given notice.  For reverse

5  confusion, a finding that Nike intentionally promoted confusion

6  and appropriated Lontex's goodwill or recklessly infringed on

7  Lontex's trademark weighs in favor of finding a likelihood of

8  confusion.

9  　　　　However, for reverse confusion, you may also find

10  that Nike's actions were intentional and willful if you find

11  that Nike adopted Cool Compression with the intent to push

12  Lontex out of the market or if you find that Nike was

13  recklessly indifferent in overwhelming Lontex's Cool

14  Compression mark.

15  　　　　In deciding whether Nike was recklessly indifferent,

16  you may consider the following three factors.  First, whether

17  Nike conducted an adequate name search for other companies

18  marketing similar goods under trademarks including Cool

19  Compression and whether Nike followed through with its

20  investigation when it found there was such companies.

21  　　　　Secondly, whether Nike considered the likelihood of

22  confusion with other companies' marks and products, as opposed

23  to considering the likelihood that someone would contest Nike's

24  use of Cool Compression.

25  　　　　Third, whether Nike intended to contact companies

1    using Cool Compression, such as Lontex.

2         And four, whether Nike was careless in its evaluation

3    of likelihood for confusion.

4         I'm now going to charge you on what we are calling

5    contributory infringement, and there will be a separate jury

6    question for you to find on this issue.

7         A person or business may be contributorily liable for

8    trademark infringement by another if the person or business

9    intentionally induced another person or business to infringe

10   the trademark, or the person or business sells or supplies

11   goods to another person or business knowing or having reason to

12   know that the person or business will use the goods to infringe

13   the trademark.

14        Lontex claims that Nike is liable for contributory

15   trademark infringement based on the sales of third-party

16   retailers, such as Dick's Sporting Goods, of the challenged

17   Nike products.  For Lontex to succeed on this claim, it must

18   prove each of the following by a preponderance of the evidence.

19        One, the sale of the Nike products at issue

20   constitute a trademark infringement.  Second, Nike knew that

21   the sale of the Nike products at issue constituted trademark

22   infringement.  And third, Nike induced or contributed to the

23   sale of the products at issue by third-party retailers.

24        If you find that Lontex has proved each of these

25   elements by a preponderance of the evidence, your verdict

1    should be for Lontex.  If you find that Lontex has failed to

2    prove any of these elements by a preponderance of the evidence,

3    your verdict on this claim should be for Nike.

4              I am now going to charge you on the affirmative

5    defense of fair use.  Nike has raised the affirmative defense

6    of fair use.  The owner of a trademark cannot exclude others

7    from making a fair use of that trademark.  Because words or

8    phrases function as trademarks only when used in commerce to

9    identify the source of a product, not every use of words or

10   phrases of which a trademark is comprised qualifies as

11   trademark use.

12             To succeed on the affirmative defense of fair use,

13   Nike must prove each of the following by a preponderance of the

14   evidence.  One, Nike used Cool Compression other than as a

15   trademark.  Second, Nike used Cool Compression fairly and in

16   good faith.  And three, Nike used Cool Compression only in a

17   purely descriptive manner to describe its own products and not

18   at all describe Lontex's Cool Compression products.  You may

19   also consider the extent of confusion in determining whether

20   Nike's use of Cool Compression was fair or not.

21             I'm now going to charge you on Nike's affirmative

22   defense of abandonment.  Nike has also raised the affirmative

23   defense of abandonment.  To succeed on this defense, Nike must

24   prove by clear and convincing evidence that Lontex

25   intentionally abandoned the Cool Compression mark.  In order to

prove this, Nike must prove by clear and convincing evidence

each of the following.  One, Lontex discontinued its use of the

Cool Compression mark in the ordinary course of trade and,

second, Lontex did so with the intent to not resume the use of

the mark.

     To succeed on the affirmative defense of abandonment,

it is necessary to show not only acts indicating actual

abandonment, but an actual intent to abandon the trademark.

Acts which, not explained, would be sufficient to establish an

abandonment may be answered by showing that there never was an

intent to give up or relinquish ownership of the mark.

     If you find that Lontex ceased to use the Cool

Compression mark for three consecutive years, this raises a

rebuttal presumption of abandonment.  This presumption may be

rebutted if you find that, in ceasing the use of the Cool

Compression mark, Lontex lacked an intention to not resume use

of the mark at a later time.

     I am now going to charge you -- explain to you in

words -- I offered each party the chance to summarize their

contentions as part of my charge, so I'm going to read to you

now what each party has submitted to me to read to you.

     Lontex's contentions in its own words are as follows.

This is a summary.  Of course, the attorneys gave you their

arguments.  This is just a summary that I wanted to give to you

after I have given you the instructions on trademark law.

Lontex registered and owns the incontestable trademark Cool Compression.  Nike infringed Lontex's Cool Compression trademark when it used Cool Compression as a product name for 32 compression shorts, shirts, and tights. Nike disseminated the Cool Compression product names across all retail channels through hundreds of wholesale catalogs, tech sheets, and internet platforms designed to direct the retail-level messaging.

As a result, Nike retailers and other retailers like Dick's sold Nike's cool compression products by that name, including on in-store signage, in sales dialogues with customers, in their online stores, and in advertisements. Lontex presented many instances of confusion amongst its customers.

Lontex contends that Nike's surveys are not relevant. Nike's use was not fair.  Nike did not use Cool Compression in good faith as something other than a trademark, but instead used it for product names and continued to do so for years after they both knew it was infringing and represented that it would stop.

Nike's infringement cannot be excused as innocent, but was willful.  First, Nike never ran any style names using Cool Compression through its ANAQUA system, which was designed to avoid infringing names.  Second, Nike willfully continued infringing for two years after Lontex demanded it stopped by a

1    letter dated April 8, 2016.

2              Nike's contentions in its own words are as follows:

3              Nike contends that its use of the words "cool" and

4    "compression" did not infringe on Lontex's trademark rights for

5    several independent reasons.

6              First, Nike contends that Lontex did not prove Nike's

7    use of the words "cool" and "compression" to describe two

8    different products was likely to cause confusion because, one,

9    the Nike Pro products were Nike's well-known brand names and

10   trademarks, like the Swoosh, Nike Pro, and the Jordan Jumpman.

11   And Cool Compression does not appear on any Nike Pro products,

12   hang tags, or labels.

13             Second, no customers of either company were confused

14   about which products were Nike's and which were Lontex's.

15             And third, Lontex and Nike do not market their

16   products through the same channels.  Lontex sells its products

17   through personal relationships with physical therapists and

18   athletic trainers, while Nike markets its products to all

19   consumers.

20             And fourth, the Cool Compression trademark is

21   commercially weak as neither Lontex nor Nike used it to

22   identify or sell their products in the marketplace.

23             Second, Nike contends that it used the words "cool"

24   and "compression" in good faith to describe two different

25   features of the Nike Pro products, not as the product's brand

1    name, and thus, whether or not there was any confusion, the law

2    of fair use allowed Nike to use the words "cool" and

3    "compression" for their commonly understood meanings in the

4    English language.

5         Third, Nike contends that Lontex abandoned the Cool

6    Compression mark when it failed to continuously use it in

7    commerce on products between 2008 and 2015 and tried to sell it

8    in 2015.

9         Okay.  So now, ladies and gentlemen of the jury, I'm

10   going to give you a lengthy charge on the evidence followed by

11   a discussion of the expert evidence and credibility of

12   witnesses.  This is a charge, ladies and gentlemen, that judges

13   give in every case, not just a case of this nature.

14        There are two types of evidence that you may use in

15   reaching your verdict.  One type of evidence is called direct

16   evidence.  An example of direct evidence is when a witness

17   testifies about something that witness knows through his own

18   senses, something the witness has seen felt, touched, heard, or

19   did.  If a witness testified that he saw it raining outside and

20   you believed him, that would be direct evidence it was raining.

21   But another form of direct evidence is an exhibit where the

22   fact to be proved is in its existence or current condition.

23        The other type of evidence is circumstantial

24   evidence.  Circumstantial evidence is proof of one or more

25   facts from which you can find another fact.  So going back to

the witness who testified it was raining outside, if instead of

that, someone walked into the courtroom wearing a raincoat

covered with drops of water and carrying a wet umbrella, that

would be circumstantial evidence from which you could conclude

that it was raining.

You have two types.  Direct evidence is the person

who testified that it's raining outside, and the second would

be the individual who walks in with a wet raincoat and a wet

umbrella.  They're both evidence that it's raining outside, but

one is direct and one is circumstantial.

You should consider both types of evidence that are

presented to you.  The law makes no distinction of the weight

to be given to either direct or circumstantial evidence.  You

are to decide how much weight to give to any evidence.

The evidence from which you are to find the facts

consists of the following:  The testimony of the witnesses;

documents and other things received in evidence; any facts that

are stipulated, that is, formally agreed to by the parties; any

facts that are judicially noticed, that is, facts that I say

you must accept as true even without evidence.

The following things are not evidence:  Statements,

arguments, and questions from the lawyers and the parties in

this case; objections by lawyers; any testimony I told you to

disregard; and anything else you may see or hear about this

case outside of the courtroom.

1      You must make your decision based only on the

2 evidence that you see and hear in court.  Do not let rumors,

3 suspicions, or anything else that you may see or hear outside

4 of court influence your decision in any way.

5      You should use your common sense in weighing the

6 evidence.  Consider it in light of your everyday experience

7 with people and events and give it whatever weight you believe

8 it deserves.  If your experience tells you that certain

9 evidence reasonably leads you to a conclusion, you are free to

10 reach that conclusion.

11      There are rules to control what can be received into

12 evidence.  When a lawyer asks a question or offers an exhibit

13 into evidence, and the lawyer on the other sides thinks that it

14 is not permitted by the rules of evidence, that lawyer may

15 object.  This simply means that the lawyer has requested that I

16 make a decision on a particular rule of evidence.

17      You should not be influenced by the fact that an

18 objection is made.  Objections to questions are not evidence.

19 Lawyers have an obligation to their clients to make objections

20 when they believe that evidence being offered is improper under

21 the rules of evidence.  You should not be influenced by the

22 objection or by the ruling on it.  If the objection is

23 sustained, ignore the question.  If it is overruled, treat the

24 answer like any other.

25      If you are instructed that some item of evidence is

1   received for a limited purpose only, you must follow that

2   instruction.  Also, certain testimony or other evidence may be

3   ordered struck from the record, and you will be instructed to

4   disregard that evidence.  Do not consider any testimony or

5   other evidence that gets struck or excluded.  Do not speculate

6   about what a witness might have said or what the exhibit might

7   have shown.

8          In deciding what the facts are, you may have to

9   decide what testimony you believe and what testimony you do not

10  believe.  You are the sole judges of the credibility of

11  witnesses.  Credibility means whether a witness was worthy of

12  belief.  You may believe everything a witness said or only part

13  of it or none of it.

14         In deciding what to believe, you may consider a

15  number of factors, including the following:  First, the

16  opportunity and the ability of the witness to see or hear or

17  know the things the witness testified to.  Second, the quality

18  of the witness's understanding and memory.  Three, the

19  witness's manner while testifying.  Four, whether the witness

20  has an interest in the outcome of the case or any motive, bias,

21  or prejudice.  Five, whether the witness was contradicted by

22  anything the witness said or wrote before trial or by other

23  evidence.  Six, how reasonable the witness's testimony was when

24  considered in light of other evidence that you believed.  And

25  seven, any other factors that wear on believability.

1      We've had certain testimony by what we call expert

2  witnesses.  You should consider each expert opinion received

3  into evidence in this case and give it whatever weight and

4  credit, if any, you think is appropriate given all the other

5  evidence in the case.  In weighing this opinion testimony, you

6  may consider the expert's qualifications, the reason for the

7  opinion, and the reliability of the information supporting the

8  opinion.

9      In deciding whether to accept or rely upon the

10 opinion of an expert, you may consider any bias that person may

11 have, including any bias that may arise from evidence that such

12 person has been or will be paid for reviewing -- from the

13 evidence that such person -- that arise from the evidence.

14     You may also consider whether that such person has

15 been or will be paid for reviewing the case and testifying in

16 this case and whether that person testifies regularly and makes

17 a large portion of his or her income from testifying in court.

18     If you should decide that the opinion of an expert

19 witness was not based upon sufficient education and experience,

20 or if you should conclude that the reasons given in support of

21 the opinion are not sound, or if you feel that it is outweighed

22 by other evidence, you may disregard the opinion entirely.

23     I'm now going to talk about deliberations and come to

24 a conclusion.  When you retire to the jury room to deliberate,

25 you will have a copy of these instructions that I am reciting

1   to you, the verdict slip, your notes, and the exhibits that the

2   Court has admitted into evidence.

3           You should select one member of the jury to serve as

4   your foreperson.  That person will preside over the

5   deliberations and speak for you here in open court.

6           You have two main duties as jurors.  The first one is

7   to decide what the facts are from the evidence that you saw and

8   heard here in court.  In deciding what the facts are -- I have

9   no idea why my phone is ringing.  I thought I turned it off.

10  I'm sorry.

11          You have two main duties as jurors.  The first is to

12  decide what the facts are from the evidence that you saw and

13  heard here in open court.  Deciding what the facts are is your

14  job, not mine, and nothing that I have said or done during this

15  trial was meant to influence your decision about the facts in

16  any way.  However, when judging the facts, you must follow any

17  instructions that I have given you during the trial.

18          Your second duty is to take the law that I am giving

19  to you, apply it to the facts, and decide if, under the

20  appropriate burden of proof, Lontex has established each of its

21  claims against Nike and also whether Nike has established any

22  of its affirmative defenses.

23          It is my job to instruct you about the law, and you

24  are bound by the oath that you took at the beginning of the

25  trial to follow the instructions that I give you, even if you

1   personally disagree with them.  This includes the instructions

2   that I gave you before and during the trial and these

3   instructions.  All the instructions are important, and you

4   should consider them together as a whole.

5          Perform these duties fairly.  Do not let bias or

6   prejudice that you may feel toward one side or the other

7   influence your decision in any way.  As jurors, you have a duty

8   to consult with each other and to deliberate with the intention

9   of reaching a verdict.

10          Each of you must decide the case for yourself, but

11   only after a full and impartial consideration of all of the

12   evidence with your fellow jurors.  Listen to each other

13   carefully.  In the course of your deliberations, you should

14   feel free to re-examine your own views and to change your

15   opinion based upon the evidence, but you should not give up

16   your honest convictions about the evidence just because of the

17   opinions of your fellow jurors, nor should you change your mind

18   just for the purpose of obtaining enough votes for the verdict.

19          If you're in your deliberations, give no more or no

20   less weigh to the views of a fellow juror just because that

21   juror did or did not take notes.  As I mentioned earlier, your

22   notes are not official transcripts.  They are not evidence.

23   They are valuable, if at all, only as a way to refresh your

24   memory.  Your memory is what you should be relying on when

25   deliberating and rendering your verdict in this case.  You

should therefore not use your notes as authority to persuade

fellow jurors of what the evidence was during the trial.  Notes

are not to be used in place of evidence.

When you start deliberating, do not talk to the jury

officer or to me or to anyone else about this case.  It is

important you decide the case based solely on the evidence

presented in this courtroom.

If you have any questions or messages for me, you

must write them down on a piece of paper and the foreperson

will sign them and give them to the deputy clerk, who will give

them to me, and I will respond as soon as I can.  I may have to

talk to the lawyers about what you asked, so I may take some

time to get back to you.

One more thing about messages.  Never write down or

tell anyone how you stand on your verdict.  For example, do not

write down or tell anyone that a certain number of us is voting

one way or another.  Your votes should stay secret until you're

finished.

Your verdict must represent the considered judgment

of each juror.  In order for you to return a verdict, each

juror must agree to the verdict.  Your verdict must be

unanimous.  Your verdict form will be prepared for you, and I

will go over the questions with you.  And when you have reached

a unanimous agreement as to each question, then the foreperson

will date and sign the form and then return to the courtroom.

And the foreperson will give the verdict, and each of you will be asked if you agree with the verdict.

Unless I direct you otherwise, do not reveal your answers until you are discharged.  If you have reached your verdict, you are not required to talk with anyone about the case unless I order you to do so, but you may do so if you want to.

Once again, I want to remind you that nothing about my instructions and nothing about the forma verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility.

One last thing.  As I told you when the trial started, this phase of the trial has been limited to your determining whether Nike is liable to Lontex for damages.  If you decide this liability phase in favor of Lontex, we will proceed promptly with the damages evidence, argument, and your deliberations.

You must render your verdict on the liability phase fairly based on the evidence and law, and you may not discuss or speculate about damages or reach judgment for any reason other than I have explained to you in these instructions.

All right.  I'll now invite counsel to come to sidebar and let me know if they have any suggestions, and then I will go over the verdict form.

```
 1              (Sidebar discussion as follows:)

 2         THE COURT:  Okay.  Counsel for Lontex first.

 3  Mr. Wagner.

 4         MR. WAGNER:  Two items.  One, the instruction that

 5  was given on the registration, 15 USC 1115(b), says it is

 6  conclusive evidence of ownership.  And you also did not give an

 7  instruction on incontestable.  I understood you were going to

 8  give a separate incontestable instruction.

 9         THE COURT:  No, I don't think I said that, but I

10  don't think it's necessary.  I don't think there's any dispute

11  that Lontex has a valid trademark except for the defense of

12  abandonment; is that right, for Nike counsel?

13         MS. EISENSTEIN:  That's correct.

14         THE COURT:  I'm going to say that to the jury.

15  There's no dispute that Lontex has the trademark on Cool

16  Compression.

17         MR. WAGNER:  I believe that would resolve this issue.

18  The second one is on the contributory infringement when you

19  stated the standard.  In general, you did state knew or should

20  have known, but when you stated the specific elements, I very

21  distinctly remember you saying element two was they knew of the

22  infringement as opposed to knew or should have known of the

23  infringement, which is the standard under the law.

24         THE COURT:  Just a minute.

25         MR. WAGNER:  Contributory infringement.
```

1    THE COURT:  Yes, I know.

2    MR. WAGNER:  So in the beginning, you talked about

3  knew or should have known somewhere in this paragraph, but then

4  the jury is going to walk through the 1, 2, 3s.

5    THE COURT:  Well...

6    MR. WAGNER:  The reason to know, right, knowing or

7  having reason to know, I agree with that.  But my concern is

8  that the jury is going to walk back there and walk through

9  these three when they do the check whether it's contributory

10  infringement, and that's going to say knew and that's going to

11  be an inappropriate standard applied.

12    MS. EISENSTEIN:  Your Honor, I think the broader

13  standard is they intentionally induced, which requires

14  knowledge.  I think that they had reason to know willful

15  blindness, not the should have known negligence standard.  I

16  don't agree.

17    THE COURT:  I will say to the jury that the second

18  phrase will be knew or had reason to know.

19    Anything else?

20    MR. WAGNER:  Those were the only two items.

21    THE COURT:  Nike?

22    MS. EISENSTEIN:  Yes, Your Honor.  On the willfulness

23  instruction, we believe that there is case law, Third Circuit,

24  that states that failure to pursue a trademark search does not

25  demonstrate willfulness standing alone.  I believe that the

1   instruction that was given actually suggested the opposite.  So

2   we request a supplemental instruction that failure to do a

3   trademark search standing alone does not demonstrate

4   willfulness, and I believe the instruction stated that that was

5   a consideration.

6           THE COURT:  I think I charged that.  Anything else?

7           MS. EISENSTEIN:  Yes.  On abandonment, we believe and

8   we proposed an instruction that has a date range and that the

9   instruction should say that the abandonment -- the proof is

10  that abandonment occurred before Nike used it.  Which in this

11  case, the evidence, I believe, was Summer of 2015, giving the

12  benefit of the doubt.

13          THE COURT:  I'm not going to the dates.  That's been

14  argued.

15          Next.

16          MS. EISENSTEIN:  The last thing is we think further

17  clarity is required to make clear that fair use applies even if

18  there was a likelihood or actual confusion by the ordinary

19  consumer.  I think that it was stated that the degree of

20  confusion was something that they consider, but I don't know

21  that it was clear that fair use was a defense that applies even

22  if there was potential for consumer confusion.

23          THE COURT:  Well, after I finished charging on

24  confusion, I said to the jury that when it comes to the verdict

25  slip, they don't need to make any specific findings on

1    confusion.  So I think to go further into that would not be

2    proper.

3              Next.

4              MS. EISENSTEIN:  Okay.  Just to put on the record,

5    with respect to the closing, just as a matter of record,

6    because these are things we already objected to, I just wanted

7    to put on the record that in closing on the poster boards, it

8    was shown both PX-33 and PX-20A, which included the handwritten

9    numbers of Mr. Drews, and that we have objected to both of

10   those, but that those were used by Mr. Wagner prominently in

11   his closing.

12             THE COURT:  The record speaks for itself.

13             Anything else?

14             MR. WAGNER:  I would add to the record that there

15   were many boards.  That was one of them.

16             THE COURT:  Okay.  Thank you.  All right.  I'll make

17   the one correction on the willfulness.  No, no.  On

18   contributory.

19             MR. WAGNER:  Your Honor, you were going also going to

20   mention there was no dispute.

21                    (End of sidebar discussion.)

22             THE COURT:  Ladies and gentlemen, I have two

23   modifications to make.

24             One is that the first charge I gave you about

25   trademark, about the ownership of a trademark.  Nike does not

1    dispute that Lontex owns the trademark Cool Compression.

2    There's no dispute about that in this case.

3         The second modification is that when I charged you on

4    contributory infringement, I said initially that it requires

5    that Lontex prove that this other party -- that the defendant

6    has to know or have reason to know that the other person or

7    business, that is, the third party, will use the infringed

8    trademark.  When I gave you the three elements, the second one,

9    I just want to modify it to read that Nike knew or had reason

10   to know that the sale of the Nike products at issue constituted

11   trademark infringement.

12        Okay.  I'm now going to ask Ms. DiSanti to hand out

13   the verdict slip.  Give one to each counsel, and I think I have

14   five left, so you can share with your neighbor.

15        Whoever you elect as foreperson will then be the one

16   to read your answers.  If you can just share with your

17   neighbor.  There are five questions.

18        Whoever you elect as foreperson will be the so-called

19   scrivener when you reach a unanimous agreement on each of these

20   questions.  The foreperson will make the appropriate finding

21   and then sign it.

22        So Question No. 1:  Has Lontex established by a

23   preponderance of the evidence that Nike infringed its Cool

24   Compression trademark?  And your answer is yes or no.

25        Paragraph 2:  Has Lontex proved by a preponderance of

1    the evidence that Nike is contributorily responsible for

2    infringement of the Cool Compression trademarks by other

3    entities?  That's the contributory issue that I charged you on.

4          So when you reach a unanimous agreement on those, if

5    you have answered yes to either one of those, you would then

6    proceed to Question No. 3.

7          If you've answered no to both of those, you have

8    decided the case in favor of Nike, and you should return to the

9    courtroom.

10         So if you go to Question 3:  Has Lontex proved by a

11   preponderance of the evidence that Nike's infringement was

12   willful?  So you answer that yes or no.

13         Four comes to Nike's first affirmative defense of

14   fair use, and you answer that yes or no.

15         Question 5 is Nike's second affirmative defense,

16   abandonment.  You answer that yes or no.

17         If you have found yes for either 4 or 5, you've also

18   decided the case in favor of Nike at that time, and there will

19   be no further proceedings on damages.

20         But if you decide either 1 or 2 for Lontex and you

21   decide 4 and 5 for Lontex, then we will proceed with damages.

22         Okay.  The jury may now retire.

23         Once again, let me just say that you're under no

24   rush.  We will -- as usual, you can deliberate until 4:30 today

25   unless you -- if it comes 4:00 and you're sure you're not going

1   to come to a decision today, you can let Ms. DiSanti know, and

2   you can go home at that time and come back tomorrow morning.

3          But if you have reached a verdict, you believe you

4   will have reached a verdict, we'll be here until 4:30.  But I'm

5   not requiring you to stay past 4:30.

6          The jury may retire.  Thank you.

7                    (The jury exits the courtroom at 12:23

8                    p.m.)

9          THE COURT:  All right.  Thank you.  I think it's

10  reasonable to assume that we're going to be at least an hour

11  before we have anything, but we could have a question probably.

12         Do you all want to be excused for an hour to 1:30?

13  Does that make sense?  You've been working very hard, I know

14  that.  So even if they have a question, we'll just give them a

15  message that we won't have an answer until 1:30.

16         And you've got a lot of people here.  Not everybody

17  has to await the verdict of the jury.  If you want to and your

18  clients and your colleagues want to stay, as far as I'm

19  concerned, all I need is one lawyer here for each side to be

20  here.  But I'm not telling anybody to leave.  I'm just telling

21  you that you don't have to have your full staff and manpower

22  here while we wait for the jury to return a verdict.

23         Anything else?

24         MR. WAGNER:  Nothing for plaintiff's counsel.

25         MS. EISENSTEIN:  Your Honor, I just wanted to make

1    sure that we had a process for deciding -- I know we have kind

2    of what's in and what's out, what went back to the jury, and

3    there were just two small things that I think we have left to

4    resolve on that that have yet to be resolved.  I hope they can

5    be resolved.

6              THE COURT:  I thought the only one was that letter.

7              MS. EISENSTEIN:  That was one I was worried about was

8    going to come up in closing, so I wanted to raise that ahead of

9    time.

10             The other two are, I think, quite small.  I think we

11   have one that, while it's important because one is an exhibit

12   that we don't believe is admitted, which is PX-136, that is in

13   plaintiff's binder, but that we don't have a record that it was

14   admitted into evidence.

15             MR. WAGNER:  What is that?

16             MS. EISENSTEIN:  It's an Amazon listing that was not

17   placed in evidence.

18             MR. SCHWARTZ:  We've had a chance to review that and

19   we removed it from the binder.  We're in agreement.

20             MS. EISENSTEIN:  Thank you, Mr. Schwartz.

21             There's just one other thing, which is on the summary

22   exhibits.  They didn't have a cover or a title before, and on

23   one of them, there was a title that was added that was entitled

24   wholesale catalogs.  And that wasn't in the exhibit, and we

25   also believe it's incorrect, because it includes different

1   types of catalogs.

2          THE COURT:  My recollection is that pretrial, when I

3   went over the summary exhibits, it was after we picked the

4   jury -- well, I forget when it was.  But there were some that

5   did not have a title, and I asked counsel for Lontex to put a

6   title on the document.

7          MR. SCHWARTZ:  And that's exactly what we did, Your

8   Honor.

9          THE COURT:  That title can go out to the jury with

10  the document.

11         MR. SCHWARTZ:  Thank you.

12         THE COURT:  Anything else?

13         MS. EISENSTEIN:  No.  That's it, Your Honor.  Thank

14  you so much.

15         THE COURT:  All right.  Okay.  I'll be here if the

16  jury needs me or they have a verdict.  Thank you very much.

17                    (Recess taken from 12:26 p.m. to 1:03 p.m.)

18         THE COURT:  I've come into the courtroom because we

19  got a question from the jury, if there was a list of all the

20  exhibits that were admitted.  So it turns out that both sides

21  have a list of all the exhibits they had marked, but not all of

22  those were exhibits that -- neither counsel wanted that list to

23  go out to the jury.

24         Ms. DiSanti, the deputy clerk, was keeping a list of

25  all the exhibits that were admitted, and she has shown that

1   list to me and to both counsel.  They had a chance to review

2   it.  And I understand that both counsel are agreeable to

3   Ms. DiSanti taking that list, which is 13 pages, into the jury

4   room and telling them that this is her list that she was

5   keeping during the trial.

6           And also that with regard to the catalogs, the Nike

7   catalogs, they had a huge 3-level bookshelf of catalogs here in

8   the courtroom, but only three of those were sent back to the

9   jury.  And Ms. DiSanti -- those catalogs are listed on several

10  typewritten sheets, 13 pages.  And she circled the three

11  catalogs admitted, and she'll explain to the jury that those

12  are the only three catalogs.

13          Both counsel are agreeable to her taking this list

14  into the jury room and explaining what I just said, and there's

15  no need to bring the jury out to the courtroom; is that

16  correct?

17          MR. SCHWARTZ:  That's correct, Your Honor.

18          MS. DURHAM:  Yes, Your Honor.

19          THE COURT:  Okay.  All right.  So I will agree with

20  that, and Ms. DiSanti will, in a professional way, carry that.

21          Thanks very much.  So the jury has their lunch now,

22  so we'll be in adjournment at least until 1:30, and after that

23  when the jury has a question or reaches a verdict.

24                  (Recess taken from 1:05 p.m. to 3:30 p.m.)

25          THE COURT:  All right.  It's now 3:35.  I have a note

1    from the jury:  Can we get a better definition of fairly and in

2    good faith?  Sent 10/26 at 3:19 p.m.  It's signed by someone.

3    I can't read the signature.

4           Okay.  My initial reaction to this is to tell the

5    jury that these are not legal terms, that these are terms that

6    people use in non-legal situations, and they are going to have

7    to just decide on their own what they mean and whether -- it's

8    clear that the jury is considering Question No. 4 about fair

9    use, and they just have to consider in that context whether

10   Nike has shown fair use by a preponderance of the evidence.

11          Mr. Wagner, do you have any comments?

12          MR. WAGNER:  Two comments.  One, might I suggest that

13   if they're to Number 4 and they've checked yes on willfulness,

14   you can't have willful infringement and have good faith.

15          THE COURT:  I'm not going to inquire what they've

16   done.

17          MR. WAGNER:  I understand that, Your Honor.  So my

18   only point there would be that one clarification you could

19   provide is:  If you found that an infringement is willful, you

20   should check no on the fair use, Number 4.

21          THE COURT:  What's Nike's suggestion?

22          MS. EISENSTEIN:  Your Honor, I have two suggestions.

23          One is the instruction that I believe was given on

24   fair use.  There's an Eleventh Circuit model instruction that I

25   think provides a very simple explanation for fairly and in good

1    faith.  It defines fairly and good faith.  That is, name of

2    defendant, here Nike, did not intend to trade on the goodwill

3    of Lontex by creating confusion as to the source of Nike's

4    goods.  That's the proposed instruction there.

5              And then also, you know, similarly in the Third

6    Circuit, in Century 21 Real Estate Corp. v. Lending Tree, and I

7    have the case here for Your Honor at 425 F.3d 211, they

8    indicate that under the fairness test, a defendant must show,

9    first, that the use of the plaintiff's mark is necessary to

10   describe both the plaintiff's mark and is necessary to describe

11   the plaintiff's product or service and the defendant's product

12   or service; that the defendant uses only so much of the

13   plaintiff's mark as necessary to describe it; and three, that

14   the defendant's conduct or language reflect the true and

15   accurate relationship between the defendants and product

16   services.

17             That's under their view of fairness in terms of the

18   nominative use of the mark and whether it's fair.  But I think

19   that that Eleventh Circuit version is a simple and accurate

20   description of the sort of specific piece of the fairly and

21   good faith test.

22             THE COURT:  It uses the word "goodwill."  We haven't

23   had any testimony here about goodwill.  That's the problem I

24   have.

25             And what's your reaction to Mr. Wagner's suggestion,

that I tell the jury that if they found willful in Question 3,

they can't find fair use under Question 4?

MS. EISENSTEIN:  I mean, we would object to that.  I

mean, I think that -- I don't think there's been any

instruction so far that those two things are necessarily

incompatible with one another.  I think they're defined

differently.

THE COURT:  All right.  Well, I'm going to -- I

appreciate both of your suggestions, but I'm not going to

follow either one.  I'm going to have the jury come in and just

tell them that -- I don't think this is the time to put in a

more detailed definition that was not requested by either

party.  I'm not aware of any Third Circuit decision where the

fair use defense was being put in play and the Court issued a

holding as to how to define those terms.  And I'm not familiar

with the Century 21.

Let me just check that while we're here.  That's 425

F.3d 211?

MR. WAGNER:  Your Honor, nominative fair use I don't

think is the same thing as classic fair use where it's a

comparative advertisement.  I may be getting that wrong in my

sleep deprivation, but that's the rule I remember.  Nominative

fair use is not what's at issue here.  That would be like when

you say, if you love Coca-Cola, you'll love our product.

THE COURT:  Is that what was at issue in that case?

 1          MS. EISENSTEIN:  Sorry, Your Honor.  I was -- you're

 2   right.  I was reading from the nominative fair use.  And I can

 3   just read to you from that classic fair use definition, and

 4   this is very simple.  This is in the --

 5          THE COURT:  Is this from a different case?

 6          MS. EISENSTEIN:  Same case, Your Honor.  Sorry.

 7          I was reading, and I apologize, from the nominative

 8   fair use section.  In the classic fair use -- this is a quote

 9   from the Lending Tree case -- by contrast, classic fair use

10   occurs where the defendant uses the plaintiff's mark to

11   describe the defendant's own product, period.

12          Which I think is, you know, a sum-up of what is

13   encompassed by good faith, and "own" is italicized.  I can hand

14   that up, Your Honor, if that's helpful.

15          MR. WAGNER:  Your Honor, that only addresses the

16   descriptiveness feature, which is the one element there was no

17   question on.

18          MS. EISENSTEIN:  May I approach, Your Honor?

19          THE COURT:  Yes.

20          MR. WAGNER:  Your Honor, that's the third element.

21   Use the mark only to describe the defendant's goods.  That's

22   not the one they had a question on.  They had a question on

23   Number 2, use the mark fairly and in good faith.  This does not

24   at all describe the element of fairly and in good faith.

25          THE COURT:  I'm looking at the case.

1        Under Roman numeral four, fair use, the Court says as

2   follows:  Likelihood of confusion is the sole issue, but the

3   fair use -- that's in a usual infringement case, but the fair

4   use defense, by reason of the circumstances giving rise to its

5   applicability, the defendant is not purporting to be selling

6   goods or services that the plaintiff has trademarked, but

7   rather is using plaintiff's mark in order to refer to

8   defendant's own goods or to the goods of the trademark owner in

9   a way that might confuse the public as to a relationship

10  between the two.

11       And then they cite a Supreme Court case, 543 U.S. 111

12  from 2004, which, according to the Third Circuit, held that the

13  plaintiff has the exclusive burden to demonstrate the

14  likelihood of confusion and that the defendant's burden is only

15  to show the affirmative defense of fair use.  The Court

16  concluded that consumer confusion and fair use are not mutually

17  exclusive.

18       MR. WAGNER:  Your Honor, if I might --

19       THE COURT:  Let me just finish reading this one

20  second.  Then they cite the Ninth Circuit, which is the

21  nominative fair use discussion.  Then they go on further about

22  that.  Then they say this issue is one of first impression in

23  our court, which is still about nominative fair use defense.

24       Then they go to another Ninth Circuit case, and they

25  keep talking about nominative fair use.  Then they say:  While

1   we agree with the Ninth Circuit Court of Appeals that a

2   distinct analysis is needed for nominative fair use cases, we

3   do not accept the legal basis or advisability of supplanting

4   the likelihood of confusion test entirely.  And they're still

5   talking about nominative fair use.

6        Then they go back to say:  Likelihood of confusion is

7   an essential indicator of whether or not trademark infringement

8   has occurred.  I've already charged that.  They say the

9   plaintiff still has the burden of proving that.

10        And then they return again to the idea of nominative

11   fair use, and I think that is what the remainder appears to

12   address.  And then they have another heading, proper test for

13   the likelihood of confusion, but the jury hasn't asked about

14   that.  They talk about intent, and then there's a heading down

15   there, the affirmative defense of nominative fair use, which is

16   really not the type of fair use that we have alleged in this

17   case by Nike.  And then they reject the Ninth Circuit test, is

18   the way I read this.

19        I don't think this sets a definitive standard for the

20   type of fair use alleged in this case.

21        Mr. Wagner, what did you want to say?

22        MR. WAGNER:  Your Honor, I agree with you that in the

23   case, adopting a standard for nominative, not classic fair use,

24   which is what we're concerned with here.  And I also disagree

25   with the Eleventh Circuit jury instruction, which is completely

contrary to law that we have had on the issues of good faith
and willfulness in this case.

          THE COURT:  Ms. Eisenstein?

          MS. EISENSTEIN:  So, Your Honor, I agree with you
that the 21st Century Real Estate Corporation case is one that
is directed at establishing whether there is a new test for
nominative fair use, but it is doing so by contrast with the
classic fair use doctrine, which is well-established.  And, you
know, citing the Ninth Circuit and the New Kids on the Block
standard for what classic fair use is.

          And I think that the, you know, the kind of simple
encapsulation of classic fair use is where the defendant uses
the plaintiff's mark descriptively to describe the defendant's
own products, and I think that that is a part of the good
faith, which is that it is doing it not to confuse consumers.
It's doing it not to use the plaintiff's trademark, but rather
in the descriptive sense in the plain English language.  And
that simple sentence I think encapsulates both concepts and
encapsulates the good faith component of it as well.

          So I think that's why, later on in the opinion, it
indicates that instead, once the plaintiff proves likelihood of
confusion, defendant only had to show that the defendant's use,
even if confusing, was fair.  And so this idea of good faith
isn't really -- you know, that there's some other good faith
requirement up and above that is not -- I don't think it is

1    encompassed by what the Third Circuit has held to be the case.

2    And it's holding this with respect to classic fair use in order

3    to understand whether a different test is required for

4    nominative fair use.

5            So I think it's fair to reiterate that standard.  I

6    think it's in line what you are contemplating to say, that the

7    idea of fair and good faith are terms that are well-understood,

8    but I also think that noting the descriptive quality of the

9    words as the Third Circuit does and just quoting from the Third

10   Circuit opinion is a safe and fair and accurate thing to do.

11           THE COURT:  All right.  I just want to know -- I'm

12   not going to make a conclusion here that the jury is ready to

13   make a decision on Question No. 4, because they may have gone

14   first to Question 4 and are not heeding my suggestion that they

15   address questions one or two first.  I have no idea what

16   they're necessarily talking about.  I just want to say that.

17           All right.  Bring the jury in, please.

18           I'm going to tell the jury that, if they want to,

19   they can go to 5:00 today, if they believe they could reach a

20   verdict, but they can quit at 4:00 if they'd rather come back

21   tomorrow.

22           THE DEPUTY CLERK:  All rise.

23                   (The jury enters the courtroom at 3:48

24                   p.m.)

25           THE COURT:  May I ask who has been elected as the

1    foreperson?  Please rise.  Juror No. 3.

2              All right.  We have a question here:  Can we get a

3    better definition of fairly and in good faith?

4              Have a seat.

5              Is that the question of the jury?

6              THE FOREPERSON:  Yes.

7              THE COURT:  Ladies and gentlemen, I know it's been a

8    half hour since you sent this out, and we have been discussing

9    this question with counsel, which I'm obliged to do.

10             There is no one set definition of good faith and

11   fairly in the context of a trademark case, as this one is.  So

12   I answer your question by saying that these are not legal

13   terms.  Fair and in good faith are everyday terms.  And as I

14   said in my instructions, you are allowed to use your common

15   sense, obviously, in your deliberations in your coming to a

16   verdict.  So I can't give you a better -- I can't give you a

17   strict legal definition of these terms, okay, because they

18   don't mean anything more than you would find in an ordinary

19   dictionary.  Good faith, some people say it's like being

20   reasonable.  Fair means something that's different than unfair.

21             Now, you've heard a lot of testimony here in this

22   case about what both parties did, and you're going to have to

23   reach your own conclusion.  This appears to be that you're

24   discussing Question No. 4, whether Nike proved by a

25   preponderance of the evidence that its use of the term "Cool

 1   Compression" was fair use.  So you're just going to have to

 2   analyze the evidence you've heard in terms of your

 3   understanding of what good faith and fair means in the context

 4   of this case as brought out by the testimony of the various

 5   witnesses that you heard.

 6            Now, I can't do any better than that.  I'm sorry.

 7   There's nothing in the law that says explicitly what those

 8   terms mean in this kind of case.

 9            So it's now ten of 4:00.  Counsel will remain and

10   we're all available.  If the jury wants to stay until 5:00, if

11   you think you can reach a verdict today, you're welcome to do

12   so.  We'll wait.

13            On the other hand, if you doubt that and you'd rather

14   go home at 4:00, you're welcome to do that as well.  If you

15   decide the latter, I remind you again, even more so, that

16   because you're in deliberations, it's very important you don't

17   discuss this case with anyone at home or read anything or look

18   anything up, because you must limit your verdict to what took

19   place in this courtroom.

20            Now, if you have any further questions, you're

21   welcome to write them out, and we'll bring you in more promptly

22   than I did the last time.

23            Do you want to confer among yourselves while you're

24   in the jury box if you have any other questions right now or do

25   you want to go back to the jury room?

1              Any consensus here?  No other questions?  All right.

2              The jury will retire and continue deliberations.

3    Thank you.

4                        (The jury exits the courtroom at 3:51 p.m.)

5              THE COURT:  All right.  Mr. Wagner, any comments on

6    what I told the jury?

7              MR. WAGNER:  No, Your Honor.

8              THE COURT:  Counsel for Nike, Ms. Eisenstein?

9              MS. EISENSTEIN:  No, Your Honor.

10             THE COURT:  All right.  Well, you're going to have

11   the stay in the courtroom or you can go to your little

12   respective conference rooms.  I'll be in chambers, and I'll

13   come in promptly if we have any more questions or a verdict.

14             So if the jury doesn't come, I'll ask Ms. DiSanti to

15   let us know if they decide to go home before 4:00.  Well,

16   she'll come out and tell us.  Okay.  We're in recess.

17             Thank you.

18                        (Recess taken at 3:52 p.m.)

19                        (Proceedings adjourned at 4:00 p.m.)

20

21                        CERTIFICATE

22   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
23

24   *Shannan Gagliardi* 10/26/21

     Shannan Gagliardi, RDR, CRR
25

MR. HYNES: **[4]** 33/4 33/6 33/10 33/12
MR. SCHWARTZ: **[7]** 2/23 3/17 3/22 106/18 107/7 107/11 108/17
MR. WAGNER: **[24]** 3/25 4/10 6/3 32/6 33/1 58/5 99/4 99/17 99/25 100/2 100/6 100/20 102/14 102/19 105/24 106/15 109/12 109/17 111/19 112/15 112/20 113/18 114/22 119/7
MS. DURHAM: **[1]** 108/18
MS. EISENSTEIN: **[21]** 2/10 3/11 3/16 99/13 100/12 100/22 101/7 101/16 102/4 105/25 106/7 106/16 106/20 107/13 109/22 111/3 112/1 112/6 112/18 115/4 119/9
THE COURT: **[58]** 2/3 3/6 3/14 3/20 3/23 4/2 4/12 4/16 32/5 32/21 33/3 33/5 33/7 33/11 57/23 69/25 70/14 70/19 70/22 99/2 99/9 99/14 99/24 100/17 100/24 101/1 101/6 101/13 101/23 102/12 102/16 102/22 105/9 106/6 107/2 107/9 107/12 107/15 107/18 108/19 108/25 109/15 109/21 110/22 111/8 111/25 112/5 112/19 112/25 113/19 115/3 116/11 116/25 117/7 119/5 119/8 119/10
THE DEPUTY CLERK: **[3]** 1/24 4/13 116/22
THE FOREPERSON: **[1]** 117/6

## $

**$26 [1]** 12/22

## 1

**1 percent [3]** 19/3 19/4 19/12
**1,121 [1]** 52/11
**1,500 [2]** 29/24 59/17
**1.2 million [1]** 17/4
**10 [1]** 55/13
**10-factor [1]** 42/10
**10-minute [1]** 70/5
**10/26 [1]** 109/2
**10020 [1]** 1/18
**107 [1]** 34/16
**10:13 [1]** 33/11
**111 [1]** 113/11
**1115 [1]** 99/5
**11682 [1]** 1/13
**11:14 [1]** 70/12
**11:15 [1]** 70/17
**11:30 [1]** 70/17
**11:31 [1]** 70/20
**1251 [1]** 1/18
**12:23 [1]** 105/7
**12:26 [1]** 107/17
**13 [2]** 108/3 108/10
**136 [1]** 106/12
**15 [3]** 22/3 51/19 99/5
**1671 [1]** 52/9
**18 [2]** 39/22 47/2
**18,763 [1]** 52/8
**18-CV-5623 [1]** 1/3
**19,000 [1]** 8/25
**19106 [1]** 1/23
**1989 [1]** 6/10
**1:03 [1]** 107/17
**1:05 [1]** 108/24
**1:30 [3]** 105/12 105/15 108/22

## 2

**2 inches [1]** 40/15
**2-inch [1]** 26/22
**20 [6]** 4/3 5/21 13/25 57/24 58/1 64/9
**20 percent [1]** 17/4
**200 [1]** 18/11
**200 percent [1]** 12/5
**2000s [1]** 9/24
**2001 [1]** 64/5
**2004 [1]** 113/12
**2005 [2]** 10/23 10/25
**2006 [2]** 8/8 51/14
**2007 [7]** 7/1 8/10 8/18 9/11 10/8 10/11 39/5
**2008 [4]** 8/25 10/9 33/22 90/7
**2010 [1]** 10/16
**2011 [2]** 10/11 52/8
**2012 [1]** 10/7
**2014 [5]** 20/22 28/6 39/22 51/23 68/25
**2015 [11]** 16/22 22/22 34/8 39/5 39/12 45/21 45/22 52/8 90/7 90/8 101/11
**2016 [10]** 2/6 11/23 27/18 29/16 43/8 43/10 52/11 52/19 57/15 89/1
**2017 [5]** 16/23 22/22 32/1 32/10 34/8
**2018 [5]** 29/19 29/21 30/4 30/7 45/22
**2020 [1]** 68/23
**2021 [1]** 1/6
**20A [1]** 102/8
**21 [2]** 110/6 111/16
**211 [2]** 110/7 111/18
**21st [1]** 115/5
**22,000 [1]** 52/7
**22,002 [1]** 52/6
**25 percent [1]** 16/18
**25,000 [3]** 9/16 13/5 59/4
**26 [2]** 1/6 109/2
**2609 [1]** 1/22
**267 [1]** 1/23
**27 [2]** 31/22 31/25
**28 [1]** 30/4
**292 [1]** 52/23
**298 [2]** 2/5 3/21
**299-7254 [1]** 1/23
**29th [1]** 53/11

## 3

**3-level [1]** 108/7
**3.5 million [1]** 32/7
**3.8 million [1]** 69/10
**30 percent [1]** 37/18
**32 [1]** 88/4
**33 [1]** 102/8
**35 [2]** 43/17 70/7
**360 degrees [1]** 67/16
**3:19 p.m [1]** 109/2
**3:30 [1]** 108/24
**3:35 [1]** 108/25
**3:48 [1]** 116/23
**3:51 [1]** 119/4
**3:52 [1]** 119/18
**3rd [1]** 30/9
**3s [1]** 100/4

## 4

**4.6 million [5]** 19/9 19/10 59/17 59/20 69/3
**40 [3]** 5/22 52/12 52/13
**400 [2]** 1/13 13/24
**425 [2]** 110/7 111/17
**45 [1]** 70/7

## 5

**5's [1]** 48/3
**5-day [1]** 30/13
**50 percent [1]** 16/21
**543 [1]** 113/11
**5623 [1]** 1/3
**5:00 [2]** 116/19 118/10

## 6

**6 inches [1]** 47/19
**6-inch [1]** 68/16
**6.5 million [1]** 9/16
**601 [1]** 1/22

## 7

**70 percent [1]** 37/17
**7254 [1]** 1/23
**7th [1]** 48/12

## 8

**83 [1]** 31/25

## 9

**92130 [1]** 1/14
**99 percent [1]** 71/6
**9:21 [2]** 1/7 2/2
**9:25 [1]** 4/14

## A

**a.m [7]** 1/7 2/2 4/15 70/13 70/17 70/18 70/21
**abandon [2]** 12/7 87/8
**abandoned [8]** 7/9 8/24 13/10 13/14 57/14 60/13 86/25 90/5
**abandonment [21]** 13/7 51/20 51/21 51/22 53/20 53/24 53/24 71/15 75/5 75/7 86/22 86/23 87/6 87/8 87/10 87/14 99/12 101/7 101/9 101/10 104/16
**abbreviated [1]** 76/7
**ability [1]** 93/16
**able [4]** 16/18 53/13 42/6 44/24
**about [121]**
**above [2]** 115/25 119/22
**above-entitled [1]** 119/22
**absolutely [6]** 19/15 25/15 46/3 51/13 65/11 68/8
**accept [6]** 5/12 38/1 72/11 91/20 94/9 114/3
**accidentally [1]** 58/23
**according [1]** 113/12
**account [2]** 56/14 80/12
**accounting [1]** 30/19
**accurate [4]** 5/7 110/15 110/19 116/10
**accurately [1]** 25/16
**acknowledged [2]** 33/21 35/1
**acquired [1]** 79/3
**across [9]** 6/13 15/18 23/1 24/6 59/6 64/8 64/13 80/24 88/5
**act [1]** 46/19
**acted [3]** 13/19 83/2 83/22
**action [1]** 52/22
**actions [5]** 58/18 69/14 69/15 83/20 84/10
**acts [2]** 87/7 87/9
**actual [18]** 26/1 30/22 42/14 44/4 44/8 45/18 78/2 78/3 79/15 79/24 79/25 80/1 80/3 80/5 80/9 87/7 87/8 101/18
**actually [14]** 2/23 8/24 12/16 21/14 24/8

**A**

**actually... [9]** 26/12 27/15 42/9 42/25 48/14 49/4 52/6 62/23 101/1
**ad [3]** 64/1 67/5 67/6
**add [5]** 18/23 19/4 50/24 83/12 102/14
**added [1]** 106/23
**addition [1]** 82/19
**address [5]** 32/16 35/16 58/10 114/12 116/15
**addressed [1]** 2/6
**addresses [1]** 112/15
**adequate [1]** 84/17
**Adidas [1]** 43/25
**adjacent [1]** 23/3
**adjective [1]** 22/24
**adjourned [1]** 119/19
**adjournment [1]** 108/22
**admission [1]** 23/4
**admit [9]** 3/20 13/24 20/14 22/16 23/23 28/24 64/14 68/10 68/12
**admitted [20]** 2/14 3/3 3/21 3/21 23/8 23/8 23/12 23/19 24/3 28/25 34/12 51/15 59/12 73/4 95/2 106/12 106/14 107/20 107/25 108/11
**adopted [4]** 8/23 28/7 68/25 84/11
**adopting [3]** 79/17 83/2 114/23
**advantage [2]** 46/3 54/7
**advertised [2]** 17/13 80/20
**advertisement [1]** 111/21
**advertisements [2]** 80/25 88/12
**advertisers [1]** 63/23
**advertising [5]** 48/15 80/15 80/21 82/19 82/22
**advisability [1]** 114/3
**advises [1]** 2/4
**advocates [1]** 5/6
**affiliated [1]** 63/13
**affiliation [7]** 26/19 62/20 62/24 62/24 63/1 76/20 78/9
**affirmative [19]** 71/14 74/19 74/20 74/22 74/23 74/25 75/4 75/6 86/4 86/5 86/12 86/21 86/22 87/6 95/22 104/13 104/15 113/15 114/15
**affirmatively [2]** 12/20 31/13
**after [31]** 3/1 5/11 5/21 9/10 10/22 10/25 11/24 13/4 14/1 15/13 22/7 22/19 24/25 25/5 31/2 32/3 53/4 55/15 68/13 69/11 71/4 74/11 75/1 84/4 87/25 88/19 88/25 96/11 101/23 107/3 108/22
**again [19]** 10/4 15/17 21/9 21/10 21/12 21/25 22/2 22/11 26/3 32/16 34/2 62/12 66/5 66/17 68/6 98/8 104/23 114/10 118/15
**against [9]** 6/7 46/7 57/13 64/18 65/7 69/21 79/15 82/14 95/21
**agent [2]** 12/10 12/14
**ago [2]** 25/2 51/9
**agree [9]** 73/1 97/21 98/2 100/7 100/16 108/19 114/1 114/22 115/4
**agreeable [2]** 108/2 108/13
**agreed [1]** 91/18
**agreement [4]** 97/24 103/19 104/4 106/19
**agrees [1]** 50/21
**ahead [1]** 106/8
**air [1]** 68/1
**algorithm [2]** 64/18 64/20
**all [156]**
**allegations [2]** 54/1 54/9
**alleged [9]** 54/2 77/16 77/18 81/23 81/24

**allowed [5]** 4/23 5/5 5/10 90/2 117/14
**almost [1]** 23/5
**alone [4]** 21/18 72/15 100/25 101/3
**along [3]** 5/17 51/5 56/18
**already [12]** 9/5 9/12 47/14 47/18 50/9 62/16 62/18 70/8 80/17 81/19 102/6 114/8
**also [34]** 5/10 5/14 7/7 7/21 16/13 17/23 18/22 19/23 23/8 23/16 27/22 32/10 35/16 38/8 42/22 49/2 63/15 64/13 66/15 71/14 84/9 86/19 86/22 93/2 94/14 95/21 99/6 102/19 104/17 106/25 108/6 110/5 114/24 116/8
**altruistic [1]** 46/12
**always [3]** 58/7 65/12 78/13
**Amazon [4]** 18/17 18/18 18/19 106/16
**Americas [1]** 1/18
**among [4]** 7/19 76/20 77/1 118/23
**amongst [3]** 11/15 13/5 88/13
**amount [1]** 66/6
**amounts [1]** 58/13
**ampersand [1]** 13/20
**analysis [2]** 77/23 114/2
**analyze [1]** 118/2
**analyzed [3]** 82/3 82/11 82/12
**ANAQUA [12]** 20/20 20/21 22/14 22/15 28/9 28/12 28/16 28/25 29/5 63/19 65/25 88/23
**announced [1]** 29/17
**another [18]** 42/23 45/20 48/22 53/17 56/9 59/15 68/1 76/2 79/19 85/8 85/9 85/11 90/21 90/25 97/17 111/6 113/24 114/12
**answer [12]** 21/12 36/9 37/25 73/14 83/21 92/24 103/24 104/12 104/14 104/16 105/15 117/12
**answered [3]** 87/10 104/5 104/7
**answers [2]** 98/4 103/16
**any [74]** 5/25 12/14 12/18 18/23 18/23 23/1 23/14 24/1 32/22 37/6 39/1 41/2 41/21 42/7 43/21 48/20 51/25 53/16 56/17 57/24 58/3 60/11 60/12 60/15 60/17 65/4 71/3 72/5 72/9 72/14 72/18 72/25 73/14 74/14 78/3 82/19 83/9 83/14 86/2 88/22 89/11 90/1 91/14 91/17 91/18 91/23 92/4 92/24 93/4 93/20 93/25 94/4 94/10 94/11 95/16 95/16 95/21 96/7 97/8 98/10 98/21 98/24 99/10 101/25 109/11 110/23 111/4 111/13 118/6 118/20 118/24 119/1 119/5 119/13
**anybody [8]** 32/24 38/9 42/22 47/9 50/2 52/1 56/23 105/20
**anymore [2]** 13/10 32/8
**anyone [9]** 6/15 31/9 31/10 58/21 97/5 97/15 99/8 98/5 118/17
**anyone's [1]** 66/2
**anything [21]** 28/25 31/15 48/5 50/18 50/24 53/24 63/18 70/24 73/16 91/24 92/3 93/22 100/19 101/6 102/13 105/11 105/23 107/12 117/18 118/17 118/18
**anyway [1]** 56/13
**anywhere [2]** 59/8 64/11
**apart [5]** 44/25 46/20 47/12 47/16 47/18
**apologize [3]** 30/12 33/2 112/7
**apologized [1]** 30/13
**apologizing [2]** 47/7 47/8
**apology [2]** 30/15 47/10
**apparel [2]** 21/1 53/7
**apparently [1]** 11/18
**Appeals [1]** 114/1

**appearance [1]** 78/12
**APPEARANCES [1]** 1/11
**appeared [1]** 34/5
**appears [4]** 47/19 50/1 114/11 117/23
**applicability [1]** 113/5
**applicable [1]** 71/23
**applied [1]** 100/11
**applies [4]** 75/6 75/17 101/17 101/21
**apply [16]** 6/9 26/2 28/23 35/19 45/3 50/4 50/5 61/13 62/1 62/5 62/6 64/20 68/6 72/12 75/18 95/19
**appreciable [4]** 7/19 25/25 76/24 79/14
**appreciate [5]** 20/4 20/6 20/9 20/10 111/9
**approach [2]** 112/18
**appropriate [3]** 94/4 95/20 103/20
**appropriated [1]** 84/6
**appropriating [1]** 83/25
**approval [1]** 76/22
**approximating [1]** 80/7
**approximations [1]** 80/10
**April [5]** 2/6 27/18 29/16 53/11 89/1
**April 2016 [1]** 29/16
**April 29th [1]** 53/11
**April 8 [3]** 2/6 27/18 89/1
**arbitrary [1]** 61/25
**arches [1]** 50/19
**architecture [1]** 20/16
**are [127]**
**area [1]** 63/19
**aren't [5]** 24/8 34/6 56/4 58/14 64/17
**argue [1]** 5/19
**argued [2]** 43/12 101/14
**argues [1]** 4/23
**argument [7]** 4/8 5/24 42/3 48/10 50/13 68/9 98/17
**arguments [10]** 4/7 4/19 4/20 5/12 28/13 70/1 71/22 73/7 87/24 91/22
**arise [2]** 94/11 94/13
**arising [1]** 79/13
**Armour [1]** 37/21
**arms [1]** 66/12
**around [8]** 8/9 8/10 27/1 37/20 41/14 52/19 66/25 67/1
**arrogance [1]** 68/11
**as [126]**
**ASAP [1]** 53/18
**aside [1]** 69/23
**ask [22]** 4/22 6/6 6/9 12/12 12/18 25/14 28/4 28/6 30/1 32/17 33/18 38/21 41/10 57/9 58/22 62/1 64/11 69/20 71/2 103/12 116/25 119/14
**asked [38]** 5/21 6/5 9/4 9/22 11/1 13/24 18/12 18/13 21/2 21/9 21/12 21/23 21/24 22/1 22/2 22/11 22/14 22/20 22/25 23/12 26/2 28/10 29/2 29/12 29/13 29/22 31/6 32/19 36/7 46/20 50/4 52/1 56/4 63/24 97/12 98/2 107/5 114/13
**asking [2]** 57/1 57/2
**asks [1]** 92/12
**assembled [1]** 54/14
**assistant [3]** 27/8 28/15 54/14
**assisted [1]** 54/20
**associate [2]** 31/12 50/18
**associates [1]** 41/10
**association [2]** 24/20 76/21
**associations [1]** 6/22
**assume [1]** 105/10
**athlete [1]** 10/23

## A

**athletes [3]** 66/23 67/1 67/11
**athletic [15]** 6/22 11/16 24/17 27/5 27/5 27/8 27/9 27/9 41/1 45/12 46/14 46/16 49/8 55/8 89/18
**attempt [1]** 52/13
**attention [6]** 4/22 5/1 5/16 20/7 79/7 79/8
**attentive [2]** 4/21 57/20
**attentiveness [1]** 20/7
**attire [1]** 39/14
**attorney [2]** 2/7
**attorneys [2]** 71/22 87/23
**audiences [1]** 66/16
**August [2]** 39/22 52/8
**August 18 [1]** 39/22
**August 2015 [1]** 52/8
**authority [1]** 97/1
**authorized [3]** 18/9 18/18 26/15
**available [1]** 118/10
**Avenue [1]** 1/18
**avoid [1]** 88/24
**avoided [2]** 20/25 69/24
**await [1]** 105/17
**aware [2]** 39/9 111/13
**awareness [1]** 82/21
**away [6]** 12/4 33/21 35/16 41/7 60/24 69/9

## B

**back [29]** 6/10 9/24 12/25 13/9 16/5 16/7 19/6 19/18 22/10 24/14 27/18 30/10 31/19 35/8 49/9 54/9 57/20 63/2 64/5 70/6 90/25 97/13 100/8 105/2 106/2 108/8 114/6 116/20 118/25
**badly [5]** 33/13 33/16 33/17 39/8 54/6
**bag [1]** 8/9
**bags [2]** 8/6 37/20
**Ball [9]** 10/24 26/22 26/22 27/12 36/12 42/17 43/19 55/14 55/21
**Ball's [1]** 43/14
**Baltimore [1]** 36/1
**base [3]** 33/23 39/13 39/15
**baseball [3]** 11/12 32/10 49/4
**based [7]** 37/18 85/15 92/1 94/19 96/15 97/6 98/20
**basically [2]** 37/4 71/11
**basis [5]** 29/10 29/11 29/12 73/22 114/3
**basketball [2]** 24/15 24/16
**bastion [2]** 13/16 24/7
**bathroom [1]** 5/23
**BAYLSON [1]** 1/9
**be [126]**
**became [2]** 7/25 10/23
**because [83]** 2/19 4/2 5/16 6/14 10/3 10/18 11/6 11/23 13/10 13/12 14/12 14/25 15/6 15/9 16/17 17/12 17/21 19/13 19/19 20/4 23/15 24/15 24/21 25/4 26/10 26/17 26/20 27/3 27/5 31/15 31/25 34/20 35/9 35/25 38/6 41/5 42/8 43/3 43/17 43/20 44/9 45/1 46/21 48/12 50/7 50/17 50/23 51/3 51/19 51/24 53/21 57/15 58/10 60/24 61/24 63/20 64/15 64/17 65/5 65/13 67/2 67/9 68/4 68/17 68/25 69/4 69/6 70/3 80/2 81/9 86/7 89/8 96/16 96/20 102/6 106/11 106/25 107/18 116/13 117/17 118/16 118/18
**Bechtel [2]** 52/24 53/14
**become [1]** 80/7
**becomes [1]** 23/9
**becoming [1]** 23/5

22/3 22/15 28/8 28/9 29/21 29/24 30/20 35/23 38/19 41/11 43/17 52/15 64/16 68/25 69/24 71/19 72/1 73/4 74/13 74/14 94/12 94/15 98/14 101/13 105/13 111/4 116/25 117/7 117/8
**before [33]** 1/9 7/25 10/7 12/21 20/1 25/9 28/2 28/19 30/21 41/4 43/10 53/21 56/1 56/2 56/3 57/15 58/1 58/11 58/13 58/17 58/24 60/8 61/3 62/10 64/5 68/11 68/20 93/22 96/2 101/10 105/11 106/22 119/15
**began [1]** 11/1
**begin [2]** 4/19 75/20
**beginning [10]** 7/5 11/19 33/20 34/12 35/21 40/6 41/12 53/8 95/24 100/2
**behalf [1]** 20/6
**behaving [5]** 33/13 33/16 33/17 39/8 54/6
**behavior [1]** 84/4
**behind [3]** 16/11 60/3 60/3
**being [25]** 3/2 3/8 9/25 10/13 10/19 12/17 13/6 20/8 24/16 25/3 25/25 31/13 36/7 38/15 41/2 53/17 53/21 57/20 70/16 72/21 73/10 84/4 92/20 111/14 117/19
**belief [1]** 93/12
**believability [1]** 93/25
**believe [25]** 2/17 2/24 3/7 9/3 26/15 55/25 70/7 73/10 92/7 92/20 93/9 93/10 93/12 93/14 99/17 100/23 100/25 101/4 101/7 101/11 105/3 106/12 106/25 109/23 116/19
**believed [2]** 90/20 93/24
**belonged [1]** 24/22
**belongs [1]** 7/1
**BEN [1]** 1/12
**ben.wagner [1]** 1/14
**benefit [4]** 40/12 43/10 46/9 101/12
**best [3]** 5/6 5/7 46/12
**better [7]** 37/21 51/20 51/22 109/1 117/3 117/16 118/6
**between [13]** 34/8 38/19 39/4 45/24 47/19 52/8 70/7 76/21 78/5 81/6 90/7 110/15 113/10
**beyond [1]** 75/15
**bias [5]** 72/17 93/20 94/10 94/11 96/5
**big [27]** 15/2 33/12 33/13 33/17 33/17 34/23 36/12 50/19 51/1 53/7 54/4 54/6 57/17 58/17 60/20 61/18 61/21 63/4 63/21 65/4 65/5 65/17 66/10 69/16 69/18 69/18 71/8
**bigger [1]** 21/18
**biggest [2]** 30/6 64/13
**Billboards [1]** 40/25
**binder [2]** 106/13 106/19
**binders [2]** 16/11 16/12
**blatant [1]** 16/3
**blindness [3]** 28/9 65/25 100/15
**Block [1]** 115/9
**board [4]** 19/7 24/6 24/9 36/12
**boards [3]** 9/12 102/7 102/15
**books [1]** 37/15
**bookshelf [1]** 108/7
**boring [1]** 10/3 20/5
**both [25]** 4/23 15/22 22/23 25/7 45/20 70/15 74/8 75/16 78/25 80/24 81/11 88/19 91/9 91/11 102/8 102/9 104/7 107/20 108/1 108/2 108/13 110/10 111/9 115/18 117/22
**bottom [2]** 39/24 39/25
**bought [5]** 9/16 12/21 18/20 50/25 52/16
**bound [2]** 5/12 95/24
**box [2]** 33/14 118/24
**boyfriend [1]** 14/13

**brains [1]** 64/19
**brand [13]** 6/12 6/25 11/10 11/13 13/4 27/1 27/13 27/17 34/24 34/24 63/5 89/9 89/25
**brands [1]** 18/4
**break [7]** 5/23 6/1 32/22 55/18 57/24 58/1 70/5
**breathability [1]** 67/17
**Brian [7]** 10/11 10/24 26/22 26/22 43/14 43/19 55/21
**brick [1]** 48/22
**bring [8]** 4/5 42/20 50/15 70/19 73/3 108/15 116/17 118/21
**Broad [1]** 6/20
**broaden [1]** 39/15
**broader [2]** 61/13 100/12
**brochure [2]** 46/25 53/2
**brochures [1]** 43/8
**Bromert [10]** 18/3 18/11 29/19 30/1 30/4 30/10 41/16 45/13 47/4 47/7
**brought [2]** 36/25 118/4
**bucket [1]** 15/7
**Budweiser [1]** 44/2
**building [10]** 59/4 59/10 59/11 59/14 59/15 59/22 59/24 60/9 69/11 69/13
**buildings [3]** 59/3 60/4 61/2
**built [1]** 6/12 6/12 27/1 29/20 59/4 59/9 59/15 61/2 66/25 67/11 69/7
**bullying [1]** 54/6
**bump [1]** 56/22
**bunch [6]** 28/21 36/25 40/3 55/8 60/8 67/18
**burden [12]** 71/12 73/24 73/25 74/10 74/20 74/24 75/5 76/18 95/20 113/13 113/14 114/9
**bureaucrats [1]** 35/18
**buried [1]** 21/22
**business [25]** 37/11 38/7 39/11 44/14 48/10 49/18 51/6 52/7 52/17 53/10 53/22 53/25 54/4 57/15 60/19 60/22 60/24 66/4 85/7 85/8 85/9 85/10 85/11 85/12 103/7
**buy [10]** 12/16 12/22 38/2 39/3 43/25 44/1 45/2 52/1 66/21 66/21
**buyers [5]** 44/21 44/25 45/8 45/15 79/6
**buying [10]** 9/7 19/6 34/22 45/4 45/5 45/5 62/14 66/20 67/25 68/1
**buys [1]** 53/3

## C

**CA [1]** 1/14
**call [12]** 11/1 11/12 15/19 16/14 17/6 31/3 37/24 38/10 50/11 74/23 77/11 94/1
**called [16]** 6/14 8/17 12/15 13/20 17/8 18/1 42/13 42/19 47/5 62/7 68/17 74/1 74/17 74/19 90/15 103/18
**calling [1]** 85/4
**calls [4]** 11/11 31/14 35/5 47/5
**came [12]** 6/4 6/5 6/11 13/9 14/6 37/5 37/7 39/12 39/15 48/17 58/16 64/20
**Camino [1]** 1/13
**Cammarota [2]** 10/11 42/17
**campaign [5]** 40/24 67/5 67/6 82/20 82/22
**campaigns [1]** 80/22
**campus [1]** 41/9
**can [57]** 4/3 6/25 6/25 16/7 18/14 21/5 24/19 25/22 30/7 34/12 34/23 34/24 38/16 39/20 39/25 42/4 42/4 42/5 42/8 42/9 48/7 50/2 52/2 52/5 53/10 55/12 56/12 56/17 57/3 58/6 60/11 60/11 60/12 60/14 62/17 63/13 65/4 70/24 84/2 90/25 92/11 97/11 103/14 103/16 104/24 105/11 105/2 106/4 107/9 109/1 112/2

**C**

**can...** [6] 112/13 116/19 116/20 117/2 118/11 119/11
**can't** [17] 3/7 19/14 20/14 29/4 35/14 50/9 50/10 50/14 57/14 70/24 109/3 109/14 111/2 117/16 117/16 118/6
**cannonball** [2] 63/18 63/18
**cannot** [2] 86/6 88/21
**care** [10] 7/8 9/25 13/2 44/21 45/2 59/5 69/18 69/19 79/7 79/8
**carefully** [3] 26/16 72/20 96/13
**careless** [1] 85/2
**cares** [1] 19/18
**Carol** [1] 43/2
**Carolina** [1] 14/7
**carry** [1] 108/20
**carrying** [1] 91/3
**case** [71] 4/20 5/5 7/5 17/5 18/21 25/16 27/6 33/16 33/16 33/17 35/23 36/2 37/1 37/7 38/8 39/10 42/14 42/15 45/6 54/15 64/23 64/25 69/18 70/3 71/18 71/23 72/9 73/5 73/18 73/20 74/15 75/2 90/13 90/13 91/23 91/25 93/20 94/3 94/5 94/15 94/16 96/10 96/25 97/5 97/6 98/6 100/23 101/11 103/2 104/8 104/18 110/7 111/25 112/5 112/6 112/9 112/25 113/3 113/11 113/24 114/17 114/20 114/23 115/2 115/5 116/1 117/11 117/22 118/4 118/8 118/17
**cases** [3] 75/18 75/18 114/2
**cashier** [1] 14/22
**catalog** [9] 17/23 17/24 25/8 26/23 31/23 31/23 31/24 34/9 43/15
**catalogs** [26] 17/21 17/25 25/11 25/12 25/14 34/6 34/7 34/15 35/22 44/7 46/23 46/24 54/25 55/6 59/16 63/23 69/2 88/6 106/24 107/1 108/6 108/7 108/7 108/9 108/11 108/12
**caught** [1] 26/13
**cause** [6] 27/21 76/1 76/19 77/13 79/19 89/8
**caused** [4] 24/7 39/1 55/25 82/23
**cease** [1] 3/4
**ceased** [1] 87/12
**ceasing** [1] 87/15
**cell** [4] 37/25 38/10 43/19 54/18
**cementing** [1] 8/1
**center** [10] 21/17 21/19 35/2 36/5 36/18 63/24 63/25 64/3 64/10 64/12
**Century** [3] 110/6 111/16 115/5
**certain** [6] 74/19 82/2 92/8 93/2 94/1 97/16
**certainly** [2] 25/23 66/11
**certificate** [5] 76/5 76/8 76/8 76/9 119/21
**certificates** [3] 76/10 76/11 76/14
**certify** [1] 119/22
**chains** [1] 119/17
**challenged** [6] 65/19 65/21 79/13 81/7 81/15 85/16
**chambers** [1] 119/12
**chance** [6] 20/5 78/13 80/24 87/19 106/18 108/1
**change** [10] 31/6 31/11 31/15 31/17 32/19 46/25 47/10 66/7 96/14 96/17
**changed** [2] 31/4 53/9
**changes** [1] 71/3
**channels** [10] 48/14 49/19 54/23 65/8 65/10 80/16 80/20 80/23 88/6 89/16
**charge** [18] 5/3 58/2 70/3 70/6 70/10 71/10 71/11 73/24 81/25 83/18 85/4 86/4 86/21 87/18 87/20 90/10 90/12 102/24

**charging** [1] 101/23
**chart** [2] 40/6 48/13
**check** [3] 100/9 109/20 111/17
**checked** [1] 109/13
**choice** [2] 48/19 48/23
**chooses** [1] 48/23
**chose** [1] 51/5
**Chris** [4] 10/15 10/20 11/5 25/7
**chronology** [1] 51/12
**chucking** [1] 15/7
**churches** [2] 6/19 59/8
**circled** [1] 108/10
**Circuit** [15] 100/23 109/24 110/6 110/19 111/13 113/12 113/20 113/24 114/1 114/17 114/25 115/9 116/1 116/9 116/10
**circulars** [1] 17/2
**circumstances** [1] 113/4
**circumstantial** [5] 90/23 90/24 91/4 91/10 91/13
**cite** [2] 113/11 113/20
**citing** [1] 115/9
**civil** [1] 75/18
**claim** [11] 7/21 74/9 74/10 74/11 74/12 74/12 76/17 77/5 77/7 85/17 86/3
**claims** [6] 57/13 74/1 74/2 74/3 85/14 95/21
**clarification** [1] 109/18
**clarity** [1] 101/17
**classic** [10] 40/16 111/20 112/3 112/8 112/9 114/23 115/8 115/10 115/12 116/2
**Claw** [1] 44/2
**clear** [15] 28/4 33/1 51/13 58/5 75/8 75/8 75/9 75/10 75/12 75/17 86/24 87/1 101/17 101/21 109/8
**cleared** [1] 29/1
**clearly** [2] 27/19 49/13
**clerk** [3] 2/2 97/10 107/24
**client** [6] 6/9 20/11 24/23 25/5 32/18 58/21
**client's** [1] 30/24
**clients** [5] 5/7 73/9 92/19 105/18
**clock** [2] 33/6 33/8
**close** [5] 4/25 5/15 5/20 36/10 38/5
**closely** [1] 81/10
**closet** [1] 50/15
**closing** [10] 4/6 4/19 4/20 5/12 68/9 70/1 102/5 102/7 102/11 106/8
**closure** [1] 40/15
**clothes** [2] 36/25 40/4
**clothing** [2] 66/21 68/2
**clubhouse** [2] 25/11 26/7
**clubs** [2] 25/12 25/14
**coached** [1] 24/16
**Coca** [1] 111/24
**Coca-Cola** [1] 111/24
**coded** [1] 13/19
**coding** [1] 21/20
**Coke** [3] 63/8 63/13 63/13
**Cola** [1] 111/24
**collars** [1] 36/3
**colleague** [4] 12/13 20/1 20/15 28/23
**colleagues** [1] 105/18
**colleges** [1] 6/20
**color** [2] 13/19 21/20
**color-coded** [1] 13/19
**color-coding** [1] 21/20
**Colorado** [1] 25/20
**combine** [1] 8/16
**come** [24] 5/11 15/3 18/5 19/20 23/1 36/24 37/1 46/18 68/20 70/6 71/2 75/10 80/24

**comes** [7] 19/8 62/15 67/24 83/14 101/24 104/13 104/25
**coming** [4] 11/18 51/9 70/3 117/15
**commas** [1] 13/20
**comment** [4] 4/24 4/24 5/6 5/10
**comments** [4] 72/5 109/11 109/12 119/5
**commerce** [2] 86/8 90/7
**commercial** [5] 39/18 79/3 82/7 82/10 82/12
**commercially** [3] 82/14 82/17 89/21
**commercials** [1] 41/1
**common** [11] 24/1 38/23 42/8 61/13 62/1 62/5 62/12 64/19 78/8 92/5 117/14
**commonly** [1] 90/3
**communicate** [1] 14/3
**companies** [5] 75/22 75/25 84/17 84/20 84/25
**companies'** [1] 84/22
**company** [19] 27/14 27/15 32/18 33/12 33/13 33/15 33/16 33/17 33/17 46/3 54/6 54/7 54/8 58/17 58/22 65/4 75/24 76/2 89/13
**comparative** [1] 111/21
**compare** [2] 42/5 49/23
**compared** [1] 82/17
**compete** [1] 80/18
**competing** [4] 78/14 80/16 81/18 81/20
**complained** [1] 46/19
**completely** [2] 71/19 114/25
**completes** [1] 70/1
**complicated** [1] 50/8
**component** [1] 115/19
**compression** [237]
**comprised** [1] 86/10
**computer** [4] 37/15 54/25 65/9 66/18
**concepts** [1] 115/18
**conceptual** [2] 79/2 82/11
**concern** [1] 100/7
**concerned** [3] 72/13 105/19 114/24
**conclude** [5] 44/17 57/9 78/8 91/4 94/20
**concluded** [2] 26/8 113/16
**conclusion** [7] 25/15 71/23 92/9 92/10 94/24 116/12 117/23
**conclusions** [1] 2/20
**conclusive** [1] 99/6
**condition** [1] 90/22
**conditioner** [1] 68/1
**conduct** [3] 43/1 71/17 110/14
**conducted** [1] 84/17
**confer** [1] 118/23
**conference** [1] 119/12
**conferences** [1] 65/10
**confirm** [1] 12/20
**confirmed** [6] 20/17 21/7 21/8 25/7 29/3 48/9
**confuse** [10] 36/14 38/9 42/18 42/22 50/9 56/23 77/14 77/18 113/9 115/15
**confused** [30] 8/13 24/9 24/10 25/3 25/23 25/24 25/25 27/17 34/15 34/17 34/18 34/19 36/16 38/19 43/5 43/17 43/20 44/9 44/23 45/2 45/24 50/7 55/25 61/9 61/10 63/10 63/12 67/24 78/22 89/13
**confusing** [1] 115/23
**confusingly** [1] 78/7
**confusion** [123]
**confusion's** [1] 62/18
**congratulations** [2] 27/13 27/14
**conjecture** [2] 73/21 73/23
**connection** [2] 76/21 78/9

**C**

**consecutive [1]** 87/13
**consensus [1]** 119/1
**consequences [1]** 72/22
**consider [33]** 12/17 25/22 28/4 28/6 38/21 42/10 57/2 64/25 65/3 71/24 72/15 72/20 74/16 77/12 78/2 78/25 80/23 82/19 83/5 83/13 84/16 86/19 91/11 92/6 93/4 93/14 94/2 94/6 94/10 94/14 96/4 101/20 109/9
**consideration [2]** 96/11 101/5
**considerations [1]** 80/12
**considering [8]** 74/11 75/1 78/1 82/7 82/10 83/1 84/23 109/8
**considers [1]** 81/2
**consistent [1]** 15/23
**consistently [2]** 14/17 17/25
**consists [2]** 72/24 91/16
**constitute [1]** 85/20
**constituted [2]** 85/21 103/10
**Construction [1]** 37/3
**consult [1]** 96/8
**consultant [1]** 52/25
**consultants [1]** 54/16
**consumer [20]** 9/6 9/9 21/3 21/6 21/8 21/15 21/23 21/25 40/10 40/21 40/23 55/2 55/4 69/1 79/7 81/4 81/10 101/19 101/22 113/16
**consumer-facing [10]** 21/3 21/6 21/8 21/15 21/23 21/25 40/10 40/21 40/23 69/1
**consumers [19]** 42/8 43/7 44/21 48/15 49/19 76/20 76/24 77/1 77/2 77/14 77/14 77/18 78/7 78/21 79/9 80/10 81/9 89/19 115/15
**consuming [4]** 78/19 81/14 81/21 83/5
**contact [3]** 31/8 43/19 84/25
**contacted [3]** 27/18 27/19 29/14
**contain [1]** 34/7
**contemplates [1]** 43/24
**contemplating [1]** 116/6
**contends [5]** 88/15 89/3 89/6 89/23 90/5
**contentions [3]** 87/20 87/22 89/2
**contest [1]** 84/23
**context [3]** 109/9 117/11 118/3
**continue [6]** 4/22 20/20 22/13 31/3 57/25 119/2
**continued [3]** 84/3 88/18 88/24
**continuous [1]** 50/13
**continuously [4]** 30/24 39/4 50/16 90/6
**contradicted [1]** 93/21
**contrary [2]** 12/6 115/1
**contrast [2]** 112/9 115/7
**contributed [1]** 85/22
**contributing [1]** 79/1
**contributorily [2]** 85/7 104/1
**contributory [8]** 85/5 85/14 99/18 99/25 100/9 102/18 103/4 104/3
**control [1]** 92/11
**conversation [3]** 27/11 55/21 60/18
**convey [1]** 98/10
**conviction [1]** 75/10
**convictions [1]** 96/16
**convince [3]** 36/8 41/23 52/1
**convincing [7]** 75/8 75/8 75/9 75/12 75/17 86/24 87/1
**cool [238]**
**coolcompression.com [1]** 51/15
**cooling [1]** 13/25
**Coolmax [3]** 37/17 52/11 52/12

Corp [1] 110/6
**CORPORATION [2]** 1/3 115/5
**correct [4]** 99/13 108/16 108/17 119/22
**correction [1]** 102/17
**corrections [1]** 71/3
**cost [2]** 12/22 44/22
**could [6]** 6/15 6/17 6/18 9/15 9/18 17/17 22/16 28/8 31/10 38/2 42/18 43/17 43/18 45/23 56/17 59/19 60/18 62/11 68/3 69/24 91/4 105/11 109/18 116/19
**couldn't [6]** 12/20 22/8 32/19 51/25 56/13 56/15
**counsel [27]** 2/4 3/14 4/7 4/23 4/23 5/22 10/2 19/3 25/1 25/4 32/21 42/2 70/15 71/2 98/23 99/2 99/12 103/13 105/24 107/5 107/22 108/1 108/2 108/13 117/9 118/9 119/8
**counsel's [1]** 4/8
**counterfeit [1]** 54/21
**country [4]** 6/13 15/10 45/15 59/7
**counts [2]** 4/25 5/5
**couple [7]** 10/22 13/5 27/7 27/12 43/15 52/1 58/10
**course [6]** 15/2 24/7 48/24 87/3 87/23 96/13
**court [21]** 1/1 1/21 1/22 2/2 3/1 22/5 54/10 73/15 92/2 92/4 94/17 95/2 95/5 95/8 95/13 111/14 113/1 113/11 113/15 113/23 114/1
**Court's [1]** 73/12
**courtroom [20]** 4/14 41/5 54/2 70/12 70/20 73/17 73/19 91/2 91/25 97/7 97/25 104/9 105/7 107/18 108/8 108/15 116/23 118/19 119/4 119/11
**courts [1]** 50/4
**cover [1]** 106/22
**covered [2]** 76/9 91/3
**crazy [1]** 13/11
**create [1]** 76/14
**created [3]** 48/4 78/10 78/11
**creating [2]** 55/4 110/3
**credibility [4]** 71/16 90/11 93/10 93/11
**credit [1]** 94/4
**crept [1]** 53/9
**criminal [1]** 75/18
**critical [1]** 30/3
**criticized [3]** 43/1 43/2 55/3
**crooked [1]** 35/11
**cross [4]** 2/13 2/25 3/18 28/23
**cross-examination [2]** 2/25 28/23
**cross-examining [2]** 2/13 3/18
**crossing [1]** 65/16
**crowds [1]** 66/19
**CRR [2]** 1/21 119/24
**cry [1]** 30/16
**cue [1]** 18/2
**culpable [1]** 83/23
**Cunningham [8]** 9/21 10/6 11/3 11/22 24/11 45/7 55/14 55/16
**Cunningham's [1]** 43/13
**current [1]** 90/22
**customers [10]** 15/18 25/21 36/10 38/2 43/4 45/2 45/11 88/12 88/14 89/13
**cut [2]** 11/6 58/17
**Cute [1]** 28/17
**cuts [1]** 11/5
**CV [1]** 1/3

**D**

**dad [1]** 6/14
**damages [5]** 98/15 98/17 98/21 104/19

**data [1]** 82/24
**date [3]** 12/18 97/25 101/8
**dated [2]** 2/6 89/1
**dates [2]** 31/24 101/13
**dating [1]** 9/24
**daughter [1]** 6/13
**David [1]** 30/18
**day [10]** 1/8 6/14 28/14 30/13 33/15 39/18 53/4 53/4 61/25 69/18
**days [8]** 5/16 27/12 35/23 43/20 46/23 46/24 46/25 47/7
**DC [1]** 35/19
**deal [6]** 49/4 49/5 55/19 60/20 66/11 67/3
**dealing [1]** 38/13
**Debbie [1]** 22/20
**Deborah [2]** 16/16 68/19
**decades [1]** 59/6
**December [1]** 51/13
**decide [19]** 59/21 60/14 61/18 73/18 73/20 91/14 93/9 94/18 95/7 95/12 95/19 96/10 97/6 98/16 104/20 104/21 109/7 118/15 119/15
**decided [5]** 8/16 29/23 62/2 104/8 104/18
**deciding [9]** 39/3 77/21 84/15 93/8 93/14 94/9 95/8 95/13 106/1
**decision [9]** 77/8 92/1 92/4 92/16 95/15 96/7 105/1 111/13 116/13
**decisions [1]** 43/21
**decisive [2]** 77/24 82/7
**declaration [7]** 24/25 25/1 25/5 26/12 26/17 27/6 55/20
**declarations [3]** 25/10 55/8 55/15
**declared [2]** 25/2 26/14
**defendant [12]** 1/7 1/16 2/8 58/23 103/5 110/2 110/8 110/12 112/10 113/5 115/12 115/22
**defendant's [8]** 110/11 110/14 112/11 112/21 113/8 113/14 115/13 115/22
**defendants [1]** 110/15
**defense [28]** 2/8 13/16 24/8 32/21 58/12 58/17 74/21 74/24 74/25 75/5 75/7 86/5 86/5 86/12 86/22 86/23 86/23 87/6 99/11 101/21 104/13 104/15 111/14 113/4 113/15 113/23 114/15
**defenses [5]** 71/14 74/19 74/22 74/23 95/22
**define [1]** 111/15
**defined [1]** 111/6
**defines [1]** 110/1
**definition [10]** 11/13 23/6 80/17 81/18 109/1 111/12 112/3 117/3 117/10 117/17
**definitive [1]** 114/19
**degree [3]** 75/13 80/9 101/19
**degrees [2]** 64/22 67/16
**delay [2]** 30/12 30/13
**deliberate [3]** 94/24 96/8 104/24
**deliberating [3]** 38/22 96/25 97/4
**deliberations [8]** 94/23 95/5 96/13 96/19 98/18 117/15 118/16 119/2
**deliver [1]** 56/15
**delivering [1]** 36/6
**demanded [1]** 88/25
**demanding [1]** 45/14
**demographic [1]** 68/7
**demonstrate [3]** 100/25 101/3 113/13
**department [1]** 14/18
**deposition [4]** 28/10 28/24 29/3 31/5
**depositions [1]** 20/2
**deprivation [1]** 111/22

**D**

**deputy [2]** 97/10 107/24
**describe [17]** 33/23 38/16 38/24 53/6 56/20 56/21 86/17 86/18 89/7 89/24 110/10 110/10 110/13 112/11 112/21 112/24 115/13
**described [3]** 31/15 52/10 57/11
**describes [1]** 7/14
**description [4]** 41/20 47/22 56/10 110/20
**descriptions [5]** 23/11 39/1 41/24 46/24 47/17
**descriptive [5]** 23/14 24/2 86/17 115/17 116/8
**descriptively [1]** 115/13
**descriptiveness [1]** 112/16
**deserved [1]** 30/15
**deserves [1]** 92/8
**design [1]** 80/13
**designation [1]** 19/6
**designed [6]** 28/18 63/20 64/18 65/7 88/7 88/23
**desire [1]** 14/2
**desist [1]** 3/5
**desperately [1]** 60/23
**destroyed [1]** 6/6
**detailed [1]** 111/12
**details [1]** 26/20
**determine [5]** 50/5 53/12 71/25 80/11 82/4
**determined [1]** 27/23
**determining [3]** 74/14 86/19 98/15
**diagram [1]** 17/15
**dialogue [2]** 20/12 22/3
**dialogues [1]** 88/11
**dialoguing [1]** 15/18
**Dick's [18]** 16/25 17/5 17/6 17/10 17/13 24/12 26/7 30/6 43/14 47/8 47/10 48/18 55/17 63/25 63/25 68/17 85/16 88/10
**dictionary [1]** 117/19
**did [68]** 2/16 2/22 3/3 3/17 7/1 7/2 7/14 8/5 8/18 8/18 8/18 8/22 12/18 13/4 15/5 17/6 18/13 18/25 19/19 22/18 22/19 24/20 26/14 26/18 26/24 27/24 28/12 29/12 30/9 31/19 32/12 33/15 36/8 38/23 38/25 39/3 42/5 42/19 42/20 43/24 43/24 43/25 46/5 46/7 47/12 47/12 47/13 48/1 53/21 61/1 62/6 69/12 70/15 87/4 88/16 89/4 89/6 90/19 96/21 96/21 99/6 99/19 107/5 107/7 110/2 114/21 117/22 118/22
**didn't [72]** 3/14 7/8 7/12 8/15 12/7 12/14 12/19 12/21 13/17 17/12 18/12 18/12 18/23 18/23 19/20 19/22 20/22 21/20 26/17 26/19 27/3 27/14 27/21 28/14 28/15 28/25 29/6 29/9 29/18 30/16 37/6 38/1 41/5 41/5 42/2 42/25 43/3 43/21 46/4 46/17 46/19 47/13 48/4 48/16 50/18 50/22 50/22 50/23 50/24 51/6 51/6 52/6 52/17 52/19 53/22 53/22 53/23 54/24 55/17 55/23 56/23 59/1 59/2 59/18 59/19 60/8 61/2 65/23 66/1 68/4 68/22 106/22
**Diego [1]** 1/14
**Diet [2]** 63/8 63/13
**difference [3]** 48/21 48/22 62/12
**differences [2]** 49/11 82/6
**different [24]** 5/4 30/19 40/18 44/22 45/7 48/13 49/17 63/11 64/21 65/8 65/10 66/16 66/16 66/19 67/16 67/23 72/7 75/5 89/8 89/24 106/25 112/5 116/3 117/20
**differentiates [1]** 68/18
**differently [4]** 74/5 82/3 82/13 111/7

**difficult [1]** 102/23
**direct [13]** 3/18 19/6 19/8 75/9 88/7 90/15 90/16 90/20 90/21 91/6 91/10 91/13 98/3
**directed [1]** 115/6
**direction [1]** 12/5
**directions [1]** 67/16
**directly [7]** 5/24 19/1 38/3 78/14 80/16 81/18 81/20
**disagree [1]** 96/1 114/24
**DiSanti [9]** 2/4 73/3 103/12 105/1 107/24 108/3 108/9 108/20 119/14
**discharged [1]** 98/4
**disclaimer [1]** 67/24
**discontinued [1]** 87/2
**discuss [3]** 70/2 98/20 118/17
**discussing [3]** 71/18 117/8 117/24
**discussion [4]** 90/11 99/1 102/21 113/21
**display [2]** 15/14 15/15
**dispute [7]** 2/4 3/9 99/10 99/15 102/20 103/1 103/2
**disregard [6]** 32/14 72/5 73/16 91/24 93/4 94/22
**disregarded [1]** 73/18
**disseminated [1]** 88/5
**Distance [1]** 118/7
**distinct [1]** 114/2
**distinction [1]** 91/12
**distinctiveness [2]** 79/1 79/3
**distinctly [1]** 75/22
**distinguish [1]** 75/22
**DISTRICT [5]** 1/1 1/1 1/9 1/22 1/22
**DLA [1]** 1/17
**dlapiper.com [2]** 1/19 1/20
**do [66]** 2/22 3/9 3/23 5/6 5/7 6/25 8/5 12/9 16/24 18/7 20/3 20/10 31/19 31/19 34/2 35/21 36/7 36/20 40/3 41/13 41/15 42/6 42/24 44/25 45/14 46/23 53/5 53/12 53/13 53/21 54/24 55/2 57/18 62/2 62/4 65/18 66/5 68/8 71/19 80/9 80/18 83/15 88/18 89/15 92/2 93/4 93/5 93/9 96/5 97/4 97/15 98/3 98/6 98/6 100/9 101/2 105/12 109/11 114/3 116/10 117/9 118/6 118/11 118/14 118/14 118/23 118/24
**doctor [1]** 37/1
**doctrine [1]** 115/8
**document [8]** 2/9 2/11 3/21 3/21 21/2 21/13 107/6 107/10
**documentation [1]** 12/19
**documents [6]** 3/2 5/9 16/3 34/17 72/24 91/17
**does [31]** 8/1 12/9 14/1 14/12 18/7 25/18 37/14 48/22 48/24 48/24 49/2 49/3 49/14 59/24 60/13 61/17 61/21 66/24 66/25 72/18 75/18 76/3 77/25 82/14 89/11 100/24 101/3 102/25 105/13 112/23 116/9
**doesn't [24]** 6/24 11/6 25/13 25/17 35/6 36/17 36/18 38/8 39/8 41/23 43/16 45/3 48/10 48/20 49/1 51/18 54/19 60/9 61/10 63/13 63/16 66/11 119/14
**doing [7]** 45/12 60/20 64/16 65/24 115/7 115/15 115/16
**dollars [1]** 33/13
**domain [1]** 51/14
**Dominique [3]** 15/9 15/11 15/22
**don't [70]** 2/17 4/7 4/8 4/10 7/11 7/17 8/16 8/23 10/24 13/10 17/15 19/12 21/13 21/13 21/13 22/6 22/6 24/8 28/17 30/25 32/24 36/19 37/9 38/17 41/17 41/19 45/19 46/15 49/13 49/14 49/18 49/19 50/17 50/19 51/4

**done [9]** 5/12 6/15 7/22 29/21 70/9 70/16 71/1 95/14 109/16
**dotted [1]** 40/1
**double [1]** 10/17
**double-ply [1]** 10/17
**doubt [6]** 41/21 42/20 43/11 75/15 101/12 118/13
**down [16]** 9/13 19/17 20/9 24/12 32/4 40/7 40/9 53/17 53/21 60/21 65/13 65/21 97/9 97/14 97/16 114/14
**Dr. [3]** 42/17 43/3 43/6
**Dr. Cammarota [1]** 42/17
**Dr. Scott [1]** 43/3 43/6
**draft [1]** 48/16
**drafted [2]** 41/8 55/8
**Drews [2]** 30/18 102/9
**Dri [6]** 23/8 23/9 23/12 61/24 62/2 62/3
**Dri-FIT [6]** 23/8 23/9 23/12 61/24 62/2 62/3
**drop [1]** 16/2
**drops [1]** 91/3
**dry [2]** 23/13 23/13
**duffel [2]** 8/5 37/20
**Dugger [8]** 10/2 10/4 11/10 11/10 11/15 25/19 25/19 26/5
**DURHAM [3]** 1/16 2/12 3/18
**during [15]** 2/25 4/7 6/14 12/18 29/3 32/3 36/23 55/23 72/2 72/6 95/14 95/17 96/2 97/2 108/5
**duties [4]** 72/17 95/6 95/11 96/5
**duty [3]** 95/18 96/7 98/11
**DX [2]** 2/5 52/23
**DX-292 [1]** 52/23
**DX-298 [1]** 2/5

**E**

**each [31]** 9/21 14/18 16/1 31/24 34/5 34/19 49/5 56/22 73/25 74/2 74/9 80/17 81/19 85/18 85/24 86/13 87/2 87/19 87/21 94/2 95/20 96/8 96/10 96/12 97/20 97/20 97/24 98/1 103/13 103/19 105/19
**ear [1]** 30/17
**earlier [1]** 96/21
**easier [1]** 40/8
**EASTERN [2]** 1/1 1/22
**easy [1]** 66/10
**eBay [2]** 54/18 54/19
**education [3]** 16/17 22/21 94/19
**efforts [2]** 73/3 81/3
**Efraim [3]** 24/18 27/12 55/19
**Eight [1]** 81/1
**EISENSTEIN [6]** 1/17 2/9 2/24 3/9 115/3 119/8
**either [13]** 4/10 43/5 43/8 47/6 48/11 55/24 89/13 91/13 104/5 104/17 104/20 111/10 111/12
**El [1]** 1/13
**elect [2]** 103/15 103/18
**elected [1]** 116/25
**element [4]** 99/21 112/16 112/20 112/24
**elements [5]** 74/20 74/24 75/7 85/25 86/2 99/20 103/8
**Eleventh [3]** 109/24 110/19 114/25
**eliminate [1]** 34/22

**E**

**else [14]** 25/24 31/5 46/18 48/17 65/18 65/24 91/24 92/3 97/5 100/19 101/6 102/13 105/23 107/12
**else's [2]** 37/18 43/1
**elsewhere [1]** 29/23
**email [5]** 30/8 47/4 52/24 53/17 60/19
**emailed [1]** 53/14
**emails [1]** 57/19
**emanating [1]** 78/18
**emphasis [1]** 72/10
**employee [2]** 14/5 22/12
**employees [3]** 41/18 68/13 68/15
**employer [1]** 22/16
**enable [1]** 75/10
**encapsulates [2]** 115/18 115/19
**encapsulation [1]** 115/12
**encompassed [2]** 112/13 116/1
**encompasses [1]** 83/23
**end [5]** 19/19 28/14 52/16 56/15 102/21
**endorsements [1]** 41/1
**energy [1]** 67/14
**engineers [2]** 65/9 66/18
**English [2]** 90/4 115/17
**enough [10]** 3/20 19/15 33/19 46/19 58/8 59/21 62/5 68/2 76/24 96/18
**enter [3]** 28/21 28/22 63/18
**enters [3]** 4/14 70/20 116/23
**entire [1]** 11/15
**entirely [3]** 72/5 94/22 114/4
**entities [1]** 104/3
**entitled [2]** 106/23 119/22
**environment [1]** 55/4
**equal [1]** 72/10
**equals [7]** 20/15 21/4 21/4 21/8 22/11 22/14 22/17
**equation [1]** 21/4
**equipment [1]** 49/6
**ESQUIRE [6]** 1/12 1/12 1/16 1/16 1/17 2/6
**essential [1]** 114/7
**establish [1]** 87/9
**established [5]** 22/10 95/20 95/21 103/22 115/8
**establishing [1]** 115/6
**Estate [2]** 110/6 115/5
**evaluate [1]** 82/2
**evaluating [1]** 78/24
**evaluation [1]** 85/2
**Eve [2]** 53/18 53/19
**even [40]** 2/17 5/3 7/18 8/22 9/7 12/13 12/23 16/21 18/18 21/4 30/16 30/18 32/19 35/1 36/9 38/5 38/19 41/17 43/8 50/20 56/4 61/5 61/9 61/19 62/19 62/20 64/9 64/15 66/22 72/4 80/3 80/17 81/20 91/20 95/25 101/17 101/21 105/14 115/23 118/15
**evening [1]** 4/18
**events [4]** 6/20 6/21 41/1 92/7
**ever [11]** 7/25 9/15 28/9 29/4 38/19 44/9 44/15 50/7 58/21 66/7 66/8
**every [11]** 4/20 12/5 13/3 22/12 34/8 34/9 38/2 47/22 59/7 86/9 90/13
**everybody [9]** 40/19 40/20 41/8 43/1 50/21 50/21 50/24 52/2 105/16
**everyday [3]** 43/7 92/6 117/13
**everyone [5]** 25/24 58/13 60/2 63/12 70/22
**everyone's [1]** 58/21
**everything [10]** 17/17 19/14 36/22 37/14 40/16 54/3 57/21 58/8 58/9 93/12

**evidence [165]**
**ex [3]** 12/10 14/5 68/1
**ex-employees [1]** 68/13
**ex-FBI [1]** 12/10
**ex-Nike [1]** 14/5
**exact [10]** 8/14 24/23 58/19 61/17 61/20 61/22 63/14 64/23 67/1 68/7
**exactly [6]** 5/2 9/20 11/15 20/13 26/20 107/7
**examination [2]** 2/25 28/23
**examine [2]** 82/5 96/14
**examined [1]** 2/16
**examining [3]** 2/13 3/15 3/18
**example [3]** 41/2 90/16 97/15
**examples [4]** 9/18 12/11 12/24 18/25
**except [2]** 37/14 99/11
**exclude [1]** 86/6
**excluded [2]** 73/15 93/5
**exclusive [4]** 76/16 98/11 113/13 113/17
**excuse [4]** 20/23 62/17 79/5 79/11
**excused [4]** 16/3 70/11 88/21 105/12
**excuses [2]** 30/11 30/15
**execution [1]** 80/14
**exhibit [7]** 2/5 32/9 90/21 92/12 93/6 106/11 106/24
**exhibits [10]** 72/25 73/4 74/17 95/1 106/22 107/3 107/20 107/21 107/22 107/25
**exist [2]** 60/9 76/23
**existence [1]** 90/22
**exits [3]** 70/12 105/7 119/4
**expand [3]** 81/17 81/23 83/8
**expanding [1]** 60/18
**expansion [4]** 48/2 48/7 48/10 68/6
**expect [13]** 31/6 31/11 31/15 62/3 72/20 81/14 81/15 81/16 81/22 83/6 83/7 83/8 83/9
**expected [4]** 48/2 48/6 79/7 79/8
**expensive [4]** 39/14 39/23 39/24 44/24
**experience [4]** 55/22 92/6 92/8 94/19
**expert [10]** 13/23 42/25 45/10 55/2 71/16 90/11 94/1 94/2 94/10 94/18
**expert's [1]** 94/6
**experts [4]** 43/2 43/6 55/4 62/22
**explain [13]** 13/18 18/10 22/19 23/10 26/13 28/21 30/18 33/14 38/8 40/6 77/10 87/18 108/11
**explained [18]** 9/11 10/16 10/21 11/8 11/10 11/22 11/25 15/1 18/8 26/16 26/18 27/13 60/21 62/10 63/9 83/19 87/9 98/22
**explaining [2]** 37/20 108/14
**explains [2]** 50/9 60/16
**explanation [1]** 109/25
**explanations [1]** 28/17
**explicitly [1]** 118/7
**exploited [1]** 6/6
**extent [3]** 81/1 81/2 86/19
**extraordinary [1]** 36/24

**F**

**F.3d [2]** 110/7 111/18
**fabric [4]** 34/4 38/25 47/23 56/20
**face [3]** 37/13 37/13 43/16
**Facebook [1]** 53/1
**faces [1]** 34/1
**facility [1]** 54/20
**facing [10]** 21/3 21/6 21/8 21/15 21/23 21/25 40/10 40/21 40/23 69/1
**fact [24]** 2/18 10/1 13/23 18/11 27/24 28/21 28/24 29/1 46/8 47/17 60/6 60/9 60/14 64/11 66/22 72/25 74/12 74/13 74/14 75/10 84/3

**factor [17]** 42/10 44/7 44/18 44/20 45/20 47/25 48/12 49/20 77/24 78/14 78/15 79/5 80/18 81/2 81/8 82/7 82/8
**factors [22]** 42/12 44/6 48/16 48/22 49/17 64/14 64/17 64/18 68/5 77/9 77/24 78/1 78/2 79/6 81/13 82/2 82/5 82/9 83/13 84/16 93/15 93/25
**Factory [5]** 14/5 14/7 15/9 15/23 16/10
**facts [26]** 33/21 50/8 56/18 69/17 71/25 72/3 72/9 72/12 72/23 73/20 74/21 75/3 81/21 90/25 91/15 91/17 91/19 91/19 93/8 95/7 95/8 95/12 95/13 95/15 95/16 95/19
**factual [2]** 75/11 79/2
**fail [1]** 8/18
**failed [4]** 57/13 77/3 86/1 90/6
**fails [1]** 74/9
**failure [2]** 100/24 101/2
**fair [58]** 57/10 71/15 74/23 75/1 86/5 86/6 86/7 86/12 86/20 88/16 90/2 101/17 101/21 104/14 109/8 109/10 109/20 109/24 110/18 111/2 111/14 111/19 111/20 111/23 112/2 112/3 112/8 112/8 112/9 113/1 113/3 113/3 113/15 113/16 113/21 113/23 113/25 114/2 114/5 114/11 114/15 114/16 114/20 114/23 115/7 115/8 115/10 115/12 115/23 116/2 116/4 116/5 116/7 116/10 117/13 117/20 118/1 118/3
**fairly [14]** 38/16 38/23 57/10 86/15 96/5 98/20 109/1 109/25 110/1 110/20 112/23 112/24 117/3 117/11
**fairness [2]** 110/8 110/17
**faith [24]** 7/14 48/4 86/16 88/17 89/24 109/2 109/14 110/1 110/1 110/21 112/13 112/23 112/24 115/1 115/15 115/19 115/23 115/24 116/7 117/3 117/10 117/13 117/19 118/3
**fake [1]** 59/19
**falling [1]** 22/11
**false [58]** 7/7 7/10 7/15 7/21 8/20 13/15 24/20 27/22
**familiar [2]** 43/4 111/15
**family [1]** 57/19
**far [2]** 105/18 111/5
**fast [1]** 46/19
**favor [14]** 49/21 65/20 77/25 79/21 80/18 82/18 82/23 83/3 83/10 83/16 84/7 98/16 104/8 104/18
**favorable [2]** 74/6 74/6
**faxes [1]** 38/1
**FBI [2]** 12/10 12/14
**feature [3]** 13/25 61/16 112/16
**features [2]** 79/1 89/25
**federal [7]** 7/3 54/10 54/11 54/11 54/11 75/23 76/13
**feel [5]** 41/25 46/14 94/21 96/6 96/14
**feeling [1]** 64/1
**feels [1]** 58/19
**fellow [4]** 96/12 96/17 96/20 97/2
**felt [1]** 90/18
**few [4]** 4/6 10/25 13/12 80/3
**field [4]** 46/11 46/13 48/8 49/10
**fight [2]** 46/5 60/6
**filed [1]** 53/18
**final [2]** 5/2 71/15
**finally [7]** 7/16 21/12 22/6 22/7 29/19 29/23 60/23
**find [47]** 6/9 21/5 32/17 32/20 34/12 35/13 35/21 40/22 51/25 54/8 55/1 57/9 64/11 66/1 66/8 66/9 66/9 67/17 69/21 69/22 72/23 73/2

**F**

**find... [25]** 74/11 74/22 75/1 77/3 77/5 80/2 81/10 82/13 82/16 82/22 83/9 83/15 83/16 84/9 84/10 84/12 85/6 85/24 86/1 87/12 87/15 90/25 91/15 111/2 117/18

**finding [13]** 77/24 77/25 79/15 79/21 82/15 82/18 82/23 83/2 83/3 83/10 84/5 84/7 103/20

**findings [2]** 83/15 101/25

**finds [1]** 37/19

**finish [1]** 113/19

**finished [2]** 97/18 101/23

**finishes [1]** 5/22

**fire [2]** 20/8 53/15

**first [35]** 5/20 6/4 7/5 7/22 8/19 8/20 9/7 12/13 20/15 20/22 21/19 28/6 28/7 29/9 29/10 42/3 42/12 44/7 59/4 73/7 78/25 82/8 84/16 88/22 89/6 93/15 95/6 95/11 99/2 102/24 104/13 110/9 113/22 116/14 116/15

**fishing [1]** 60/17

**fit [20]** 23/8 23/9 23/12 23/14 23/14 32/19 34/2 34/4 35/12 38/25 40/16 40/20 41/22 41/25 47/15 47/22 56/21 61/24 62/2 62/3

**fitted [2]** 40/17 57/12

**five [13]** 7/23 46/1 46/23 46/24 46/25 47/7 54/16 54/16 61/25 79/17 93/21 103/14 103/17

**five-day [1]** 61/25

**fix [1]** 46/23

**flawed [1]** 12/23

**flip [2]** 22/9 52/2

**flipped [2]** 26/23 56/6

**flipping [1]** 34/15

**Florida [2]** 10/7 24/17

**fluff [1]** 67/3

**fluffy [1]** 15/20

**focus [1]** 66/17

**focused [1]** 67/23

**focuses [1]** 81/8

**folks [8]** 9/21 11/8 12/19 14/17 16/18 25/2 58/14 61/6

**follow [6]** 54/8 72/21 93/1 95/16 95/25 111/10

**followed [2]** 84/19 90/10

**following [13]** 54/18 55/25 58/13 73/6 77/23 82/6 84/16 85/18 86/13 87/2 91/16 91/21 93/15

**follows [4]** 87/22 89/2 99/1 113/2

**foofy [2]** 67/3 67/10

**Foot [1]** 48/18

**football [1]** 32/10

**force [1]** 31/20

**forced [1]** 28/24

**foregoing [1]** 119/22

**foreperson [8]** 95/4 97/9 97/24 98/1 103/15 103/18 103/20 117/1

**forever [1]** 35/17

**forget [3]** 10/24 17/15 107/4

**form [5]** 81/9 90/21 97/22 97/25 98/25

**forma [1]** 98/9

**formal [1]** 29/5

**formally [2]** 3/3 91/18

**formed [2]** 44/14 51/13

**forward [8]** 77/11 77/14 77/21 77/22 78/4 82/3 82/5 82/6

**foul [1]** 7/17

**found [14]** 13/12 27/16 43/7 45/23 52/6 60/7 60/25 69/5 72/13 80/23 84/20 104/17 109/19

**four [14]** 7/4 20/15 21/4 22/11 22/14 22/17 33/21 67/15 68/22 79/12 85/2 93/19 104/13 113/1

**four-way [1]** 67/15

**fourth [1]** 89/20

**frame [2]** 12/18 43/22

**free [2]** 92/9 96/14

**Friday [2]** 23/19 28/20

**friends [3]** 11/21 11/24 58/14

**friendship [1]** 12/1

**front [8]** 2/5 6/4 12/9 13/1 14/10 16/25 18/22 20/3 21/1 21/14 21/17 21/19 22/16 22/16 24/13 25/1 28/11 30/4 35/2 36/5 36/18 36/20 37/20 51/1 59/3 59/24 63/24 63/25 64/3 64/10 64/12

**frustrated [1]** 8/15

**full [3]** 40/15 96/11 105/21

**fully [1]** 71/18

**fun [2]** 58/7 67/10

**function [2]** 81/9 86/8

**fundamental [2]** 34/21 50/6

**further [6]** 79/22 101/16 102/1 104/19 113/21 118/20

**G**

**GAGLIARDI [2]** 1/21 119/24

**gain [1]** 54/7

**garment [5]** 6/11 9/1 34/3 35/4 36/11

**garments [12]** 8/6 8/7 9/12 10/9 12/2 12/25 13/6 15/16 36/4 49/9 58/15 59/4

**Gary [2]** 2/7 3/8

**gave [15]** 7/1 9/20 10/3 17/4 17/22 19/7 19/21 26/12 43/10 53/11 59/22 87/23 96/2 102/24 103/8

**general [2]** 76/25 99/19

**generally [1]** 22/23

**gentlemen [9]** 4/17 57/1 57/23 69/25 70/23 90/9 90/12 102/22 117/7

**get [31]** 9/2 9/13 9/17 9/18 12/10 14/14 14/22 19/19 24/15 28/17 29/1 30/14 32/5 33/14 41/10 41/11 42/3 44/6 46/14 47/7 49/9 52/17 57/20 60/15 61/23 71/6 71/7 71/9 97/13 109/1 117/2

**gets [2]** 23/15 93/5

**getting [9]** 25/9 39/14 60/17 67/3 67/3 67/4 67/9 69/8 111/21

**giant [3]** 19/7 21/18 60/4

**GINA [1]** 1/16

**gina.durham [1]** 1/19

**ginned [1]** 55/5

**give [35]** 5/13 6/25 30/3 33/1 44/8 50/3 58/1 59/18 59/21 70/6 72/12 77/20 80/11 81/25 82/8 83/18 87/11 87/24 90/10 90/13 91/14 92/7 94/3 95/25 96/15 96/19 97/10 97/10 98/1 99/6 99/8 103/13 105/14 117/16 117/16

**given [13]** 27/6 29/25 31/14 72/21 84/4 87/25 91/13 94/4 94/20 95/17 99/5 101/1 109/23

**giving [6]** 5/15 17/24 25/16 95/18 101/11 113/4

**go [47]** 5/23 9/1 10/20 12/10 13/2 14/19 19/6 19/18 22/10 27/7 35/7 35/8 38/11 38/12 41/10 43/24 44/1 46/15 51/12 51/23 52/6 52/23 59/12 61/4 63/2 63/2 67/14 68/3 69/12 70/9 71/4 71/13 97/23 98/25 102/1 104/10 105/2 107/9 107/23 113/21 113/24 114/6 116/19 118/14 118/25 119/11 119/15

**goes [4]** 27/1 48/21 49/6 53/2

**going [25]** 8/10 9/24 11/14 16/6 29/17 30/22 31/17 32/4 32/23 33/12 33/14 33/18 34/11 34/15 34/16 34/17 34/18 36/21 39/7 39/11 39/16 39/17 42/3 44/8 44/24 48/12 48/13 55/12 56/8 57/8 57/9 58/5 58/9 60/14 63/4 63/6 65/16 67/23 70/2 70/5 71/6 73/24 77/20 81/25 82/8 83/18 85/4 86/4 86/21 87/18 87/20 90/10 90/25 94/23 99/7 99/14 100/4 100/8 100/10 100/10 101/13 102/19 102/19 103/12 104/25 105/10 106/8 109/6 109/15 111/8 111/9 111/10 116/12 116/18 117/22 118/1 119/10

**golden [1]** 50/19

**gone [5]** 20/12 52/15 66/7 66/8 116/13

**good [31]** 4/17 4/22 6/3 7/14 20/3 29/24 35/17 48/4 61/21 86/16 88/17 89/24 109/2 109/14 109/25 110/1 110/21 112/13 112/23 112/24 115/1 115/14 115/19 115/23 115/24 116/7 117/3 117/10 117/13 117/19 118/3

**goods [31]** 16/25 18/19 30/6 43/14 44/20 46/6 54/22 61/17 68/2 76/22 78/14 78/18 78/21 78/22 79/4 79/5 80/16 80/18 80/19 81/18 81/19 81/20 84/18 85/11 85/12 85/16 110/4 112/21 113/6 113/8 113/8

**goodwill [5]** 83/25 84/6 110/2 110/22 110/23

**Google [5]** 17/18 31/9 31/9 35/25 68/22

**got [41]** 6/15 7/3 7/22 7/22 8/12 9/10 11/8 14/23 15/1 16/8 18/8 19/25 20/3 20/13 27/7 27/12 28/20 32/5 32/18 34/16 35/2 35/10 37/23 41/16 45/24 47/22 51/14 51/16 57/16 58/7 60/2 61/9 61/23 62/10 63/9 65/12 65/18 65/18 68/13 105/16 107/19

**governed [1]** 72/19

**Government [2]** 7/3 75/23

**grab [2]** 13/4 17/17

**grabbed [1]** 17/18

**grabbing [1]** 20/9

**gray [1]** 18/19

**great [2]** 14/19 36/12

**greater [5]** 78/13 80/21 80/22 81/5 81/11

**ground [3]** 51/16 52/17 57/16

**grouped [1]** 17/7

**guess [2]** 8/12 24/18

**guessing [1]** 73/21

**guide [1]** 20/19

**guided [2]** 77/9 77/23

**guy [12]** 26/25 26/25 27/2 32/18 63/4 63/4 63/7 67/8 69/16 69/17 69/18 69/19

**guy's [1]** 69/6

**guys [7]** 20/9 21/4 33/25 61/18 61/22 63/9 67/23

**gym [1]** 39/17

**H**

**had [66]** 3/1 4/17 8/5 8/11 10/18 11/24 15/14 18/12 18/17 18/20 20/12 21/4 22/2 22/9 22/20 24/5 25/9 25/10 26/14 27/6 27/11 31/7 31/8 33/24 34/3 34/3 35/21 36/24 37/1 43/18 46/7 46/18 50/23 50/24 51/5 52/18 52/18 52/20 52/22 53/23 53/23 55/21 55/22 56/1 56/24 56/24 56/25 63/1 63/19 66/17 67/6 76/10 94/1 100/14 100/18 103/9 106/1 106/18 107/21 108/1 108/7 110/23 112/22 112/22 115/1 115/22

**hadn't [2]** 11/22 56/1

**Hal [1]** 43/2

**half [6]** 30/20 30/21 40/16 58/18 69/11 117/8

**HAMILTON [1]** 1/13

**hand [10]** 14/17 32/23 54/5 57/25 70/25 71/5

# H

**hand...** [4] 72/10 103/12 112/13 118/13
**handed** [2] 16/9 16/10
**hands** [3] 10/18 40/6 58/3
**handwritten** [1] 102/8
**hang** [3] 14/9 47/14 89/12
**happen** [9] 20/22 25/6 27/3 27/14 29/6 29/9 37/9 65/16 65/23
**happened** [15] 17/13 28/6 29/16 29/18 34/6 34/10 36/23 39/18 39/23 40/5 47/23 55/6 65/22 66/13 66/19
**happening** [3] 28/9 28/18 32/3
**happens** [2] 11/15 66/3
**happy** [2] 15/6 26/24
**hard** [10] 6/14 20/3 20/7 26/25 37/23 44/17 51/7 51/11 51/20 105/18
**hard-working** [1] 26/25
**harm** [1] 7/17
**has** [73] 2/19 5/17 7/7 7/10 7/15 11/5 13/1 13/2 14/25 24/6 24/7 31/24 34/24 40/19 43/12 47/21 47/21 48/25 54/1 56/18 57/13 57/24 62/6 62/7 72/1 73/15 73/25 74/2 74/13 74/20 74/24 75/2 75/4 75/24 76/15 76/18 77/3 77/6 82/20 82/22 85/24 86/1 86/5 86/22 87/21 90/18 92/15 93/20 94/12 94/14 95/2 95/20 95/21 98/14 99/11 99/15 101/8 103/6 103/22 103/25 104/10 105/17 107/25 108/21 108/23 109/10 113/6 113/13 114/8 114/9 116/1 116/25
**hasn't** [1] 114/13
**have** [188]
**haven't** [3] 45/23 51/2 110/22
**having** [11] 8/13 9/5 17/14 18/2 22/10 27/23 29/4 29/20 29/21 85/11 100/7
**hawed** [1] 21/9
**he** [179]
**he'll** [1] 5/22
**he's** [9] 5/20 9/11 27/1 36/13 37/12 42/3 52/12 55/17 63/7
**head** [9] 16/17 22/21 25/20 27/4 27/5 27/8 27/9 29/7 65/24
**heading** [3] 55/17 114/12 114/14
**heads** [1] 32/7
**heads-up** [1] 32/7
**hear** [7] 23/6 70/24 70/24 91/24 92/2 92/3 93/16
**heard** [41] 3/4 6/16 6/19 6/19 6/20 9/21 11/9 13/17 13/18 13/23 19/3 25/13 25/19 26/13 30/12 30/18 35/23 57/10 39/6 41/4 42/1 45/9 46/8 48/19 50/20 54/13 58/12 62/21 68/9 71/21 71/21 72/1 73/17 75/14 82/25 90/18 95/8 95/13 117/21 118/2 118/5
**hearing** [1] 11/1
**heat** [1] 8/8
**heeding** [1] 116/14
**Heil** [3] 25/13 46/8 49/3
**held** [3] 62/7 113/12 116/1
**help** [8] 6/18 11/20 36/25 46/14 53/12 64/18 64/21 75/23
**helped** [2] 16/12 37/5
**helpful** [1] 112/14
**helps** [1] 37/19
**hemmed** [1] 21/9
**her** [29] 12/13 14/12 15/8 17/18 18/12 18/13 20/15 21/1 21/3 21/5 21/12 21/14 21/23 21/24 22/1 22/2 22/11 22/14 22/16 22/20 22/21 23/1 23/12 30/5 47/4 47/5 94/17 108/4 108/13

15/6 17/6 18/8 24/4 28/22 28/22 31/19 31/21 31/25 33/20 35/23 36/21 36/25 37/14 37/6 38/20 40/9 40/9 40/10 40/10 40/12 41/16 42/4 42/15 42/20 42/25 45/3 45/20 46/1 47/14 48/3 52/2 52/5 57/8 58/16 58/24 62/24 66/19 67/18 68/8 68/13 68/21 68/25 73/19 82/9 83/22 95/5 95/8 95/13 105/4 105/16 105/19 105/20 107/15 108/7 110/2 110/7 110/23 111/17 111/23 114/24 116/12 117/2 117/21 119/1
**here's** [3] 39/18 44/7 59/24
**hesitancy** [1] 75/11
**hey** [5] 14/18 14/20 14/23 22/21 27/13
**high** [4] 16/20 29/23 30/2 30/16
**higher** [1] 16/22 75/12
**highest** [1] 16/20 105/12
**highlight** [1] 39/25
**highlighted** [1] 41/25
**highly** [1] 80/4
**Hilary** [1] 2/6
**him** [28] 2/13 3/19 6/14 14/14 26/6 26/12 26/13 29/2 31/6 36/23 37/6 37/8 37/11 37/23 37/24 37/25 38/2 38/3 47/2 50/21 50/25 52/21 52/25 53/12 53/13 56/3 56/4 90/20
**himself** [4] 24/14 36/14 37/14 58/15
**his** [65] 2/13 5/21 6/13 6/17 6/23 8/2 8/14 9/4 10/8 10/18 11/6 12/1 13/4 24/14 24/15 25/17 26/5 26/5 27/7 29/3 35/5 35/1 36/11 36/12 37/1 37/2 37/3 37/5 37/11 37/17 37/25 38/1 38/2 38/7 38/8 38/9 38/10 42/3 42/3 42/22 46/25 48/9 48/20 48/23 52/10 52/21 53/1 53/1 53/3 53/4 53/9 53/19 54/4 55/18 55/19 55/20 56/24 58/1 59/9 60/6 60/18 90/17 94/17 102/11
**holder's** [1] 76/8
**holding** [2] 111/15 116/2
**home** [5] 69/12 105/2 118/14 118/17 119/15
**honest** [2] 41/11 96/16
**Honor** [35] 2/10 2/23 3/11 3/16 3/17 3/22 4/10 4/11 32/6 33/4 33/6 33/10 100/12 100/22 102/19 105/25 107/8 107/13 108/17 108/18 109/17 109/22 110/7 111/19 112/1 112/6 112/14 112/15 112/18 112/20 113/18 114/22 115/4 119/7 119/9
**HONORABLE** [1] 1/9
**hoodie** [1] 40/13
**hooked** [2] 67/6 67/9
**hope** [6] 4/3 4/17 11/10 27/23 27/24 106/4
**hoped** [1] 7/2
**hopefully** [3] 17/1 21/16 23/16
**hoping** [1] 54/7
**hose** [1] 20/8
**Hosni** [2] 9/10 58/15
**hospitals** [1] 6/19
**hot** [1] 10/7
**hour** [4] 32/22 105/10 105/12 117/8
**house** [7] 13/8 45/4 45/5 60/13 60/13 60/14 64/1
**how** [53] 3/23 6/17 6/18 8/11 9/14 9/19 13/18 13/21 13/22 14/12 16/24 19/17 20/1 20/23 21/14 23/10 23/11 23/14 30/13 39/18 39/22 40/24 41/14 41/18 44/12 44/12 47/9 47/9 49/6 49/17 49/23 49/24 52/10 59/22 59/23 61/25 62/2 62/12 62/14 62/19 63/15 63/17 63/17 65/26 61/6 67/17 67/19 71/17 80/11 91/14 93/23 97/15 111/15
**Howard** [1] 64/4
**However** [6] 75/4 80/8 81/20 82/12 84/9

**huge** [3] 32/18 45/16 108/7
**hugs** [1] 47/15
**Humphreys** [2] 12/10 52/4
**hundred** [1] 13/5
**hundreds** [7] 16/8 17/25 59/16 59/16 69/2 69/2 88/6
**hurting** [1] 39/10
**HYNES** [3] 1/16 33/3 33/8
**hyperagitator** [1] 23/25
**Hypercool** [5] 23/16 23/18 23/21 23/23 23/24
**hyperexciting** [1] 23/25
**hyperventilating** [1] 23/24
**Hyperwarm** [5] 23/15 23/18 23/20 23/22 23/24
**hyphenated** [1] 23/5
**hypothetical** [1] 31/14

# I

**I'll** [14] 4/6 17/1 19/7 32/16 33/4 70/6 70/9 71/15 98/23 102/16 107/15 119/12 119/12 119/14
**I'm** [56] 4/2 5/2 5/6 26/24 26/24 30/11 33/12 33/14 33/18 34/1 39/6 41/8 42/10 43/16 44/8 48/1 48/3 48/12 48/13 57/1 57/8 58/9 70/2 70/9 70/23 71/1 71/7 73/24 77/20 81/25 82/8 83/18 85/4 86/21 87/20 90/9 94/23 95/10 99/14 101/13 103/12 105/4 105/18 105/20 105/20 109/15 111/8 111/9 111/10 111/13 111/15 112/25 116/11 116/18 117/9 118/6
**I've** [4] 57/21 64/16 107/18 114/8
**idea** [9] 19/22 27/21 62/9 62/19 95/9 114/10 115/23 116/7 116/15
**identical** [2] 8/11 8/13
**identified** [1] 13/25
**identify** [5] 75/22 78/18 80/6 86/9 89/22
**ignore** [2] 73/13 92/23
**ignored** [1] 29/7
**ILANA** [1] 1/17
**ilana.eisenstein** [1] 1/20
**illusion** [1] 65/15
**image** [2] 25/9 25/10
**images** [5] 55/25 56/1 56/2 56/4 56/7
**imagine** [4] 6/15 13/8 51/20 61/24
**imagined** [1] 14/2
**imagining** [1] 12/23
**impartial** [1] 96/11
**impartially** [1] 72/20
**important** [10] 4/20 8/24 36/21 70/4 78/14 78/15 96/3 97/6 106/11 118/16
**impossible** [3] 38/9 38/10 38/11
**impression** [2] 78/10 113/22
**improper** [2] 73/11 92/20
**improve** [1] 6/18
**improved** [2] 37/2 67/20
**inactive** [1] 53/25
**inadvertently** [1] 3/3
**inappropriate** [2] 2/21 100/11
**inbox** [1] 57/20
**INC** [1] 1/5
**inch** [2] 26/22 68/16
**inches** [2] 40/15 47/19
**incidents** [1] 80/3
**include** [1] 80/13
**included** [3] 19/5 54/17 102/8
**includes** [1] 96/1 106/25
**including** [6] 4/21 83/24 84/18 88/11 93/15 94/11

**I**

income [1] 94/17
incompatible [1] 111/6
inconsistency [1] 26/14
inconsistent [1] 24/4
incontestable [13] 7/24 8/1 24/22 28/1 32/15 35/17 35/18 38/15 38/18 50/12 88/1 99/7 99/8
incorrect [2] 19/23 106/25
independent [1] 89/5
indicate [1] 110/8
indicates [1] 115/21
indicating [1] 87/7
indication [2] 72/8 78/20
indicative [1] 79/7
indicator [1] 114/7
indifferent [2] 84/13 84/15
individual [1] 91/8
indoor [1] 10/8
induced [3] 85/9 85/22 100/13
industry [1] 6/21
inferred [1] 84/2
influence [3] 92/4 95/15 96/7
influenced [3] 73/12 92/17 92/21
information [8] 20/2 20/3 20/8 20/10 30/4 40/12 43/19 94/7
informs [1] 40/10
infringe [4] 72/4 85/9 85/12 89/4
infringed [5] 54/2 84/6 88/2 103/7 103/23
infringement [46] 28/2 28/3 28/5 28/18 29/6 29/8 29/15 32/17 32/20 42/7 50/11 56/16 60/25 61/17 62/8 65/15 67/21 69/21 69/22 69/23 71/13 76/4 76/17 77/16 83/19 84/1 84/2 85/5 85/8 85/15 85/20 85/22 88/21 99/18 99/22 99/23 99/25 100/10 103/4 103/11 104/2 104/11 109/14 109/19 113/3 114/7
infringer [3] 63/6 77/19 84/3
infringer's [3] 81/23 81/24 83/20
infringing [9] 7/25 27/25 28/8 38/16 83/21 84/4 88/19 88/24 88/25
inherent [1] 78/25
initial [1] 109/4
initially [1] 103/4
injuries [1] 45/13
injustice [1] 6/8
innocent [4] 7/15 69/14 69/23 88/21
innocently [1] 58/23
inquire [1] 109/15
inside [6] 9/1 9/8 9/25 13/2 41/9 59/5
inspiring [1] 37/17
instances [2] 80/2 88/13
instead [8] 12/11 29/19 30/23 43/9 69/8 88/17 91/1 115/21
instruct [13] 6/8 7/19 7/24 25/21 26/4 28/3 64/24 71/22 72/11 73/1 74/21 79/22 95/23
instructed [4] 35/20 74/16 92/25 93/3
instruction [18] 71/24 72/15 79/23 93/2 99/4 99/7 99/8 100/23 101/1 101/2 101/4 101/8 101/9 109/23 109/24 110/4 111/5 114/25
instructions [19] 5/11 69/21 71/1 71/17 72/8 72/16 73/21 75/20 77/20 87/25 94/25 95/17 95/25 96/1 96/3 96/3 98/9 98/22 117/14
intend [1] 110/2
intended [4] 48/8 60/16 84/25 98/9
intent [15] 3/12 3/12 46/1 48/3 65/18 65/20 79/17 79/22 83/1 83/24 84/11 87/4 87/8 87/11 114/14

intention [1] 98/8
intentional [7] 2/15 47/24 79/18 83/18 83/20 84/2 84/10
intentionally [6] 83/3 83/22 84/5 85/9 86/25 100/13
interest [5] 25/16 48/20 51/25 60/15 93/20
interested [2] 53/5 60/18
interesting [2] 28/13 55/23
internal [11] 14/2 16/1 16/2 16/3 20/24 20/24 21/2 40/13 40/14 40/21 41/8
internally [1] 29/17
internet [2] 30/14 88/7
intervened [1] 22/5
interviewed [1] 43/7
introduce [1] 2/16
introduced [1] 2/11
introduction [1] 71/12
investigation [2] 12/23 84/20
invite [1] 98/23
involved [1] 53/8
involves [1] 75/12
Ireland [2] 19/24 20/13
is [330]
isn't [7] 39/9 46/22 58/21 60/3 63/16 65/22 115/24
issue [17] 17/5 18/21 20/25 31/16 75/11 78/8 85/6 85/19 85/21 85/23 99/17 103/10 104/3 111/23 111/25 113/2 113/22
issued [2] 76/6 111/14
issues [3] 74/19 80/13 115/1
it [398]
it's [102] 2/5 2/8 5/4 5/4 8/1 12/4 13/11 15/2 15/2 16/20 20/7 20/8 22/11 23/5 23/5 23/8 23/13 24/6 25/24 27/3 28/14 31/10 33/16 34/21 34/23 35/2 35/7 35/9 35/10 35/14 35/19 36/4 36/18 37/21 38/4 38/9 38/10 38/11 38/14 40/7 40/7 41/20 42/13 42/15 44/17 46/12 47/13 47/14 47/19 48/23 50/6 50/15 51/7 51/20 53/16 55/7 55/20 59/25 60/3 60/3 60/20 62/16 64/25 64/25 65/5 65/11 65/12 65/14 65/15 65/17 66/4 66/10 66/10 68/4 68/14 68/18 68/19 69/17 70/3 70/8 71/22 91/7 91/9 99/10 100/9 105/9 106/11 106/16 106/25 108/25 109/2 109/7 110/18 111/20 115/16 116/2 116/5 116/6 117/7 117/19 118/9 118/16
italicized [1] 112/13
item [1] 92/25
items [2] 99/4 100/20
its [40] 24/4 29/7 32/19 33/23 36/9 38/24 38/25 38/25 46/6 48/25 54/19 54/22 57/13 63/5 65/4 65/23 67/20 74/1 74/2 74/9 75/25 78/17 79/1 84/19 85/2 86/17 87/2 87/22 88/13 88/23 89/2 89/3 89/16 89/18 90/22 95/20 95/22 103/23 113/4 117/25
itself [4] 18/7 23/6 35/5 102/12

**J**

jerseys [1] 46/13
jive [1] 19/18
job [5] 18/4 18/5 71/22 95/14 95/23
jobs [1] 45/12
Jodi [2] 17/16 54/13
Johnson [5] 9/2 9/4 28/16 31/5 59/11
Jordan [3] 36/2 57/4 89/10
judge [9] 1/9 6/8 7/18 7/24 25/21 26/3 28/3 54/11 64/24
judges [3] 72/3 90/12 93/10
judging [1] 95/16

judicially [1] 91/19
July [1] 30/9
July 3rd [1] 30/9
Jumpman [2] 36/2 89/10
June [3] 29/19 30/4 52/8
June 2011 [1] 52/8
June 2018 [1] 29/19
June 28 [1] 30/4
juror [5] 96/20 96/21 97/20 97/21 117/1
jurors [7] 12/17 95/6 95/11 96/7 96/12 96/7 97/2
jury [74] 1/10 2/21 2/25 3/4 3/8 3/10 3/12 4/5 4/14 4/21 5/25 16/8 18/14 22/17 32/22 33/14 39/21 54/12 57/1 57/24 69/20 70/11 70/12 70/19 70/20 71/18 73/4 85/5 90/9 94/24 95/3 97/4 99/14 100/4 100/8 100/17 101/24 104/22 105/6 105/7 105/17 105/22 106/2 107/4 107/9 107/16 107/19 107/23 108/3 108/9 108/11 108/14 108/15 108/21 108/23 109/1 109/5 109/8 111/1 111/10 114/13 114/22 116/12 116/17 116/18 116/23 117/5 118/10 118/24 118/25 119/2 119/4 119/6 119/14
just [122]
justly [1] 6/9

**K**

Katie [7] 18/3 18/11 29/19 30/1 30/4 30/10 41/16
keep [7] 32/23 34/20 37/15 55/12 56/8 69/13 113/25
keeping [3] 60/21 107/24 108/5
keeps [1] 23/13
Keith [8] 10/2 10/4 11/10 11/10 11/15 25/19 25/19 26/5
Kenisha [5] 14/5 14/22 15/5 15/22 16/11
kept [1] 69/11
Kids [1] 115/9
Kimberly [2] 19/24 20/12
kind [7] 19/25 43/23 49/14 61/3 106/1 115/11 118/8
kinds [2] 37/9 54/9
knew [27] 10/21 16/14 16/14 22/17 29/2 30/13 31/9 31/17 50/21 50/25 53/8 57/11 57/12 62/21 63/20 63/21 63/21 66/1 85/20 88/19 99/19 99/21 99/22 100/3 100/10 100/18 103/9
know [103] 5/16 7/14 11/14 14/12 15/8 15/11 15/23 16/24 16/25 18/3 18/12 18/12 18/14 19/15 20/5 20/7 21/13 21/13 21/13 21/16 22/6 22/6 22/9 22/13 22/23 23/25 25/17 26/19 28/25 29/24 30/8 30/25 31/1 31/10 31/16 33/25 35/6 36/1 36/5 36/6 37/10 37/11 37/15 42/5 42/7 43/16 44/14 44/15 44/16 44/25 45/6 45/8 46/4 46/17 46/17 46/21 47/1 47/6 47/9 48/8 49/2 49/3 50/9 52/4 54/22 55/22 57/17 57/18 61/13 61/22 62/10 63/17 63/17 65/16 65/17 65/25 67/13 67/15 67/25 68/21 85/12 93/17 98/24 100/1 100/6 100/7 100/14 100/18 101/20 103/6 103/6 103/10 105/1 105/13 106/1 110/5 112/12 115/9 115/11 115/24 116/11 117/7 119/15
knowing [2] 85/11 100/6
knowledge [2] 16/9 100/14
known [6] 44/18 89/9 99/20 99/22 100/3 100/15
knows [13] 9/6 9/7 14/11 40/20 40/24 51/9

**K**

**knows... [7]** 52/3 54/20 60/2 63/12 63/15 67/12 90/17
**Knudson [2]** 42/17 64/4
**Krane [1]** 2/6

**L**

**lab [1]** 67/8
**label [11]** 8/8 9/5 9/11 9/25 10/19 11/4 11/5 11/7 12/21 59/5 59/13
**labels [12]** 9/1 9/2 12/11 12/12 12/25 13/1 13/2 13/3 13/4 13/6 13/12 89/12
**laborious [1]** 66/12
**lack [1]** 79/24
**lacked [1]** 87/16
**lacrosse [1]** 32/10
**ladies [9]** 4/17 57/1 57/23 69/25 70/23 90/9 90/12 102/22 117/7
**land [1]** 69/6
**language [5]** 15/21 22/12 90/4 110/14 115/17
**Lapp [7]** 42/13 42/14 44/18 44/20 48/16 48/21 49/20
**large [2]** 54/15 94/17
**larger [1]** 54/9
**last [9]** 24/7 49/12 49/22 50/13 54/21 70/2 98/13 101/16 118/22
**lastly [2]** 57/14 68/20
**late [4]** 4/2 9/24 29/19 62/16
**later [11]** 7/23 19/8 27/7 27/12 42/4 50/15 61/2 64/9 65/13 87/17 115/20
**latter [1]** 118/15
**launched [2]** 44/17 51/19
**law [38]** 4/24 5/10 5/11 5/11 5/13 6/7 6/8 6/9 7/24 35/24 36/15 38/14 42/9 43/23 50/6 61/15 62/18 64/24 70/3 71/13 71/23 72/11 72/12 72/14 72/15 72/18 72/21 76/13 87/25 90/1 91/12 95/18 95/23 98/20 99/23 100/23 115/1 118/7
**lawsuit [1]** 53/19
**lawyer [13]** 27/19 44/5 50/20 52/21 53/3 53/4 53/10 64/19 92/12 92/13 92/14 92/15 105/19
**lawyers [15]** 5/1 5/14 26/18 42/11 53/9 53/13 53/16 54/15 73/1 73/8 73/9 91/22 91/23 92/19 97/12
**layer [2]** 33/23 39/13
**lazy [1]** 66/10
**leads [1]** 92/9
**League [2]** 11/12 49/4
**learn [1]** 63/3
**least [3]** 3/11 105/10 108/22
**leave [2]** 6/6 105/20
**left [8]** 13/8 24/16 32/5 40/3 55/18 57/24 103/14 106/3
**legal [11]** 2/19 20/20 22/13 53/14 54/14 73/20 109/5 109/6 114/3 117/12 117/17
**Lehrer [1]** 50/20
**Lending [2]** 110/6 112/9
**length [5]** 40/14 45/17 45/25 48/1 79/12
**lengthy [1]** 90/10
**less [8]** 13/25 23/14 24/1 39/14 39/24 44/23 45/1 96/20
**let [15]** 8/10 14/20 15/23 27/7 29/24 30/8 69/13 92/2 96/5 98/24 104/23 105/1 111/17 113/19 119/15
**let's [14]** 9/13 16/25 19/18 32/24 39/14 39/15 39/15 41/6 43/15 61/24 62/1 62/5

**letter [6]** 2/6 3/8 27/19 29/13 89/1 106/6
**level [4]** 60/24 68/11 88/8 108/7
**levels [1]** 80/7
**liability [2]** 98/16 98/19
**liable [4]** 76/3 85/7 85/14 98/15
**liar [1]** 58/21
**liars [1]** 58/16
**license [1]** 60/12
**Liebaert [1]** 60/12
**life [3]** 6/18 59/7 60/6
**light [4]** 53/7 74/3 92/6 93/24
**lightweight [7]** 33/24 34/4 35/10 38/24 41/22 47/16 56/20
**like [59]** 4/8 4/10 6/20 6/21 6/21 7/22 8/1 11/9 12/1 12/2 13/8 13/20 14/24 18/24 20/1 20/8 23/4 23/5 23/8 29/7 32/22 33/24 34/5 34/1 34/11 35/17 36/13 37/12 37/16 39/17 40/25 44/5 44/6 45/4 46/14 46/17 59/3 59/3 59/20 60/11 60/12 61/3 61/4 63/8 63/8 64/17 64/23 65/11 65/13 66/10 67/15 68/6 73/14 74/7 88/9 89/10 92/24 111/23 117/19
**liked [2]** 10/5 12/4
**likelihood [39]** 7/19 25/25 76/23 77/1 77/4 77/6 77/9 77/21 77/25 78/13 79/19 79/16 79/21 80/1 80/4 80/6 80/8 80/22 81/5 81/11 82/1 82/4 82/15 82/18 82/23 83/4 83/10 83/16 84/7 84/21 84/23 85/3 101/18 113/2 113/14 114/4 114/6 114/13 115/21
**likely [25]** 14/5 14/22 15/5 15/22 16/12 44/23 45/1 53/7 74/4 74/12 75/3 76/1 76/19 77/13 77/22 78/3 78/8 78/21 79/20 80/18 81/16 81/21 82/2 83/8 89/8
**liken [1]** 62/9
**Limerick [1]** 15/12
**limit [1]** 118/18
**limited [4]** 17/16 59/18 93/1 98/14
**limits [1]** 70/16
**line [8]** 15/2 17/10 28/15 29/4 39/12 39/20 40/1 116/6
**lines [3]** 8/9 8/11 8/13
**links [1]** 30/5
**list [13]** 15/7 19/5 58/8 67/14 68/4 107/19 107/21 107/22 107/24 108/1 108/3 108/4 108/13
**listed [3]** 24/24 78/1 108/9
**listen [4]** 19/12 19/12 71/7 96/12
**listening [1]** 57/21
**listing [1]** 106/16
**litigation [1]** 80/6
**little [13]** 21/22 26/25 32/18 33/13 48/13 54/6 63/4 66/10 69/6 69/16 69/19 80/11 119/11
**live [2]** 16/21 60/14
**living [1]** 54/20
**LLC's [1]** 53/25
**LLP [1]** 1/17
**Locked [1]** 41/25
**Locked-in [1]** 41/25
**Locker [1]** 48/18
**lockout [1]** 10/16
**long [11]** 3/23 14/12 21/21 30/13 41/15 41/19 47/9 58/7 62/2 64/16 66/14
**longer [2]** 45/18 61/6
**LONTEX [121]**
**Lontex's [42]** 8/3 9/17 27/25 36/4 42/25 43/8 45/9 45/10 46/9 49/18 50/20 51/18 52/7 54/3 59/4 60/5 69/8 76/17 78/5 78/10 78/16 78/20 78/21 78/24 80/24 81/3 81/6 82/8 82/10

**look [21]** 11/6 16/18 16/25 20/15 21/18 30/1 31/23 34/11 36/5 39/8 41/6 42/4 42/12 42/14 46/22 55/19 56/9 60/2 63/25 69/20 118/17
**looked [8]** 16/24 17/3 24/12 30/10 36/11 52/7 55/18 69/5
**looking [8]** 7/20 54/16 56/6 60/23 62/13 64/1 64/2 112/25
**lose [1]** 38/17
**lot [14]** 14/25 17/18 18/20 18/25 20/11 39/6 45/1 45/4 50/8 57/18 57/19 57/19 105/16 117/21
**love [2]** 111/24 111/24
**lower [1]** 79/9
**lunch [2]** 70/8 108/21
**Lycra [2]** 6/11 37/18
**lying [1]** 11/19

**M**

**Mack [2]** 19/24 20/12
**Macs [1]** 50/19
**made [15]** 15/8 20/23 23/3 25/6 28/13 30/10 36/18 37/2 54/1 55/19 58/10 62/23 63/20 63/21 92/18
**mail [1]** 62/15
**main [2]** 95/6 95/11
**Major [2]** 11/12 49/4
**majority [2]** 26/1 78/1
**make [34]** 5/14 20/21 24/20 29/6 38/7 39/14 40/24 42/9 43/21 60/22 63/15 63/17 63/17 63/22 66/1 67/12 70/23 71/3 72/5 73/10 74/8 83/14 92/1 92/19 92/19 101/17 101/25 102/16 102/23 103/20 105/13 105/25 116/12 116/13
**makes [10]** 14/25 34/23 45/18 46/11 50/17 51/12 51/24 80/3 91/12 94/16
**making [8]** 34/25 37/4 40/4 44/22 45/3 79/8 79/9 86/7
**man [1]** 25/8
**management [5]** 15/14 29/6 29/20 30/16 31/16
**manager [3]** 28/16 29/4 49/6
**Mangum [2]** 23/18 28/20
**manipulated [1]** 25/6
**mannequins [1]** 15/16
**manner [3]** 86/17 93/19 98/10
**manpower [1]** 105/21
**manufacture [5]** 81/14 81/15 81/22 83/6 83/7
**many [17]** 5/16 6/21 9/12 9/14 17/19 18/4 19/17 26/8 47/19 49/25 51/2 51/3 62/13 62/14 80/2 88/13 102/15
**marathon [2]** 10/17 66/21
**marathons [1]** 59/7
**mark [41]** 25/7 44/12 44/18 51/7 61/20 65/19 65/21 75/21 76/12 76/3 76/15 76/16 78/6 78/11 78/17 78/18 78/20 78/25 79/1 79/19 82/11 82/13 82/16 84/14 86/25 87/3 87/5 87/11 87/13 87/16 87/17 90/6 110/9 110/10 110/13 110/18 112/10 112/21 112/23 113/7 115/13
**mark's [1]** 79/3
**marked [1]** 107/21
**market [21]** 1/22 17/11 45/19 45/21 46/15 48/2 48/6 48/8 48/10 49/13 49/15 68/6 81/16 81/17 81/19 81/23 81/24 83/8 83/9 84/12 89/15
**marketed [1]** 80/19

# M

**marketing [8]** 20/16 40/24 52/24 80/21 80/25 82/20 82/22 84/18
**marketplace [8]** 13/5 13/22 14/3 16/4 39/2 67/12 80/8 89/22
**markets [5]** 49/8 80/17 81/1 81/4 89/18
**marking [1]** 80/15
**marks [3]** 49/22 49/23 84/22
**Marlins [1]** 24/17
**mask [1]** 70/23
**massive [1]** 40/5
**material [3]** 23/2 37/18 40/12
**materials [1]** 26/7
**matter [13]** 2/18 19/17 31/22 43/17 47/13 53/14 61/10 64/21 65/2 66/17 68/6 102/5 119/22
**matters [1]** 65/1
**may [55]** 2/11 16/16 19/24 23/20 26/5 72/4 72/4 72/5 73/17 74/15 74/17 74/18 75/14 76/3 76/5 76/7 78/15 80/12 80/18 81/9 81/21 82/25 83/5 83/20 84/9 84/16 85/7 86/18 87/10 87/14 90/14 91/24 92/3 92/14 93/2 93/8 93/12 93/14 94/6 94/10 94/10 94/11 94/14 94/22 96/6 97/11 97/12 98/6 98/20 104/22 105/6 111/21 112/18 116/13 116/25
**maybe [5]** 11/18 31/3 42/3 64/4 65/8
**McDonald [3]** 42/24 45/10 55/3
**McDonald's [1]** 50/18
**me [28]** 2/4 2/5 3/20 5/11 13/24 14/20 18/17 33/1 53/16 55/25 60/3 60/3 66/10 70/24 70/25 71/3 79/5 79/11 87/21 97/5 97/8 97/11 98/24 104/23 107/16 108/1 111/17 113/19
**mean [17]** 8/1 14/1 23/4 35/22 39/2 43/24 44/2 45/10 49/21 56/13 60/13 66/8 109/7 111/3 111/4 117/18 118/8
**meaning [2]** 78/12 79/22
**meanings [1]** 90/3
**means [22]** 8/4 14/2 20/11 23/11 23/25 24/1 35/7 35/7 36/15 36/16 41/21 41/22 44/12 53/24 61/2 61/6 74/2 75/25 92/15 93/11 117/20 118/3
**meant [3]** 34/18 34/19 95/15
**measure [1]** 80/9
**media [1]** 80/20
**medical [3]** 46/15 48/8 51/6
**meet [2]** 74/9 75/13
**member [4]** 5/25 32/22 57/24 95/3
**members [1]** 47/5
**memorable [1]** 10/4 10/5 64/9
**memorized [1]** 64/16
**memory [4]** 25/16 93/18 96/24 96/24
**men [2]** 25/15
**men's [4]** 21/22 32/10 41/15 64/3
**mental [1]** 83/23
**mention [2]** 34/1 102/20
**mentioned [1]** 96/21
**mentioning [1]** 34/20
**merely [2]** 15/20 73/22
**mesh [7]** 33/25 34/3 35/10 38/25 41/21 47/16 56/20
**message [5]** 6/17 6/23 59/8 61/21 105/15
**messages [2]** 97/8 97/14
**messaging [1]** 88/8
**messed [1]** 49/15
**method [1]** 80/7
**methodology [1]** 80/14
**metric [2]** 62/5 62/6

**MICHAEL [1]** 2/13
**michael.hynes [1]** 1/19
**middle [1]** 40/2
**might [13]** 15/7 18/9 61/6 64/21 66/17 81/14 81/22 83/6 93/6 93/6 109/12 113/9 113/18
**million [10]** 9/16 17/4 19/9 19/10 19/10 32/7 59/17 59/20 69/3 69/10
**mind [6]** 23/1 42/9 56/7 59/11 75/19 96/17
**minds [1]** 9/22
**mine [2]** 72/7 95/14
**minute [6]** 32/5 32/6 46/2 50/14 70/5 99/24
**minutes [9]** 3/25 4/3 5/21 5/22 22/3 57/24 58/1 70/7 70/14
**misleading [1]** 38/18
**miss [1]** 70/24
**missed [2]** 57/18 57/19
**mistake [3]** 24/20 24/21 38/4
**MMX [3]** 20/16 40/6 46/6
**model [4]** 8/8 20/18 40/14 109/24
**modification [1]** 103/3
**modifications [1]** 102/23
**modifier [2]** 20/18 21/7 40/14
**modify [1]** 103/9
**moment [3]** 21/16 33/1 58/20
**money [1]** 53/7
**months [3]** 27/7 34/9 47/2
**more [8]** 6/15 13/11 25/14 30/24 32/16 34/1 37/13 39/14 39/15 39/23 44/23 45/4 45/4 45/7 45/8 48/13 56/11 57/7 59/16 64/12 66/10 69/9 74/3 74/12 75/3 78/21 79/8 81/3 81/10 81/21 90/24 96/19 97/14 111/12 117/18 118/15 118/21 119/13
**morning [3]** 4/17 6/3 105/2
**mortar [1]** 48/23
**most [9]** 25/21 45/14 50/6 52/10 58/10 65/2 65/2 65/3 78/15
**mostly [1]** 52/11
**motive [1]** 93/20
**mouth [1]** 20/9
**mouthful [1]** 68/14
**move [7]** 33/4 39/7 46/20 46/21 47/12 48/13 66/13
**moved [3]** 5/17 10/7 47/16
**Mr [1]** 60/19
**Mr. [100]** 2/12 2/16 2/25 3/1 3/6 3/13 3/15 3/19 3/23 5/20 6/2 6/10 8/25 11/1 11/23 12/1 12/25 21/12 26/24 26/25 27/12 27/16 29/13 30/18 32/5 33/3 33/8 35/1 35/21 36/8 36/10 36/12 36/22 37/1 37/2 37/4 38/10 38/13 42/17 42/17 42/21 43/6 43/12 43/13 43/18 43/21 45/7 46/2 46/5 46/7 46/20 46/25 47/4 47/24 48/5 48/9 48/19 48/22 49/3 49/3 49/8 50/24 51/17 52/12 52/24 53/3 53/14 54/3 54/13 54/18 55/8 55/14 55/16 55/21 55/23 56/1 56/4 56/5 56/12 56/24 57/23 58/3 58/14 58/14 58/18 59/8 60/6 60/16 63/6 66/21 66/24 99/3 102/9 102/10 106/20 109/11 110/25 114/21 119/5
**Mr. Ball [4]** 27/12 36/12 42/17 55/14
**Mr. Bechtel [2]** 52/24 53/14
**Mr. Coolmax [1]** 52/12
**Mr. Cunningham [3]** 45/7 55/14 55/16
**Mr. Cunningham's [1]** 43/13
**Mr. David [1]** 30/18
**Mr. Drews [1]** 102/9
**Mr. Heil [1]** 49/3
**Mr. Hynes [1]** 33/3 33/8
**Mr. Knudson [1]** 42/17
**Mr. Nathan [52]** 2/12 2/16 2/25 3/1 3/6 3/13

**MICHAEL J. [1]** 2/13 12/1 12/25 26/24 26/25 27/16 29/13 35/21 36/8 36/22 37/1 37/2 37/4 38/10 38/13 42/21 43/21 46/5 46/7 46/20 46/25 47/24 48/5 48/9 48/19 48/22 49/3 49/8 50/24 54/3 55/21 55/23 56/24 58/14 58/14 58/18 60/6 60/16 63/6 66/21 66/24
**Mr. Nathan's [3]** 36/10 43/18 58/18
**Mr. Poret [1]** 43/6
**Mr. Rosen [1]** 53/3
**Mr. Schwartz [2]** 21/12 106/20
**Mr. Smith [2]** 56/4 56/12
**Mr. Wagner [19]** 3/23 5/20 6/2 32/5 35/1 43/12 46/2 47/4 51/17 55/8 56/1 56/5 57/23 58/3 99/3 102/10 109/11 114/21 119/5
**Mr. Wagner's [3]** 54/13 54/18 110/25
**Ms [5]** 2/9 2/24 3/9 115/3 119/8
**Ms. [17]** 2/4 2/12 3/18 45/10 45/13 47/4 47/7 54/13 55/3 73/3 103/12 105/1 107/24 108/3 108/9 108/20 119/14
**Ms. Bromert [3]** 45/13 47/4 47/7
**Ms. DiSanti [9]** 2/4 73/3 103/12 105/1 107/24 108/3 108/9 108/20 119/14
**Ms. Durham [2]** 2/12 3/18
**Ms. Jodi [1]** 54/13
**Ms. McDonald [2]** 45/10 55/3
**much [11]** 20/8 20/9 37/21 55/11 57/7 80/11 91/14 107/14 107/16 108/21 110/12
**must [33]** 18/18 35/4 71/25 72/11 72/12 72/15 72/17 73/6 73/16 73/18 73/20 74/10 75/7 76/25 77/12 82/3 83/12 85/17 86/13 86/23 87/1 91/20 92/1 93/1 95/16 96/10 97/9 97/19 97/21 97/21 98/19 110/8 118/18
**mutually [1]** 113/16
**my [37]** 3/25 5/2 6/9 12/13 20/1 20/5 20/6 20/15 23/17 25/5 28/23 29/3 32/17 33/1 40/6 53/10 53/16 56/7 58/10 58/21 65/11 70/23 71/22 71/23 72/5 73/20 87/20 95/9 95/23 98/9 100/7 107/2 109/4 109/17 111/21 116/14 117/14
**myself [1]** 72/4

# N

**Najeeb [2]** 9/10 58/15
**name [83]** 6/25 7/2 7/13 8/2 9/24 10/13 11/2 13/17 14/1 14/4 14/9 14/9 14/10 15/4 15/20 15/24 16/4 17/10 17/11 17/20 17/22 17/23 19/16 19/20 19/21 19/23 20/16 20/19 20/24 21/3 21/5 21/6 21/8 21/10 21/11 21/20 21/24 22/1 22/4 22/7 22/8 22/9 22/15 23/7 24/5 25/3 26/10 27/4 27/25 28/1 31/3 32/2 32/8 35/3 35/4 35/5 35/13 40/10 40/21 40/23 41/3 41/19 41/20 42/13 50/25 59/8 61/16 61/16 61/22 63/19 63/21 65/3 65/4 68/11 68/12 68/14 69/1 69/1 84/17 88/4 88/10 90/1 110/1
**names [26]** 11/3 13/19 13/25 18/5 18/6 20/20 20/22 22/13 28/7 28/8 29/1 29/25 31/7 31/11 51/14 59/12 59/12 61/21 63/22 64/7 64/9 88/5 88/18 88/22 88/24 88/9
**naming [1]** 21/2
**narrative [3]** 11/22 69/16 69/16
**narrow [1]** 61/10
**Nathan [52]** 2/12 2/16 2/25 3/1 3/6 3/13 3/15 3/19 6/10 8/25 11/1 11/23 12/1 12/25 26/24 26/25 27/16 29/13 35/21 36/8 36/22 37/1 37/2 37/4 38/10 38/13 42/21 43/21 46/5 46/7 46/20 46/25 47/24 48/5 48/9 48/19 48/22 49/3 49/8 50/24 54/3 55/21 55/23 56/24 58/14 58/14 59/8 60/6 60/16 63/6 66/21

**N**

Nathan... [1] 66/24
Nathan's [3] 36/10 43/18 58/18
natural [1] 15/2
nature [1] 90/13
necessarily [2] 111/5 116/16
necessary [7] 74/2 75/13 87/7 99/10 110/9
110/10 110/13
need [17] 49/9 50/23 51/4 51/6 51/8 52/19
53/22 53/23 58/9 61/22 68/21 68/22 76/23
83/21 101/25 105/19 108/15
needed [1] 114/2
needs [2] 5/23 107/16
negligence [1] 100/15
neighbor [2] 103/14 103/17
neither [3] 36/19 89/21 107/22
never [21] 7/6 28/16 28/16 28/17 28/19
36/14 42/18 44/14 49/15 51/5 51/19 56/1
56/17 57/15 60/16 61/19 62/15 68/25 87/10
88/22 97/14
nevertheless [1] 7/8
new [9] 1/18 34/9 37/19 39/12 53/18 53/19
60/24 115/6 115/9
next [26] 7/11 8/22 9/10 11/17 13/16 15/25
18/7 19/22 31/4 34/5 34/13 40/5 47/23
47/25 51/23 53/4 53/10 54/18 54/19 54/20
55/1 56/22 57/3 61/8 101/15 102/3
nice [1] 4/10
Nick [5] 9/1 9/4 28/16 31/5 59/11
night [1] 65/16
nights [1] 14/13
NIKE [276]
Nike's [70] 9/16 11/17 14/2 15/25 17/21
17/21 18/5 18/25 21/1 21/2 21/15 22/19
23/19 24/8 25/17 26/8 26/18 28/4 29/20
30/16 34/6 36/11 38/10 41/9 43/2 46/1 48/3
48/9 49/4 49/21 53/5 58/12 60/4 60/20 60/25
62/17 65/18 65/20 65/20 76/19 77/12 77/22
78/6 78/11 78/22 79/17 80/25 81/3 81/16
81/17 82/17 82/21 83/1 84/10 84/23 86/20
86/21 88/10 88/15 88/16 88/21 89/2 89/6
89/9 89/14 104/11 104/13 104/15 109/21
110/3
Nike.com [3] 21/15 21/23 32/9
nine [2] 50/6 81/6
Ninth [5] 113/20 113/24 114/1 114/17 115/9
no [93] 3/16 7/17 7/17 7/17 10/4 11/24 11/25
12/19 13/11 17/7 17/17 18/16 19/17 20/23
22/15 24/2 25/15 27/7 31/2 31/17 32/7 35/22
38/19 40/24 42/20 42/22 43/7 44/4 44/9
44/15 44/20 47/5 47/16 48/23 50/7 50/17
52/16 53/7 53/24 53/24 53/25 56/7 56/12
56/16 58/20 60/1 60/9 61/6 61/9 61/12 64/2
65/6 65/15 66/11 66/22 67/10 67/23 67/24
67/25 69/13 69/17 72/3 73/21 77/24 82/6
89/13 91/12 95/9 96/19 96/19 99/9 99/15
102/17 102/17 102/20 103/2 103/24 104/7
104/12 104/14 104/16 104/19 104/23 107/13
108/15 109/20 112/16 116/15 117/1 117/10
119/1 119/7 119/9
No. [6] 44/19 103/22 104/6 109/8 116/13
117/24
No. 1 [1] 103/22
No. 2 [1] 44/19
No. 3 [1] 104/6
No. 4 [3] 109/8 116/13 117/24
nobody [3] 5/23 36/16 54/20
nominative [15] 110/18 111/19 111/22 112/2
114/10 114/15 114/23 115/7 116/4
non [1] 109/6
non-legal [1] 109/6
none [2] 42/15 93/13
nonetheless [2] 76/3 80/19
Nordstrom's [1] 36/1
Norman [1] 50/20
not [193]
notate [1] 18/25
note [1] 108/25
notes [8] 5/14 12/14 71/9 95/1 96/21 96/22
97/1 97/2
nothing [9] 40/3 46/7 56/7 72/7 95/14 98/8
98/9 105/24 118/7
notice [1] 84/4
noticed [1] 91/19
noting [1] 116/8
noun [3] 22/25 23/5 68/19
now [78] 4/19 5/18 5/22 6/16 7/4 8/4 8/22
16/19 17/1 17/2 17/6 19/24 22/2 23/10 24/19
25/4 25/12 25/20 28/2 28/10 30/1 31/1 33/20
35/16 40/19 42/1 42/2 42/14 42/18 43/12
44/5 44/13 45/18 45/22 45/22 46/1 49/23
53/20 54/1 55/14 60/4 60/5 63/5 63/6 63/15
64/13 65/8 65/13 66/15 70/5 71/6 71/18
71/22 72/12 72/21 73/24 75/20 77/10 77/20
81/25 83/18 85/4 86/4 86/21 87/18 87/21
90/9 94/23 98/23 103/12 104/22 108/21
108/25 117/21 118/6 118/9 118/20 118/24
nowhere [1] 2/14
nuclear [3] 15/12 65/9 66/18
number [25] 2/19 7/20 16/22 19/12 19/13
25/25 33/21 33/22 45/17 47/25 48/1 48/3
48/6 49/20 62/1 76/24 78/5 79/11 79/12
83/23 93/15 97/16 109/13 109/20 112/23
Number 1 [1] 33/21
Number 2 [2] 33/22 112/23
Number 4 [2] 109/13 109/20
Number 5's [1] 48/3
number 6 [1] 47/25
Number four [1] 79/12
numbers [2] 54/4 102/9
numeral [1] 113/1
numerous [1] 54/15
NY [1] 1/18

**O**

oath [1] 95/24
object [2] 92/15 111/3
objected [2] 102/6 102/9
objecting [1] 4/7
objection [5] 73/12 73/13 92/18 92/22 92/22
objections [6] 2/18 73/8 73/10 91/23 92/18
92/19
obligation [2] 73/9 92/19
obliged [1] 117/9
observed [1] 45/7
obtain [1] 76/5
obtained [1] 33/21
obtaining [1] 96/18
obvious [4] 29/2 31/17 68/4 69/17
obviously [3] 36/9 64/8 117/15
occurred [2] 101/10 114/8
occurs [1] 112/10
October [1] 1/6
off [15] 14/18 15/7 17/17 18/23 30/14 51/6
51/16 52/17 53/22 57/16 62/3 62/4 63/7
70/23 95/9
offers [1] 92/12
office [2] 38/12 76/7
officer [1] 97/5
official [2] 1/21 96/22
often [1] 75/22
oh [12] 9/5 11/20 16/2 24/18 30/11 36/13
41/14 55/19 60/20 62/19 63/11 68/14
Ohio [1] 25/8
okay [33] 2/3 4/12 4/16 6/2 12/15 21/14
29/18 31/6 33/3 35/2 43/12 43/15 46/21
47/25 50/13 52/18 53/17 54/24 57/23 59/14
70/19 70/22 90/9 99/2 102/4 102/16 103/12
104/22 107/15 108/19 109/4 117/17 119/16
old [2] 36/25 65/4
once [5] 13/3 29/12 98/8 104/23 115/21
one [109] 2/5 4/21 5/1 9/13 11/24 11/24
12/20 14/12 17/1 18/9 30/6 32/5 32/6 32/22
33/15 33/24 33/25 34/8 36/16 37/14 38/2
38/23 39/23 41/2 41/3 42/12 44/8 44/9 44/9
44/10 44/11 45/3 45/23 47/4 47/5 47/13
47/22 49/5 49/12 49/22 49/25 50/3 50/6 50/7
50/17 52/16 54/9 54/19 54/20 54/21 56/11
56/12 57/10 58/25 59/4 61/9 63/14 65/13
67/25 70/1 72/3 72/14 74/23 78/5 80/7 82/7
85/19 86/14 87/2 89/8 90/15 90/24 91/10
91/10 95/3 95/6 96/6 97/14 97/17 98/13 99/4
99/18 102/15 102/17 102/24 103/8 103/13
103/15 104/5 105/19 106/6 106/7 106/11
106/11 106/21 106/23 109/12 109/18 109/23
111/6 111/10 112/16 112/22 113/19 113/22
115/5 116/15 117/10 117/11
one's [4] 31/17 38/19 67/23 68/1
ones [2] 34/7 68/5
online [8] 16/21 17/12 17/13 53/7 62/13
63/23 66/8 88/12
only [34] 11/21 15/2 16/10 16/11 16/12
18/21 26/10 31/21 34/1 35/5 38/1 52/12
56/17 73/21 75/17 76/23 86/8 86/16 87/7
92/1 93/1 93/12 96/1 96/23 100/20 106/6
108/8 108/12 109/18 110/12 112/15 112/21
113/14 115/22
onward [1] 8/18
oops [1] 22/11
open [3] 26/23 95/5 95/13
opened [2] 26/22
opening [2] 11/19 35/1
opens [1] 2/2
opinion [13] 72/9 72/19 94/2 94/5 94/7 94/8
94/10 94/18 94/21 94/22 96/15 115/20
116/10
opinions [1] 96/17
opportunity [1] 93/16
opposed [2] 84/22 99/22
opposing [1] 4/8
opposite [2] 74/7 101/1
order [7] 8/25 83/16 86/25 97/20 98/6 113/7
116/2
ordered [2] 8/25 93/3
orders [1] 45/16
ordinary [7] 76/20 77/1 77/13 78/7 87/3
101/18 117/18
organization [1] 25/17
organize [1] 16/12
origin [2] 76/22 78/20
ostrich [2] 29/7 65/23
other [56] 2/20 10/4 14/17 15/10 18/10
23/21 28/25 34/5 34/13 36/16 38/15 39/23
44/10 44/24 56/22 63/7 63/14 72/1 72/10

**O**

**other...** [37] 72/24 73/14 75/21 75/25 79/6
81/10 81/13 81/21 84/17 84/22 86/14 88/9
88/17 90/23 91/17 92/13 92/24 93/2 93/5
93/22 93/24 93/25 94/4 94/22 96/6 96/8
96/12 98/22 103/5 103/6 104/2 106/10
106/21 115/24 118/13 104/24 119/1
**other's** [2] 80/17 81/19
**others** [2] 43/15 86/6
**otherwise** [3] 32/23 74/16 98/3
**our** [22] 3/12 3/12 3/17 9/22 11/20 18/19
18/24 20/11 24/23 25/21 27/20 30/24 31/21
31/23 31/23 32/9 43/6 46/15 62/9 71/2
111/24 113/23
**ours** [1] 45/25
**out** [68] 8/6 8/15 10/7 10/9 11/5 11/6 11/20
12/2 12/11 12/13 12/21 12/24 13/1 13/4
13/13 13/24 15/11 15/11 15/12 16/4 16/9
16/10 16/13 17/11 23/2 23/17 27/2 27/16
31/4 32/11 34/9 36/4 37/19 39/10 39/13
41/10 46/6 46/14 47/24 50/15 50/23 51/1
51/5 52/9 52/18 53/23 54/4 56/24 58/5 60/7
60/13 60/25 62/7 69/5 71/5 72/14 75/19
84/12 103/12 106/2 107/9 107/20 107/23
108/15 117/8 118/4 118/21 119/16
**outcome** [1] 93/20
**outlet** [1] 15/11
**outside** [9] 39/17 44/16 73/17 90/19 91/1
91/7 91/9 91/25 92/3
**outweighed** [1] 94/21
**over** [24] 6/21 10/3 10/3 13/18 13/18 14/19
15/6 17/4 30/24 31/10 32/15 36/3 36/4 40/25
55/18 68/24 69/11 70/9 71/4 71/13 95/4
97/23 98/25 107/3
**overall** [1] 78/10
**overlap** [1] 65/10
**overlapping** [2] 66/23 68/3
**overruled** [2] 73/14 92/23
**overwhelming** [3] 12/6 31/20 84/13
**overwhelmingly** [1] 68/3
**own** [34] 13/10 13/23 19/1 19/20 20/16 21/1
21/2 21/15 22/20 36/4 36/10 42/9 45/9 50/20
54/13 55/2 61/6 61/20 62/16 62/21 63/5
64/19 68/13 86/17 87/22 89/2 90/17 96/14
109/7 112/11 112/13 113/8 115/14 117/23
**owner** [6] 76/5 77/15 77/19 81/22 86/6 113/8
**ownership** [4] 76/8 87/11 99/6 102/25
**owns** [5] 60/10 76/12 76/15 88/1 103/1

**P**

**p.m** [10] 105/8 107/17 107/17 108/24 108/24
109/2 116/24 119/4 119/18 119/19
**PA** [3] 1/6 1/22 1/23
**page** [5] 22/1 34/16 53/1 56/5 56/6
**page 107** [1] 34/16
**pages** [5] 31/21 54/25 56/10 108/3 108/10
**paid** [2] 94/12 94/15
**painful** [1] 22/3
**pair** [1] 40/2
**pamphlet** [1] 47/2
**panels** [7] 33/25 34/4 35/10 38/25 41/21
47/16 56/20
**pants** [1] 40/2
**paper** [2] 33/14 97/9
**paraded** [1] 47/4
**paragraph** [3] 55/13 100/3 103/25
**Paragraph 2** [1] 103/25
**paralegals** [1] 54/15

**Parker** [2] 23/18 28/20
**part** [12] 4/20 42/3 47/14 49/4 50/6 58/7
66/4 71/15 73/21 87/20 93/12 115/14
**particular** [4] 12/18 45/6 78/19 92/16
**parties** [4] 72/20 91/18 91/22 117/22
**parties'** [1] 79/18 81/11
**partner** [1] 60/23
**party** [8] 72/18 85/15 85/23 87/19 87/21
103/5 103/17 111/13
**party's** [1] 79/19
**passed** [1] 69/23
**past** [2] 35/25 105/5
**patent** [2] 6/24 76/6
**patients** [1] 37/3
**pay** [2] 4/25 20/7
**payment** [1] 38/1
**peak** [1] 67/20
**Peduzzi** [3] 10/15 11/5 25/7
**Peg** [1] 41/18
**Pegasus** [1] 41/17
**PENNSYLVANIA** [1] 1/1
**people** [43] 6/16 7/20 8/12 9/15 11/14 11/14
12/15 13/24 14/18 14/20 15/3 24/8 25/23
25/25 30/11 30/22 31/2 37/19 38/15 41/13
41/15 45/12 45/13 52/1 59/6 60/17 62/13
62/14 62/24 63/2 64/9 66/16 66/20 66/20
67/2 67/6 67/10 68/7 68/8 92/7 105/16 109/6
119/16
**PEPPER** [1] 1/13
**perceived** [1] 81/6
**percent** [10] 12/5 16/18 16/21 17/4 19/3
19/4 19/12 37/17 37/18 71/6
**perch** [1] 29/23
**perched** [1] 30/3
**perfect** [3] 46/11 51/24 80/22
**perform** [2] 72/17 96/5
**performance** [3] 6/18 67/19 67/21
**perhaps** [1] 26/13
**period** [3] 30/21 79/14 112/11
**periods** [1] 30/19
**perjured** [1] 58/16
**permission** [1] 61/23
**permit** [1] 72/18
**permitted** [2] 73/22 92/14
**person** [18] 47/8 60/2 60/10 69/14 85/7 85/8
85/9 85/10 85/11 85/12 91/6 94/10 94/12
94/13 94/14 94/16 95/4 103/6
**person's** [1] 67/25
**personal** [3] 38/6 38/6 89/17
**personally** [1] 96/1
**persuade** [1] 97/1
**persuasion** [1] 75/13
**phase** [3] 98/14 98/16 98/19
**phased** [1] 31/4
**Philadelphia** [2] 1/6 1/23
**Phillies** [1] 10/12
**phone** [8] 27/12 37/25 38/10 43/18 43/19
47/8 54/18 95/9
**phony** [1] 55/4
**phrase** [1] 100/18
**phrases** [2] 86/8 86/10
**physical** [7] 36/24 45/11 46/16 49/12 49/13
64/5 89/17
**pick** [1] 46/5
**picked** [2] 43/18 107/3
**picture** [8] 8/7 28/17 36/12 59/19 59/20
64/14 64/15 71/8
**pictures** [1] 8/8

**PIPER** [1] 1/17
**place** [11] 5/8 8/19 18/9 20/22 29/5 31/10
40/25 68/24 69/7 97/3 118/19
**placed** [1] 106/17
**places** [8] 6/21 26/8 53/1 56/22 59/1 59/2
59/25 60/8
**plain** [1] 115/17
**plaintiff** [8] 1/4 1/12 5/20 73/25 113/6
113/13 114/9 115/21
**plaintiff's** [10] 105/24 106/13 110/9 110/10
110/11 110/13 112/10 113/7 115/13 115/16
**plan** [1] 39/20
**plant** [1] 15/12
**platform** [3] 20/16 21/6 40/12
**platforms** [2] 40/9 88/7
**play** [1] 111/14
**player** [2] 10/21 37/5
**players** [9] 10/8 10/16 11/7 46/9 46/9 46/11
46/12 46/12 49/9
**please** [10] 4/5 4/16 6/2 32/23 53/18 58/3
70/19 70/25 116/17 117/1
**plenty** [2] 10/18 42/15
**plus** [6] 19/10 20/14 21/3 22/10 22/14 22/17
10/17
**ply** [1] 10/17
**point** [12] 21/9 22/2 22/5 27/23 29/15 31/2
57/25 63/16 63/24 65/23 71/20 109/18
**pointed** [2] 12/13 43/13
**pointing** [1] 59/25
**points** [3] 32/17 58/10 58/10
**policy** [1] 21/1
**popular** [1] 39/14
**Poret** [2] 43/2 43/6
**portion** [1] 94/17
**position** [1] 24/4
**positions** [1] 5/19
**possible** [2] 46/13 80/7
**post** [1] 43/8
**post-2016** [1] 43/8
**poster** [1] 102/7
**posture** [1] 37/2
**potential** [2] 79/6 101/22
**power** [1] 15/12
**powerless** [1] 6/7
**practice** [1] 54/14
**precise** [1] 75/11
**prefer** [1] 71/7
**preference** [1] 40/16
**prejudice** [4] 72/18 72/19 93/21 96/6
**prepare** [1] 42/19
**prepared** [2] 5/18 97/22
**preparing** [1] 5/17
**preponderance** [19] 26/3 74/1 74/13 74/15
74/25 75/14 75/16 76/18 77/4 77/7 85/18
85/25 86/2 86/13 103/23 103/25 104/11
109/10 117/25
**prerequisite** [1] 79/20
**present** [4] 2/21 10/14 80/6 80/13
**presentations** [3] 10/1 10/1 59/6
**presented** [5] 73/19 76/10 88/13 91/12 97/7
**preside** [1] 95/4
**press** [1] 53/1
**presumption** [3] 76/14 87/14 87/14
**pretrial** [1] 107/2
**pretty** [2] 51/19 55/11
**prevented** [1] 28/8
**previously** [2] 83/17 83/19
**price** [3] 44/20 79/4 79/5
**prices** [1] 45/6

# P

**prior [1]** 83/25
**privy [1]** 26/20
**pro [49]** 14/10 14/25 15/14 15/17 17/2 17/14
17/20 17/22 20/17 21/6 21/10 21/21 23/20
23/21 24/13 24/16 25/3 25/9 26/6 26/23 29/6
31/16 31/22 32/1 32/12 33/23 34/3 34/7 35/8
35/9 36/3 39/12 40/7 40/8 40/8 40/11 40/11
41/14 49/1 49/2 53/7 66/24 67/10 68/16 69/3
89/9 89/10 89/11 89/25
**probably [3]** 5/23 70/7 105/11
**probative [1]** 80/4
**problem [6]** 11/21 47/17 56/9 58/20 65/6
110/23
**problems [2]** 9/5 12/12
**procedures [1]** 71/2
**proceed [6]** 6/2 32/24 58/4 98/17 104/6
104/21
**proceedings [3]** 104/19 119/19 119/22
**process [2]** 46/6 106/1
**produced [2]** 12/24 74/18
**producers [1]** 81/19
**product [102]** 7/13 8/9 9/16 9/17 12/2 12/16
13/17 13/25 14/1 14/4 15/4 15/24 16/4 16/15
17/6 17/10 17/20 17/23 18/5 19/2 19/16
19/19 19/21 19/23 21/2 21/5 21/8 21/10
21/17 21/19 21/24 22/1 22/8 23/7 24/5 25/2
25/25 28/7 28/7 28/15 29/4 29/25 31/3 31/7
31/11 32/2 32/8 35/3 35/3 35/5 35/13 35/14
35/15 37/4 39/1 40/22 41/3 41/19 41/23 42/5
42/23 44/10 44/15 46/24 47/14 47/14 47/17
48/4 49/2 56/9 61/16 61/16 61/20 62/11
62/12 62/13 62/14 62/15 62/16 63/19 63/21
63/22 64/2 64/7 66/24 68/10 68/12 68/14
69/1 69/1 75/22 81/5 81/22 86/9 88/4 88/5
88/18 110/11 110/11 110/15 111/24 112/11
**product's [2]** 15/20 89/25
**products [98]** 14/1 14/8 14/10 15/1 16/9
17/2 17/5 17/10 17/13 18/4 18/13 18/20
18/21 23/14 23/21 23/21 24/13 26/8 31/21
31/22 33/24 34/8 36/9 36/19 36/20 38/9
38/16 39/24 39/24 41/16 41/18 42/6 42/18
44/22 45/1 45/15 45/19 45/21 45/24 45/25
46/10 46/16 47/21 48/20 48/25 49/5 50/2
50/7 50/25 51/2 51/3 52/10 53/25 54/19
56/23 62/2 62/4 62/14 66/22 67/8 67/10
67/24 76/2 77/2 77/15 77/16 77/18 77/19
78/8 79/14 81/7 81/7 81/8 81/11 81/15 81/16
83/7 83/7 84/22 85/17 85/19 85/21 85/23
86/17 86/18 88/10 89/8 89/9 89/11 89/14
89/16 89/16 89/18 89/22 89/25 90/7 103/10
115/14
**products are [1]** 76/2
**professional [10]** 6/13 10/21 10/23 11/16
37/5 37/24 66/23 67/1 67/11 108/20
**programs [1]** 55/1
**prohibit [1]** 4/7
**prominent [1]** 61/16
**prominently [1]** 102/10
**promise [1]** 34/1
**promising [1]** 67/20
**promoted [2]** 15/13 84/5
**promoting [1]** 83/24
**promptly [3]** 98/17 118/21 119/13
**proof [8]** 71/12 73/24 75/15 75/16 76/11
90/24 95/20 101/9
**proper [2]** 102/2 114/12
**property [18]** 6/5 7/25 8/2 8/3 13/11 28/1

**proposed [2]** 101/8 110/4
**prospective [1]** 77/1
**protect [3]** 6/7 65/7 75/23
**protects [1]** 62/18
**prove [20]** 38/25 50/11 51/8 56/18 57/13
74/2 75/7 76/25 76/25 77/3 79/25 79/25
85/18 86/2 86/13 86/24 87/1 87/1 89/6 103/5
**proved [8]** 74/13 74/14 77/6 85/24 90/22
103/25 104/10 117/24
**proven [1]** 75/1
**proves [2]** 60/9 115/21
**provide [3]** 37/6 49/2 109/19
**provides [2]** 49/5 109/25
**proving [6]** 73/25 74/20 74/24 75/2 76/18
114/9
**public [8]** 72/19 78/19 81/14 81/22 82/21
83/5 83/9 113/9
**pull [1]** 39/20
**pulled [1]** 20/1
**pulling [1]** 20/2
**punish [1]** 54/8
**punished [1]** 62/6
**purchase [5]** 43/21 44/22 45/3 79/8 79/9
**purchased [1]** 12/18
**purchasing [1]** 53/5
**purely [1]** 86/17
**purporting [1]** 113/5
**purpose [6]** 34/21 37/19 41/13 82/25 93/1
96/18
**purposely [1]** 46/2
**pursue [1]** 100/24
**push [1]** 84/11
**pushed [3]** 16/13 17/11 32/11
**pushing [1]** 16/4
**put [50]** 6/11 8/6 9/4 9/8 9/15 12/9 13/19
15/15 16/25 17/1 17/8 17/15 17/18 17/24
18/19 18/22 20/8 21/1 21/14 21/20 25/1 28/9
28/10 29/1 30/4 41/19 42/16 47/1 50/14
51/23 52/25 57/16 58/13 59/13 60/7 60/8
60/15 61/4 62/2 64/13 64/15 64/18 66/4 74/5
75/19 102/4 102/7 107/5 111/11 111/14
**Puts [1]** 37/19
**putting [1]** 53/2
**PX [4]** 3/21 102/8 102/8 106/12
**PX-136 [1]** 106/12
**PX-20A [1]** 102/8
**PX-298 [1]** 3/21
**PX-33 [1]** 102/8
**pyramid [1]** 23/17

# Q

**qualifications [1]** 94/6
**qualifies [1]** 86/10
**quality [3]** 80/13 93/17 116/8
**quarters [1]** 40/15
**question [29]** 28/1 29/2 73/14 83/22 85/6
92/12 92/23 97/24 103/22 104/6 104/10
104/15 105/11 105/14 107/19 108/23 109/8
111/1 111/2 112/17 112/22 112/22 116/13
116/14 117/2 117/5 117/9 117/12 117/24
**questions [15]** 38/21 38/22 73/7 73/8 91/22
92/18 97/8 97/23 103/17 103/20 116/15
118/20 118/24 119/1 119/13
**quickly [4]** 5/17 33/4 39/7 48/13
**quit [1]** 116/20
**quite [3]** 19/18 27/17 106/10
**quote [2]** 30/12 112/8

# R

**raincoat [2]** 91/2 91/8
**raining [6]** 90/19 90/20 91/1 91/5 91/7 91/9
**raise [4]** 32/23 57/25 70/25 106/8
**raised [4]** 58/3 75/4 86/5 86/22
**raises [1]** 87/13
**ran [3]** 10/17 62/22 88/22
**random [1]** 17/6
**range [1]** 101/8
**rarely [1]** 80/23
**rarity [1]** 80/3
**rate [1]** 16/19
**rather [7]** 76/25 80/10 82/15 113/7 115/16
116/20 118/13
**Ravens [1]** 36/1
**RDR [2]** 1/21 119/24
**re [1]** 96/14
**re-examine [1]** 96/14
**reach [10]** 60/23 72/22 73/22 92/10 98/21
103/19 104/4 116/19 117/23 118/11
**reached [4]** 97/23 98/4 105/3 105/4
**reaches [1]** 108/23
**reaching [3]** 39/10 90/15 96/9
**reaction [2]** 109/4 110/25
**read [11]** 41/23 56/12 56/13 87/20 87/21
103/9 103/16 109/3 112/3 114/18 118/17
**reading [3]** 112/2 112/7 113/19
**ready [3]** 33/6 33/7 116/12
**real [7]** 1/13 7/18 9/6 67/3 80/10 110/6
115/5
**reality [3]** 13/22 14/3 60/1
**realized [1]** 52/20
**really [37]** 6/7 7/8 7/12 7/12 9/3 9/19 14/23
19/18 20/2 27/17 31/2 34/21 37/6 37/6 39/8
43/16 44/3 45/3 46/17 47/15 50/8 50/24 51/2
51/10 52/17 54/4 57/8 57/18 58/9 66/5 66/7
67/4 67/13 68/5 68/6 114/16 115/24
**reason [17]** 11/24 23/1 28/15 31/2 42/20
47/13 51/3 85/11 94/6 98/21 100/6 100/7
100/14 100/18 103/6 103/9 113/9
**reasonable [6]** 25/15 66/5 75/15 93/23
105/10 117/20
**reasonably [1]** 92/9
**reasons [5]** 9/23 28/21 81/10 89/5 94/20
**rebuttal [6]** 3/24 4/4 5/21 5/24 58/4 87/14
**rebutted [1]** 87/15
**recall [2]** 3/6 29/4
**received [7]** 72/1 72/25 74/18 91/17 92/11
93/1 94/2
**recess [5]** 70/17 107/17 108/24 119/16
119/18
**reciting [1]** 94/25
**reckless [1]** 83/25
**recklessly [4]** 32/14 84/6 84/13 84/15
**recognizable [2]** 44/12 44/13
**recognizes [1]** 78/19
**recollection [8]** 2/13 3/7 4/25 5/2 5/4 72/6
72/7 107/2
**recollections [1]** 51/9
**recommended [1]** 40/14
**record [9]** 72/25 93/3 102/4 102/5 102/7
102/12 102/14 106/13 119/22
**records [4]** 18/13 18/14 18/15 52/7
**rectangle [1]** 35/12
**red [1]** 25/8
**red-shirted [1]** 25/8
**Reebok [1]** 62/1

**R**

refer [1] 113/7
reference [3] 2/17 42/2 42/2
referenced [1] 78/2
references [1] 52/11
reflect [1] 110/14
refresh [1] 96/23
refreshment [1] 2/13
refused [1] 6/6
regard [1] 108/6
regarding [1] 82/24
regardless [4] 50/11 72/22 74/17 74/18
register [1] 75/23
registered [4] 23/12 24/22 27/20 88/1
76/6 76/10 76/14 99/5
regular [1] 40/17
regularly [1] 94/16
REI [1] 35/25
reiterate [1] 116/5
reject [1] 114/17
related [4] 63/10 68/2 81/9 81/10
relationship [4] 12/1 81/6 110/15 113/9
relationships [5] 37/9 37/23 38/7 56/25
89/17
relatively [2] 82/14 82/16
releases [1] 53/1
relevant [2] 37/7 88/15
reliability [1] 94/7
relinquish [1] 87/11
rely [1] 94/9
relying [1] 96/24
remain [1] 118/9
remainder [1] 114/11
remains [1] 67/20
remember [53] 6/4 6/7 6/10 6/13 6/24 8/5
8/12 9/1 9/4 9/14 9/22 9/23 9/25 10/1 10/2
10/15 11/3 11/19 12/12 14/11 15/25 16/16
16/16 16/21 17/3 18/11 19/24 19/25 22/8
22/21 22/22 23/3 23/18 23/20 24/9 24/11
25/7 25/20 25/24 26/5 27/5 28/12 29/13 31/7
31/21 42/24 52/12 52/24 59/11 64/4 69/10
99/21 111/22
remembered [12] 10/19 14/14 14/16 15/17
15/18 24/17 52/21 55/15 55/16 64/7 64/7
64/8
remembers [5] 10/6 10/8 10/12 10/25 14/8
remind [2] 98/8 118/15
remorse [1] 58/19
remove [1] 47/1
removed [1] 106/19
render [1] 98/19
rendering [1] 96/25
rent [1] 60/12
repeatedly [2] 29/14 29/22
replace [3] 66/9 66/9 66/9
reply [1] 53/11
REPORTER [1] 1/21
represent [1] 97/19
represented [1] 88/19
reputation [1] 6/12
request [2] 3/3 101/2
requested [2] 92/15 111/12
require [2] 63/13 77/25
required [5] 75/3 79/25 98/5 101/17 116/3
requirement [1] 115/25
requires [3] 42/9 100/13 103/4
requiring [1] 105/5

reserve [2] 3/24 5/21
resisted [3] 21/11 21/25 22/2
resolve [2] 99/17 106/4
resolved [2] 106/4 106/5
respect [2] 102/5 116/2
respective [1] 119/12
respond [1] 97/11
response [2] 30/9 30/9
responsibility [2] 72/4 98/12
responsible [2] 19/15 104/1
rest [1] 37/22
result [1] 88/9
resulted [1] 82/20
results [1] 68/23
resume [2] 87/4 87/16
retail [5] 31/12 38/12 48/20 88/6 88/8
retail-level [1] 88/8
retailer [4] 17/3 17/3 18/24 32/9
retailers [28] 16/13 16/14 16/24 17/16 17/19
18/2 18/8 18/11 18/23 18/23 19/2 19/4 19/4
19/9 29/15 29/24 31/6 31/8 41/10 41/17
45/13 59/17 59/18 69/12 85/16 85/23 88/9
88/9
retailers' [1] 18/3
retire [5] 71/24 94/24 104/22 105/6 119/2
retired [1] 11/23
return [6] 62/17 97/20 97/25 104/8 105/22
114/10
reveal [1] 98/3
reverse [12] 77/12 77/17 77/17 78/4 82/1
82/1 82/4 82/15 83/4 83/11 84/4 84/9
review [2] 106/18 108/1
reviewing [2] 94/12 94/15
revised [1] 18/22
rewrite [1] 46/24
Rich [8] 39/20 52/2 52/23 55/10 55/12 56/8
56/11 57/3
right [99] 2/9 6/10 8/2 14/9 15/1 15/8 20/17
20/18 20/21 20/24 21/3 21/7 21/10 21/22
21/25 22/14 29/16 30/6 31/25 32/4 32/21
32/24 33/5 33/21 35/9 35/11 35/16 37/16
39/25 40/1 40/3 40/9 40/10 40/10 41/24 42/6
42/11 43/5 43/19 44/6 45/21 45/22 48/3
49/23 51/1 52/5 55/10 58/25 59/3 59/13
59/14 60/2 60/3 60/10 60/22 61/3 61/5
61/8 61/9 61/24 62/9 62/21 63/1 63/8 63/16
63/25 64/25 65/22 66/3 66/4 66/16 67/5 67/8
67/18 67/20 68/4 68/15 69/25 70/22 76/16
81/25 98/23 99/12 100/6 102/16 105/9
107/15 108/19 108/25 111/8 112/2 116/11
116/17 117/2 118/24 119/1 119/5 119/10
rights [5] 28/1 30/24 75/24 75/24 89/4
ring [1] 30/16
ringing [1] 95/9
ripping [1] 63/7
rise [5] 2/1 4/13 113/4 116/22 117/1
Rockies [1] 25/20
rolled [1] 46/6
rolls [1] 34/9
Roman [1] 113/1
room [8] 1/22 16/8 71/18 73/4 94/24 108/4
108/14 118/25
rooms [1] 119/12
Rosen [3] 2/7 3/8 53/3
row [1] 31/25
ruined [1] 54/3
rule [3] 72/14 92/16 111/22
rules [6] 28/23 72/11 73/11 92/11 92/14

ruling [2] 73/12 92/22
rumors [1] 92/2
run [4] 6/21 49/18 57/3 60/24
running [1] 56/7
runs [1] 6/20
rush [1] 104/24
Ryan [2] 25/13 46/8

**S**

sacrifice [1] 57/18
sad [1] 26/25
safe [1] 116/10
said [63] 2/24 3/1 7/7 7/11 8/20 9/17 11/11
13/12 15/17 16/9 16/22 17/14 17/18 18/16
18/24 20/23 21/24 22/5 22/7 22/22 22/23
24/13 27/19 28/12 30/5 30/7 31/13 32/22
35/20 41/16 43/8 46/21 51/1 52/8 52/9 52/12
53/18 55/3 55/5 55/18 55/19 55/22 56/7
57/21 59/19 61/4 61/8 63/10 63/15 64/5
65/22 65/22 66/3 68/14 93/6 93/12 93/22
95/14 99/9 101/24 103/4 108/14 117/14
sale [9] 27/15 51/23 57/16 60/15 61/5 85/19
85/21 85/23 103/10
sales [16] 18/12 18/14 18/15 19/1 25/17
30/19 30/20 32/3 41/10 53/25 58/18 81/3
81/5 82/24 85/15 88/11
salesman [1] 64/6
same [35] 8/9 8/14 8/14 10/3 15/10 17/12
23/22 24/23 26/21 27/10 30/21 44/7 49/14
49/19 49/19 49/20 50/2 51/15 55/11 56/5
61/17 63/14 66/20 66/20 68/7 80/20
80/20 81/2 81/3 82/5 82/12 89/16 111/20
112/6
sampling [1] 80/14
San [1] 1/14
sand [2] 29/7 65/24
SANDERS [1] 1/13
saturation [1] 82/20
saw [26] 13/21 13/22 14/3 14/9 14/11 14/12
18/19 19/25 23/2 23/3 23/20 24/12 24/25
26/6 26/7 26/7 26/23 30/5 31/9 36/12 39/17
55/18 60/19 90/19 95/7 95/12
say [42] 4/6 5/3 5/8 14/20 19/3 22/8 30/10
32/1 33/12 35/6 36/19 41/14 55/5 56/2 57/17
58/8 58/9 60/1 61/18 62/1 65/12 65/14 68/20
71/7 71/8 72/8 74/5 91/19 99/14 100/10
100/17 101/9 104/23 111/24 113/22 113/25
114/6 114/8 114/21 116/16 116/17 119/19
saying [6] 7/22 14/18 35/3 41/9 99/21
117/12
says [18] 5/1 11/15 14/22 20/17 20/18 20/19
21/21 35/8 35/8 35/9 35/11 35/12 36/22
55/24 66/25 99/5 113/1 118/7
scale [3] 44/6 74/7 74/7
scales [1] 74/8
school [1] 57/18
schools [2] 6/20 59/7
SCHWARTZ [3] 1/12 21/12 106/20
scientists [2] 65/9 66/18
scoreboard [1] 55/17
Scott [3] 43/3 43/3 43/6
scour [1] 59/19
screen [7] 3/19 16/7 17/1 17/24 23/16 40/7
64/15
scribbled [1] 33/13
script [1] 54/8
scrivener [1] 103/19
Sean [5] 9/21 10/6 11/3 11/22 24/11

**S**

**search [5]** 31/9 68/23 84/17 100/24 101/3
**searched [2]** 61/19 61/19
**searches [1]** 31/10
**seared [1]** 9/22
**season [1]** 34/9
**seat [1]** 117/4
**seated [3]** 2/3 4/16 70/22
**second [26]** 12/16 29/11 29/11 32/13 44/11 73/8 75/4 77/17 79/2 79/5 83/1 85/20 86/15 87/4 88/24 89/13 89/23 91/7 93/17 95/18 99/18 100/17 103/3 103/8 104/15 113/20
**Secondly [1]** 84/21
**seconds [1]** 43/17
**secret [1]** 97/17
**section [1]** 112/8
**sections [2]** 40/18 71/11
**see [43]** 5/25 8/11 14/23 16/6 16/7 16/8 18/14 20/13 21/19 23/17 31/19 31/20 32/9 32/19 32/24 36/2 39/25 40/8 40/14 42/4 45/19 48/7 50/2 53/10 57/5 57/5 57/6 57/8 58/3 60/15 62/22 63/11 64/2 68/5 71/2 81/9 83/12 83/13 91/24 92/2 92/3 93/16
**seeing [4]** 14/1 25/2 25/2 64/2
**seem [1]** 20/14
**seen [10]** 11/9 17/14 18/2 25/9 25/10 40/2 56/1 63/2 73/17 90/18
**sees [3]** 11/4 11/7 21/17
**select [1]** 95/3
**self [1]** 2/20
**self-serving [1]** 2/20
**sell [14]** 18/9 39/15 46/15 48/22 49/14 50/19 51/25 52/14 54/19 60/17 67/9 69/17 89/22 90/7
**seller [1]** 18/18
**sellers [2]** 30/6 69/3
**selling [9]** 18/18 27/13 27/14 29/21 34/22 48/20 54/22 69/15 113/5
**sells [3]** 48/25 85/10 89/16
**send [2]** 37/25 61/21
**sends [2]** 52/23 53/3
**sense [16]** 9/18 14/25 24/1 42/8 45/18 46/11 50/17 51/24 61/13 62/1 62/5 62/12 92/5 105/13 115/17 117/15
**senses [1]** 90/18
**sent [6]** 25/4 53/17 56/3 108/8 109/2 117/8
**sentence [1]** 115/18
**separate [3]** 79/23 85/5 99/8
**Series [1]** 10/25
**serious [4]** 4/9 45/12 54/1 54/10
**serve [2]** 49/19 95/3
**service [2]** 110/11 110/12
**services [2]** 110/16 113/6
**serving [1]** 2/20
**set [3]** 15/14 77/9 117/10
**sets [1]** 114/19
**setting [1]** 33/8
**seven [2]** 80/15 93/25
**several [2]** 89/5 108/9
**sewed [1]** 58/15
**sewing [1]** 9/11
**SHANNAN [1]** 1/21 119/24
**share [3]** 78/8 103/14 103/16
**shared [2]** 12/3 56/1
**she [84]** 12/14 12/14 12/16 12/18 12/19 12/20 12/21 12/21 14/6 14/7 14/7 14/9 14/10 14/11 14/11 14/12 14/14 14/14 14/16 14/16 14/22 15/6 15/7 15/12 15/13 15/13 15/15

17/17 18/12 18/12 18/16 18/17 18/17 20/17 20/23 20/23 20/24 21/7 21/7 21/8 21/10 21/24 21/25 22/1 22/7 22/8 22/9 22/15 22/21 22/23 23/3 23/7 23/8 30/2 30/7 30/11 30/12 30/13 42/24 42/25 43/1 43/2 47/6 47/8 52/4 52/5 52/6 52/7 52/14 54/14 54/14 55/3 55/5 55/5 107/25 108/4 108/10
**she'll [2]** 108/11 119/16
**she's [3]** 12/14 14/5 45/10
**sheet [3]** 14/15 49/25 83/14
**sheets [21]** 14/11 14/11 15/17 16/1 16/6 16/8 16/21 17/21 31/23 41/6 41/6 41/7 47/18 59/15 63/22 64/4 64/7 64/12 69/2 88/7 108/10
**ships [1]** 65/15
**shirt [12]** 21/22 37/2 38/24 40/1 40/1 40/13 41/15 41/19 45/5 47/16 51/5 53/3
**shirted [1]** 25/8
**shirts [5]** 17/8 17/9 24/23 41/22 88/4
**shoes [1]** 14/18
**shorts [10]** 14/19 14/20 14/21 14/23 17/8 17/9 24/23 64/3 68/16 88/4
**should [59]** 2/24 20/21 22/12 22/15 28/8 29/16 29/18 30/14 31/4 54/9 61/19 65/2 65/20 65/24 68/25 69/4 69/4 69/5 69/7 69/24 71/17 72/23 73/11 73/13 75/19 77/5 77/8 77/9 77/23 78/25 80/23 82/5 82/11 82/12 86/1 86/3 91/11 92/5 92/17 92/21 94/2 94/18 94/20 95/3 96/4 96/13 96/15 96/17 96/24 97/1 97/17 98/11 99/19 99/22 100/3 100/15 101/9 104/8 109/20
**shoulder [1]** 55/18
**shouldn't [4]** 31/13 51/10 68/24 76/1
**show [23]** 3/12 3/12 7/4 7/5 7/11 7/16 7/21 8/20 19/7 19/14 19/14 31/20 31/20 47/15 49/17 50/10 51/11 56/16 59/19 87/7 110/8 113/15 115/22
**showed [18]** 8/7 8/10 8/25 16/5 19/1 19/9 19/11 19/13 19/15 20/15 25/1 26/6 51/2 54/17 58/12 59/17 67/5 67/6
**showing [3]** 51/3 68/23 87/10
**shown [14]** 2/12 2/25 3/2 3/4 3/8 3/10 3/19 7/7 7/10 7/15 93/7 102/8 107/25 109/10
**shows [8]** 8/21 13/15 17/19 17/25 18/24 19/8 32/9 44/9
**shying [1]** 41/7
**side [5]** 15/10 39/23 74/9 96/6 105/19
**sidebar [4]** 71/2 98/24 99/1 102/21
**sides [5]** 52/2 74/7 74/8 92/13 107/20
**sifted [1]** 54/24
**sign [12]** 9/7 24/12 29/9 30/21 30/22 30/23 32/13 55/19 64/13 97/10 97/25 103/21
**signage [2]** 14/9 88/11
**signature [2]** 56/10 109/3
**signed [4]** 2/7 55/15 56/13 109/2
**signs [1]** 28/4
**silhouette [1]** 40/13
**similar [5]** 55/22 78/7 78/11 81/4 84/18
**similarities [1]** 67/14
**similarity [11]** 47/25 48/1 48/6 48/15 48/15 49/10 49/22 49/23 78/5 80/15 80/21
**similarly [1]** 110/5
**simple [8]** 22/12 28/14 39/13 109/25 110/19 112/4 115/11 115/18
**simply [2]** 38/9 92/15
**since [6]** 9/11 10/22 11/23 33/15 80/5 117/8
**single [3]** 72/14 77/24 78/15
**singling [1]** 47/24

**sit [1]** 16/18
**site [1]** 21/25
**sitting [1]** 24/12
**situation [1]** 31/14
**situations [1]** 109/6
**six [5]** 19/10 35/23 45/21 79/24 93/23
**six-plus [1]** 19/10
**size [1]** 44/7
**skyscraper [4]** 29/21 29/22 69/8 69/11
**slap [1]** 65/4
**sleep [1]** 111/22
**sleeve [4]** 14/12 21/21 41/15 41/19
**sleeveless [1]** 40/15
**slide [10]** 39/20 42/16 48/7 49/25 51/23 52/5 53/10 54/5 55/10 57/3
**slip [6]** 70/9 71/4 71/5 95/1 101/25 103/13
**small [7]** 30/17 34/24 46/3 69/6 69/19 106/3 106/10
**smaller [1]** 54/8
**Smith [3]** 25/7 56/4 56/12
**sneeringly [1]** 10/2
**snow [1]** 39/18
**so [182]**
**so-called [1]** 103/18
**soccer [3]** 10/21 32/11 37/5
**software [1]** 65/9
**sold [19]** 6/12 13/6 17/5 18/15 18/15 19/1 19/8 19/19 24/18 27/2 32/7 44/15 49/20 50/25 69/3 69/10 78/18 79/14 88/10
**sole [4]** 72/3 93/10 98/11 113/2
**solely [2]** 73/19 97/6
**some [48]** 2/18 3/7 4/9 7/13 8/12 9/17 12/11 12/24 12/25 15/20 18/9 19/25 20/23 23/11 24/15 26/19 28/13 32/16 39/6 42/16 43/12 45/14 47/17 47/17 49/2 49/10 52/20 54/1 54/4 54/10 55/11 55/21 56/12 59/18 59/19 61/25 64/17 64/19 64/20 67/3 67/18 69/22 71/17 92/25 97/12 107/4 115/24 117/19
**somebody [8]** 34/14 37/15 37/18 39/2 39/10 47/21 48/17 54/4
**somehow [14]** 7/8 12/24 13/16 16/3 19/22 20/14 25/5 25/13 61/2 65/19 66/12 66/15 67/22 69/15
**someone [13]** 6/5 13/9 21/17 30/2 61/4 61/11 61/23 64/1 69/15 80/24 84/23 91/2 109/2
**something [27]** 5/1 5/3 11/13 11/14 15/7 23/11 25/22 30/14 31/5 35/16 36/21 36/23 39/3 43/25 44/1 46/18 64/12 65/24 66/7 66/13 67/4 68/21 88/17 90/17 90/18 101/20 117/20
**something's [1]** 44/23
**sometimes [10]** 20/1 20/4 20/8 34/5 34/11 41/9 45/8 47/18 47/22 56/21
**somewhat [1]** 74/9
**somewhere [2]** 70/7 100/3
**son [4]** 24/14 24/15 26/6 37/5
**soon [1]** 97/11
**sophisticated [6]** 25/21 25/23 43/3 45/9 45/11 45/15
**sophistication [5]** 25/22 44/21 44/25 79/4 79/6
**sorry [8]** 30/11 42/10 48/1 48/3 95/10 112/1 112/6 118/6
**sort [10]** 15/20 26/19 28/22 35/11 59/19 61/1 64/17 64/19 71/8 110/20
**sorts [1]** 67/7
**sound [2]** 78/12 94/21
**sounds [2]** 23/4 35/17

**S**

**source [11]** 34/17 34/23 34/25 36/6 36/9 36/17 78/9 78/19 78/22 86/9 110/3
**South [1]** 14/7
**Sox [1]** 10/24
**space [1]** 58/6
**speak [2]** 5/22 95/5
**speaking [1]** 5/15
**speaks [1]** 102/12
**specific [8]** 9/23 14/14 49/9 49/9 83/15 99/20 101/25 110/20
**specifically [1]** 83/21
**specifications [2]** 67/1 67/11
**speculate [2]** 93/5 98/21
**speculation [1]** 73/23
**speech [3]** 3/24 5/21 10/3
**spent [2]** 5/16 54/16
**splash [6]** 40/24 63/16 63/17 63/20 63/21 63/22
**spoke [1]** 53/4
**sponsors [1]** 46/9
**sponsorship [3]** 41/1 76/22 78/9
**Sporting [4]** 16/25 30/6 43/14 85/16
**Sports [1]** 16/19
**spread [2]** 6/23 19/14
**spreadsheet [1]** 19/1
**sprung [1]** 52/22
**stadium [1]** 10/8
**staff [2]** 16/14 105/21
**stand [6]** 5/8 23/2 36/11 56/12 59/24 97/15
**standard [11]** 75/14 75/16 99/19 99/23 100/11 100/13 100/15 114/19 114/23 115/10 116/5
**standards [1]** 26/2
**standing [2]** 100/25 101/3
**stands [1]** 58/23
**Starbucks [3]** 65/13 65/14 65/14
**start [7]** 33/6 33/8 53/2 59/25 67/22 71/18 97/4
**started [6]** 7/25 10/9 10/13 16/1 56/6 98/14
**starts [2]** 28/19 33/8
**state [2]** 25/8 99/19
**stated [4]** 99/19 99/20 101/4 101/19
**statement [2]** 11/20 35/2
**statements [3]** 2/20 73/7 91/21
**states [6]** 1/1 1/9 32/11 76/6 83/24 100/24
**stating [1]** 72/15
**statute [1]** 54/11
**stay [7]** 35/9 57/4 97/17 105/5 105/18 118/10 119/11
**stayed [1]** 41/9
**stays [1]** 9/8
**steal [1]** 48/5
**step [1]** 16/5
**stepped [2]** 32/18 63/4
**stepping [1]** 66/2
**sticks [1]** 65/23
**still [21]** 22/9 22/16 30/7 32/1 32/2 32/11 45/23 52/18 52/18 56/24 56/24 56/25 68/9 68/11 68/12 68/23 68/24 70/2 113/23 114/4 114/9
**stipulate [1]** 73/1
**stipulated [1]** 91/18
**stole [2]** 36/22 54/3
**stone [1]** 8/2
**stood [1]** 33/20
**stop [15]** 17/12 27/21 28/9 28/18 29/12 29/13 29/15 29/17 29/25 30/8 32/12 46/1

**stopped [2]** 69/4 88/25
**stops [1]** 40/10
**store [9]** 14/7 15/9 15/23 16/10 16/13 38/12 43/24 44/1 88/11
**stores [4]** 48/18 48/21 64/6 88/12
**story [1]** 37/17 42/4
**strategy [1]** 39/13
**Street [2]** 1/22 6/21
**strength [10]** 44/11 78/16 78/17 78/24 79/2 79/3 82/7 82/10 82/11 82/12
**strenuously [1]** 66/13
**stretch [8]** 6/17 6/23 8/17 9/24 12/5 26/9 59/9 67/15
**stretched [2]** 36/11 36/14
**strict [1]** 117/17
**stricter [1]** 75/15
**stride [1]** 55/18
**strong [3]** 44/18 51/19 53/20
**strongly [1]** 79/21
**struck [2]** 93/3 93/5
**strutting [1]** 58/20
**stuck [1]** 29/7
**stuff [7]** 7/14 15/10 24/15 26/6 33/1 58/8 69/9
**style [12]** 20/16 20/19 20/19 20/24 22/4 22/8 22/8 22/10 22/13 22/15 41/19 88/22
**subject [1]** 41/2
**submit [1]** 76/7
**submitted [2]** 20/20 20/21 22/13 22/15 76/11 87/21
**subordinate [3]** 30/2 30/10 47/5
**subset [2]** 15/3 59/18
**subtle [1]** 54/5
**Subway [2]** 65/11 65/12
**succeed [6]** 57/14 75/6 85/17 86/12 86/23 87/6
**succeeded [1]** 75/2
**success [3]** 38/5 38/6 38/8
**such [12]** 6/8 38/7 65/15 75/18 79/20 80/3 84/20 85/1 85/16 94/11 94/13 94/14
**suddenly [1]** 55/15
**sued [1]** 38/20
**sufficient [2]** 87/9 94/19
**suggest [14]** 9/3 13/12 15/5 31/1 38/4 39/7 61/5 64/24 65/2 66/6 66/12 81/21 98/10 109/12
**suggested [12]** 10/2 11/18 11/20 15/6 25/4 46/2 54/22 56/18 59/13 65/19 66/15 101/1
**suggesting [2]** 34/14 81/13
**suggestion [6]** 11/17 15/25 61/1 109/21 110/25 116/14
**suggestions [3]** 98/24 109/22 111/9
**Suite [1]** 1/13
**sum [2]** 5/18 112/12
**sum-up [1]** 112/12
**summarize [1]** 87/19
**summary [13]** 16/6 17/3 17/19 17/23 17/25 18/19 18/24 19/7 31/24 87/23 87/24 106/21 107/3
**Summer [1]** 101/11
**summertime [1]** 39/16
**sun [4]** 10/7 36/4 51/1 51/4
**super [5]** 6/14 34/2 34/4 35/12 56/21
**supplanting [1]** 114/3
**supplement [1]** 55/16
**supplemental [1]** 101/2
**supplies [1]** 85/10
**support [3]** 37/6 37/7 94/20

**supposed [2]** 12/16 12/17
**Supreme [1]** 113/11
**sure [10]** 5/6 20/21 29/6 43/16 60/2 66/1 67/12 70/24 104/25 106/1
**surprise [1]** 66/22
**surprised [1]** 13/3
**survey [7]** 13/23 42/25 43/1 43/3 62/22 80/12 80/13
**surveys [6]** 43/2 43/11 80/7 80/9 80/10 88/15
**Susan [1]** 42/24
**suspicions [1]** 92/3
**sustained [2]** 73/13 92/23
**Sweat [18]** 8/6 10/9 12/2 12/11 12/21 12/24 13/1 13/4 13/12 36/4 37/19 50/23 51/1 51/5 52/9 52/18 53/23 56/24
**Swoosh [5]** 21/18 35/7 36/2 36/13 89/10
**symbol [1]** 75/21
**sympathy [1]** 72/19
**system [7]** 28/18 29/5 29/5 29/5 40/22 63/20 88/23

**T**

**T-shirt [1]** 40/13
**table [1]** 24/12
**tag [4]** 35/8 35/9 47/14 50/1
**tags [2]** 51/9 89/12
**take [31]** 12/14 14/19 16/7 18/2 18/23 29/22 29/22 30/14 33/7 41/6 43/15 47/3 47/3 47/10 51/6 53/22 56/14 58/1 61/18 62/3 62/3 63/11 66/11 66/14 70/5 70/6 71/8 73/3 95/18 96/21 97/12
**taken [7]** 27/18 63/5 70/17 72/8 107/17 108/24 119/18
**takes [3]** 37/18 66/6 66/25
**taking [6]** 47/7 69/9 70/23 80/12 108/3 108/13
**taking that [1]** 108/3
**talk [16]** 11/14 37/1 41/15 41/18 50/14 51/18 61/6 67/18 67/19 71/12 71/15 94/23 97/4 97/12 98/5 114/14
**talked [10]** 8/11 11/23 25/5 25/12 30/2 43/20 53/12 61/25 68/19 100/2
**talking [9]** 20/13 33/9 35/3 38/11 41/17 44/3 113/25 114/5 116/16
**talks [1]** 51/17
**tapered [1]** 40/17
**target [1]** 81/1
**targeted [3]** 46/2 48/15 81/4
**targets [1]** 81/2
**task [1]** 12/10
**tastes [1]** 63/11
**team [7]** 17/18 20/6 27/7 47/5 54/15
**teams [7]** 6/13 32/12 37/24 49/1 49/2 49/5 66/20
**tech [27]** 14/11 14/11 14/15 15/17 15/25 16/6 16/8 16/20 17/21 20/15 21/6 31/23 40/12 41/6 41/6 41/7 47/18 49/25 59/12 59/12 59/15 63/22 64/4 64/7 64/11 69/2 88/6
**technical [1]** 35/19
**technology [16]** 6/17 6/23 6/25 8/17 9/5 9/8 9/24 10/22 11/2 12/3 23/17 26/9 26/16 40/9 59/9 62/25
**tell [26]** 5/2 8/22 13/10 14/21 20/5 22/6 29/15 31/17 31/19 34/25 36/17 36/18 44/24 53/16 62/11 64/23 67/22 69/12 70/2 97/15 97/16 109/4 111/1 111/11 116/18 119/16
**telling [8]** 16/1 30/9 53/13 58/20 58/22

**T**

**telling... [3]** 105/20 105/20 108/4
**tells [2]** 61/4 92/8
**temperature [1]** 60/21
**ten [9]** 42/10 42/12 44/5 44/7 64/14 70/14 77/23 81/13 118/9
**tendency [1]** 78/17
**term [7]** 23/13 23/19 26/17 35/19 52/11 75/15 117/25
**terms [10]** 109/5 109/5 110/17 111/15 116/7 117/13 117/13 117/17 118/2 118/8
**test [12]** 42/10 42/13 44/5 50/4 50/8 110/8 110/21 114/4 114/12 114/17 115/6 116/3
**tested [1]** 67/9
**testified [15]** 29/13 40/19 42/17 42/21 42/22 43/20 45/10 45/14 49/3 52/14 54/14 90/19 91/1 91/7 93/17
**testifies [2]** 90/17 94/16
**testify [4]** 37/11 45/24 46/8 55/23
**testifying [4]** 3/6 93/19 94/15 94/17
**testimony [31]** 3/4 9/4 12/13 15/8 15/23 22/20 26/5 29/3 42/16 42/21 42/24 43/14 48/9 51/8 55/20 71/25 72/24 73/15 74/16 91/16 91/23 93/2 93/4 93/9 93/9 93/9 94/1 94/5 103/23 117/21 118/4
**Texas [1]** 14/6
**text [1]** 64/13
**than [26]** 6/15 13/25 21/18 23/15 24/2 28/25 37/13 37/21 44/24 45/5 57/12 61/14 72/7 74/4 74/12 75/3 75/13 75/16 82/3 86/14 88/17 98/22 117/18 117/20 118/6 118/22
**thank [21]** 3/22 4/11 4/12 32/6 32/25 33/10 33/11 37/4 57/17 57/22 70/14 70/15 102/16 105/6 105/9 106/20 107/11 107/13 107/16 119/3 119/17
**thanks [2]** 57/20 108/21
**that [842]**
**that's [138]**
**their [56]** 5/6 5/7 5/7 5/19 13/16 13/23 16/14 19/20 23/13 25/12 25/16 27/11 29/23 30/17 31/6 31/7 31/1 31/12 31/12 38/12 38/16 39/11 41/13 44/3 44/19 47/10 49/1 49/15 50/12 55/2 58/18 61/20 62/2 62/4 62/4 62/21 63/3 63/5 64/1 68/13 69/7 69/9 69/12 73/9 75/24 76/22 87/17 87/23 88/12 89/15 89/22 90/3 92/19 108/21 109/7 110/17
**theirs [1]** 49/16
**them [83]** 5/15 8/10 8/10 8/10 8/11 8/24 10/20 13/18 14/19 15/19 17/7 18/9 25/4 25/5 27/11 28/10 29/14 29/25 30/8 31/7 31/8 31/11 31/15 31/18 31/19 31/23 32/1 36/5 36/15 36/19 39/10 41/11 41/11 41/11 41/20 42/20 43/9 43/15 44/25 46/3 46/10 46/10 46/14 46/18 46/21 47/5 47/16 47/19 48/16 50/3 50/21 51/7 51/23 51/24 52/8 55/11 56/2 56/2 56/3 56/13 58/16 59/13 59/16 62/3 64/8 67/15 69/13 72/12 74/17 74/18 81/9 96/1 96/4 97/9 97/10 97/10 97/11 102/15 105/14 106/23 108/4 111/11 118/21
**themselves [4]** 45/9 58/16 69/17 81/8
**then [62]** 5/23 5/24 6/6 6/16 12/9 16/5 17/14 22/10 23/10 27/6 27/7 27/23 28/20 30/25 34/2 35/9 35/10 40/16 43/20 44/3 44/24 45/1 45/20 46/15 50/1 50/10 50/15 52/4 53/2 53/11 53/15 53/17 58/1 59/14 62/15 63/2 70/8 71/4 71/12 71/15 71/24 74/12 97/24 97/25 98/24 100/3 103/15 103/21 104/5 104/21 110/5 113/11 113/20 113/22
114/17
**therapist [1]** 36/24
**therapists [4]** 45/11 46/16 49/14 89/17
**there [86]** 2/14 10/15 12/21 13/19 13/20 14/17 15/1 16/2 16/18 17/6 17/8 17/12 18/10 18/21 21/20 21/22 23/1 25/13 26/13 26/18 26/19 27/4 27/15 28/12 31/2 31/16 35/11 35/22 39/25 40/1 40/3 40/23 41/3 41/24 42/6 42/7 43/5 43/12 46/3 46/15 47/19 49/10 49/10 49/10 51/22 52/6 55/7 55/7 56/17 60/4 62/11 62/18 62/20 62/22 63/9 66/8 66/25 70/8 70/8 77/8 77/11 78/12 84/20 85/5 87/10 90/1 90/14 92/11 100/8 100/23 101/18 101/22 102/14 102/20 103/17 104/18 106/3 106/23 107/4 107/19 109/18 110/4 112/16 114/15 115/6 117/10
**there's [42]** 2/4 4/8 7/17 17/17 28/22 31/8 31/25 34/8 36/21 42/10 42/15 42/20 42/22 43/4 44/4 44/5 50/5 56/9 56/16 57/7 59/14 59/14 60/1 61/12 62/23 65/15 66/11 66/16 66/22 67/24 67/25 71/11 99/10 99/15 103/2 106/21 108/14 109/24 111/4 114/14 115/24 118/7
**therefore [1]** 97/1
**thereof [1]** 79/24
**these [78]** 9/16 9/19 9/21 11/8 11/18 11/25 12/5 13/24 16/9 20/2 24/2 25/2 25/20 28/7 28/22 29/25 30/19 31/25 34/5 34/6 34/7 34/13 34/15 35/22 37/23 37/24 39/1 40/22 40/22 41/6 41/7 41/24 42/1 42/18 42/18 45/21 46/6 47/3 47/18 48/16 49/17 50/2 50/7 50/10 51/8 52/12 53/1 53/16 54/23 54/25 55/6 55/15 56/25 63/9 64/11 65/20 66/8 67/22 67/24 72/8 76/11 76/13 78/2 81/19 83/9 85/24 86/2 94/25 96/2 96/5 98/22 100/9 102/6 103/19 109/5 109/5 117/12 117/17
**they [294]**
**they'd [3]** 7/4 7/5 116/20
**they'll [1]** 5/6
**they're [30]** 5/5 5/10 5/19 9/6 35/3 40/4 40/25 41/7 41/8 41/24 45/3 45/14 47/15 47/18 49/19 51/3 52/15 54/7 55/11 57/2 58/5 63/6 64/20 65/8 67/20 91/9 109/13 111/6 114/4 116/16
**they've [4]** 63/5 63/5 109/13 109/15
**thing [24]** 7/13 8/14 8/20 17/13 21/19 22/25 23/5 23/7 23/9 27/10 40/5 46/22 56/17 61/8 67/4 68/18 68/19 69/23 97/14 98/13 101/16 106/21 111/20 116/10
**things [21]** 7/4 36/1 38/7 47/3 49/14 53/9 55/16 57/9 58/25 64/21 66/7 67/7 67/18 67/23 72/25 91/17 91/21 93/17 102/6 106/3 111/5
**think [75]** 2/11 2/20 5/15 6/5 9/12 9/19 13/8 19/17 21/15 25/13 26/24 33/18 37/12 38/11 38/13 41/13 41/15 46/17 47/21 52/2 53/5 55/4 55/10 57/2 58/5 59/18 60/8 67/1 61/11 62/3 62/4 63/4 63/7 63/14 64/21 65/21 66/5 67/2 67/14 68/5 94/4 98/10 99/9 99/10 99/10 100/12 100/14 101/6 101/16 101/19 102/1 103/13 105/9 106/3 106/10 106/10 109/25 110/18 111/4 111/4 111/6 111/11 111/20 112/12 114/11 114/19 115/11 115/14 115/18 115/20 115/25 116/5 116/6 116/8 118/11
**thinking [3]** 24/18 27/2 56/5
**thinks [2]** 25/18 92/13
**third [16]** 83/5 84/25 85/15 85/22 85/23 89/15 90/5 100/23 103/7 110/5 111/13

**third-party [2]** 85/15 85/23
**Thirty [1]** 37/14
**Thirty-one [1]** 37/14
**this [211]**
**Thomas [2]** 17/16 54/13
**those [68]** 8/5 9/2 12/19 13/5 13/19 14/18 14/19 14/20 14/24 16/2 16/10 18/6 18/8 19/2 19/9 20/4 23/23 25/10 26/2 26/20 28/7 30/5 30/20 36/1 37/9 38/6 38/7 40/17 43/11 46/9 46/11 46/13 46/22 46/23 46/24 48/18 52/13 52/14 54/9 56/1 56/2 56/6 56/12 56/22 58/14 59/5 63/22 64/9 64/16 64/17 64/18 68/2 68/5 69/20 83/13 100/20 102/10 102/10 104/4 104/5 104/7 107/22 108/8 108/9 108/11 111/5 111/15 118/7
**though [7]** 7/18 8/22 12/14 38/19 61/9 61/19 62/20
**thought [18]** 8/13 24/14 26/11 26/14 26/18 26/24 27/3 27/9 36/24 43/25 44/1 61/11 62/20 62/24 63/10 70/15 95/9 106/6
**thousands [5]** 6/16 18/4 45/15 54/25 59/6
**three [26]** 24/2 34/9 38/21 38/21 39/3 40/15 42/19 43/4 45/8 45/22 57/9 68/22 71/11 79/11 79/11 82/8 84/16 86/16 87/13 93/18 100/9 103/8 108/8 108/10 108/12 110/13
**three-quarters [1]** 40/15
**through [28]** 10/20 20/12 21/5 31/23 34/15 39/7 43/14 46/6 49/1 49/6 51/12 52/2 54/22 54/24 55/17 56/7 67/14 68/3 80/19 80/20 84/19 88/6 88/23 89/16 89/17 90/17 100/4 100/8
**thrown [1]** 54/4
**thus [1]** 90/1
**tight [6]** 34/2 34/4 35/12 38/25 47/15 56/21
**tighter [1]** 57/12
**tights [4]** 10/17 17/8 17/9 88/4
**time [40]** 4/1 4/3 5/18 8/14 10/18 12/20 14/13 24/16 29/4 29/24 30/19 32/3 32/23 33/7 34/16 43/22 45/17 45/25 47/3 47/3 48/1 50/16 51/18 53/11 58/8 62/5 64/17 66/6 66/6 67/13 70/16 79/12 79/14 87/17 97/13 104/18 105/2 106/9 111/11 118/22
**times [5]** 34/1 40/3 45/7 45/8 70/2
**tiny [1]** 34/13
**tip [1]** 74/8
**title [5]** 106/22 106/23 107/5 107/6 107/9
**today [8]** 24/4 32/16 36/7 68/11 104/24 105/1 116/19 118/11
**together [9]** 17/7 17/15 22/25 23/4 23/9 45/19 45/23 66/4 96/4
**told [46]** 7/4 7/5 7/8 7/16 9/2 9/14 9/14 12/6 13/14 14/7 15/10 15/13 15/15 16/17 16/20 17/17 18/3 18/17 18/17 19/13 20/18 26/18 29/14 31/5 31/7 31/8 31/13 36/10 41/8 50/21 52/21 52/25 56/2 56/18 58/25 59/20 63/9 67/7 68/13 71/19 73/15 83/13 83/17 91/23 98/13 119/6
**tomorrow [2]** 105/2 116/21
**too [19]** 9/12 11/1 11/14 13/4 36/21 40/7 41/11 42/8 42/21 43/15 45/25 49/3 49/11 49/21 62/16 65/13 69/13 69/18 69/19
**took [13]** 5/8 8/8 8/9 16/5 27/4 36/10 46/3 47/2 56/12 59/8 64/14 95/24 118/18
**top [5]** 12/19 29/21 39/24 64/6 64/8
**tops [1]** 64/3
**total [1]** 49/17
**totally [3]** 37/12 51/24 66/19
**touch [2]** 38/6 62/13

**T**

**touched [3]** 62/11 62/15 90/18
**tough [1]** 20/10
**toward [1]** 96/6
**trade [5]** 48/14 65/10 80/20 87/3 110/2
**trademark [104]** 7/6 7/9 7/12 8/19 8/23 12/7 13/15 19/22 23/7 23/13 24/22 24/22 27/20 27/25 28/2 28/3 29/8 32/17 33/22 34/21 34/24 35/17 35/24 36/15 38/8 38/14 38/17 39/4 42/7 43/23 50/6 50/11 50/12 50/15 50/17 51/10 52/9 52/16 53/6 56/16 56/19 60/17 61/15 61/18 62/7 64/25 65/1 65/5 65/6 69/21 75/20 75/21 75/24 75/24 75/25 76/1 76/3 76/5 76/6 76/9 76/17 77/15 77/16 77/18 77/19 78/17 81/22 81/23 81/24 83/20 84/3 84/7 85/8 85/10 85/13 85/15 85/20 85/21 86/6 86/7 86/10 86/11 86/15 87/8 87/25 88/2 88/3 88/17 89/4 89/20 99/11 99/15 100/24 101/3 102/25 102/25 103/1 103/8 103/11 103/24 113/8 114/7 115/16 117/11
**trademarked [4]** 23/13 23/19 23/23 113/6
**trademarks [17]** 7/24 24/3 35/20 51/4 53/13 53/14 54/3 57/16 65/1 66/2 71/13 75/23 78/7 84/18 86/8 89/10 104/2
**train [3]** 4/1 4/2 4/3
**trained [2]** 14/17 14/17
**trainer [9]** 24/17 25/20 27/5 27/6 27/8 27/9 27/9 49/8 64/5
**trainers [13]** 6/22 8/10 10/5 11/12 11/16 45/12 46/14 46/16 49/12 55/9 62/9 62/20 89/18
**training [5]** 14/16 14/16 22/23 23/2 32/10
**trampled [2]** 30/17 30/24
**trampling [1]** 32/15
**transcript [2]** 2/14 119/22
**transcripts [1]** 96/22
**transgression [1]** 4/9
**treat [2]** 73/14 92/23
**treating [1]** 45/12
**Tree [2]** 110/6 112/9
**trial [18]** 1/8 4/21 5/17 5/17 36/23 55/24 72/2 72/6 82/25 93/22 95/15 95/17 95/25 96/2 97/2 98/13 98/14 108/5
**tried [7]** 13/9 18/10 28/20 31/20 40/6 46/25 90/7
**trier [1]** 75/10
**tries [1]** 23/10
**TROUTMAN [1]** 1/13
**troutman.com [1]** 1/14
**true [10]** 15/9 26/10 27/2 41/13 43/9 47/1 52/9 63/12 91/20 110/14
**truth [2]** 58/22 75/11
**truthful [1]** 29/3
**truthfully [1]** 28/24
**try [5]** 13/18 18/7 22/19 36/8 48/4
**trying [1]** 60/22
**turned [1]** 95/9
**turns [1]** 107/20
**TV [1]** 40/25
**Tweet [1]** 53/16
**Tweets [5]** 52/6 52/8 52/12 52/13 52/14
**Twenty [1]** 3/25
**Twitter [2]** 52/5 52/7
**two [59]** 8/9 8/11 8/13 20/14 20/14 21/3 21/3 22/10 22/11 22/14 22/14 22/17 22/17 25/15 27/11 28/4 30/16 30/24 32/13 34/1 36/15 37/20 39/12 42/18 43/20 45/7 50/10 51/4 56/22 59/2 60/4 61/25 62/4 63/10 66/3 66/4

**U**

**U.S [3]** 1/22 113/11
**ultimately [1]** 8/16
**umbrella [2]** 91/3 91/9
**unanimous [4]** 97/22 97/24 103/19 104/4
**uncomfortable [1]** 19/25
**under [20]** 37/21 40/1 40/9 40/13 49/20 71/1 73/11 76/13 77/21 78/18 82/1 84/18 92/20 95/19 99/23 104/23 110/8 110/17 111/2 113/1
**Underground [1]** 16/19
**underneath [1]** 35/10
**understand [4]** 2/8 108/2 109/17 116/3
**understandable [1]** 11/21
**understanding [2]** 93/18 118/3
**understood [3]** 90/3 99/7 116/7
**unfair [2]** 54/7 117/20
**unimportant [1]** 9/3
**UNITED [4]** 1/1 1/9 32/11 76/6
**units [5]** 9/16 9/17 17/4 19/5 19/8 19/9 19/10 32/7 59/17 59/20 69/3 69/10
**unless [7]** 4/8 31/17 61/11 74/15 98/3 98/6 104/25
**unlike [1]** 26/2
**unreasonable [2]** 13/11 30/15
**unreported [1]** 80/2
**until [15]** 6/16 8/9 14/21 29/19 33/8 52/11 53/16 62/15 97/17 98/4 104/24 105/4 105/15 108/22 118/10
**up [74]** 5/18 6/6 6/11 9/2 9/10 9/12 9/17 11/8 12/9 13/1 13/19 14/22 15/1 15/3 15/8 15/14 16/18 17/8 17/24 18/5 18/8 18/19 19/4 19/8 19/18 19/20 21/20 27/1 28/20 29/20 29/23 30/3 30/3 30/16 32/7 32/16 33/8 33/20 39/16 39/20 40/6 41/16 42/9 43/18 48/18 51/23 53/15 54/9 55/5 56/22 57/16 58/16 58/20 58/23 60/15 61/5 62/10 63/9 64/13 64/15 64/20 67/6 67/9 68/13 71/19 80/11 87/11 96/15 106/8 112/12 112/14 115/25 118/18
**update [1]** 20/22
**upon [4]** 72/4 94/9 94/19 96/15
**urgent [2]** 52/23
**us [10]** 14/6 17/4 20/11 22/6 46/23 53/11 59/3 97/16 119/15 119/16
**us.dlapiper.com [1]** 1/19
**USC [1]** 99/5
**use [124]**
**used [55]** 3/15 3/18 7/6 9/19 10/13 12/7 14/6 15/24 17/19 17/20 18/6 22/23 23/16 23/22 24/5 24/6 24/6 24/21 26/8 26/10 28/16 28/18 28/19 29/4 31/13 33/23 35/18 43/8 43/10 52/11 56/19 56/21 57/10 57/11 59/23 59/23 61/20 63/5 65/3 65/12 68/15 69/2 75/22 80/16 86/8 86/14 86/15 86/16 88/3 88/18 89/21 89/23 97/3 101/10 102/10
**user's [1]** 83/25
**uses [6]** 17/16 78/22 110/12 110/22 112/10 115/12
**using [27]** 10/10 27/16 27/20 29/17 29/25

**Case 2:18-cv-05623-MMB Document 373 Filed 11/04/21 Page 139 of 141**
30/9 33/17 43/8 43/10 44/24 51/11 51/24 51/25 52/20 52/22 53/6 54/25 61/15 62/25 64/8 64/25 65/19 65/21 76/1 85/1 88/22 113/7
**USPTO [2]** 76/7 76/11
**usual [2]** 104/24 113/3

**V**

**vacation [3]** 13/9 30/11 61/4
**valid [2]** 76/15 99/11
**validity [1]** 76/12
**valuable [1]** 96/23
**value [1]** 43/16
**various [1]** 118/4
**ventilates [1]** 67/17
**verdict [43]** 70/9 71/4 71/5 71/24 72/22 73/22 74/10 77/5 77/7 83/14 85/25 86/3 90/15 95/1 96/9 96/18 96/25 97/15 97/19 97/20 97/21 97/21 97/22 98/1 98/2 98/5 98/9 98/11 98/19 98/25 101/24 103/13 105/3 105/4 105/17 105/22 107/16 108/23 116/20 117/16 118/11 118/18 119/13
**vernacular [1]** 31/12
**version [2]** 18/22 110/19
**versions [1]** 39/12
**versus [1]** 69/16
**very [24]** 4/9 4/20 4/21 9/22 13/1 17/16 24/1 24/1 28/14 34/12 38/18 51/2 53/4 54/1 54/10 66/10 70/15 99/20 105/13 107/16 108/21 109/25 112/4 118/16
**via [2]** 20/20 22/13
**Vicki [2]** 12/10 52/4
**victim [1]** 58/23
**video [3]** 9/4 16/17 31/5
**videos [1]** 20/4
**view [2]** 61/10 110/17
**views [2]** 96/14 96/20
**visual [1]** 39/20
**votes [2]** 96/18 97/17
**voting [1]** 97/16
**vouched [1]** 58/21
**vs [1]** 1/4

**W**

**WAGNER [20]** 1/12 3/23 5/20 6/2 32/5 35/1 43/12 46/2 47/4 51/17 55/8 56/1 56/5 57/23 58/3 99/3 102/10 109/11 114/21 119/5
**Wagner's [1]** 54/13 54/18 110/25
**waistbands [1]** 36/3
**wait [2]** 105/22 118/12
**waited [1]** 29/19
**walk [7]** 41/14 43/13 55/16 59/7 100/4 100/8 100/8
**walked [3]** 21/5 41/4 91/2
**walking [3]** 24/11 24/14 32/15
**walks [2]** 37/20 91/8
**want [42]** 3/23 5/15 11/6 11/20 15/3 35/16 38/20 38/21 46/1 46/10 46/10 46/11 46/12 46/23 50/13 51/18 57/5 57/6 57/17 61/10 61/11 61/22 67/2 67/12 68/4 68/10 68/20 71/3 71/8 83/12 98/6 98/8 103/9 105/12 105/17 105/18 114/21 116/11 116/16 116/18 118/23 118/25
**wanted [8]** 8/4 14/14 53/15 87/24 102/6 105/25 106/8 107/22
**wants [6]** 5/25 31/1 57/24 61/7 65/5 118/10
**wants to [1]** 118/10
**Warehouse [1]** 14/13
**warm [8]** 24/1 39/13 39/16 39/17 39/23 40/8

**T**

**touched [3]** 62/11 62/15 90/18

(continued)

# W

**warm...** [2] 40/11 57/11
**was** [228]
**Washington** [1] 35/19
**wasn't** [22] 7/12 8/15 8/24 16/17 18/18 18/21 24/25 26/9 26/20 27/5 27/15 30/2 32/8 39/9 40/23 47/23 51/24 53/25 55/7 57/11 62/21 106/24
**watched** [1] 22/3
**watching** [1] 20/4
**water** [1] 91/3
**way** [26] 6/11 10/14 14/21 17/17 23/22 24/6 37/5 38/2 40/9 41/8 41/16 42/22 49/20 55/24 64/5 67/15 76/1 92/4 95/16 96/7 96/23 97/17 98/10 108/20 113/9 114/18
**ways** [1] 32/19
**we** [183]
**we'd** [2] 9/17 19/14
**we'll** [15] 5/24 7/11 32/23 42/16 50/3 57/25 58/1 59/21 64/15 70/5 105/4 105/14 108/22 118/12 118/21
**we're** [16] 5/18 9/5 17/23 38/20 41/7 41/17 44/2 54/10 69/15 70/5 105/10 106/19 111/17 114/24 118/10 119/16
**we've** [7] 3/4 34/11 41/11 41/24 49/15 94/1 106/18
**weak** [3] 82/14 82/17 89/21
**weakness** [1] 78/16
**wear** [3] 46/13 67/10 93/25
**wearing** [3] 10/9 67/8 91/2
**website** [17] 8/14 8/15 21/15 38/1 38/12 47/10 48/25 48/25 49/1 51/18 53/1 53/15 53/17 53/21 53/24 62/14 62/21 62/4
**websites** [6] 31/7 31/12 44/16 51/17 51/17 52/21
**week** [2] 13/9 35/25
**weeks** [1] 5/16
**weigh** [4] 65/20 74/8 82/14 96/20
**weighed** [1] 44/6
**weighing** [2] 92/5 94/5
**weighs** [8] 49/21 79/15 79/20 82/18 82/23 83/3 83/10 84/7
**weight** [6] 65/3 80/11 91/12 91/14 92/7 94/3
**weighty** [1] 75/9
**welcome** [5] 5/14 71/9 118/11 118/14 118/21
**well** [37] 7/6 7/9 7/11 8/24 10/13 11/11 17/14 21/13 23/19 25/18 25/23 25/24 31/22 42/23 43/4 44/18 45/22 49/1 57/15 62/19 62/21 63/11 63/24 66/17 70/9 70/15 89/9 100/5 101/23 107/4 111/8 115/8 115/19 116/7 118/14 119/10 119/15
**well-established** [1] 115/8
**well-known** [2] 44/18 89/9
**well-understood** [1] 116/7
**went** [9] 6/22 46/6 52/4 62/3 63/23 63/23 69/1 106/2 107/3
**were** [56] 2/19 5/3 9/22 10/2 12/17 12/25 14/17 16/13 17/5 18/11 20/5 20/13 22/23 23/16 24/10 25/14 28/13 29/17 30/20 30/20 32/4 33/24 34/16 34/17 34/18 39/10 43/4 44/13 45/6 45/21 51/10 52/6 55/15 61/9 63/10 66/13 66/18 74/5 75/3 79/14 84/10 89/9 89/13 89/14 89/14 99/7 100/20 102/10 102/15 102/19 106/3 107/4 107/20 107/22 107/25 108/8
**weren't** [11] 11/24 16/10 16/11 16/12 28/10 43/5 44/17 47/24 56/5 56/23 66/2
**wet** [3] 91/3 91/8 91/8

**what's** [15] 11/17 25/14 29/11 34/25 41/13 55/23 57/8 59/22 62/17 62/24 106/2 106/2 109/21 110/25 111/23
**whatever** [5] 14/2 31/4 62/6 92/7 94/3
**when** [94] 2/16 4/23 5/18 6/4 10/7 10/9 10/11 10/12 10/13 10/24 11/11 11/20 11/23 12/14 12/16 13/9 17/7 17/13 18/11 20/19 21/17 23/2 23/20 26/12 27/8 27/16 28/7 30/1 32/19 33/20 34/3 36/5 36/22 37/10 38/22 39/2 39/8 41/17 44/22 45/2 45/2 45/4 46/20 50/15 55/7 56/6 57/20 60/2 60/7 62/10 63/2 63/18 65/24 67/22 68/4 68/7 69/20 70/9 71/1 73/10 75/24 77/14 77/17 78/1 78/19 79/8 80/19 83/14 84/20 86/8 88/3 90/6 90/16 92/12 92/20 93/23 94/24 95/16 96/24 97/4 97/23 98/13 99/18 99/20 100/9 101/24 103/3 103/8 103/19 104/4 107/2 107/4 108/23 111/23
**Whenever** [1] 33/7
**where** [30] 5/25 8/25 9/8 14/16 15/12 16/20 17/25 18/25 19/19 20/13 50/1 51/10 55/17 58/7 59/1 59/2 59/13 59/25 60/19 65/10 69/18 78/14 80/18 81/20 81/21 90/21 111/13 111/20 112/10 115/12
**whether** [39] 5/25 12/4 12/4 39/3 42/7 50/5 62/23 74/14 77/8 77/12 77/22 81/8 82/19 83/5 83/22 84/15 84/16 84/19 84/21 84/25 85/2 86/19 90/1 93/11 93/19 93/24 94/9 94/14 94/16 95/21 98/15 100/9 109/7 109/9 110/18 114/7 115/6 116/3 117/24
**which** [46] 2/5 2/21 10/1 17/24 18/24 19/7 26/3 29/24 31/24 43/9 59/11 70/6 71/19 72/1 72/23 75/5 76/7 80/12 81/1 81/2 86/10 87/9 88/23 89/14 89/14 90/25 91/4 91/15 99/23 100/13 101/10 102/8 106/12 106/21 108/3 112/12 112/16 113/12 113/20 113/23 114/15 114/24 114/25 115/8 115/15 117/9
**while** [12] 2/12 5/14 13/3 79/18 83/19 89/18 93/19 105/22 106/11 111/17 113/25 118/23
**white** [6] 10/24 16/16 22/20 40/2 44/2 68/19
**who** [38] 2/7 9/15 10/21 11/11 18/15 19/18 19/18 30/2 32/18 34/14 34/22 34/23 34/25 36/6 36/18 42/25 43/4 45/23 49/9 50/25 51/9 52/24 58/14 58/15 58/17 58/21 60/10 61/18 61/22 62/23 64/19 74/17 74/18 91/1 91/7 91/8 97/10 116/25
**Whoever** [2] 103/15 103/18
**whole** [12] 15/2 15/8 28/21 31/25 37/11 60/8 63/19 64/13 67/18 68/3 72/16 96/4
**wholesale** [3] 32/7 88/6 106/24
**whose** [3] 12/10 76/2 76/2
**why** [25] 2/21 4/2 8/13 8/16 9/4 9/23 11/23 12/3 17/21 24/20 28/13 28/21 37/20 38/8 51/7 51/8 53/21 63/11 63/19 67/9 68/15 68/17 95/9 115/20
**wicks** [1] 12/4
**wife** [1] 65/11
**will** [73] 3/2 3/21 4/3 5/7 5/11 5/20 5/23 7/18 7/21 7/24 9/2 17/24 25/21 26/3 28/3 32/21 46/14 46/21 50/17 53/12 64/24 67/19 70/6 70/8 71/4 71/9 71/13 71/18 71/24 72/11 72/20 73/3 74/21 74/21 75/20 77/10 79/9 79/21 80/23 80/24 83/13 83/21 85/5 85/12 93/3 94/12 94/15 94/25 95/4 97/10 97/10 97/11 97/22 97/23 97/25 98/1 98/1 98/16 98/25 100/17 100/18 103/7 103/15 103/18 103/20 104/18 104/21 104/24 105/4 108/19 108/20 118/9 119/2

**willful** [12] 108/22 126/2 126/20 65/25 69/23 79/19 83/19 83/21 84/2 84/10 88/22 100/14 104/12 109/14 109/19 111/1
**willfully** [4] 30/23 83/3 83/23 88/24
**willfulness** [14] 29/9 29/10 29/11 32/14 71/14 79/17 79/22 83/1 100/22 100/25 101/4 102/17 109/13 115/2
**Williams** [3] 10/20 15/9 15/22
**wintertime** [1] 39/17
**wiped** [1] 52/15
**wisdom** [1] 72/14
**within** [1] 78/2
**without** [8] 31/12 38/16 45/17 72/17 75/11 79/13 79/14 91/20
**witness** [19] 5/8 16/1 22/20 25/17 45/23 90/16 90/17 90/18 90/19 91/1 93/6 93/11 93/12 93/16 93/19 93/21 93/22 94/19
**witness's** [3] 93/18 93/19 93/23
**witnesses** [16] 3/2 9/15 9/19 11/18 11/25 12/5 42/19 71/16 71/16 72/24 74/16 90/12 91/16 93/11 94/2 118/5
**witnesses are** [1] 11/18
**won** [1] 10/24
**won't** [5] 33/8 34/2 40/23 68/12 105/15
**wonder** [1] 55/5
**word** [8] 16/2 33/23 35/18 55/1 55/1 56/19 75/21 110/22
**words** [24] 4/6 23/21 34/13 38/23 40/22 40/23 41/23 42/1 44/13 47/12 47/20 50/2 56/22 67/18 86/7 86/9 87/19 87/22 89/2 89/3 89/7 89/23 90/2 116/9
**wordsmith** [1] 26/17
**wore** [1] 10/17
**work** [7] 8/16 14/6 37/10 37/23 38/8 39/8 48/10
**worked** [5] 6/14 13/22 14/13 15/11 15/13
**worker** [3] 14/6 15/9 37/3
**workers** [1] 16/11
**working** [5] 8/15 26/25 36/15 66/13 105/13
**works** [4] 21/14 23/17 49/7 67/4
**worksite** [1] 37/3
**world** [5] 9/6 10/25 35/5 47/9 67/2
**worried** [1] 106/7
**worry** [7] 7/11 7/17 8/23 24/8 60/20 61/8 65/5
**worse** [1] 23/15
**worth** [2] 59/17 59/20
**worthy** [1] 93/11
**would** [61] 2/18 2/21 7/16 8/20 9/1 9/23 11/10 12/22 13/11 14/19 14/22 15/3 15/19 16/2 22/24 23/1 23/2 23/22 30/20 31/6 31/11 32/22 35/13 35/22 36/14 37/24 37/25 37/25 41/3 42/22 47/9 47/9 55/2 55/5 60/6 60/7 62/3 62/5 63/21 68/6 71/7 74/4 74/8 78/7 78/22 81/10 83/9 84/23 87/9 88/20 90/20 91/4 91/7 99/17 102/1 102/14 104/5 109/18 111/3 111/23 117/18
**wouldn't** [7] 13/3 28/22 31/15 31/16 35/23 60/24 65/10
**write** [6] 26/17 47/22 97/9 97/14 97/16 118/21
**writes** [1] 11/3
**written** [1] 36/3
**wrong** [5] 35/5 36/22 37/12 38/4 111/21
**wrote** [8] 53/4 53/10 53/16 54/5 55/14 56/5 65/21 93/22

---

# Y

**yeah** [7] 20/17 20/18 21/6 21/7 36/13 60/3

## Y

**yeah... [1]** 68/14
**year [6]** 6/16 10/18 15/13 25/2 32/3 51/15
**Year's [2]** 53/18 53/19
**years [26]** 7/23 10/22 10/25 29/22 30/16
30/25 32/13 37/14 45/21 45/22 51/9 51/19
54/16 54/17 61/25 62/4 64/9 66/3 66/5 66/11
68/22 68/22 69/9 87/13 88/18 88/25
**yellow [1]** 39/25
**yes [17]** 2/10 3/11 21/24 22/23 100/1 100/22
101/7 103/24 104/5 104/12 104/14 104/16
104/17 108/18 109/13 112/19 117/6
**yesterday [6]** 13/23 17/4 18/20 18/22 19/3
23/20
**yet [3]** 23/23 24/2 106/4
**York [1]** 1/18
**you [703]**
**you'd [2]** 23/2 118/13
**you'll [18]** 6/4 16/6 16/8 16/21 19/24 23/6
23/16 24/9 24/11 25/6 32/9 35/20 40/22 42/6
42/7 67/17 83/12 111/24
**you're [44]** 5/14 7/20 14/23 16/6 26/2 27/20
33/7 34/22 36/7 38/11 38/13 38/22 42/8
44/23 44/24 45/1 45/4 51/11 51/25 54/11
60/14 61/3 63/12 66/9 67/2 67/3 67/4 71/6
71/9 96/19 97/17 104/23 104/25 104/25
112/1 117/22 117/23 118/1 118/11 118/14
118/16 118/20 118/23 119/10
**you've [14]** 4/21 32/5 35/25 39/6 40/2 42/1
60/13 71/21 104/7 104/17 105/13 105/16
117/21 118/2
**your [148]**
**yours [1]** 5/4
**yourself [2]** 58/22 96/10
**yourselves [2]** 71/17 118/23

## Z

**zero [1]** 46/4
**zip [2]** 40/15 40/16
**zoomed [1]** 37/3