**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LONTEX CORPORATION, | Civil Action No.:  18-cv-5623 |
| Plaintiff, | |
| | (Hon. Michael M. Baylson) |
| v. | |
| NIKE, INC., | |
| Defendant. | |

---

**DEFENDANT NIKE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF LONTEX CORPORATION'S OMNIBUS POST-TRIAL MOTION**

---

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  THIS COURT SHOULD ADOPT THE JURY'S REASONABLE CONCLUSION THAT LONTEX IS NOT ENTITLED TO ANY OF NIKE'S PROFITS.............................................................................................................1

    A.  Legal Standards for Disgorgement .........................................................2

    B.  This Court Should Deny Lontex's Request for an Award of NIKE's Profits.....................................................................................................4

        1.  The Jury's Profits Verdict Should Not Be Disregarded..............................4

        2.  The *Banjo* Factors Weigh Heavily Against Disgorgement Even If This Court Disregards the Jury's Verdict ...............7

    C.  Lontex's Contrary Arguments Distort the Law and the Facts ..............13

    D.  Lontex's Proposed Profits Award Is Inequitable and Inconsistent with the Evidence...........................................................................................15

III.  DAMAGES SHOULD NOT BE TREBLED, AND ANY PROFITS SHOULD NOT BE ENHANCED ........................................................................................18

IV.  LONTEX HAS NOT MET ITS BURDEN OF PROVING IT IS ENTITLED TO A PERMANENT INJUNCTION .........................................................................20

    A.  Lontex Has Not Shown It Is Entitled to *Any* Injunction. ......................20

    B.  If an Injunction Nonetheless Is Entered, Lontex's Overbroad Proposal Should Be Scaled Back to Comply with the Law...................................21

V.  LONTEX IS NOT ENTITLED TO A NEW TRIAL ON DAMAGES ...........................22

VI.  LONTEX IS NOT ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS BECAUSE THIS CASE IS NOT EXCEPTIONAL. ............................................25

    A.  The Jury's Willfulness Verdict Does Not Make This Case "Exceptional." ..........27

    B.  There Was No Unusual Discrepancy in the Merits of the Parties' Positions.................................................................................................27

    C.  NIKE's Defense Was Reasonable and Expected in a Contested Case. .................29

VII.  EVEN IF THIS COURT DETERMINES THAT SOME ATTORNEYS' FEES SHOULD BE AWARDED, THOSE FEES SHOULD BE SIGNIFICANTLY REDUCED UNDER CONTROLLING SUPREME COURT AND THIRD CIRCUIT PRECEDENT. ........................................................................................32

VIII.  LONTEX HAS REQUESTED UNREASONABLE NON-TAXABLE COSTS TO WHICH IT IS NOT ENTITLED. ........................................................................35

IX.  CONCLUSION..............................................................................................35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*4 Pillar Dynasty LLC v. New York & Co., Inc.*,
  933 F.3d 202 (2d Cir. 2018)............................................................8, 13, 14, 15, 18

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  166 F.3d 197 (3d Cir. 1999).....................................................................2, 6, 9

*A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*,
  2002 WL 27735 (E.D. Pa. Jan. 9, 2002) ..................................................................3

*Arlington Indus. v. Bridgeport Fittings, Inc.*,
  2016 WL 3522964 (M.D. Pa. June 28, 2016) ...........................................................35

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
  912 F.3d 445 (8th Cir. 2018) ...............................................................................29

*Banjo Buddies, Inc. v. Renosky*,
  399 F.3d 168 (3rd Cir. 2005) ...................................................................... *passim*

*BP Am. Inc. v. Diwan Petrol Inc.*,
  2021 WL 5163206 (E.D. Pa. Nov. 5, 2021) .............................................................31

*Caesars World, Inc. v. Venus Lounge, Inc.*,
  520 F.2d 269 (3d Cir. 1975).................................................................................18

*Ciolli v. Iravani*,
  625 F. Supp. 2d 276 (E.D. Pa. 2009) ......................................................................25

*Coty Inc. v. Excell Brands, LLC*,
  277 F. Supp. 3d 425 (S.D.N.Y. 2017).....................................................................27

*Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*,
  855 F.3d 163 (3d Cir. 2017)..........................................................................2, 4, 6, 17

*CPC Props., Inc. v. Dominic, Inc.*,
  2013 WL 5567584 (E.D. Pa. Oct. 9, 2013)..........................................................2, 9, 12

*Decus, Inc. v. Heenan*,
  2018 WL 1082842 (E.D. Pa. Feb. 27, 2018) ......................................................26, 28, 29, 30

*Discovery Commc'ns, Inc. v. Animal Planet, Inc.*,
  172 F. Supp. 2d 1282 (C.D. Cal. 2001) ...................................................................26

*Dyson, Inc. v. SharkNinja Operating LLC*,
    2019 WL 1454509 (N.D. Ill. Mar. 31, 2019)........................................................27

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)........................................................21

*Eckel Industries, Inc. v. Primary Bank*,
    26 F. Supp. 2d 313 (D.N.H. 1998)........................................................3

*Electro Sci. Indus., Inc. v. Gen. Scanning Inc.*,
    247 F.3d 1341 (Fed. Cir. 2001)........................................................8

*Fabick, Inc. v. JFTCO, Inc.*,
    2019 WL 1320298 (W.D. Wis. Mar. 22, 2019)........................................................5

*Fair Wind Sailing, Inc. v. Dempster*,
    764 F.3d 303 (3d Cir. 2014)........................................................26, 27

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
    765 F.3d 205 (3d Cir. 2015)........................................................20, 21

*Fishkin v. Susquehanna Partners, G.P.*
    2007 WL 560703 (E.D. Pa. Feb. 12, 2007) ........................................................3

*Gen. Instr. Corp. v. Nu-Tek Elecs. & Mfg.*,
    3 F. Supp. 2d 602 (E.D. Pa. 1998) ........................................................34

*Gucci Am., Inc. v. Daffy's Inc.*,
    354 F.3d 228 (3d Cir. 2003)........................................................2, 6, 10, 21

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................32, 33, 34

*Holland v. Florida*,
    560 U.S. 631 (2010)........................................................9

*Innovative Metal Craft, LLC v. Whaley*,
    2020 WL 7769828 (W.D. Pa. Dec. 30, 2020)........................................................28, 30

*Institutionalized Juveniles v. Secretary of Public Welfare*,
    758 F.2d 897 (3d Cir. 1985)........................................................33

*United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*,
    2020 WL 1821028 (E.D. Pa. Apr. 10, 2020) ........................................................32, 34

*Int'l Star Class Yacht Racing Ass'n v. Hilfiger*,
    80 F.3d 749 (2d Cir. 1996)........................................................26

*Jama Corp. v. Gupta*,
   2008 WL 108671 (M.D. Pa. Jan. 4, 2008) ............................................................35

*Kar 4 Kids v. Am. Can!*,
   8 F.4th 209 (3d Cir. 2021) ...................................................................7, 9, 19

*Kolcraft Enterprises, Inc. v. Chicco USA, Inc.*,
   2019 WL 4242482 (N.D. Ill. Sept. 6, 2019) ........................................................27

*Koninkijke Philips Electronics N.V. v. Hunt Control Sys., Inc.*,
   2016 WL 3545529 (D.N.J. June 29, 2016) .......................................................3, 16

*Larry Pitt & Assocs. v. Lundy L. LLP*,
   294 F. Supp. 3d 329 (E.D. Pa. 2018) ...................................................................3

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014).........................................................................................20

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) ...................................................................4, 15, 16

*Liu v. Sec. & Exch. Comm'n*,
   140 S. Ct. 1936 (2020).......................................................................................2

*Maduka v. Tropical Naturals., Ltd.*,
   409 F. Supp. 3d 337 (E.D. Pa. 2019) .............................................................28, 31

*Marshak v. Treadwell*,
   595 F.3d 478 (3d Cir. 2009)........................................................................13, 14

*Mary Courtney T. v. Sch. Dist. of Phila.*,
   2009 WL 185426 (E.D. Pa. Jan. 22, 2009) ..........................................................34

*MB Imports, Inc. v. T&M Imports, LLC*,
   2016 WL 8674609 (D.N.J. Dec. 23, 2016) ..........................................................14

*Murphy v. Girard School District*,
   134 F. Supp. 2d 431 (W.D. Pa. 1999)...........................................................33, 34

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
   290 F.3d 578 (3d Cir. 2002)..............................................................................22

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)...........................................................................25, 26, 27, 29

*Parks, LLC v. Tyson Foods, Inc.*,
   2017 WL 3534993 (E.D. Pa. Aug. 17, 2017) ..................................................30, 31

*Parkway Baking Co. v. Freihofer Baking Co.*,
 255 F.2d 641 (3d Cir. 1958) ............................................................................3

*Pelzer v. City of Philadelphia*,
 771 F. Supp. 2d 465 (E.D. Pa. 2011) ...................................................33, 34

*Pep Boys Manny, Moe & Jack of Cal. v. Goodyear Tire & Rubber Co.*,
 2002 WL 524001 (E.D. Pa. Apr. 5, 2002) .......................................................32

*Renna v. County of Union, N.J.*,
 2015 WL 1815498 (D.N.J. Apr. 21, 2015) .....................................................28

*Romag Fasteners, Inc v. Fossil, Inc.*,
 140 S. Ct. 1492 (2020) ..................................................................................2, 9

*Safeway Transit LLC v. Disc. Party Bus, Inc.*,
 954 F.3d 1171 (8th Cir. 2020) ...........................................................3, 16, 19

*SAS v. Sawabeh Info. Servs. Co.*,
 2015 WL 12763541 (C.D. Cal. June 22, 2015) ..............................................34

*Skydive Arizona, Inc. v. Quattrocchi*,
 673 F.3d 1105 (9th Cir. 2012) ...................................................................19, 20

*SRI Int'l, Inc. v. Cisco Sys.*,
 14 F.4th 1323 (Fed. Cir. 2021) ......................................................................31

*Stair v. Lehigh Valley Carpenters Loc. Union No. 600*,
 1994 WL 172727 (E.D. Pa. May 6, 1994) .....................................................35

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
 808 F. App'x 459 (9th Cir. 2020) ...............................................................3, 16

*Stryker Corp. v. Zimmer, Inc.*,
 837 F.3d 1268 (Fed. Cir. 2016) .....................................................................27

*United States Soo Bahk Do Moo Duk Kwan Fed'n, Inc. v. Tang Soo Karate Sch., Inc.*,
 2015 WL 4920306 (M.D. Pa. Aug. 17, 2015) ................................................28

*Urban Outfitters, Inc. v. BCBG Max Azria Group, Inc.*,
 430 F. App'x 131 (3d Cir. 2011) ...................................................................26

*Visible Sys. Corp. v. Unisys Corp.*,
 551 F.3d 65 (1st Cir. 2008) ..............................................................................3

*W.E. Bassett Co. v. Revlon Inc.*,
 435 F.2d 656 (2d Cir. 1970) .....................................................................13, 14

*Washington v. Phila. Cnty. Court of Common Pleas*,
   89 F.3d 1031 (3d Cir. 1996)..................................................................................33

*Western Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*,
   427 F.3d 1269 (10th Cir. 2005) .........................................................................9, 12

*Winter v. Nat'l Resources Defense Council, Inc.*,
   555 U.S. 7 (2008)..................................................................................................20

**Statutes**

15 U.S.C. § 1116(a) ....................................................................................................21

15 U.S.C. § 1117(a) ...................................................................................2, 6, 10, 19, 26

28 U.S.C. § 1920.........................................................................................................35

**Other Authorities**

Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2335 (4th ed.) ......................................6

1 McCarthy on Trademarks and Unfair Competition § 2:22 (5th ed. 2021) ..................11

5 McCarthy on Trademarks and Unfair Competition § 32:183 (5th ed. 2021) .................32

Defendant NIKE, Inc. ("NIKE") respectfully submits this brief in opposition to Plaintiff Lontex Corporation's ("Lontex") late-filed Omnibus Post-Trial Motion (ECF No. 384.)[1]

## I.    INTRODUCTION

After nearly two weeks of trial, the jury deliberated over each and every item of potential damages contained in the jury verdict form that Lontex had largely drafted.  The jury then awarded Lontex a sum more than *three times higher* than (1) the *highest* annual sales number that Lontex had ever reported for what it now calls its "COOL COMPRESSION" products and (2) the amount for which Lontex had tried unsuccessfully to sell the trademark.  Lontex had long championed the jury's role as the arbiter of these issues.  But now, dissatisfied with the jury's verdict, Lontex pleads with this Court to give it the outlandish sums that the jury rejected.  Setting aside the incongruity of Lontex's abrupt reversal, the law and the record establish that Lontex is, at best, entitled to no more relief than the jury has already afforded.  All of Lontex's remedial requests and its alternative request for a new damages trial should be rejected for the reasons given below.

## II.    THIS COURT SHOULD ADOPT THE JURY'S REASONABLE CONCLUSION THAT LONTEX IS NOT ENTITLED TO ANY OF NIKE'S PROFITS

Lontex repeatedly urged this Court to submit profits disgorgement to the jury.  This Court did so and instructed the jury on disgorgement.  Lontex wanted $95 million in NIKE profits—a massive windfall for a company whose annual self-described "COOL COMPRESSION" sales never exceeded $165,000 at any time in the last decade.  After weighing the evidence, the jury awarded Lontex $142,000 in compensatory damages and $365,000 in punitive damages, but no

---

[1] This Court specifically ordered the parties to submit post-trial motions by noon on November 24.  (9T at 236:18-22.)  Lontex failed to comply with this Order and submitted its motion twelve hours after the deadline—without any notice, explanation, or request to excuse its late filing.  NIKE, by contrast, met the deadline.  Lontex's motion should be denied entirely on the merits.  But to the extent this Court believes any issue is a close call, Lontex's failure to meet this Court's filing deadline should weigh against Lontex.  Lontex asks this Court for tens of millions of dollars and an overreaching injunction, yet did not see fit to comply with this Court's schedule for seeking such relief.

NIKE profits.

Having succeeded on its request to submit disgorgement to the jury (over NIKE's objection), Lontex now asks this Court to disregard the jury's "no disgorgement" verdict. This invitation should be declined. Lontex has not shown that the disgorgement verdict was erroneous, unjust, or inadequate in any way. Nor does Lontex provide any legal, factual, or equitable justification for disregarding it—whether that verdict is treated as advisory or binding. Lontex is not entitled to any of NIKE's profits, as the jury already reasonably and correctly concluded.

### A.     Legal Standards for Disgorgement

***Disgorgement Is Not Available as a Matter of Right.***   Disgorgement of profits is an equitable remedy under the Lanham Act based on principles of unjust enrichment. *See* 15 U.S.C. § 1117(a) ("subject to the principles of equity," a trademark plaintiff may recover "defendant's profits").[2]  The Third Circuit has held that an award of profits "does not follow as a matter of course upon the mere showing of an infringement," willful or not, and should be denied where, as here, "there is a clear showing that no profit was made" from the infringement. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 209 (3d Cir. 1999) (citation omitted).[3]  An award of the defendant's profits is thus not automatic and never a matter of right.  *See Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.,* 855 F.3d 163, 177 (3d Cir. 2017) (vacating $4,054,319 disgorgement award).

As this Court instructed the jury, the disgorgement framework has two steps:

---

[2] *See also Romag Fasteners, Inc v. Fossil, Inc.,* 140 S. Ct. 1492, 1497 (2020) (describing disgorgement of profits under the Lanham Act as an "equity practice"); *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1943 (2020) (describing "disgorgement" as a "profit-based measure of unjust enrichment").

[3] *See also Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 241-43 (3d Cir. 2003) (en banc) (applying disgorgement factors and holding that they "weigh against awarding profits"); *CPC Props., Inc. v. Dominic, Inc.*, 2013 WL 5567584, at *3 (E.D. Pa. Oct. 9, 2013) (applying each factor on summary judgment and concluding disgorgement is not warranted as a matter of law).

*Step One: Does Equity Require an Award of Profits?*  First, the factfinder must decide whether disgorgement is appropriate as a matter of equity.  The Third Circuit, in *Banjo Buddies, Inc. v. Renosky*, set forth six non-exhaustive factors to guide this inquiry.  399 F.3d 168, 175 (3rd Cir. 2005).  As the Court instructed the jury, these factors include: (1) whether defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by plaintiff in asserting its rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.  *See id.*; *see also* 9T at 224:14-225:25 (disgorgement instruction).  Based on these factors, the jury found that Lontex should not be awarded any profits.  (ECF 363.)

The law includes additional limitations on the availability and scope of a profits award.  Profits may not be awarded for the purpose of penalizing or punishing a defendant.[4]  Disgorgement may not result in a windfall to plaintiff.[5]  Disgorgement also is "inconsistent with a claim of reverse confusion," which is what Lontex asserted at trial.  *See, e.g.*, *Koninkijke Philips Electronics N.V. v. Hunt Control Sys., Inc.*, 2016 WL 3545529, at *26 (D.N.J. June 29, 2016) (citing cases).[6]

*Step Two: Calculating Profits.*  Where disgorgement is appropriate (unlike here), courts then use a burden-shifting framework to calculate profits: (1) "the trademark owner is tasked with

---

[4] *See, e.g.*, *Fishkin v. Susquehanna Partners, G.P.* 2007 WL 560703, at *5 (E.D. Pa. Feb. 12, 2007) ("compelling the defendants to disgorge their profits as restitution would improperly risk giving the plaintiff a windfall or penalizing the defendant"); *Safeway Transit LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1177 (8th Cir. 2020) ("the Lanham Act does not permit the award of monetary relief as a penalty.").

[5] *See, e.g.*, *Larry Pitt & Assocs. v. Lundy L. LLP*, 294 F. Supp. 3d 329, 337 (E.D. Pa. 2018) ("[T]he Lanham Act was enacted 'to promote fair business dealings, not to provide a windfall to an overly eager competitor.'" (quoting *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 649 (3d Cir. 1958)); *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 808 F. App'x 459, 460-61 (9th Cir. 2020) ("The Lanham Act does not entitle plaintiffs to windfalls."); *Eckel Industries, Inc. v. Primary Bank*, 26 F. Supp. 2d 313, 317 (D.N.H. 1998) (citing cases for same proposition).

[6] *A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 2002 WL 27735, at *5 (E.D. Pa. Jan. 9, 2002) (on remand); *Fabick, Inc. v. JFTCO*, Inc., 944 F.3d 649 (7th Cir. 2019) (affirming denial of profits in a reverse confusion case and stating that profits are unlikely to be suitable for reverse confusion); *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65 (1st Cir. 2008) (affirming that profits were not available as a matter of law).

3

proving the infringer's sales," then (2) "the burden of proof shifts to the defendant to show costs and deductions." *Covertech*, 855 F.3d at 177.  Because disgorgement "is intended to award profits *only* on sales that are attributable to the infringing conduct," *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1408 (9th Cir. 1993), NIKE's sales that Lontex failed to prove were attributable to the use of "cool compression" cannot be disgorged as a matter of law.[7]  *Covertech*, 855 F.3d at 176.

**B.    This Court Should Deny Lontex's Request for an Award of NIKE's Profits**

Principles of equity and the *Banjo* factors support the jury's "no disgorgement" verdict and compel denial of Lontex's request for a windfall award of NIKE's profits.

**1.    The Jury's Profits Verdict Should Not Be Disregarded**

Lontex asked and received the opportunity to present its disgorgement claim to the jury. The jury rejected it and fashioned a monetary award that it found to be fair, just, and reasonable to compensate Lontex.  Having received what it asked for—but not the result it wanted—Lontex now asks for a do-over.  But there is no basis for this Court to reject the jury's verdict.  The profits verdict is equitable, is consistent with the law and evidence, and should not be disturbed.

*First*, Lontex asked for and consented to the jury's verdict on profits disgorgement.  Lontex repeatedly urged the Court to submit disgorgement to the jury.  (8T at 9:22-24.)  After the jury returned its liability verdict, Lontex unequivocally insisted that disgorgement "should be submitted to the jury" in response to NIKE's objections.  (*Id.*; *see also id.* at 7:19–8:5, 90:8–91:6 (Lontex's argument and citation of case law).)  The Court overruled NIKE's objection and granted Lontex's

---

[7] At trial, Lontex and its damages expert proceeded under the false assumption that, between 2015 and 2018, every sale of any NIKE product Lontex accused of infringement was attributable to the use of "cool compression."  Lontex thus urged the jury to award it around $95 million of NIKE's profits.  (*See, e.g.*, 9T at 203:24-204:2.)  The Court had "grave doubts" about those calculations.  (*Id.* at 194:4-9.)  Indeed, the phrase "Cool Compression" did not appear on any NIKE product or on any hangtag or label affixed to the product.  This fact was undisputed and stipulated to by Lontex, so the jury was instructed accordingly.  (*Id.* at 194:21-195:21, 227:6-8.)  This undisputed fact frames the disgorgement issue at the threshold because only sales that are *attributable to* use of "Cool Compression" are even potentially eligible for disgorgement.

request to submit disgorgement to the jury. (*Id.* at 185:8-25.) The Court permitted each party to present to the jury evidence and argument on disgorgement. (*Id.* at 185:8–187:8.) And the Court ruled there was no prejudice to NIKE because "[i]f the plaintiff wants to offer a type of damage of disgorgement or lost profits or something similar, NIKE will retain its rights to move for JNOV as to that award or for remittitur or anything else." (*Id.* at 185:20-25; *see id.* 187:20–188:1.)[8] Lontex cannot now equitably complain about the jury's verdict. *See Fabick, Inc. v. JFTCO, Inc.*, 2019 WL 1320298, at *2 (W.D. Wis. Mar. 22, 2019) (after party consented to jury verdict on equitable claims, it "cannot now withdraw its consent because it is unhappy with the outcome"), *aff'd*, 944 F.3d 649 (7th Cir. 2019). This alone is an independent basis for rejecting Lontex's belated request for judicial disgorgement.

      *Second*, even if this Court treats the profits verdict as advisory, it can and should adopt the verdict. After nearly two weeks of trial and deliberating on the damages verdict form that Lontex had largely drafted, the jury fashioned a monetary award to compensate Lontex for any harm: $142,000. (10T at 5:1–6:3; ECF 359, 363.)[9] The jury expressly entered a zero in the line item for disgorgement of NIKE's profits. (*Id.*) Neither party objected to the Court's instructions on disgorgement and the *Banjo* framework for deciding if disgorgement is warranted. (9T at 224:14–225:24.) The jury was also instructed that the entirety of its monetary award could (i) compensate Lontex for harm caused by NIKE, (ii) deter infringement, and (iii) punish NIKE. (9T at 222:10-24, 229:4-6.) The jury then awarded some forms of damages, but none of NIKE's profits.

---

[8] The Court expressed "grave doubts" about Lontex's calculation of profits and stated that "if the jury awards a big number for [profits], I may feel I have equitable power to reduce it." (9T at 194:4-9.)

[9] The jury also found that Lontex: (i) did not lose any profits as a result of NIKE's infringement; (ii) did not lose any expansion opportunities as a result of NIKE's infringement; and (ii) was not entitled to an award of corrective advertising. (ECF 363.) The compensatory damage award reflected the jury's calculation of a "reasonable royalty" that Lontex should have received on NIKE's sales using "cool compression"—far less than the $7.5 million royalty award urged by Lontex. (8T at 195:3-8, 196:4-6.)

The profits verdict should not be disregarded.  Even when deemed "advisory" under Rule 39(c)—and therefore not binding on the Court—advisory juries are not empaneled as a mere academic exercise.  To the contrary, courts empanel advisory juries for advice on issues at trial; to that end, they "aid[] the court in discharging its functions."  Wright & Miller, 9 FED. PRAC. & PROC. CIV. § 2335 (4th ed.).  Even if the jury's profits verdict here is deemed advisory, the verdict and the implied findings underlying it should not be ignored or wasted.

The jury is presumed to have rejected all of the findings that Lontex is now asking this Court to make.  So based on the jury's verdict, the *Banjo* factors weigh decisively against disgorgement; NIKE was not unjustly enriched because of COOL COMPRESSION; and a profits award is not necessary to deter NIKE.  *See, e.g.*, *Gucci Am., Inc.*, 354 F.3d at 243 (explaining that disgorgement is unwarranted where "the record does not establish that the infringer was enriched because of the owner's mark").  Lontex has not shown that these findings are unsupported or otherwise unreasonable.

Lontex's contention that the damages award is "inadequate" unless profits are disgorged is also unsupported.  (Lontex Br. at 2 (quoting 15 U.S.C. § 1117(a).)  The jury found that $142,000 in royalties (not profits) was adequate to compensate Lontex and it separately awarded $365,000 to punish and deter NIKE.  The jury's rejection of disgorgement does not make this $507,000 award "inadequate."  *See A & H Sportswear, Inc.*, 166 F.3d at 209 (disgorgement "does not follow as a matter of course upon the mere showing of an infringement"); *Covertech,* 855 F.3d at 177.

In sum, Lontex succeeded in presenting disgorgement to the jury, but failed to recover any profits.  As this Court stated after trial, "The jury has spoken" on this issue.  (10T at 9:9-16.)  The profits verdict was equitable, consistent with the instructions, and supported by the evidence.  Accordingly, this Court should not award any of NIKE's profits to Lontex.

2.      **The *Banjo* Factors Weigh Heavily Against Disgorgement Even If This Court Disregards the Jury's Verdict**

The Third Circuit's *Banjo* factors are for "evaluating whether equity supports disgorging" profits.  Each factor weighs heavily against disgorgement even if the jury's verdict is disregarded.

Lontex improperly ignores almost all of the Third Circuit's factors.  In *Banjo,* the Third Circuit held that a disgorgement award was warranted only *after* addressing each of the factors and determining that they favored disgorgement.  399 F.3d at 174-76.  The court reaffirmed this rule in *Kars 4 Kids* (also ignored by Lontex), which held that trial courts *must* consider the *Banjo* factors to "evaluate whether equity supports disgorging the infringer's profits."  *Kar 4 Kids v. Am. Can!,* 8 F.4th 209, 223 (3d Cir. 2021).  Because the district court in *Kars 4 Kids* did not "consider all of these factors," the Third Circuit "vacate[d] the disgorgement order" and "remand[ed] for the court to apply the remaining factors."  *Id.* at 223.  Lontex invites this Court to make the same error here.  When properly applied, each *Banjo* factor weighs heavily against disgorgement.

a.      **Factor 1: Intent to Confuse or Deceive.**

The first factor is "whether in infringing the Cool Compression trademark, NIKE had the intent to confuse or deceive."  (9T at 224:25-225:1); *Banjo Buddies*, 399 F.3d at 175.  NIKE did not have the intent to confuse or deceive consumers.  There is no evidence in the record that NIKE intended to prey on Lontex or its purported goodwill when it used these common words to describe its own products.  There is no evidence that NIKE even intended to adopt "cool compression" as a trademark—much less for the *purpose of confusing or deceiving consumers*, as this factor requires.  In addition, the evidence showed that NIKE's long-standing use of "cool" and "compression" to "describe its products"—for many years before the NIKE Pro products at issue were ever sold—had nothing to do with Lontex or the COOL COMPRESSION trademark.  (5T at 100:4-12.)  The undisputed trial evidence was that NIKE was not even aware of Lontex until it

received a cease-and-desist letter in April 2016.  (*See, e.g.*, *id.* at 66:15–67:16; 6T at 172:17-22.)

Lontex's argument hangs on the jury's willfulness finding.  But Lontex failed to adduce any evidence that NIKE intended to confuse or deceive.  Instead, it relied solely on facts regarding NIKE's trademark clearance and continued sale of its products.  The jury's willfulness verdict—even if allowed to stand—cannot tilt this factor in favor of disgorgement.  Indeed, the same jury that found willfulness at the liability phase still declined to award any of NIKE's profits during the damages phase, very likely finding that NIKE did not intend to deceive or confuse consumers.

Regardless, not all findings of willful infringement are alike.  Principles of equity mandate that this Court examine the evidence of NIKE's supposedly culpable intent before disgorging profits.  When it comes to fashioning a remedy, "a jury verdict of willfulness simply does not bar a district court from determining the egregiousness of a willful infringer's conduct*." See, e.g., Electro Sci. Indus., Inc. v. Gen. Scanning Inc*., 247 F.3d 1341, 1354 (Fed. Cir. 2001).[10]  Here, the evidence of willful intent is exceptionally weak.  (*See* Lontex Br. at 4-6.)  Neither of the two facts that Lontex emphasized at trial as proof of willfulness—that NIKE did not perform a trademark clearance search for the phrase "cool compression" and that NIKE continued to sell the NIKE products at issue after Lontex first sent a cease-and-desist letter—show that NIKE acted with "the intent to confuse or deceive" consumers, as required by *Banjo*.

Even if one were to incorrectly suppose that willfulness tilts this factor toward Lontex, Lontex is still wrong as a matter of law that a willfulness finding *mandates* an award of profits. (Lontex Br. at 2-8.)  The Third Circuit has made clear that defendant's intent (or willfulness) is just one of six independent, non-exhaustive factors for the jury to evaluate.  *Banjo Buddies*, 399

---

[10] *See also 4 Pillar Dynasty LLC*, 933 F.3d at 214 (observing that the "evidence of willful conduct was less than overwhelming," notwithstanding the jury's finding of willful infringement).

F.3d at 173-76 ("Willfulness is a Factor, Not a Prerequisite.").  And it has repeatedly held that "[d]isgorgement 'does not follow as a matter of course upon the mere showing of an infringement," willful or otherwise.  *Kars 4 Kids Inc.*, 8 F.4th at 223 (quoting *A&H Sportswear, Inc.*, 166 F.3d at 209).  Courts have thus refused to disgorge a willful infringer's profits for equitable reasons.  *See, e.g.*, *CPC Props., Inc. v. Dominic, Inc.*, 2013 WL 5567584, at *3 (E.D. Pa. Oct. 9, 2013); *see also Western Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1273 (10th Cir. 2005) ("Even with a finding of willfulness, a court may still exercise its discretion to reduce or even eliminate a profit award in the name of fashioning an equitable remedy to meet the needs of each case.").

The Supreme Court reiterated this point last year in *Romag Fasteners, Inc. v. Fossil, Inc.*, when it held that the Lanham Act endorses "a principle long reflected in equity practice where district courts have often considered a defendant's mental state, *among other factors*, when exercising their discretion in choosing a fitting remedy." 140 S. Ct. 1492, 1497 (2020).  While the Court described defendant's mental state as an important consideration when assessing "whether an award of profits is appropriate," it acknowledged that that "is a far cry from insisting on the inflexible precondition to recovery."  *Id.*  As a result, the Court rejected the bright-line rule that profits cannot be awarded *unless* there is a finding of willfulness; in so holding, the Court necessarily rejected the corollary position that profits *must* be awarded upon a finding of willfulness.  Such a conclusion is consistent with "equity's resistance to rigid rules" and the settled principle that "exercise of a court's equity powers ... must be made on a case-by-case basis." *Holland v. Florida*, 560 U.S. 631, 649-51 (2010).

The first factor thus weighs strongly against disgorgement.

### b.   Factor 2: Sales Diversion from Lontex to NIKE

The second consideration is whether "sales of products that carry the words 'Cool

9

Compression' were diverted from Lontex to NIKE."  (9T at 224:25-225:1); *Banjo Buddies*, 399 F.3d at 175.  Lontex ignores this factor entirely.  But there was no evidence that even a single sale was diverted from Lontex to NIKE because of "cool compression."

The undisputed record showed Lontex and NIKE sold products to different consumers through different channels of trade.  Diversion never occurred because there was never an opportunity for diversion.  Despite Mr. Nathan's conclusory testimony on this issue (which the jury necessarily rejected when it awarded no lost profits), the trial record was devoid of any substantial evidence that NIKE diverted sales away from Lontex.  This further indicates that NIKE was not unjustly enriched by use of "cool compression."  *See, e.g.*, *Gucci Am., Inc.*, 354 F.3d at 243 (disgorgement is unwarranted where "the record does not establish that the infringer was enriched because of the owner's mark").  The jury reached the same conclusion when it declined to award "lost profits" damages to Lontex.  This factor weighs strongly against disgorgement.

### c.      Factor 3: Adequacy of Other Remedies

The third *Banjo* factor looks to the adequacy of remedies other than an award of the defendant's profits, "such as compensatory damages."  (9T at 224:25-225:1); *Banjo Buddies*, 399 F.3d at 175.  That equitable consideration is consistent with the Lanham Act, which requires courts to consider whether an award of profits would be "inadequate or excessive."  15 U.S.C. § 1117(a). Lontex does not address this factor or explain how the compensatory award is "inadequate."  Here the jury was told that "compensatory damages" can be an alternative adequate remedy that alleviates the need for disgorgement.  (9T at 222:15–226:19.)  After considering the evidence, the jury awarded Lontex $142,000 as compensatory damages, but not any profits, an award it believed to be adequate.  The monetary relief Lontex received is adequate compensation that defeats a claim for disgorgement.  This is not a case where a plaintiff prevailed on infringement claims and received no compensation.  Rather, the jury decided that $142,000 fairly compensates Lontex.

That result stands in stark contrast to the facts in *Banjo*, where disgorgement was deemed equitable because plaintiff would have been "*wholly uncompensated* for [the defendant's] infringing actions" without profits disgorgement.  399 F.3d at 176 (emphasis added).  No law supports the notion that monetary relief is inadequate simply because it disappoints the plaintiff's hopes for a much larger sum.

### d. Factor 4: Unreasonable Delay

The jury was instructed to consider "any unreasonable delay by Lontex in asserting its trademark rights," since *Banjo* teaches that the longer the delay by plaintiff in filing suit, the less equitable it would be to award profits.  (9T at 224:25-225:1); *Banjo Buddies*, 399 F.3d at 175.  This is applicable here, where Lontex waited three years to file suit.  Lontex learned about NIKE's challenged use in December 2015 but did not file suit until December 2018.  (2T at 88:17–20; 169:14-170:17).  Trademark owners seek redress in federal litigation for one key reason: to swiftly quell the sale of a product or service that has caused or is likely to cause confusion with its own valuable brand. *See* 1 McCarthy on Trademarks and Unfair Competition § 2:22 (5th ed. 2021).  But consumer confusion was not Lontex's concern here; indeed, there was no actual consumer confusion in 2015, nor at any other time.  This case is and always has been about Lontex's efforts to monetize its trademark registrations.  If Lontex had truly believed its business was suffering as a result of NIKE's conduct, it could have acted much more promptly.  This dilatory conduct should not be rewarded with a share of NIKE's profits.

Lontex ignores this factor and its testimony that it had a team of lawyers and support staff working to build evidence for this case as early as 2016.  (4T at 66:10-17.)  Lontex's delay is not reasonable behavior for a rights holder who was legitimately concerned that consumers would confuse its COOL COMPRESSION brand with another company.  Lontex could have filed suit in 2016 and sought a preliminary injunction.  Lontex did neither.  It was instead content to sit by as

11

NIKE's profits grew from its sales of NIKE Pro products.  Lontex's unreasonable delay tilts this factor strongly against disgorgement.

### e.      Factor 5: Public Interest

The jury also was instructed to consider the "public interest in making NIKE's infringement of the Cool Compression trademark unprofitable."  (9T at 224:25-225:1); *Banjo Buddies*, 399 F.3d at 175.  Lontex focuses heavily on deterrence, but neglects to mention it made those exact same pleas to the jury, which soundly rejected them.  "Deterrence" and "punishment" were the central themes of Lontex's closing.  (*See, e.g.*, 9T at 202:14-15, 206:4-5, 207:21-23.)  Yet the jury declined to award profits.  That conclusion, reached by 10 members of the public, best reflects the public interest.  In any event, there is *no* evidence in the record that NIKE profited from its use of the phrase "cool compression" or that even a single sale was made *because* of the use of those words.  The jury's verdict reflects that view as well.  This factor weighs against disgorgement.

### f.      Factor 6: Palming Off

The final consideration is "whether this is a case of palming off."  (9T at 225:10-13.)  As this Court instructed the jury (without objection), "no evidence has been presented to suggest that NIKE was palming off."  (*Id.*)  This factor strongly favors NIKE.  *See CPC Props.*, 2013 WL 5567584, at *4 (profits declined where evidence of palming off "relatively thin" and defendant had not "meticulously crafted" its product and ads "to be identical to a trademarked product").

*      *      *      *      *

In sum, each *Banjo* factor weighs against disgorgement, as the jury reasonably concluded. That conclusion is "rooted in a recognition that an award of profits under the Lanham Act is truly an extraordinary remedy and should be tightly cabined by principles of equity."  *W. Diversified Servs., Inc.*, 427 F.3d at 1274.  This Court should not disturb the jury's profits verdict—whether advisory or not—by taking the "extraordinary" step to award Lontex any of NIKE's profits.

### C.      Lontex's Contrary Arguments Distort the Law and the Facts

Lontex cites *Banjo* but relies entirely on three inapposite cases, which do not provide any justification to disturb the jury's verdict of no disgorgement.  (Lontex Br. at 2-4 (citing *Marshak v. Treadwell*, 595 F.3d 478 (3d Cir. 2009); *W.E. Bassett Co. v. Revlon Inc.*, 435 F.2d 656 (2d Cir. 1970); *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202 (2d Cir. 2018).)  None of these cases applied the *Banjo* factors, and only one of them is from the Third Circuit (*Marshak*).

In *Marshak*, the question before the court was whether disgorgement was an appropriate remedy for the willful violation of an injunction.  595 F.3d at 485-89, 494-96.  And the facts were egregious—nothing like the evidence presented at trial here.  The defendants in *Marshak* were found liable for trademark infringement *a decade earlier* and the district court initially held that the "infringement warranted a comprehensive injunction, a full accounting of profits, and reasonable attorneys' fees."  *Id.*  The Third Circuit affirmed.  Yet, in the decade that followed entry of the injunction, the defendants "engag[ed] in an elaborate shell game through their creation of various business identities in an attempt to deceive [plaintiff] and the Court," and were all "aware of the injunction" when doing so," and "all of them benefitted financially from their violation of the injunction."  *Id.* at 494-95.  When plaintiff sought to enforce the injunction, the district court held defendants in contempt, but awarded attorneys' fees only, with no profits or actual damages—i.e., "remedies far less severe than those issued" by the originally presiding judge.  *Id.* at 495.

On appeal, the Third Circuit was tasked with deciding whether it was an error to permit the contemnors "to keep whatever profits they gained *as a result of their disregard for [the Court's] injunction*."  *Id.* at 496 (emphasis added).  The Circuit's rationale for reversing was tied directly to the unusual procedural posture of the case—namely, that limiting plaintiff's "remedies to mere attorneys' fees would result in the perversity of imposing less demanding remedies on Appellants after the finding of contempt than were imposed before the finding of contempt."  *Id.* at 495.  None

of these concerns are present here.  *Marshak* is procedurally, factually, and substantively inapposite.  For that reason, courts have cabined *Marshak*'s holding on the ground that it "concerns the 'breadth of [an] injunction and efficacy of the remedies' years after a trademark holder established he was harmed by the opposing party's trademark infringement."  *MB Imports, Inc. v. T&M Imports, LLC*, 2016 WL 8674609, at *8 (D.N.J. Dec. 23, 2016).

The Second Circuit's decision in *W.E. Bassett* is also inapposite.  Like *Marshak*, it also involved a defendant who engaged in willful infringement and willful violations of an injunction.  *Id.* at 664-65.  An accounting was ordered based on a finding of deliberate and fraudulent infringement and "callous disregard for the rights of a competitor and for the mandates of the federal courts" over a period of years."  *Id.*  Again, nothing like that was presented at trial in this case.  In any event, insofar as *W.E. Bassett* can be stretched to support Lontex's argument that willful infringement mandates disgorgement, it is inconsistent with Third Circuit law and subsequent case law clarifying that a totality of the circumstances approach must be employed— not a "willfulness equals disgorgement" approach.  It is also inconsistent with the rule that any disgorged profits must be attributable to the defendant's infringement, as the court upheld the disgorgement of certain profits that "were not attributable to the infringement."  *Id.* at 664-65.

Lastly, Lontex relies on *4 Pillar Dynasty LLC*, another out-of-circuit decision that did not apply the *Banjo* factors.  933 F.3d at 214 (2d Cir. 2019).  But Lontex ignores *4 Pillar*'s fundamental premise that the Lanham Act requires any disgorgement award to be fashioned so that it does not "giv[e] plaintiffs a lottery-level windfall."  *Id.* at 214.  Here, the jury found that Lontex did not lose *any* sales because of NIKE's infringement and awarded $142,000 in compensatory damages.  A request for even a million dollars of NIKE's profits—much less the $95 million sought by

Lontex—would be precisely the type of "lottery-level windfall" against which *4 Pillar* cautioned.[11]

In any event, the issue in *4 Pillar* was whether evidence of actual confusion was a prerequisite to awarding profits, which is not an issue here.  *Id.* at 211-14.  After answering that question in the negative, the court did not discuss or address the equitable considerations underlying the profits determination.  *Id.* at 214-15.  *4 Pillar* does not suggest that the jury's profits verdict here was inequitable or that this Court should disrupt it.  To the contrary, *4 Pillar*'s admonition against awarding "lottery-level windfalls" weighs against disgorgement here.

Finally, Lontex contends that disgorgement is warranted considering NIKE's litigation conduct but cites no support for that position.  NIKE's conduct—which was reasonable anyway— is not considered under the Third Circuit's framework for disgorging profits.

### D.    Lontex's Proposed Profits Award Is Inequitable and Inconsistent with the Evidence.

If this Court nonetheless disregards the jury's profits verdict and finds that disgorgement is appropriate (it should not), it then must calculate NIKE's profits from the infringement.  Any award must be anchored to the value of COOL COMPRESSION, which the evidence showed was in the six-figure range—magnitudes less than the excessive figures proposed by Lontex.  Indeed, as Mr. Meyer (NIKE's damages expert) persuasively explained at trial, the *maximum* amount of profits disgorgement supported by the evidence would be an award of $800,000.  (9T at 121:8-9.)

The fact that "cool compression" indisputably does not appear on *any* NIKE products is crucial to the issue of disgorgement because only sales that are *attributable* to NIKE's use of "cool compression" may be disgorged; Lontex may not disgorge any profits for sales NIKE made without "cool compression."  *Lindy Pen Co.*, 982 F.2d at 1408.

---

[11] With respect to the second step of calculating profits, the *4 Pillars* court explained ruled that "an award of an infringer's profits under the Lanham Act can be expected to refer to *net* profits"—not gross profits— as Lontex contends is the appropriate method.  *Id.* at 214 n.11; Lontex Br. at 9.

Because "cool compression" did not appear *on* any NIKE product, Lontex's claims were based on NIKE's use of the words "cool" and "compression" next to each other in certain, limited written materials—*i.e.*, NIKE wholesale catalogs, webpages on nike.com, and internal "Tech Sheets" used to educate sales associates about product features.  Lontex did not present evidence that NIKE used "cool compression" in connection with all sales for each accused style numbers from 2015 to 2018.  Instead, it urged the jury to "infer" such usage occurred in connection with *every* sale of *every* accused style number based solely on the misleading "summaries" of such usage in isolated contexts, which Lontex's counsel had prepared in advance of trial.[12]  (4T at 54-103; *see* PX30A, PX30B, PX31, PX]32, PX33.)  But at trial, NIKE presented evidence that raised substantial doubts about Lontex's sweeping (and overreaching) assumptions about NIKE's sales.  (*See, e.g.*, 4T at 54-103; 9T at 31-34, 194:4-9; DX1223, DX1224, DX1225, DX1226.)  Lontex thus failed to meet its burden on this issue, and cannot try again now.

Lontex's failure of proof undermines its claim that this Court should award between $7.1 and $95.6 million in profits.  Five legal principles severely limit any disgorgement here.  *First*, disgorgement cannot result in a windfall to plaintiff.  *Stone Creek*, 808 F. App'x at 460-61 ("The Lanham Act does not entitle plaintiffs to windfalls.").  *Second*, disgorgement cannot be used to penalize a defendant.  *Safeway Transit*, 954 F.3d at 1177 ("the Lanham Act does not permit the award of monetary relief as a penalty.").  *Third*, disgorgement "is intended to award profits only on sales that are attributable to the infringing conduct."  *Lindy Pen Co.,* 982 F.2d at 1408.  *Fourth*, disgorgement is "inconsistent with a claim of reverse confusion." *Koninkijke*, 2016 WL 3545529, at *26.  *And fifth*, "where a district court endeavors to calculate damages under the Lanham Act

---

[12] This Court subsequently instructed the jury that, unlike Lontex's expert, they "may not assume that all sales of NIKE products that used a Cool Compression product number resulted from NIKE's use of the Cool Compression trademark."  (9T at 193:20-22.)

on the basis of the defendant's actual profits, rather than awarding statutory damages, it must ground its estimate in the record . . . in order to pass muster as a reasonable estimate and an appropriate exercise of discretion." *Covertech*, 855 F.3d at 176.  "Where the court lacks a sound basis for extrapolating actual profits, it abuses its discretion by resorting to guesswork."  *Id.*

Lontex's requested disgorgement range violates each principle.  (Lontex Br. at 9.)  Such an award would be a tremendous windfall to Lontex, which never claimed more than $165,000 in annual sales and could not even sell COOL COMPRESSION for $150,000 when it tried.  Such an award would go well beyond "compensation" and amount to an impermissible penalty or punishment of NIKE.  Such an award would also destroy the principle of attribution—*i.e.*, the causal nexus requirement—and the mandate that disgorgement awards be grounded in evidence, not guesswork.  Lontex's expert David Drews admitted that he never analyzed what NIKE sales were attributable to the infringing use of "cool compression" because "that was not [his] task." (9T at 28:5-16; 38:15-21.)  Instead, he improperly assumed that "cool compression" was present at the point of sale for every sale.  (*Id.* at 23:16-18; 29:2-6; 36:7-12.)  He further assumed that each sale was attributable to use of "cool compression," versus myriad other factors and NIKE's own contributions that drove sales of the popular NIKE Pro products.  The Court recognized these problems and expressed "grave doubts about the propriety of [Lontex's] expert using all of these product numbers that say Cool Compression as assuming the basis for sales, and this goes to the disgorgement of profits."  (*Id.* at 194:4-9.)  To adopt Lontex's profits calculations would violate the Third Circuit's holding that any such calculation must be grounded "in the record . . . in order to pass muster as a reasonable estimate and an appropriate exercise of discretion." *Covertech*, 855 F.3d at 176.

Moreover, NIKE showed at trial that Mr. Drew's damages opinions—which the jury

necessarily rejected by virtue of its damages award—were unreliable and inconsistent with the law. Thus, even if this Court were to disgorge anything, Mr. Meyer's is the only reliable evidence-based expert opinion on which such an award could be premised. Mr. Meyer identified and isolated the specific sales where there was actual evidence of NIKE's use of "cool compression" in connection with the sale. (9T at 115-140.) Then, he took the gross sales for those products and, unlike Mr. Drews, calculated NIKE's net profits from those sales before apportionment, resulting in potential profits ranging from $2.8 million to 7.1 million. (*Id.* at 121:4-9); *see also 4 Pillar,* 933 F.3d at 214 (explaining that the general rule is that "an award of an infringer's profits under the Lanham Act can be expected to refer to *net* profits"—not gross profits, as Lontex contends). Finally, Mr. Meyer apportioned NIKE's profits to use of "cool compression" and NIKE's non-infringing contributions to each sale, and opined that NIKE's total profits after apportionment were between $0 and $800,000—the maximum being the value for which Lontex was contractually bound to sell COOL COMPRESSION. (9T at 150:16-156:11; DX1229-DX1234.) While the Court should not award Lontex any of NIKE's profits, if it does award any profits, the award should be within that range. Anything more would be an impermissible penalty.

## III.    DAMAGES SHOULD NOT BE TREBLED, AND ANY PROFITS SHOULD NOT BE ENHANCED

Lontex's request to treble damages and enhance any disgorgement award also lacks merit. (Lontex Br. at 13.) First, there should be no award of profits for this Court to enhance because, as the jury properly found, disgorgement is unwarranted. *See Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 273 (3d Cir. 1975) (declining to enhance or treble an award of zero actual damages because "[t]hree times zero is zero"). Lontex provides no basis for the Court to award Lontex any profits in the first place, *see supra*, much less to enhance such an award.

Lontex's request for trebling of actual damages fares no better. The Lanham Act expressly

states that a treble damages award must be imposed as "compensation," not as a "penalty" on the infringer.  15 U.S.C. 1117(a); *see Safeway Transit LLC.*, 954 F.3d at 1177 ("the Lanham Act does not permit the award of monetary relief as a penalty").  But there is nothing compensatory about the request for three times the amount already awarded in actual damages.  A penalty on NIKE is precisely what Lontex is proposing, just by a different name.

In *Kars 4 Kids*, the Third Circuit affirmed the district court's decision to "decline[] to award enhanced compensation."  8 F.4th 209, 224–26.  It did so because, as here, the plaintiff "offer[ed] no non-punitive rationale for enhancing the award." *Id.*  Lontex similarly fails to explain why "an enhanced awarded, let alone an award equal to three times" the actual harm it suffered, "is needed to fully compensate it or that such an award more accurately reflects" the actual harm it suffered. *Id.*  Because the Lanham Act prohibits "punitive enhancements," trebling of actual damages here is impermissible as a matter of law.

The jury already determined how much in actual damages Lontex should receive: a reasonable royalty award of $142,000.  Lontex contends, without support, that trebling is warranted because the awarded royalty was for "only a small percentage of infringing sales." (Br. at 12.)  It was up to the jury, not Lontex, to determine what sales were "infringing sales" made using "cool compression."  The jury was instructed on what a royalty award is and how to calculate one and is presumed to have followed those instructions.  (9T at 223:23-224:2.)  Hence, when performing those calculations, the jury necessarily rejected Lontex's demonstrably inflated estimation of "infringing sales" on which a royalty should be awarded.  There is no basis for concluding that the royalty award was designed to compensate for just a small percentage of these "infringing sales."  Awarding any amount beyond the $142,000 award would not be compensation—it would be a prohibited penalty. *See, e.g.*, *Kars 4 Kids*, 8 F.4th at 224-26; *Skydive*

*Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1115 (9th Cir. 2012) ("Because the district court's decision to enhance the damages award hinged upon punishing the willful conduct of [defendant], we reverse the district court's actual damages enhancement."). Lontex's request should be denied.

## IV. LONTEX HAS NOT MET ITS BURDEN OF PROVING IT IS ENTITLED TO A PERMANENT INJUNCTION

Lontex has not met its burden of showing *any* injunction should issue—much less the vastly overbroad one it seeks. Lontex's request for a permanent injunction thus should be denied entirely. If the Court nonetheless determines that some injunction should be entered, the law requires far more careful tailoring than Lontex's proposal.

### A. Lontex Has Not Shown It Is Entitled to *Any* Injunction.

Lontex's conclusory, two-paragraph assertion that an injunction is needed falls way short of its evidentiary burden under Supreme Court and Third Circuit precedent. (Lontex Br. at 13-14; third paragraph merely outlines the proposed injunction.) "[I]njunctive relief is as 'extraordinary remedy that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 213 (3d Cir. 2015) (quoting *Winter v. Nat'l Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008)) (emphasis added by Third Circuit). Lontex has failed to make the required "clear showing" in at least three ways.

*First*, Lontex has not met the Supreme Court's requirement to "prove a likelihood of future injury" before it can get an injunction in a Lanham Act case. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 135 (2014). Without any record citations, Lontex asserts there is "ongoing marketplace use" and "a reasonable probability" of future infringement. This conclusory speculation does not constitute evidence that future infringement is likely, much less the required showing of likely future *injury* to Lontex's business. Moreover, the record is replete with evidence that NIKE ceased using the phrase "cool compression" several years ago and has

no plans to resume any such use.  (*See e.g.*, 5T at 67:17-20; 140:12-141:10.)  Lontex's requested injunction should be denied for this threshold failure alone.  *See Gucci Am.*, 354 F.3d at 238 (denial of permanent injunction affirmed because defendant voluntarily ceased infringing conduct).

 *Second*, Lontex failed to meet its burden of showing entitlement to injunctive relief under the four-factor test of *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  The Third Circuit has held that *eBay* applies to requests for injunctions in trademark cases.  *Ferring*, 765 F.3d at 216-17.  Yet Lontex does not even address these factors in its motion (and of course is not permitted to sandbag NIKE by addressing them in its reply).  This is yet another reason why Lontex's injunction request should be denied.[13]

 *Third*, the jury verdict and trial record confirm that no injunction is warranted here.  There was no substantial evidence that NIKE's conduct had caused Lontex to lose any sales or goodwill, despite multiple years of coexistence.  Indeed, the jury awarded no lost profits.  Nor did the jury award any money for corrective advertising, further confirming the absence of any ongoing injury to be redressed.  The jury's award of reasonable royalty damages was instead adequate to compensate Lontex for the use of its trademark that the jury had found in the liability phase.

### B. If an Injunction Nonetheless Is Entered, Lontex's Overbroad Proposal Should Be Scaled Back to Comply with the Law.

 Lontex should not get any injunction at all, but if it does, its overreaching proposal should be pared back in several important respects.

 *First*, Lontex's reference to "indirect" use in commerce of "cool compression" should be

---

[13] Although *Ferring* also held there is no presumption of irreparable harm when applying *eBay* to trademark cases, the Trademark Modernization Act of 2020 now provides for a rebuttable presumption of irreparable harm when an injunction is sought.  15 U.S.C. § 1116(a).  Lontex does not rely on that presumption (nor even mention it), and thus has waived any such argument.  And in any event, the rebuttable presumption is only one aspect of one factor of the four-factor *eBay* test.  Lontex has not even tried to apply *eBay* here—much less come to grips with the evidentiary record that shows no past or likely future harm to its business.

stricken as impermissibly vague under Federal Rule of Civil Procedure 65(d). One cannot reasonably ascertain what conduct would be considered an "indirect" use.

*Second*, Lontex's proposed injunction prohibits *all* use of the phrase "cool compression" in commerce without *any* limitation to use that is likely to cause confusion and is not a fair use. This proposal is overbroad because it is insufficiently tethered to the jury's infringement finding and ensnares far too much lawful speech to pass muster. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 598 (3d Cir. 2002) ("[B]ecause commercial speech is entitled to appropriate protection under the First Amendment, an injunction restraining allegedly false or misleading speech must be narrowly tailored to 'cover only the speech most likely to deceive consumers and harm [the plaintiff].'") (citation and internal quotations omitted). In fact, the clause "whether as a product or style name, *description, or otherwise*" in Lontex's proposed injunction improperly targets descriptive and other non-infringing uses. ECF 384-14 (emphasis added). Also, the term "or otherwise" is impermissibly vague. The proposed required notice to retailers suffers from the same defects. *See* ECF 384-14.

*Third*, Lontex's inclusion of "verbal" (*i.e.*, non-written) uses of "cool compression" in both prongs of the proposed injunction is improper. As explained in NIKE's prior briefing on the subject, the oral use of a term cannot be a trademark use in commerce. ECF 329 at 5.

## V.    LONTEX IS NOT ENTITLED TO A NEW TRIAL ON DAMAGES

This Court also should deny Lontex's alternative request for a new damages trial. The two evidentiary rulings about which Lontex complains (Lontex Br. at 14-16) were not erroneous. In addition, any alleged error was harmless anyway and insufficient to warrant a new trial.

**PX19.**    Lontex's expert's flawed analysis of "NFL Team Overlap" (trial exhibit PX19; Lontex Br. at 15) was properly excluded. There is also no reason to think it would have made a difference, even if it had been admitted. Further, as a threshold matter, Lontex cannot complain

that the Court erred by excluding an exhibit that Lontex itself admittedly *forgot to move into evidence during its affirmative damages case.*  (9T at 3:11-18 (objecting to recalling the witness to introduce PX19 because, among other reasons, he had already "stepped down from the stand").)

The exhibit was properly excluded on the merits in any event.  According to Lontex, the exhibit purported to show that Lontex's sales to NFL teams *decreased* between 2016 and 2019 for five NFL Teams with "overlapping" sales with NIKE, but *increased* to four other NFL teams with no NIKE overlap.  But the exhibit showed no such thing; it was instead unreliable and misleading.

First, the exhibit created the false and misleading impression that NIKE and Lontex had *sold* the units of product listed to each of the five teams with purported.  To the contrary, several of the NFL teams listed in the exhibit as having overlapping sales from NIKE were actually "based on units that NIKE purportedly comped to teams, not even sold to teams," *i.e.*, products that NIKE provided free of charge.  (*Id.* at 3:23-4:5.)  And the same was true as to the purportedly NFL-team "sales" by Lontex—the data showed that many of them were free comps provided by Lontex, not actual sales.  (*Id.* at 6:15-17.)  Moreover, the testimony reflected that NIKE has exclusive agreements with the leagues, under which each team received NIKE product.  (*See e.g.,* 6T at 158:19-24.)  As a result, the very premise that there was no overlap on one set of teams and there was overlap on the others is false and contradicted by the evidence.  The exhibit was properly excluded for the additional reason that the data reflected in the spreadsheet was *de minimis*.  (9T at 9:1-15.)  The NFL teams exhibit showed that from 2011 to 2015 Lontex only gave one of the nine teams listed more than fifty total units per year (fewer than five units per month).

PX19 was thus unreliable, misleading, and inadmissible under Rule 403, as this Court correctly concluded.  As the Court explained, Mr. Drews's testimony had "been about lost sales and sales revenue," but by "introducing the concept of comped materials . . . , that is clothing that

is given to the professional teams without charge, it enters a topic of confusion, and a lot of issues could be the reason for that other than NIKE's infringement of the Lontex Cool Compression trademark." (*Id.* at 7:6-16.)  It did not "lead to any . . . support for the plaintiff's damages theory" and "enters a topic of confusion because of the fact that those are not lost sales," but rather "are comps and they could relate to a lot of different motivation." (*Id.*)

Regardless, PX19 could not have made a difference to the damages award because the jury heard Mr. Nathan's testimony about claimed lost team sales and necessarily rejected this theory when it awarded no lost profits.  Even if it were probative, and it is not, nothing in PX19 provides an evidentiary basis from which the jury could reasonably calculate lost sales by Lontex.  PX19 only lists a percentage increase or decrease in total units—most of which were comped by Lontex and NIKE.  There is no reliable way for the jury to have used this exhibit to quantify actual damages to Lontex.  Lontex's contrary argument is based on the mere speculation that the "jury could not identify an amount of actual damages to award." (*Id.*)  There is no basis for that assertion. The jury awarded $142,000 in actual damages and decided that Lontex failed to prove the rest of its actual damages claims.[14]

**Purported Threats to Efraim Nathan**.  The Court correctly excluded the prejudicial and inflammatory testimony Lontex intended to present through Mr. Nathan from discussions of a potential settlement with NIKE's then–outside counsel.  (Lontex Br. at 15.)  After having Mr. Nathan testify about the conversation outside of the jury's presence (8T at 93:8-100:19), the Court

---

[14] As one example, Mr. Nathan admitted that Lontex's money spent on advertising and attending trade shows decreased every year from 2016 to 2018 (8T at 76:17-78:23), which could have led the jury to conclude that a decline in sales (if any) was attributable to Lontex itself, not to NIKE's use of "cool compression."  In fact, Lontex's tax returns showed no expenses for trade shows in 2015 to 2017, even though that was its primary means of promoting products to pro teams.  (*Id.*)  Mr. Nathan further admitted, and Lontex tax returns reflected, that the sales for the entire business had been declining consistently every year since 2007 (*id.* at 79:7-15), which further supports the jury's finding that Lontex had no lost profits.

properly excluded the "very inflammatory" testimony as a protected settlement communication under Rule 408 and as far more unfairly prejudicial than probative under Rule 403. (*Id.* at 82:1, 184:10-185:7.) Lontex does not explain anywhere in its brief what was incorrect about that ruling.

The ruling was correct, as explained in NIKE's pretrial motion *in limine* on the issue. (Mot. in Limine #5 at 10-11, ECF No. 274.) As to Rule 408, Lontex's counsel stipulated on the record that the conversation occurred "in the context of settlements." (*Id.* at 88:21-89:6.) As related by Mr. Nathan, the purported conversation was a compromise negotiation relating to a "disputed claim" and thus any statements made by either party were inadmissible at trial. Moreover, "when the applicability of FRE 408 is a close call, courts have held that exclusion is preferred." *Ciolli v. Iravani,* 625 F. Supp. 2d 276, 288 (E.D. Pa. 2009) (citing cases).

Rule 403 provides an additional basis for exclusion of this evidence. Mr. Nathan's one-sided account of a telephone conversation that purportedly took place with NIKE's then-outside counsel has no probative value—especially not to the core issues of consumer confusion and fair use—and is inflammatory and highly prejudicial. Because any probative value of this purported conversation was outweighed by the danger of unfair prejudice and confusion of the issues, the Court properly excluded it under FRE 403.

Finally, contrary to Lontex's speculative assertions of prejudice, there is no reason to think the jury would have even credited Mr. Nathan's one-sided testimony about his call from years earlier, much less that it would have increased the amount of punitive damages it awarded.

## VI.   LONTEX IS NOT ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS BECAUSE THIS CASE IS NOT EXCEPTIONAL.

The Lanham Act provides that the Court may award reasonable attorneys' fees only in "exceptional" cases. 15 U.S.C. § 1117(a). Applying the Supreme Court's *Octane Fitness* decision, the Third Circuit has held that courts may find a case "exceptional" *only* when: "(a) there is an

unusual discrepancy in the merits of the positions taken by the parties, or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). The Court must analyze the "totality of the circumstances" of each case. *Id.* Factors informing this analysis include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Decus, Inc. v. Heenan*, 2018 WL 1082842, at *2 (E.D. Pa. Feb. 27, 2018). A willfulness finding does not make a case exceptional, nor is willfulness an element of either *Fair Wind* factor.

Lontex cites *Urban Outfitters* and other cases from *before* 2014 to draw attention to the jury's willfulness finding. (*See, e.g.*, Lontex Br. at 18.) But *Octane Fitness* and *Fair Wind* were decided in 2014, so these earlier cases do not control. In particular, the Third Circuit's non-precedential decision in *Urban Outfitters* does not apply here for two reasons. *Urban Outfitters, Inc. v. BCBG Max Azria Group, Inc.*, 430 F. App'x 131 (2011) (affirming award of 50% of plaintiff's attorneys' fees). First, *Urban Outfitters* predates *Octane Fitness* and *Fair Wind*, so its emphasis on willfulness in the exceptional case analysis has been displaced by later binding precedent. *Compare Fair Wind*, 764 F.3d at 314-15, *with Urban Outfitters*, 430 F. App'x at 133. Second, the facts of *Urban Outfitters*, where the defendant was found to have engaged in repeated litigation misconduct and other unreasonable behavior, have no analogy to this case. 430 F. App'x at 133. Lontex's cases are inapplicable for other reasons too. *See, e.g.*, *Int'l Star Class Yacht Racing Ass'n v. Hilfiger,* 80 F.3d 749, 754–55 (2d Cir. 1996) (court remanded but did not award attorneys' fees); *Discovery Commc'ns, Inc. v. Animal Planet, Inc.,* 172 F. Supp. 2d 1282, 1291–92 (C.D. Cal. 2001) (defendant failed to appear and respond to complaint).

### A.     The Jury's Willfulness Verdict Does Not Make This Case "Exceptional."

Lontex is wrong to suggest that the jury's willfulness finding is a sufficient basis to award fees.  *See Fair Wind*, 764 F.3d at 314-15 (defining "exceptional case" without any reference to willfulness).  Contrary to Lontex's view, "an exceptional case finding does not follow inexorably from a willfulness finding."  *Dyson, Inc. v. SharkNinja Operating LLC*, 2019 WL 1454509, at *15 (N.D. Ill. Mar. 31, 2019) (citing *Octane Fitness*, 572 U.S. at 554 ("[T]here is no precise rule or formula for making these determinations . . . ."); *see also Stryker Corp. v. Zimmer, Inc.,* 837 F.3d 1268, 1279 (Fed. Cir. 2016) (holding that under *Octane Fitness's* totality of the circumstances test, "it does not necessarily follow" from a willfulness determination "that the case is exceptional"); *Kolcraft Enterprises, Inc. v. Chicco USA, Inc.*, 2019 WL 4242482, at *21 (N.D. Ill. Sept. 6, 2019) ("It is not enough to simply point to the verdict on willfulness and demand attorneys' fees; there must be additional evidence that the case is unusual.").  In fact, "courts routinely decline to award attorneys' fees in cases involving willful infringement."  *Coty Inc. v. Excell Brands*, LLC, 277 F. Supp. 3d 425, 469 (S.D.N.Y. 2017).

### B.     There Was No Unusual Discrepancy in the Merits of the Parties' Positions.

NIKE's defenses and counterclaims were well grounded in fact and the law, even if this Court allows the jury's liability verdict to stand.  ECF No. 234 at 23 (Court acknowledged that "Nike presents strong legal arguments regarding Lontex's claim of trademark infringement").   As shown throughout trial and in NIKE's post-trial motion, there was ample evidence supporting NIKE's positions that, among other things, there was no likelihood of confusion, and its use of "cool compression" was fair.  Moreover, NIKE successfully defended itself against Lontex's excessive and unreasonable damages claims.  The jury awarded less than one percent of the damages sought, further showing no unusual discrepancy in the merits of the parties' positions.  Other factors that courts in this Circuit have considered confirm the lack of exceptionality.

27

In *Decus*, the jury found for plaintiff on six claims, including a Lanham Act violation, and awarded damages on all claims sought except one.  2018 WL 1082842, at *3.  Despite this ultimate result, the court found that there was no unusual discrepancy in the merits of the parties' positions. *Id.*  The jury in that case heard evidence of competing views of a fact dispute, "exactly the grounds for a jury trial."  *Id.*  Similarly, here, this Court identified "several material question[s] of fact with respect to the *Lapp* factors," which required consideration by the factfinder.  ECF No. 234 at 23.

Courts in this Circuit have routinely found there was no unusual discrepancy in the merits of the parties' positions even when a party presented weaker arguments than NIKE advanced here. *See, e.g.*, *Innovative Metal Craft, LLC v. Whaley*, 2020 WL 7769828, at *2 (W.D. Pa. Dec. 30, 2020) (no unusual discrepancy even where party advanced theory that was "untenable as a matter of law" and "many of the items that formed the basis of IMC's claim . . .  were not items that constituted protectable 'trade dress.'"); *United States Soo Bahk Do Moo Duk Kwan Fed'n, Inc. v. Tang Soo Karate Sch., Inc.*, 2015 WL 4920306, at *38 (M.D. Pa. Aug. 17, 2015) (no unusual discrepancy even where court in bench trial "ultimately concluded that Plaintiff's positions were entirely sound and Defendants' positions were entirely unsound").  By contrast, cases finding an unusual discrepancy involved positions at odds with controlling precedent or "woefully" short on factual support.  *See, e.g.*, *Renna v. County of Union, N.J.*, 2015 WL 1815498 (D.N.J. Apr. 21, 2015) (finding unusual discrepancy where defendant asserted trademark rights that did not exist in light of controlling precedent excluding such marks from trademark protection) (cited in *Decus*, 2018 WL 1082842, at *2 ); *Maduka v. Tropical Naturals., Ltd.*, 409 F. Supp. 3d 337, 366 (E.D. Pa. 2019) (finding unusual discrepancy where plaintiff asserted trademark infringement but then "presented woefully inadequate evidence of his use of the disputed marks in United States commerce, demonstrating the weakness of his litigation position").

This analysis, moreover, is not confined to the claims that survived to trial; rather, the proper analysis "considers the totality of circumstances in the litigation, not just whether the losing party acted culpably." *Decus, Inc.*, 2018 WL 1082842, at *1. A party's mixed results over the course of a litigation weigh against a determination that a case "stands out from others with respect to the substantive strength of a party's litigating position." *Octane Fitness*, 572 U.S. at 554; *see also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 912 F.3d 445, 454 (8th Cir. 2018) (holding case was not exceptional where it had "arguable merit on both sides," as "evidenced by the fact that both parties . . . prevailed at various times throughout its 12-year history").

Here, Lontex withdrew or had substantial portions of its case dismissed *with prejudice*, including Lontex's meritless counterfeiting claim and claim that NIKE infringed its design mark. ECF Nos. 37 at 21; 38; 109-1 at 1. Lontex criticizes NIKE for raising defenses that were dropped for strategic reasons or that did not prevail at trial, ECF No. 384-1 at 18, but this does not mean that NIKE's defenses were unusually weak. Rather, parties are encouraged to vigorously defend their positions and assert each reasonable defense available, as NIKE did here. *See Decus*, 2018 WL 1082842, at *3. This Court recognized the strength of NIKE's defenses at summary judgment:

> [T]he likelihood of confusion analysis in a trademark case is a fact-intensive inquiry, and cannot typically be decided at the summary judgment stage. While Nike presents strong legal arguments regarding Lontex's claim of trademark infringement, there are several material question of fact with respect to the *Lapp* factors which prevent the Court from granting summary judgment.

ECF No. 234 at 23. This case was not exceptional because there was no unusual discrepancy in the merits of the parties' positions.

### C.    NIKE's Defense Was Reasonable and Expected in a Contested Case.

NIKE's litigation efforts reflect an appropriate defense against a plaintiff and its counsel driven by excessive monetary recovery goals and fueled by clandestine third-party litigation funding. (8T at 206:17–207:2; ECF 86 at 3-4; ECF 117-1 at 25–27.) Fees may be warranted only

if there is "more than lawyers moving for relief and protecting their client's interests in motions filed in good faith." *Decus*, 2018 WL 1082842, at *3. Instead, courts focus on dilatory tactics as the primary type of unreasonable litigation conduct. *See Parks, LLC v. Tyson Foods, Inc.*, 2017 WL 3534993, at *1 (E.D. Pa. Aug. 17, 2017) ("wasteful procedural maneuvers" or "dilatory tactics" are the hallmark of a case that has been litigated in an unreasonable manner). NIKE did not delay progress of trial and, in fact, this Court *commended* its conduct, including the parties' efforts to meet the Court's deadlines and schedule:

> I want to congratulate counsel and thank you very much, thank you all for cooperating with the deadlines and the schedule. You served your clients very, very well.

(10T at 9:9-16.)

In *Decus*, the court analyzed both parties' conduct and concluded that "[b]oth sides represented their client with vigor, as we expect." *Decus*, 2018 WL 1082842, at *3. There the parties' litigation methods were found to be reasonable, even where they moved to extend briefing and the trial date, the court had to address deposition objections during a deposition, and the losing party arrived hours late for a settlement conference and requested a continuance on the morning of trial. *Id.*; *see also Innovative Metal Craft, LLC v. Whaley*, 2020 WL 7769828, at *3 (W.D. Pa. Dec. 30, 2020) (no unreasonable tactics even where party "arguably attempted to amend its pleading through assertions made in its summary judgment brief"). *Parks* also provides a helpful analogy, as no unreasonable tactics were found even where the "Court had issued no fewer than fifteen discovery-related opinions and orders that together spanned approximately 100 pages." 2017 WL 3534993 at, *1. Rather, "[b]oth sides seemed to believe earnestly in the correctness of their positions, but their respective understandings of what each discovery request sought and what each side needed to do to discharge its obligations were poles apart." *Id.*

30

By contrast, cases finding unreasonable litigation tactics include extreme efforts to delay the case with facially unreasonable positions. *See, e.g.*, *BP Am. Inc. v. Diwan Petrol Inc.*, 2021 WL 5163206, at *2 (E.D. Pa. Nov. 5, 2021) (defendant outwardly associated its business with plaintiff's after being made aware of claim and then failed to enter an appearance or answer the complaint); *Maduka*, 409 F. Supp. 3d at 366 (plaintiff failed to pay his attorney's fees causing substantial delay when counsel withdrew, among other dilatory tactics); *SRI Int'l, Inc. v. Cisco Sys.,* 14 F.4th 1323, 1332 (Fed. Cir. 2021) (unreasonable litigation tactics "includ[ed] maintaining nineteen invalidity theories until the eve of trial but ultimately presenting only two at trial, presenting weak non-infringement theories that were contrary to the district court's claim construction ruling and Cisco's own internal documents, exhaustive summary judgment and sanction efforts, over-designation of deposition testimony for trial, and asserting 'every line of defense post-trial'").  NIKE did not engage in any conduct that is even remotely similar.

Further, where a party succeeds on some pretrial disputes, fails on others, and is also the cause of many pretrial disputes (like Lontex here), that "cuts against its argument that [the other party] was unreasonable."  *Parks*, 2017 WL 3534993, at *1 (citations omitted).  For example, Lontex unreasonably refused to respond to interrogatories and requests for production, prompting motions to compel.  ECF 52, 305.  Lontex withdrew its objections and agreed to supplement its responses to resolve NIKE's motions.  Lontex's unreasonable conduct also included issuing surprise trial subpoenas to dozens of professional athletic trainers, who had no personal knowledge of the facts of this case, to obtain evidence outside of the discovery process.  Although Lontex's counsel avoided sanctions, NIKE's motion succeeded in halting this behavior.  ECF 168.

It also was not unreasonable for NIKE to contest Lontex's overbroad discovery requests, nor for NIKE to engage multiple survey experts to analyze the public's perception of the

trademarks at issue.  Survey evidence is highly relevant to an analysis of trademark confusion by "provid[ing] circumstantial evidence from which the court may extrapolate conclusions on the likelihood of confusion."  *Pep Boys Manny, Moe & Jack of California v. Goodyear Tire & Rubber Co.*, 2002 WL 524001, at *9 (E.D. Pa. Apr. 5, 2002) (citing 5 McCarthy on Trademarks and Unfair Competition § 32:183).  This Court already recognized that "[t]he survey experts proffered by Nike are intended to rebut Lontex's arguments regarding several of the *Lapp* factors."  ECF 241 at 4.  This Court also recognized that "Lontex brings claims of forward and reverse confusion, and [NIKE's] expert reports address both of these concepts."  *Id.*  And this Court ruled during trial that Lontex's own survey expert lacked a sufficient basis to opine on key portions of his proffered testimony.  (9T at 68:20–69:5.)  Lontex's other complaints address NIKE's decisions to raise various arguments in its defense, but do not show they unreasonably delayed the litigation.  ECF 384-1 at 19.  Rather, these were reasonable efforts taken to fully defend NIKE.  Nothing about NIKE's conduct renders this case exceptional.

## VII.   EVEN IF THIS COURT DETERMINES THAT SOME ATTORNEYS' FEES SHOULD BE AWARDED, THOSE FEES SHOULD BE SIGNIFICANTLY REDUCED UNDER CONTROLLING SUPREME COURT AND THIRD CIRCUIT PRECEDENT.

Lontex is not entitled to recover any attorneys' fees, let alone fees that are nearly nine times the jury's total damages award, especially where Lontex recovered only a very small portion of the damages sought.  Any fee award (and none is warranted) should be reduced by 50 to 85 percent.

The Supreme Court has held that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."  *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983); *see also United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 2020 WL 1821028, at *11 (E.D. Pa. Apr. 10, 2020), *aff'd*, 5 F.4th 315 (3d Cir. 2021) ("The most critical factor" in determining an appropriate fee award is the "results obtained.").  As

32

a result, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. Lontex sought over $137 million in compensatory damages plus an unspecified amount of punitive damages, but was awarded only $142,000 compensatory damages and $365,000 punitive damages, totaling $507,000.  (8T at 206:17–207:2; 10T at 5:1–19.)  Any fees awarded to Lontex should thus be reduced by a significant percentage to reflect its very limited success at trial.  *See Pelzer v. City of Phila.*, 771 F. Supp. 2d 465 (E.D. Pa. 2011) ("the jury's verdict demonstrates her overall success was limited in comparison with the scope of the litigation as a whole").

Many cases in this Circuit have applied *Hensley* to reduce the attorneys' fees awarded, frequently by fifty percent or more.  In *Washington v. Philadelphia County Court of Common Pleas*, the Third Circuit ruled that the district court "was well within its broad discretion when it discounted the fees by fifty percent for partial lack of success."  89 F.3d 1031, 1044 (3d Cir. 1996). In that case, plaintiff sought roughly $660,000 in compensatory damages, along with additional punitive damages and lost wages, but did not recover any damages on the primary claim.  *Id.* at 1043.  Plaintiff recovered only $25,000 on a secondary claim, representing just over 3% of the total quantified damages sought.  *Id.*  This minimal recovery justified a 50% reduction in the attorneys' fees claimed.  *Id.*  Here, Lontex recovered roughly 0.3% of the total quantified damages sought, an even lower percentage than was recovered in *Washington*.

Similarly, in *Murphy v. Girard School District*, the court applied "a commonsense comparison between the relief sought and the relief obtained" to determine "[w]hether the plaintiff achieved relief."  134 F. Supp. 2d 431, 437 (W.D. Pa. 1999) (citing *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 910 (3d Cir. 1985)).  Because the plaintiff failed to succeed on its "most significant legal effort," the court reduced the fee award by 85%.  *Id.* at 440.

33

Other cases have ordered similarly large reductions.  *See, e.g.*, *Mary Courtney T. v. Sch. Dist. of Phila.*, 2009 WL 185426 (E.D. Pa. Jan. 22, 2009) (reducing fees by 45% where plaintiff recovered roughly 25% of damages sought); *Pelzer v. City of Phil.*, 771 F. Supp. 2d 465 (E.D. Pa. 2011) (reducing fees by 40% where plaintiff recovered roughly two-thirds of damages sought and failed to recover on other claims, using the court's "discretion to arrive at an equitable judgment").

Lontex admits that "[t]he crux of Lontex's damages claim has always been disgorgement of NIKE's profits."  ECF 384-1 at 24.  Yet the jury found that Lontex is entitled to *none* of NIKE's profits.  (ECF 363.)  This justifies a reduction of any damages award by at least 85%.  *See Murphy v. Girard Sch. Dist.*, 134 F. Supp. 2d 431, 440 (W.D. Pa. 1999).[15]  Such a reduction comports with the cases applying *Hensley*, and the one "similar case" Lontex cites as supporting a $4+ million fee award even where damages were small.  *See SAS v. Sawabeh Info. Servs. Co.*, 2015 WL 12763541, at *25 (C.D. Cal. June 22, 2015).  The plaintiffs in *SAS* secured a permanent injunction and "candidly concede[d] this was the primary relief they sought."  2015 WL 12763541, at *25.  By contrast, Lontex has always made clear its primary focus was monetary relief.

Lontex also is not entitled to recover fees incurred for time spent on claims or other arguments that were ultimately unsuccessful.  *See United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 2020 WL 1821028, at *16 (E.D. Pa. Apr. 10, 2020), *aff'd*, 5 F.4th 315 (3d Cir. 2021).  Lontex's counterfeiting and design mark claims were dismissed before trial, and Lontex recovered zero dollars in profits disgorgement and corrective advertising.  All fees for discrete time spent on these arguments are therefore not recoverable by Lontex.

---

[15] Lontex cites *Gen. Instr. Corp. v. Nu-Tek Elecs. & Mfg.*, 3 F. Supp. 2d 602, 612 (E.D. Pa. 1998) to argue that an award of $60,000 is not a "limited success."  ECF 384-1 at 24.  But $60,000 was the maximum damages recovery legally available in that case, and unlike here, final injunctive relief was "a critical aspect of GI's legal success."  3 F. Supp. 2d at 612.

Lontex also cannot recover fees incurred for attorneys' total time spent traveling for work related to this case, where substantive work was not performed on this matter during the time spent traveling. *See Stair v. Lehigh Valley Carpenters Loc. Union No. 600 of United Bhd. of Carpenters & Joiners of Am.*, 1994 WL 172727, at *3 (E.D. Pa. May 6, 1994), aff'd, 43 F.3d 1463 (3d Cir. 1994). Any such travel time is only compensable at a 50% reduction. *See id.*

## VIII. LONTEX HAS REQUESTED UNREASONABLE NON-TAXABLE COSTS TO WHICH IT IS NOT ENTITLED.

Prevailing Lanham Act parties cannot recover out-of-pocket expenses. *See Jama Corp. v. Gupta*, 2008 WL 108671, at *13 (M.D. Pa. Jan. 4, 2008). Further, a party is only allowed to recover non-taxable costs if they are "reasonable and necessary," which Lontex has not shown. *Arlington Indus. v. Bridgeport Fittings, Inc.,* 2016 WL 3522964, at *12 (M.D. Pa. June 28, 2016). Out-of-pocket expenses like phone charges, photocopy charges, fax charges, and travel, hotel, and restaurant expenses are treated differently than the court fees listed in 28 U.S.C. § 1920. *See Jama Corp.*, 2008 WL 108671, at *13 ("This Court therefore finds that the request for out-of-pocket expenses is unreasonable, and only taxable costs pursuant to Section 1920 will be permitted.") Lontex's claim for $631,951.36 in non-taxable expenses thus should be denied.

## IX. CONCLUSION

NIKE respectfully asks this Court to deny Lontex's Omnibus Post-Trial Motion in its entirety, except for Lontex's request for post-judgment interest if the liability verdict stands.

December 22, 2021

Respectfully submitted,

By: */s/ Gina L. Durham*

DLA PIPER LLP (US)

Gina L. Durham (admitted *pro hac vice*)
555 Mission Street, Suite 2400
San Francisco, CA 94105

Michael D. Hynes (admitted *pro hac vice*)
Andrew J. Peck (admitted *pro hac vice*)
Marc E. Miller (admitted *pro hac vice*)
Lane E. McKee (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 100201

Ilana H. Eisenstein
Ben C. Fabens-Lassen
1650 Market Street, Suite 5000
Philadelphia, PA  19103

*Attorneys for Defendant NIKE, Inc.*