**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LONTEX CORPORATION | Civil Action No.  2:18-cv-05623-MMB |
| Plaintiff, | Hon. Michael M. Baylson |
| v. | |
| NIKE, INC., | |
| Defendant. | |

**PLAINTIFF LONTEX CORPORATION'S REPLY MEMORANDUM OF LAW IN**
**SUPPORT OF ITS OMNIBUS POST-TRIAL MOTION**

# TABLE OF CONTENTS

**Page**

I.     NIKE'S INFRINGING PROFITS SHOULD BE DISGORGED ..................................... 1

    A.     Nike's Opposition is Fundamentally Flawed ........................................................ 1

    B.     The jury verdict is no procedural or logical hurdle to Lontex's request here ........ 2

    C.     The Banjo Factors Support Disgorgement ............................................................ 3

        1.     Factor 1: Willful Infringement .................................................................. 3

        2.     Factor 2: Sales Diversion from Lontex to NIKE ...................................... 4

        3.     Factor 3: Adequacy of Other Remedies ..................................................... 5

        4.     Factor 4: Delay ............................................................................................ 5

        5.     Factor 5: Public Interest ............................................................................ 6

        6.     Factor 6: Palming Off ................................................................................. 6

    D.     Nike Fails to Rebut Lontex's Tabulations of Profits to Disgorge ........................ 6

II.    ENHANCEMENT IS WARRANTED ................................................................................ 9

III.   INJUNCTIVE RELIEF ...................................................................................................... 9

IV.    NEW TRIAL ON DAMAGES ........................................................................................ 10

V.     LONTEX SHOULD BE AWARDED ATTORNEY'S FEES AND COSTS ................. 11

    A.     The Jury Finding Willful Infringement and Awarding Punitive Damages
        Highlights the Unusual Discrepancy in the Merits ............................................. 11

    B.     Nike's Litigation Conduct Was Unreasonable And Supports A Fee Award ....... 13

    C.     Nike's Request For A Substantial Fee Reduction Is Unwarranted ...................... 14

    D.     Lontex's Non-Taxable Costs Are Proper ............................................................ 16

VI.    POST-JUDGMENT INTEREST ..................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 Pillar Dynasty LLC v. N.Y. Co.*,
  933 F.3d 202 (2d Cir. 2018)...............................................................................2, 4, 5, 6, 7

*A&H Sportswear Inc. v. Victoria's Secret Stores, Inc.*,
  166 F.3d 197 (3d Cir. 1999)....................................................................................5

*Banjo Buddies, Inc. v. Renosky*,
  399 F.3d 168 (3d Cir. 2005)..............................................................................3, 5

*Blum v. Witco Chem.*,
  829 F.2d 367 (3d Cir.1987).................................................................................12

*CollegeNET, Inc. v. XAP*,
  483 F. Supp. 2d 1058 (D. Or. Mar. 26, 2007)......................................................3

*CoverTech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*,
  855 F.3d 163 (3d Cir. 2017).................................................................................8

*CPC Props., Inc. v. Dominic, Inc.*,
  2013 WL 5567584 (E.D. Pa. Oct. 9, 2013)...........................................................4

*Decus v. Heenan*,
  2018 WL 1082842 (E.D. Pa. Feb. 27, 2018) .......................................................12

*Electro Sci. Indus., Inc. v. Gen. Scanning Inc.*,
  247 F.3d 1341 (Fed. Cir. 2001)............................................................................4

*Fabick, Inc. v. JFTCO*,
  2019 WL 1320298 (W.D. Wis. Mar. 22, 2019) ....................................................3

*Fair Wind Sailing, Inc. v. Dempster*,
  764 F.3d 303 (3d Cir. 2014).................................................................................12

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
  765 F.3d 205 (3d Cir. 2014).................................................................................9

*Ford Global Tech. v. New World Int'l, Inc.*,
  2019 WL 1531759 (N.D. Tex. Apr. 9, 2019) .......................................................12

*Gilliard v. City of Philadelphia*,
  2004 U.S. Dist. LEXIS 16921 (E.D. Pa. Aug. 25, 2004).......................................15

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Gucci v. Daffy's*,
354 F.3d 228 (3d Cir. 2003)........................................................................5

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)............................................................................14, 15

*Innovative Metal Craft v. Whaley*,
2020 WL 7769828 (W.D. Pa. Dec. 30, 2020)..........................................12

*Lanni v. New Jersey*,
259 F.3d 146 (3d Cir. 2001)...............................................................14, 15

*Leaman v. Wolfe*,
2017 WL 528280 (E.D. Pa. Feb. 9, 2017) ................................................13

*Lindy Pen v. Bic Pen*,
982 F.2d 1400 (9th Cir. 1993) .............................................................7, 8

*Maltina Corp. v. Cawy Bottling Co.*,
613 F.2d 582 (5th Cir. 1980) ....................................................................8

*Marshak v. Treadwell*,
595 F.3d 478 (3d Cir. 2009)...........................................................1, 2, 5, 7

*Mary Courtney T. v. Sch. Dist. of Philadelphia*,
2009 WL 185426 (E.D. Pa. Jan. 22, 2009) ..............................................15

*MB Imps. v. T&M*,
2016 WL 8674609 (D.N.J. Dec. 23, 2016)................................................2

*Murphy v. Girard School Dist.*,
134 F. Supp. 2d 431 (W.D. Pa. 1999).......................................................15

*Nike Inc. v. Variety Wholesalers, Inc.*,
274 F. Supp. 2d 1352 (S.D. Ga. 2003)........................................................8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014)...........................................................................11, 13

*Parks, LLC v. Tyson Foods, Inc.*,
2017 WL 3534993 (E.D. Pa. Aug. 17, 2017) .......................................13, 14

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Pelzer v. City of Philadelphia*,
    771 F. Supp. 2d 465 (E.D. Pa. 2011) .....................................................................15

*ReBath LLC v. Foothills Serv. Sols. Co.*,
    2021 U.S. Dist. LEXIS 108229, 2021 WL 2352426 (D. Az. Jun. 9, 2021) ............................9

*Romag v. Fossil*,
    140 S. Ct. 1492 (2020)...........................................................................................4, 6

*Rush v. Scott Specialty Gases, Inc.*,
    934 F. Supp. 152 .....................................................................................................16

*Sands, Taylor & Wood v. Quaker Oats*,
    1995 U.S. Dist. LEXIS 4797 (N.D. Ill. Apr. 11, 1995) .............................................5

*Spectrum Labs. v. Dr. Greens, Inc.*,
    2019 WL 1317725 (S.D. Cal. Mar. 22, 2019) .........................................................12

*SRI Int'l, Inc. v. Cisco Sys.*,
    14 F.4th 1323 (Fed. Cir. 2021) ..............................................................................13

*SurgiQuest v. Lexion Med.*,
    2018 U.S. Dist. LEXIS 82323 (D. Del. May 16, 2018)..............................................4

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
    932 F.2d 1113 (5th Cir. 1991) ..................................................................................9

*Thrive Natural Care v. Thrive Causemetics*,
    2021 U.S. Dist. LEXIS 201284 (C.D. Cal. Oct. 26, 2021).........................................8

*U.S. Soo Bahk v. Tang Soo Karate Sch.*,
    2015 WL 4920306 (M.D. Pa. Aug. 17, 2015) .........................................................12

*U.S. v. Farfield Co.*,
    2020 WL 1821028 (E.D. Pa. Apr. 10, 2020) .....................................................15, 16

*U.S. v. Hakim*,
    344 F.3d 324 (3d Cir. 2003)......................................................................................3

*W. E. Bassett Co. v. Revlon, Inc.*,
    435 F.2d 656 (2d Cir. 1970)...........................................................................1, 6, 7, 8

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Washington v. Philadelphia Cty. Ct. of Common Pleas*,
    89 F.3d 1031 (3d Cir. 1996)...................................................................15

*Western Diversified v. Hyundai Motor*,
    427 F.3d 1269 (10th Cir. 2005) ...........................................................4, 6

**Statutes**

15 U.S.C. 1117(a) .....................................................................................6, 7

Lanham Act................................................................................2, 6, 7, 10

Trademark Modernization Act of 2020 ...................................................9, 10

**Other Authorities**

HR 116-645 (https://www.congress.gov/congressional-report/116th-
    congress/house-report/645/1)...................................................................9

Senate Report No. 93-1400.............................................................................11

I.   **NIKE'S INFRINGING PROFITS SHOULD BE DISGORGED**

A.   **Nike's Opposition is Fundamentally Flawed**

At its core, the Opposition fails because Nike fails to rebut the critical bases and cases:

*First*, equitable disgorgement is designed to deter.  Willful infringement needs to be deterred, and the jury's actual damages award is insufficient to deter Nike here.  Nike's attempt to trivialize its willful infringement by implying contrary findings of the jury fails.

*Second*, rather than counseling against disgorgement, it is the very difficulty of proving and receiving actual damages to plaintiff's business that *makes* profit disgorgement so fitting in trademark cases – the potential of royalties for those same sales does not change this.  Mtn. 6-7.

*Third*, sales related to infringement are disgorged, no but-for causal relationship is required. Mtn. 3.  Deterrence, unjust enrichment, and actual damages are *disjunctive* bases.  *Id.* Regardless, Lontex's Opposition to Nike's Post-Trial Motion explains (Dkt. 387), the jury's infringement finding was supported by actual confusion (pp.7-9), marketplace flooding (pp.5-6) and ubiquitous promotion including Lontex's customers (pp.10-12).  Irreparable harm is presumed for the very reason that the "majority" of prevailing trademark owners (like Lontex) have actual damages denied as too speculative or difficult to prove, not because there is no harm to compensate.  *See infra* p.5; Mtn. 7.

*Fourth*, Lontex showed $7.2 million as the floor and many other discrete dollar amounts and percentages to add to that short of all-or-nothing.  Nike responded to none.

*W. E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656 (2d Cir. 1970):  If Revlon violated an injunction or had "fraudulent" infringement is immaterial.  Opp. 14-15.  The violation was not found a basis to disgorge, and "fraudulent infringement" was used to denote the same mindset as here: "Revlon's actions and contentions are surrounded by an aura of indifference."  *Id.* 662, 664.

*Marshak v. Treadwell*, 595 F.3d 478 (3d Cir. 2009):  Like the "shell game" there, (Opp. 13), Nike's contributory infringement showed Nike unsuccessfully distancing itself from the infringement while receiving its financial benefit.  Lontex Post-Trial Opp. (Dkt. 387 hereafter "Lontex Opp.") 12-15.  While *Marshak* noted the length the injunction was violated, its primary rationale in reversing

the denial of disgorgement was the *Banjo* holding and its normal weighing of "the principles of deterrence" as more "preferable" than concerns of "a windfall." *Id.* at 496.

And "courts" have not "cabined" *Marshak*.  Nike's unpublished case of *MB Imports* distinguishing *Marshak* (1) lacked "already proven" trademark infringement (like *Marshak* and here) and was instead a false advertising case, and (2) incorrectly read *Marshak's* disjunctive "deter infringement *or*…unjustly enriched" language as conjunctive (deterrence *and* "but-for" sales), a mistaken conjunction Nike's motion repeatedly makes but *Banjo* rejects.  *MB Imps. v. T&M*, 2016 WL 8674609, at *8 (D.N.J. Dec. 23, 2016) citing *Marshak*, 595 F.3d at 494-495.

*4 Pillar Dynasty LLC v. N.Y. Co.*, 933 F.3d 202 (2d Cir. 2018):  As Nike critiques Lontex's evidence, tellingly Nike admits *4 Pillar* affirmed all profits on "less than overwhelming" evidence of infringement. Opp. 8 n.10. Nike cites *4 Pillar*'s unremarkable windfall observation that if something less than "*all profits*" achieves "the desired deterrent effect," this is relevant to the right amount to disgorge.  *Id.* at 214 (emphasis in original).  The all-profit disgorgement was affirmed finding no abuse of discretion in findings made on "equitable factors" similar to *Banjo*.  *Id.* at 214-215.

## B.    The jury verdict is no procedural or logical hurdle to Lontex's request here

Nike does not dispute that: (1) disgorgement is an equitable issue, (2) the Court reserved any final decision on what weight to give such verdict in light of the lack of binding precedent, (3) the issue was submitted to the jury as the safest course, and (4) whether given to the jury or not, the Lanham Act expressly reserves *the Court's* final say on disgorgement.  Mtn. 1-2.

The issue was raised at trial and, without binding law, the Court followed the "better course" to let the jury weigh in – which comported with local practice – but allowed "an equitable motion…for [the Court] to make [its] own decision on equitable grounds as to what [disgorgement] should be."  [10/27 TT 187:20-188:1.][1]  Nike's sole citation involved trying to unwind a jury

---

[1] Far from "repeatedly urging" disgorgement as for the jury (Opp. 4), Lontex asserted that disgorgement is an issue for the bench (Dkt. 328 p.6), and responded to Nike's mid-trial motion (Dkt. 351 p.2) by advising "the jury is never a clear issue" on disgorgement (10/27 TT 91:3-4).  Lontex's recommendation to submit the issue to the jury (Opp. 4) was consistent with local practice on equitable relief.

decision on liability, after neither the parties nor court raised the issue at any time through trial. *Fabick, Inc. v. JFTCO*, 2019 WL 1320298 *2 (W.D. Wis. Mar. 22, 2019).

Nike ignores facts supporting willful infringement and punitives, but improperly "presumes" the jury's $0 "rejected all of the findings" supporting disgorgement including all *Banjo* factors and the need "to deter."  Mtn. 6.  There is no such presumption, and the only presumption is that the jury accurately followed its instructions.  *U.S. v. Hakim*, 344 F.3d 324, 326 (3d Cir. 2003).  Nike ignores a key jury instruction: "it is important to avoid duplicating" and "you may not" duplicate damages. [10/28 TT 225:25-226:3.]  Thus, the jury did (or could have) stopped analyzing disgorgement of profits on those sales at the threshold solely because the award already computed royalties from those same sales.  An arithmetic issue.  This reading best squares the strong basis for the jury's willful infringement and punitive damages findings with the absence of a profits award.  Lontex Oppo.

Whether a jury is advisory or not, for disgorgement, it is this Court's duty to weigh the factors for itself to determine the equitable outcome on profit disgorgement.  [Mtn. 1-2]; *CollegeNET, Inc. v. XAP*, 483 F. Supp. 2d 1058, 1064, 1067 (D. Or. Mar. 26, 2007).

### C.      The *Banjo* Factors Support Disgorgement

Nike incorrectly asserts that Lontex "ignores almost all" these factors. [Opp. 7.] Lontex chose to address the factors in the context of the most relevant key cases, which themselves also addressed the factors.  Under any format, Nike's Opposition fails to rebut the showing.

#### 1.      Factor 1: Willful Infringement

Notably *Banjo* disgorged *without* willfulness. *Banjo*, 399 F.3d at 173-174. The jury's finding of willfulness strongly pushes this factor in Lontex's favor. *Id.* A violation done "intentionally or willfully" or even "intentionally or recklessly" weights Factor 1 "in favor of disgorgement." *SurgiQuest v. Lexion Med.*, 2018 U.S. Dist. LEXIS 82323, *26 (D. Del. May 16, 2018).

The Court should reject Nike's repeated attempt to take the Supreme Court's or Third Circuit's *lowering* of the relevant standards (e.g. to not *require* willfulness) to argue that willfulness is no longer paramount or sufficient to satisfy the standard when it *is* present. *Romag v. Fossil*, 140

S. Ct. 1492, 1494 (2020) (rejecting "categorical rule" that willful infringement is required for disgorgement). *Romag* finding something less than willfulness is sufficient *does not* implicitly reject that willfulness requires (or invariably warrants) disgorgement. Opp. 9.

Nike's factual arguments ignore the facts supporting the rare finding of willful infringement deserving punitives.[2]  Mtn. 4-8; Opp. to Nike Mtn. (Dkt. 387) 12-15, 18-19.  Nike's "aura of indifference" to the rights of the smaller senior user closely mirror the intent of Revlon in *W.E. Bassatt*, in which the failure to award profits was found to be reversible error; regardless, *4 Pillar Dynasty* held all profits may be disgorged even on "less than overwhelming" willfulness. Mtn. 3-4.

Nike cites to a lone case of a small infringing single-location restaurant *losing* money for ten years, "not a popular menu item," and with facts unsupportive of deterrence.  Mtn. p.9 citing *CPC Props., Inc. v. Dominic, Inc.*, 2013 WL 5567584, at *3 (E.D. Pa. Oct. 9, 2013).  Nike has $22 billion in assets and a 51% profit margin. [PX 3012 pp.13-15.]  Nike and willful infringers need to be deterred, otherwise risk significant disgorgement.  And Nike's aggressive litigation fits the mold of "economic muscle to weaken a plaintiff," a species of willfulness deserving of deterrence. *Western Diversified v. Hyundai Motor*, 427 F.3d 1269, 1274 (10th Cir. 2005).

### 2.      Factor 2: Sales Diversion from Lontex to NIKE

As addressed in Lontex's motion, the concept of unjust enrichment is but one *disjunctive* basis for disgorgement, and diversion is just one form of unjust enrichment.  Mtn. p.2.  In *W.E. Bassatt,* the infringement involved a product that plaintiff did not even sell, yet it was error not to disgorge profits.  Mtn. 3; *see also 4 Pillar Dynasty*, 933 F.3d at 214 (deterrence rationale alone supported disgorgement).  Nike's *Gucci* case is not to the contrary, (Opp. 2, 6, 10, 21); there an "innocent" retailer of counterfeit goods did nothing to deter, *and* the Third Circuit justified its holding since "Gucci could recover from the actual manufacturer of the bags" – Nike *is* that willful infringer at the top of the pyramid here. *Gucci v. Daffy's*, 354 F.3d 228 (3d Cir. 2003).

---

[2] Nike's request to reevaluate willfulness relies solely on a Federal Circuit decision on enhanced patent damages.  Opp. 8 citing *Electro Sci. Indus., Inc. v. Gen. Scanning Inc.*, 247 F.3d 1341, 1354 (Fed. Cir. 2001).

### 3.      Factor 3: Adequacy of Other Remedies

When analyzing actual damages in the form of lost sales and lost expansion opportunities, the jury's (all too common) failure to award any such items as speculative clearly favors Lontex. Mtn. 6-7; *Banjo Buddies*, 399 F.3d. at 178; *infra* p. 9. Lontex's sales or business did not *improve* because of Nike's sales. *Cf. A&H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 209 (3d Cir. 1999) (no damages because A&H's sales "steadily increased").

Nike mistakenly argues the jury believed $142,000 was adequate. As noted above, the jury likely declined profits to avoid double-counting. If royalties were adequate compensation on an infringing sale, disgorgement would *never* happen. Willful infringers are not deterred by an award of mere licensing fee as damages. Mtn. 13 *quoting Sands, Taylor & Wood v. Quaker Oats*, 1995 U.S. Dist. LEXIS 4797 *7 (N.D. Ill. Apr. 11, 1995). Royalties are inadequate compensation or deterrence.

### 4.      Factor 4: Delay

Even a five year delay is nowhere close to the "nearly *fifty years*" that might warrant denying disgorgement. *Marshak*, 596 F.3d at 495; Mtn. 2-3. Lontex did not hide from an innocent infringer, but investigated and went to Nike promptly – but Nike kept infringing. [10/19 TT 88-93 (investigation), 105:21-106:25 (letters).] At trial, Nike avoided Lontex explaining its short "delay" to suit by arguing "undue delay" has "no relevance whatsoever to damages." [10/27 TT 84:19-25.] Nike now belatedly opens the door, and Nikes threat (Mtn. 8) and other evidence of record (Dkt. 218 p.9) shows the small Lontex sued the giant Nike as soon it could. Disgorging from an infringer who continued after notice is not inequitable.

### 5.      Factor 5: Public Interest

Nike's only argument is the jury as the "public" did not believe Nike needed more deterrence than royalties. As noted, no finding on this *Banjo* factor was implied, as the jury simply followed its charge not to double-count sales. Nike ignores that the public has a strong interest in deterring willful infringers and receiving consistent protection from the Lanham Act, which best occurs here by disgorgement. Mtn. 2, 7-8. It is not helped by encouraging willful infringers to disregard rights,

count on a mere slap, and discouraging trademark owners to pursue even willful infringers.  *Id.*

      **6.**      **Factor 6: Palming Off**

Lontex's key cases of *W.E. Bassett* and *4 Pillar Dynasty* show absence of palming off in no way "weighs *against* disgorgement" for a willful infringer (Opp. 12). *See* Mtn. 3-4.

*    *    *    *    *

Nike's willful infringement deserving of punitive damages is anything but the ordinary run of the mill trademark infringement case.  Nothing as "extraordinary" (Opp. 12)[3] as either willfulness or punitive damages is required, yet both are present here.  And the most important *Banjo* factors favor disgorgement.  Some form of profit disgorgement should be ordered.

      **D.**      **Nike Fails to Rebut Lontex's Tabulations of Profits to Disgorge**

Lontex needed to prove Nikes' "sales only" and Nike "must prove all elements of cost or deduction claimed."  15 U.S.C. 1117(a).  Nike's own expert admitted $7.1 million in gross profits in relation to use of the Cool Compression mark.  Mtn. 9-10 citing DX 1237 pp. 11-13.  The jury failed to enter either Mr. Drews  or Mr. Myer's suggested amounts, so the (advisory) verdict implies nothing as to either's amounts (Opp. 17-18).  Nike suggests "*every* sale of *every* accused style number" is too high, (Opp. 16), but does not offer any specific argument (or arithmetic problem) as to Lontex's proposed additional $22.53 million, or its 75% apportionment of total sales, or propose or ground a different dollar or percent apportioning.  Mtn. 12-14.

Again, this is Nike's failure of proof.  *Id.*  Instead, it offers invalid general critiques:

*Nike's No-windfall rule*:  No plaintiff is "entitled" to disgorgement windfalls, but an amount enough to deter a willful infringer is *not* a windfall and is premised on deterrence, not "lotteries." *Marshak*, 595 F.3d at 496; *4 Pillar*, 933 F.3d at 214.  Nike, like Revlon in *W.E. Bassett*, needs "*all*" profits disgorged as "a strong enough deterrence" for "a company found guilty of willful infringement." 435 F.2d at 662 (emphasis in original).  And Nike sold competing goods to

---

[3] Nike's citation to *Western Diversified Servs. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1273-1274 (10th Cir. 2005) is erroneous, as its holding as to willfulness was effectively overruled by *Romag v. Fossil*.

overlapping customers of a mark with a strong reputation, broad audience including renowned pro athletes and teams, and consistent sales nationwide – resulting in actual customer confusion.  Dkt 387 (Lontex Opp. to Nike Post-Trial Mtn.) at § I(A).  Profits on compression clothes are not a windfall.

*Nike's No-penalty rule*:  Deterrence is not a "penalty" and is a disjunctive rational to actual damages or unjust enrichment rationales.  The Lanham Act provides for awarding "defendant's profits."  15 U.S.C. 1117(a).  As long as the sales relate to the infringement, their disgorgement compensates the plaintiff and deters the infringer and is not a penalty whether or not the sale was caused by the infringement.  *W.E. Bassett*, 435 F.2d at 664.  Lontex's case at trial was limited to profits on product numbers with "Cool Compression" product name usage (and *not* "Cool" and "Compression" abbreviated or broken up), not an arbitrary penalty.

*Nike's No-attribution rule*:  *Lindy Pen* was an unjust enrichment case involving a non-willful infringer, not deterrence.  *Lindy Pen v. Bic Pen*, 982 F.2d 1400, 1406, 1408-1409 (9th Cir. 1993). Lindy did not identify sales from the relevant "Auditor's Fine Point" pen and instead offered "Bic's total sales."  *Id.* at 1408-1409.  Lontex did not rely on Nike's company-wide sales, but specific product numbers, and thus even under *Lindy Pen's* unjust enrichment rationale, those sales "are presumed to be the result of the infringing activity."  *Id.*  Even in rebutting attribution for unjust enrichment, Nike cites no case supporting the notion that the potential purchase or license price of a mark acts as a cap on the attributable profits of an infringer.  Opp. 18.  Unlike disgorgement solely for unjust enrichment, deterrence does not permit a large infringer (who chose not to license or buy the mark or use a non-infringing mark) to escape by pointing to its own contributions.  Mtn. 7, 9.

*Nike's Reverse-confusion bar*:  The Third Circuit never held such a bar.  Opp. 16 citing *Koninkijke*, 2016 WL 3545529, at *26.  Post-*Romag*, "profits are available as a matter of law in reverse confusion cases."  *Thrive Natural Care v. Thrive Causemetics*, 2021 U.S. Dist. LEXIS 201284, *15 (C.D. Cal. Oct. 26, 2021).  And *W.E. Bassett* was classic reverse confusion. Mtn. 3.

*Nike's Reasonable Basis rule*:  The *Covertech* plaintiff didn't cite actual sales or have an expert, but guessed a "random" 70% of "industry-wide gross sales" as infringing profits.  *Covertech*,

855 F.3d at 176.  But Lontex relied on the numbers of Nike and its retailers for sales of product numbers that used Cool Compression, satisfying Section 1117(a).  Mtn. 12.  Lontex's 75% ($71.2 million) estimate and $22.53 million figure are reasonable estimates.  Mtn. 10-12.

Nike's final contention is that net profits (about 40% of gross profits) should be used instead of gross profits.  Opp. 18.  Nike and other trademark owners established the clear case law that gross profits (not net profits) are used where, as here, the infringing sales are miniscule to Nike's $14 billion total annual sales.  Dkt. 328 p.6 citing *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 586 (5th Cir. 1980) (even 6% of sales is too small to warrant overhead deduction); *Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1373 (S.D. Ga. 2003) (same).

Thus, Nike's profits should be disgorged.  The trial evidence is sufficient to support at least $7.1 million (Mr. Meyer's gross profit calculation), $22.53 million (including the Motion's bullet points), $71.2 million (75% apportionment), or the amount the Court finds justified.

## II.   ENHANCEMENT IS WARRANTED

*Royalties*:  Nike opined $800,000, so enhancing $142,000 is not a "penalty." [DX 1237 p.3.] Royalties are a small percent of sales, making enhancement key.  Mtn. p.13.

*Profits:* Both parties incorporate their disgorgement arguments.  Opp. 18.  In addition, enhancement's under-compensation concerns make it uniquely *not* a penalty.  Addressing penalty concerns, *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113 (5th Cir. 1991) explained where sales involved in the infringement were probably "greater than the amounts conclusively proven" in calculating an award, enhancement fixes this risk of under-compensation from the imprecision and is not a penalty.  *Id.* at 1127.  Enhancement avoids the victim bearing such cost of imprecision of proof.

## III.   INJUNCTIVE RELIEF

Nike calls an injunction extraordinary, but willful infringement spanning at least three years over the direction of Nike Legal is extraordinary.  Retailers used "Cool Compression" through the last 2020 web printouts, and it has yet to tell a single retail associate to stop saying "Cool Compression."  Lontex Oppo. to Nike Post-Trial Mtn. (Dkt. 387) 14-15; PX 31A; PX 1563.  The

small Lontex cannot afford to stop repetitive infringement through additional lawsuits like this one, nor does Nike have a legitimate reason not to respect an injunction.

Nike cites *eBay* but admits the Trademark Modernization Act of 2020 ("TMA") restored the historical presumption of irreparable harm for trademark claims.  Opp. 21 & n.13.  Both the Third Circuit, and Congress in passing the TMA, acknowledged this historical presumption makes a permanent injunction "automatic" or "near uniform" granted for a prevailing trademark plaintiff. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014) ("automatic or general grant of an injunction"); HR 116-645 (https://www.congress.gov/congressional-report/116th-congress/house-report/645/1) ("nearly uniform" that success on trademark merits equals an injunction). Voluntary cessation does not moot this, given the possibility of recurrence. *ReBath v. Foothills Serv.*, 2021 U.S. Dist. LEXIS 108229, *33, 2021 WL 2352426 (D. Az. Jun. 9, 2021) (enjoining under TMA).  Congress explained the "justification for the issuance of injunctions is that it is typically difficult to obtain monetary relief in Lanham Act cases" and "a significant majority of successful trademark cases nonetheless deny an award of damages."  HR 116-645 (for TMA).

The injunction's scope is appropriate.  Nike infringed "indirectly" through retailers and extensive retail training materials (i.e. tech sheets) resulting in contributory infringement liability; barring "indirect" use stops repetition of this pattern of direct and indirect infringement. Nike showed *no* permissible use of "Cool Compression" and lost fair use; this entire lawsuit rejected the same descriptiveness arguments Nike claims it should remain free to make.  And if verbal use were immune from infringement, Nike could launch a Coca-Cola shoes radio campaign – that it cannot do.

## IV.    NEW TRIAL ON DAMAGES

PX19:  Nike is incorrect that Lontex missed the presentation of PX19 "during its affirmative damages case" PX19 – it was still Lontex's damages case in chief and cross-examination of Mr. Drews had not even begun (when Lontex sought to introduce it).  That PX19 was in units instead of sales dollars was not misleading because of "comps" – the chart was by units-distributed rather than sales-volumes because the court instructed "units" were what could be used in both liability and

- 9 -

damages phases; the same chart in sales-volume format on summary judgment showed 12% increase in dollar volumes of sales for NFL teams without overlap and 34% decrease with overlap. *Compare* PX19 with Dkt. 205 p.45. Nor does it matter that Nike "comped" sales; the chart was useful to show the fact of damages (not just its amount). Depriving the jury of the chart was at least prejudicial in assessing the *fact* of lost sales.

       <u>Threats to Mr. Nathan</u>: Nike notes counsel stipulated that the discussions occurred during settlement talks. The point would be well-taken if the ruling had been based on that proffered stipulation, but instead the Court took testimony under oath "to help me decide admissibility." [10/27 TT 101:15] The testimony showed that, while during a settlement-motivated call, it occurred unequivocally *after* settlement had been refused and suit was required. [*Id.* 97:12-22]. Nike's concern of one-sidedness fails, since Nike identified the attorney who made the threat (Chris Kindel) on its witness list. [Dkt. 249 p.5.] Keeping it from the jury was prejudicial – even the Opposition admits (on disgorgement) that *degree* of willfulness is key.

**V.**      **<u>LONTEX SHOULD BE AWARDED ATTORNEY'S FEES AND COSTS</u>**

       It is undisputed that "[t]rademark and unfair competition cases … present a particularly compelling need for attorney fees." Senate Report No. 93-1400. Nike does not challenge the rates or reasonableness of fees sought by Lontex, or that the majority of the *Johnson* factors are either neutral or favor an upward multiplier of fees. *See* Mot. at 20-25. Instead, Nike relies on a single *Johnson* factor to claim that Lontex's success was "limited" in order to seek a massive, unsupported discount on a fee award. As set forth below, the Court should reject these arguments and award Lontex $4,625,711.50[4] in fees and $631,951.36 in non-taxable costs.

       **A.**     **<u>The Jury Finding Willful Infringement and Awarding Punitive Damages Highlights the Unusual Discrepancy in the Merits</u>**

       Nike asserts that willfulness "does not make a case exceptional" and is not "an element" for fee awards. Opp. at 26-27. But Lontex never argued it is an element; willfulness is a factor

---

[4] Lontex previously submitted evidence supporting $4,449,389.50 in fees through October 31, 2021. The supplemental Wagner declaration provides support for an additional $176,322 in fees through January 11, 2022.

combined with Nike's other positions and conduct that strongly support a fee award.  Mot. at 16.

Nike does not dispute that willfulness historically supported fee awards, and recently the Supreme Court relaxed the standard in *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545 (2014).  *See* Mot. at 16–17.  If willfulness strongly supported fee awards under a more stringent standard, so too it supports awarding fees under the lowered *Octane Fitness* standard.

Indeed, as Nike concedes, the Court must analyze the totality of the circumstances, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  Opp. at 26.  Thus, willfulness is highly probative of whether a case is exceptional.  *See Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) ("The losing party's blameworthiness may well play a role in a district court's analysis of the 'exceptionality' of a case").  And district courts regularly cite willfulness as an important factor.  *Ford Global Tech. v. New World Int'l, Inc*., 2019 WL 1531759, *2 (N.D. Tex. Apr. 9, 2019); *Spectrum Labs. v. Dr. Greens, Inc*., 2019 WL 1317725, *2-*4 (S.D. Cal. Mar. 22, 2019).

The unusual discrepancy in the merits of Nike's position is reinforced by the jury's willfulness finding and punitive damages award.  Nike emphasizes the amount of the award as somehow cleansing its misconduct.  *See* Opp. at 27–28.  But Nike never engaged settlement efforts, leaving no choice but to proceed to trial.  Further, even Nike's damages expert put gross profits related to COOL COMPRESSION at $7.1 million.  10/28/2021 TT at 121:4-7; DX-1230.

Nike relies on a series of cases to suggest this case is not exceptional.  *See* Opp. at 27–28, citing *Decus v. Heenan*, 2018 WL 1082842 (E.D. Pa. Feb. 27, 2018); *Innovative Metal Craft v. Whaley*, 2020 WL 7769828 (W.D. Pa. Dec. 30, 2020); *U.S. Soo Bahk v. Tang Soo Karate Sch.*, 2015 WL 4920306 (M.D. Pa. Aug. 17, 2015).  Those cases did not involve a willful infringer, a punitive damages award, continued infringement long after a cease and desist letter was sent, a defendant violating its own trademark clearance policy, or ignoring the instruction of the defendant's legal department to stop.  PX 20A; PX 647; Munro Tr. at 179:16-183:2.  Thus, Nike's argument that those

- 11 -

cases involved "weaker arguments than NIKE advanced here" is incorrect.

Nike asserts that Lontex "withdrew or had substantial portions" of its case dismissed.  Opp. at 29.  It cannot avoid fees because Lontex early on withdrew a claim for its design mark, which was effectively co-extensive with its *successful* word mark claim.  And the dismissed counterfeiting remedies was not a "substantial portion" of Lontex's complaint, and in any event its dismissal cannot defeat a fee award.  *Blum v. Witco Chem.*, 829 F.2d 367, 378 (3d Cir.1987) (Supreme Court "rejected the notion that the fee award should be reduced 'simply because the plaintiff failed to prevail on every contention raised in the [case].'"); *Leaman v. Wolfe*, 2017 WL 528280 (E.D. Pa. Feb. 9, 2017) (a party is "prevailing" for a fee award "if she succeeds 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'").

### B.     Nike's Litigation Conduct Was Unreasonable And Supports A Fee Award

Nike cannot dispute the facts about how it litigated every single issue in this case from inception through trial with an army of attorneys filing over a dozen motions during the last three years.  *Compare* Mot. 18–19 *with* Opp. 29–32.  Instead, Nike argues that its conduct "did not unreasonably delay[] the litigation," so this case must not be exceptional.  Opp. at 29-32.

Delay often supports unreasonableness, but a court analyzes the *totality* of circumstances, and scorching is just as damaging as a slow-burn.  *Octane Fitness*, 572 U.S. at 554 (holding there is "no precise rule or formula").  A case that Nike cites is directly on point and highlights other circumstances warranting a fee award: In *SRI Int'l, Inc. v. Cisco Sys.*, 14 F.4th 1323, 1332 (Fed. Cir. 2021), the court held unreasonable tactics included "maintaining nineteen invalidity theories until the eve of trial but ultimately presenting only two at trial, presenting weak non-infringement theories that were contrary to the district court's claim construction ruling and Cisco's own internal documents, exhaustive summary judgment and sanction efforts, over-designation of deposition testimony for trial, and asserting 'every line of defense post-trial.'"

The fact that Nike's counsel vigorously defended Nike does not render its conduct reasonable.  On the contrary, *SRI Int'l* teaches that such vigorous defense can be unreasonable.

Lontex highlighted Nike's conduct that is very similar to *SRI Int'l*.  *See* Mot. at 18–19.

Nike's attempt to shift blame to Lontex is also misplaced.  Opp. at 31, citing *Parks, LLC v. Tyson Foods, Inc*., 2017 WL 3534993 (E.D. Pa. Aug. 17, 2017).  In *Parks*, the party seeking fees had filed discovery motions "replete with allegations of egregious discovery misconduct," and a sanctions motion "insinuat[ing]—with no apparent basis" discovery misconduct.  *Id*. at *3, *4.  Nike incorrectly asserts that Lontex was unreasonable in discovery, and regardless Nike points to no conduct by Lontex similar to *Parks*.  Rather, Nike made repeated allegations of egregious discovery misconduct and unsuccessfully sought sanctions.

Nike's conduct included intransigence in discovery, presenting excessive experts, waiting until the eleventh hour to drop meritless defenses, presenting weak non-infringement theories and asserting "the words COOL COMPRESSION don't exist in Nike's vernacular" that was contradicted by Nike's own documents and witnesses, bringing a voluminous summary judgment motion replete with factual disputes, and declining settlement discussions to exercise its right to force a trial.  This conduct drove up costs and used significant judicial resources, all for a jury to inform Nike that its infringement was so plain that it was not only willful, but warranted punitive damages.  Such unreasonable litigation conduct strongly supports a fee award.

## C.    Nike's Request For A Substantial Fee Reduction Is Unwarranted

Without addressing the other *Johnson* factors that are neutral or support an upward multiplier of fees (*see* Mot. at 23-25), Nike incorrectly asserts that Lontex's success was "limited" and on that basis asserts the Court should reduce Lontex's fee request by 50% to 85%.

First, the Court has not yet ruled on equitable relief, and Nike assumes none will be granted. In the event the Court grants such relief, Nike's request is further without support.

Second, even absent equitable relief, Lontex's fee request uses rates at the time the services were performed, whereas it is entitled to rates measured from the time of the motion in 2021.  *See Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).  Thus, Lontex's request is already significantly reduced for fees from 2018 through 2020.

Third, Lontex sought various remedies, and it is inappropriate to measure success based on a purported request for $137 million.  *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.").  Indeed, Nike's citation to *Farfield* confirms that its argument is unsupported, as the court there rejected the similar argument that recovery of $1,055,320.62 on projects valued at $107.7 million was "limited."  *U.S. v. Farfield Co*., 2020 WL 1821028, at *12 (E.D. Pa. Apr. 10, 2020).

Fourth, it is particularly immaterial here that Lontex requested alternative monetary remedies because Nike exercised its choice not to engage in settlement discussions.  While Nike was free to do so, as a practical matter it left Lontex with only two options: drop strong claims for infringement and punitive damages, or proceed through trial in order to obtain any modicum of relief.  Lontex ultimately prevailed, and its success cannot seriously be labeled as "limited."

Fifth, Nike incorrectly measures success from $137 million.  Lontex made clear that it was for the jury to determine an appropriate measure of damages.  *E.g.,* 10/28/2021 TT at 206:4-7 ("So when you think about what it takes to deter Nike, remember, it made $95 million on the products. Every one of those sales, Cool Compression was on it? No. We're not saying that."); *id*. at 209:1-2 ("And that's your job. Not to speculate, but to come up with a reasonable amount.").  Thus, the basis for Nike's reduction request is flawed.

Sixth, courts reduce fee awards for limited success where parties fail to prevail on key claims.[5]  But Lontex prevailed on its claims presented to the jury, and willful infringer Nike had no success.  *See Hensley*, 461 U.S. at 434 (holding the "limited" success factor is "particularly crucial where a plaintiff . . . succeeded on only some of his claims"); *Gilliard v. City of Philadelphia*, 2004

---

[5] *See, e.g., Hensley*, 461 U.S. at 440 ("had respondents prevailed on only one of their six general claims … a fee award based on the claimed hours clearly would have been excessive."); *Pelzer v. City of Philadelphia*, 771 F. Supp. 2d 465, 472 (E.D. Pa. 2011) (reducing award by 40% where plaintiff lost on claims against 2 of the 3 defendants); *Washington v. Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1043 (3d Cir. 1996) (plaintiff lost five of nine claims at summary judgment, and lost primary claim at trial); *Murphy v. Girard School Dist.*, 134 F. Supp. 2d 431, 437 (W.D. Pa. 1999) (plaintiff failed to succeed on its "most significant legal effort"); *Mary Courtney T. v. Sch. Dist. of Philadelphia*, 2009 WL 185426, at *7 (E.D. Pa. Jan. 22, 2009) (plaintiff failed to prove violations during 10 of 14 months at issue).

- 14 -

U.S. Dist. LEXIS 16921, *7 (E.D. Pa. Aug. 25, 2004) (success was not "limited" where plaintiff lost some claims but "[t]he jury found against the defendants on two claims and awarded punitive damages."). Thus, the caselaw does not support Nike's request.

Seventh, Nike's requests to reduce fees for travel time and unsuccessful claims fail to identify any specific amount at issue, and in any event fail as a matter of law. Specifically, Lontex's claims were all interrelated, and the fact that two claims or remedies were dismissed early on is an insufficient basis to reduce a fee award. *Farfield*, 2020 WL 1821028, at *16 (awarding fees for unsuccessful claim). Similarly, courts regularly award full rates for travel time, and Nike defended this case with lawyers from California, New York, Baltimore, and Philadelphia, many of whom incurred travel time similar or greater to Lontex's counsel. *Rush v. Scott Specialty Gases, Inc*., 934 F. Supp. 152, 156, order clarified, 940 F. Supp. 814 (E.D. Pa. 1996) (awarding full rate for travel).

### D.    Lontex's Non-Taxable Costs Are Proper

Nike summarily asserts that "Lontex has not shown" the non-taxable costs are "reasonable and necessary." Opp. at 35. But Nike fails to articulate any specific objection to any particular cost. And Nike ignores the ample support included with Lontex's request providing background for why significant costs were reasonable and necessary, including support within time entries and invoices for which Nike offers no objection. Wagner Dec., ¶¶ 6, 10-12, 15-23, Exs. 3-4 and 9-10. Even without such support, it is evident that significant costs are reasonable and necessary to a complex litigation that proceeded to trial. However, Lontex is available to submit supplemental briefing to address any specific concerns the Court may have.

## VI.    POST-JUDGMENT INTEREST

Nike has not objected to post-judgment interest, which should be awarded accordingly.

Dated:       January 11, 2022                        TROUTMAN PEPPER HAMILTON SANDERS
                                                     LLP


                                               By:  /s/ *Ben L. Wagner*
                                                     Ben L. Wagner (CA SBN 243594)
                                                     ben.wagner@troutman.com
                                                     *Admitted Pro Hac Vice*
                                                     11682 El Camino Real, Suite 400
                                                     San Diego, CA  92130-2092
                                                     Telephone:   858.509.6000
                                                     Facsimile:    858.509.6040

                                                     Michael A. Schwartz (PA 60234)
                                                     TROUTMAN PEPPER HAMILTON
                                                     SANDERS LLP
                                                     3000 Two Logan Square
                                                     Eighteenth & Arch Streets
                                                     Philadelphia, PA 19103-2799


                                                     *Attorneys for Plaintiff*
                                                     LONTEX CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2022, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/ *Ben L. Wagner*
Ben L. Wagner