IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LONTEX CORPORATION,** <br><br> v. <br><br> **NIKE, INC.** | **CIVIL ACTION** <br><br> NO. 18-5623 |

### MEMORANDUM RE: REMAND

**Baylson, J.**                                                                                    **October 16, 2024**

This matter is before this Court on remand from the Third Circuit Court of Appeals to determine whether it is sufficiently "exceptional" to allow the award of attorneys' fees.

I. **PROCEDURAL HISTORY**

Following the remand by the Third Circuit Court of Appeals to this Court, affirming all of the jury verdicts and judgment on liability, but remanding for reconsideration of this Court's finding that the case was sufficiently "exceptional" to allow the award of attorneys' fees, this Court decided to appoint a Special Master to review the record and prepare a Report and Recommendation (R&R) under Rule 53, as to aid me in adjudicating the issues presented on remand. For this task, I chose the Hon. Jane Greenspan, who is not only a long-time friend, but served for many years as a distinguished jurist on the Court of Common Pleas of Philadelphia County and was then selected for an "interim" appointment to the Pennsylvania Supreme Court on which she served for approximately three years. As a jurist, Greenspan has a great deal of experience, and was recognized for her skills in the appointment of her as an interim Pennsylvania Supreme Court justice. She is now serving as an Arbitrator/Mediator with JAMS, the well-known organization employed by counsel and courts throughout the United States.

Having reviewed the Greenspan R&R, I have decided to affirm it enthusiastically, she has captured the main points in the trial record that deal with the issue on remand, whether the

1

case is "exceptional." I do note one aspect of the Greenspan R&R that appears to be incorrect, which is her comment that Nike refused to engage in settlement discussions. Although I do not recall being personally involved or even aware of these discussions during the trial, I have reviewed and will credit the sworn Declaration of Andrew Peck, Esquire, a member of Nike's law firm now but previously a distinguished jurist in the Southern District of New York, who I have known for many years. I accept Judge Peck's recollection, but this does not change my opinion or what I think is the result of my consideration of the "totality of circumstances" to find that the case is "exceptional" and that it is just and fair that Nike pay Lontex a substantial fee for the entirety of its attorneys' work in the case.

## II.   DISCUSSION

In deciding to affirm the Greenspan R&R, and to exercise my own discretion in continuing to find that this case is "exceptional," under the standards elucidated by the Third Circuit in its decision dated July 10, 2024, I find that the substantive strength of Lontex's litigating position was strong.

### A.   "Exceptionality"

#### 1.   **Lontex's Substantive Strength**

For the reasons stated in the Greenspan R&R, this Court finds that Lontex's litigating position was exceptionally strong. I also note that the jury's finding of willfulness and punitive damages speak to Lontex's substantive strength.

#### 2.   **Nike Litigated This Case in an Unreasonable Manner**

In finding that Nike litigated this case in an unreasonable manner, I recognize that in my prior decision I made a finding that Nike's behavior was not so outrageous as to be a positive factor on the "exceptional" issue. However, following the Greenspan R&R and review of Lontex's post-remand briefs (ECF 419, & 421), I have decided to vacate my prior finding about

2

Nike's conduct and to instead make a specific finding that Nike's pretrial conduct was in several instances unreasonable and improper. In reaching this decision, I must explain that my prior decision on this issue was probably unduly affected by Nike's "normal" conduct during the jury trial itself. I had not recalled, as I do now, having reviewed Plaintiff's above-cited briefs and the Greenspan R&R, that Nike's conduct was unreasonable and unduly litigious in several aspects.

Indeed, at one point, this Court appointed Sandra Jeskie, Esquire, a former colleague of mine in private practice, as a Special Master to review many discovery disputes. Although she did not condemn the conduct by Nike, her R&R (ECF 117) is relevant in this inquiry about this case being "exceptional."

A quick but thorough review of the Jeskie R&R thoroughly supports my decision to conclude that this case is "exceptional." Ms. Jeskie went through many different discovery disputes between Lontex and Nike. Although she did not rule on all issues in favor of Lontex, her discussion illustrates the great lengths that Nike pursued, not only to defend itself, but to make discovery unduly complicated. This is not to criticize Nike, which had every right to defend itself, but after a jury verdict which found for Plaintiff on all issues of liability, Nike should compensate Lontex for its very successful hard work. This Court must emphasize that disputes of this nature are not the usual pre-trial behavior, but make the case "exceptional," and very expensive for Lontex and its lawyers to defend.

Nike's unreasonable litigation strategy went beyond its discovery strategy. For example, I granted Lontex's Motion to Compel (ECF 145) and ordered Nike to produce a managerial witness with knowledge of the company's sales (ECF 150). Nike failed to produce such a witness, forcing Lontex to file a second Motion to Compel (ECF 171). This Court was then required to expend duplicative efforts revisiting the issue and again ordering Nike to produce the

witness (ECF 175).  Nike's non-compliance delayed the production of this witness by over six months.  In its second order, this Court explicitly noted that it reserved any decision as to whether sanctions should be imposed against Nike.  Just two months later, Nike moved for sanctions against Lontex (ECF 168), which this Court denied (ECF 195).

Nike also filed a very broad Motion for Summary Judgment (ECF 208).  In total the briefing produced over six cartoons of documents.  At the time, I noted that "[t]his case has been exceptionally contentious in discovery proceedings and at one point, the Court felt that the best solution was to appoint a Master specializing in commercial litigation, intellectual property, and digital discovery issues." (ECF 234 at 2).  It is very rare that discovery is so "exceptionally contentious" as to require the appointment of a special master.

Additionally, Nike had difficulty acknowledging, until the summary judgment hearing, Lontex's ownership of the trademark.  At the hearing, when asked if it conceded that Lontex owned the trademark, Nike responded, "[w]ell, not exactly. For purposes of this Motion we have assumed ownership of a trademark."  It was not until I pressed, that Nike was willing to confirm that Lontex owns the trademark (ECF 230 at 16:25-17:13).  Given that Lontex's trademark is registered with the United States Patent and Trademark Office, Nike's reluctance to concede this point was unreasonable.

I also think it is very important in the overall consideration of the remand that there is a documented statement by a Nike official to Lontex that Nike would "kill" Lontex.  As Nike notes in its objections (ECF 426 at 11), I did not allow this statement into the trial record because it would have been highly prejudicial against Nike.  Nonetheless, it is relevant on the exceptional case issue, and I fault myself for not recalling it at the time I was making the finding that Nike's conduct was not improper.

The point of the above discussion should allow a conclusion that in order to win this case on the merits as it did, Lontex had to go through "exceptional" discovery and thorough Nike defenses. It is a significant reward that Lontex seeks, looking at the totality of circumstances, which is the appropriate test, a finding that the case is "exceptional" because Nike litigated it in an unreasonable manner, is not only highly warranted, but it does justice in this case, by making Nike pay attorneys' fees, albeit substantial, but well earned, to Lontex.

### B. Attorneys' Fee Award

As to Lontex's claim that the Court should award an increased attorneys' fee because of what they call the "inflation factor," the Court finds that Lontex is entitled to supplement the fee award with the time spent on the post-remand briefs plus market rate interest from remand until the time that the fee is paid by Nike. Additionally, this Court agrees with Nike that the "current market rate" to be applied to an award of attorneys' fees is the market rate at the time of the petition. ECF 420 at 9. However, Lanni v. New Jersey, also notes that plaintiffs are entitled to interest accrued on the fee judgment between the time that a judgment was entered quantifying the award amount and the time that the judgment is paid. 259 F.3d 146, 149 (3d Cir. 2001). In short, the pre-remand rate is the correct rate, but Lontex is entitled to 1) supplement the fee award with the time spent on post-remand briefs, and 2) market rate interest on the initial fee award from the time that the judgment amount was entered and the supplemental fee award from the time of remand, until the time that the fee is paid.

### III. CONCLUSION

For the reasons stated above and following the instructions of the Third Circuit in issuing the remand, I repeat that the jury's findings of willfulness and punitive damages are still very important factors in favor of finding this case "exceptional." I find, for the reasons stated in the Greenspan R&R, that the substantive strength of Lontex's litigating position was strong. I also

find that there was a great discrepancy between Lontex's effective advocacy and the unreasonable manner in which Nike litigated this case. Nike's pretrial conduct was marred by several instances of overly aggressive and unnecessary positions that made Lontex's burden of getting to trial more expensive and caused delay. As summarized above, this conduct was expensive for Lontex to defend against and caused Lontex's counsel, who most likely were handling this case on a contingency basis, in whole or part, to spend much more time on discovery than necessary.

      Two specific motions are relevant here. First, I issued an order dated September 30, 2020 (ECF 175), which found that Nike was improperly disputing some discovery efforts by Lontex and that the Court reserved any decision as to whether sanctions should be imposed against Nike.

      Another instance was a memorandum which I wrote dated November 18, 2020 (ECF 195), where Nike was seeking sanctions against Lontex, which I denied.

      The great breadth of discovery issues which permeated this case from the start through trial, are themselves "exceptional" and the fact that Plaintiff received a comprehensive liability verdict is important, but after affirming the liability verdict, I believe the Third Circuit should similarly affirm my finding that this case is "exceptional."

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 18\18-5623 Lontex Corp v Nike\18cv5623 Memorandum re Remand_final.doc

6